# EXHIBIT B

Doc 63806   Bk OR   Vol 176   Pg 461

PREPARED BY:
Randa Barton
Polsinelli PC
2950 N Harwood, Suite 2100
Dallas, TX 75201

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

RABO AGRIFINANCE LLC
14767 N. Outer 40 Rd., Suite 400
Chesterfield, MO 63017
Attn: Loan Operations

Space above this line for Recorder's Use

McClain MCA 2018

Real Estate Term Loan 1: 22114481
Operating Line of Credit 1: 22114482
Real Estate Term Loan 2: 22117432
Operating Line of Credit 2: 22117434

## DEED OF TRUST, ASSIGNMENT OF RENTS AND SECURITY AGREEMENT

(Deaf Smith and Parmer Counties, Texas)

NOTICE OF CONFIDENTIALITY RIGHTS:  IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS:  YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

THIS DEED OF TRUST ALSO CONSTITUTES A FINANCING STATEMENT FILED AS A FIXTURE FILING UNDER THE UCC.

This deed of trust ("Deed of Trust") is dated as of March 16, 2021.  It is by MCCLAIN FEED YARD, INC., a Texas corporation ("McClain Feed Yard ") and 7M CATTLE FEEDERS, INC., a Kentucky corporation ("7M Cattle Feeders") (McClain Feed Yard  and 7M Cattle Feeders are herein individually and collectively, "Grantor"), to and in favor of PHILIP R. KIRKPATRICK, an individual, as trustee ("Trustee"), whose address for purposes of this Deed of Trust is 14767 N. Outer 40 Rd., Suite 400, Chesterfield, MO 63017, for the benefit of RABO AGRIFINANCE LLC, a Delaware limited liability company, as agent for itself and the other Secured Parties (defined herein) under the Collateral Agency Agreement (defined herein; and Rabo AgriFinance LLC, in that capacity, "Beneficiary").

RABO AGRIFINANCE LLC, a Delaware limited liability company, as Lender ("Lender") has agreed to make up to $2,500,000.00 in loans to Borrower (as defined in the Facility Sheet(s)) under the terms and conditions of the Master Credit Agreement between Grantor and Lender dated May 11, 2018, as may be amended, modified, replaced, or supplemented from time to time (the "MCA").  Each capitalized term used in this Deed of Trust that is defined in the MCA and not defined in this Deed of Trust will have the meaning specified in the MCA.  This Deed of Trust will be interpreted in accordance with the Drafting Conventions.

Grantor has or may also enter into certain derivatives transactions under Hedging Agreements with Swap Counterparties, under which Grantor has or may incur Hedging Obligations to Swap Counterparties.

Doc 63806   Bk OR   Vol 174   Pg 462

The Loan Obligations (defined in the MCA) may be, from time to time, guaranteed by Guarantor under the terms and conditions of one or more guaranties in favor of Collateral Agent. The Hedging Obligations are guaranteed by Guarantor under the terms and conditions of the Hedging Agreements and/or a separate guaranty of the Hedging Obligations (the MCA, the Guaranty, and the Hedging Agreements and any separate guaranty of the Hedging Obligations are herein sometimes individually and collectively referred to as the "Debt Instrument").

Non-Obligor(s) have an economic interest in Borrower or will obtain some other material financial benefit as a result of Secured Parties' entering into the Secured Obligation Documents (defined herein). Secured Parties require that Non-Obligor execute this agreement as a condition of the Secured Obligation Documents.

TO SECURE repayment of the indebtedness evidenced by the Note (defined herein) and payment and performance of all other Secured Obligations (defined herein), Grantor irrevocably and unconditionally grants, bargains, sells, and conveys to Trustee, in trust, for the benefit of Beneficiary, WITH POWER OF SALE and right of entry and possession wherever located, whether now owned or hereafter acquired or arising, and, except as indicated, whether constituting real estate or personal property (collectively, the "Property"): (a) the real estate and any interest in the personal property and real estate located in Deaf Smith and Parmer Counties, Texas, and described in EXHIBIT A-1 and EXHIBIT A-2 (the "Land"); (b) all buildings, structures, improvements, fixtures, attachments, appliances, equipment, machinery and other articles now or hereafter erected on, affixed or attached to, or located in or on the Land, including all wells, watering and irrigation apparatus, pumps, motors, generators, pipes, center pivot irrigators and sprinklers, windmills, and fences (the "Improvements"); (c) all easements, rights-of-way and rights appurtenant to the Land or used in connection with the Land or as a means of access thereto ("Easements"); (d) the ground water on, under, pumped from or otherwise available to the Property or Land or any drainage, retention, ditch, canal, reservoir, or other water rights, whether as a result of overlying groundwater rights, contractual rights, or otherwise and whether riparian, appropriative, or otherwise; the right to remove or extract any such ground water including any permits, rights or licenses granted by any nation or government, any state or other political subdivision thereof, any agency, authority, instrumentality, regulatory body, court, administrative tribunal, central bank or other entity exercising executive, legislative, judicial, taxing, regulatory or administrative powers or functions of or pertaining to government ("Governmental Authority") and any rights granted or created by any easement, covenant, agreement or contract with any Person; and any rights to which the Property or Grantor is entitled with respect to surface water, whether such rights are appropriative, riparian, prescriptive or otherwise and whether or not pursuant to historical use, contractual agreement, permit or other governmental authorization; any water right, water allocation for water not yet delivered, distribution right, delivery right, any proscriptive, contractual, easement or other rights necessary or convenient to convey any water to the Property, water storage right, or other water-related entitlement appurtenant to or otherwise applicable to the Property by virtue of the Property being situated within the boundaries of any governmental water district irrigation district or other local agency or within the boundaries of any private water company, mutual water company, or other non-governmental entity (collectively, "Water Rights", including those rights, shares and other property (if any) described in EXHIBIT B; (e) all other tenements, hereditaments and appurtenances to the Land; (f) minerals, oil, gas, coal, metallic ores, other minerals and any other hydrocarbon substances, minerals, mineral interests, royalties, overriding royalties, production payments, net profit interests and other interests and other interests and estates in, under and on the Land and other oil, gas, coal, metallic ores and any other mineral interests with which any of the foregoing interests or estates are pooled or unitized, including surface damage awards or settlements (the "Mineral Rights"); (g) timber now or hereafter standing or cut; (h) leases, subleases, licenses, occupancy agreements, concessions and other agreements, granting a possessory interest in and to, or the right to extract, mine, reside in, sell, or use the Property (collectively, the "Leases"); (i) all utility contracts, maintenance agreements, management agreements, rights under any and all nutrient/manure management plans, service contracts and other agreements directly related to the operation and maintenance of the Property; (j) all bushes, groves, trees, plants, vines or other plantings, upon or under the Land ("Plantings") including all varieties of Plantings that produce fruit, nuts, or other crops in more than one crop year ("Permanent Crop Plantings"); (k) all patents, trademarks, or other intellectual property, working drawings, instructional manuals, and rights in processes directly related to the operation of the Property; (l) other tangible personal property of every kind and description, whether stored on the Land or elsewhere, including all goods, materials, supplies, tools, books, records, chattels, furniture, machinery and equipment (except motor vehicles, trailers, and planting, tillage and harvesting equipment rolling stock) or which is in all cases (i) directly related to the operation of the Property or acquired in connection with any construction or maintenance of the Land or the Improvements or and (ii) affixed or installed, or to be affixed or installed, in any manner on the Land or the Improvements or; (m) all U.S. Forest Permits, Taylor Grazing Permits or Licenses, and State grazing leases, and other grazing rights, including (if any) the rights described in EXHIBIT B to any mortgage(s) and separate security agreement(s) securing the Note(s), from time to time; (n) all permits and licenses relating or pertaining to the use or

Doc        Bk        Vol        Pg
  63806    OR              176        463

enjoyment of the Property; (o) proceeds of and any unearned premiums on any insurance policies covering the Property, including the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Property (the "Insurance Claims"); (p) all awards made for the taking by condemnation or the power of eminent domain, or by any proceeding or purchase in lieu thereof, of the whole or any part of the Land or other Real Estate (the "Condemnation Awards"); (q) rights and interests under any Hedging Agreements, including all rights to the payment of money from Secured Parties or Trustee under the Hedging Agreements; and all accounts, deposit accounts, and general intangibles, including payment intangibles, described in any of the Hedging Agreements; (r) the right, in the name and on behalf of Grantor, upon notice to Grantor, to appear in and defend any action or proceeding brought with respect to the Property and to commence any action or proceeding to protect the interest of Trustee, Beneficiary or Secured Parties in the Property; and (s) substitutions, replacements, additions, accessions and proceeds for or to any of the foregoing, and all books, records and files relating to any of the foregoing, including, without limitation, computer readable memory and data and any computer software or hardware reasonably necessary to access and process such memory and data.  To have and to hold the Property onto Trustee, Trustee's successor in Trust, and Trustees assigns forever.

1.     **Secured Obligations.**  Grantor makes the grant, conveyance, transfer and assignment herein, to secure payment and performance of the following obligations (the "Secured Obligations") in any order of priority that Beneficiary may choose:  (a) all Obligations (defined in the MCA), under one or more Facility Sheets(s) from time to time where Grantor is designated from time to time as Borrower, Guarantor or Non-Borrower, including (i) the Real Estate Term Loan 1 Note dated as of May 11, 2018, from Grantor to Lender in the original principal amount of $332,500.00; (ii) the Operating Line of Credit 1 Note dated as of January 8, 2020, from Grantor to Lender in the original principal amount of $15,800,000.00; (iii) the Real Estate Term Loan 2 Note dated as of the date of July 24, 2019, from Grantor to Lender in the original principal amount of $625,000.00; (iv) the Operating Line of Credit 2 Note dated as of the date of this Deed of Trust, from Grantor to Lender in the original principal amount of $9,700,000.00 (the Real Estate Term Loan 1 Note, the Operating Line of Credit 1 Note, the Real Estate Term Loan 2 Note, and the Operating Line of Credit 2 Note, together with all extensions, renewals, modifications, substitutions and amendments thereof are herein collectively, the "Note"); (v) all Hedging Obligations; and (vi) all other indebtedness, liabilities and obligations of Grantor to Lender and the Swap Counterparties arising pursuant to any of the Transaction Documents, whether now existing or hereafter arising, whether direct, indirect, related, unrelated, fixed, contingent, liquidated, unliquidated, joint, several, or joint and several; (b) all obligations of Grantor under this Deed of Trust; (c) any obligations due to a Banking Counterparty with regard to Banking Obligations; (d) all obligations of Grantor to Lender, Coöperatieve Rabobank U.A., (trading as Rabobank), a foreign banking organization organized as a cooperative bank under the laws of The Netherlands ("Rabobank"), or any other Affiliate of Lender (Lender, Rabobank and any other Affiliate of Lender are herein individually and collectively, "Secured Parties"), whether now existing or hereafter incurred or created, whether voluntary or involuntary, whether obligatory or non-obligatory; whether due or not due, whether absolute or contingent, or whether incurred directly or acquired by assignment or otherwise, under the terms and conditions of any other written instrument or agreement executed by Grantor and which specifically recites that those obligations are secured by this Deed of Trust; and (e) any of the foregoing that arises after the filing of a petition by or against Grantor under an Insolvency Proceeding.  All Persons who have or acquire an interest in the Property will be deemed to have received notice of, and will be bound by, the terms of the MCA, the other Transaction Documents, and each other agreement or instrument made or entered into in connection with each of the Secured Obligations (the Transaction Documents and those other agreements or instruments, the "Secured Obligation Documents").  These terms include any provisions in the Secured Obligation Documents which permit borrowing, repayment and reborrowing, or which provide that the rate of interest on one or more of the Secured Obligations may vary from time to time.  This Deed of Trust does not secure any obligation which is unsecured pursuant to the express terms of the MCA or any other document, agreement or instrument.  Without limitation of the foregoing, this Deed of Trust does not secure the indebtedness, liabilities and obligations of Guarantor as guarantor under the terms and conditions of the Guaranty or any other guaranty given by Guarantor to secure the Hedging Obligations.

2.     **Future Secured Obligations.**  The Secured Obligations include future advances and other future Secured Obligations made by Beneficiary or Secured Parties, at their option, and for any purpose, and all other future Secured Obligations.  Those future advances and other future Secured Obligations are secured to the same extent as if made or incurred on the date of the execution of this Deed of Trust, and have priority as to third Persons with or without actual notice from the time this Deed of Trust is filed for record as provided by law.  The total amount of indebtedness secured by this Deed of Trust may decrease or increase from time to time.  The unpaid balance of any Revolving Line of Credit or Hedging Obligations secured by this Deed of Trust may at certain times be zero.  This Deed of Trust will remain in full force and effect notwithstanding any zero balance.  Grantor shall not file for record any notice limiting the maximum amount secured by this Deed of Trust (a "Maximum

Doc 63806    Bk OR    Vol 176    Pg 464

Amount Notice"). A Maximum Amount Notice will be an Event of Default (defined herein). Nothing herein will constitute a commitment to make additional or future advances which are not specified by the other terms of the MCA or enter into future derivatives transactions in any amount. The unpaid balance of any revolving line of credit or Hedging Obligations secured by this Deed of Trust may at certain times be zero. This Deed of Trust will remain in full force and effect notwithstanding any zero balance.

3.    **Note Maturity Date.** The latest date on which any Note matures is June 1, 2028.

4.    **Assignment.** Grantor irrevocably and unconditionally assigns to Beneficiary and grants Beneficiary a security interest in, the Leases; all rents and other benefits derived from the Leases, and all other issues, profits, royalties, bonuses, income and other benefits derived from or produced by the Real Estate, including but not limited to, any monies, proceeds, damages, Judgments or payments in lieu thereof, received by or due to Grantor occasioned by any mineral or geothermal exploration, wind energy, solar energy or drilling activity on or under the Real Estate, all prepaid rents, security deposits and other supporting obligations (the "Rents"; and this assignment, the "Assignment of Rents"). Beneficiary may collect Rents with or without taking possession of the Property. Beneficiary confers upon Grantor a license to collect and retain the Rents as they become due and payable, so long as there is no Event of Default (the "License"). If an Event of Default has occurred, Beneficiary may terminate the License without notice to or demand upon Grantor. Beneficiary, by its acceptance of this Deed of Trust does not assume any duty or obligation under the Leases. The acceptance by Beneficiary of the assignment of Leases and Rents and profits with all the rights, powers, privileges and authority so granted will not obligate Beneficiary to assume any obligations in respect of the Leases and Rents and profits or under the Leases, or take any action thereunder or to expend any money or incur any expense or perform or discharge any obligation, duty or liability in respect of the Leases and Rents and profits or under the Leases or to assume any obligation or responsibility for the nonperformance of the provisions thereof by Grantor. The definition of Leases shall include all "Leases" as defined or described in Chapter 64 of the Assignment of Rents Act, and the definition of Rents shall include all "Rents" as defined in the Assignment of Rents Act. Furthermore, it is the intent of the parties to comply with the requirements of the Assignment of Rents Act in connection with the assignment of Leases and Rents. Accordingly, the enforcement of rights related to the assignment of Leases and Rents shall be subject to compliance with the provisions of the Assignment of Rents Act, including, without limitation, the notice requirements of Sections 64.054, 64.055(a) and 64.056 of the Texas Property Code.

5.    **Grant of Security Interest.** This Deed of Trust is a security agreement under the Uniform Commercial Code in effect in the State of Texas (the "UCC"); and Grantor grants Trustee and Beneficiary a security interest in and pledges and assigns to Trustee and Beneficiary all of Grantor's right, title and interest in the Property, to the extent characterized as personal property (the "Personalty"). The address of Grantor adjacent to its signature below is the mailing address of Grantor as debtor under the UCC. The address for Trustee specified in the first paragraph of this Deed of Trust is the address for Trustee as secured party under the UCC; and the address for Beneficiary specified herein is the address for Beneficiary as secured party under the UCC. As used in this Deed of Trust, the term "lien" is synonymous with the term "lien and security interest."

6.    **Warranty of Title.** Grantor represents and warrants that Grantor lawfully possesses and holds good and marketable fee simple title to all of the Land and the Improvements, that Grantor has the right, power and authority to grant, convey and assign the Property; and that the Property is unencumbered. Grantor covenants that Grantor will warrant and forever defend generally the title to, and ownership and possession of, the Property against all claims and demands, with all costs and expenses of defense to be borne by Grantor. Grantor especially agrees and declares that the separate estate of each of them, whether vested, contingent or in expectancy, is hereby conveyed and shall be bound for the payment and performance of the Secured Obligations.

7.    **Permanent Crop Plantings.** All Permanent Crop Plantings are real estate and will remain a part of the Land. Grantor represents and warrants that the Permanent Crop Plantings are not subject to intellectual property rights under U.S. or foreign patent, copyright or trademark laws, the Plant Variety Protection Act or similar laws or subject to license from the holder of any such intellectual property rights (collectively "Permanent Crop Planting IP Rights"), other than (where applicable) the Permanent Crop Planting IP Rights described on EXHIBIT B. To the extent the Land does contain or in the future is cultivated to grow any variety of Permanent Crop Plantings that are subject to Permanent Crop Planting IP Rights, (a) Grantor represents and warrants that Grantor is the owner of such IP Rights free and clear of any claim, right, title, interest or Lien of any other person; (b) Grantor shall notify Beneficiary in writing of the existence of any Permanent Crop Planting IP Rights and Grantor grants Beneficiary a security interest in and a Lien upon all of Grantor's present and future rights, title and interests in, to

Doc 63806    Bk OR    Vol 176    Pg 465

and under Permanent Crop Planting IP Rights; all cash and non-cash proceeds and products of Permanent Crop Planting IP Rights; and all causes of action, past, present and future for infringement, misappropriation or dilution of, or unfair competition regarding any of Permanent Crop Planting IP Rights.

8. **Additional Representations.** Grantor represents to Beneficiary and Secured Parties that: (a) the Property does not represent the proceeds of unlawful activity under any state, federal or foreign law; (b) the Property includes all property and rights which may be reasonably necessary or desirable to enable Grantor to use, enjoy and operate the Land and the Improvements for the present uses thereof; (c) none of the Land or Improvements is subject to any Lien, offset or claim; (d) Grantor owns the Personalty free and clear of any security interests, reservations of title or conditional sales contracts, and there is no presently valid financing statement affecting the Personalty on file in any public office; (e) Grantor has title to, or (in the case of leased property) valid leasehold interests in, all of their properties and assets, real and personal, including the properties and assets and leasehold interests reflected in the Financial Information (other than any properties or assets disposed of in the ordinary course of business); (f) the legal name of Grantor is as appears in the first paragraph of this agreement; (g) Grantor has not used any trade name, assumed name or other name except Grantor's name stated in the first paragraph of this agreement; (h) if Grantor is anything other than a natural Person, it has complied with all Applicable Laws concerning its organization, existence and the transaction of its business, and is in existence and good standing in its state of organization and each state in which it conducts its business; (i) the execution, delivery and performance by Grantor of this Deed of Trust is within the powers and authority of Grantor and has been duly authorized; (j) to Grantor's knowledge, this Deed of Trust does not conflict with any Applicable Law; (k) this Deed of Trust is a legal, valid and binding agreement of Grantor, enforceable against Grantor in accordance with its terms, and any instrument or agreement required hereunder, when executed and delivered, will be similarly legal, valid, binding and enforceable; (l) there has been no Material Adverse Effect as to Grantor since the effective date the Financial Information was provided to Beneficiary or Secured Parties; (m) there is no lawsuit, tax claim or other dispute pending or to Grantor's knowledge threatened against Grantor or the Property that, if determined adverse to Grantor, is reasonably likely to have a Material Adverse Effect; (n) Grantor is not the subject of any Judgment; (o) this Deed of Trust does not conflict with, nor is Grantor in default on any credit agreement, indenture, purchase agreement, guaranty, capital lease, or other investment, agreement, or arrangement presently in effect providing for or relating to extensions of credit in respect of which Grantor is in any manner directly or contingently obligated; (p) Grantor has filed all tax returns (federal, state, and local) required to be filed and has paid all taxes, assessments, and governmental charges and levies thereon, including interest and penalties; (q) before signing this Deed of Trust, Grantor researched, to the satisfaction of Grantor, and inquired into the previous uses and ownership of the Real Estate, and based on that due diligence, to the best of Grantor's knowledge, no Hazardous Substance has been disposed of or released or otherwise exists in, on, under or onto the Real Estate, except as Grantor has disclosed to Beneficiary or Secured Parties in the Environmental Information; (r) Grantor has complied with all current and future laws, regulations and ordinances or other requirements of any Governmental Authority relating to or imposing liability or standards of conduct concerning protection of health or the environment or Hazardous Substances ("Environmental Laws"); (s) Grantor has not received any notices of violations of any Applicable Laws (including Environmental Laws); and Grantor is in compliance with all Applicable Laws; (t) there are no claims, actions, proceedings or investigations pending or threatened against Grantor or affecting the Property with respect to any violations of Applicable Laws; (u) Grantor's place of business, or its chief executive office, if it has more than one place of business, is located at the address specified below; and (v) unless otherwise disclosed to Beneficiary, Grantor is not a "foreign person" within the meaning of Section 1445 of the Internal Revenue Code of 1986; and there is no Event of Default or event which, with notice or lapse of time would be an Event of Default.

9. **Information Accurate and Complete.** All financial statements and other reports, documents, instruments, information and forms of evidence which have been delivered to Beneficiary or Secured Parties concerning Grantor, or the Property (the financial and other information supplied or to be supplied to Beneficiary or Secured Parties in connection with this Deed of Trust is herein referred to as the "Financial Information"), are accurate, correct and sufficiently complete in all material respects to provide Beneficiary and Secured Parties true and accurate knowledge of their subject matter, including, without limitation, all material contingent liabilities. Grantor's submission of any Financial Information or other report, record or information pertaining to the condition or operations, financial or otherwise, of Grantor, from time to time, whether or not required under this Deed of Trust, will be deemed accompanied by a representation by Grantor that the Financial Information or other report, record or information is complete and accurate in all material respects as to the condition or operations of Grantor (and, if applicable, Grantor's Subsidiaries, Affiliates, partners, shareholders, members, or other principals), including, without limitation, all material contingent liabilities and Grantor's business or organizational structure.

10. **Performance of Secured Obligations**. Grantor shall promptly pay and perform each Secured Obligation in accordance with its terms.

11. **Maintenance and Preservation of Property**. Grantor shall: (a) immediately discharge any Lien on the Property which Beneficiary has not consented to in writing, and shall also pay when due each obligation secured by or reducible to a Lien which now or hereafter encumbers or appears to encumber all or part of the Property, whether the Lien is or would be senior or subordinate to this Deed of Trust; (b) not alter, remove or demolish any portion of the Improvements, except as permitted or required by the MCA; (c) maintain (or cause to be maintained) all policies of insurance required under the MCA and pay (or cause payment of) all premiums for that insurance on or prior to the date when due; (d) promptly and completely repair and/or restore any portion of the Property which becomes damaged or destroyed, in a good and workmanlike manner in accordance with sound building practices, whether or not Grantor has received the proceeds of any Insurance Claim; (e) not commit or allow any waste of the Property, nor do or suffer to be done any act whereby the value of any part of the Property may be lessened; (f) not initiate or allow any change in any zoning or other land use classification which affects the Property or any part of it, except as permitted or required by the MCA; (g) if the Land is agricultural, keep the Property in good condition and repair; operate the Property, whether improved pastures, orchards, grazing, timber, or crop lands, in a good and husbandman like manner in accordance with accepted principles of sound agricultural and forestry practices; take all reasonable precautions to control wind and water erosion; fertilize improved pastures, if any, where necessary to maintain a good stand of desirable grasses; protect orchards and timber, if any, by reasonable precautions against loss or damage by fire including the maintenance of appropriate fire breaks; and neither to remove nor permit the removal of any timber, buildings, oil, gas, mineral, stone, rock, clay, fertilizer, gravel or top soil without the prior written consent of Beneficiary; (h) complete appropriation and all other requirements, if any, necessary to obtain the issuance of any license or water permit issued to Grantor, and take all other steps required or advisable for purposes of perfecting and maintaining in good status all other Water Rights; (i) keep all Permanent Crop Plantings cultivated, irrigated, fertilized, sprayed and fumigated, and shall replace all dead or unproductive trees, vines and other Permanent Crop Plantings with new ones; (j) not bring or keep any article on the Property or cause or allow any condition to exist on it, if that could invalidate or would be prohibited by any insurance coverage required to be maintained by Grantor on the Property or any part of it under this Deed of Trust; and (k) perform all other acts which from the character or use of the Property may be reasonably necessary to maintain and preserve its value and utility.

(a) *TEXAS FINANCE CODE SECTION 307.052 COLLATERAL PROTECTION INSURANCE NOTICE: (A) GRANTOR IS REQUIRED TO (i) KEEP THE MORTGAGED PROPERTY INSURED AGAINST DAMAGE IN THE AMOUNT SPECIFIED HEREIN; (ii) PURCHASE THE INSURANCE FROM AN INSURER THAT IS AUTHORIZED TO DO BUSINESS IN THE STATE OF TEXAS OR AN ELIGIBLE SURPLUS LINES INSURER OR OTHERWISE AS PROVIDED HEREIN; AND (iii) NAME THE BENEFICIARY AS THE PERSON TO BE PAID UNDER THE POLICY IN THE EVENT OF A LOSS AS PROVIDED HEREIN; (B) SUBJECT TO THE PROVISIONS HEREOF, GRANTOR MUST, IF REQUIRED BY BENEFICIARY, DELIVER TO BENEFICIARY A COPY OF THE POLICY AND PROOF OF THE PAYMENT OF PREMIUMS; AND (C) SUBJECT TO THE PROVISIONS HEREOF, IF GRANTOR FAILS TO MEET ANY REQUIREMENT LISTED IN THE FOREGOING SUBPARTS (A) OR (B), BENEFICIARY MAY OBTAIN COLLATERAL PROTECTION INSURANCE ON BEHALF OF GRANTOR AT GRANTOR'S EXPENSE.*

12. **Compliance with Applicable Law** Grantor shall not commit or allow any act upon or use of the Property which would violate any Applicable Law, whether now existing or later to be enacted and whether foreseen or unforeseen, or any public or private covenant, condition, restriction or equitable servitude affecting the Property;

13. **Taxes and Assessments**. Grantor shall pay (a) prior to delinquency, all taxes, levies, charges and assessments, including all ditch, canal, reservoir or other water charges, and assessments on appurtenant Water Stock, imposed by Applicable Law or any public or quasi-public authority or utility company which are (or if not paid, may become) a Lien on all or part of the Property or any interest in it, or which may cause any decrease in the value of the Property or any part of it (individually and collectively "Impositions"); (b) any and all intangible taxes and documentary stamp taxes determined at any time to be due on or as a result of the Secured Obligations, this Deed of Trust or any other Transaction Documents, together with any and all interest and penalties thereon; and (c) taxes, levies, charges and assessments on Beneficiary's or Secured Parties' interest therein or upon this Deed of Trust or the Secured Obligations (collectively, "Mortgage Taxes"); except that if the amount of Mortgage Taxes exceeds the Maximum Rate, Grantor will not be required to pay any such excess. If after the date of this Deed of Trust, the State of Texas passes any law deducting from the value of Land for the purpose of taxation any Lien thereon, or changing in any way the laws for the taxation of Mortgages or debts secured by Mortgage for state or local purposes, or the

Doc 63806   Bk OR   Vol 176   Pg 467

manner of the collection of any such taxes, so as to affect this Deed of Trust, then within 180 days after notice by Beneficiary to Grantor, Grantor shall pay all Secured Obligations. Notwithstanding the foregoing provisions of this section, Grantor may, at its expense, contest the validity or application of any Imposition by appropriate legal proceedings promptly initiated and conducted in good faith and with due diligence, provided that Beneficiary is satisfied that neither the Property nor any part thereof or interest therein will be at risk of being sold, forfeited, or lost as a result of such contest, and Grantor has posted a bond equal to 115% of the contested amount or furnished such other security required from time to time by Beneficiary for purposes of payment of the contested amount.

14.    **Damages and Insurance and Condemnation Proceeds**. Beneficiary may, at its option, (a) in its own name appear in or prosecute any action or proceeding to enforce any cause of action based on warranty, or for damage, injury or loss to all or part of the Property, and it may make any compromise or settlement of the action or proceeding; (b) participate in any action or proceeding relating to any Condemnation Award; and (c) join Grantor in adjusting any Insurance Claim. All insurance proceeds, Condemnation Awards, and proceeds of any other claim based on warranty, or for damage, injury or loss to the Property which Grantor may receive or be entitled to must be paid to Beneficiary. In each instance, Beneficiary may apply those proceeds first toward reimbursement of all of Beneficiary's costs and expenses of recovering the proceeds or Condemnation Award, including Legal Fees. The balance shall, at Beneficiary's option, be applied to pay or Prepay some or all of the Secured Obligations in such order and proportions as it may choose. GRANTOR HEREBY SPECIFICALLY, UNCONDITIONALLY AND IRREVOCABLY WAIVES ALL RIGHTS OF A PROPERTY OWNER WHICH PROVIDE FOR ALLOCATION OF CONDEMNATION PROCEEDS BETWEEN A PROPERTY OWNER AND A LIENHOLDER, AND ANY OTHER LAW OR SUCCESSOR STATUTE OF SIMILAR IMPORT.

15.    **Site Visits, Observation and Testing**. Beneficiary and its agents and representatives may enter and visit the Property at any reasonable time for the purposes of observing it, performing Appraisals, taking and removing soil or groundwater samples, and conducting tests on any part of it, as provided in the MCA, and otherwise to determine Grantor's compliance with this Deed of Trust.

16.    **Defense and Notice of Claims and Actions**. At Grantor's sole expense, Grantor shall protect, preserve and defend the Property and title to and right of possession of the Property, and the security of this Deed of Trust and the rights and powers of Beneficiary and Trustee created under it, against all adverse claims. Grantor must give Beneficiary and Trustee prompt notice in writing if any claim is asserted which does or could affect any of these matters, or if any action or proceeding is commenced which alleges or relates to any such claim.

17.    **Prohibited Transfers**. Grantor agrees that a material factor in Secured Parties' decision to enter into the Secured Obligation Documents is the expertise, financial status and other characteristics of Grantor or Borrower. Grantor or Borrower shall not make or permit any Prohibited Transfer. Upon any Prohibited Transfer Beneficiary may declare all Secured Obligations to be due and payable immediately. "Prohibited Transfer" means: (a) any sale, contract to sell, conveyance, encumbrance, pledge, mortgage, lease of the Property to or for the benefit of a Person not the original Grantor under this instrument, and not expressly permitted under this instrument or the other Secured Obligation Documents, or other transfer of all or any material part of the Property or any interest in it, including any transfer of Mineral Rights, Water Rights, or Water Stock, whether voluntary, involuntary, by operation of law or otherwise; (b) if Grantor or Borrower is a corporation, any transfer or transfers of shares of the voting power or the direct or indirect beneficial ownership of Grantor; (c) if Grantor or Borrower is a partnership, withdrawal or removal of any general partner, dissolution of the partnership under Applicable Law, or any transfer or transfers of the partnership interests; (d) if Grantor or Borrower is a limited liability company, withdrawal or removal of any managing member, termination of the limited liability company or any transfer or transfers of the voting power or the ownership of the economic interest in the Grantor or Borrower; or (e) if Grantor or Borrower is a trust, withdrawal or removal of any trustee or revocation of the trust.

18.    **Compensation and Reimbursement of Costs and Expenses**. Grantor shall pay (a) fees in the maximum amounts legally permitted, or reasonable fees as may be charged by Beneficiary or Trustee when the law provides no maximum limit, for any services that Beneficiary or Trustee may render in connection with this Deed of Trust, including Beneficiary's providing a statement or Trustee's rendering of services in connection with a reconveyance; (b) all of Beneficiary's or Trustee's costs and expenses which may be incurred in rendering any such services; and (c) all costs, expenses and other advances which may be incurred or made by Beneficiary or Trustee in any efforts to enforce any terms of this Deed of Trust or protect the Property, including any rights or remedies afforded to Beneficiary or Trustee herein, including but not limited to Appraisals,

Doc
63806    Bk
OR    Vol
176    Pg
468

inspections, insurance premiums, and prevention of waste, whether any lawsuit is filed or not, including any bankruptcy or other voluntary or involuntary proceeding, in or out of court, for the Adjustment of debtor-creditor relationships, or in defending any action or proceeding arising under or relating to this Deed of Trust, including attorneys' fees and other legal costs, costs of any Foreclosure Sale (defined herein) and any cost of evidence of title.  If Beneficiary chooses to dispose of Property through more than one Foreclosure Sale, Grantor must pay all costs, expenses or other advances that may be incurred or made by Beneficiary or Trustee in each of those Foreclosure Sales.  GRANTOR SHALL INDEMNIFY TRUSTEE, BENEFICIARY AND SECURED PARTIES AGAINST AND SHALL HOLD THEM HARMLESS FROM ALL LOSSES, DAMAGES, LIABILITIES, CLAIMS, CAUSES OF ACTION, JUDGMENTS, COURT COSTS, ATTORNEYS' FEES AND OTHER LEGAL EXPENSES, COST OF EVIDENCE OF TITLE, COST OF EVIDENCE OF VALUE, AND OTHER COSTS AND EXPENSES WHICH EITHER MAY SUFFER OR INCUR: (A) IN PERFORMING ANY ACT REQUIRED OR PERMITTED BY THIS DEED OF TRUST OR ANY OF THE OTHER SECURED OBLIGATION DOCUMENTS OR BY LAW; (B) BECAUSE OF ANY FAILURE OF GRANTOR TO PAY OR PERFORM ANY OF THE SECURED OBLIGATIONS; OR (C) BECAUSE OF ANY ALLEGED OBLIGATION OF OR UNDERTAKING BY BENEFICIARY OR SECURED PARTIES TO PERFORM OR DISCHARGE ANY OF THE REPRESENTATIONS, WARRANTIES, CONDITIONS, COVENANTS OR OTHER OBLIGATIONS IN ANY DOCUMENT RELATING TO THE PROPERTY (OTHER THAN SUCH WARRANTIES, CONDITIONS, COVENANTS OR OTHER OBLIGATIONS IN THE SECURED OBLIGATION DOCUMENTS).  THIS AGREEMENT BY GRANTOR TO INDEMNIFY TRUSTEE, BENEFICIARY AND SECURED PARTIES SURVIVES THE RELEASE AND CANCELLATION OF ANY OR ALL OF THE SECURED OBLIGATIONS AND THE FULL OR PARTIAL RELEASE AND/OR RECONVEYANCE OF THIS DEED OF TRUST.

19.    **Payments Due under this Deed of Trust**.  Grantor must pay all obligations to pay money arising under this Deed of Trust immediately upon demand by Trustee, Beneficiary or Secured Parties.  Each such obligation shall bear interest from the date the obligation arises at the Default Rate.

20.    **Events of Default**.  The following each shall be an event of default under this Deed of Trust (an "Event of Default"): (a) an Event of Default under the MCA, including a default termination event or other similar event under any Hedging Agreement which is not cured within any grace or cure period specified therein, if any; (b) a Prohibited Transfer; (c) the Financial Information or any representation in this Deed of Trust is materially incorrect or materially misleading; (d) the filing of any notice limiting the maximum amount secured by this Deed of Trust to a sum less than the Maximum Amount Secured as specified herein, or if no such amount is specified, to any amount; (e) for more than ten days after notice from Beneficiary, Grantor is in default under any term, covenant or condition of this Deed of Trust not previously described in this section, which can be cured by the payment of a sum of money; or (f) for 30 days after notice from Beneficiary or Secured Parties, Grantor is in default under any term, covenant or condition of this Deed of Trust not previously described in this section; provided that if (i) it is reasonably certain that the default cannot be cured by Grantor within that 30 day period and (ii) Grantor has commenced curing that default within that 30 day period and thereafter diligently and expeditiously proceeds to cure that default, then that 30 day period shall be extended for so long as reasonably required by Grantor in the exercise of due diligence to cure that default, up to a maximum of 90 days after the notice to Grantor of the Event of Default.

21.    **Remedies**.  At any time after an Event of Default, Secured Parties, Beneficiary or Trustee may (a) declare any or all of the Secured Obligations to be due and payable immediately; (b) cure any breach or default of Grantor; (c) may, to the extent permitted by Applicable Law, make an ex parte application to any court of competent jurisdiction, and obtain appointment of, a receiver, trustee, liquidator or conservator of the Property, without notice, without giving bond, and without regard for the adequacy of the security for the Secured Obligations and without regard for the solvency of Borrower, any Guarantor, or of any Person liable for the payment of the Secured Obligations; (d) in person, by agent or by court-appointed receiver, enter, take possession of, manage and operate all or any part of the Property; (e) exercise any or all of the remedies granted to a secured party under the UCC; (f) bring an action in any court of competent jurisdiction to foreclose this Deed of Trust or to obtain specific enforcement of any of the Covenants or agreements of this Deed of Trust; (g) under the power of sale granted under this Deed of Trust (the "Power of Sale"), at its option cause some or all of the Property, including the Personalty, to be sold or otherwise disposed of in any combination and in any manner permitted by Applicable Law; and (h) do any and all other things in connection with those actions that Beneficiary may consider necessary and appropriate to protect the security of this Deed of Trust.  GRANTOR HEREBY IRREVOCABLY CONSTITUTES AND APPOINTS BENEFICIARY AS GRANTOR'S ATTORNEY-IN-FACT TO PERFORM SUCH ACTS AND EXECUTE SUCH DOCUMENTS AS BENEFICIARY CONSIDERS APPROPRIATE IN CONNECTION WITH TAKING THESE MEASURES, INCLUDING ENDORSEMENT OF GRANTOR'S NAME

Doc 63806   Bk OR   Vol 176   Pg 469

ON ANY INSTRUMENTS.  GRANTOR HEREBY WAIVES NOTICE OF THE APPLICATION FOR, AND CONSENTS TO THE
APPOINTMENT OF A RECEIVER, TRUSTEE, LIQUIDATOR OR CONSERVATOR OF THE PROPERTY IN ACCORDANCE
WITH THE PROVISIONS OF THIS SECTION (WHICH APPOINTMENT OF SUCH POWER OF ATTORNEY IS A POWER
COUPLED WITH AN INTEREST); AND AGREES TO NOT OPPOSE SUCH APPOINTMENT.  Notwithstanding the foregoing, in
no event will Trustee, Beneficiary or Secured Parties have any obligation to take any of the actions set forth in this Deed of Trust.
Beneficiary shall not be considered to have accepted any property other than cash or immediately available funds in satisfaction
of any obligation of Grantor to Beneficiary, unless Beneficiary has given express written notice of its election of that remedy.  The
proceeds of any receivership shall be applied by the receiver toward the payment of the Secured Obligations or toward the
payment of such part of any Judgment thereupon which remains unsatisfied after the sale of the Property.  The receiver may
make repairs and keep the Property in good condition and repair pending a sale, and pay all taxes and assessments accrued or
accruing or redeem from sales therefore, pay all premiums of insurance required under this Deed of Trust, and pay all other
charges as herein provided.

    **22.**    **Sales of Property.**  Beneficiary may elect to treat as Personalty any Property which is intangible or which
can be severed from the Land or Improvements without causing structural damage.  Beneficiary may dispose of any Personalty
separately from the sale of real property, in any manner permitted by the UCC or any other Applicable Law.  Any proceeds of any
such disposition shall not cure any Event of Default or reinstate any Secured Obligation.  Beneficiary may choose to dispose of
some or all of the Property which consists solely of real property in any manner then permitted by Applicable Law.  To the extent
permitted by Applicable Law, Beneficiary may also or alternatively choose to dispose of some or all of the Property, in any
combination consisting of both real and personal property, together in one sale to be held in accordance with the law and
procedures applicable to real property, as permitted by the UCC.  Grantor agrees that such a sale of Personalty together with
real property constitutes a commercially reasonable sale of the personal property.  For purposes of the Power of Sale, either a
sale of real property alone under the Power of Sale, or, to the extent permitted by Applicable Law, a sale of both real and
personal property under the Power of Sale, together in accordance with the UCC, will sometimes be referred to as a "Non-
Judicial Foreclosure Sale."  Before any Non-Judicial Foreclosure Sale, Beneficiary or Trustee must give such notice of default
and election to sell as may then be required by law.  When all time periods then legally mandated have expired, and after such
notice of sale as may then be legally required has been given, Beneficiary or Trustee, as required by Applicable Law, must sell
the Property being sold at a public auction to be held at the time and place specified in the notice of sale.  Neither Beneficiary nor
Trustee have any obligation to make demand on Grantor before any Non-Judicial Foreclosure Sale.  From time to time in
accordance with then Applicable Law, Trustee may (and in any event at Beneficiary's request Trustee must), postpone any Non-
Judicial Foreclosure Sale by public announcement at the time and place noticed for that sale.  Trustee or Beneficiary, as required
by Applicable Law, shall execute and deliver to any purchaser(s) a deed(s) or bill(s) of sale conveying the Property being sold
without any covenant or warranty whatsoever, express or implied.  The recitals in any such deed(s) or bill(s) of sale of any
matters or facts, including any facts bearing upon the regularity or validity of any Non-Judicial Foreclosure Sale, will be
conclusive proof of their truthfulness. Any such deed(s) or bill(s) of sale shall be conclusive against all Persons as to the facts
recited in it.  If the Land is located in more than one county, then to the extent permitted by Applicable Law, a judicial or non-
judicial foreclosure sale of the Property may be maintained in any one or more of those counties.  If the Property consists of
more than one lot, parcel or item of property, Beneficiary may: (i) designate the order in which the lots, parcels and/or items shall
be sold or disposed of or offered for sale or disposition; and (ii) elect to dispose of the lots, parcels and/or items through a single
consolidated sale or disposition to be held or made under the Power of Sale, or in connection with judicial proceedings, or by
virtue of a Judgment and decree of foreclosure and sale; or through two or more such sales or dispositions; or in any other
manner (including a Non-Judicial Foreclosure Sale) Beneficiary may deem to be in its best interests (any such sale or
disposition, a "Foreclosure Sale;" any two or more, "Foreclosure Sales").  If it chooses to have more than one Foreclosure Sale,
Beneficiary at its option may cause the Foreclosure Sales to be held simultaneously or successively, on the same day, or on such
different days and at such different times and in such order as it may deem to be in its best interests.  No Foreclosure Sale will
terminate or affect the Lien of this Deed of Trust on any part of the Property which has not been sold, until all of the Secured
Obligations have been paid in full.  At any Foreclosure Sale, any person, including Grantor, Beneficiary, Secured Parties or to the
extent permitted by Applicable Law, Trustee, may bid for and acquire the Property or any part of it to the extent permitted by then
Applicable Law.  Instead of paying cash for that property, Beneficiary or Secured Parties may settle for the purchase price by
crediting the sales price of the Property against the Secured Obligations, unless Applicable Law mandates a specific order of
application, in which event payments and collections will be applied as mandated by Applicable Law.  Any such credit, and all
other proceeds of any Foreclosure Sale shall be applied to the Secured Obligations in any order Beneficiary may choose.

Doc 63806    Bk OR    Vol 176    Pg 470

23.    **Additional Rights**.  In addition to the rights and powers given to Beneficiary under this Deed of Trust, Beneficiary shall have all such other rights both in law and equity for collection of the indebtedness secured hereby as it would have but for this Deed of Trust.

24.    **Guarantor and/or Non-Obligor Provisions.**  (a) Guarantor and/or Non-Obligor authorize Trustee, Beneficiary and Secured Parties to perform any of the following acts at any time, all without notice to Guarantor and/or Non-Obligor and without affecting the rights of Trustee, Beneficiary or Secured Parties or the obligations of Guarantor and/or Non-Obligor under this Deed of Trust:  (i) alter any terms of the MCA or any part of it, including renewing, compromising, extending or accelerating, or otherwise changing the time for payment of, or increasing or decreasing the rate of interest on, the MCA or any part of it; (ii) take and hold security for the MCA, accept additional or substituted security for the MCA, and subordinate, exchange, enforce, waive, release, compromise, fail to perfect, sell or otherwise dispose of any such security; (iii) apply any security now or later held for the MCA in any order that Trustee, Beneficiary and Secured Parties may choose, and may direct the order and manner of any sale of all or any part of it and bid at any such sale; (iv) release Obligor/Borrower of its liability for the MCA or any part of it; (v) substitute, add or release any one or more guarantors or endorsers of the MCA; and (vi) extend other credit to Obligor/Borrower, and may take and hold security for the credit so extended, whether or not such security also secures the MCA.

(b)    Guarantor and/or Non-Obligor waive:  (i) any right to require Trustee, Beneficiary or Secured Parties to proceed against Obligor/Borrower, proceed against or exhaust any security held from Obligor/Borrower, or pursue any other remedy in Trustee's, Beneficiary's and Secured Parties power to pursue; (ii) any defense based on any legal disability of Obligor/Borrower, any discharge or limitation of the liability of Obligor/Borrower to Trustee, Beneficiary or Secured Parties, whether consensual or arising by operation of law or any bankruptcy, reorganization, receivership, insolvency, or debtor-relief proceeding, or from any other cause, or any claim that the obligations of Guarantor and/or Non-Obligor exceed or are more burdensome than those of Obligor/Borrower; (iii) all presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor, notices of acceptance of this Deed of Trust and of the existence, creation, or incurring of new or additional indebtedness of Obligor/Borrower, and demands and notices of every kind; (iv) any defense based on or arising out of any defense that Obligor/Borrower may have to the payment or performance of the MCA or any part of it; and (v) until the Secured Obligations have been paid and performed in full, all rights of subrogation, reimbursement, indemnification and contribution (contractual, statutory or otherwise), including any claim or right of subrogation under the Bankruptcy Code (Title 11 of the U.S. Code) or any successor statute, all rights to enforce any remedy that Trustee, Beneficiary or Secured Parties may have against Obligor/Borrower, and all rights to participate in any security now or later to be held by Trustee, Beneficiary or Secured Parties for the MCA.

(c)    Guarantor and/or Non-Obligor waive all rights and defenses that Guarantor and/or Non-Obligor may have because the MCA may be secured by real property other than the Property hereby encumbered.  This means, among other things:  (i)  Trustee, Beneficiary and Secured Parties may collect from Guarantor and/or Non-Obligor (including enforcing this Deed of Trust against Guarantor and/or Non-Obligor) without first foreclosing on any real or personal property collateral securing the MCA; and (ii)  if Beneficiary forecloses on any real property collateral securing the MCA:  (A) the amount of the MCA may be reduced only by the price for which that Collateral is sold at the foreclosure sale, even if the Collateral is worth more than the sale price, and (B) Trustee, Beneficiary and Secured Parties may collect from Guarantor and/or Non-Obligor (including enforcing this Deed of Trust against Guarantor and/or Non-Obligor) even if Trustee, Beneficiary or Secured Parties, by foreclosing on the real property collateral, has destroyed any right Guarantor and/or Non-Obligor may have to collect from Borrower.  This is an unconditional and irrevocable waiver of any rights and defenses Guarantor and/or Non-Obligor may have because the MCA may be secured by real property other than the Property.

(d)    Guarantor and/or Non-Obligor waive any right or defense it may have at law or equity, to a fair market value hearing or action to determine a deficiency Judgment after a foreclosure of any real property other than the Property hereby encumbered.

(e)    Guarantor and/or Non-Obligor are solely responsible for keeping informed of the financial condition and business operations of Borrower and all other circumstances affecting the ability of Borrower to pay and perform Borrower's obligations to Trustee, Beneficiary and Secured Parties, and agrees that Trustee, Beneficiary and Secured Parties will have no duty to disclose to Guarantor and/or Non-Obligor any information which Trustee, Beneficiary or Secured Parties may receive about the financial condition, business operations, or any other circumstances bearing on the ability of Borrower to perform.

is not intended to constitute a payment of, or with respect to, the Secured Obligations and, therefore, Grantor and Beneficiary and Secured Parties specifically intend that the Secured Obligations shall not be reduced by the value of the Rents and Leases assigned. Such reduction shall occur only if, and to the extent that, Beneficiary or a Secured Party actually receives Rents pursuant to the Assignment of Rents and applies those Rents to the Secured Obligations. Grantor agrees that the value of the License equals the value of the Assignment of Rents. The Assignment of Rents will terminate upon the release of this Deed of Trust.

51.    **Loan Charges.** Secured Parties intend at all times to comply with the laws of the State of Texas governing the maximum rate or amount of interest payable on or in connection with the Secured Obligations (or applicable United States federal law to the extent that it permits Secured Parties to contract for, charge, take, reserve or receive a greater amount of interest than under Texas law). If Applicable Law is ever judicially interpreted so as to render usurious any amount payable under the Transaction Documents, or contracted for, charged, taken, reserved or received with respect to the Secured Obligations, or if acceleration of the maturity of the Secured Obligations, or if any prepayment by Grantor results in Grantor having paid any interest in excess of that permitted by any applicable law, then Grantor and Secured Parties expressly intend that all excess amounts collected by Secured Parties shall be applied to reduce the unpaid principal balance of the Secured Obligations (or, if the Secured Obligations have been or would thereby be paid in full, shall be refunded to Grantor), and the provisions of the Transaction Documents immediately will be deemed reformed and the amounts thereafter collectible under the provisions of the Transaction Documents reduced, without the necessity of the execution of any new documents, so as to comply with any Applicable Law, but so as to permit the recovery of the fullest amount otherwise payable under the Transaction Documents. The right to accelerate the maturity of the Secured Obligations does not include the right to accelerate any interest which has not otherwise accrued on the date of such acceleration, and Secured Parties does not intend to collect any unearned interest in the event of acceleration. All sums paid or agreed to be paid to Secured Parties for the use, forbearance or detention of the Secured Obligations shall, to the extent permitted by Applicable Law, be amortized, prorated, allocated and spread throughout the full term of the Secured Obligations until payment in full so that the rate or amount of interest on account of the Secured Obligations does not exceed the applicable usury ceiling. Notwithstanding any provision contained in the Transaction Documents that permits the compounding of interest, including any provision by which any accrued interest is added to the principal amount of the Secured Obligations, the total amount of interest that Grantor is obligated to pay and Secured Parties is entitled to receive with respect to the Secured Obligations will not exceed the amount calculated on a simple (i.e., noncompounded) interest basis at the maximum rate on principal amounts actually advanced to or for the account of Borrower, including all current and prior advances and any advances made pursuant to the Instrument or any other Transaction Document (such as for the payment of Impositions and similar expenses or costs).

52.    **Property And Liability Insurance - Delivery Of Policy to Beneficiary.** Notwithstanding any term or provision of the Transaction Documents to the contrary, Grantor will not be required to deliver the original (or a duplicate original) of any renewal policy of insurance to Lender more than 15 days prior to the expiration date of the policy then held by Beneficiary or Secured Parties.

53.    **Reimbursement for Certain Taxes.** If, while the Secured Obligations are owned by a non-resident of the State of Texas, or by a corporation organized under the laws of a state other than Texas with its principal offices outside the State of Texas, any state, county or municipal tax or assessment is levied within the State of Texas against that owner of the Secured Obligations, either in terms or practical effect (whatever the legal incidence of such tax or assessment) on account of the Secured Obligations or this Deed of Trust, or the right to enforce the same, or on account of that owner's receipt of interest or other payments thereunder, Grantor will reimburse that owner, promptly upon advice therefrom, the amount of each such tax or assessment, provided that if such tax or assessment shall be of such nature, in law, and of such amount for any year, that payment thereof, in its entirety, in addition to all other payments to be made by Grantor under the Transaction Documents, will constitute payment of "interest" in the statutory sense of that word, in excess of the Maximum Rate, Grantor's obligation to make reimbursement shall apply to only so much, if any, of each such tax or assessment as may be reimbursed without exceeding the Maximum Rate. If the passage of legislation imposing or authorizing the imposition of any such state, county or municipal tax or assessment, then at the option of Beneficiary, the Secured Obligations will be due within six months after notice to Grantor.

54.    **Notice of Final Agreement. THIS WRITTEN DEED OF TRUST AND THE TRANSACTION DOCUMENTS EXECUTED IN CONNECTION HEREWITH REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

Doc
63806    Bk
OR    Vol
176    Pg
480

THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

Grantor is signing this Deed of Trust effective as of the day and year first written above.

**GRANTOR**

Address for Notices:
824 Mullins Lane
Benton, KY 42025

**MCCLAIN FEED YARD, INC.**, a Texas corporation

By: _____

BRIAN KEITH MCCLAIN
President

Address for Notices:
824 Mullins Lane
Benton, KY 42055

**7M CATTLE FEEDERS, INC.**, a Kentucky corporation

By: _____

BRIAN KEITH MCCLAIN
President

Doc
63806
Bk
OR
Vol
176
Pg
481

STATE OF ~~TEXAS~~ Kentucky )
                                        ) SS
COUNTY OF Marshall )

    This instrument was acknowledged before me on April 1, 2021 by BRIAN KEITH MCCLAIN, President on behalf of MCCLAIN FEED YARD, INC., a Texas corporation.

_Susan Sedlock_
(Signature of officer)
_Notary Public_
(Title of officer)

My Commission Expires: 3-4-2023

> SUSAN SEDLOCK
> NOTARY PUBLIC
> STATE AT LARGE - KENTUCKY
> ID # 617673
> MY COMMISSION EXPIRES MARCH 04, 2023

STATE OF ~~TEXAS~~ Kentucky )
                                        ) SS
COUNTY OF Marshall )

    This instrument was acknowledged before me on April 1, 2021 by BRIAN KEITH MCCLAIN, President on behalf of 7M CATTLE FEEDERS, INC., a Kentucky corporation.

_Susan Sedlock_
(Signature of officer)
_Notary Public_
(Title of officer)

My Commission Expires: 3-4-2023

> SUSAN SEDLOCK
> NOTARY PUBLIC
> STATE AT LARGE - KENTUCKY
> ID # 617673
> MY COMMISSION EXPIRES MARCH 04, 2023

McClain MCA 2018
Deed of Trust, Assignment of Rents and Security Agreement

21

Doc
63806
Bk
OR
Vol
176
Pg
482

## EXHIBIT A-1

McClain MCA 2018
DEED OF TRUST, ASSIGNMENT OF RENTS AND SECURITY AGREEMENT

### Legal Description of Real Estate

Deaf Smith County, Texas

TRACT 2:

A 36.03 acre tract, more or less, out of the Southwest part of Section 26, Block K-8, Abstract No. 1370, Certificate Number 128 of the T. T. R. R. Co. Surveys in Deaf Smith County, Texas, described by metes and bounds as follows:

BEGINNING at a number 60 common nail found for the Southwest corner of Section 26, Block K-8 whence a 1-1/2 inch iron pipe found for the Southeast corner of said section bears North 89 degrees 56 minutes 00 seconds East 5321.58 feet;

THENCE North 89 degrees 56 minutes 00 seconds East along the South line of said section, 48.80 feet to a 1/2 inch iron rod set in the East physical line of Farm Road 1057 for the Southwest and beginning corner of this tract;

THENCE North 00 degrees 12 minutes 00 seconds West along the East physical line of Farm Road 1057, at 30.00 feet pass a 1/2 inch iron rod set for reference and at a total distance of 2587.27 feet a 1/2 inch iron rod set for corner;

THENCE North 89 degrees 54 minutes 43 seconds East 606.84 feet to a 1/2 inch iron rod set in the East line of a tract known as the West 40 acres of the Southwest 1/4 of said section whence a 1/2 inch iron rod set for the Northeast corner of the tract known as the West 40 acres of the Southwest 1/4 of said section bears North 00 degrees 11 minutes 29 seconds West 71.78 feet;

THENCE South 00 degrees 11 minutes 29 seconds East at 2557.50 feet pass a 1/2 inch iron rod set for reference and at a total distance of 2587.50 feet a 1/2 inch iron rod found in the South line of said section for the Southeast corner of the track known as the West 40 acres of the Southwest 1/4 of said section;

THENCE South 89 degrees 56 minutes 00 seconds West along the South line of said section, 606.45 feet to the place of beginning.

Doc          Bk        Vol        Pg
    63806    OR              176    483

TRACT 3:

A 20.00 acre tract out of the Southwest part of Section 26, Block K-8, Certificate Number 128 of the T.T R.R. Co. Surveys in Deaf Smith County, Texas, described by metes and bounds as follows:

BEGINNING at a 1/2 inch iron rod with cap marked "RPLS 1848" found in the South line of Section 26 for the Southwest corner and POINT OF BEGINNING of this tract, whence a number 60 common nail found for the Southwest corner of Section 26, Block K-8 bears South 89 degrees 56 minutes 00 seconds West 655.25 feet;

THENCE North 00 degrees 11 minutes 29 seconds West, a distance of 2587.50 feet a fence corner post for the Northwest corner of this tract;

THENCE North 89 degrees 54 minutes 43 seconds East, a distance of 336.69 feet to a 1/2 inch iron rod with cap marked "HBD" set for the Northeast corner of this tract;

THENCE South 00 degrees 11 minutes 29 seconds East, at a distance of 2557.62 feet pass a 1/2 inch iron rod with cap marked "HBD" set for reference, continue for a total distance of 2587.62 feet a point on the South line of Section 26, whence a 1-1/2 inch iron pipe found for the Southeast corner of Section 26 bears North 89 degrees 56 minutes 00 seconds East, 4329.64 feet;

THENCE South 89 degrees 56 minutes 00 seconds West, along the South line of Section 26, a distance of 336.69 feet to the POINT OF BEGINNING.

Doc 63806 Bk OR Vol 176 Pg 484

### EXHIBIT A-2

McClain MCA 2018
DEED OF TRUST, ASSIGNMENT OF RENTS AND SECURITY AGREEMENT

### Legal Description of Real Estate

Parmer County, Texas

TRACT 1:

A tract of land being all of Section 25 and a portion of Section 24 of Charles E. Harding's Subdivision of Capitol League 473 and parts of Capitol Leagues 459, 460, 461, 472 and 474 in Parmer County, Texas, as shown by the map or plat thereof of record in Volume 6, Page 164, Deed Records of Parmer County, Texas, and being described by metes and bounds as follows:

BEGINNING at a 1/2 inch iron rod with camp stamped "Furman RPLS 1959" set for the southwest corner of said Section 25, being the common corner of Sections 25-36-35-26 from whence a 1/2 inch iron rod found for the common corner of sections 27-34-33-28, all in said subdivision bears North 89º 56' 32" west, 10,564.82 feet, the southwest corner of Section 36 and the southeast corner of Section 35 bears South 00º 11' 46" West, 5,281.81 feet, from this point a harrow tooth found as called for in that certain instrument recorded in Volume 225, Page 730, of the Deed Records of Parmer County, Texas, for the Northwest corner of Section 1, Block C of Capitol Syndicate Subdivision in Parmer County, Texas, as shown by Plat thereof of record in Volume 2, Page 495 of said Deed Records bears West (Bearing Basis) 1,411.64 feet;

THENCE North 00º 11' 46" East along the common line of Sections 25 and 26, and the common line of Section 24 and 23, of said Charles E. Harding's Subdivision, and along the center of a road, at 5,281.61 feet pass the common line of Sections 25-26-23-24 a total distance of 8,503.54 feet to a 3/4 inch iron pipe found as called for in that certain instrument recorded in Volume 156, Page 603 of said Deed Records, and in Volume 2, Page 219 of the Field Note Records of Parmer County, Texas, from whence the common corner of Sections 24-23-14-13 of said Charles E. Harding's Subdivision bears North 00º 11' 46" East 5,281.61 feet and 1 1/4 inch iron pipe with 5/8 inch rod adjacent found for the common corner of Sections 12-13-14-11 of said Charles E. Harding's Subdivision, as called for in that certain instrument recorded in Volume 2, Page 343, of said Field Note records bears North 00º 11' 46" East 7,341.28 feet;

THENCE South 89º 40' 58" East 2,100.84 feet along a fence line and along the North line of this tract of land and the North line of that certain tract of land described in said Volume 156, Page 603 and said Volume 2, Page 219 to a 3/4 inch iron pipe found as called for in said Volume 156, Page 603 and said Volume 2, Page 219, said North line being monumented and generally accepted on the ground for over 25 years, from whence the Northeast corner of Section 24 and the Southeast corner of Section 14 of said Charles E. Harding's Subdivision bears North 00º 11' 07" East 7,345.07 feet;

Doc 63806    Bk OR    Vol 176    Pg 485

THENCE South 00º 11' 07" West at 3,187.40 feet pass a 3/4 inch iron pipe found, this iron pipe is a monument of record in said Volume 156, Page 603 and said Volume 2, Page 219 for the Southeast corner of Section 24 of said Charles E. Harding's Subdivision, it is however the Professional opinion of this surveyor that this corner lies in the East line of this survey but 26.81 feet North of the actual section corner, at 3,214.21 feet pass what is in my Professional opinion the Southeast corner of Section 24 and the Northeast corner of Section 25 of said Charles E. Harding's Subdivision at 3,301.75 feet pass a 1 1/2 inch iron pipe found as called for in said Volume 156, Page 603 and said Volume 2, Page 219 for the Southwest corner of Section 22 and the Northwest corner of Section 27 in Township 1 North, Range 3 East of a Capitol Syndicate Subdivision as shown by Plat thereof of record in Volume 5, Page 394 of said Deed Records, a total distance of 8,493.86 feet to a point being the Southeast corner of Section 25 and the Northeast corner of Section 36 of said Charles E. Harding's Subdivision from whence the Southeast corner of said Section 36 bears South 00º 11' 07" West 5,279.65 feet from this point a railroad spike found as called for in that certain instrument recorded in Volume 225, Page 730 of the Deed Records of Parmer County, Texas, for the Northwest corner of Section 1, Block C of Capitol Syndicate Subdivision in Parmer County, Texas as shown by Plat thereof record in Volume 2, Page 495 of said Deed Records bears East (Bearing Basis) 1,324.17 feet;

THENCE North 89º 56' 48" West 2,102.46 feet along the South line of Section 25 and the North line of Section 36 of said Charles E. Harding's Subdivision to the POINT OF BEGINNING and containing 410.0 acres of land, more or less.

Doc 63806    Bk OR    Vol 176    Pg 486

**EXHIBIT B**

McClain MCA 2018
DEED OF TRUST, ASSIGNMENT OF RENTS AND SECURITY AGREEMENT

**Additional Property**

associated with Deed of Trust by McClain Feed Yard  and 7M Cattle Feeders on land located in Deaf Smith and Parmer
Counties, Texas

(list specific additional Property, if any)

<u>Fixtures</u>

Buildings, fixtures, and equipment associated with agricultural production or the productions of farm products, including but not
limited to:

| Attached Equipment |
| --- |
| 2 x Stationary Roto-Mixers |
| 6 x Liquid Storage Tanks |
| 9 x Hyd. Working Chutes (Snakes Not Included) |
| 1 x 12 x 70 Truck Scale |
| 2 x 12 x 70 Cattle Scales With Fencing and Gates |
| 1 x Grain Probe |

Doc 63806    Bk OR    Vol 176    Pg 487

All Water Rights related to but not limited to:

| Section | District Number | Permit Number | Permit Status | Documents | Recently Tested | Current GPM Estimate |
|---------|----------------|---------------|---------------|-----------|-----------------|----------------------|
| Subject Water Wells - 410.0 Acre Feedyard Tract | | | | | | |
| 24 | 79667 | 3694 | Current | Yes | No | 40 |
| 24 | 79677 | 3974 | Current | Yes | Yes | 64 |
| 24 | 79688 | 3977 | Current | Yes | Yes | 53 |
| 24 | 79681 | 3978 | Current Destroyed | Yes | Yes | 0 |
| 25 | 82449 | 40124 | Current | None | No | 0 |
| 25 | 79188 | 3423 | Current | Yes | Yes | 40 |
| 25 | 79032 | 3289 | Abandoned | Yes | No | 0 |
| 25 | 79544 | 3831 | Current | Yes | No | 40 |
| 25 | 78540 | 2689 | Current | Yes Mill and Office | No | 40 |
| 25 | 79189 | 3424 | Current | Yes | No | 40 |
| 24 | 79719 | 4021 | Current | Yes | No | 40 |
| 25 | 83148 | 50106 | Current | None | No | 0 |
| Total | | | | | | 357 |
| Total Tested | | | | | | 157 |

CHG & RETURN
AA & R, L.L.P.

Doc 63806   Bk OR   Vol 176   Pg 488

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE
RENTAL OR USE OF THE DESCRIBED REAL PROPERTY
BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCIBLE
UNDER FEDERAL LAW

STATE OF TEXAS     }
                   }   OFFICIAL PUBLIC RECORDS
COUNTY OF PARMER   }

I hereby certify that this instrument was FILED
on the date and at the time stamped hereon by
me and was duly RECORDED in the Volume and Page
of the RECORDS of Parmer County, Texas.

FILED FOR RECORD IN PARMER COUNTY
Susie Spring, COUNTY CLERK

ON: Jun 01,2021 AT 10:40A

Document Number:    63806

Receipt Number - 26856

By _____
Breann Saenz, Deputy

FILED and certified as RECORDED in the **Official Public Records** of Deaf Smith County on the date and time stamped.   Rachel Garman, County Clerk,
Deaf Smith County, Texas

By: _____   Deputy   **June 14, 2021 (9:41am)**   21-1198