# EXHIBIT C

Prepared by;
Randa Barton
Polsinelli PC
Frost Bank Tower
2950 N. Harwood, Suite 2100
Dallas, TX 75201

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

RABO AGRIFINANCE LLC
14767 N. Outer 40 Rd., Suite 400
Chesterfield, MO 63017
Attn: Closing Department

Space above this line for Recorder's Use

McClain MCA 2018

Real Estate Term Loan 1: 22114481
Operating Line of Credit 1: 22114482
Real Estate Term Loan 2: 22117432
Operating Line of Credit 2: 22117434

**DEED OF TRUST, ASSIGNMENT OF RENTS AND SECURITY AGREEMENT**

(Deaf Smith and Parmer Counties, Texas)

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

THIS DEED OF TRUST ALSO CONSTITUTES A FINANCING STATEMENT FILED AS A FIXTURE FILING UNDER THE UCC

This deed of trust ("Deed of Trust") is dated as of January 8, 2020. It is by MCCLAIN FEED YARD, INC., a Texas corporation ("McClain Feed Yard ") and 7M CATTLE FEEDERS, INC, a Kentucky corporation ("7M Cattle Feeders") (McClain Feed Yard and 7M Cattle Feeders are herein individually and collectively, "Grantor"), to and in favor of PHILIP R. KIRKPATRICK, an individual, as trustee ("Trustee"), whose address for purposes of this Deed of Trust is 14767 N. Outer 40 Rd., Suite 400, Chesterfield, MO 63017, for the benefit of RABO AGRIFINANCE LLC, a Delaware limited liability company, as agent for itself and the other Secured Parties (defined herein) under the Collateral Agency Agreement (defined herein; and Rabo AgriFinance LLC, in that capacity, "Beneficiary").

RABO AGRIFINANCE LLC, a Delaware limited liability company, as Lender ("Lender") has agreed to make up to $23,957,500.00 in loans to Borrower (as defined in the Facility Sheet(s)) under the terms and conditions of the Master Credit Agreement between Grantor and Lender dated May 11, 2018, as may be amended, modified, replaced, or supplemented from time to time (the "MCA"). Each capitalized term used in this Deed of Trust that is defined in the MCA and not defined in this Deed of Trust will have the meaning specified in the MCA. This Deed of Trust will be interpreted in accordance with the Drafting Conventions.

Grantor has or may also enter into certain derivatives transactions under Hedging Agreements with Swap Counterparties, under which Grantor has or may incur Hedging Obligations to Swap Counterparties.

The Loan Obligations (defined in the MCA) may be, from time to time, guaranteed by Guarantor under the terms and conditions of one or more guaranties in favor of Collateral Agent. The Hedging Obligations are guaranteed by Guarantor under the terms and conditions of the Hedging Agreements and/or a separate guaranty of the Hedging Obligations (the MCA, the

Guaranty, and the Hedging Agreements and any separate guaranty of the Hedging Obligations are herein sometimes individually and collectively referred to as the "Debt Instrument").

Non-Obligor(s) have an economic interest in Borrower or will obtain some other material financial benefit as a result of Secured Parties' entering into the Secured Obligation Documents (defined herein). Secured Parties require that Non-Obligor execute this agreement as a condition of the Secured Obligation Documents.

TO SECURE repayment of the indebtedness evidenced by the Note (defined herein) and payment and performance of all other Secured Obligations (defined herein), Grantor irrevocably and unconditionally grants, bargains, sells, and conveys to Trustee, in trust, for the benefit of Beneficiary, WITH POWER OF SALE and right of entry and possession wherever located, whether now owned or hereafter acquired or arising, and, except as indicated, whether constituting real estate or personal property (collectively, the "Property"): (a) the real estate and any interest in the real estate located in Deaf Smith and Parmer Counties, Texas, and described in EXHIBIT A-1 and EXHIBIT A-2 (the "Land"); (b) all buildings, structures, improvements, fixtures, attachments, appliances, equipment, machinery and other articles now or hereafter erected on, affixed or attached to, or located in or on the Land, including all wells, watering and irrigation apparatus, pumps, motors, generators, pipes, center pivot irrigators and sprinklers, windmills, and fences (the "Improvements"); (c) all easements, rights-of-way and rights appurtenant to the Land or used in connection with the Land or as a means of access thereto ("Easements"); (d) the ground water on, under, pumped from or otherwise available to the Property or any drainage, retention, ditch, canal, reservoir, or other water rights, whether as a result of overlying groundwater rights, contractual rights, or otherwise and whether riparian, appropriative, or otherwise; the right to remove or extract any such ground water including any permits, rights or licenses granted by any governmental authority and any rights granted or created by any easement, covenant, agreement or contract with any Person; and any rights to which the Property or Grantor is entitled with respect to surface water, whether such rights are appropriative, riparian, prescriptive or otherwise and whether or not pursuant to historical use, contractual agreement, permit or other governmental authorization; any water right, water allocation for water not yet delivered, distribution right, delivery right, any proscriptive, contractual, easement or other rights necessary or convenient to convey any water to the Property, water storage right, or other water-related entitlement appurtenant to or otherwise applicable to the Property by virtue of the Property being situated within the boundaries of any governmental water district irrigation district or other local agency or within the boundaries of any private water company, mutual water company, or other non-governmental entity (collectively, "Water Rights"), including those rights, shares and other property described in EXHIBIT B; (e) all other tenements, hereditaments and appurtenances to the Land; (f) minerals, oil, gas, coal, metallic ores, other minerals and any other hydrocarbon substances, minerals, mineral interests, royalties, overriding royalties, production payments, net profit interests and other interests and other interests and estates in, under and on the Land and other oil, gas, coal, metallic ores and any other mineral interests with which any of the foregoing interests or estates are pooled or unitized, including surface damage awards or settlements (the "Mineral Rights"); (g) timber now or hereafter standing or cut; (h) leases, subleases, licenses, occupancy agreements, concessions and other agreements, granting a possessory interest in and to, or the right to extract, mine, reside in, sell, or use the Property (collectively, the "Leases"); (i) all utility contracts, maintenance agreements, management agreements, service contracts and other agreements directly related to the operation and maintenance of the Property; (j) all bushes, groves, trees, plants, vines or other plantings, upon or under the Land ("Plantings"); (k) working drawings, instructional manuals, and rights in processes directly related to the operation of the Property; (l) other tangible personal property of every kind and description, whether stored on the Land or elsewhere, including all goods, materials, supplies, tools, books, records, chattels, furniture, machinery and equipment (except motor vehicles, trailers, and planting, tillage and harvesting equipment rolling stock) or which is in all cases (i) directly related to the operation of the Property or acquired in connection with any construction or maintenance of the Land or the Improvements (ii) affixed or installed, or to be affixed or installed, in any manner on the Land or the Improvements; (m) all permits and licenses relating or pertaining to the use or enjoyment of the Property; (n) proceeds of and any unearned premiums on any insurance policies covering the Property, including the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Property (the "Insurance Claims"); (o) all awards made for the taking by condemnation or the power of eminent domain, or by any proceeding or purchase in lieu thereof, of the whole or any part of the Real Estate (the "Condemnation Awards"); (p) money or other personal property of Grantor in addition to the foregoing deposited with or otherwise in Beneficiary's, Trustee's or Secured Parties' possession; (q) rights and interests under the Hedging Agreements, including all rights to the payment of money from Secured Parties or Trustee under the Hedging Agreements; and all accounts, deposit accounts, and general intangibles, including payment intangibles, described in any of the Hedging Agreements; (r) the right, in the name and on behalf of Grantor, upon notice to Grantor, to appear in and defend any action or proceeding brought with respect to the Property and to commence any action or proceeding to protect the interest of Trustee, Beneficiary or Secured

Doc 52194 Bk OR Vol 164 Pg 153

Parties in the Property; and (s) substitutions, replacements, additions, accessions and proceeds for or to any of the foregoing, and all books, records and files relating to any of the foregoing, including, without limitation, computer readable memory and data and any computer software or hardware reasonably necessary to access and process such memory and data. To have and to hold the Property onto Trustee, Trustee's successor in Trust, and Trustees assigns forever.

1. **Secured Obligations.** Grantor makes the grant, conveyance, transfer and assignment above, makes the irrevocable and absolute assignment in Section 4, and grants the security interest under Section 5, to secure payment and performance of the following obligations (the "Secured Obligations") in any order of priority that Beneficiary may choose: (a) all Obligations (defined in the MCA), including (i) the Real Estate Term Loan 1 Note dated as of May 11, 2018, from McClain Feed Yard to Lender in the original principal amount of $332,500.00; (ii) the Operating Line of Credit 1 Note dated as of the date of this Deed of Trust, from McClain Feed Yard to Lender in the original principal amount of $15,800,000.00; (iii) the Real Estate Term Loan 2 Note dated as of July 24, 2019, from 7M Cattle Feeders to Lender in the original principal amount of $625,000.00; (iv) the Operating Line of Credit 2 Note dated as of the date of this Deed of Trust, from 7M Cattle Feeders to Lender in the original principal amount of $7,200,000.00 (the Real Estate Term Loan 1 Note, the Operating Line of Credit 1 Note, the Real Estate Term Loan 2 Note, and the Operating Line of Credit 2 Note, together with all extensions, renewals, modifications, substitutions and amendments thereof are herein collectively, the "Note"); (v) all Hedging Obligations; and (vi) all other indebtedness, liabilities and obligations of Grantor to Lender and the Swap Counterparties arising pursuant to any of the Transaction Documents, whether now existing or hereafter arising, whether direct, indirect, related, unrelated, fixed, contingent, liquidated, unliquidated, joint, several, or joint and several; (b) all obligations of Grantor under this Deed of Trust; (c) any obligations due to a Banking Counterparty with regard to Banking Obligations; (d) all obligations of Grantor to Lender, Coöperatieve Rabobank U.A., (trading as Rabobank), a foreign banking organization organized as a cooperative bank under the laws of The Netherlands ("Rabobank"), or any other Affiliate of Lender (Lender, Rabobank and any other Affiliate of Lender are herein individually and collectively, "Secured Parties"), whether now existing or hereafter incurred or created, whether voluntary or involuntary, whether obligatory or non-obligatory; whether due or not due, whether absolute or contingent, or whether incurred directly or acquired by assignment or otherwise, under the terms and conditions of any other written instrument or agreement executed by Grantor and which specifically recites that those obligations are secured by this Deed of Trust; and (e) any of the foregoing that arises after the filing of a petition by or against Grantor under an Insolvency Proceeding. All Persons who have or acquire an interest in the Property will be deemed to have received notice of, and will be bound by, the terms of the MCA, the other Transaction Documents, and each other agreement or instrument made or entered into in connection with each of the Secured Obligations (the Transaction Documents and those other agreements or instruments, the "Secured Obligation Documents"). These terms include any provisions in the Secured Obligation Documents which permit borrowing, repayment and reborrowing, or which provide that the rate of interest on one or more of the Secured Obligations may vary from time to time. This Deed of Trust does not secure any obligation which is unsecured pursuant to the express terms of the MCA or any other document, agreement or instrument. Without limitation of the foregoing, this Deed of Trust does not secure the indebtedness, liabilities and obligations of Guarantor as guarantor under the terms and conditions of the Guaranty or any other guaranty given by Guarantor to secure the Hedging Obligations.

2. **Future Secured Obligations.** The Secured Obligations include future advances made by Beneficiary or Secured Parties, at their option, and for any purpose, and all other future Secured Obligations. Those future advances and other future Secured Obligations are secured to the same extent as if made or incurred on the date of the execution of this Deed of Trust, and have priority as to third Persons with or without actual notice from the time this Deed of Trust is filed for record as provided by law. The total amount of indebtedness secured by this Deed of Trust may decrease or increase from time to time. The unpaid balance of any Revolving Line of Credit or Hedging Obligations secured by this Deed of Trust may at certain times be zero. This Deed of Trust will remain in full force and effect notwithstanding any zero balance. Grantor shall not file for record any notice limiting the maximum amount secured by this Deed of Trust (a "Maximum Amount Notice"). A Maximum Amount Notice will be an Event of Default (defined herein). Nothing in this Section 2 will constitute a commitment to make additional or future advances which are not specified by the other terms of the MCA or enter into future derivatives transactions in any amount. The unpaid balance of any revolving line of creditor Hedging Obligations secured by this Deed of Trust may at certain times be zero. This Deed of Trust will remain in full force and effect notwithstanding any zero balance.

3. **Note Maturity Date.** The latest date on which any Note matures is June 1, 2028.

4. **Assignment.** Grantor irrevocably and unconditionally assigns to Beneficiary and grants Beneficiary a security interest in, the Leases; all rents and other benefits derived from the Leases, and all other issues, profits, royalties,

Doc 62194 Bk OR Vol 164 Pg 164

bonuses, income and other benefits derived from or produced by the Real Estate, including but not limited to, any monies, proceeds, damages, Judgments or payments in lieu thereof, received by or due to Grantor occasioned by any mineral or geothermal exploration, wind energy, solar energy or drilling activity on or under the Real Estate, all prepaid rents, security deposits and other supporting obligations (the "Rents"; and this assignment, the "Assignment of Rents"). Beneficiary may collect Rents with or without taking possession of the Property. Beneficiary confers upon Grantor a license to collect and retain the Rents as they become due and payable, so long as there is no Event of Default (the "License"). If an Event of Default has occurred, Beneficiary may terminate the License without notice to or demand upon Grantor. Beneficiary, by its acceptance of this Deed of Trust does not assume any duty or obligation under the Leases. The acceptance by Beneficiary of the assignment of Leases and Rents and profits with all the rights, powers, privileges and authority so granted will not obligate Beneficiary to assume any obligations in respect of the Leases and Rents and profits or under the Leases, or take any action thereunder or to expend any money or incur any expense or perform or discharge any obligation, duty or liability in respect of the Leases and Rents and profits or under the Leases or to assume any obligation or responsibility for the nonperformance of the provisions thereof by Grantor. The definition of Leases shall include all "Leases" as defined or described in Chapter 64 of the Assignment of Rents Act, and the definition of Rents shall include all "Rents" as defined in the Assignment of Rents Act. Furthermore, it is the intent of the parties to comply with the requirements of the Assignment of Rents Act in connection with the assignment of Leases and Rents. Accordingly, the enforcement of rights related to the assignment of Leases and Rents shall be subject to compliance with the provisions of the Assignment of Rents Act, including, without limitation, the notice requirements of Sections 64.054, 64.055(a) and 64.056 of the Texas Property Code.

5. Grant of Security Interest. This Deed of Trust is a security agreement under the Uniform Commercial Code in effect in the State of Texas (the "UCC"); and Grantor grants Trustee and Beneficiary a security interest in and pledges and assigns to Trustee and Beneficiary all of Grantor's right, title and interest in the Property, to the extent characterized as personal property (the "Personalty"). The address of Grantor adjacent to its signature below is the mailing address of Grantor as debtor under the UCC. The address for Trustee specified in the first paragraph of this Deed of Trust is the address for Trustee as secured party under the UCC; and the address for Beneficiary specified in Section 24 is the address for Beneficiary as secured party under the UCC. As used in this Deed of Trust, the term "lien" is synonymous with the term "lien and security interest."

6. Warranty of Title. Grantor represents and warrants that Grantor lawfully possesses and holds good and marketable fee simple title to all of the Land and the Improvements, that Grantor has the right, power and authority to grant, convey and assign the Property; and that the Property is unencumbered. Grantor covenants that Grantor will warrant and forever defend generally the title to, and ownership and possession of, the Property against all claims and demands, with all costs and expenses of defense to be borne by Grantor. Grantor especially agrees and declares that the separate estate of each of them, whether vested, contingent or in expectancy, is hereby conveyed and shall be bound for the payment and performance of the Secured Obligations.

7. Additional Representations. Grantor represents to Beneficiary and Secured Parties that: (a) the Property does not represent the proceeds of unlawful activity under any state, federal or foreign law; (b) the Property includes all property and rights which may be reasonably necessary or desirable to enable Grantor to use, enjoy and operate the Land and the Improvements for the present uses thereof; (c) none of the Land or Improvements is subject to any Lien, offset or claim; (d) Grantor owns the Personalty free and clear of any security interests, reservations of title or conditional sales contracts, and there is no presently valid financing statement affecting the Personalty on file in any public office; (e) Grantor has title to, or (in the case of leased property) valid leasehold interests in, all of their properties and assets, real and personal, including the properties and assets and leasehold interests reflected in the Financial Information (other than any properties or assets disposed of in the ordinary course of business); (f) the legal name of Grantor is as appears in the first paragraph of this agreement; (g) Grantor has not used any trade name, assumed name or other name except Grantor's name stated in the first paragraph of this agreement; (h) if Grantor is anything other than a natural Person, it has complied with all Applicable Laws concerning its organization, existence and the transaction of its business, and is in existence and good standing in its state of organization and each state in which it conducts its business; (i) the execution, delivery and performance by Grantor of this Deed of Trust is within the powers and authority of Grantor and has been duly authorized; (j) to Grantor's knowledge, this Deed of Trust does not conflict with any Applicable Law; (k) this Deed of Trust is a legal, valid and binding agreement of Grantor, enforceable against Grantor in accordance with its terms, and any instrument or agreement required hereunder, when executed and delivered, will be similarly legal, valid, binding and enforceable; (l) there has been no Material Adverse Effect as to Grantor since the effective date the Financial Information was provided to Beneficiary or Secured Parties; (m) there is no lawsuit, tax claim or other dispute pending

DOC 52199 BK DR Vol 164 Pg 165

or to Grantor's knowledge threatened against Grantor or the Property that, if determined adverse to Grantor, is reasonably likely to have a Material Adverse Effect; (n) Grantor is not the subject of any Judgment; (o) this Deed of Trust does not conflict with, nor is Grantor in default on any credit agreement, indenture, purchase agreement, guaranty, capital lease, or other investment, agreement, or arrangement presently in effect providing for or relating to extensions of credit in respect of which Grantor is in any manner directly or contingently obligated; (p) Grantor has filed all tax returns (federal, state, and local) required to be filed and has paid all taxes, assessments, and governmental charges and levies thereon, including interest and penalties; (q) before signing this Deed of Trust, Grantor researched, to the satisfaction of Grantor, and inquired into the previous uses and ownership of the Real Estate, and based on that due diligence, to the best of Grantor's knowledge, no Hazardous Substance has been disposed of or released or otherwise exists in, on, under or onto the Real Estate, except as Grantor has disclosed to Beneficiary or Secured Parties in the Environmental Information; (r) Grantor has complied with all current and future laws, regulations and ordinances or other requirements of any Governmental Authority relating to or imposing liability or standards of conduct concerning protection of health or the environment or Hazardous Substances ("Environmental Laws"); (s) Grantor has not received any notices of violations of any Applicable Laws (including Environmental Laws); and Grantor is in compliance with all Applicable Laws; (t) there are no claims, actions, proceedings or investigations pending or threatened against Grantor or affecting the Property with respect to any violations of Applicable Laws; (u) Grantor's place of business, or its chief executive office, if it has more than one place of business, is located at the address specified below; and (v) unless otherwise disclosed to Beneficiary, Grantor is not a "foreign person" within the meaning of Section 1445 of the Internal Revenue Code of 1986; and there is no Event of Default or event which, with notice or lapse of time would be an Event of Default.

8. **Information Accurate and Complete**. All financial statements and other reports, documents, instruments, information and forms of evidence which have been delivered to Beneficiary or Secured Parties concerning Grantor, or the Property (the financial and other information supplied or to be supplied to Beneficiary or Secured Parties in connection with this Deed of Trust is herein referred to as the "Financial Information"), are accurate, correct and sufficiently complete in all material respects to provide Beneficiary and Secured Parties true and accurate knowledge of their subject matter, including, without limitation, all material contingent liabilities. Grantor's submission of any Financial Information or other report, record or information pertaining to the condition or operations, financial or otherwise, of Grantor, from time to time, whether or not required under this Deed of Trust, will be deemed accompanied by a representation by Grantor that the Financial Information or other report, record or information is complete and accurate in all material respects as to the condition or operations of Grantor (and, if applicable, Grantor's Subsidiaries, Affiliates, partners, shareholders, members, or other principals), including, without limitation, all material contingent liabilities and Grantor's business or organizational structure.

9. **Performance of Secured Obligations**. Grantor shall promptly pay and perform each Secured Obligation in accordance with its terms.

10. **Maintenance and Preservation of Property**. Grantor shall: (a) immediately discharge any Lien on the Property which Beneficiary has not consented to in writing, and shall also pay when due each obligation secured by or reducible to a Lien which now or hereafter encumbers or appears to encumber all or part of the Property, whether the Lien is or would be senior or subordinate to this Deed of Trust; (b) not alter, remove or demolish any portion of the Improvements, except as permitted or required by the MCA; (c) maintain (or cause to be maintained) all policies of insurance required under the MCA and pay (or cause payment of) all premiums for that insurance on or prior to the date when due; (d) promptly and completely repair and/or restore any portion of the Property which becomes damaged or destroyed, in a good and workmanlike manner in accordance with sound building practices, whether or not Grantor has received the proceeds of any Insurance Claim; (e) not commit or allow any waste of the Property, nor do or suffer to be done any act whereby the value of any part of the Property may be lessened; (f) not initiate or allow any change in any zoning or other land use classification which affects the Property or any part of it, except as permitted or required by the MCA; (g) if the Land is agricultural, keep the Property in good condition and repair; operate the Property, whether improved pastures, orchards, grazing, timber, or crop lands, in a good and husbandman like manner in accordance with accepted principles of sound agricultural and forestry practices; take all reasonable precautions to control wind and water erosion; fertilize improved pastures, if any, where necessary to maintain a good stand of desirable grasses; protect orchards and timber, if any, by reasonable precautions against loss or damage by fire including the maintenance of appropriate fire breaks; and neither to remove nor permit the removal of any timber, buildings, oil, gas, mineral, stone, rock, clay, fertilizer, gravel or top soil without the prior written consent of Beneficiary; (h) complete appropriation and all other requirements, if any, necessary to obtain the issuance of any license or water permit issued to Grantor, and take all other steps required or advisable for purposes of perfecting and maintaining in good status all other Water Rights; (i) not bring or keep any

article on the Property or cause or allow any condition to exist on it, if that could invalidate or would be prohibited by any insurance coverage required to be maintained by Grantor on the Property or any part of it under this Deed of Trust; and (j) perform all other acts which from the character or use of the Property may be reasonably necessary to maintain and preserve its value and utility.

(a) ***TEXAS FINANCE CODE SECTION 307.052 COLLATERAL PROTECTION INSURANCE NOTICE: (A) GRANTOR IS REQUIRED TO (i) KEEP THE MORTGAGED PROPERTY INSURED AGAINST DAMAGE IN THE AMOUNT SPECIFIED HEREIN; (ii) PURCHASE THE INSURANCE FROM AN INSURER THAT IS AUTHORIZED TO DO BUSINESS IN THE STATE OF TEXAS OR AN ELIGIBLE SURPLUS LINES INSURER OR OTHERWISE AS PROVIDED HEREIN; AND (iii) NAME THE BENEFICIARY AS THE PERSON TO BE PAID UNDER THE POLICY IN THE EVENT OF A LOSS AS PROVIDED HEREIN; (B) SUBJECT TO THE PROVISIONS HEREOF, GRANTOR MUST, IF REQUIRED BY BENEFICIARY, DELIVER TO BENEFICIARY A COPY OF THE POLICY AND PROOF OF THE PAYMENT OF PREMIUMS; AND (C) SUBJECT TO THE PROVISIONS HEREOF, IF GRANTOR FAILS TO MEET ANY REQUIREMENT LISTED IN THE FOREGOING SUBPARTS (A) OR (B), BENEFICIARY MAY OBTAIN COLLATERAL PROTECTION INSURANCE ON BEHALF OF GRANTOR AT GRANTOR'S EXPENSE.***

11. Compliance with Applicable Law Grantor shall not commit or allow any act upon or use of the Property which would violate any Applicable Law, whether now existing or later to be enacted and whether foreseen or unforeseen, or any public or private covenant, condition, restriction or equitable servitude affecting the Property;

12. Taxes and Assessments. Grantor shall pay (a) prior to delinquency, all taxes, levies, charges and assessments, including all ditch, canal, reservoir or other water charges, and assessments on appurtenant Water Stock, imposed by Applicable Law or any public or quasi-public authority or utility company which are (or if not paid, may become) a Lien on all or part of the Property or any interest in it, or which may cause any decrease in the value of the Property or any part of it (individually and collectively "Impositions"); (b) any and all intangible taxes and documentary stamp taxes determined at any time to be due on or as a result of the Secured Obligations, this Deed of Trust or any other Transaction Documents, together with any and all interest and penalties thereon; and (c) taxes, levies, charges and assessments on Beneficiary's or Secured Parties' interest therein or upon this Deed of Trust or the Secured Obligations (collectively, "Mortgage Taxes"); except that if the amount of Mortgage Taxes exceeds the Maximum Rate, Grantor will not be required to pay any such excess. If after the date of this Deed of Trust, the State of Texas passes any law deducting from the value of Land for the purpose of taxation any Lien thereon, or changing in any way the laws for the taxation of Mortgages or debts secured by Mortgage for state or local purposes, or the manner of the collection of any such taxes, so as to affect this Deed of Trust, then within 180 days after notice by Beneficiary to Grantor, Grantor shall pay all Secured Obligations. Notwithstanding the foregoing provisions of this section, Grantor may, at its expense, contest the validity or application of any Imposition by appropriate legal proceedings promptly initiated and conducted in good faith and with due diligence, provided that Beneficiary is satisfied that neither the Property nor any part thereof or interest therein will be at risk of being sold, forfeited, or lost as a result of such contest, and Grantor has posted a bond equal to 115% of the contested amount or furnished such other security required from time to time by Beneficiary for purposes of payment of the contested amount.

13. Damages and Insurance and Condemnation Proceeds. Beneficiary may, at its option, (a) in its own name appear in or prosecute any action or proceeding to enforce any cause of action based on warranty, or for damage, injury or loss to all or part of the Property, and it may make any compromise or settlement of the action or proceeding; (b) participate in any action or proceeding relating to any Condemnation Award; and (c) join Grantor in adjusting any Insurance Claim. All insurance proceeds, Condemnation Awards, and proceeds of any other claim based on warranty, or for damage, injury or loss to the Property which Grantor may receive or be entitled to must be paid to Beneficiary. In each instance, Beneficiary may apply those proceeds first toward reimbursement of all of Beneficiary's costs and expenses of recovering the proceeds or Condemnation Award, including Legal Fees. The balance shall, at Beneficiary's option, be applied to pay or Prepay some or all of the Secured Obligations in such order and proportions as it may choose. GRANTOR HEREBY SPECIFICALLY, UNCONDITIONALLY AND IRREVOCABLY WAIVES ALL RIGHTS OF A PROPERTY OWNER WHICH PROVIDE FOR ALLOCATION OF CONDEMNATION PROCEEDS BETWEEN A PROPERTY OWNER AND A LIENHOLDER, AND ANY OTHER LAW OR SUCCESSOR STATUTE OF SIMILAR IMPORT.

14. Site Visits, Observation and Testing. Beneficiary and its agents and representatives may enter and visit the Property at any reasonable time for the purposes of observing it, performing Appraisals, taking and removing soil or

Doc 521944 BR Vol 164 Pg 157

groundwater samples, and conducting tests on any part of it, as provided in the MCA, and otherwise to determine Grantor's compliance with this Deed of Trust.

15. Defense and Notice of Claims and Actions. At Grantor's sole expense, Grantor shall protect, preserve and defend the Property and title to and right of possession of the Property, and the security of this Deed of Trust and the rights and powers of Beneficiary and Trustee created under it, against all adverse claims. Grantor must give Beneficiary and Trustee prompt notice in writing if any claim is asserted which does or could affect any of these matters, or if any action or proceeding is commenced which alleges or relates to any such claim.

16. Prohibited Transfers. Grantor agrees that a material factor in Secured Parties' decision to enter into the Secured Obligation Documents is the expertise, financial status and other characteristics of Grantor or Borrower. Grantor or Borrower shall not make or permit any Prohibited Transfer. Upon any Prohibited Transfer Beneficiary may declare all Secured Obligations to be due and payable immediately. "Prohibited Transfer" means: (a) any sale, contract to sell, conveyance, encumbrance, pledge, mortgage, lease of the Property to or for the benefit of a Person not the original Grantor under this instrument, and not expressly permitted under this instrument or the other Secured Obligation Documents, or other transfer of all or any material part of the Property or any interest in it, including any transfer of Mineral Rights, Water Rights, or Water Stock, whether voluntary, involuntary, by operation of law or otherwise; (b) if Grantor or Borrower is a corporation, any transfer or transfers of shares of the voting power or the direct or indirect beneficial ownership of Grantor; (c) if Grantor or Borrower is a partnership, withdrawal or removal of any general partner, dissolution of the partnership under Applicable Law, or any transfer or transfers of the partnership interests; (d) if Grantor or Borrower is a limited liability company, withdrawal or removal of any managing member, termination of the limited liability company or any transfer or transfers of the voting power or the ownership of the economic interest in the Grantor or Borrower; or (e) if Grantor or Borrower is a trust, withdrawal or removal of any trustee or revocation of the trust.

17. Compensation and Reimbursement of Costs and Expenses. Grantor shall pay (a) fees in the maximum amounts legally permitted, or reasonable fees as may be charged by Beneficiary or Trustee when the law provides no maximum limit, for any services that Beneficiary or Trustee may render in connection with this Deed of Trust, including Beneficiary's providing a statement or Trustee's rendering of services in connection with a reconveyance; (b) all of Beneficiary's or Trustee's costs and expenses which may be incurred in rendering any such services; and (c) all costs, expenses and other advances which may be incurred or made by Beneficiary or Trustee in any efforts to enforce any terms of this Deed of Trust or protect the Property, including any rights or remedies afforded to Beneficiary or Trustee under Section 20, including but not limited to Appraisals, inspections, insurance premiums, and prevention of waste, whether any lawsuit is filed or not, including any bankruptcy or other voluntary or involuntary proceeding, in or out of court, for the Adjustment of debtor-creditor relationships, or in defending any action or proceeding arising under or relating to this Deed of Trust, including attorneys' fees and other legal costs, costs of any Foreclosure Sale (defined herein) and any cost of evidence of title. If Beneficiary chooses to dispose of Property through more than one Foreclosure Sale, Grantor must pay all costs, expenses or other advances that may be incurred or made by Beneficiary or Trustee in each of those Foreclosure Sales. GRANTOR SHALL INDEMNIFY TRUSTEE, BENEFICIARY AND SECURED PARTIES AGAINST AND SHALL HOLD THEM HARMLESS FROM ALL LOSSES, DAMAGES, LIABILITIES, CLAIMS, CAUSES OF ACTION, JUDGMENTS, COURT COSTS, ATTORNEYS' FEES AND OTHER LEGAL EXPENSES, COST OF EVIDENCE OF TITLE, COST OF EVIDENCE OF VALUE, AND OTHER COSTS AND EXPENSES WHICH EITHER MAY SUFFER OR INCUR: (A) IN PERFORMING ANY ACT REQUIRED OR PERMITTED BY THIS DEED OF TRUST OR ANY OF THE OTHER SECURED OBLIGATION DOCUMENTS OR BY LAW; (B) BECAUSE OF ANY FAILURE OF GRANTOR TO PAY OR PERFORM ANY OF THE SECURED OBLIGATIONS; OR (C) BECAUSE OF ANY ALLEGED OBLIGATION OF OR UNDERTAKING BY BENEFICIARY OR SECURED PARTIES TO PERFORM OR DISCHARGE ANY OF THE REPRESENTATIONS, WARRANTIES, CONDITIONS, COVENANTS OR OTHER OBLIGATIONS IN ANY DOCUMENT RELATING TO THE PROPERTY (OTHER THAN SUCH WARRANTIES, CONDITIONS, COVENANTS OR OTHER OBLIGATIONS IN THE SECURED OBLIGATION DOCUMENTS). THIS AGREEMENT BY GRANTOR TO INDEMNIFY TRUSTEE, BENEFICIARY AND SECURED PARTIES SURVIVES THE RELEASE AND CANCELLATION OF ANY OR ALL OF THE SECURED OBLIGATIONS AND THE FULL OR PARTIAL RELEASE AND/OR RECONVEYANCE OF THIS DEED OF TRUST.

18. Payments Due under this Deed of Trust. Grantor must pay all obligations to pay money arising under this Deed of Trust immediately upon demand by Trustee, Beneficiary or Secured Parties. Each such obligation shall bear interest from the date the obligation arises at the Default Rate.

19. Events of Default. The following each shall be an event of default under this Deed of Trust (an "Event of Default"): (a) an Event of Default under the MCA, including a default termination event or other similar event under any Hedging Agreement which is not cured within any grace or cure period specified therein, if any; (b) a Prohibited Transfer; (c) the Financial Information or any representation in this Deed of Trust is materially incorrect or materially misleading; (d) the filing of any notice limiting the maximum amount secured by this Deed of Trust to a sum less than the Maximum Amount Secured as specified herein, or if no such amount is specified, to any amount; (e) for more than ten days after notice from Beneficiary, Grantor is in default under any term, covenant or condition of this Deed of Trust not previously described in this Section 19, which can be cured by the payment of a sum of money; or (f) for 30 days after notice from Beneficiary or Secured Parties, Grantor is in default under any term, covenant or condition of this Deed of Trust not previously described in this Section 19; provided that if (i) it is reasonably certain that the default cannot be cured by Grantor within that 30 day period and (ii) Grantor has commenced curing that default within that 30 day period and thereafter diligently and expeditiously proceeds to cure that default, then that 30 day period shall be extended for so long as reasonably required by Grantor in the exercise of due diligence to cure that default, up to a maximum of 90 days after the notice to Grantor of the Event of Default.

20. Remedies. At any time after an Event of Default, Secured Parties, Beneficiary or Trustee may (a) declare any or all of the Secured Obligations to be due and payable immediately; (b) cure any breach or default of Grantor; (c) may, to the extent permitted by Applicable Law, make an ex parte application to any court of competent jurisdiction, and obtain appointment of, a receiver, trustee, liquidator or conservator of the Property, without notice, without giving bond, and without regard for the adequacy of the security for the Secured Obligations and without regard for the solvency of Borrower, any Guarantor, or of any Person liable for the payment of the Secured Obligations; (d) in person, by agent or by court-appointed receiver, enter, take possession of, manage and operate all or any part of the Property; (e) exercise any or all of the remedies granted to a secured party under the UCC; (f) bring an action in any court of competent jurisdiction to foreclose this Deed of Trust or to obtain specific enforcement of any of the Covenants or agreements of this Deed of Trust; (g) under the power of sale granted under this Deed of Trust (the "Power of Sale"), at its option cause some or all of the Property, including the Personalty, to be sold or otherwise disposed of in any combination and in any manner permitted by Applicable Law; and (h) do any and all other things in connection with those actions that Beneficiary may consider necessary and appropriate to protect the security of this Deed of Trust. GRANTOR HEREBY IRREVOCABLY CONSTITUTES AND APPOINTS BENEFICIARY AS GRANTOR'S ATTORNEY-IN-FACT TO PERFORM SUCH ACTS AND EXECUTE SUCH DOCUMENTS AS BENEFICIARY CONSIDERS APPROPRIATE IN CONNECTION WITH TAKING THESE MEASURES, INCLUDING ENDORSEMENT OF GRANTOR'S NAME ON ANY INSTRUMENTS. GRANTOR HEREBY WAIVES NOTICE OF THE APPLICATION FOR, AND CONSENTS TO THE APPOINTMENT OF A RECEIVER, TRUSTEE, LIQUIDATOR OR CONSERVATOR OF THE PROPERTY IN ACCORDANCE WITH THE PROVISIONS OF THIS SECTION (WHICH APPOINTMENT OF SUCH POWER OF ATTORNEY IS A POWER COUPLED WITH AN INTEREST); AND AGREES TO NOT OPPOSE SUCH APPOINTMENT. Notwithstanding the foregoing, in no event will Trustee, Beneficiary or Secured Parties have any obligation to take any of the actions set forth in this Section 20. Beneficiary shall not be considered to have accepted any property other than cash or immediately available funds in satisfaction of any obligation of Grantor to Beneficiary, unless Beneficiary has given express written notice of its election of that remedy. The proceeds of any receivership shall be applied by the receiver toward the payment of the Secured Obligations or toward the payment of such part of any Judgment thereupon which remains unsatisfied after the sale of the Property. The receiver may make repairs and keep the Property in good condition and repair pending a sale, and pay all taxes and assessments accrued or accruing or redeem from sales therefore, pay all premiums of insurance required under this Deed of Trust, and pay all other charges as herein provided.

21. Sales of Property. Beneficiary may elect to treat as Personalty any Property which is intangible or which can be severed from the Land or Improvements without causing structural damage. Beneficiary may dispose of any Personalty separately from the sale of real property, in any manner permitted by the UCC or any other Applicable Law. Any proceeds of any such disposition shall not cure any Event of Default or reinstate any Secured Obligation. Beneficiary may choose to dispose of some or all of the Property which consists solely of real property in any manner then permitted by Applicable Law. To the extent permitted by Applicable Law, Beneficiary may also or alternatively choose to dispose of some or all of the Property, in any combination consisting of both real and personal property, together in one sale to be held in accordance with the law and procedures applicable to real property, as permitted by the UCC. Grantor agrees that such a sale of Personalty together with real property constitutes a commercially reasonable sale of the personal property. For purposes of the Power of Sale, either a sale of real property alone under the Power of Sale, or, to the extent permitted by Applicable Law, a sale of both real and personal property under the Power of Sale, together in accordance with the UCC, will sometimes be referred to as a "Non-

Doc 52194 Bk OR Vol 144 Pg 169

Judicial Foreclosure Sale." Before any Non-Judicial Foreclosure Sale, Beneficiary or Trustee must give such notice of default and election to sell as may then be required by law. When all time periods then legally mandated have expired, and after such notice of sale as may then be legally required has been given, Beneficiary or Trustee, as required by Applicable Law, must sell the Property being sold at a public auction to be held at the time and place specified in the notice of sale. Neither Beneficiary nor Trustee have any obligation to make demand on Grantor before any Non-Judicial Foreclosure Sale. From time to time in accordance with then Applicable Law, Trustee may (and in any event at Beneficiary's request Trustee must), postpone any Non-Judicial Foreclosure Sale by public announcement at the time and place noticed for that sale. Trustee or Beneficiary, as required by Applicable Law, shall execute and deliver to any purchaser(s) a deed(s) or bill(s) of sale conveying the Property being sold without any covenant or warranty whatsoever, express or implied. The recitals in any such deed(s) or bill(s) of sale of any matters or facts, including any facts bearing upon the regularity or validity of any Non-Judicial Foreclosure Sale, will be conclusive proof of their truthfulness. Any such deed(s) or bill(s) of sale shall be conclusive against all Persons as to the facts recited in it. If the Land is located in more than one county, then to the extent permitted by Applicable Law, a judicial or non-judicial foreclosure sale of the Property may be maintained in any one or more of those counties. If the Property consists of more than one lot, parcel or item of property, Beneficiary may: (i) designate the order in which the lots, parcels and/or items shall be sold or disposed of or offered for sale or disposition; and (ii) elect to dispose of the lots, parcels and/or items through a single consolidated sale or disposition to be held or made under the Power of Sale, or in connection with judicial proceedings, or by virtue of a Judgment and decree of foreclosure and sale; or through two or more such sales or dispositions; or in any other manner (including a Non-Judicial Foreclosure Sale) Beneficiary may deem to be in its best interests (any such sale or disposition, a "Foreclosure Sale;" any two or more, "Foreclosure Sales"). If it chooses to have more than one Foreclosure Sale, Beneficiary at its option may cause the Foreclosure Sales to be held simultaneously or successively, on the same day, or on such different days and at such different times and in such order as it may deem to be in its best interests. No Foreclosure Sale will terminate or affect the Lien of this Deed of Trust on any part of the Property which has not been sold, until all of the Secured Obligations have been paid in full. At any Foreclosure Sale, any person, including Grantor, Beneficiary, Secured Parties or to the extent permitted by Applicable Law, Trustee, may bid for and acquire the Property or any part of it to the extent permitted by then Applicable Law. Instead of paying cash for that property, Beneficiary or Secured Parties may settle for the purchase price by crediting the sales price of the Property against the Secured Obligations, unless Applicable Law mandates a specific order of application, in which event payments and collections will be applied as mandated by Applicable Law. Any such credit, and all other proceeds of any Foreclosure Sale shall be applied to the Secured Obligations in any order Beneficiary may choose.

22. **Additional Rights**. In addition to the rights and powers given to Beneficiary under this Deed of Trust, Beneficiary shall have all such other rights both in law and equity for collection of the indebtedness secured hereby as it would have but for this Deed of Trust.

23. **Guarantor and/or Non-Obligor Provisions**. (a) Guarantor and/or Non-Obligor authorize Trustee, Beneficiary and Secured Parties to perform any of the following acts at any time, all without notice to Guarantor and/or Non-Obligor and without affecting the rights of Trustee, Beneficiary or Secured Parties or the obligations of Guarantor and/or Non-Obligor under this Deed of Trust: (i) alter any terms of the MCA or any part of it, including renewing, compromising, extending or accelerating, or otherwise changing the time for payment of, or increasing or decreasing the rate of interest on, the MCA or any part of it; (ii) take and hold security for the MCA, accept additional or substituted security for the MCA, and subordinate, exchange, enforce, waive, release, compromise, fail to perfect, sell or otherwise dispose of any such security; (iii) apply any security now or later held for the MCA in any order that Trustee, Beneficiary and Secured Parties may choose, and may direct the order and manner of any sale of all or any part of it and bid at any such sale; (iv) release Obligor/Borrower of its liability for the MCA or any part of it; (v) substitute, add or release any one or more guarantors or endorsers of the MCA; and (vi) extend other credit to Obligor/Borrower, and may take and hold security for the credit so extended, whether or not such security also secures the MCA.

(b) Guarantor and/or Non-Obligor waive: (i) any right to require Trustee, Beneficiary or Secured Parties to proceed against Obligor/Borrower, proceed against or exhaust any security held from Obligor/Borrower, or pursue any other remedy in Trustee's, Beneficiary's and Secured Parties power to pursue; (ii) any defense based on any legal disability of Obligor/Borrower, any discharge or limitation of the liability of Obligor/Borrower to Trustee, Beneficiary or Secured Parties, whether consensual or arising by operation of law or any bankruptcy, reorganization, receivership, insolvency, or debtor-relief proceeding, or from any other cause, or any claim that the obligations of Guarantor and/or Non-Obligor exceed or are more burdensome than those of Obligor/Borrower; (iii) all presentments, demands for performance, notices of nonperformance,

Doc 53194 Bk OR Vol 164 Pg 170

protests, notices of protest, notices of dishonor, notices of acceptance of this Deed of Trust and of the existence, creation, or incurring of new or additional indebtedness of Obligor/Borrower, and demands and notices of every kind; (iv) any defense based on or arising out of any defense that Obligor/Borrower may have to the payment or performance of the MCA or any part of it; and (v) until the Secured Obligations have been paid and performed in full, all rights of subrogation, reimbursement, indemnification and contribution (contractual, statutory or otherwise), including any claim or right of subrogation under the Bankruptcy Code (Title 11 of the U.S. Code) or any successor statute, all rights to enforce any remedy that Trustee, Beneficiary or Secured Parties may have against Obligor/Borrower, and all rights to participate in any security now or later to be held by Trustee, Beneficiary or Secured Parties for the MCA.

(c) Guarantor and/or Non-Obligor waive all rights and defenses that Guarantor and/or Non-Obligor may have because the MCA may be secured by real property other than the Property hereby encumbered. This means, among other things: (i) Trustee, Beneficiary and Secured Parties may collect from Guarantor and/or Non-Obligor (including enforcing this Deed of Trust against Guarantor and/or Non-Obligor) without first foreclosing on any real or personal property collateral securing the MCA; and (ii) if Beneficiary forecloses on any real property collateral securing the MCA: (A) the amount of the MCA may be reduced only by the price for which that Collateral is sold at the foreclosure sale, even if the Collateral is worth more than the sale price, and (B) Trustee, Beneficiary and Secured Parties may collect from Guarantor and/or Non-Obligor (including enforcing this Deed of Trust against Guarantor and/or Non-Obligor) even if Trustee, Beneficiary or Secured Parties, by foreclosing on the real property collateral, has destroyed any right Guarantor and/or Non-Obligor may have to collect from Borrower. This is an unconditional and irrevocable waiver of any rights and defenses Guarantor and/or Non-Obligor may have because the MCA may be secured by real property other than the Property.

(d) Guarantor and/or Non-Obligor waive any right or defense it may have at law or equity, to a fair market value hearing or action to determine a deficiency Judgment after a foreclosure of any real property other than the Property hereby encumbered.

(e) Guarantor and/or Non-Obligor are solely responsible for keeping informed of the financial condition and business operations of Borrower and all other circumstances affecting the ability of Borrower to pay and perform Borrower's obligations to Trustee, Beneficiary and Secured Parties, and agrees that Trustee, Beneficiary and Secured Parties will have no duty to disclose to Guarantor and/or Non-Obligor any information which Trustee, Beneficiary or Secured Parties may receive about the financial condition, business operations, or any other circumstances bearing on the ability of Borrower to perform.

(f) No provision or waiver in this Deed of Trust shall be construed as limiting the generality of any other provision or waiver contained in this Deed of Trust or the Guaranty.

**24.** <u>Notices</u>. All notices, approvals, consents, and other communications, under this Deed of Trust ("<u>Notices</u>") must be given in accordance with and will be subject to the terms and provisions of the MCA. Notices must be mailed or delivered, if to Grantor, to the address adjacent Grantor's signature below; if to Trustee, to the address in the first paragraph of this Deed of Trust; if to Beneficiary or Lender, to 14767 N. Outer 40 Rd., Suite 400, Chesterfield, MO 63017, Attention: Loan Closing Department; if to Secured Parties other than Lender, c/o Rabobank, 245 Park Avenue, New York, NY 10167, Attention: Customer Service Representative; and in the case of any other Person, to the address designated by that Person in a notice to Grantor, Beneficiary, and Lender.

**25.** <u>Request for Notice</u>. Grantor requests that a copy of any notice of default and any notice of sale be mailed to it at the address specified adjacent to its signature below.

**26.** <u>Trustee and Beneficiary</u>. Without affecting the personal liability of any Person, including Grantor and Obligor/Borrower, for the payment of the Secured Obligations or the Lien of this Deed of Trust on the remainder of the Property for the unpaid amount of the Secured Obligations: (a) Beneficiary and Secured Parties may from time to time and without notice: (i) release any Person liable for payment of any Secured Obligation; (ii) extend the time for payment, or otherwise alter the terms of payment, of any Secured Obligation; (iii) accept additional real or personal property of any kind as security for any Secured Obligation, whether evidenced by deeds of trust, Mortgages, Security Agreements or any other instruments of security; or (iv) alter, substitute or release any property securing the Secured Obligations; and (b) Trustee may perform any of the following acts when requested to do so by Beneficiary or a Secured Party in writing: (i) consent to the making of any plat or map of the Property or any part of it; (ii) join in granting any easement or creating any restriction affecting the Property; (iii) join in any

subordination or other agreement affecting this Deed of Trust or the Lien of it; or (iv) reconvey the Property or any part of it without any warranty.

27. **Exculpation of Trustee and Beneficiary**. None of Trustee, Beneficiary or Secured Parties will be directly or indirectly liable to Grantor or any other Person as a consequence of any of the following: (a) the exercise of or failure to exercise any rights, remedies or powers granted to it in this Deed of Trust; (b) any failure or refusal to perform or discharge any obligation or liability of Grantor under any agreement related to the Property or under this Deed of Trust; or (c) any loss sustained by Grantor or any third party resulting from any failure to lease the Property or from any other act or omission in managing the Property after an Event of Default, unless the loss is caused by the willful misconduct and bad faith of Trustee, Beneficiary or Secured Parties, respectively. GRANTOR HEREBY EXPRESSLY WAIVES AND RELEASES ALL LIABILITY OF THE TYPES DESCRIBED ABOVE, AND AGREES THAT NO SUCH LIABILITY BE ASSERTED AGAINST OR IMPOSED UPON TRUSTEE, BENEFICIARY OR ANY SECURED PARTY.

28. **Substitution of Trustee**. Beneficiary may substitute a successor to any Trustee named in or acting under this Deed of Trust in any manner now or later to be provided at Applicable Law.

29. **Waiver of Dower, Homestead, and Distributive Share**. Grantor relinquishes all right of dower and waives all right of homestead and distributive share in and to the Property. Grantor waives any right of exemption as to the Property.

30. **Waiver of Certain Other Laws**. To the full extent Grantor may do so, Grantor agrees that Grantor will not at any time insist upon, plead, claim or take the benefit or advantage of any law now or hereafter in force providing for appraisement, valuation, stay, extension or redemption, and Grantor, for Grantor, and its representatives, successors and assigns, and for any and all Persons ever claiming any interest in the Property, to the extent permitted by law, hereby waives and releases all rights of redemption, valuation, appraisement, stay of execution, or notice of election to mature or declare due the whole of the Secured Obligations in the event of foreclosure of the Lien created by this Deed of Trust.

31. **Reconveyance**. When all Secured Obligations have been paid in full, Lender has no obligation to make additional Loans and the Hedging Agreements have been terminated, Trustee shall execute and deliver an instrument reconveying the Property, or so much of it as is then held under this Deed of Trust, without warranty to the Person or Persons legally entitled to it. In the reconveyance, the grantee may be described as "the Person or Persons legally entitled thereto," and the recitals of any matters or facts shall be conclusive proof of their truthfulness. Trustee, Beneficiary and Secured Parties will have no duty to determine the rights of Persons claiming to be rightful grantees of any reconveyance of the Property.

32. **Additional Provisions**. The Secured Obligation Documents state all of the terms and conditions of the parties' agreement regarding the matters mentioned in or incidental to this Deed of Trust. The Secured Obligation Documents also grant further rights to Beneficiary and Secured Parties and contain further agreements and affirmative and negative covenants by Grantor which apply to this Deed of Trust and to the Property.

33. **Collateral Agency Agreement**. This Deed of Trust is subject to the terms of the collateral agency agreement between the Secured Parties (the "Collateral Agency Agreement").

34. **Entire Agreement**. This Deed of Trust and the other Secured Obligation Documents collectively: (i) represent the sum of the understandings and agreements between Beneficiary, Secured Parties and Grantor concerning this credit; (ii) replace any prior oral or written agreements between Beneficiary, Secured Parties and Grantor concerning this credit; and (iii) are intended by Beneficiary, Secured Parties and Grantor as the final, complete and exclusive statement of the terms agreed to by them. In the event of any conflict between this Deed of Trust and any other agreements required by this Deed of Trust, this Deed of Trust will prevail.

35. **Other Acts**. Grantor shall cooperate with Beneficiary for the purposes of, and perform all acts which may be necessary or advisable to perfect any Lien provided for in this Deed of Trust or to carry out the intent of this agreement. Promptly (but in no event more than ten days) after request by Beneficiary, Grantor will execute, acknowledge and deliver any document which Beneficiary deems necessary or advisable for these purposes, and will, on demand, pay any expenses incurred by Beneficiary in the preparation, execution and filing of any such documents.

36. **No Waiver or Cure**. Each waiver by Trustee, Beneficiary or Secured Parties must be in writing, and no waiver is to be construed as a continuing waiver. No waiver is to be implied from any delay or failure by Trustee, Beneficiary or

Doc 52194 Bk TIR Vol 164 Pg 172

Secured Parties to take action on account of any default of Grantor. Consent by Trustee, Beneficiary or Secured Parties to any act or omission by Grantor must not be construed as a consent to any other or subsequent act or omission or to waive the requirement for Trustee's, Beneficiary's or Secured Parties' consent to be obtained in any future or other instance. The exercise by Trustee, Beneficiary or Secured Parties of any right or remedy under this Deed of Trust or the other Secured Obligation Documents or under Applicable Law, shall not: cure or waive a breach, Event of Default or notice of default under this Deed of Trust or invalidate any act performed pursuant to any such default or notice; or nullify the effect of any notice of default or sale (unless all Secured Obligations then due have been paid and performed and all other defaults under the Secured Obligation Documents, including any Hedging Agreements, have been cured); or impair the security of this Deed of Trust; or prejudice Trustee, Beneficiary, Secured Parties or any receiver appointed in accordance with this Deed of Trust, in the exercise of any right or remedy afforded any of them under this Deed of Trust; or be construed as an affirmation by Beneficiary or Secured Parties of any tenancy, lease or option, or a subordination of the Lien of this Deed of Trust.

**37.** **Waivers**. Grantor waives all rights, legal and equitable, it may now or hereafter have to require marshaling of assets or to require upon foreclosure sales of assets in a particular order. Grantor waives presentment, demand, protest, notice of protest and notice of dishonor and waives all exemptions as to the Secured Obligations. Each successor and assign of Grantor, including any holder of a Lien subordinate to this Deed of Trust, by acceptance of its interest or Lien agrees that it shall be bound by the above waiver, as if it had given the waiver itself.

**38.** **Joint and Several Obligations**. If Grantor consists of more than one Person, each Grantor (a) acknowledges and undertakes, together with the other Grantors, joint and several liability for the indebtedness, liabilities and obligations of Grantor under this Deed of Trust; (b) acknowledges that this Deed of Trust is the independent and several obligation of each Grantor and may be enforced against each Grantor separately, whether or not enforcement of any right or remedy hereunder has been sought against any other Grantor; and (c) agrees that its liability hereunder and under any other Secured Obligation Document shall be absolute, unconditional, continuing and irrevocable. GRANTOR EXPRESSLY WAIVES ANY REQUIREMENT THAT BENEFICIARY OR SECURED PARTIES EXHAUST ANY RIGHT, POWER OR REMEDY AND PROCEED AGAINST THE OTHER GRANTORS UNDER THIS DEED OF TRUST, OR ANY OTHER SECURED OBLIGATION DOCUMENTS, OR AGAINST ANY OTHER PERSON UNDER ANY GUARANTY OF, OR SECURITY FOR, ANY OF THE SECURED OBLIGATIONS.

**39.** **Binding Effect; Successors and Assigns**. The Secured Obligation Documents shall inure to the benefit of and shall be binding upon the parties and their respective successors and assigns; provided that Grantor shall not assign its rights or obligations hereunder without Secured Parties' consent. However, this Paragraph does not waive the provisions of Section 16; and Grantor shall not assign its rights or obligations hereunder without Beneficiary's and Secured Parties' consent. Beneficiary and Secured Parties may transfer all or any portion of its rights under the Secured Obligation Documents to any other Person. Beneficiary and Secured Parties may disclose to any actual or proposed transferee any information that Grantor has delivered to Beneficiary and Secured Parties in connection with the negotiation of this Deed of Trust or pursuant to the Secured Obligation Documents; and Grantor shall cooperate fully with Beneficiary and Secured Parties in providing that information to any actual or proposed transferee.

**40.** **Governing Law**. This Deed of Trust shall be governed exclusively by the Applicable Laws of the State of Texas (the "Governing Law State") without regard or reference to its conflict of laws principles. Grantor understands that the laws of the Governing Law State may differ from the laws of the state where Grantor resides or otherwise is located or where the Property is located. However, Grantor understands, agrees and acknowledges that (a) this Deed of Trust and the Secured Obligation Documents have significant and substantial contacts with the Governing Law State, (b) it is convenient to Grantor and Lender to select the law of the Governing Law State to govern this Deed of Trust and the transactions evidenced hereby, (c) the transactions evidenced by the MCA and this Deed of Trust bear a reasonable connection to the laws of the Governing Law State, (d) the choice of the internal laws of the Governing Law State was made for good and valid reasons, and (e) the choice of the Governing Law State constitutes good and valuable consideration for Secured Parties to enter into the Secured Obligation Documents and Secured Parties have entered into the Secured Obligation Documents in reliance on this choice.

**41.** **JURISDICTION AND VENUE**. GRANTOR IRREVOCABLY AGREES THAT, AT THE OPTION OF BENEFICIARY, ALL ACTIONS, PROCEEDINGS OR COUNTERCLAIMS ARISING OUT OF OR RELATING TO THIS DEED OF TRUST OR ANY OTHER TRANSACTION DOCUMENT WILL BE LITIGATED IN THE IOWA DISTRICT COURT FOR BLACK

HAWK COUNTY, IOWA, OR THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF IOWA. GRANTOR IRREVOCABLY CONSENTS TO SERVICE, JURISDICTION, AND VENUE OF THOSE COURTS FOR ALL SUCH ACTIONS, PROCEEDINGS AND COUNTERCLAIMS AND WAIVES ANY OTHER VENUE TO WHICH IT MIGHT BE ENTITLED BY VIRTUE OF DOMICILE, HABITUAL RESIDENCE OR OTHERWISE.

42. Miscellaneous. This Deed of Trust may be executed in counterparts, each of which will be an original and all of which together are deemed one and the same instrument. If Grantor is comprised of multiple Persons, any Person comprising Grantor is hereby authorized to bind all parties comprising Grantor. Beneficiary or Secured Parties may, at any time and without notice, waive any prior requirement that requests, authorizations, or other actions be taken only by a Designated Person. Time is of the essence of this Deed of Trust. Each Party has participated in negotiating and drafting this Deed of Trust, so if an ambiguity or a question of intent or interpretation arises, this Deed of Trust is to be construed as if the parties had drafted it jointly, as opposed to being construed against a Party because it was responsible for drafting one or more provisions of this Deed of Trust. Beneficiary is authorized to execute any other documents or take any other actions necessary to effectuate this Deed of Trust and the consummation of the transactions contemplated herein. This Deed of Trust may not be amended, changed, modified, altered or terminated without the prior written consent of Beneficiary and Secured Parties. Any provision of any Secured Obligation Document which is prohibited or unenforceable in any jurisdiction shall, as to that jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions of that Secured Obligation Document or affecting the validity or enforceability of that provision in any other jurisdiction; except that if such provision relates to the payment of any monetary sum, then Beneficiary or Secured Parties may, at its option, declare all Secured Obligations immediately due and payable. No merger shall occur as a result of Beneficiary's or Secured Parties' acquiring any other estate in or any other Lien on the Property. All rights and remedies under this Deed of Trust and the Secured Obligation Documents are cumulative, and the exercise of any one or more of them does not constitute an election of remedies.

43. INDEMNIFICATION. GRANTOR SHALL DEFEND, INDEMNIFY AND HOLD TRUSTEE, BENEFICIARY AND SECURED PARTIES AND THEIR OFFICERS, DIRECTORS, EMPLOYEES, PARTNERS, AGENTS AND ATTORNEYS (THE "INDEMNIFIED PERSONS") HARMLESS AGAINST ANY AND ALL LOSSES OF ANY KIND OR NATURE WHATSOEVER THAT MAY BE IMPOSED ON, INCURRED BY, OR ASSERTED AGAINST THE INDEMNIFIED PERSONS (A) ARISING OUT OF OR RESULTING FROM THE VIOLATION OF ANY ENVIRONMENTAL LAW; OR (B) ARISING OUT OF CLAIMS ASSERTED AGAINST THE INDEMNIFIED PERSONS AS A RESULT OF TRUSTEE, BENEFICIARY OR SECURED PARTIES BEING PARTY TO THIS DEED OF TRUST OR THE TRANSACTIONS CONSUMMATED PURSUANT TO THIS DEED OF TRUST; THIS INDEMNIFICATION SHALL APPLY TO EACH INDEMNIFIED PERSON WITH RESPECT TO MATTERS WHICH, IN WHOLE OR IN PART, ARE CAUSED BY OR ARISE OUT OF THE NEGLIGENCE (WHETHER SOLE, COMPARATIVE, OR CONTRIBUTORY) OR STRICT LIABILITY OF SUCH (AND/OR ANY OTHER) INDEMNIFIED PERSON, except that Grantor shall have no obligation to an Indemnified Person under this section with respect to Losses resulting from the gross negligence or willful misconduct of that Indemnified Person as determined by a court of competent jurisdiction. If and to the extent that an Indemnity is unenforceable for any reason, Grantor shall be obligated to make the maximum contribution to the payment and satisfaction thereof which is permissible under Applicable Law. THE PROVISIONS OF ALL INDEMNITIES SHALL SURVIVE THE TERMINATION OF THIS DEED OF TRUST.

**44. WAIVER OF TRIAL BY JURY. GRANTOR AND, BY ACCEPTANCE HEREOF, BENEFICIARY (A) COVENANT AND AGREE NOT TO ELECT A TRIAL BY JURY IN ANY ACTION OR PROCEEDING FOR THE RESOLUTION OF ANY CONTROVERSY OR CLAIM THAT ARISES OUT OF OR RELATES TO: (I) THIS DEED OF TRUST; OR (II) ANY SECURED OBLIGATION DOCUMENT, WHETHER ARISING IN CONTRACT, TORT OR BY STATUTE (INDIVIDUALLY AND COLLECTIVELY, A "CONTROVERSY OR CLAIM"); AND, (B) TO THE EXTENT PERMITTED BY APPLICABLE LAW, WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY CONTROVERSY OR CLAIM TO THE EXTENT SUCH RIGHT EXISTS NOW OR IN THE FUTURE. THE PROVISIONS OF THIS SECTION ARE GIVEN KNOWINGLY AND VOLUNTARILY, AND ARE A MATERIAL INDUCEMENT FOR THE PARTIES ENTERING INTO THE SECURED OBLIGATION DOCUMENTS.**

45. Acceleration; Remedies. Notwithstanding any provision of this Deed of Trust to the contrary:

(a) At any time following an Event of Default, Beneficiary, at Beneficiary's option, may declare the Secured Obligations to be immediately due and payable without further demand, and may invoke the Power of Sale and any other remedies permitted by Texas law or provided in this Deed of Trust or in any other Transaction Document. Grantor acknowledges that the Power of Sale granted in this Deed of Trust may be exercised by Beneficiary without prior judicial hearing. Beneficiary







shall be entitled to collect all costs and expenses incurred in pursuing such remedies, including attorneys' fees, costs of documentary evidence, abstracts and title reports.

(b) If Beneficiary invokes the Power of Sale, Beneficiary may, by and through the Trustee, or otherwise, sell or offer for sale the Mortgaged Property in such portions, order and parcels as Beneficiary may determine, with or without having first taken possession of the Mortgaged Property, to the highest bidder for cash at public auction. Such sale shall be made at the courthouse door of the county in which all or any part of the Land to be sold is situated (whether the parts or parcel, if any, situated in different counties are contiguous or not, and without the necessity of having any Personalty present at such sale) on the first Tuesday of any month between the hours of 10:00 a.m. and 4:00 p.m., after advertising the time, place and terms of sale and that portion of the Mortgaged Property to be sold by posting or causing to be posted written or printed notice of sale at least 21 days before the date of the sale at the courthouse door of the county in which the sale is to be made and at the courthouse door of any other county in which a portion of the Land may be situated, and by filing such notice with the County Clerk(s) of the county(s) in which all or a portion of the Land may be situated, which notice may be posted and filed by the Trustee acting, or by any person acting for the Trustee, and Beneficiary has, at least 21 days before the date of the sale, served written or printed notice of the proposed sale by certified mail on each debtor obligated to pay the Secured Obligations according to Beneficiary's records by the deposit of such notice, enclosed in a postpaid wrapper, properly addressed to such debtor at debtor's most recent address as shown by Beneficiary's records, in a post office or official depository under the care and custody of the United States Postal Service. The affidavit of any person having knowledge of the facts to the effect that such service was completed shall be prima facie evidence of the fact of service. Any sale may be adjourned by announcement at the time and place appointed for such sale without further notice except as may be required by law. Further, any sale made by Trustee hereunder may, in lieu of cash, be upon such other terms and conditions as Beneficiary may from time to time hereafter elect. The sale by Trustee of less than the whole of the Property shall not exhaust the power of sale herein granted, and Trustee is specifically empowered to make successive sale or sales under such power until the whole of the Property shall be sold and, if the proceeds of such sale of less than the whole of the Property shall be less than the aggregate of the indebtedness secured hereby and the expense of executing this trust as provided herein, this Deed of Trust and the lien hereof shall remain in full force and effect as to the unsold portion of the Property just as though no sale had been made; provided, however, that Grantor shall never have any right to require the sale of less than the whole of the Property but Beneficiary shall have the right, at its sole election, to request Trustee to sell less than the whole of the Property. In the event any sale hereunder is not completed or is defective in the opinion of Beneficiary, such sale shall not exhaust the power of sale hereunder and Beneficiary shall have the right to cause a subsequent sale or sales to be made hereunder.

(c) At any time during the bidding of any sale conducted by Trustee under subparagraph (a) above, Trustee may require a bidding party (x) to disclose its full name, state and city of residence, occupation, and specific business office location, and the name and address of the principal the bidding party is representing (if applicable); and (y) to demonstrate reasonable evidence of the bidding party's financial ability (or, if applicable, the financial ability of the principal of such bidding party), as a condition to the bidding party submitting bids at the foreclosure sale. If any such bidding party (the "Questioned Bidder") declines to comply with Trustee's requirement in this regard, or if such Questioned Bidder does respond but Trustee, in Trustee's sole and absolute discretion, deems the information or the evidence of the financial ability of the Questioned Bidder (or, if applicable, the principal of such bidding party) to be inadequate, Trustee may continue the bidding with reservation; and in such event (i) Trustee shall be authorized to caution the Questioned Bidder concerning the legal obligations to be incurred in submitting bids, and (ii) if the Questioned Bidder is not the highest bidder at the sale, or if having been the highest bidder the Questioned Bidder fails to deliver the cash purchase price payment promptly to Trustee, all bids by the Questioned Bidder shall be null and void. Trustee may, in Trustee's sole and absolute discretion, determine that a credit bid may be in the best interest of Borrower and Beneficiary and elect to sell the Property for credit or for a combination of cash and credit; provided, however, that Trustee shall have no obligation to accept any bid except an all cash bid. In the event Trustee requires a cash bid and cash is not delivered within a reasonable time after conclusion of the bidding process, as specified by Trustee (but in no event later than 3:45 p.m. local time on the date of sale), then said contingent sale shall be null and void, the bidding process may be recommenced, and any subsequent bids or sale shall be made as if no prior bids were made or accepted.

(d) Beneficiary shall have the right to become the purchaser at any sale held by any Trustee or substitute or successor or by any receiver or public officer, and any Beneficiary purchasing at any such sale shall have the right to credit upon the amount of the bid made therefor, to the extent necessary to satisfy such bid, the Debt owing to such Beneficiary, or if such Beneficiary holds less than all of the Debt the pro rata part thereof owing to such Beneficiary, accounting to all other beneficiaries

of this Deed of Trust not joining in such bid in cash for the portion of such bid or bids apportionable to such non-bidding beneficiaries.

(e) Trustee shall deliver to the purchaser at the sale, within a reasonable time after the sale, a deed conveying the Property so sold in fee simple with covenants of general warranty. Grantor covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in Trustee's deed shall be prima facie evidence of the truth of the statements contained in those recitals. Trustee shall apply the proceeds of the sale in the following order: FIRST to all reasonable costs and expenses of the sale, including reasonable Trustee's fees and attorneys' fees and costs of title evidence; SECOND to the Secured Obligations in such order as Beneficiary, in Beneficiary's discretion, directs; and THIRD the excess, if any, to the person or persons legally entitled to the excess.

(f) Uniform Commercial Code. Upon the occurrence of an Event of Default, Beneficiary may exercise its rights of enforcement under the Uniform Commercial Code with respect to the Property secured thereunder, and in conjunction with, in addition to or in substitution for those rights and remedies:

(i) Beneficiary may enter upon the Property to take possession of, assemble and collect all Personalty or to render it unusable;

(ii) Beneficiary may require Grantor to assemble the Personalty and make it available at a place Beneficiary designates which is mutually convenient to allow Beneficiary to take possession or dispose of such personal property;

(iii) written notice mailed to Grantor as provided herein ten (10) days prior to the date of public sale of Personalty or prior to the date after which private sale of Personalty will be made shall constitute reasonable notice;

(iv) any sale made pursuant to the provisions of this paragraph shall be deemed to have been a public sale conducted in a commercially reasonable manner if held contemporaneously with the sale of the Property under power of sale as provided herein upon giving the same notice with respect to the sale of the Personalty hereunder as is required for such sale of the Property under power of sale;

(v) in the event of a foreclosure sale, whether made by Trustee under the terms hereof, or under judgment of a court, the remainder of the Personalty and other Property may, at the option of Beneficiary, be sold as a whole;

(vi) it shall not be necessary that Beneficiary take possession of the Personalty or any part thereof prior to the time that any sale pursuant to the provisions of this paragraph is conducted and it shall not be necessary that the Personalty or any part thereof be present at the location of such sale;

(vii) prior to application of proceeds of disposition of the Personalty to the secured indebtedness, such proceeds shall be applied to the reasonable expenses of retaking, holding, preparing for sale or lease, selling, leasing and the like and the reasonable attorneys' fees and legal expenses incurred by Beneficiary;

(viii) any and all statements of fact or other recitals made in any bill of sale or assignment or other instrument evidencing any foreclosure sale hereunder as to non-payment of the indebtedness or as to the occurrence of any Event of Default, or as to Beneficiary having declared all of such indebtedness to be due and payable, or as to notice of time, place and terms of sale and of the properties to be sold having been duly given, or as to any other act or thing having been duly done by Beneficiary, shall absent manifest error be taken as conclusive evidence of the truth of the facts so stated and recited; and

(ix) Beneficiary may appoint or delegate any one or more persons as agent to perform any act or acts necessary or incident to any sale held by Beneficiary, including the sending of notices and the conduct of sale, but in the name and on behalf of Beneficiary.

(g) In the event of a default in the payment of any part of the Debt, Beneficiary shall have the right to proceed with foreclosure of the liens and security interests evidenced hereby without declaring the entire Debt due, and in such event any such foreclosure sale may be made subject to the unmatured part of the Debt; and any such sale shall not in any manner affect the unmatured part of the Debt, but as to such unmatured part, this Deed of Trust shall remain in full force and effect just as though no sale had been made. The proceeds of any such sale shall be applied as provided in subsection (e) above except that

DOC 62194 BK OR VOL 164 PG 176

the amount paid under subparagraph SECOND thereof shall be only the matured portion of the Debt and any proceeds of such sale in excess of those provided for in subparagraphs FIRST and SECOND (modified as provided above) shall be applied to installments of principal of and interest on the Note in the inverse order of maturity. Several sales may be made hereunder without exhausting the right of sale for any unmatured part of the Debt.

(h) This Deed of Trust shall be effective as a mortgage as well as a Deed of Trust and upon the occurrence of an Event of Default may be foreclosed as to any of the Property in any manner permitted by the laws of the State of Texas or of any other state in which any part of the Property is situated, and any foreclosure suit may be brought by Trustee or by Beneficiary. In the event a foreclosure hereunder shall be commenced by Trustee or his substitute or successor, Beneficiary may at any time before the sale of the Property direct the said Trustee to abandon the sale, and may then institute suit for the collection of the Note and the other secured indebtedness, and for the foreclosure of this Deed of Trust. It is agreed that if Beneficiary should institute a suit for the collection of the Note or any other secured indebtedness and for the foreclosure of this Deed of Trust, Beneficiary may at any time before the entry of a final judgment in said suit dismiss the same, and require Trustee, his substitute or successor to sell the Property in accordance with the provisions of this Deed of Trust.

(i) If all or any part of the Property is sold pursuant to this section, Grantor will be divested of any and all interest and claim to the Property, including any interest or claim to all insurance policies, utility deposits, bonds, loan commitments and other intangible property included as a part of the Property. Additionally, after a sale of all or any part of the Land, Improvements, Fixtures and Personalty, Grantor will be considered a tenant at sufferance of the purchaser of the same, and the purchaser shall be entitled to immediate possession of such property. If Grantor fails to vacate the Property immediately, the purchaser may and shall have the right, without further notice to Grantor, to go into any justice court in any precinct or county in which the Property is located and file an action in forcible entry and detainer, which action shall lie against Grantor or its assigns or legal representatives, as a tenant at sufferance. This remedy is cumulative of any and all remedies the purchaser may have under this Deed of Trust or otherwise.

(j) In the event an interest in any of the Property is foreclosed upon pursuant to a judicial or nonjudicial foreclosure sale, Grantor agrees that notwithstanding the provisions of Sections 51.003, 51.004, and 51.005 of the Texas Property Code (as the same may be amended from time to time), and to the extent permitted by law, Beneficiary shall be entitled to seek a deficiency judgment from Borrower and any other party obligated on the Note equal to the difference between the amount owing on the Note and the amount for which the Property was sold pursuant to judicial or nonjudicial foreclosure sale. Grantor expressly recognizes that this paragraph constitutes a waiver of the above-cited provisions of the Texas Property Code which would otherwise permit Grantor and other persons against whom recovery of deficiencies is sought (even absent the initiation of deficiency proceedings against them) to present competent evidence of the fair market value of the Property as of the date of the foreclosure sale and offset against any deficiency the amount by which the foreclosure sale price is determined to be less than such fair market value. Grantor further recognizes and agrees that this waiver creates an irrebuttable presumption that the foreclosure sale price is equal to the fair market value of the Property for purposes of calculating deficiencies owed by Borrower, and others against whom recovery of a deficiency is sought. Alternatively, in the event the waiver provided for in subsection (1) above is determined by a court of competent jurisdiction to be unenforceable, to the fullest extent not prohibited by applicable laws, the following shall be the basis of the court's determination of fair market value: (i) the Property shall be valued "as is" and in its condition as of the date of foreclosure, and no assumption of increased value because of post foreclosure repairs, refurbishment, restorations or improvements shall be made; (ii) any adverse effect on the marketability of title because of the foreclosure or because of any other title condition not existing as of the date of this Deed of Trust shall be considered; (iii) the valuation of the Property shall be based upon an assumption that the foreclosure purchaser desires a prompt resale of the Property for cash within a six month period after foreclosure; (iv) although the Property may be disposed of more quickly by the foreclosure purchaser, the gross valuation of the Property as of the date of foreclosure shall be discounted for a hypothetical reasonable holding period (not to exceed 6 months) at a monthly rate equal to the average monthly interest rate on the Note for the twelve months before the date of foreclosure; (v) the gross valuation of the Property as of the date of foreclosure shall be further discounted and reduced by reasonable estimated costs of disposition, including brokerage commissions, title policy premiums, environmental assessment and clean up costs, tax and assessment, prorations, costs to comply with legal requirements and attorneys' fees; (vi) expert opinion testimony shall be considered only from a licensed appraiser certified by the State of Texas and, to the extent permitted under Texas law, a member of the Appraisal Institute, having at least five years' experience in appraising property similar to the Property in the county where the Property is located, and who has conducted and prepared a complete written appraisal of the Property taking into considerations the factors set forth in this Deed of Trust; no





Doc 42194 Bk OR Vol 164 Pg 177

expert opinion testimony shall be considered without such written appraisal; (vii) evidence of comparable sales shall be considered only if also included in the expert opinion testimony and written appraisal referred to in the preceding paragraph; and (ix) an affidavit executed by Beneficiary to the effect that the foreclosure bid accepted by Trustee was equal to or greater than the value of the Property determined by Beneficiary based upon the factors and methods set forth in subparagraphs (a) through (g) above before the foreclosure shall constitute prima facie evidence that the foreclosure bid was equal to or greater than the fair market value of the Property on the foreclosure date.

(k) Additional Waivers.

(i) Subject to the provisions of this Deed of Trust, to the extent that Borrower, any partner thereof or any other entity responsible for the payment of the Debt is now, or at any time or from time to time hereafter is, a partnership, Borrower and Beneficiary expressly acknowledge and agree that Beneficiary is not required to comply with Section 3.05(d) of the Texas Revised Partnership Act, as same may be hereafter amended or modified, or any other or further laws, rules or regulations now or hereafter in effect which may limit the rights and remedies of a creditor to pursue partners of a partnership prior to the pursuit of such creditor's rights and remedies against such partnership.

(ii) Borrower and Grantor hereby waive notice of intent to accelerate and notice of acceleration, and agrees that Beneficiary may foreclose the lien of this Deed of Trust without sending either of such notices.

(iii) If any law referred to in this paragraph and now in force, of which Borrower or Borrower's heirs, devisees, representatives, successors, and assigns and such other persons claiming any interest in the Property might take advantage despite this paragraph, shall hereafter be repealed and cease to be in force, such law shall not thereafter be deemed to preclude the application of this paragraph.

(l) Beneficiary may, at Beneficiary's option, comply with these provisions in the manner permitted or required by Title 5, Section 51.002 of the Texas Property Code (relating to the sale of real estate) or by Chapter 9 of the Texas Business and Commerce Code (relating to the sale of collateral after default by a debtor), as those titles and chapters now exist or may be amended or succeeded in the future, or by any other present or future articles or enactments relating to same subject. Unless expressly excluded, the Property shall include Rents collected before a foreclosure sale, but attributable to the period following the foreclosure sale, and Grantor shall pay such Rents to the purchaser at such sale. At any such sale: (i) whether made under the power contained in this Deed of Trust, Section 51.002, the Texas Business and Commerce Code, any other legal requirement or by virtue of any judicial proceedings or any other legal right, remedy or recourse, it shall not be necessary for Trustee to have physically present, or to have constructive possession of, the Property (Grantor shall deliver to Trustee any portion of the Property not actually or constructively possessed by Trustee immediately upon demand by Trustee) and the title to and right of possession of any such property shall pass to the purchaser as completely as if the property had been actually present and delivered to the purchaser at the sale; (ii) each instrument of conveyance executed by Trustee shall contain a general warranty of title, binding upon Grantor; (iii) the recitals contained in any instrument of conveyance made by Trustee shall conclusively establish the truth and accuracy of the matters recited in the Deed of Trust, including nonpayment of the Secured Obligations and the advertisement and conduct of the sale in the manner provided in this Deed of Trust and otherwise by law and the appointment of any successor Trustee; (iv) all prerequisites to the validity of the sale shall be conclusively presumed to have been satisfied; (v) the receipt of Trustee or of such other party or officer making the sale shall be sufficient to discharge to the purchaser or purchasers for such purchaser(s)' purchase money, and no such purchaser or purchasers, or such purchaser(s)' assigns or personal representatives, shall thereafter be obligated to see to the application of such purchase money or be in any way answerable for any loss, misapplication or nonapplication of such purchase money; (vi) to the fullest extent permitted by Applicable Law, Grantor shall be completely and irrevocably divested of all of Grantor's right, title, interest, claim and demand whatsoever, either at law or in equity, in and to the property sold, and such sale shall be a perpetual bar to any claim to all or any part of the property sold, both at law and in equity, against Grantor and against any person claiming by, through or under Grantor; and (vii) to the extent and under such circumstances as are permitted by law, Beneficiary may be a purchaser at any such sale.

(m) The rights and remedies granted under this Section 45 are in addition to and shall not limit the rights and remedies available under other terms and provisions of this Deed of Trust.

**46.** **Trustee.** Notwithstanding any provision to the contrary in this Deed of Trust:

Doc 32199 Bk OR Vol 164 Pg 178

(a) Trustee may resign by giving of notice of such resignation in writing to Beneficiary. If Trustee shall die, resign or become disqualified from acting under this Deed of Trust or shall fail or refuse to act in accordance with this Deed of Trust when requested by Beneficiary or if for any reason and without cause Beneficiary shall prefer to appoint a substitute trustee to act instead of the original Trustee named in this Deed of Trust or any prior successor or substitute trustee, Beneficiary shall have full power to appoint a substitute trustee and, if preferred, several substitute trustees in succession who shall succeed to all the estate, rights, powers and duties of the original Trustee named in this Deed of Trust. Such appointment may be executed by an authorized officer, agent or attorney-in-fact of Beneficiary (whether acting pursuant to a power of attorney or otherwise), and such appointment shall be conclusively presumed to be executed with authority and shall be valid and sufficient without proof of any action by Beneficiary.

(b) Any successor Trustee appointed pursuant to this section shall, without any further act, deed or conveyance, become vested with all the estates, properties, rights, powers and trusts of the predecessor Trustee with like effect as if originally named as Trustee in this Deed of Trust; but, nevertheless, upon the written request of Beneficiary or such successor Trustee, the Trustee ceasing to act shall execute and deliver an instrument transferring to such successor Trustee, all the estates, properties, rights, powers and trusts of the Trustee so ceasing to act, and shall duly assign, transfer and deliver any of the property and monies held by the Trustee ceasing to act to the successor Trustee.

(c) Trustee may authorize one or more parties to act on Trustee's behalf to perform the ministerial functions required of Trustee under this Deed of Trust, including the transmittal and posting of any notices.

**47. Waiver of Consumer Rights. TO THE EXTENT NOW OR HEREAFTER APPLICABLE, BORROWER HEREBY WAIVES BORROWER'S RIGHTS UNDER THE DECEPTIVE TRADE PRACTICES - CONSUMER PROTECTION ACT, SECTION 17.41 ET SEQ., BUSINESS & COMMERCE CODE, A LAW THAT GIVES CONSUMERS SPECIAL RIGHTS AND PROTECTIONS. AFTER CONSULTATION WITH AN ATTORNEY OF BORROWER'S OWN SELECTION, BORROWER VOLUNTARILY CONSENTS TO THIS WAIVER.**

**48. No Fiduciary Duty.** Lender owes no fiduciary or other special duty to Secured Parties or Beneficiary.

**49. Additional Provisions Regarding Assignment of Rents.** In no event shall the Assignment of Rents or any other term of this Deed of Trust cause the Secured Obligations to be reduced by an amount greater than the Rents actually received by Beneficiary and applied by Secured Parties to the Secured Obligations, whether before, during or after (a) an Event of Default, or (b) a suspension or revocation of the License. Grantor and Beneficiary and Secured Parties specifically intend that the Assignment of Rents is not intended to result in a pro tanto reduction of the Secured Obligations. The Assignment of Rents is not intended to constitute a payment of, or with respect to, the Secured Obligations and, therefore, Grantor and Beneficiary and Secured Parties specifically intend that the Secured Obligations shall not be reduced by the value of the Rents and Leases assigned. Such reduction shall occur only if, and to the extent that, Beneficiary or a Secured Party actually receives Rents pursuant to the Assignment of Rents and applies those Rents to the Secured Obligations. Grantor agrees that the value of the License equals the value of the Assignment of Rents. The Assignment of Rents will terminate upon the release of this Deed of Trust.

**50. Loan Charges.** Secured Parties intend at all times to comply with the laws of the State of Texas governing the maximum rate or amount of interest payable on or in connection with the Secured Obligations (or applicable United States federal law to the extent that it permits Secured Parties to contract for, charge, take, reserve or receive a greater amount of interest than under Texas law). If Applicable Law is ever judicially interpreted so as to render usurious any amount payable under the Transaction Documents, or contracted for, charged, taken, reserved or received with respect to the Secured Obligations, or if acceleration of the maturity of the Secured Obligations, or if any prepayment by Grantor results in Grantor having paid any interest in excess of that permitted by any applicable law, then Grantor and Secured Parties expressly intend that all excess amounts collected by Secured Parties shall be applied to reduce the unpaid principal balance of the Secured Obligations (or, if the Secured Obligations have been or would thereby be paid in full, shall be refunded to Grantor), and the provisions of the Transaction Documents immediately will be deemed reformed and the amounts thereafter collectible under the Transaction Documents reduced, without the necessity of the execution of any new documents, so as to comply with any Applicable Law, but so as to permit the recovery of the fullest amount otherwise payable under the Transaction Documents. The right to accelerate the maturity of the Secured Obligations does not include the right to accelerate any interest which has not otherwise accrued on the date of such acceleration, and Secured Parties does not intend to collect any unearned interest in the event of acceleration. All sums paid or agreed to be paid to Secured Parties for the use, forbearance or detention of the Secured

Obligations shall, to the extent permitted by Applicable Law, be amortized, prorated, allocated and spread throughout the full term of the Secured Obligations until payment in full so that the rate or amount of interest on account of the Secured Obligations does not exceed the applicable usury ceiling. Notwithstanding any provision contained in the Transaction Documents that permits the compounding of interest, including any provision by which any accrued interest is added to the principal amount of the Secured Obligations, the total amount of interest that Grantor is obligated to pay and Secured Parties is entitled to receive with respect to the Secured Obligations will not exceed the amount calculated on a simple (i.e., noncompounded) interest basis at the maximum rate on principal amounts actually advanced to or for the account of Borrower, including all current and prior advances and any advances made pursuant to the Instrument or any other Transaction Document (such as for the payment of Impositions and similar expenses or costs).

51. Property And Liability Insurance - Delivery Of Policy to Beneficiary. Notwithstanding any term or provision of the Transaction Documents to the contrary, Grantor will not be required to deliver the original (or a duplicate original) of any renewal policy of insurance to Lender more than 15 days prior to the expiration date of the policy then held by Beneficiary or Secured Parties.

52. Reimbursement for Certain Taxes. If, while the Secured Obligations are owned by a non-resident of the State of Texas, or by a corporation organized under the laws of a state other than Texas with its principal offices outside the State of Texas, any state, county or municipal tax or assessment is levied within the State of Texas against that owner of the Secured Obligations, either in terms or practical effect (whatever the legal incidence of such tax or assessment) on account of the Secured Obligations or this Deed of Trust, or the right to enforce the same, or on account of that owner's receipt of interest or other payments thereunder, Grantor will reimburse that owner, promptly upon advice therefrom, the amount of each such tax or assessment, provided that if such tax or assessment shall be of such nature, in law, and of such amount for any year, that payment thereof, in its entirety, in addition to all other payments to be made by Grantor under the Transaction Documents, will constitute payment of "interest" in the statutory sense of that word, in excess of the Maximum Rate, Grantor's obligation to make reimbursement shall apply to only so much, if any, of each such tax or assessment as may be reimbursed without exceeding the Maximum Rate. If the passage of legislation imposing or authorizing the imposition of any such state, county or municipal tax or assessment, then at the option of Beneficiary, the Secured Obligations will be due within six months after notice to Grantor.

53. Notice of Final Agreement. **THIS WRITTEN DEED OF TRUST AND THE TRANSACTION DOCUMENTS EXECUTED IN CONNECTION HEREWITH REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

Grantor is signing this Deed of Trust effective as of the day and year first written above.

**GRANTOR**

Address for Notices:
824 Mullins Lane
Benton, KY 42025

MCCLAIN FEED YARD, INC., a Texas corporation

By: [signature]
BRIAN KEITH MCCLAIN
President

Address for Notices:
824 Mullins Lane
Benton, KY 42055

7M CATTLE FEEDERS, INC, a Kentucky corporation

By: [signature]
BRIAN KEITH MCCLAIN
President

Doc 62194 Bk OR Vol 164 Pg 180

STATE OF ~~TEXAS~~ Kentucky )
) SS
COUNTY OF Marshall )

This instrument was acknowledged before me on Feb 12, 2020 by BRIAN KEITH MCCLAIN, President on behalf of MCCLAIN FEED YARD, INC., a Texas corporation.

(Signature of officer)

President
(Title of officer)

My Commission Expires: 01/19/23

OFFICIAL SEAL
ROBIN CUNNINGHAM
NOTARY PUBLIC, STATE OF KENTUCKY
MY COMMISSION EXPIRES JAN. 19 2023
NOTARY ID # 614891

STATE OF ~~TEXAS~~ Kentucky )
) SS
COUNTY OF Marshall )

This instrument was acknowledged before me on Feb 12, 2020 by BRIAN KEITH MCCLAIN, President on behalf of 7M CATTLE FEEDERS, INC, a Kentucky corporation.

(Signature of officer)

President
(Title of officer)

My Commission Expires: 01/19/23

OFFICIAL SEAL
ROBIN CUNNINGHAM
NOTARY PUBLIC, STATE OF KENTUCKY
MY COMMISSION EXPIRES JAN. 19 2023
NOTARY ID # 614891



20

Doc 62194 Bk OR Vol 164 Pg 181

**EXHIBIT A-1**

McClain MCA 2018
DEED OF TRUST, ASSIGNMENT OF RENTS AND SECURITY AGREEMENT

**Legal Description of Real Estate**

Deaf Smith County, Texas

Tract 2:

A 36.03 acre tract, more or less, out of the Southwest part of Section 26, Block K-8, Abstract No. 1370, Certificate Number 128 of the T. T. R. R. Co. Surveys in Deaf Smith County, Texas, described by metes and bounds as follows:

BEGINNING at a number 60 common nail found for the Southwest corner of Section 26, Block K-8 whence a 1-1/2 inch iron pipe found for the Southeast corner of said section bears North 89 degrees 56 minutes 00 seconds East 5321.58 feet;

THENCE North 89 degrees 56 minutes 00 seconds East along the South line of said section, 48.80 feet to a 1/2 inch iron rod set in the East physical line of Farm Road 1057 for the Southwest and beginning corner of this tract;

THENCE North 00 degrees 12 minutes 00 seconds West along the East physical line of Farm Road 1057, at 30.00 feet pass a 1/2 inch iron rod set for reference and at a total distance of 2587.27 feet a 1/2 inch iron rod set for corner;

THENCE North 89 degrees 54 minutes 43 seconds East 606.84 feet to a 1/2 inch iron rod set in the East line of a tract known as the West 40 acres of the Southwest 1/4 of said section whence a 1/2 inch iron rod set for the Northeast corner of the tract known as the West 40 acres of the Southwest 1/4 of said section bears North 00 degrees 11 minutes 29 seconds West 71.78 feet;

THENCE South 00 degrees 11 minutes 29 seconds East at 2557.50 feet pass a 1/2 inch iron rod set for reference and at a total distance of 2587.50 feet a 1/2 inch iron rod found in the South line of said section for the Southeast corner of the track known as the West 40 acres of the Southwest 1/4 of said section;

THENCE South 89 degrees 56 minutes 00 seconds West along the South line of said section, 606.45 feet to the place of beginning.

Tract 3:

A 20.00 acre tract out of the Southwest part of Section 26, Block K-8, Certificate Number 128 of the T.T R.R. Co. Surveys in Deaf Smith County, Texas, described by metes and bounds as follows:

BEGINNING at a 1/2 inch iron rod with cap marked "RPLS 1848" found in the South line of Section 26 for the Southwest corner and POINT OF BEGINNING of this tract, whence a number 60 common nail found for the Southwest corner of Section 26, Block K-8 bears South 89 degrees 56 minutes 00 seconds West 655.25 feet;

THENCE North 00 degrees 11 minutes 29 seconds West, a distance of 2587.50 feet a fence corner post for the Northwest corner of this tract;

THENCE North 89 degrees 54 minutes 43 seconds East, a distance of 336.69 feet to a 1/2 inch iron rod with cap marked "HBD" set for the Northeast corner of this tract;

THENCE South 00 degrees 11 minutes 29 seconds East, at a distance of 2557.62 feet pass a 1/2 inch iron rod with cap marked "HBD" set for reference, continue for a total distance of 2587.62 feet a point on the South line of Section 26, whence a 1-1/2 inch iron pipe found for the Southeast corner of Section 26 bears North 89 degrees 56 minutes 00 seconds East, 4329.64 feet;

THENCE South 89 degrees 56 minutes 00 seconds West, along the South line of Section 26, a distance of 336.69 feet to the POINT OF BEGINNING.

Doc 521V4 Bk OR Vol 164 Pg 182

**EXHIBIT A-2**

McClain MCA 2018
DEED OF TRUST, ASSIGNMENT OF RENTS AND SECURITY AGREEMENT

**Legal Description of Real Estate**

Parmer County, Texas

Tract 1:

A tract of land being all of Section 25 and a portion of Section 24 of Charles E. Harding's Subdivision of Capitol League 473 and Parts of Capitol Leagues 459, 460, 461, 472 and 474 in Parmer County, Texas, as shown by the map or plat thereof of record in Volume 6, Page 164, Deed Records of Parmer County, Texas, and being described by metes and bounds as follows:

BEGINNING at a 1/2 inch iron rod with camp stamped "Furman RPLS 1959" set for the southwest corner of said Section 25, being the common corner of Sections 25-36-35-26 from whence a 1/2 inch iron rod found for the common corner of sections 27-34-33-28, all in said subdivision bears North 89° 56' 32" west, 10,564.82 feet, the southwest corner of Section 36 and the southeast corner of Section 35 bears South

00° 11' 46" West, 5,281.61 feet, from this point a harrow tooth found as called for in that certain instrument recorded in Volume 225, Page 730, of the Deed Records of Parmer County, Texas, for the Northwest corner of Section 1, Block C of Capitol Syndicate Subdivision in Parmer County, Texas, as shown by Plat thereof of record in Volume 2, Page 495 of said Deed Records bears West (Bearing Basis) 1,411.64 feet;

THENCE North 00° 11' 46" East along the common line of Sections 25 and 26, and the common line of Section 24 and 23, of said Charles E. Harding's Subdivision, and along the center of a road, at 5,281.61 feet pass the common line of Sections 25-26-23-24 a total distance of 8,503.54 feet to a 3/4 inch iron pipe found as called for in that certain instrument recorded in Volume 156, Page 603 of said Deed Records, and in Volume 2, Page 219 of the Field Note Records of Parmer County, Texas, from whence the common corner of Sections 24-23-14-13 of said Charles E. Harding's Subdivision bears North 00° 11' 46" East 5,281.61 feet and 1 1/4 inch iron pipe with 5/8 inch rod adjacent found for the common corner of Sections 12-13-14-11 of said Charles E, Harding's Subdivision, as called for in that certain instrument recorded in Volume 2, Page 343, of said Field Note records bears North 00° 11' 46" East 7,341.28 feet;

THENCE South 89° 40' 58" East 2,100.84 feet along a fence line and along the North line of this tract of land and the North line of that certain tract of land described in said Volume 156, Page 603 and said Volume 2, Page 219 to a 3/4 inch iron pipe found as called for in said Volume 156, Page 603 and said Volume 2, Page 219, said North line being monumented and generally accepted on the ground for over 25 years, from whence the Northeast corner of Section 24 and the Southeast corner of Section 14 of said Charles E. Harding's Subdivision bears North 00° 11' 07" East 7,345.07 feet;

THENCE South 00° 11' 07" West at 3,187.40 feet pass a 3/4 inch iron pipe found, this iron pipe is a monument of record in said Volume 156, Page 603 and said Volume 2, Page 219 for the Southeast corner of Section 24 of said Charles E. Harding's Subdivision, it is however the Professional opinion of this surveyor that this corner lies in the East line of this survey but 26.81 feet North of the actual section corner, at 3,214.21 feet pass what is in my Professional opinion the Southeast corner of Section 24 and the Northeast corner of Section 25 of said Charles E. Harding's Subdivision at 3,301.75 feet pass a 1 1/2 inch iron pipe found as called for in said Volume 156, Page 603 and said Volume 2, Page 219 for the Southwest corner of Section 22 and the Northwest corner of Section 27 in Township 1 North, Range 3 East of a Capitol Syndicate Subdivision as shown by Plat thereof of record in Volume 5, Page 394 of said Deed Records, a total distance of 8,493.86 feet to a point being the Southeast corner of Section 25 and the Northeast corner of Section 36 of said Charles E. Harding's Subdivision from whence the Southeast corner of said Section 36 bears South 00° 11' 07" West 5,279.65 feet from this point a railroad spike found as called for in that certain instrument recorded in Volume 225, Page 730 of the Deed Records of Parmer County, Texas, for the Northwest corner of Section 1, Block C of Capitol Syndicate Subdivision in Parmer County, Texas as shown by Plat thereof record in Volume 2, Page 495 of said Deed Records bears East (Bearing Basis) 1,324.17 feet

THENCE North 89° 56' 48" West 2,102.46 feet along the South line of Section 25 and the North line of Section 36 of said Charles E. Harding's Subdivision to the POINT OF BEGINNING and containing 410.0 acres of land, more or less.

Doc 62194 Bk OR Vol 164 Pg 183

**EXHIBIT B**

McClain MCA 2018
DEED OF TRUST, ASSIGNMENT OF RENTS AND SECURITY AGREEMENT

**Additional Property**

associated with Deed of Trust by McClain Feed Yard and 7M Cattle Feeders on land located in Deaf Smith and Parmer Counties, Texas

(list specific additional Property, if any)

Fixtures

Buildings, fixtures, and equipment associated with agricultural production or the production of farm products, including but not limited to:

| Attached Equipment |
|---|
| 2 x Stationary Roto-Mixers |
| 6 x Liquid Storage Tanks |
| 9 x Hyd. Working Chutes (Scales Not Included) |
| 1 x 12 x 70 Truck Scale |
| 2 x 12 x 70 Cattle Scales With Fencing and Gates |
| 1 x Grain Probe |

Doc 62194 Bk OR Vol 164 Pg 184

All Water Rights related to but not limited to:

| Subject Water Wells - 4140 Acre Feedyard Tract | | | | | | |
|---|---|---|---|---|---|---|
| Section | District Number | Permit Number | Permit Status | Documents | Recently Tested | Current GPM Estimate |
| 24 | 79667 | 3694 | Current | Yes | No | 40 |
| 24 | 79677 | 3974 | Current | Yes | Yes | 64 |
| 24 | 79680 | 3977 | Current | Yes | Yes | 53 |
| 24 | 79681 | 3978 | Current Destroyed | Yes | Yes | 0 |
| 23 | 82449 | 40124 | Current | None | No | 0 |
| 25 | 79188 | 3423 | Current | Yes | Yes | 40 |
| 23 | 79032 | 3289 | Abandoned | Yes | No | 0 |
| 25 | 79544 | 3831 | Current | Yes | No | 40 |
| 25 | 78540 | 2689 | Current | Yes Mill and Office | No | 40 |
| 25 | 79189 | 3424 | Current | Yes | No | 40 |
| 24 | 79719 | 4021 | Current | Yes | No | 40 |
| 23 | 83148 | 50106 | Current | None | No | 0 |
| Total | | | | | | 357 |
| Total Tested | | | | | | 157 |

~~CHG &~~ RETURN
AA & R, L.L.P.



Doc 62194 Bk OR Vol 164 Pg 185

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE RENTAL OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCIBLE UNDER FEDERAL LAW

STATE OF TEXAS }
} OFFICIAL PUBLIC RECORDS
COUNTY OF PARMER }

I hereby certify that this instrument was FILED on the date and at the time stamped hereon by me and was duly RECORDED in the Volume and Page of the RECORDS of Parmer County, Texas.

FILED FOR RECORD IN PARMER COUNTY
Susie Spring, COUNTY CLERK

ON: Mar 04,2020 AT 02:10P

Document Number: 62194

Receipt Number - 25159

By [signature]
Breann Saenz, Deputy



FILED and certified as RECORDED in the **Official Public Records** of Deaf Smith County on the date and time stamped. Rachel Garman, County Clerk, Deaf Smith County, Texas.
By: [signature] Deputy **March 13, 2020 (9:13am)** 20-0454

25