David L. LeBas, SBN 12098600
dlebas@namanhowell.com
NAMAN HOWELL SMITH & LEE PLLC
8310 N. Capital of Texas Highway, Ste. 490
Austin, Texas 78731
Ph. (512) 479-0300
Fax (512) 474-1901

*ATTORNEYS FOR AGTEXAS FARM CREDIT SERVICES*
*AGTEXAS, PCA AND*
*THORLAKSON DIAMOND T FEEDERS, LP*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | |
|---|---|
| IN RE:<br><br>McCLAIN FEED YARD, INC.,<br><br>*Debtor.* | **CASE NO. 23-20084-7-rlj**<br><br>**Chapter 7** |
| IN RE:<br><br>McCLAIN FARMS, INC.,<br><br>*Debtor.* | **CASE NO. 23-20085-7-rlj**<br><br>**Chapter 7** |
| IN RE:<br><br>7M CATTLE FEEDERS, INC.,<br><br>*Debtor.* | **CASE NO. 23-20086-7-rlj**<br><br>**Chapter 7** |

### _EX PARTE_ MOTION FOR RULE 2004 ORDER AUTHORIZING THE ISSUANCE OF DOCUMENT SUBPOENAS TO VARIOUS THIRD PARTIES

TO THE HONORABLE UNITED STATES BANKRUPTCY COURT:

Pursuant to Federal Rule of Bankruptcy Procedure 2004 and L.B.R. 2004-1, AgTexas Farm Credit Services, AgTexas PCA, and Thorlakson Diamond T. Feeders, LP ("AgTexas" and "Thorlakson" respectively), Creditors and parties in interest to the above-entitled Chapter 7 cases, through counsel, respectfully request that this Court authorize AgTexas and Thorlakson to issue documents subpoenas to third parties who do or may have information relevant to the acts, conduct, or property of the Debtors' bankruptcy estates, or to the Debtors' liabilities and financial affairs.

Specifically, AgTexas and Thorlakson request authority to issue document subpoenas to the following third parties (the "**Examinees**"), and to request from the Examinees those records, and documents set forth in the subpoena riders attached hereto collectively as Exhibit "A."

| Name of Examinee | Brief Description of Relationship to Debtors |
|---|---|
| Rabo AgriFinance, LLC<br><br>Including all lending officers, corporate officers, directors, members, employees, attorneys, agents, and representatives of the foregoing. | Secured Creditor of Debtors involved in the above-styled causes of action. |
| Glenn Karlberg of Ampleo<br><br>Including all lending officers, corporate officers, directors, members, employees, attorneys, agents, and representatives of the foregoing. | Chief Restructuring Officer engaged by Rabo AgriFinance, LLC |

In support hereof, AgTexas and Thorlakson state as follows:

1.     Each of the Debtors filed voluntary petitions for relief under Chapter 7 of Title 11

of the United States Code with this Court on April 28, 2023 (the "**Petition Date**").

2.    Brian McClain was the sole owner of each of the Debtors. Mr. McClain committed suicide on April 18, 2023.

3.    Thorlakson had written agreements with the Debtors, whereby Thorlakson purchased livestock from Brian McClain/McClain Feedyard/7M Feeders (Debtors), or purchased livestock from other sources, and placed them for feeding and care with Debtors until the livestock reached an appropriate weight for sale.  Pursuant to the agreements, Thorlakson and the Debtors split any profits remaining after costs of feed, and costs of purchasing the cattle were subtracted.

4.    AgTexas provided a secured lending facility to Thorlakson (and other borrowers who also did business with Debtors) and had a perfected security interest in Thorlakson's livestock and related assets.

5.    Rabo AgriFinance, LLC ("Rabo"), and its employees, and agents thereof, provided a credit facility to the Debtors.  According to its 2004 Motions, Rabo is a secured creditor of the Debtors and McClain personally.  [Doc 17 in Cause No. 23-20084; Doc. 21 in Cause No. 23-20085; Doc. 19 in Cause No. 23-20086.]  Rabo also claims that it holds a perfected security interest in substantially all personal property assets of the Debtors.  *Id.*

6.    AgTexas and Rabo, joined by Thorlakson and the Debtors, entered into an Intercreditor Agreement dated as of January 27, 2021. Pursuant to the Intercreditor Agreement, the parties agreed that AgTexas had a priority security interest in livestock and proceeds in which Thorlakson had an interest, and Rabo disclaimed any such competing interest, except to the extent Rabo had an interest in agister's liens held as a result of feed and care provided by Debtors to Thorlakson's cattle.

7.    In April of 2023, AgTexas and Thorlakson learned of some of the issues that are the subject of this dispute, including disappearance or inability of the Debtors to account for many

thousands of cattle owned by Thorlakson, and their proceeds, and which were subject to AgTexas' security interests, worth millions of dollars. Before this, the Debtors had represented to AgTexas and Thorlakson that they had possession of thousands of Thorlakson's cattle and their proceeds or funds paid for the purchase of cattle.  At this time, it is believed that the monetary claim of AgTexas is approximately $8,000,000.00, and the monetary claim of Thorlakson is approximately $9,000,000.00, representing 9,605 cattle, not including lost profits and other damages.

8.     According to the 2004 Motions filed by Rabo in the above-entitled causes, in the weeks leading up to the Petition Date, Rabo conducted a collateral inspection at the Debtors' Texas and Kentucky locations. Rabo alleges that those collateral inspections revealed that the Debtors' reported head counts were substantially overstated.  Rabo also alleged that it could not verify the validity or collectability of the over $33 million in accounts receivable for the Debtors that constituted part of Rabo's collateral. [Doc 17 in Cause No. 23-20084; Doc. 21 in Cause No. 23-20085; Doc. 19 in Cause No. 23-20086.]

9.     Further, according to Rabo's 2004 Motions, on April 5, 2023, Rabo provided written instructions to Mechanic's Bank, where the Debtors held their business banking accounts, to freeze the Debtors' accounts.  [Doc. 17 in Cause No. 23-20084; Doc. 21 in Cause No. 23-20085; Doc. 19 in Cause No. 23-20086.]  Rabo alleged that after the instruction, the Debtors' bank account went from a positive balance of $22,369,732.98, to an overdrawn position of $7.4 million a few days later. [Doc. 17 in Cause No. 23-20084; Doc. 21 in Cause No. 23-20085; Doc. 19 in Cause No. 23-20086.]

10.     Thereafter, numerous parties, with the assistance of the Texas Special Rangers, and the Texas and Southwest Cattle Raisers Association, removed a substantial number of cattle from the Debtors' facilities in Hereford and Friona, Texas.

11.     The Debtors then appointed a Chief Restructuring Officer, named Glenn Karlberg, prior to the death of Brian McClain.  On information and belief, Mr. Karlberg was appointed on or

4

about April 13, 2023.

12.     On information and belief, Rabo has itself, or through contract with third parties, including Glenn Karlberg or his firm, Ampleo, started liquidating the cattle and other assets of the Debtors and has taken custody and control of the records of the Debtors.

13.     Federal Rule of Bankruptcy Procedure 2004 authorizes the Court, on motion of any party, to order the examination of any entity. FED. R. BANKR. P. 2004. Further, such examination may relate to the "acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge."

14.     Rule 2004 discovery is "extremely broad." *In re Buckner*, 2001 WL 992063 at *4 (BAP 10th Cir. 2001). Rule 2004 allows an unrestrained "fishing expedition," and "is essentially creditor and trustee oriented." *In re Blinder, Robinson & Co., Inc.*, 127 B.R. 267, 274 (D. Colo. 1991); *In re Kipp*, 86 B.R. 490, 491 (Bankr. W.D. Tex. 1998).

15.     "The object of the examination of the bankrupt and other witnesses to show the condition of the estate is to enable the court to discover its extent and whereabouts, and to come into possession of it, that the rights of creditors may be preserved." *Cameron v. United States*, 231 U.S. 710, 717 (1914). "As a general rule, examinations under Rule 2004 are allowed for the purpose of discovering assets, examining transactions, and determining whether wrongdoing has occurred." *In re Strecker*, 251 B.R. 878, 882 (Bankr. D. Colo. 2000 (internal citations and quotations omitted).

16.     In this case the Examinees are believed to possess records and documents that are squarely within the purview of Rule 2004. For example:

A.      As discussed above, Rabo provided a credit facility to the Debtors.  On information and belief, AgTexas and Thorlakson allege that Rabo and/or Karlberg have taken custody and control of records possessed by the Debtors.

5

B.      Given Rabo's direct relationship with the Debtors, as well as recent events, including the actions taken by Rabo in the time leading up to the Petition Date (as described in Rabo's 2004 Motions), a reasonable conclusion can be drawn that Rabo itself, or Karlberg, have possession of records related to Debtors' business transactions, which likely includes records relating to the cattle and proceeds in which AgTexas and Thorlakson have an interest.

C.      Furthermore, given the rapid liquidation of cattle and other assets owned and/or possessed by the Debtors, and the engagement and activities of Karlberg, a reasonable conclusion can be drawn that Rabo itself, or Karlberg have possession of records related to Debtors' assets and business transactions.

15.     As noted above, AgTexas and Thorlakson request authority to issue document subpoenas to the Examinees directing the Examinees to produce the records and documents identified in the subpoena riders attached hereto as Exhibit A.

16.     "A bankruptcy court 'has abundant legal authority to order the retrieval of information concerning a debtor and his estate from persons and entities who are not parties in a bankruptcy case, *i.e.,* persons or entities who have neither filed a voluntary petition under section 301 of the Bankruptcy Code nor filed a proof of claim or interest under section 501 of the Bankruptcy Code.'" *In re Correa*, 589 B.R. 76, 107 (Bankr. N.D. Tex. 2018) (citations and quotations omitted).

17.     Indeed, "Bankruptcy Rule 2004 of the Federal Rules of Bankruptcy Procedure is 'the basic discovery device in bankruptcy cases.'" *Id.*, at 108. "Third parties are subject to examination pursuant to Rule 2004 if they have knowledge of the debtor's affairs." *Id.* Further, "[a] rule 2004 exam has been explained as a broad investigation into the financial affairs of the debtor for the purpose of the discovery of assets of the estate and the exposure of fraudulent conduct." *Id.* That is why the scope of a Rule 2004 examination is "unfettered and broad" and "is commonly recognized as more in the nature of a 'fishing expedition.'" *Id.*

6

18.     If the Court grants this Motion, AgTexas and Thorlakson will compel the Examinees to produce records and documents through the issuance of a subpoena issued pursuant to Federal Rule of Bankruptcy Procedure 9016.

19.     AgTexas and Thorlakson represent that the Examinees will all receive not less than 14 days' written notice of deadline to produce documents.

20.     AgTexas and Thorlakson intend on sharing any documents produced by the Examinees with Kent Ries, the Chapter 7 Trustee.

WHEREFORE, AgTexas and Thorlakson respectfully request that the Court grant this ex parte motion. A proposed Order is submitted herewith.

## CERTIFICATE REGARDING CONFERENCE

Pursuant to LBR 2004-1, AgTexas and Thorlakson state that they are aware that Rabo AgriFinance, LLC, is represented by counsel, Thomas C. Riney, Heath Hendricks, and Michael R. Johnson (*Pro Hac Vice*). AgTexas and Thorlakson are not aware if Glenn Karlberg is represented by counsel. However, this Motion only requests authority to issue document subpoenas but not take Rule 2004 examinations at this time. Because AgTexas and Thorlakson are not requesting authority to conduct Rule 2004 examinations at this time, AgTexas and Thorlakson do not believe the meet and confer requirements of Local Rule 2004-1 apply. AgTexas and Thorlakson also represent to the Court that after they serve subpoenas on the Examinees they will cooperate with the Examinees, and their counsel, to establish a mutually agreeable date, place and time for the compliance with the document subpoenas.

DATED this 9th day of June, 2023.

NAMAN HOWELL SMITH & LEE PLLC
8310 N. Capital of Texas Highway, Ste. 490
Austin, Texas 78731
Ph. (512) 479-0300
Fax (512) 474-1901
dlebas@namanhowell.com

By: */s/ David L. LeBas*
       David L. LeBas
       SBN 12098600


## CERTIFICATE OF SERVICE

I hereby certify that on June 9, 2023, the foregoing document was filed with the Clerk of the Court in each of the foregoing Chapter 7 cases using the CM/ECF system, which sent notice of electronic filing to all electronic filing users in each case.


*/s/ David L. LeBas*
David L. LeBas

**EXHIBIT A**
**(DOCUMENT SUBPOENAS)**

**EXHIBIT "A"**

## **DEFINITIONS**
## **(Rabo AgriFinance)**

1.      <u>AgTexas</u>.   The term "AgTexas" shall mean AgTexas Farm Credit Services, a federally chartered agricultural credit association formed under the Farm Credit Act of 1933, and AgTexas PCA, a federally chartered production credit association formed under the Farm Credit Act of 1933.

2.      <u>Thorlakson</u>.   The term "Thorlakson" shall mean Thorlakson Diamond T Feeders, LP, a limited partnership organized under the laws of, and doing business in, the State of Texas.

3.      <u>Rabo</u>.   The term "Rabo" shall mean Rabo AgriFinance, LLC, a Delaware limited liability company, and all officers, directors, members, employees, attorneys, agents, and representatives of the foregoing.

4.      <u>Debtors</u>.   The term "Debtors" shall mean McClain Feed Yard, Inc., McClain Farms, Inc., and 7M Cattle Feeders, Inc., as named and described in Cause No.'s 23-20084, 23-20085, and 23-20086 filed in this Court.   This term also includes any of the Debtors' agents, employees, directors, members, officers, or representatives.

5.      <u>McClain</u>.   The term "McClain" shall mean Brian Keith McClain, aka Brian K. McClain, and also includes his agents, heirs, and representatives, including but not limited to his estate, his widow Chelsea McClain, his former spouse Crystal McClain, his daughter Meagan B. Goad, f/k/a Meagan B. Powell, and his daughter Kinsey Moreland.

6.      <u>RACC</u>.   The term "RACC" shall mean Rabo AgriFinance Credit Committee.

7.      <u>AD KRM</u>.   The term "AD KRM" shall mean Rabo AgriFinance's senior loan committee.

8.      <u>Relevant Documents Time Period</u>.  The term "Relevant Documents Time Period"

3

shall mean the period from January 1, 2018, through the present.

      9.    <u>Relevant Communications Time Period</u>.  The term "Relevant Communications Time Period" shall mean the period from January 1, 2021, through the present.

      10.    <u>Documents or Electronically Stored Information</u>.  The term "documents or electronically stored information" shall be synonymous in meaning and equal in scope to the usage of those terms in Rule 34 of the Federal Rules of Civil Procedure, and shall include, *without limitation*, any written, printed, electronic, typed, recorded, filmed, punched, transcribed, taped, or other graphic matter of any kind or nature however stored, produced, or reproduced, whether sent or received or neither, including the original, drafts, copies, and non-identical copies bearing notations or marks not found on the original, and includes, but is not limited to, all records, memoranda, reports, financial statements, handwritten and other notes, transcripts, paper, indices, electronic mail messages, electronic text messages, voicemail, word processing documents, spreadsheets, databases, calendars, telephone logs, contact manager information, internet usage files (including activity logs, records of internet and web browser generated files, history files, caches, and cookies), network access information, blogs, tweets, instant messages, letters, envelopes, telegrams, cables, telex messages, telephone messages, summaries or records of telephone conversations, summaries or records of personal conversations or interviews, summaries or records of meetings or conferences, minutes or transcripts or notations of meetings or telephone conversations or other communications of any type, tabulations, studies, analyses, evaluations, projections, work papers, statements, summaries, opinions, journals, desk calendars, appointment books, diaries, billing records, invoices, or photographs, or other data compilations in any medium from which information can be obtained, including, but not limited to microfilms, magnetic tapes, electronic storage, computers, laptops, hard drives, thumb drives, personal digital assistants, smart phones, and archives, and includes any other documents discoverable under Federal Rule of Civil Procedure 26, which are in your custody,

possession, and/or control or to which you otherwise have access. The term "document" *also includes* file and folder tabs associated with each of the aforementioned originals, copies, drafts, or versions. The term "document" also includes "communication" as defined herein.

11.    <u>Communications</u>. The term "communications" shall be construed as broadly as possible, and shall include, but not be limited, to all e-mails, text messages, correspondence, memoranda, or other written documentation in any form.

12.    <u>Concerning</u>. The term "concerning" means referring to, referencing, reflecting, in connection with, describing, evidencing, indicating, supporting or constituting, digesting, embodying, establishing, tending to establish, tending not to establish, comprising, commenting on, responding to, disagreeing with, showing, describing, analyzing, representing, constituting or including, in whole or in part.

13.    <u>All/Each</u>. The terms "all" and "each" shall be construed as all and each.

14.    <u>And/Or</u>. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

15.    <u>Number</u>. The use of the singular form of any word includes the plural and vice versa.

16.    <u>Tense</u>. The use of the present tense includes the present and past tense, and the use of the past tense includes the past and present tense.

17.    <u>You/Your</u>. The terms "You" and/or "Your" means to person or entity to whom this subpoena is directed, and its agents or employees thereof with knowledge of the matters contained in the documents requested herein.

## <u>INSTRUCTIONS</u>

A.    To the extent any Document Request in this subpoena seeks documents also covered by any other Document Request(s) to You, it is for purposes of completeness only, and should in no way be construed as limiting or otherwise narrowing any of the other Requests herein.

B.    These Requests shall extend to all documents in the possession, custody, and/or control of You, as well as all documents in the possession, custody, or control of persons or entities under Your control or which You could reasonably gain access.

C.    In the event that more than one copy of a documents exists, You should produce the original and each non-identical copy of each document or other tangible thing requested herein that is in Your possession, custody or control, or the control of Your agents, attorneys, accountants, or employees, or to which You could reasonably gain access.

D.    You should comply with the requirements of the Federal Rules of Civil Procedure regarding claims of privilege or protection of trial preparation materials.

E.    These Requests shall be deemed continuing in nature to the fullest extent permitted by law. If further responsive information comes into the possession or attention of You or Your attorneys at any time during the course of this proceeding, such information must be provided as required by the Federal Rules of Civil Procedure.

6

## **REQUESTED DOCUMENTS**

1.      All lending agreements for the Debtors' accounts from the opening or inception of the accounts at Rabo through the present.

2.      All communications with Debtors referring or relating to any lending agreements with the Debtors.

3.      All account opening agreements, signature cards, account holder agreements, change of authority agreements, or other agreements for the Debtors' Accounts from the opening or inception of the accounts through the present.

4.      All corporate resolutions or other agreements that were presented to open or maintain the Debtors accounts and/or lines of credit.

5.      All communications between Rabo and the Debtors' officers, directors, members, employees, attorneys, agents, and representatives through the Relevant Communications Time Period.

6.      All communications between Rabo and the following individuals during the Relevant Communications Time Period:

- Brian McClain;

- Crystal McClain;

- Chelsea McClain;

- Meagan B. Goad, aka Megan B. Powell;

- Jed Goad;

- Kinsey Moreland;

- Angela Powell;

- Glenn Karlberg

- Michelle Stockett

7.     All documents exchanged between Rabo and Focus Management during the Relevant Documents Time Period.

8.     All communications exchanged between Rabo and Focus Management during the Relevant Communications Time Period.

9.     All records and documents evidencing all transaction activities in or related to the Debtors' accounts during the Relevant Documents Time Period, including all wire transfer records by Rabo into any external financial institution.

10.     All records and documents evidencing lines of credit, and the amounts extended to Debtors during the Relevant Documents Time Period.

11.     All evidence of payments made by the Debtors on any lines of credit extended by Rabo during the Relevant Documents Time Period.

12.     All records and documents related to any assets seized by Rabo to satisfy any security interest or debt owed to it by Debtors.

13.     Copies of all foreclosure notices, acceleration notices, notices of defaults, and demands for payment and satisfaction of all obligations sent to Debtors during the Relevant Documents Time Period.

14.     All security agreements between Rabo and the Debtors evidencing interest in any cattle owned or possessed by the Debtors during the Relevant Documents Time Period.

15.     All security agreements between Rabo and the Debtors evidencing interest in any real property owned or possessed by the Debtors during the Relevant Documents Time Period.

16.     All security agreements between Rabo and the Debtors evidencing interest in any other assets held by the Debtors, during the Relevant Documents Time Period.

17.     All collateral inspection reports, including all by Rabo AgriFinance Collateral

Inspection Department ("AFCID") reports, regarding the Rabo loans to Brian McClain and the Debtors, and all reports created or obtained from any collateral inspection during the Relevant Documents Time Period.  This includes collateral inspections on cattle, and any other asset(s) belonging to the Debtors for which Rabo had or claimed a security interest, perfected or unperfected.

18.     Copies of all monthly borrowing base reports ("BBR") submitted by the Debtors to Rabo during the Relevant Documents Time Period.

19.     Copies of all written Account Freeze Letters issued to any financial institution during the Relevant Documents Time Period, in relation to any account held by the Debtors.

20.     All communications with the Texas Special Rangers or persons employed by the Texas & Southwestern Cattle Raisers' Association which are related to the liquidation of any cattle in the ownership and/or possession of the Debtors in the months of April 2023 and May 2023.

21.     All communications with any auction service or other party which purchased cattle owned or possessed by the Debtors during the months of March 2023, April 2023, and May 2023.

22.     All documents obtained, received, or seized by Rabo from the Debtors, including but not limited to, accounting statements, ledgers, or other bookkeepers' records related to the Debtor's operation during the Relevant Documents Time Period.

23.     All records in Your possession of any purchases or sales of Cattle by the Debtors that were made, executed, delivered, or effective at any point during the Relevant Documents Time Period.  This includes any documents obtained from the Debtors, but which may have not been created by Rabo.

24.     All other documents not related to accounting or bookkeeping obtained, received, or seized by Rabo from the Debtors.

25.    All communications by or with the Debtor's Chief Restructuring Officer, who upon information and belief is Glenn Karlberg, from the time Glenn Karlberg was first contacted to the present. If Glenn Karlberg is no longer in the position of Chief Restructuring Officer, then all communications by or with the Debtors' current Chief Restructuring Officer, from the time they were contacted to the present.

26.    All communications with Ampleo during the Relevant Communications Time Period that pertain to any part of the Debtors' operations.

27.    All documents exchanged between Rabo and Ampleo during the Relevant Documents Time Period related to the Debtors' operations.

28.    An organization chart identifying the names and positions of lending officers who handled the Debtors' financing arrangements during the Relevant Documents Time Period.

29.    An organization chart identifying the names of any credit analyst who performed any reviews, analysis, or other related work for the Debtors during the Relevant Documents Time Period.

30.    All "Know Your Customer" or "KYC" information collected during the life of the Debtors' history with Rabo.

31.    All policies and procedures in force during the Relevant Documents Time Period referring or relating to (a) availability of funds, or (b) dishonoring checks or wire transfers.

32.    All policies and procedures in force during the Relevant Documents Time Period referring or relating to implementation of the Check Clearing for the 21st Century Act.

33.    All prefunding collateral inspection reports (including drafts) for McClain Farms, McClain Feed Yard, 7M Cattle Feeders, and Brian McClain,

34.    All post-funding collateral inspection reports (including drafts, Annual, Final and SAM) for McClain Farms, McClain Feed Yard, 7M Cattle Feeders, and Brian McClain.

10

35.     All e-mails, reports and credit analysis by Rabo AgriFinance Collateral Inspection Department ("AFCID") regarding McClain Farms, McClain Feed Yard, 7M Cattle Feeders, and Brian McClain.

36.     All RACC North America committee minutes referencing McClain Farms, McClain Feed Yard, 7M Cattle Feeders, or Brian McClain.

37.     All AD KRM committee minutes referencing McClain Farms, McClain Feed Yard, 7M Cattle Feeders, or Brian McClain.

38.     All text messages sent or downloaded from Brian McClain's cell phone or phones.

39.     All text messages and e-mails between persons working in Rabo AgriFinance's Syndications group with the RAF relationship managers for the loans to McClain Farms, McClain Feed Yard, 7M Cattle Feeders and Brian McClain, which messages and e mails reference or are in regard to McClain Farms, McClain Feed yard, 7M Cattle Feeders or Brian McClain.

40.     All reports from Rabo credit analysts regarding or referencing McClain Farms, McClain Feed Yard, 7M Cattle Feeders or Brian McClain.

41.     All 2023 e-mails and text messages between Rabo special assets personnel and Rabo credit personnel regarding McClain Farms, McClain Feed Yard, 7M Cattle Feeders or Brian McClain.

42.     All contracts and agreements between Rabo, on the one hand, and Brian McClain, McClain Feed Yard, McClain Farms, and/or 7M Cattle Feeders, on the other hand, regarding or referencing Rabo managing the business(es) of McClain Feed Yard, McClain Farms, and/or 7M Cattle Feeders.

43.     An organization chart identifying the Rabo Relationship Managers for the Debtor's credits during the Relevant Documents Time Period.

44.     An organization chart identifying the Rabo Credit personnel with responsibility

11

for the Debtors' credits during the Relevant Documents Time Period.

45.     An organization chart identifying the Rabo Credit Analysts who had responsibility for or worked upon the Debtors' Credits during the Relevant Documents Time Period.

46.     An organization chart identifying the Rabo Special Assets Management ("SAM") personnel who had responsibility for the McClain Credits during the Relevant Documents Time Period.

47.     An organization chart identifying the members of the RACC committee during the Relevant Documents Time Period.

48.     An organization chart identifying the members of the AD KRM committee during the Relevant Documents Time Period.

49.     All Rabo Credit Reports/Memos (including all analysis and recommendations from Local Credit Officers, any Regional Credit Committee, AD KRM and/or Chairman of the Board) regarding the Debtors' credits during the Relevant Documents Time Period.

50.     All Rabo Loan Strategy Reports regarding the Debtors' credits during the Relevant Documents Time Period.

51.     All Rabo Borrowing Base analysis memos or reports done by any and all Financial Analysts (including Senior Analysts and Financial Analyst Managers) assigned to the Debtors' credits during the Relevant Documents Time Period.

52.     All Rabo Operational Risk Incident Reports regarding the McClain credits during the Relevant Documents Time Period.

53.     All Rabo Strategy Points memos or reports regarding the McClain credits during the Relevant Documents Time Period.

54.     All Rabo Client Status memos or reports regarding the McClain credit during the Relevant Documents Time Period.

55.    All Rabo "Deal" or Customer Event" memos or reports regarding the Debtors' credits during the Relevant Documents Time Period.,

56.    All Rabo "Charge off" memos or reports regarding the Debtors' credits during the Relevant Documents Time Period.

57.    All Rabo Client Meeting Recap memos regarding the Debtors' credits during the Relevant Documents Time Period.

58.    All Rabo FAS 114 Evaluations regarding the Debtors' credits during the Relevant Documents Time Period.

59.    All letters or memos reflecting when Rabo issued a waiver on either a negative borrowing base and/or a default on the loan covenants regarding the Debtors' credits during the Relevant Documents Time Period.

60.    All Rabo internal audits regarding the Debtors' credits during the Relevant Documents Time Period.

61.    All Rabo "Lessons Learned" memos or reports regarding the Debtors' credits during the Relevant Documents Timer Period.

62.    All Syndication Agreements and Participation Agreements regarding the Rabo loans to Brian McClain, McClain Farms, McClain Feed Yard, or 7M Cattle Feeders.

63.    All drafts of, or proposed, Syndication Agreements and Participation Agreements regarding the Rabo loans to Brian McClain, McClain Farms, McClain Feed Yard, or 7M Cattle Feeders.

**EXHIBIT "A"**

## **DEFINITIONS**
## **(Glenn Karlberg)**

1.      <u>AgTexas</u>.    The term "AgTexas" shall mean AgTexas Farm Credit Services, a federally chartered agricultural credit association formed under the Farm Credit Act of 1933, and AgTexas PCA, a federally chartered production credit association formed under the Farm Credit Act of 1933.

2.      <u>Thorlakson</u>.    The term "Thorlakson" shall mean Thorlakson Diamond T Feeders, LP, a limited partnership organized under the laws of, and doing business in, the State of Texas.

3.      <u>Rabo</u>.  The term "Rabo" shall mean Rabo AgriFinance, LLC, a Delaware limited liability company, and all officers, directors, members, employees, attorneys, agents, and representatives of the foregoing.

4.      <u>Debtors</u>. The term "Debtors" shall mean McClain Feed Yard, Inc., McClain Farms, Inc., and 7M Cattle Feeders, Inc., as named and described in Cause No.'s 23-20084, 23-20085, and 23-20086 filed in this Court.   This term also includes any of the Debtors' agents, employees, directors, members, officers, or representatives.

5.      <u>CRO</u>.   The term "CRO" shall mean Chief Restructuring Officer.

6.      <u>CRO Time Period</u>.  The term "CRO Time Period" means any time period(s) while You (Glenn Karlberg) have been, or were serving, as Chief Restructuring Officer, including from the date You were appointed to the present.  If You (Glenn Karlberg) have stopped serving as CRO, then the Time Period shall include up to the date You stopped serving as CRO.

7.      <u>McClain</u>. The term "McClain" shall mean Brian Keith McClain, aka Brian K. McClain, and also includes his agents, heirs, and representatives, including but not limited to his estate, his widow Chelsea McClain, his former spouse Crystal McClain, his daughter Meagan B. Goad, f/k/a Meagan B. Powell, and his daughter Kinsey Moreland.

8.	_Relevant Documents Time Period_. The term "Relevant Documents Time Period" shall mean the period from January 1, 2018, through the present.

9.	_Relevant Communications Time Period_. The term "Relevant Communications Time Period" shall mean the period from January 1, 2021, through the present.

10.	_Documents or Electronically Stored Information_. The term "documents or electronically stored information" shall be synonymous in meaning and equal in scope to the usage of those terms in Rule 34 of the Federal Rules of Civil Procedure, and shall include, _without limitation_, any written, printed, electronic, typed, recorded, filmed, punched, transcribed, taped, or other graphic matter of any kind or nature however stored, produced, or reproduced, whether sent or received or neither, including the original, drafts, copies, and non-identical copies bearing notations or marks not found on the original, and includes, but is not limited to, all records, memoranda, reports, financial statements, handwritten and other notes, transcripts, paper, indices, electronic mail messages, electronic text messages, voicemail, word processing documents, spreadsheets, databases, calendars, telephone logs, contact manager information, internet usage files (including activity logs, records of internet and web browser generated files, history files, caches, and cookies), network access information, blogs, tweets, instant messages, letters, envelopes, telegrams, cables, telex messages, telephone messages, summaries or records of telephone conversations, summaries or records of personal conversations or interviews, summaries or records of meetings or conferences, minutes or transcripts or notations of meetings or telephone conversations or other communications of any type, tabulations, studies, analyses, evaluations, projections, work papers, statements, summaries, opinions, journals, desk calendars, appointment books, diaries, billing records, invoices, or photographs, or other data compilations in any medium from which information can be obtained, including, but not limited to microfilms, magnetic tapes, electronic storage, computers, laptops, hard drives, thumb drives, personal digital assistants, smart phones, and archives, and includes any other

documents discoverable under Federal Rule of Civil Procedure 26, which are in your custody, possession, and/or control or to which you otherwise have access. The term "document" *also includes* file and folder tabs associated with each of the aforementioned originals, copies, drafts, or versions. The term "document" also includes "communication" as defined herein.

11.    <u>Communications</u>. The term "communications" shall be construed as broadly as possible, and shall include, but not be limited, to all e-mails, text messages, correspondence, memoranda, or other written documentation in any form.

12.    <u>Concerning</u>. The term "concerning" means referring to, referencing, reflecting, in connection with, describing, evidencing, indicating, supporting or constituting, digesting, embodying, establishing, tending to establish, tending not to establish, comprising, commenting on, responding to, disagreeing with, showing, describing, analyzing, representing, constituting or including, in whole or in part.

13.    <u>All/Each</u>. The terms "all" and "each" shall be construed as all and each.

14.    <u>And/Or</u>. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

15.    <u>Number</u>. The use of the singular form of any word includes the plural and vice versa.

16.    <u>Tense</u>. The use of the present tense includes the present and past tense, and the use of the past tense includes the past and present tense.

17.    <u>You/Your</u>. The terms "You" and/or "Your" means to person or entity to whom this subpoena is directed, and its agents or employees thereof with knowledge of the matters contained in the documents requested herein.  This also includes any agent or employees with knowledge of the matters contained in the documents requested herein of Ampleo.

## <u>INSTRUCTIONS</u>

A.      To the extent any Document Request in this subpoena seeks documents also covered by any other Document Request(s) to You, it is for purposes of completeness only, and should in no way be construed as limiting or otherwise narrowing any of the other Requests herein.

B.      These Requests shall extend to all documents in the possession, custody, and/or control of You, as well as all documents in the possession, custody, or control of persons or entities under Your control or which You could reasonably gain access.

C.      In the event that more than one copy of a documents exists, You should produce the original and each non-identical copy of each document or other tangible thing requested herein that is in Your possession, custody or control, or the control of Your agents, attorneys, accountants, or employees, or to which You could reasonably gain access.

D.      You should comply with the requirements of the Federal Rules of Civil Procedure regarding claims of privilege or protection of trial preparation materials.

E.      These Requests shall be deemed continuing in nature to the fullest extent permitted by law. If further responsive information comes into the possession or attention of You or Your attorneys at any time during the course of this proceeding, such information must be provided as required by the Federal Rules of Civil Procedure.

## **REQUESTED DOCUMENTS**

1.      All communications between You with the Debtors for the Relevant Correspondence Time Period, or, from whenever the Debtors first contacted You, whichever is earlier.

2.      All corporate resolutions executed by the Debtors' various corporate entities appointing You Chief Restructuring Officer for the Debtors.

3.      All corporate resolutions executed by the Debtors' various corporate entities during the CRO Time Period.  This includes whether or not You voted on the resolutions.

4.      All board meeting minutes for any meetings held during the CRO Time Period.

5.      All accountings related the Debtors' operations made by You or any of your representatives, or at your request or direction, during the CRO Time Period.

6.      All accountings made by the Debtors, or their employees or agents, during the Relevant Document Time Period in Your possession.

7.      All communications You had with Rabo, including any of their agents or employees, during the Relevant Communications Time Period, or during the CRO Time Period, whichever is earlier.

8.      All communications between You and the following individuals during the Relevant Communications Time Period, or during the CRO Timer Period, whichever is earlier:

- Brian McClain;

- Crystal McClain;

- Chelsea McClain;

- Meagan B. Goad, aka Megan B. Powell;

- Jed Goad;

- Kinsey Moreland;

- Angela Powell;

- Michelle Stockett

9.      All documents exchanged between You and Focus Management during the Relevant Documents Time Period.

10.      All communications exchanged between You and Focus Management during the Relevant Communications Time Period.

11.      All auction and/ or other sales receipts from any cattle sold by the Debtors in Your Possession from the Relevant Documents Time Period.

12.      All communications You had with any auction service during the CRO Time Period.

13.      All letters, notices, memoranda, or other written documents from any auction service related to holding of proceeds from any cattle sold by the During the CRO Time Period through the present.

14.      All records and documents evidencing lines of credit, and the amounts extended to Debtors by Rabo during the Relevant Documents Time Period in Your Possession.

15.      All evidence of payments made by the Debtors on any lines of credit extended by Rabo during the Relevant Documents Time Period in Your Possession.

16.      All records of assets maintained by the Debtors as of March 1, 2023, through the present.

17.      All records and documents asset transfers made by the Debtors to any individual or entity from March 2023 to the present.

18.      All communications between You and Rabo during the CRO Period, or the Relevant Communications Time Period, whichever is earlier.

19.      All bank statements given to you by Brian McClain, or any agent, employee or representative of the Debtors during the CRO Time Period, or the Relevant Documents Time Period,

20

whichever is earlier.

20.     All documents in your possession related to the cash-flow of the Debtors' operations during the Relevant Documents Time Period.

21.     All documents in your possession related to the number of cattle on hand during the Relevant Documents Time Period.

22.     Any and all forbearance agreements executed by You on behalf of the Debtors with any financial agency who provided a credit facility to the Debtors.

23.     All notes, mental impressions, summaries, or memoranda created by You that pertain in any way to the Debtors' operations during the CRO Time Period.

24.     Copies of all written records reflecting any recommendation made by You related to the Debtors' operation during the CRO Time Period.

25.     All documents in Your possession that pertain to outside investments made by any individual or entity into the Debtors' operations.

26.     All non-privileged communications between You and any outside law-enforcement agency during the CRO Time Period.  For the purpose of this request, the term "law-enforcement agency" includes but is not limited to, the Securities and Exchange Commission, the United States Department of Agriculture, the U.S. Department of Justice, any State Judicial District or prosecuting attorney's office, or any other law enforcement agency, state or federal.

27.     All communications between You and the Texas Special Rangers or persons employed by the Texas & Southwestern Cattle Raisers' Association which are related to the liquidation of any cattle in the ownership and/or possession of the Debtors in the months of April 2023 and May 2023.

28.     Copies of all monthly borrowing base reports ("BBR") in Your possession submitted by the Debtors to any lender during the Relevant Documents Time Period.

29.     Copies of all bank statements in Your possession that in any way relate to the Debtors' operations.

30.     Any resolutions reached by You, or Your agents or employees, with unsecured creditors on behalf of the Debtors during the CRO Time Period.

31.     Any communications You or Your agents or employees had with unsecured creditors on behalf of the Debtors during the CRO Time Period.

32.     All resolutions reached by You, or Your agents or employees, with secured creditors on behalf of the Debtors during the CRO Time Period.

33.     Any communications You or Your agents or employees had with secured creditors on behalf of the Debtors during the CRO Time Period.

34.     Documents related to any efforts made by You and/or the Debtors to secure outside capital to fund the Debtors' operation.  This includes any efforts made by Your and the Debtors' agents, employees, or representatives.

35.     Copies of any private or public suicide notes in Your possession made by Brian McClain.

36.     Copies of any sales or transaction receipts of any assets liquidated by the Debtors during the CRO Time Period.

37.     Copies of any communications in your possession between the Debtors and MAP Enterprises during the Relevant Documents Time Period.

38.     Copies of any communications in your possession between the Debtors and Wild Forrest during the Relevant Documents Time Period.

39.     Any communications You had with MAP Enterprises from the time the Debtors first contacted you.

40.      Any communications You had with Wild Forrest from the time the Debtors first contacted you.

41.      Any communications You had with any investors who invested money into any part of the Debtors' entities from the time the Debtors first contacted you.

42.      All non-privileged communications between You and any representative of Brian McClain's estate, including attorneys thereof.

43.      All non-privileged documents given to You by any representative of Brian McClain's estate, including attorneys thereof, that evidence assets belonging to Brian McClain's estate.