UNDERWOOD LAW FIRM, P.C.
Thomas C. Riney, SBN: 16935100
W. Heath Hendricks, SBN: 240556451
500 South Taylor, Suite 1200, LB 233
Amarillo, Texas 79101
Telephone: (806) 376-5613
Facsimile: (806) 379-0316
Email: tom.riney@uwlaw.com
Email: heath.hendricks@uwlaw.com

    -and-

Michael R. Johnson (*Pro Hac Vice*)
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
Salt Lake City, Utah 84111
Telephone:  (801) 532-1500
Facsimile:  (801) 532-7543
Email:  mjohnson@rqn.com

*Attorneys for Creditor Rabo AgriFinance LLC*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | |
|---|---|
| IN RE: <br><br> McCLAIN FEED YARD, INC., <br><br> Debtor. | **CASE NO. 23-20084-7-rlj** <br><br> **Chapter 7** |
| IN RE: <br><br> McCLAIN FARMS, INC., <br><br> *Debtor*. | **CASE NO. 23-20085-7-rlj** <br><br> **Chapter 7** |

| | |
|---|---|
| IN RE:<br><br>7M CATTLE FEEDERS, INC.,<br><br>*Debtor.* | CASE NO. 23-20086-7-rlj<br><br>Chapter 7 |

# REPLY IN FURTHER SUPPORT OF RABO'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY

TO THE HONORABLE UNITED STATES BANKRUPTCY COURT:

Rabo AgriFinance LLC ("**Rabo**"), a secured creditor of each of McClain Feed Yard, Inc. ("**MFY**"), McClain Farms, Inc. ("**MFI**") and 7M Cattle Feeders, Inc. ("**7M**") (collectively, the "**McClain Debtors**"), each of which is a Chapter 7 debtor in the above-entitled cases, through counsel, hereby respectfully files this Reply in further support of *Rabo's Motion for Relief from the Automatic Stay* (the "**Motion**"), filed in the McClain Debtors' separate Chapter 7 cases on May 22, 2023.

Rabo files this Reply to address the following responses that were filed and/or served in response to the Motion:

1. An informal response, dated May 31, 2023, that was sent to Rabo's counsel by counsel for First Kentucky Bank (the "**FKB Response**");

2. A Limited Objection to the Motion that was filed by Caterpillar Financial Services Corporation (the "**CAT Response**");

3. A Limited Objection to the Motion that was filed by Northland Capital Financial Services, LLC (the "**Northland Response**"); and

2

  4. A Response to the Motion filed by Kent Ries, the Chapter 7 Trustee for each of the McClain Debtors (the "**Trustee's Response**").

  Before addressing the specifics of the foregoing responses (collectively, the "**Responses**"), however, Rabo notes that the Motion set forth twenty-seven (27) statements of fact and, based on those statements of fact, asserted that Rabo was entitled to relief from the automatic stay with respect the Real Property and Personal Property (collectively, the "**Property**") identified in the Motion both for cause, pursuant to 11 U.S.C. § 362(d)(1), and because there was no equity in the Property and the Property is is not necessary for an effective reorganization in the McClain Debtors' Chapter 7 cases, pursuant to 11 U.S.C. § 362(d)(2).

  Significantly, none of the Responses dispute the legal and factual grounds set forth in the Motion for granting Rabo stay relief. Rather, the Responses address collateral issues such as whether Rabo or other creditors have the senior lien on particular items of Property. Rabo submits that whether it or some other creditor has the senior lien on a particular item of Property is an issue that should not impact the granting of the Motion. There is no question that all of the Property identified in the Motion is encumbered by liens, and that there is no equity therein for the benefit of the estate and its creditors. Once the stay is lifted, Rabo can and will work with the creditors who filed the Responses to insure that lien priority is maintained and that, if another creditor does indeed have the senior lien on a particular item of Property, that other creditor will receive either its collateral or the value of its collateral.

  Turning to each of the Responses, Rabo's reply to each of the Responses is as follows:

3

A. Reply to FKB Response.

While not filed with the Court, Rabo's counsel has received a letter from FKB's counsel pursuant to which FKB claims a senior PMSI lien on a John Deer Tractor, S/N P-ITA- 342142 (the "**Tractor**"). Rabo and FKB have agreed, through their counsel, that the Tractor will be liquidated with the net proceeds being paid to whichever creditor has the senior lien on the Tractor, and with any remaining proceeds after the senior creditor is paid being paid to the junior creditor.

B. Reply to CAT Response.

While somewhat unclear, the CAT Response seems to raise the question of whether Rabo properly perfected its liens against the personal property assets of Debtor McClain Farms, Inc. McClain Farms, Inc. is a Kentucky corporation. To put to rest any question about perfection, attached hereto as Exhibit "A" is a true and correct copy of Rabo's UCC-1 Financing Statement that was filed on September 23, 2021 with the Kentucky Secretary of State, which document shows Rabo's collateral as "All Assets" and names as the Debtors 7M Cattle Feeders, Inc, McClain Farms, Inc. and McClain Feed Yard, Inc.

The CAT Response indicates that CAT filed the response "to preserve its first lien position, senior and superior to any interest Rabo purports to have in the Loader, as a purchase money secured lender in the Loader."

While Rabo does not necessarily concede that CAT has a properly perfected PMSI in the Loader, Rabo is not asking the Court to make any findings as to the relative lien priority of Rabo and CAT regarding the Loader. Further, the fact that two creditors *may* have a dispute about lien

4

priority is not a basis to deny stay relief. That is an issue between two competing secured creditors and does not impact the estates or their unsecured creditors. The Court should grant stay relief as to all of the Property that is the subject of the Motion, including the Loader. Rabo and CAT will then have further discussions regarding lien priorities and the best way to address liquidation of the Loader.

Finally, Rabo notes that, even if CAT has the senior lien on the Loader as alleged, Rabo also has a perfected lien on the Loader. CAT indicates that the payoff balance of its loan is approximately $28,000.00, and the contractual documents attached to the CAT Response show that Debtor MFI acquired the Loader last year for the price of $69,106.00, with a trade-in of a prior piece of equipment valued at $33,000.00. Rabo believes the fair market value of the Loader is substantially more than the approximately $28,000.00 owed to CAT. Thus, even if CAT holds the senior lien on the Loader as alleged, the Loader appears to have equity beyond the amount required to pay CAT in full. Even if Rabo is junior in priority to CAT, Rabo is entitled to any equity in the Loader beyond the amount required to satisfy CAT's claim.

    C. Reply to Northland Response.

Like the CAT Response, the Northland Response raises only the question as to which secured creditor, as between Rabo and Northland, holds the senior lien on three items of Property and, in particular, a 2013 Rotomix Feed Mixer, a 2008 Rotomix Mix Box, and a 2015 Rotomix Mixer Box (the "**Rotomix Items**"). As an initial matter, Northland has provided no evidence establishing it has a senior lien on the Rotomix Items. The only documents attached to its Response are UCC-1 Financing Statements showing that its financing statements were filed with

5

the Kentucky Secretary of State on August 28, 2019, August 20, 2019, and December 27, 2021 respectively. Rabo's "all assets" UCC-1 Financing Statement was filed with the Kentucky Secretary of State on July 31, 2019, and Rabo is "first in time" to Northland. Without the contractual documents between 7M and Northland, there is no evidence supporting the proposition that Northland's liens are senior to Rabo's liens as properly perfected PMSI liens.

But even if Northland's liens on the Rotomix Items are senior to Rabo's liens, Rabo is not asking the Court to make any findings as to the relative lien priority of Rabo and Northland regarding those items. Further, the fact that two creditors *may* have a dispute about lien priority is not a basis to deny stay relief. That is an issue between two competing secured creditors and does not impact the estates or their unsecured creditors. The Court should grant stay relief as to all of the Property that is the subject of the Motion, including the Rotomix Items. Rabo and Northland will then have further discussions regarding lien priorities and the best way to address liquidation or surrender of the Rotomix Items.

    D. <u>Reply to the Trustee's Response</u>.

The Trustee's Response admits the essential facts of the Motion and Rabo's assertion that the automatic stay should be terminated. But the Trustee makes four "asks" in his response. Rabo's response to each of those four "asks" is as follows:

    1. *Trustee's Request that Proceeds be Escrowed*.

The Trustee says it would be "prudent for Rabo to escrow any funds received in any foreclosure until further Order from this Court upon notice and hearing of same" because, according to the Trustee, this case involves USDA Dealer Trust issues. As an initial matter, the

USDA has not asked for this relief, and it is confusing as to why the Trustee would be making this argument on its behalf.

Moreover, while it is true that this case involves USDA Dealer Trust issues, the statutory trust established by 7 U.S.C. § 217b attaches only to "[a]ll livestock purchased by a dealer in cash sales and all inventories of, or receivables or proceeds from such livestock . . . ." While Rabo has a blanket perfected lien on all assets of the McClain Debtors, including livestock and receivables, Rabo's Motion *expressly excludes* livestock and receivables, or their proceeds, from the Property that is the subject of the Motion. Rather, Rabo's Motion seeks stay relief only as to real estate and equipment and other non-titled tangible personal property identified in the Motion. Because no USDA Dealer Trust would attach to these assets as a matter of law pursuant to the plain language of 7 U.S.C. § 217b, it would be completely inappropriate to require Rabo to escrow proceeds pending the outcome of the Dealer Trust Claims.[1]

2. *Trustee's Request that the Stay Relief Order Provide for Disgorgement*.

Next, the Trustee says that if Rabo is "not required to escrow these funds, . . . any Order on this Motion must be subject to disgorgement. Such disgorgement rights should not be limited to the USDA Dealer Trust, but also any claims of the Trustee or other parties in these cases."

---

[1] Rabo understands that the Trustee is holding over $2 million in proceeds from the sale of cattle. Those are the funds to which any valid Dealer Trust Claims would attach. Further, and while not before the Court, Rabo believes that may of the filed Dealer Trust Claims are invalid because many of the parties making those claims did not sell any actual cattle to the McClain Debtors. Rather, the McClain Debtors entered into paper transactions purporting to buy and sell cattle, but those cattle never existed.

This request is also improper. First, as set forth above, the USDA, on behalf of cash sellers of livestock to the McClain Debtors, has no claim that the Property that is the subject of the Motion is or could be impressed with a statutory trust. Second, the Trustee lacks standing to ask for relief in favor of the USDA or "other parties in these cases" and, instead, is limited to asking for relief on behalf of the bankruptcy estates. Third, while it certainly is true that the Trustee has not yet had time to determine who the estates might have claims against, and that a potential target of future claims could be Rabo (although Rabo certainly denies there is any legal or factual basis for the Trustee to assert claims against it), to the extent the Trustee has claims against Rabo he cannot bolster those claims from unsecured claims to secured claims by demanding that the sales proceeds of Property in which the estates clearly lack equity and under which the estates' ownership rights are subordinate to Rabo's liens rights be subject to disgorgement.

In short, if at some point the Trustee believes he has claims to assert against Rabo then he should do what any other party who believes it has claims against Rabo would do; file his complaint and try to obtain a money judgment or a settlement. Finally, the Trustee's request for language in the Stay Relief Order providing for disgorgement is improper given that Rabo is a multi-billion dollar financial institution. Does the Trustee really believe that, if he were to obtain a judgment against Rabo, he would not be able to collect that judgment?[2]

---

[2] The Trustee's request for disgorgement language in the Stay Relief Order is akin to the Trustee asking for a pre-judgment writ of attachment against Rabo's assets to secure a judgment he has not obtained on claims that he has not even filed. It is entirely inappropriate.

8

   *3. The Trustee's Concerns About Collateral Estoppel/Res Judicata.*

The Trustee next says that any Stay Relief Order "must not in any way be a release, waiver or otherwise determine the rights of the Trustee or any other party in the cases from pursuing claims and recoveries of any kind against Rabo in the future. Nothing in this Motion or any Order should be collateral estoppel or res judicata of any facts or claims in later litigation between Rabo or any other party in these cases."

Again, it is curious as to why the Trustee, who represents the McClain Debtors' bankruptcy estates, feels like he needs to request relief on behalf of "other parties in these cases." In any event, Rabo's Motion does not seek any order from this Court "releasing" or "waiving" anyone's rights or claims, including those of the Trustee. With respect to res judicata and/or collateral estoppel, Rabo notes that it filed the Motion asserting certain facts related to its request for stay relief. Included in those facts are representations, supporting by documentary evidence, showing that Rabo has perfected liens on the Property that is the subject of the Motion, and that the value of the Property that is the subject of the Motion is worth but a fraction of Rabo's total claims against the McClain Debtors. In short, Rabo has alleged facts showing that it is entitled to an order from this Court granting relief from the automatic stay, pursuant to Sections 362(d)(1) and (d)(2), such that Rabo should be allowed to foreclose on its collateral.

With respect to the facts necessary to decide Rabo's Motion, the time to contest those facts was in response to the Motion, similar to the responses filed by FKB, CAT, and Northland contesting Rabo's contention that it held a senior lien on all of the Property. The failure by the

Trustee (and anyone else) to contest the material facts of the Motion results in those facts being deemed admitted under Local Rule 4001-1(b).

Simply put, while Rabo concurs that granting its Motion would not "release" or "waive" any claims that any party has or may have against Rabo, and while Rabo also concurs that granting its Motion would not generally bar any claims on collateral estoppel or res judicata grounds, granting the Motion would result in the deemed admission of the facts outlined in Rabo's Motion as those facts relate to Rabo's request for stay relief.

   4. *Trustee's Reservation of Right to Dispute or Litigate Rabo's Liens and Right to Foreclosure Proceeds.*

Finally, the Trustee asserts that he is reserving his "right to dispute or litigate Rabo's liens and rights to foreclosure proceeds on any assets." While the time for contesting Rabo's lien rights was in response to the Motion, Rabo is fine with that reservation, although Rabo does not believe that the Trustee has any basis to "dispute or litigate Rabo's liens" and foreclosure rights. In making his reservation of rights, the Trustee first alleges that while Rabo has shown it has a recorded deed of trust in Parmer County, it has not shown that it has a recorded trust deed in Deaf Smith County. Attached hereto as Group Exhibit "B" are the Title Policies for the three deeds of trust identified in the Motion as evidencing Rabo's liens in Parmer and Deaf Smith County. Each Title Policy clearly shows that the deeds of trust were recorded in both Parmer and Deaf Smith Counties, and each provides the recording information in case the Trustee would like to do a further investigation. In short, Rabo does indeed have perfected liens on the Real Property identified in the Motion, and the Trustee has no basis to contest those facts.

The Trustee next asserts that Rabo's financing statements "contain financing statements with little more than 'all assets' as a description of Rabo's collateral." While that is true, the UCC expressly allows a financing statement to reference "all assets" as a lender's collateral. *See* Tex. Bus. & Comm. Code § 9-504(2) ("A financing statement sufficiently indicates the collateral that it covers if the financing statement provides an indication that the financing statement covers all assets or all personal property"). Moreover, the Security Agreement between Rabo and the McClain Debtors, a copies of which are attached as Exhibit "H" to the Motion, contain detailed collateral descriptions pursuant to which, as represented in the Motion, the McClain Debtors granted Rabo a lien on essentially of all of their personal property assets, including the equipment and other tangible personal property that is the subject of the Motion:

> 1. **The Collateral**. Grantor assigns and grants to Collateral Agent a security interest in all of the following property now owned or hereafter acquired by Grantor (collectively, the "Collateral"): (a) all accounts, contract rights, documents, documents of title, payment intangibles, investment property, chattel paper, instruments, and deposit accounts; (b) all Inventory, (c) all equipment, (d) all fixtures (e) all farm products, including crops grown, growing or to be grown, livestock born or unborn, supplies used or produced in Grantor's farming operation, and products of crops and livestock in their unmanufactured state; (f) all general intangibles, including all Intellectual Property (defined herein); (g) all proceeds of any crop insurance, price support payment or other government program; (h) rights and interests under Hedging Agreements, including all rights to the payment of money from Secured Parties under the Hedging Agreements; and all accounts, deposit accounts, and general intangibles, including payment intangibles, described in the Hedging Agreements; (i) accessions, attachments and other additions to the Collateral; (j) substitutes or replacements for any Collateral, all proceeds, products, rents and profits of any Collateral, all rights under warranties and insurance contracts covering the Collateral, and any causes of action relating to the Collateral; and (k) Books and Records pertaining to any Collateral, including but not limited to any computer-readable memory and any computer hardware or software necessary to process such memory ("**Books and Records**").

Finally, the Trustee suggests that "there are multiple PMSI lenders whose claims prime Rabo." As discussed above, only three other secured creditors, FKB, CAT and Northland, have asserted that they hold senior PMSI liens on a few items of Property. And in any event, if and to the extent there are disputes between Rabo and these or any other "PMSI lenders" about lien priority, that is between Rabo and those PMSI lenders to work through and resolve. There would be no benefit to the estates in having the Trustee weigh in on potential lien priority disputes

11

between two secured lenders since, at the end of the day, only those two secured lenders have an economic interest in the outcome.

WHEREFORE, based upon the foregoing, Rabo respectfully requests that the Court grant its Motion, terminate the automatic stay pursuant to 11 U.S.C. § 362(d)(1) and/or (2) with respect to the real and personal property that is the subject of its Motion, and further waive the 14-day stay period established by Federal Rule of Bankruptcy Procedure 4001(a)(3), such that the Court's Order terminating the automatic stay would be immediately effective on its entry.

DATED this 16th day of June, 2023.

UNDERWOOD LAW FIRM, P.C.
Thomas C. Riney, SBN: 16935100
W. Heath Hendricks, SBN: 240556451
500 South Taylor, Suite 1200, LB 233
Amarillo, Texas 79101
Telephone: (806) 376-5613
Facsimile: (806) 379-0316
Email: tom.riney@uwlaw.com
Email: heath.hendricks@uwlaw.com

--and--

RAY QUINNEY & NEBEKER P.C.
Michael R. Johnson *(Pro Hac Vice)*
36 South State, Suite 1400
Salt Lake City, UT 84111
Telephone:  (801) 532-1500
Facsimile:  (801) 532-7543
Email:  mjohnson@rqn.com

*/s/ Michael R. Johnson*
Michael R. Johnson
*Attorneys for Rabo AgriFinance LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 16, 2023, the foregoing document was filed with the Clerk of the Court in each of the foregoing Chapter 7 cases using the CM/ECF system, which sent notice of electronic filing to all electronic filing users in each case.

/s/ *Michael R. Johnson*
Michael R. Johnson