# EXHIBIT A

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

| | |
|---|---|
| A. NAME & PHONE OF CONTACT AT FILER (optional)<br>Name: Wolters Kluwer Lien Solutions Phone: 800-331-3282 Fax: 818-662-4141 | **2021-3171512-95.01**<br>Michael G. Adams<br>**Kentucky Secretary of State** |
| B. E-MAIL CONTACT AT FILER (optional)<br>uccfilingreturn@wolterskluwer.com | File Date    9/23/2021 4:30:00 PM<br>Status      Active |
| C. SEND ACKNOWLEDGMENT TO: (Name and Address)    8477 - RABO<br><br>Lien Solutions                82554671<br>P.O. Box 29071<br>Glendale, CA  91209-9071        **KYKY** | Fee        $10.00<br>Filer      ADevine |

File with: Secretary of State, KY

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| 7M Cattle Feeders, Inc. | | | | | |
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | | |
| 1c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| 824 Mullins Lane | Benton | | KY | 42025 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| McClain Farms, Inc. | | | | | |
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | | |
| 2c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| 824 Mullins Lane | Benton | | KY | 42025 | USA |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| Rabo AgriFinance LLC | | | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | | |
| 3c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| P.O. Box 411995 | St. Louis | | MO | 63141 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
All Assets

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions)  ☐ being administered by a Decedent's Personal Representative

| 6a. Check only if applicable and check only one box: | 6b. Check only if applicable and check only one box: |
|---|---|
| ☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien  ☐ Non-UCC Filing |

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

| 8. OPTIONAL FILER REFERENCE DATA: | | |
|---|---|---|
| 82554671        0000030682 | | McClain Feed Yard, Inc. |

**FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)**

Prepared by Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

## Commonwealth of Kentucky
### Michael G. Adams, Secretary of State

9/27/2021

Michael G. Adams
Secretary of State
P. O. Box 718
Frankfort, KY 40602-0718
(502) 564-3490
http://www.sos.ky.gov

## UCC Acknowledgement
## 2021-3171512-95.1

**LIEN SOLUTIONS**
**P.O. BOX 29071**
**GLENDALE CA 91209-9071**

**Filing number:**          2021-3171512-95.1
**File date and time:**   9/23/2021 4:30:00 PM
**Status of filing:**        Active

## Actions

| Sequence | Filing Type | File Date | Status |
|---|---|---|---|
| 1 | Initial financing Statement | 9/23/2021 4:30:00 PM | Active |

## Debtors

| Org/Individual | Date Added | Name |
|---|---|---|
| Organization | 9/23/2021 4:30:00 PM | McClain Feed Yard, Inc.<br>824 Mullins Lane<br>Benton, KY 42025 |
| Organization | 9/23/2021 4:30:00 PM | McClain Farms, Inc.<br>824 Mullins Lane<br>Benton, KY 42025 |
| Organization | 9/23/2021 4:30:00 PM | 7M Cattle Feeders, Inc.<br>824 Mullins Lane<br>Benton. KY 42025 |

## Secured Parties

| Org/Individual | Date Added | Name |
|---|---|---|
| Organization | 9/23/2021 4:30:00 PM | Rabo AgriFinance LLC<br>P.O. Box 411995<br>St. Louis, MO 63141 |

**This acknowledgement shows the information for the filing as entered into the
Kentucky Secretary of State's index.**

## UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank
because Individual Debtor name did not fit, check here ☐

| 9a. ORGANIZATION'S NAME | | |
|---|---|---|
| 7M Cattle Feeders, Inc. | | |

OR

| 9b. INDIVIDUAL'S SURNAME | | |
|---|---|---|
| | | |
| FIRST PERSONAL NAME | | |
| ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name;
do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

| 10a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| McClain Feed Yard, Inc. | | | | | |

OR

| 10b. INDIVIDUAL'S SURNAME | | | | | |
|---|---|---|---|---|---|
| INDIVIDUAL'S FIRST PERSONAL NAME | | | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | | | SUFFIX |

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 824 Mullins Lane | Benton | KY | 42025 | USA |

11. ☐ ADDITIONAL SECURED PARTY'S NAME    or    ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

| 11a. ORGANIZATION'S NAME | | | |
|---|---|---|---|

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

| 13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable) | 14. This FINANCING STATEMENT: ☐ covers timber to be cut   ☐ covers as-extracted collateral   ☐ is filed as a fixture filing |
|---|---|
| 15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest): | 16. Description of real estate: |

| 17. MISCELLANEOUS: 82554671-KY-0  9477 - RABO AGRIFINANCE | Rabo AgriFinance LLC | File with: Secretary of State, KY | 0000030682  McClain Feed Yard, Inc. |
|---|---|---|---|

Prepared by Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

# EXHIBIT B

**🅑 Fidelity National Title**
Insurance Company

Policy No.:  7032-1-AN19-7981-2019.2744343-217554184

## LOAN POLICY OF TITLE INSURANCE (T-2)

Issued by

## FIDELITY NATIONAL TITLE INSURANCE COMPANY

**Any notice of claim and any other notice or statement in writing required to be given to the Company under this Policy must be given to the Company at the address shown in Section 17 of the Conditions.**

### COVERED RISKS

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B, AND THE CONDITIONS, FIDELITY NATIONAL TITLE INSURANCE COMPANY, a Florida corporation (the "Company") insures, as of Date of Policy and, to the extent stated in Covered Risks 11, 13 and 14 after Date of Policy, against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of:

1  Title being vested other than as stated in Schedule A.
2.  Any defect in or lien or encumbrance on the Title. This Covered Risk includes but is not limited to insurance against loss from
    (a) A defect in the Title caused by
        (i)      forgery, fraud, undue influence, duress, incompetency, incapacity or impersonation;
        (ii) failure of any person or Entity to have authorized a transfer or conveyance;
        (iii) a document affecting Title not properly created, executed, witnessed, sealed, acknowledged, notarized, or delivered;
        (iv) failure to perform those acts necessary to create a document by electronic means authorized by law;
        (v) a document executed under a falsified, expired or otherwise invalid power of attorney,
        (vi) a document not properly filed, recorded or indexed in the Public Records including failure to perform those acts by electronic means authorized by law, or
        (vii) a defective judicial or administrative proceeding.
    (b) The lien of real estate taxes or assessments imposed on the Title by a governmental authority due or payable, but unpaid.
    (c) Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land. The term "encroachment" includes encroachments of existing improvements located on the Land onto adjoining land, and encroachments onto the Land of existing improvements located on adjoining land.
3.  Lack of good and indefeasible Title.
4.  No right of access to and from the Land.
5.  The violation or enforcement of any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
    (a) the occupancy, use, or enjoyment of the Land;
    (b) the character, dimensions or location of any improvement erected on the Land;
    (c) subdivision of land; or
    (d) environmental protection
    if a notice, describing any part of the Land, is recorded in the Public Records setting forth the violation or intention to enforce, but only to the extent of the violation or enforcement referred to in that notice.
6.  An enforcement action based on the exercise of a governmental police power not covered by Covered Risk 5 if a notice of the enforcement action, describing any part of the Land, is recorded in the Public Records, but only to the extent of the enforcement referred to in that notice
7.  The exercise of the rights of eminent domain if a notice of the exercise, describing any part of the Land, is recorded in the Public Records.
8.  Any taking by a governmental body that has occurred and is binding on the rights of a purchaser for value without Knowledge.
9.  The invalidity or unenforceability of the lien of the Insured Mortgage upon the Title. This Covered Risk includes but is not limited to insurance against loss from any of the following impairing the lien of the Insured Mortgage:
    (a) forgery, fraud, undue influence, duress, incompetency, incapacity or impersonation;
    (b) failure of any person or Entity to have authorized a transfer or conveyance,
    (c) the Insured Mortgage not being properly created, executed, witnessed, sealed, acknowledged, notarized or delivered;
    (d) failure to perform those acts necessary to create a document by electronic means authorized by law;
    (e) a document executed under a falsified, expired or otherwise invalid power of attorney,
    (f)  a document not properly filed, recorded or indexed in the Public Records including failure to perform

those acts by electronic means authorized by law; or

    (g) a defective judicial or administrative proceeding.

10. The lack of priority of the lien of the Insured Mortgage over any other lien or encumbrance.

11. The lack of priority of the lien of the Insured Mortgage

    (a) as security for each and every advance of proceeds of the loan secured by the Insured Mortgage over any statutory or constitutional mechanic's, contractor's, or materialman's lien for services, labor or material having its inception on or before Date of Policy ; and

    (b) over the lien of any assessments for street improvements under construction or completed at Date of Policy.

12. The invalidity or unenforceability of any assignment of the Insured Mortgage, provided the assignment is shown in Schedule A, or the failure of the assignment shown in Schedule A to vest title to the Insured Mortgage in the named Insured assignee free and clear of all liens.

13. The invalidity, unenforceability, lack of priority or avoidance of the lien of the Insured Mortgage:

    (a) resulting from the avoidance in whole or in part, or from a court order providing an alternative remedy, of any transfer of all or any part of the title to or any interest in the Land occurring prior to the transaction creating the lien of the Insured Mortgage because that prior transfer constituted a fraudulent or preferential transfer under federal bankruptcy, state insolvency or similar creditors' rights laws; or

    (b) because the Insured Mortgage constitutes a preferential transfer under federal bankruptcy, state insolvency or similar creditors' rights laws by reason of the failure of its recording in the Public Records:

        (i) to be timely, or

        (ii) to impart notice of its existence to a purchaser for value or a judgment or lien creditor.

14. Any defect in or lien or encumbrance on the Title or other matter included in Covered Risks 1 through 13 that has been created or attached or has been filed or recorded in the Public Records subsequent to Date of Policy and prior to the recording of the Insured Mortgage in the Public Records.

The Company will also pay the costs, attorneys' fees, and expenses incurred in defense of any matter insured against by this Policy, but only to the extent provided in the Conditions.

**IN WITNESS WHEREOF,** the Company has caused this Policy to be signed with the facsimile signatures of its President and Secretary and sealed as required by its By-Laws.

FIDELITY NATIONAL TITLE INSURANCE COMPANY

Countersigned:

By: _____
Authorized Officer or Agent

SEAL

By: _____

President

Attest: _____

Secretary

**IMPORTANT NOTICE**

To obtain information or make a complaint:

You may call FIDELITY NATIONAL TITLE INSURANCE COMPANY toll free telephone for information or to make a complaint at: 1-877-862-9111

You may also write to FIDELITY NATIONAL TITLE INSURANCE COMPANY at: P.O. Box 45023, Jacksonville, FL 32232-5023

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

1-800-252-3439

You may write to the Texas Department of Insurance at:

PO Box 149104
Austin, TX  78714-9104
Web:  http://www.tdi.texas.gov
Email:  ConsumerProtection@tdi.texas.gov

**PREMIUM OR CLAIM DISPUTES:**

Should you have a dispute concerning your premium or about a claim you should contact the company first.  If the dispute is not resolved, you may contact the Texas Department of Insurance.

**ATTACH THIS NOTICE TO YOUR POLICY:**

This notice is for information only and does not become a part or condition of the attached document.

**AVISO IMPORTANTE**

Para obtener informacion o para someter una queja:

Usted puede llamar al número de teléfono gratuito de FIDELITY NATIONAL TITLE INSURANCE COMPANY para obtener información o para presentar una queja al:

1-800-654-7041

Usted tambien puede escribir a FIDELITY NATIONAL TITLE INSURANCE COMPANY at: P.O. Box 45023, Jacksonville, FL 32232-5023

Puede comunicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas at:

1-800-252-3439

Puede escribir al Departamento de Seguros de Texas:

PO Box 149104
Austin TX  78714-9104
Web:  http://www.tdi.texas.gov
Email:  ConsumerProtection@tdi.texas.gov

**DISPUTAS SOBRE PRIMAS O RECLAMOS:**

Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con la compania primero.  Si no se resuelve la disputa; puede entonces comunicarse con el departamento (TDI)

**UNA ESTE AVISO A SU POLIZA**

Este aviso es solo para proposito de informacion no se convierte en parte o condicion del documento adjunto.

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to.
   (i)  the occupancy, use, or enjoyment of the Land;
   (ii)  the character, dimensions, or location of any improvement erected on the Land;
   (iii)  subdivision of land; or
   (iv)  environmental protection;
   or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5
   (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims, or other matters
   (a) created, suffered, assumed, or agreed to by the Insured Claimant,
   (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy,
   (c) resulting in no loss or damage to the Insured Claimant;
   (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13 or 14); or
   (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing business laws of the state where the Land is situated.
5. Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth in lending law.
6. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is·
   (a) a fraudulent conveyance or fraudulent transfer, or
   (b) a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy
7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This exclusion does not modify or limit the coverage provided under Covered Risk 11(b).
8. The refusal of any person to purchase, lease or lend money on the estate or interest covered hereby in the land described in Schedule A because of Unmarketable Title.

## CONDITIONS

### 1. DEFINITION OF TERMS.

(a) "Amount of Insurance"· the amount stated in Schedule A, as may be increased or decreased by endorsement to this policy, increased by Section 8(b), or decreased by Section 10 of these Conditions.

(b) "Date of Policy": The date designated as "Date of Policy" in Schedule A.

(c) "Entity": A corporation, partnership, trust, limited liability company or other similar legal entity.

(d) "Indebtedness". The obligation secured by the Insured Mortgage including one evidenced by electronic means authorized by law, and if that obligation is the payment of a debt, the Indebtedness is the sum of:

(i) the amount of the principal disbursed as of Date of Policy,

(ii) the amount of the principal disbursed subsequent to Date of Policy;

(iii) construction loan advances made subsequent to Date of Policy for the purpose of financing in whole or in part the construction of an improvement to the Land or related to the Land that the Insured was and continued to be obligated to advance at Date of Policy and at the date of the advance,

(iv) interest on the loan;

(v) prepayment premiums, exit fees and other similar fees or penalties allowed by law;

(vi) expenses of foreclosure and any other costs of enforcement;

(vii) amounts advanced to assure compliance with laws or to protect the lien or the priority of the lien of the Insured Mortgage before the acquisition of the estate or interest in the Title;

(viii) amounts to pay taxes and insurance; and,

(ix) reasonable amounts expended to prevent deterioration of improvements, but reduced by the total of all payments and by any amount forgiven by an Insured.

(e) "Insured": the Insured named in Schedule A. (i) The term "Insured" also includes:

(A) the owner of the Indebtedness and each successor in ownership of the Indebtedness, whether the owner or successor owns the Indebtedness for its own account or as a trustee or other fiduciary, except a successor who is an obligor under the provisions of Section 12(c) of these Conditions;

(B) if the Indebtedness is evidenced by a "transferable record," the person or Entity who has

"control" of the "transferable record," as these terms are defined by applicable electronic transactions law;

(C) successors to an Insured by dissolution, merger, consolidation, distribution or reorganization;

(D) successors to an Insured by its conversion to another kind of Entity,

(E) a grantee of an Insured under a deed delivered without payment of actual valuable consideration conveying the Title:

(1) If the stock, shares, memberships, or other equity interests of the grantee are wholly-owned by the named Insured,

(2) If the grantee wholly owns the named Insured, or

(3) If the grantee is wholly-owned by an affiliated Entity of the named Insured, provided the affiliated Entity and the named Insured are both wholly-owned by the same person or Entity;

(F) any government agency or instrumentality that is an insurer or guarantor under an insurance contract or guaranty insuring or guaranteeing the Indebtedness secured by the Insured Mortgage, or any part of it, whether named as an Insured or not,

(ii) With regard to (A), (B), (C), (D) and (E) reserving, however, all rights and defenses as to any successor that the Company would have against any predecessor Insured, unless the successor acquired the Indebtedness as a purchaser for value without Knowledge of the asserted defect, lien, encumbrance or other matter insured against by this policy.

(f) "Insured Claimant". an Insured claiming loss or damage

(g) "Insured Mortgage" the Mortgage described in paragraph 4 of Schedule A.

(h) "Knowledge" or "Known". actual knowledge, not constructive knowledge or notice that may be imputed to an Insured by reason of the Public Records or any other records that impart constructive notice of matters affecting the Title

(i) "Land". the land described in Schedule A, and affixed improvements that by law constitute real property. The term "Land" does not include any property beyond the lines of the area described in Schedule A, nor any right, title, interest, estate or easement in abutting streets, roads, avenues, alleys, lanes, ways or waterways, but this does not modify or limit the extent that a right of access to and from the Land is insured by this policy.

(j) "Mortgage": mortgage, deed of trust, trust deed, or other security instrument, including one evidenced by electronic means authorized by law.

(k) "Public Records". records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge. With respect to Covered Risk 5(d), "Public Records" shall also include environmental protection liens filed in the records of the clerk of the United States District Court for the district where the Land is located.

(l) "Title". the estate or interest described in Schedule A.

(m) "Unmarketable Title": Title affected by an alleged or apparent matter that would permit a prospective purchaser or lessee of the Title or lender on the Title or a prospective purchaser of the Insured Mortgage to be released from the obligation to purchase, lease or lend if there is a contractual condition requiring the delivery of marketable title.

**2. CONTINUATION OF INSURANCE.**

The coverage of this policy shall continue in force as of Date of Policy in favor of an Insured after acquisition of the Title by an Insured or after conveyance by an Insured, but only so long as the Insured retains an estate or interest in the Land, or holds an obligation secured by a purchase money Mortgage given by a purchaser from the Insured, or only so long as the Insured shall have liability by reason of warranties in any transfer or conveyance of the Title. This policy shall not continue in force in favor of any purchaser from the Insured of either (i) an estate or interest in the Land, or (ii) an obligation secured by a purchase money Mortgage given to the Insured.

**3. NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT.**

The Insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 5(a) below, or (ii) in case Knowledge shall come to an Insured of any claim of title or interest that is adverse to the Title or the lien of the Insured Mortgage, as Insured, and that might cause loss or damage for which the Company may be liable by virtue of this policy. If the Company is prejudiced by the failure of the Insured Claimant to provide prompt notice, the Company's liability to the Insured Claimant under the policy shall be reduced to the extent of the prejudice.

Subject to the provisions of this policy, upon acquisition of all or any part of the Title pursuant to the provisions of Section 2 of these Conditions, when, after the Date of the Policy, the Insured notifies the Company as required herein of a lien, encumbrance, adverse claim or other defect in Title insured by this policy that is not excluded or excepted from the coverage of this policy, the Company shall promptly investigate the charge to determine whether the lien, encumbrance, adverse claim or defect or other matter is valid and not barred by law or statute. The Company shall notify the Insured in writing, within a reasonable time, of its determination as to the validity or invalidity of the Insured's claim or charge under the policy. If the Company concludes that the lien, encumbrance, adverse claim or defect is not covered by this policy, or was otherwise addressed in the closing of the transaction in connection with which this policy was issued, the Company shall specifically advise the Insured of the reasons for its determination. If the Company concludes that the lien, encumbrance, adverse claim or defect is valid, the Company shall take one of the following actions· (i) institute the necessary proceedings to clear the lien, encumbrance, adverse claim or defect from the Title as insured; (ii) indemnify the Insured as provided in this policy; (iii) upon payment of appropriate premium and charges therefor, issue to the Insured Claimant or to a subsequent owner, mortgagee or holder of the estate or interest in the Land insured by this policy, a policy of title insurance without exception for the lien, encumbrance, adverse claim or defect, said policy to be in an amount equal to the current value of the Land or, if a loan policy, the amount of the loan; (iv) indemnify another title insurance company in connection with its issuance of a policy(ies) of title insurance without exception for the lien, encumbrance, adverse claim or defect; (v) secure a release or other document discharging the lien, encumbrance, adverse claim or defect, or (vi) undertake a combination of (i) through (v) herein.

**4. PROOF OF LOSS.**

In the event the Company is unable to determine the amount of loss or damage, the Company may, at its

option, require as a condition of payment that the Insured Claimant furnish a signed proof of loss. The proof of loss must describe the defect, lien, encumbrance or other matter insured against by this policy that constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage.

## 5. DEFENSE AND PROSECUTION OF ACTIONS.

(a) Upon written request by the Insured, and subject to the options contained In Sections 3 and

7 of these Conditions, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an Insured in litigation in which any third party asserts a claim covered by this policy adverse to the Insured. This obligation is limited to only those stated causes of action alleging matters insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the Insured to object for reasonable cause) to represent the Insured as to those stated causes of action. It shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs or expenses incurred by the Insured in the defense of those causes of action that allege matters not insured against by this policy.

(b) The Company shall have the right, In addition to the options contained in Sections 3 and 7, at its own cost, to institute and prosecute any action or proceeding or to do any other act that in its opinion may be necessary or desirable to establish the Title or the lien of the Insured Mortgage, as insured, or to prevent or reduce loss or damage to the Insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable to the Insured. The exercise of these rights shall not be an admission of liability or waiver of any provision of this policy. If the Company exercises its rights under this subsection, it must do so diligently.

(c) Whenever the Company brings an action or asserts a defense as required or permitted by this policy, the Company may pursue the litigation to a final determination by a court of competent jurisdiction and it expressly reserves the right, in its sole discretion, to appeal from any adverse judgment or order.

## 6. DUTY OF INSURED CLAIMANT TO COOPERATE.

(a) In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding and any appeals, the Insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, including the right to use, at its option, the name of the Insured for this purpose. Whenever requested by the Company, the Insured, at the Company's expense, shall give the Company all reasonable aid

(i) in securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and

(ii) in any other lawful act that in the opinion of the Company may be necessary or desirable to establish the Title, the lien of the Insured Mortgage, or any other matter as insured. If the Company is prejudiced by the failure of the Insured to furnish the required cooperation, the Company's obligations to the Insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

(b) The Company may reasonably require the Insured Claimant to submit to examination under oath by any authorized representative of the Company and to produce for examination, inspection and copying, at such reasonable times and places as may be designated by the authorized representative of the Company, all records, in whatever medium maintained, including books, ledgers, checks, memoranda, correspondence, reports, e-mails, disks, tapes, and videos whether bearing a date before or after Date of Policy, that reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the Insured Claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect and copy all of these records in the custody or control of a third party that reasonably pertain to the loss or damage. All information designated as confidential by the Insured Claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim Failure of the Insured Claimant to submit for examination under oath, produce any reasonably requested information or grant permission to secure reasonably necessary information from third parties as required in this subsection, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

## 7. OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY.

In case of a claim under this policy, the Company shall have the following additional options·

(a) To Pay or Tender Payment of the Amount of Insurance or to Purchase the Indebtedness

(i) to pay or tender payment of the Amount of Insurance under this policy together with any costs, attorneys' fees and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment or tender of payment and that the Company is obligated to pay, or

(ii) to purchase the Indebtedness for the amount of the Indebtedness on the date of purchase, together with any costs, attorneys' fees and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of purchase and that the Company is obligated to pay.

When the Company purchases the Indebtedness, the Insured shall transfer, assign, and convey to the Company the Indebtedness and the Insured Mortgage, together with any collateral security.

Upon the exercise by the Company of either of the options provided for in subsections (a)(i) or      (ii), all liability and obligations of the Company to the Insured under this policy, other than to make the payment required in those subsections, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

(b) To Pay or Otherwise Settle With Parties Other than the Insured or With the Insured Claimant.

(i) to pay or otherwise settle with other parties for or in the name of an Insured Claimant any claim insured against under this policy. In addition, the Company will pay any costs, attorneys' fees and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay; or

(ii) to pay or otherwise settle with the Insured Claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in subsections (b)(i) or (ii), the Company's obligations to the Insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute or continue any litigation.

## 8. DETERMINATION AND EXTENT OF LIABILITY.

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the Insured Claimant who has suffered loss or damage by reason of matters insured against by this policy.

(a) The extent of liability of the Company for loss or damage under this policy shall not exceed the least of

   (i)  the Amount of Insurance;

   (ii) the Indebtedness;

   (iii) the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy; or

   (iv) if a government agency or instrumentality is the Insured Claimant, the amount it paid in the acquisition of the Title or the Insured Mortgage in satisfaction of its insurance contract or guaranty.

(b) If the Company pursues its rights under Section 3 or 5 and is unsuccessful in establishing the Title or the lien of the Insured Mortgage, as insured,

   (i) the Amount of Insurance shall be increased by 10%, and

   (ii) the Insured Claimant shall have the right to have the loss or damage determined either as of the date the claim was made by the Insured Claimant or as of the date it is settled and paid.

(c) In the event the Insured has acquired the Title in the manner described in Section 2 of these Conditions or has conveyed the Title, then the extent of liability of the Company shall continue as set forth in Section 8(a) of these Conditions.

(d) In addition to the extent of liability under (a), (b) and (c), the Company will also pay those costs, attorneys' fees and expenses incurred in accordance with Sections 5 and 7 of these Conditions.

## 9. LIMITATION OF LIABILITY.

(a) If the Company establishes the Title, or removes the alleged defect, lien or encumbrance, or cures the lack of a right of access to or from the Land, or establishes the lien of the Insured Mortgage, all as insured, or takes action in accordance with Section 3 or 7, in a reasonably diligent manner by any method, including litigation and the completion of any appeals, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused to the Insured.

(b) In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals, adverse to the Title or to the lien of the Insured Mortgage, as insured.

(c) The Company shall not be liable for loss or damage to the Insured for liability voluntarily assumed by the Insured in settling any claim or suit without the prior written consent of the Company.

## 10. REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY.

(a) All payments under this policy, except payments made for costs, attorneys' fees and expenses, shall reduce the Amount of Insurance by the amount of the payment. However, any payments made prior to the acquisition of

Title as provided in Section 2 of these Conditions shall not reduce the Amount of Insurance afforded under this policy except to the extent that the payments reduce the Indebtedness.

(b) The voluntary satisfaction or release of the Insured Mortgage shall terminate all liability of the Company except as provided in Section 2 of these Conditions.

## 11. PAYMENT OF LOSS.

When liability and the extent of loss or damage have been definitely fixed in accordance with these Conditions, the payment shall be made within 30 days.

## 12. RIGHTS OF RECOVERY UPON PAYMENT OR SETTLEMENT.

(a) The Company's Right to Recover

Whenever the Company shall have settled and paid a claim under this policy, it shall be subrogated and entitled to the rights of the Insured Claimant in the Title or Insured Mortgage and all other rights and remedies in respect to the claim that the Insured Claimant has against any person or property, to the extent of the amount of any loss, costs, attorneys' fees and expenses paid by the Company. If requested by the Company, the Insured Claimant shall execute documents to evidence the transfer to the Company of these rights and remedies. The Insured Claimant shall permit the Company to sue, compromise or settle in the name of the Insured Claimant and to use the name of the Insured Claimant in any transaction or litigation involving these rights and remedies.

If a payment on account of a claim does not fully cover the loss of the Insured Claimant, the Company shall defer the exercise of its right to recover until after the Insured Claimant shall have recovered its loss.

(b) The Insured's Rights and Limitations.

   (i) The owner of the Indebtedness may release or substitute the personal liability of any debtor or guarantor, extend or otherwise modify the terms of payment, release a portion of the Title from the lien of the Insured Mortgage, or release any collateral security for the Indebtedness, if it does not affect the enforceability or priority of the lien of the Insured Mortgage.

   (ii) If the Insured exercises a right provided in (b)(i), but has Knowledge of any claim adverse to the Title or the lien of the Insured Mortgage insured against by this policy, the Company shall be required to pay only that part of any losses insured against by this policy that shall exceed the amount, if any, lost to the Company by reason of the impairment by the Insured Claimant of the Company's right of subrogation.

(c) The Company's Rights Against Non-insured Obligors.

The Company's right of subrogation includes the Insured's rights against non-insured obligors including the rights of the Insured to indemnities, guaranties, other policies of insurance or bonds, notwithstanding any terms or conditions contained in those instruments that address subrogation rights.  The Company's right of subrogation shall not be avoided by acquisition of the Insured Mortgage by an obligor (except an obligor described in Section 1(e)(i)(F) of these Conditions) who acquires the Insured Mortgage as a result of an indemnity, guarantee, other policy of insurance, or bond and the obligor will not be an Insured under this policy.

## 13. ARBITRATION.

Either the Company or the Insured may demand that the claim or controversy shall be submitted to arbitration pursuant to the Title Insurance Arbitration Rules of the American Land Title Association ("Rules"). Except as provided in the Rules, there shall be no joinder or consolidation with claims or controversies of other

persons. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the Insured arising out of or relating to this policy, any service in connection with its issuance or the breach of a policy provision, or to any other controversy or claim arising out of the transaction giving rise to this policy. All arbitrable matters when the Amount of Insurance is $2,000,000 or less shall be arbitrated at the option of either the Company or the Insured, unless the Insured is an individual person (as distinguished from an Entity). All arbitrable matters when the Amount of Insurance is in excess of $2,000,000 shall be arbitrated only when agreed to by both the Company and the Insured. Arbitration pursuant to this policy and under the Rules shall be binding upon the parties. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court of competent jurisdiction.

**14. LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT.**
(a) This policy together with all endorsements, if any, attached to it by the Company is the entire policy and contract between the Insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.
(b) Any claim of loss or damage that arises out of the status of the Title or lien of the Insured Mortgage or by any action asserting such claim, shall be restricted to this policy.
(c) Any amendment of or endorsement to this policy must be in writing and authenticated by an authorized person, or expressly incorporated by Schedule A of this policy.
(d) Each endorsement to this policy issued at any time is made a part of this policy and is subject to all of its terms and provisions. Except as the endorsement expressly states, it does not (i) modify any of the terms and provisions of the policy,
    (ii) modify any prior endorsement,
    (iii) extend the Date of Policy or (iv)increase the Amount of Insurance. Each Commitment, endorsement or other form, or provision in the Schedules to this policy that refers to a term defined in Section 1 of the Conditions shall be deemed to refer to the term regardless of whether the term is capitalized in the Commitment, endorsement or other form, or Schedule. Each Commitment, endorsement or other form, or provision in the Schedules that refers to the Conditions and Stipulations shall be deemed to refer to the Conditions of this policy.

**15. SEVERABILITY.**
In the event any provision of this policy, in whole or in part, is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision or such part held to be invalid and all other provisions shall remain in full force and effect.

**16. CHOICE OF LAW; FORUM.**
(a) Choice of Law: The Insured acknowledges the Company has underwritten the risks covered by this policy and determined the premium charged therefor in reliance upon the law affecting interests in real property and applicable to the interpretation, rights, remedies or enforcement of policies of title insurance of the jurisdiction where the Land is located.
Therefore, the court or an arbitrator shall apply the law of the jurisdiction where the Land is located to determine the validity of claims against the Title or the lien of the Insured Mortgage that are adverse to the Insured, and in interpreting and enforcing the terms of this policy. In neither case shall the court or arbitrator apply its conflicts

of laws principles to determine the applicable law.
(b) Choice of Forum: Any litigation or other proceeding brought by the Insured against the Company must be filed only in a state or federal court within the United States of America or its territories having appropriate jurisdiction.
**17. NOTICES, WHERE SENT.** Any notice of claim and any other notice or statement in writing required to be given the Company under this Policy must be given to the Company at FIDELITY NATIONAL TITLE INSURANCE COMPANY National Claims Administration, P O. Box 45023, Jacksonville, FL 32232-5023.

FIDELITY NATIONAL TITLE

## LOAN POLICY OF TITLE INSURANCE T-2
## SCHEDULE A

Issued with Policy Number   2744243-217554183

Name and Address of Title Insurance Company      Fidelity National Title
1901 N Roselle Road, Ste 300
Schaumburg, IL 60195

Policy No..   2744343-217554184

File No.    AN19-7981

Loan No..   22117432, 22114481, 2211482

Address for Reference only.  Multiple tracts of land in
Parmer & Deaf Smith Counties, TX

Amount of Insurance. $ 625,000 00                               Premium      $4,117.00

Date of Policy·          August 1, 2019 at 03·40 PM

1.  Name of Insured.

Rabo AgriFinance LLC, and each successor in ownership of the indebtedness secured by the insured
mortgage, except a successor who is an obligor under the provisions of Section 12(c) of the Conditions

2.  The estate or interest in the Land that is encumbered by the Insured Mortgage is

Fee Simple

3.  Title is insured as vested in.

7M Cattle Feeders, Inc  (Tract 1)
McClain Feed Yard, Inc. (Tract 2-3)

4.  The Insured Mortgage, and its assignments, if any, are described as follows

Deed of Trust dated July 24, 2019, executed by 7M Cattle Feeders, Inc , a Kentucky corporation and
McClain Feed Yard, Inc , a Texas corporation,  to Philip R  Kirkpatrick, Trustee, securing one note in the
original principal sum of $16,957,500 00, payable to the order of Rabo AgriFinance LLC, said deed of trust
filed August 1, 2019, under Clerk's File No. 81507 and subsequently recorded in Volume 158, Page 578,
Official Public Records of Parmer County, Texas  Said Deed of Trust filed August 5, 2019, under Clerk's
File No. 19-1129, Official Public Records of Deaf Smith County, Texas  ***Liability hereunder at the date
hereof is hereby limited to $625,000 00***

5.  The Land referred to in this policy is described as follows·

TRACT 1:

A tract of land being all of Section 25 and a portion of Section 24 of Charles E  Harding's Subdivision of
Capitol League 473 and parts of Capitol Leagues 459, 460, 461, 472 and 474 in Parmer County, Texas, as
shown by the map or plat thereof of record in Volume 6, Page 164, Deed Records of Parmer County,
Texas, and being described by metes and bounds as follows.

BEGINNING at a 1/2 inch iron rod with camp stamped "Furman RPLS 1959" set for the southwest corner
of said Section 25, being the common corner of Sections 25-36-35-26 from whence a 1/2 inch iron rod
found for the common corner of sections 27-34-33-28, all in said subdivision bears North 89° 56' 32" west,
10,564.82 feet, the southwest corner of Section 36 and the southeast corner of Section 35 bears South
00° 11' 46" West, 5,281 81 feet, from this point a harrow tooth found as called for in that certain instrument
recorded in Volume 225, Page 730, of the Deed Records of Parmer County, Texas, for the Northwest
corner of Section 1, Block C of Capitol Syndicate Subdivision in Parmer County, Texas, as shown by Plat

**SCHEDULE A**
(Continued)

File No.· AN19-7981

Policy No.. 2744343-217554184

thereof of record in Volume 2, Page 495 of said Deed Records bears West (Bearing Basis) 1,411.64 feet,

THENCE North 00° 11' 46" East along the common line of Sections 25 and 26, and the common line of Section 24 and 23, of said Charles E Harding's Subdivision, and along the center of a road, at 5,281 61 feet pass the common line of Sections 25-26-23-24 a total distance of 8,503.54 feet to a 3/4 inch iron pipe found as called for in that certain instrument recorded in Volume 156, Page 603 of said Deed Records, and in Volume 2, Page 219 of the Field Note Records of Parmer County, Texas, from whence the common corner of Sections 24-23-14-13 of said Charles E Harding's Subdivision bears North 00° 11' 46" East 5,281 61 feet and 1 1/4 inch iron pipe with 5/8 inch rod adjacent found for the common corner of Sections 12-13-14-11 of said Charles E Harding's Subdivision, as called for in that certain instrument recorded in Volume 2, Page 343, of said Field Note records bears North 00° 11' 46" East 7,341 28 feet,

THENCE South 89° 40' 58" East 2,100.84 feet along a fence line and along the North line of this tract of land and the North line of that certain tract of land described in said Volume 156, Page 603 and said Volume 2, Page 219 to a 3/4 inch iron pipe found as called for in said Volume 156, Page 603 and said Volume 2, Page 219, said North line being monumented and generally accepted on the ground for over 25 years, from whence the Northeast corner of Section 24 and the Southeast corner of Section 14 of said Charles E. Harding's Subdivision bears North 00° 11' 07" East 7,345 07 feet,

THENCE South 00° 11' 07" West at 3,187.40 feet pass a 3/4 inch iron pipe found, this iron pipe is a monument of record in said Volume 156, Page 603 and said Volume 2, Page 219 for the Southeast corner of Section 24 of said Charles E Harding's Subdivision, it is however the Professional opinion of this surveyor that this corner lies in the East line of this survey but 26.81 feet North of the actual section corner, at 3,214.21 feet pass what is in my Professional opinion the Southeast corner of Section 24 and the Northeast corner of Section 25 of said Charles E. Harding's Subdivision at 3,301 75 feet pass a 1 1/2 inch iron pipe found as called for in said Volume 156, Page 603 and said Volume 2, Page 219 for the Southwest corner of Section 22 and the Northwest corner of Section 27 in Township 1 North, Range 3 East of a Capitol Syndicate Subdivision as shown by Plat thereof of record in Volume 5, Page 394 of said Deed Records, a total distance of 8,493 86 feet to a point being the Southeast corner of Section 25 and the Northeast corner of Section 36 of said Charles E. Harding's Subdivision from whence the Southeast corner of said Section 36 bears South 00° 11' 07" West 5,279 65 feet from this point a railroad spike found as called for in that certain instrument recorded in Volume 225, Page 730 of the Deed Records of Parmer County, Texas, for the Northwest corner of Section 1, Block C of Capitol Syndicate Subdivision in Parmer County, Texas as shown by Plat thereof record in Volume 2, Page 495 of said Deed Records bears East (Bearing Basis) 1,324.17 feet,

THENCE North 89° 56' 48" West 2,102.46 feet along the South line of Section 25 and the North line of Section 36 of said Charles E. Harding's Subdivision to the POINT OF BEGINNING and containing 410.0 acres of land, more or less

TRACT 2:

A 36.03 acre tract, more or less, out of the Southwest part of Section 26, Block K-8, Abstract No 1370, Certificate Number 128 of the T. T R. R. Co. Surveys in Deaf Smith County, Texas, described by metes and bounds as follows·

BEGINNING at a number 60 common nail found for the Southwest corner of Section 26, Block K-8 whence a 1-1/2 inch iron pipe found for the Southeast corner of said section bears North 89 degrees 56 minutes 00 seconds East 5321 58 feet,

THENCE North 89 degrees 56 minutes 00 seconds East along the South line of said section, 48 80 feet to

**SCHEDULE A**
(Continued)

File No : AN19-7981

Policy No · 2744343-217554184

a 1/2 inch iron rod set in the East physical line of Farm Road 1057 for the Southwest and beginning corner of this tract;

THENCE North 00 degrees 12 minutes 00 seconds West along the East physical line of Farm Road 1057, at 30.00 feet pass a 1/2 inch iron rod set for reference and at a total distance of 2587.27 feet a 1/2 inch iron rod set for corner;

THENCE North 89 degrees 54 minutes 43 seconds East 606.84 feet to a 1/2 inch iron rod set in the East line of a tract known as the West 40 acres of the Southwest 1/4 of said section whence a 1/2 inch iron rod set for the Northeast corner of the tract known as the West 40 acres of the Southwest 1/4 of said section bears North 00 degrees 11 minutes 29 seconds West 71.78 feet,

THENCE South 00 degrees 11 minutes 29 seconds East at 2557 50 feet pass a 1/2 inch iron rod set for reference and at a total distance of 2587 50 feet a 1/2 inch iron rod found in the South line of said section for the Southeast corner of the track known as the West 40 acres of the Southwest 1/4 of said section;

THENCE South 89 degrees 56 minutes 00 seconds West along the South line of said section, 606 45 feet to the place of beginning

TRACT 3·

A 20 00 acre tract out of the Southwest part of Section 26, Block K-8, Certificate Number 128 of the T T R.R Co. Surveys in Deaf Smith County, Texas, described by metes and bounds as follows.

BEGINNING at a 1/2 inch iron rod with cap marked "RPLS 1848" found in the South line of Section 26 for the Southwest corner and POINT OF BEGINNING of this tract, whence a number 60 common nail found for the Southwest corner of Section 26, Block K-8 bears South 89 degrees 56 minutes 00 seconds West 655 25 feet;

THENCE North 00 degrees 11 minutes 29 seconds West, a distance of 2587 50 feet a fence corner post for the Northwest corner of this tract,

THENCE North 89 degrees 54 minutes 43 seconds East, a distance of 336 69 feet to a 1/2 inch iron rod with cap marked "HBD" set for the Northeast corner of this tract;

THENCE South 00 degrees 11 minutes 29 seconds East, at a distance of 2557.62 feet pass a 1/2 inch iron rod with cap marked "HBD" set for reference, continue for a total distance of 2587.62 feet a point on the South line of Section 26, whence a 1-1/2 inch iron pipe found for the Southeast corner of Section 26 bears North 89 degrees 56 minutes 00 seconds East, 4329.64 feet;

THENCE South 89 degrees 56 minutes 00 seconds West, along the South line of Section 26, a distance of 336.69 feet to the POINT OF BEGINNING.

Note: The Company is prohibited from insuring the area or quantity of the land  Any Statement in the legal description contained in Schedule A as to area or quantity of land is not a representation that such area or quantity is correct but is for informal identification purposes and does not override Item 2 of Schedule B hereof.

6.  This policy incorporates by reference those endorsements selected below.

## SCHEDULE A
(Continued)

File No.: AN19-7981

Policy No.: 2744343-217554184

| | |
|---|---|
| ☐ | T-5 (Leasehold Loan Policy Endorsement) |
| ☐ | T-17 (Planned Unit Development) |
| ☐ | T-19 (Restrictions, Encroachments, Minerals) |
| ☐ | T-19.2 (Minerals and Surface Damage) |
| ☐ | T-19.3 (Minerals and Surface Damage) |
| ☐ | T-28 (Condominium) |
| ☐ | T-31 (Manufactured Housing) referring to manufactured housing unit serial number |
| ☐ | T-31.1 (Supplemental Coverage Manufactured Housing Unit) |
| ☒ | T-33 (Variable Rate) |
| ☐ | T-33.1 (Variable Rate--Negative Amortization) |
| ☒ | T-35 (Revolving Credit/Future Advance) |

☐ T-36 (Environmental Protection Lien) Paragraph b refers to the following state statute(s):  TEX. HEALTH & SAFETY CODE sec. 361.194; TEX. HEALTH & SAFETY CODE sec. 342.007, 342.008; TEX. LOCAL GOV'T CODEsec 214.0015(b), (d) and (e), 214.001; TEX. NATURAL RESOURCES CODEsec. 134.150.

☐ T-39 (Balloon Mortgage)

☐ T-42 (Equity Loan Mortgage) and subparagraph 2(f) of the Equity Loan Mortgage Endorsement set forth in Procedural Rule P-44.C(2)      is      is not added.

☐ T-42.1 (Supplemental Coverage Equity Loan Mortgage)

☐ T-43 (Texas Reverse Mortgage)

☒ Section 13 of the Conditions of this policy, which relates to Arbitration, is hereby deleted.

**FIDELITY NATIONAL TITLE**

By: _____

FORM T-2: Loan Policy of Title Insurance
Schedule A

(AN19-7981.PFD/AN19-7981/27)

FIDELITY NATIONAL TITLE

## SCHEDULE B

File No.: AN19-7981                                   Policy No.:  2744343-217554184

### EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or
expenses) that arise by reason of the terms and conditions of leases and easements, if any, shown in
Schedule A, and the following matters:

1.  ~~The following restrictive covenants of record itemized below, but the Company insures that any such
    restrictive covenants have not been violated so as to affect, and that future violation thereof will not
    affect, the validity or priority of the Insured Mortgage (insert specific recording data or delete this
    exception):~~

2.  Any discrepancies, conflicts, or shortages in area or boundary lines, or any encroachments or
    protrusions, or any overlapping of improvements.

    ☐  Item 2 of Schedule B is hereby amended to read:  "shortages in area".

3.  Standby fees, taxes and assessments by any taxing authority for the year 2019, and subsequent years;
    and subsequent taxes and assessments by any taxing authority for prior years due to change in land
    usage or ownership, but not those taxes or assessments for prior years because of an exemption
    granted to a previous owner of the property under Section 11.13, Texas Tax Code, or because of
    improvements not assessed for a previous tax year.

    ☒  Item 3 of Schedule B is hereby amended to delete:  "and subsequent taxes and assessments by
        any taxing authority for prior years due to change in land usage or ownership,"

    ☒  Item 3 of Schedule B is hereby amended to add the following:  "Company insures that standby
        fees, taxes and assessments by any taxing authority for the year 2019 are not yet due and
        payable."

4.  Liens and leases that affect the Title, but that are subordinate to the lien of the Insured Mortgage.

5.  (Insert here all other specific exceptions as to superior liens, easements, outstanding mineral and
    royalty interests, etc.)

    a.  All leases, grants, exceptions or reservations of coal, lignite, oil, gas and other minerals, together
        with all rights, privileges, and immunities relating thereto, appearing in the Public Records whether
        listed in Schedule B or not. There may be leases, grants, exceptions or reservations of mineral
        interest that are not listed.

    b.  Subject to the rules regulations and tax assessments promulgated by High Plains Underground
        Water Conservation District No. 1.

    c.  Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the title
        that would be disclosed by an accurate and complete land survey of the land. (NOTE: Upon receipt
        of a survey acceptable to the Company, this exception will be deleted. Company reserves the right
        to add additional exceptions per its examination of said survey.)

**SCHEDULE B**
(Continued)

File No · AN19-7981

Policy No.  2744343-217554184

d.  Any visible and apparent easements that may affect the property such as roadways, sewer, telephone, water and/or telephone or electrical lines, the existence of which does not appear of record

e.  Right of Way executed by Joseph Samuel Talley et ux to Miller Line No 4, dated February 20, 1954, granting sufficient width to permit the Grantees to lay, maintain, operate and remove parallel pipelines of the transportation of gas, filed March 6, 1954 and recorded in Volume 92, Page 253 of the Deed Records of Parmer County, Texas (Sec 24, Harding) (Tract 1)

f.  Deed of Right of Way executed by J W Baxter et ux to Ralph Miller Line No. 4 Maurer Line No 3, granting the free and uninterrupted use, liberty, and privilege of passage in, along, upon and across all of Section 25, Harding Subdivision, filed March 6, 1954 and recorded in Volume 92, Page 255, of the Deed Records of Parmer County, Texas. (Sec 25, Harding)  (Tract 1)

g.  Gasline Agreement executed by and between Ralph B. Miller and J W Baxter dated March 4, 1954, regarding the construction of a gas line, filed March 6, 1954 and recorded in Volume 1, Page 316, Miscellaneous Records of Parmer County, Texas  (Sec 24 Harding)  (Tract 1)

h.  Right of Way Easement dated February 17, 1954, executed by Joseph Samuel Talley et ux granting to West Texas Gas Company a right of way 20 feet in width to construct, maintain and operate a pipeline filed March 22, 1954, and recorded in Volume 91, Page 385, Deed Records of Parmer County, Texas. (Sec 24 Harding)  (Tract 1)

i.  Right of Way Easement dated August 22, 1967, executed by Joseph Samuel Talley granting to Pioneer Natural Gas Company a right of way and easement sufficient to maintain and operate the presently existing irrigation gas pipeline, filed November 22, 1967 and recorded in Volume 136, Page 654, Deed Records of Parmer County, Texas. (Sec 24 Harding)  (Tract 1)

j.  Easement dated October 5, 1972, executed by Joseph Samuel Talley et ux granting to the Hi-Plains Feed Yard, Inc., the free and uninterrupted use, liberty, privilege and easement of passing in and along the property together with the right to construct, reconstruct, and perpetually maintain such existing gas line, filed October 6, 1972 and recorded in Volume 156, Page 608 Deed Records of Parmer County, Texas (Sec 24, Harding)  (Tract 1)

k.  Water Ditch Easement dated May 18, 1967 executed by Nora Roberts et vir to Hi-Plains Feed Yard, Inc., granting a strip of land 40 feet in width along the East line of Section 25, Harding Subdivision, filed May 22, 1967 and recorded in Volume 135, Page 59, of the Deed Records of Parmer County, Texas. (Sec 25 Harding)  (Tract 1)

l.  Right of Way Easement dated October 3, 1967 executed by Hi-Plains Feedyard, Inc. granting to Pioneer Natural Gas Company a right of way and easement of sufficient width to maintain and operate the presently existing irrigation gas pipeline, filed November 22, 1967 and recorded in Volume 136, Page 656, Deed Records of Parmer County, Texas. (Sec 25 Harding)  (Tract 1)

FORM T-2· Loan Policy of Title Insurance
Schedule B

(AN19-7981.PFD/AN19-7981/27)

**SCHEDULE B**
(Continued)

File No . AN19-7981                                           Policy No.  2744343-217554184

m.  Bill of Sale dated September 24, 1969, executed by Miller-Martin Group to Pioneer Natural Gas
Company granting that certain gas pipeline, pipeline system and all facilities, equipment and
appurtenances and the right of way permits necessary to operate such pipeline, filed February 20,
1970 and recorded in Volume 146, Page 429 of the Deed Records of Parmer County, Texas  (Sec
25 Harding)  (Tract 1)

n   Quit Claim Deed dated July 16, 1992, executed by Mesa Operating Limited Partnership (successor
to Pioneer Corporation) granting, selling, conveying and quit claiming unto Energas Company all its
rights title and interest in and to certain easements and appurtenances situated in Parmer County,
Texas, said Quit Claim Deed filed August 12, 1992 and recorded in Volume 241, Page 708, Deed
Records of Parmer County, Texas. (Sec 24-25 Harding)  (Tract 1)

o   Special Warranty Deed dated December 31, 1991, executed by Westar Transmission Company
granting, selling and conveying to Energas Company all its rights title and interest in and to all of
the real property, easements and appurtenances thereto, situated in Parmer County, Texas, said
Special Warranty Deed filed August 12, 1992 and recorded in Volume 241, Page 722, Deed
Records of Parmer County, Texas  (Sec 24-25 Harding)  (Tract 1)

p.  Boundary Line Agreement dated March 12, 1998 by and between Associated Beef City, Inc  and
Criss Wyly et ux filed of record on March 12, 1998 and recorded in Volume 262, Page 597, Deed
Records of Parmer County, Texas. (Sec 24-25 Harding)  (Tract 1)

q.  Right of Way executed by Joseph Samuel Talley, et ux to Calvin Talley Gas Line #1, dated March 5,
1954, granting sufficient width to permit the Grantees to lay, maintain, operate, and remove parallel
pipelines for the transportation of gas, filed March 5, 1954, and recorded in Volume 92, Page 260,
Deed Records of Parmer County, Texas  (Sec 24 Harding)  (Tract 1)

r   Memorandum of Water Rights and Easement Agreement dated June 23, 2004, by and between
Gerall Wyly and Criss Wyly (Grantor) and Monfort Finance Company, Inc., a Delaware corporation,
(Grantee) for the Grantee's right to withdraw and pump water from certain water wells located on
Grantor's Property, filed June 25, 2004, under Clerk's File No  39790 and subsequently recorded in
Volume 6, Page 354, Official Public Records of Parmer County, Texas. (Property being conveyed
belonging to Grantee in said document) (Sec 24-25)  (Tract 1)

s   Dedication of Easement for Access dated May 26, 2016, executed by HEC Feedyard, LLC, a Texas
limited liability company, filed July 7, 2016, under Clerk's File No. 57533 and subsequently
recorded in Volume 127, Page 765, Official Public Records of Parmer County, Texas. (Sec 24-25
Harding)  (Tract 1)

t   Right of Way Deed datted April 6, 1956, executed by A. Clyde Roller and wife, Josephine Roller to
the State of Texas, for road purposes, recorded in Volume 169, Page 431, Deed Records of Deaf
Smith Coutny, Texas. (Tract 2)

**SCHEDULE B**
(Continued)

File No.. AN19-7981                                          Policy No · 2744343-217554184

u    Right of Way and Easement dated November 30, 1971, executed by R. M. Mason and wfie, Mrs. R
     M Mason to Deaf Smtih County Electric Cooperative, Inc , for guy wire purposes, recorded in
     Volume 272, Page 454, Deed Records of Deaf Smith County, Texas (Tract 2)

v.   Right of Way and Easement dated December 17, 1973, executed by R. M. Mason and wife, Jessie
     J. Mason to Pioneer Natural Gas Company, for gas pipeline purposes, recorded in Volume 282,
     Page 405, Deed Records of Deaf Smith County, Texas. Assignment and Assumption, Conveyance,
     Deed and Bill of Sale dated February 29, 2008, executed by Atmos Energy Corporation to IBIS Gas
     Services, LLC, recorded under Clerk's File No 08-0570, Official Public Records of Deaf Smith
     County, Texas (Tract 2)

w.   Reservation of oil, gas and other minerals contained in Instrument dated December 1, 1947,
     executed by Walter F. David, et al, to R N. Cooke, recorded in Volume 114, Page 586, of Deed
     Records of Deaf Smith County, Texas, reference to which instrument is here made for all purposes.
     (Tracts 2 & 3)

x.   Reservation of oil, gas and other minerals contained in instrument dated June 3, 1961, executed by
     E. W Barnard and wife, Jewel W Barnard to R M Mason, recorded in Volume 203, Page 269, of
     Deed Records of Deaf Smith County, Texas, reference to which instrument is here made for all
     purposes. (Tract 2)

y    Reservation of oil, gas and other minerals contained in instrument dated April 2, 2001, executed by
     Dickey B. Mason to Richard Hayes, recorded under Clerk's File No 01-0677, Official Public
     Records of Deaf Smith County, Texas, reference to which instrument is here made for all purposes.
     (Tract 2)

z    Right of way dated May 15, 1939, executed by H. W. Price and Walter F. David to Deaf Smith
     County Electric Cooperative, Inc., recorded in Volume 83, Page 215, Deed Records of Deaf Smith
     County, Texas. (Tract 3)

Aa   Right of way dated December 17, 1973, executed by R. M. Mason and wife, Jessie J Mason to
     Pioneer Natural Gas Company, recorded in Volume 282, Page 405, Deed Records of Deaf Smith
     County, Texas. (Tract 3)

Ab   Order establishing a 40 foot public road along the South side of this tract, recorded in Volume 2,
     Page 7, Road Minute Records of the Commissioner's Court Minutes of Deaf Smith County, Texas.
     (Tract 3)

Ac   Easement Agreement dated August 1, 2019, from 7M Cattle Feeders, Inc to Parmer County
     Holdings, LLC, Tony Beauchamp, and TL Harvesting, Inc., granting the right to store silage and free
     ingress and egress to current silage pile as well as future silage, said easment to expire by its own
     terms on December 31, 2020, said easement filed August 1, 2019, under Clerk's File No 61506
     and subsequently recorded in Volume 158, Page 571, Official Public Records of Parmer County,
     Texas. (Tract 1)

FORM T-2 Loan Policy of Title Insurance
Schedule B                                                  (AN19-7981.PFD/AN19-7981/27)

## SCHEDULE B
(Continued)

File No.: AN19-7981

Policy No · 2744343-217554184

Ad   This tract is located within the boundary lines of Deaf Smith County Wind Erosion Conservation District and is therefore subject to its rules, regulations and possible assessments  (Tracts 2 and 3)

Ae   SUBJECT TO. Deed of Trust, Assignment of Rents and Security Agreement dated May 11, 2018, executed by McClain Feed Yard, Inc  to Philip R  Kirkpatrick, Trustee, securing the payment of one note of even date therewith payable to Rabo Agrifinance LLC, in the original principal amount of $332,500.00, said deed of trust recorded under Clerk's File No. 18-0907, Official Public Records of Deaf Smith County, Texas. (Tracts 2 and 3)

## ENDORSEMENT  T-3

Issued by
**FIDELITY NATIONAL TITLE**
HEREIN CALLED THE COMPANY

GF Number:  AN19-7981

Attached to and made a part of Fidelity National Title Policy or Interim Construction Binder Number 2744343-217554184, this August 1, 2019.

Schedule B. Item 4. is hereby deleted.

Schedule B. Item 5. r. is hereby deleted

Nothing herein contained shall be construed as extending or changing the effective date of the aforesaid policy or interim construction binder, unless otherwise expressly stated.

**FIDELITY NATIONAL TITLE**

By: _Dungai Jrumble_

FARWELL ABSTRACT COMPANY, INC., DBA
MULESHOE ABSTRACT COMPANY

Form T-3:  Correction Endorsement
(Other Than Policy Amount-Mortgagee)

(AN19-7981.PFD/AN19-7981/28)

## TAX DELETION ENDORSEMENT T-30

Issued by
FIDELITY NATIONAL TITLE
HEREIN CALLED THE COMPANY

GF Number: AN19-7981

Attached to and made a part of Fidelity National Title Mortgagee Policy Number or Interim Construction Binder Number 2744343-217554184.

The words "and subsequent taxes and assessments by any taxing authority for prior years due to change in land usage or ownership" as set forth in Item 3, in Schedule B of the Mortgagee Policy or in Item 3, Schedule B-Part I of the Interim Construction Binder (whichever is applicable) to which this endorsement is attached are hereby deleted.

Nothing herein contained shall be construed as extending or changing the effective date of the Mortgagee Policy or Interim Construction Binder (whichever is applicable) to which this endorsement is attached.

IN WITNESS HEREOF, the FIDELITY NATIONAL TITLE has caused this Endorsement to be executed by its President under the seal of the Company, but this Endorsement is to be valid only when it bears an authorized countersignature.

FIDELITY NATIONAL TITLE

By: _Aungei Arimble_____
FARWELL ABSTRACT COMPANY, INC.,
DBA MULESHOE ABSTRACT COMPANY

Countersigned at Farwell, Texas

FORM T-30: Tax Deletion Endorsement                                    (AN19-7981.PFD/AN19-7981/29)



## VARIABLE RATE MORTGAGE ENDORSEMENT T-33

Issued by
FIDELITY NATIONAL TITLE
HEREIN CALLED THE COMPANY

GF Number: AN19-7981

Attached to and made a part of Fidelity National Title Mortgagee Policy Number 2744343-217554184, dated the 1st day of August, 2019.

The Company insures the owner of the indebtedness secured by the insured mortgage against loss or damage sustained by reason of:

1.  The invalidity or unenforceability of the lien of the insured mortgage resulting from the provisions therein which provide for changes in the rate of interest.

2.  Loss of priority of the lien of the insured mortgage as security for the unpaid principal balance of the loan, together with interest as changed in accordance with the provisions of the insured mortgage, which loss of priority is caused by the changes in the rate of interest.

"Changes in the rate of interest", as used in this endorsement, shall mean only those changes in the rate of interest calculated pursuant to the formula provided in the insured mortgage at Date of Policy.

This endorsement does not insure against loss or damage based upon (a) usury, or (b) any consumer credit protection or truth in lending law.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

**FIDELITY NATIONAL TITLE**

By: _Dunge Drumble_
FARWELL ABSTRACT COMPANY, INC.,
DBA MULESHOE ABSTRACT COMPANY

Form T-33: Variable Rate Mortgage Endorsement

(AN19-7981.PFD/AN19-7981/29)

## FUTURE ADVANCE/REVOLVING CREDIT ENDORSEMENT T-35

Issued by
FIDELITY NATIONAL TITLE

GF Number: AN19-7981

Attached to and made a part of Fidelity National Title Loan Policy Number 2744343-217554184 dated the 1st day of August, 2019.

1.   The insurance for Advances added by Section 2 of this endorsement is subject to the exclusions in Section 3 of this endorsement and the Exclusions from Coverage in the Policy, except Exclusion 3(d), the provisions of the Conditions, and the exceptions contained in Schedule B.

   a.   "Agreement," as used in this endorsement, shall mean the note or loan agreement secured by the Insured Mortgage or the Insured Mortgage.

   b.   "Advances," as used in this endorsement, shall mean only those advances of principal indebtedness made after the Date of Policy as provided in the Agreement, including expenses of foreclosure, amounts advanced pursuant to the Insured Mortgage to pay taxes and insurance, assure compliance with laws, or to protect the lien of the Insured Mortgage before the time of acquisition of the Title and reasonable amounts expended to prevent deterioration of improvements, together with interest on those advances.

2.   The Company insures against loss or damage sustained by the Insured by reason of:

   a.   The invalidity or unenforceability of the lien of the Insured Mortgage as security for each Advance.

   b.   The lack of priority of the lien of the Insured Mortgage as security for each Advance over any lien or encumbrance on the Title.

   c.   The invalidity or unenforceability or loss of priority of the lien of the Insured Mortgage as security for the Indebtedness and Advances resulting from (i) re-Advances and repayments of Indebtedness, (ii) lack of outstanding Indebtedness before an Advance, or (iii) the failure of the Insured Mortgage to comply with the requirements of state law of the state in which the Land is located to secure Advances.

3.   This endorsement does not insure against loss or damage (and the Company will not pay costs, attorneys' fees, or expenses) resulting from:

   a.   Advances made after a Petition for Relief under the Bankruptcy Code (11 U.S.C.) has been filed by or on behalf of the mortgagor.

   b.   The loss of priority of the lien of the Insured Mortgage, as security for Advances, to the lien of real estate taxes or assessments on the Title imposed by governmental authority arising after Date of Policy.

   c.   The loss of priority of the lien of the Insured Mortgage as security for any Advance, to a federal tax lien, which Advance is made after the earlier of (i) actual knowledge of the Insured that a federal tax lien was filed against the mortgagor, or (ii) the expiration of more than forth-five days after notice of a federal tax lien filed against the mortgagor.

   d.   The loss of priority of the lien of the Insured Mortgage as security for Advances to any federal or state environmental protection lien.

   e.   Usury, or any consumer credit protection or truth-in-lending law.

4.   The Amount of Insurance shall include Advances.



## ENDORSEMENT T-35
(Continued)

This endorsement is issued as part of the policy.  Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy or (iv) increase the Amount of Insurance.  To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls.  Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

FIDELITY NATIONAL TITLE

By: _____

FARWELL ABSTRACT COMPANY, INC., DBA
MULESHOE ABSTRACT COMPANY

Form T-35: Future Advance/Revolving Credit Endorsement

(AN19-7981.PFD/AN19-7981/29)

# stewart title®

## LOAN POLICY OF TITLE INSURANCE

ISSUED BY
STEWART TITLE GUARANTY COMPANY

**Any notice of claim and any other notice or statement in writing required to be given the Company under this Policy must be given to the Company at the address shown in Section 17 of the Conditions.**

### COVERED RISKS

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE  B AND THE CONDITIONS, STEWART TITLE GUARANTY COMPANY, a Texas corporation (the "Company") insures, as of Date of Policy and, to the extent stated in Covered Risks 11, 13 and 14, after Date of Policy, against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of

1   Title being vested other than as stated in Schedule A
2   Any defect in or lien or encumbrance on the Title  This Covered Risk includes but is not limited to insurance against loss from
  (a)  A defect in the Title caused by
     (i)   forgery, fraud, undue influence, duress, incompetency, incapacity or impersonation,
     (ii)  failure of any person or Entity to have authorized a transfer or conveyance,
     (iii) a document affecting Title not properly created, executed, witnessed, sealed, acknowledged, notarized or delivered,
     (iv)  failure to perform those acts necessary to create a document by electronic means authorized by law,
     (v)   a document executed under a falsified, expired or otherwise invalid power of attorney,
     (vi)  a document not properly filed, recorded or indexed in the Public Records including failure to perform those acts by electronic means authorized by law, or
     (vii) a defective judicial or administrative proceeding
  (b)  The lien of real estate taxes or assessments imposed on the Title by a governmental authority due or payable, but unpaid
  (c)  Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land  The term "encroachment" includes encroachments of existing improvements located on the Land onto adjoining land, and encroachments onto the Land of existing improvements located on adjoining land
3   Lack of good and indefeasible Title
4   No right of access to and from the Land
**Covered Risks continued on next page.**

IN WITNESS WHEREOF, Stewart Title Guaranty Company has caused this policy to be signed and sealed by its duly authorized officers as of Date of Policy shown in Schedule A

Countersigned by

*Crystal Minad*
Authorized Countersignature

Stewart Title Guaranty Company

55 Madison Street, Suite 400
Denver, CO 80206
Agent ID  43A078

Matt Morris
President and CEO

Denise Carraux
Secretary

For coverage information or assistance resolving a complaint, call (800) 729-1902 or visit www.stewart.com  To make a claim, furnish written notice in accordance with Section 3 of the Conditions  For purposes of this form the "Stewart Title" logo featured above is the represented logo for the underwriter, Stewart Title Guaranty Company

**COVERED RISKS CONTINUED FROM PAGE 1**

5   The violation or enforcement of any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting or relating to
    (a)  the occupancy, use or enjoyment of the Land,
    (b)  the character, dimensions or location of any improvement erected on the Land,
    (c)  subdivision of land, or
    (d)  environmental protection
    if a notice, describing any part of the Land, is recorded in the Public Records setting forth the violation or intention to enforce, but only to the extent of the violation or enforcement referred to in that notice

6   An enforcement action based on the exercise of a governmental police power not covered by Covered Risk 5 if a notice of the enforcement action, describing any part of the Land, is recorded in the Public Records, but only to the extent of the enforcement referred to in that notice

7   The exercise of the rights of eminent domain if a notice of the exercise, describing any part of the Land, is recorded in the Public Records

8   Any taking by a governmental body that has occurred and is binding on the rights of a purchaser for value without Knowledge

9   The invalidity or unenforceability of the lien of the Insured Mortgage upon the Title   This Covered Risk includes but is not limited to insurance against loss from any of the following impairing the lien of the Insured Mortgage
    (a)  forgery, fraud, undue influence, duress, incompetency, incapacity or impersonation,
    (b)  failure of any person or Entity to have authorized a transfer or conveyance,
    (c)  the Insured Mortgage not being properly created, executed, witnessed, sealed, acknowledged, notarized or delivered,
    (d)  failure to perform those acts necessary to create a document by electronic means authorized by law,
    (e)  a document executed under a falsified, expired or otherwise invalid power of attorney,
    (f)  a document not properly filed, recorded or indexed in the Public Records including failure to perform those acts by electronic means authorized by law, or
    (g)  a defective judicial or administrative proceeding

10  The lack of priority of the lien of the Insured Mortgage over any other lien or encumbrance

11  The lack of priority of the lien of the Insured Mortgage
    (a)  as security for each and every advance of proceeds of the loan secured by the Insured Mortgage over any statutory or constitutional mechanic's, contractor's, or materialman's lien for services, labor or material having its inception on or before Date of Policy , and
    (b)  over the lien of any assessments for street improvements under construction or completed at Date of Policy

12  The invalidity or unenforceability of any assignment of the Insured Mortgage, provided the assignment is shown in Schedule A, or the failure of the assignment shown in Schedule A to vest title to the Insured Mortgage in the named Insured assignee free and clear of all liens

13  The invalidity, unenforceability, lack of priority or avoidance of the lien of the Insured Mortgage
    (a)  resulting from the avoidance in whole or in part, or from a court order providing an alternative remedy, of any transfer of all or any part of the title to or any interest in the Land occurring prior to the transaction creating the lien of the Insured Mortgage because that prior transfer constituted a fraudulent or preferential transfer under federal bankruptcy, state insolvency or similar creditors' rights laws, or
    (b)  because the Insured Mortgage constitutes a preferential transfer under federal bankruptcy, state insolvency or similar creditors' rights laws by reason of the failure of its recording in the Public Records
        (i)   to be timely, or
        (ii)  to impart notice of its existence to a purchaser for value or a judgment or lien creditor

14  Any defect in or lien or encumbrance on the Title or other matter included in Covered Risks 1 through 13 that has been created or attached or has been filed or recorded in the Public Records subsequent to Date of Policy and prior to the recording of the Insured Mortgage in the Public Records
    The Company will also pay the costs, attorneys' fees and expenses incurred in defense of any matter insured against by this Policy, but only to the extent provided in the Conditions

**EXCLUSIONS FROM COVERAGE**

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses that arise by reason of
1   (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting or relating to
        (i)    the occupancy, use, or enjoyment of the Land,
        (ii)   the character, dimensions or location of any improvement erected on the Land,
        (iii)  subdivision of land, or
        (iv)   environmental protection,
        or the effect of any violation of these laws, ordinances or governmental regulations   This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5
    (b)  Any governmental police power   This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6

## EXCLUSIONS FROM COVERAGE CONTINUED FROM PAGE 2

2   Rights of eminent domain  This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8
3   Defects, liens, encumbrances, adverse claims or other matters
   (a)  created, suffered, assumed or agreed to by the Insured Claimant,
   (b)  not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy,
   (c)  resulting in no loss or damage to the Insured Claimant,
   (d)  attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13 or 14), or
   (e)  resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage
4   Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing business laws of the state where the Land is situated
5   Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth in lending law
6   Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
   (a)  a fraudulent conveyance or fraudulent transfer, or
   (b)  a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy
7   Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records  This exclusion does not modify or limit the coverage provided under Covered Risk 11(b)
8   The refusal of any person to purchase, lease or lend money on the estate or interest covered hereby in the land described in Schedule A because of Unmarketable Title

## CONDITIONS

**1   DEFINITION OF TERMS.**
   (a)  "Amount of Insurance"  the amount stated in Schedule A, as may be increased or decreased by endorsement to this policy, increased by Section 8(b), or decreased by Section 10 of these Conditions
   (b)  "Date of Policy"  The date designated as "Date of Policy" in Schedule A
   (c)  "Entity"  A corporation, partnership, trust, limited liability company or other similar legal entity
   (d)  "Indebtedness"  The obligation secured by the Insured Mortgage including one evidenced by electronic means authorized by law, and if that obligation is the payment of a debt, the Indebtedness is the sum of
     (i)  the amount of the principal disbursed as of Date of Policy,
     (ii)  the amount of the principal disbursed subsequent to Date of Policy,
     (iii)  construction loan advances made subsequent to Date of Policy for the purpose of financing in whole or in part the construction of an improvement to the Land or related to the Land that the Insured was and continued to be obligated to advance at Date of Policy and at the date of the advance,
     (iv)  interest on the loan,
     (v)  prepayment premiums, exit fees and other similar fees or penalties allowed by law,
     (vi)  expenses of foreclosure and any other costs of enforcement,
     (vii)  amounts advanced to assure compliance with laws or to protect the lien or the priority of the lien of the Insured Mortgage before the acquisition of the estate or interest in the Title,
     (viii)  amounts to pay taxes and insurance, and,
     (ix)  reasonable amounts expended to prevent deterioration of improvements, but reduced by the total of all payments and by any amount forgiven by an Insured
   (e)  "Insured"  the Insured named in Schedule A
     (i)  The term "Insured" also includes
       (A)  the owner of the Indebtedness and each successor in ownership of the Indebtedness, whether the owner or successor owns the Indebtedness for its own account or as a trustee or other fiduciary, except a successor who is an obligor under the provisions of Section 12(c) of these Conditions

       (B)  if the Indebtedness is evidenced by a  "transferable record," the person or Entity who has "control" of the "transferable record," as these terms are defined by applicable electronic transactions law,
       (C)  successors to an Insured by dissolution, merger, consolidation, distribution or reorganization,
       (D)  successors to an Insured by its conversion to another kind of Entity,
       (E)  a grantee of an Insured under a deed delivered without payment of actual valuable consideration conveying the Title,
         (1)  if the stock, shares, memberships, or other equity interests of the grantee are wholly-owned by the named Insured,
         (2)  if the grantee wholly owns the named Insured, or
         (3)  if the grantee is wholly-owned by an affiliated Entity of the named Insured, provided the affiliated Entity and the named Insured are both wholly-owned by the same person or Entity,
       (F)  any government agency or instrumentality that is an insurer or guarantor under an insurance contract or guaranty insuring or guaranteeing the Indebtedness secured by the Insured Mortgage, or any part of it, whether named as an Insured or not,
     (ii)  With regard to (A), (B), (C), (D) and (E) reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor Insured, unless the successor acquired the Indebtedness as a purchaser for value without Knowledge of the asserted defect, lien, encumbrance or other matter insured against by this policy
   (f)  "Insured Claimant"  an Insured claiming loss or damage
   (g)  "Insured Mortgage"  the Mortgage described in paragraph 4 of Schedule A
   (h)  "Knowledge" or "Known"  actual knowledge, not constructive knowledge or notice that may be imputed to an Insured by reason of the Public Records or any other records that impart constructive notice of matters affecting the Title
   (i)  "Land"  the land described in Schedule A, and affixed improvements that by law constitute real property  The term "Land" does not include any property beyond the lines of the area described in Schedule A, nor any right, title, interest, estate or easement in abutting streets, roads, avenues,

## CONDITIONS Continued

alleys, lanes, ways or waterways, but this does not modify or limit the extent that a right of access to and from the Land is insured by this policy

(j) "Mortgage" mortgage, deed of trust, trust deed, or other security instrument, including one evidenced by electronic means authorized by law

(k) "Public Records" records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge With respect to Covered Risk 5(d), "Public Records" shall also include environmental protection liens filed in the records of the clerk of the United States District Court for the district where the Land is located

(l) "Title" the estate or interest described in Schedule A

(m) "Unmarketable Title" Title affected by an alleged or apparent matter that would permit a prospective purchaser or lessee of the Title or lender on the Title or a prospective purchaser of the Insured Mortgage to be released from the obligation to purchase, lease or lend if there is a contractual condition requiring the delivery of marketable title

## 2 CONTINUATION OF INSURANCE

The coverage of this policy shall continue in force as of Date of Policy in favor of an Insured after acquisition of the Title by an Insured or after conveyance by an Insured, but only so long as the Insured retains an estate or interest in the Land, or holds an obligation secured by a purchase money Mortgage given by a purchaser from the Insured, or only so long as the Insured shall have liability by reason of warranties in any transfer or conveyance of the Title This policy shall not continue in force in favor of any purchaser from the Insured of either (i) an estate or interest in the Land, or (ii) an obligation secured by a purchase money Mortgage given to the Insured

## 3 NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT.

The Insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 5(a) below, or (ii) in case Knowledge shall come to an Insured of any claim of title or interest that is adverse to the Title or the lien of the Insured Mortgage, as insured, and that might cause loss or damage for which the Company may be liable by virtue of this policy If the Company is prejudiced by the failure of the Insured Claimant to provide prompt notice, the Company's liability to the Insured Claimant under the policy shall be reduced to the extent of the prejudice

Subject to the provisions of this policy, upon acquisition of all or any part of the Title pursuant to the provisions of Section 2 of these Conditions, when, after the Date of the Policy, the Insured notifies the Company as required herein of a lien, encumbrance, adverse claim or other defect in Title insured by this policy that is not excluded or excepted from the coverage of this policy, the Company shall promptly investigate the charge to determine whether the lien, encumbrance, adverse claim or defect or other matter is valid and not barred by law or statute The Company shall notify the Insured in writing, within a reasonable time, of its determination as to the validity or invalidity of the Insured's claim or charge under the policy If the Company concludes that the lien, encumbrance, adverse claim or defect is not covered by this policy, or was otherwise addressed in the closing of the transaction in connection with which this policy was issued, the Company shall specifically advise the Insured of the reasons for its determination If the Company concludes that the lien, encumbrance, adverse claim or defect is valid, the Company shall take one of the following actions (i) institute the necessary proceedings to clear the lien, encumbrance, adverse claim or defect from the Title as insured, (ii) indemnify the Insured as provided in this policy, (iii) upon payment of appropriate premium and charges therefor, issue to the Insured Claimant or to a subsequent owner, mortgagee or holder of the estate or interest in the Land insured by this policy, a policy of title insurance without exception for the lien, encumbrance, adverse claim or defect, said policy to be in an amount equal to the current value of the Land or, if a mortgage policy, the amount of the loan, (iv) indemnify another title insurance company in connection with its issuance of a policy(ies) of title insurance without exception for

the lien, encumbrance, adverse claim or defect, (v) secure a release or other document discharging the lien, encumbrance, adverse claim or defect, or (vi) undertake a combination of (i) through (v) herein

## 4. PROOF OF LOSS

In the event the Company is unable to determine the amount of loss or damage, the Company may, at its option, require as a condition of payment that the Insured Claimant furnish a signed proof of loss The proof of loss must describe the defect, lien, encumbrance or other matter insured against by this policy that constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage

## 5 DEFENSE AND PROSECUTION OF ACTIONS.

(a) Upon written request by the Insured, and subject to the options contained in Sections 3 and 7 of these Conditions, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an Insured in litigation in which any third party asserts a claim covered by this policy adverse to the Insured This obligation is limited to only those stated causes of action alleging matters insured against by this policy The Company shall have the right to select counsel of its choice (subject to the right of the Insured to object for reasonable cause) to represent the Insured as to those stated causes of action It shall not be liable for and will not pay the fees of any other counsel The Company will not pay any fees, costs or expenses incurred by the Insured in the defense of those causes of action that allege matters not insured against by this policy

(b) The Company shall have the right, in addition to the options contained in Sections 3 and 7, at its own cost, to institute and prosecute any action or proceeding or to do any other act that in its opinion may be necessary or desirable to establish the Title or the lien of the Insured Mortgage, as insured, or to prevent or reduce loss or damage to the Insured The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable to the Insured The exercise of these rights shall not be an admission of liability or waiver of any provision of this policy If the Company exercises its rights under this subsection, it must do so diligently

(c) Whenever the Company brings an action or asserts a defense as required or permitted by this policy, the Company may pursue the litigation to a final determination by a court of competent jurisdiction and it expressly reserves the right, in its sole discretion, to appeal from any adverse judgment or order

## 6 DUTY OF INSURED CLAIMANT TO COOPERATE

(a) In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding and any appeals, the Insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, including the right to use, at its option, the name of the Insured for this purpose Whenever requested by the Company, the Insured, at the Company's expense, shall give the Company all reasonable aid (i) in securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act that in the opinion of the Company may be necessary or desirable to establish the Title, the lien of the Insured Mortgage, or any other matter as insured If the Company is prejudiced by the failure of the Insured to furnish the required cooperation, the Company's obligations to the Insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation

(b) The Company may reasonably require the Insured Claimant to submit to examination under oath by any authorized representative of the Company and to produce for examination, inspection and copying, at such reasonable times and places as may be designated by the authorized representative of the Company, all records, in whatever

**CONDITIONS (Continued)**

medium maintained, including books, ledgers, checks, memoranda, correspondence, reports, e-mails, disks, tapes, and videos whether bearing a date before or after Date of Policy, that reasonably pertain to the loss or damage Further, if requested by any authorized representative of the Company, the Insured Claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect and copy all of these records in the custody or control of a third party that reasonably pertain to the loss or damage All information designated as confidential by the Insured Claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim Failure of the Insured Claimant to submit for examination under oath, produce any reasonably requested information or grant permission to secure reasonably necessary information from third parties as required in this subsection, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim

**7   OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY.**

In case of a claim under this policy, the Company shall have the following additional options

(a) To Pay or Tender Payment of the Amount of Insurance or to Purchase the Indebtedness

(i) to pay or tender payment of the Amount of Insurance under this policy together with any costs, attorneys' fees and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment or tender of payment and that the Company is obligated to pay, or

(ii) to purchase the Indebtedness for the amount of the Indebtedness on the date of purchase, together with any costs, attorneys' fees and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of purchase and that the Company is obligated to pay

When the Company purchases the Indebtedness, the Insured shall transfer, assign, and convey to the Company the Indebtedness and the Insured Mortgage, together with any collateral security

Upon the exercise by the Company of either of the options provided for in subsections (a)(i) or (ii), all liability and obligations of the Company to the Insured under this policy, other than to make the payment required in those subsections, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation

(b) To Pay or Otherwise Settle With Parties Other than the Insured or With the Insured Claimant

(i) to pay or otherwise settle with other parties for or in the name of an Insured Claimant any claim insured against under this policy In addition, the Company will pay any costs, attorneys' fees and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay, or

(ii) to pay or otherwise settle with the Insured Claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay

Upon the exercise by the Company of either of the options provided for in subsections (b)(i) or (ii), the Company's obligations to the Insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute or continue any litigation

**8   DETERMINATION AND EXTENT OF LIABILITY**

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the Insured Claimant who has suffered loss or damage by reason of matters insured against by this policy

(a) The extent of liability of the Company for loss or damage under this policy shall not exceed the least of

(i) the Amount of Insurance,

(ii) the Indebtedness,

(iii) the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy, or

(iv) if a government agency or instrumentality is the Insured Claimant, the amount it paid in the acquisition of the Title or the Insured Mortgage in satisfaction of its insurance contract or guaranty

(b) If the Company pursues its rights under Section 3 or 5 and is unsuccessful in establishing the Title or the lien of the Insured Mortgage, as insured,

(i) the Amount of Insurance shall be increased by 10%, and

(ii) the Insured Claimant shall have the right to have the loss or damage determined either as of the date the claim was made by the Insured Claimant or as of the date it is settled and paid

(c) In the event the Insured has acquired the Title in the manner described in Section 2 of these Conditions or has conveyed the Title, then the extent of liability of the Company shall continue as set forth in Section 8(a) of these Conditions

(d) In addition to the extent of liability under (a), (b) and (c), the Company will also pay those costs, attorneys' fees and expenses incurred in accordance with Sections 5 and 7 of these Conditions

**9   LIMITATION OF LIABILITY.**

(a) If the Company establishes the Title, or removes the alleged defect, lien or encumbrance, or cures the lack of a right of access to or from the Land, or establishes the lien of the Insured Mortgage, all as insured, or takes action in accordance with Section 3 or 7, in a reasonably diligent manner by any method, including litigation and the completion of any appeals, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused to the Insured

(b) In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals, adverse to the Title or to the lien of the Insured Mortgage, as insured

(c) The Company shall not be liable for loss or damage to the Insured for liability voluntarily assumed by the Insured in settling any claim or suit without the prior written consent of the Company

**10   REDUCTION OF INSURANCE, REDUCTION OR TERMINATION OF LIABILITY**

(a) All payments under this policy, except payments made for costs, attorneys' fees and expenses, shall reduce the Amount of Insurance by the amount of the payment However, any payments made prior to the acquisition of Title as provided in Section 2 of these Conditions shall not reduce the Amount of Insurance afforded under this policy except to the extent that the payments reduce the Indebtedness

(b) The voluntary satisfaction or release of the Insured Mortgage shall terminate all liability of the Company except as provided in Section 2 of these Conditions

**11. PAYMENT OF LOSS.**

When liability and the extent of loss or damage have been definitely fixed in accordance with these Conditions, the payment shall be made within 30 days

**CONDITIONS (Continued)**

**12  RIGHTS OF RECOVERY UPON PAYMENT OR SETTLEMENT**

(a)  The Company's Right to Recover

Whenever the Company shall have settled and paid a claim under this policy, it shall be subrogated and entitled to the rights of the Insured Claimant in the Title or Insured Mortgage and all other rights and remedies in respect to the claim that the Insured Claimant has against any person or property, to the extent of the amount of any loss, costs, attorneys' fees and expenses paid by the Company  If requested by the Company, the Insured Claimant shall execute documents to evidence the transfer to the Company of these rights and remedies  The Insured Claimant shall permit the Company to sue, compromise or settle in the name of the Insured Claimant and to use the name of the Insured Claimant in any transaction or litigation involving these rights and remedies

If a payment on account of a claim does not fully cover the loss of the Insured Claimant, the Company shall defer the exercise of its right to recover until after the Insured Claimant shall have recovered its loss

(b)  The Insured's Rights and Limitations

(i)  The owner of the Indebtedness may release or substitute the personal liability of any debtor or guarantor, extend or otherwise modify the terms of payment, release a portion of the Title from the lien of the Insured Mortgage, or release any collateral security for the Indebtedness, if it does not affect the enforceability or priority of the lien of the Insured Mortgage

(ii)  If the Insured exercises a right provided in (b)(i), but has Knowledge of any claim adverse to the Title or the lien of the Insured Mortgage insured against by this policy, the Company shall be required to pay only that part of any losses insured against by this policy that shall exceed the amount, if any, lost to the Company by reason of the impairment by the Insured Claimant of the Company's right of subrogation

(c)  The Company's Rights Against Noninsured Obligors

The Company's right of subrogation includes the Insured's rights against non-insured obligors including the rights of the Insured to indemnities, guaranties, other policies of insurance or bonds, notwithstanding any terms or conditions contained in those instruments that address subrogation rights  The Company's right of subrogation shall not be avoided by acquisition of the Insured Mortgage by an obligor (except an obligor described in Section 1(e)(i)(F) of these Conditions) who acquires the Insured Mortgage as a result of an indemnity, guarantee, other policy of insurance, or bond and the obligor will not be an Insured under this policy

**13  ARBITRATION**

Either the Company or the Insured may demand that the claim or controversy shall be submitted to arbitration pursuant to the Title Insurance Arbitration Rules of the American Land Title Association ("Rules")  Except as provided in the Rules, there shall be no joinder or consolidation with claims or controversies of other persons  Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the Insured arising out of or relating to this policy, any service in connection with its issuance or the breach of a policy provision, or to any other controversy or claim arising out of the transaction giving rise to this policy  All arbitrable matters when the Amount of Insurance is $2,000,000 or less shall be arbitrated at the option of either the Company or the Insured, unless the Insured is an individual person (as distinguished from an Entity)  All arbitrable matters when the Amount of Insurance is in excess  of $2,000,000 shall be arbitrated only when agreed to by both the Company and the Insured

Arbitration pursuant to this policy and under the Rules shall be binding upon the parties  Judgment upon the award rendered by the Arbitrator(s) may be entered in any court of competent jurisdiction

**14  LIABILITY LIMITED TO THIS POLICY, POLICY ENTIRE CONTRACT**

(a)  This policy together with all endorsements, if any, attached to it by the Company is the entire policy and contract between the Insured and the Company  In interpreting any provision of this policy, this policy shall be construed as a whole

(b)  Any claim of loss or damage that arises out of the status of the Title or lien of the Insured Mortgage or by any action asserting such claim, shall be restricted to this policy

(c)  Any amendment of or endorsement to this policy must be in writing and authenticated by an authorized person, or expressly incorporated by Schedule A of this policy

(d)  Each endorsement to this policy issued at any time is made a part of this policy and is subject to all of its terms and provisions  Except as the endorsement expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsement, (iii) extend the Date of Policy or (iv) increase the Amount of Insurance  Each Commitment, endorsement or other form, or provision in the Schedules to this policy that refers to a term defined in Section 1 of the Conditions shall be deemed to refer to the term regardless of whether the term is capitalized in the Commitment, endorsement or other form, or Schedule  Each Commitment, endorsement or other form, or provision in the Schedules that refers to the Conditions and Stipulations shall be deemed to refer to the Conditions of this policy

**15  SEVERABILITY.**

In the event any provision of this policy, in whole or in part, is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision or such part held to be invalid and all other provisions shall remain in full force and effect

**16  CHOICE OF LAW, FORUM**

(a)  Choice of Law  The Insured acknowledges the Company has underwritten the risks covered by this policy and determined the premium charged therefor in reliance upon the law affecting interests in real property and applicable to the interpretation, rights, remedies or enforcement of policies of title insurance of the jurisdiction where the Land is located  Therefore, the court or an arbitrator shall apply the law of the jurisdiction where the Land is located to determine the validity of claims against the Title or the lien of the Insured Mortgage that are adverse to the Insured, and in interpreting and enforcing the terms of this policy  In neither case shall the court or arbitrator apply its conflicts of laws principles to determine the applicable law

(b)  Choice of Forum  Any litigation or other proceeding brought by the Insured against the Company must be filed only in a state or federal court within the United States of America or its territories having appropriate jurisdiction

**17  NOTICES, WHERE SENT**

Any notice of claim and any other notice or statement in writing required to be given the Company under this Policy must be given to the Company at P O  Box 2029, Houston, Texas 77252-2029

Form T-2 Loan Policy of Title Insurance (Rev. 1/3/14)
Schedule A

## SCHEDULE A

**Name and Address of Title Insurance Company:**     Stewart Title Guaranty Company
                                                      P.O. Box 2029, Houston, TX  77252

**File No.:** 18000310375                                                    **Policy No.:** M-5967-000380258

**Loan No.:** 22114481 and 22114482

**Amount of Insurance:** $332,500.00 $\partial\!\!\!/\!\!\!\leftarrow$                                **Premium:** $1,566.70

**Date of Policy:** May 29, 2018

1. **Name of Insured:**

   Rabo Agrifinance LLC, a Delaware limited liability company $\odot\!\!\leftarrow$

2. **The estate or interest in the Land that is encumbered by the Insured Mortgage is:**

   Fee Simple

3. **Title is insured as vested in:**

   McClain Feed Yard, Inc  $\odot\!\!\leftarrow$

4. **The Insured Mortgage, and its assignments, if any, are described as follows:**

   Deed of Trust, Assignment of Rents and Security Agreement dated May 11, 2018 by and between McLain Feed Yard,
   Inc., a Texas corporation (Grantor) and Philip R. Kirkpatrick (Trustee) and Rabo Agrifinance LLC, a Delaware limited
   liability (Beneficiary), recorded May 29, 2018 as Document No. 18-0907, Official Public Records, Deaf Smith County,
   Texas.

5. **The Land referred to in this policy is described as follows:**

   See Exhibit "A"

6. **This policy incorporates by reference those endorsements selected below:**

   ☐ T-14 (First Loss)   ✓
   ☐ T-30 (Tax Deletion) ✓
   ☐ T-33 (Variable Rate) ✓
   ☐ T-35 (Revolving Credit/Future Advance) ✓
   ☐ Section 13 of the Conditions of this policy, which relates to Arbitration, is hereby deleted.   ✓

File No.: 18000310375                                                        **STEWART TITLE**
Form T-2 Loan Policy of Title Insurance (Rev. 1/3/14) Schedule A              **GUARANTY COMPANY**

Form T-2 Loan Policy of Title Insurance (Rev. 1/3/14)
Schedule B

## SCHEDULE B

**File No.: 18000310375**                                             **Policy No.: M-5967-000380258**

### EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) that arise by reason of the terms and conditions of leases and easements, if any, shown in Schedule A, and the following matters:

1. The following restrictive covenants of record itemized below, but the Company insures that any such restrictive covenants have not been violated so as to affect, and that future violation thereof will not affect, the validity or priority of the Insured Mortgage (insert specific recording data or delete this exception):

2. Any discrepancies, conflicts, or shortages in area or boundary lines, or any encroachments or protrusions, or any overlapping of improvements.

   ☐Item 2 of Schedule B is hereby amended to read: "shortages in area".

3. Standby fees, taxes and assessments by any taxing authority for the year 2018, and subsequent years; and subsequent taxes and assessments by any taxing authority for prior years due to change in land usage or ownership, but not those taxes or assessments for prior years because of an exemption granted to a previous owner of the property under Section 11.13, Texas Tax Code, or because of improvements not assessed for a previous tax year.

   ✕ Item 3 of Schedule B is hereby amended to delete: "and subsequent taxes and assessments by any taxing authority for prior years due to change in land usage or ownership,"

   ✕ Item 3 of Schedule B is hereby amended to add the following: "Company insures that standby fees, taxes and assessments by any taxing authority for the year 2018 are not yet due and payable."

4. Liens and leases that affect the Title, but that are subordinate to the lien of the Insured Mortgage.

5. (Insert here all other specific exceptions as to superior liens, easements, outstanding mineral and royalty interests, etc.)

**STEWART TITLE
GUARANTY COMPANY**

## EXHIBIT A

McClain MCA 2018
DEED OF TRUST, ASSIGNMENT OF RENTS AND SECURITY AGREEMENT

### Legal Description of Real Estate

Deaf Smith County, Texas

TRACT 1

A 36 03 acre tract, more or less, out of the Southwest part of Section 26, Block K-8, Abstract No. 1370, Certificate Number 128 of the T T R. R Co. Surveys in Deaf Smith County, Texas, described by metes and bounds as follows

BEGINNING at a number 60 common nail found for the Southwest corner of Section 26, Block K-8 whence a 1-1/2 inch iron pipe found for the Southeast corner of said section bears North 89 degrees 56 minutes 00 seconds East 5321 58 feet,

THENCE North 89 degrees 56 minutes 00 seconds East along the south line of said section, 48 80 feet to a 1/2 inch iron rod set in the East physical line of Farm Road 1057 for the Southwest and BEGINNING CORNER of this tract,

THENCE North 00 degrees 12 minutes 00 seconds West along the East physical line of Farm Road 1057, at 30 00 feet pass a 1/2 inch iron rod set for reference and at a total distance of 2587 27 feet a 1/2 inch iron rod set for corner,

THENCE North 89 degrees 54 minutes 43 seconds East 606 84 feet to a 1/2 inch iron rod set in the East line of a tract known as the West 40 acres of the Southwest 1/4 of said section whence a 1/2 inch iron rod set for the Northeast corner of the tract known as the West 40 acres of the Southwest 1/4 of said Section bears North 00 degrees 11 minutes 29 seconds West 71 78 feet;

THENCE south 00 degrees 11 minutes 29 seconds East at 2557 50 feet pass a 1 2 inch iron rod set for reference and at a total distance of 2587.50 feet a 1/2 inch iron rod found in the South line of said section for the Southeast corner of the track known as the West 40 acres of the Southwest 1/4 of said section,

THENCE South 89 degrees 56 minutes 00 seconds West along the South line of said section 606 45 feet to the PLACE OF BEGINNING

TRACT 2

A 20 00 acre tract out of the Southwest part of Section 26, Block K-8, Certificate Number 128 of the T T. R.R. Co Surveys in Deaf Smith County, Texas, described by metes and bounds as follows

BEGINNING at a 1/2 inch iron rod with cap marked "RPLS 1848" found in the South line of Section 26 for the Southwest corner and POINT OF BEGINNING of this tract, whence a number 60 common nail found for the Southwest corner of Section 26, Block K-8 bears South 89 degrees 56 minutes 00 seconds West 655 25 feet,

THENCE North 00 degrees 11 minutes 29 seconds West, a distance of 2587 50 feet a fence corner post for the Northwest corner of this tract,

THENCE North 89 degrees 54 minutes 43 seconds East, a distance of 336 69 feet to a 1/2 inch iron rod with cap marked "HBD" set for the Northeast corner of this tract,

THENCE South 00 degrees 11 minutes 29 seconds East, at a distance of 2557 62 feet pass a 1/2 inch iron rod with cap marked "HBD" set for reference, continue for a total distance of 2587 62 feet a point on the South line of Section 26, whence a 1-1/2 inch iron pipe found for the Southeast corner of Section 26 bears North 89 degrees 56 minutes 00 seconds East 4329 64 feet;

THENCE South 89 degrees 56 minutes 00 seconds West, along the South line of Section 26, a distance of 336.69 feet to the POINT OF BEGINNING

# stewart title

## T-14 FIRST LOSS ENDORSEMENT
### ATTACHED TO AND MADE PART OF POLICY OF TITLE INSURANCE SERIAL NUMBER M-5967-000380258

ISSUED BY
STEWART TITLE GUARANTY COMPANY

This endorsement is effective only if the Collateral includes at least two parcels of real property

1    For the purposes of this endorsement

  (a)   "Indebtedness" means all monetary obligations evidenced by the loan documents at Date of Policy as secured by the insured mortgage, but limited to the balance outstanding at the time the claim is made

  (b)   "Collateral" means all property, including the land, given as security for the Indebtedness

  (c)   "Material Impairment Amount" means the amount by which any matter covered by this policy for which a claim is made diminishes the value of the Collateral below the Indebtedness

2    Subject to the provisions of Section 8 of the Conditions, in the event of a claim resulting from a matter insured against by this policy, the Company agrees to pay that portion of the Material Impairment Amount that does not exceed the limits of liability imposed by Sections 2 and 7 of the Conditions without requiring

  (a)   maturity of the Indebtedness by acceleration or otherwise,

  (b)   pursuit by the insured of its remedies against the Collateral,

  (c)   pursuit by the insured of its remedies under any guaranty, bond or other insurance policy

3    Nothing in this endorsement shall impair the Company's right of subrogation However, the Company agrees that its right of subrogation shall be subordinate to the rights and remedies of the insured The Company's right of subrogation shall include the right to recover the amount paid to the insured pursuant to paragraph 2 from any debtor or guarantor of the Indebtedness, after payment or other satisfaction of the remainder of the Indebtedness and other obligations secured by the lien of the insured mortgage The Company shall have the right to recoup from the insured claimant any amount received by it in excess of the Indebtedness up to the amount of the payment under paragraph 2

This endorsement is issued as part of the policy Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements

Countersigned by

Authorized Countersignature

Stewart Title Guaranty Company

55 Madison Street, Suite 400
Denver, CO 80206
Agent ID 43A078

Matt Morris
President and CEO

Denise Carraux
Secretary

For purposes of this form the "Stewart Title" logo featured above is the represented logo for the underwriter, Stewart Title Guaranty Company

Endorsement
Serial No.        E-5948-952398019

# stewart title

---

## T-30 TAX DELETION ENDORSEMENT
**ATTACHED TO AND MADE PART OF POLICY OF TITLE INSURANCE SERIAL NUMBER M-5967-000380258**

ISSUED BY
STEWART TITLE GUARANTY COMPANY

The words "and subsequent taxes and assessments by any taxing authority for prior years due to change in land usage or ownership" as set forth in Item 3 , in Schedule B of the Mortgagee Policy or in Item 3, Schedule B-Part 1 of the Interim Construction Binder (whichever is applicable) to which this endorsement is attached are hereby deleted

Nothing hereby contained shall be construed as extending or changing the effective date of the Mortgagee Policy or Interim Construction Binder (whichever is applicable) to which this Endorsement is attached

IN WITNESS WHEREOF, the Stewart Title Guaranty Company has caused this Endorsement to be executed by its President under the seal of the Company, but this Endorsement is to be valid only when it bears an authorized countersignature

Countersigned by

Authorized Counters gnature

Stewart Title Guaranty Company

55 Madison Street, Suite 400
Denver, CO 80206
Agent ID 43A078

**Matt Morris**
President and CEO

**Denise Carraux**
Secretary

For purposes of this form the "Stewart Title" logo featured above is the represented logo for the underwriter, Stewart Title Guaranty Company

Endorsement
Serial No.       **E-5884-383449110**

# stewart title®

## T-33.1 VARIABLE RATE MORTGAGE – NEGATIVE AMORTIZATION ENDORSEMENT
### ATTACHED TO AND MADE PART OF POLICY OF TITLE INSURANCE SERIAL NUMBER M-5967-000380258

ISSUED BY
STEWART TITLE GUARANTY COMPANY

The Company insures the owner of the indebtedness secured by the insured mortgage against loss or damage sustained by reason of

1    The invalidity or unenforceability of the lien of the insured mortgage resulting from the provisions therein which provide for (a) interest on interest, (b) changes in the rate of interest, or (c) the addition of unpaid interest to the principal balance of the loan

2    Loss of priority of the lien of the insured mortgage as security for the principal balance of the loan, including any unpaid interest which was added to principal in accordance with the provisions of the insured mortgage, interest on interest, or interest as changed in accordance with the provisions of the insured mortgage, which loss of priority is caused by (a) changes in the rate of interest, (b) interest on interest, or (c) increases in the unpaid principal balance of the loan resulting from the addition of unpaid interest

"Changes in the rate of interest", as used in this endorsement, shall mean only those changes in the rate of interest calculated pursuant to the formula provided in the insured mortgage at Date of Policy

This endorsement does not insure against loss or damage based upon (a) usury, or (b) any consumer credit protection or truth-in-lending law

This endorsement is issued as part of the policy  Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance  To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls   Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements

Signed under seal for the Company, but this endorsement is to be valid only when it bears an authorized countersignature

Countersigned by

*Crystal Minael*
Authorized Countersignature

Stewart Title Guaranty Company

55 Madison Street, Suite 400
Denver, CO 80206
Agent ID  43A078

Matt Morris
President and CEO

Denise Carraux
Secretary

For purposes of this form the "Stewart Title" logo featured above is the represented logo for the underwriter, Stewart Title Guaranty Company

Endorsement
Serial No.      **E-5934-160790660**

# stewart title®

## T-35 FUTURE ADVANCE/REVOLVING CREDIT
**ATTACHED TO AND MADE PART OF POLICY OF TITLE INSURANCE SERIAL NUMBER M-5967-000380258**

ISSUED BY
STEWART TITLE GUARANTY COMPANY

Order No  18000310375

Attached to and made a part of Stewart Title Guaranty Company Loan Policy Number M-5967-000380258 dated the 29th day of May, 2018

1    The insurance for Advances added by Section 2 of this endorsement is subject to the exclusions in Section 3 of this endorsement and the Exclusions from Coverage in the Policy, except Exclusion 3(d), the provisions of the Conditions, and the exceptions contained in Schedule B

    a    "Agreement," as used in this endorsement, shall mean the note or loan agreement secured by the Insured Mortgage or the Insured Mortgage

    b    "Advances," as used in this endorsement, shall mean only those advances of principal indebtedness made after the Date of Policy as provided in the Agreement, including expenses of foreclosure, amounts advanced pursuant to the Insured Mortgage to pay taxes and insurance, assure compliance with laws, or to protect the lien of the Insured Mortgage before the time of acquisition of the Title, and reasonable amounts expended to prevent deterioration of improvements, together with interest on those advances

2    The Company insures against loss or damage sustained by the Insured by reason of

    a    The invalidity or unenforceability of the lien of the Insured Mortgage as security for each Advance

    b    The lack of priority of the lien of the Insured Mortgage as security for each Advance over any lien or encumbrance on the Title

    c    The invalidity or unenforceability or loss of priority of the lien of the Insured Mortgage as security for the Indebtedness and Advances resulting from (i) re-Advances and repayments of Indebtedness, (ii) lack of outstanding Indebtedness before an Advance, or (iii) the failure of the Insured Mortgage to comply with the requirements of state law of the state in which the Land is located to secure Advances

3    This endorsement does not insure against loss or damage (and the Company will not pay costs, attorneys' fees, or expenses) resulting from

    a    Advances made after a Petition for Relief under the Bankruptcy Code (11 U S C ) has been filed by or on behalf of the mortgagor

    b    The loss of priority of the lien of the Insured Mortgage, as security for Advances, to the lien of real estate taxes or assessments on the Title imposed by governmental authority arising after Date of Policy

    c    The loss of priority of the lien of the Insured Mortgage as security for any Advance, to a federal tax lien, which Advance is made after the earlier of (i) actual knowledge of the Insured that a federal tax lien was filed against the mortgagor, or (ii) the expiration of more than forty-five days after notice of a federal tax lien filed against the mortgagor

    d    The loss of priority of the lien of the Insured Mortgage as security for Advances to any federal or state environmental protection lien

    e    Usury, or any consumer credit protection or truth-in-lending law

4    The Amount of Insurance shall include Advances

This endorsement is issued as part of the policy   Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy or (iv) increase the Amount of Insurance   To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls   Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements

Countersigned by

_Cyntal Minael_
Authorized Countersignature

Stewart Title Guaranty Company

55 Madison Street, Suite 400
Denver, CO 80206
Agent ID  43A078

**Matt Morris**
President and CEO

**Denise Carraux**
Secretary

For purposes of this form the "Stewart Title" logo featured above is the represented logo for the underwriter, Stewart Title Guaranty Company

**Endorsement
Serial No.**          **E-5973-100485923**

# STEWART TITLE GUARANTY COMPANY

| 1.  IMPORTANT NOTICE | 1.  AVISO IMPORTANTE |
|---|---|
| To obtain information or make a complaint | Para obtener información o para presentar una queja |
| **2.** You may contact your title insurance agent at (800) 729-1900 Ext  8702 | 2   Usted puede comunicarse con su agente al  (800) 729-1900 Ext  8702 |
| **3.** You may call Stewart Title Guaranty Company's toll-free number for information or to make a complaint at | 3   Usted puede llamar al número de teléfono gratuito de Stewart Title Guaranty Company's para obtener información o para presentar una queja al |
| **(800) 729-1902** | **1-800-729-1902** |
| **4.** You may also write to Stewart Title Guaranty Company at  P O  Box 2029, Houston, TX 77252-2029 | 4   Usted también puede escribir a Stewart Title Guaranty Company, P O  Box 2029, Houston, TX 77252-2029 |
| **5.** You may contact the Texas Department of Insurance to obtain information on companies, coverage's, rights or complaints at | 5   Usted puede comunicarse con el Departamento de Seguros de Texas para obtener información sobre compañías, coberturas, derechos, o quejas al |
| **(800) 252-3439** | **(800) 252-3439** |
| **6.** You may write the Texas Department of Insurance | 6   Usted puede escribir al Departamento de Seguros de Texas a |
| **P.O. Box 149104**<br>**Austin, TX 78714-9104**<br>**Fax:  (512) 490-1007**<br>**Web: www.tdi.texas.gov**<br>**E-mail:  Consumerprotection@tdi.texas.gov** | **P.O. Box 149104**<br>**Austin, TX  78714-9104**<br>**Fax:  (512) 490-1007**<br>**Web: www.tdi.texas.gov**<br>**E-mail:  Consumerprotection@tdi.texas.gov** |
| **7.  PREMIUM OR CLAIM DISPUTES:**<br><br>Should you have a dispute concerning your premium or about a claim, you should contact the (agent) (company) (agent or the company) first  If the dispute is not resolved, you may contact the Texas Department of Insurance | **7.  DISPUTAS POR PRIMAS DE SEGUROS O RECLAMACIONES:**<br><br>Si tiene una disputa relacionada con su prima de seguro  o  con  una  reclamación  usted  debe comunicarse con (el agente) (la compañía)  (el agente o la compañía) primero  Si la disputa no es resuelta,  usted  puede  comunicarse  con  el Departamento de Seguros de Texas (TDI) |
| **8.  ATTACH THIS NOTICE TO YOUR POLICY:**<br><br>This notice is for information only and does not become a  part  or  condition  of  the  attached document | **8.  ADJUNTE ESTE AVISO A SU POLIZA:**<br><br>Este  aviso  es  solamente  para  proposito informativos  y  no  se  convierte en  parte  o  en condición del documento adjunto |

**Fidelity National Title** Insurance Company

Policy No.:  7032-1-AN19-7981-2019.2744343-217554184

## LOAN POLICY OF TITLE INSURANCE (T-2)

Issued by

### FIDELITY NATIONAL TITLE INSURANCE COMPANY

**Any notice of claim and any other notice or statement in writing required to be given to the Company under this Policy must be given to the Company at the address shown in Section 17 of the Conditions.**

#### COVERED RISKS

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B, AND THE CONDITIONS, FIDELITY NATIONAL TITLE INSURANCE COMPANY, a Florida corporation (the "Company") insures, as of Date of Policy and, to the extent stated in Covered Risks 11, 13 and 14 after Date of Policy, against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of:

1.  Title being vested other than as stated in Schedule A.
2.  Any defect in or lien or encumbrance on the Title. This Covered Risk includes but is not limited to insurance against loss from
    (a) A defect in the Title caused by
        (i)      forgery, fraud, undue influence, duress, incompetency, incapacity or impersonation;
        (ii) failure of any person or Entity to have authorized a transfer or conveyance,
        (iii) a document affecting Title not properly created, executed, witnessed, sealed, acknowledged, notarized, or delivered;
        (iv) failure to perform those acts necessary to create a document by electronic means authorized by law;
        (v) a document executed under a falsified, expired or otherwise invalid power of attorney,
        (vi) a document not properly filed, recorded or indexed in the Public Records including failure to perform those acts by electronic means authorized by law, or
        (vii) a defective judicial or administrative proceeding.
    (b) The lien of real estate taxes or assessments imposed on the Title by a governmental authority due or payable, but unpaid.
    (c) Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land. The term "encroachment" includes encroachments of existing improvements located on the Land onto adjoining land, and encroachments onto the Land of existing improvements located on adjoining land.
3.  Lack of good and indefeasible Title.
4.  No right of access to and from the Land.
5.  The violation or enforcement of any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
    (a) the occupancy, use, or enjoyment of the Land;
    (b) the character, dimensions or location of any improvement erected on the Land;
    (c) subdivision of land; or
    (d) environmental protection
    if a notice, describing any part of the Land, is recorded in the Public Records setting forth the violation or intention to enforce, but only to the extent of the violation or enforcement referred to in that notice.
6.  An enforcement action based on the exercise of a governmental police power not covered by Covered Risk 5 if a notice of the enforcement action, describing any part of the Land, is recorded in the Public Records, but only to the extent of the enforcement referred to in that notice
7.  The exercise of the rights of eminent domain if a notice of the exercise, describing any part of the Land, is recorded in the Public Records.
8.  Any taking by a governmental body that has occurred and is binding on the rights of a purchaser for value without Knowledge.
9.  The invalidity or unenforceability of the lien of the Insured Mortgage upon the Title. This Covered Risk includes but is not limited to insurance against loss from any of the following impairing the lien of the Insured Mortgage:
    (a) forgery, fraud, undue influence, duress, incompetency, incapacity or impersonation;
    (b) failure of any person or Entity to have authorized a transfer or conveyance,
    (c) the Insured Mortgage not being properly created, executed, witnessed, sealed, acknowledged, notarized or delivered;
    (d) failure to perform those acts necessary to create a document by electronic means authorized by law;
    (e) a document executed under a falsified, expired or otherwise invalid power of attorney,
    (f) a document not properly filed, recorded or indexed in the Public Records including failure to perform

those acts by electronic means authorized by law; or

(g) a defective judicial or administrative proceeding.

10. The lack of priority of the lien of the Insured Mortgage over any other lien or encumbrance.

11. The lack of priority of the lien of the Insured Mortgage

(a) as security for each and every advance of proceeds of the loan secured by the Insured Mortgage over any statutory or constitutional mechanic's, contractor's, or materialman's lien for services, labor or material having its inception on or before Date of Policy ; and

(b) over the lien of any assessments for street improvements under construction or completed at Date of Policy.

12. The invalidity or unenforceability of any assignment of the Insured Mortgage, provided the assignment is shown in Schedule A, or the failure of the assignment shown in Schedule A to vest title to the Insured Mortgage in the named Insured assignee free and clear of all liens.

13. The invalidity, unenforceability, lack of priority or avoidance of the lien of the Insured Mortgage:

(a) resulting from the avoidance in whole or in part, or from a court order providing an alternative remedy, of any transfer of all or any part of the title to or any interest in the Land occurring prior to the transaction creating the lien of the Insured Mortgage because that prior transfer constituted a fraudulent or preferential transfer under federal bankruptcy, state insolvency or similar creditors' rights laws; or

(b) because the Insured Mortgage constitutes a preferential transfer under federal bankruptcy, state insolvency or similar creditors' rights laws by reason of the failure of its recording in the Public Records:

(i) to be timely, or

(ii) to impart notice of its existence to a purchaser for value or a judgment or lien creditor.

14. Any defect in or lien or encumbrance on the Title or other matter included in Covered Risks 1 through 13 that has been created or attached or has been filed or recorded in the Public Records subsequent to Date of Policy and prior to the recording of the Insured Mortgage in the Public Records.

The Company will also pay the costs, attorneys' fees, and expenses incurred in defense of any matter insured against by this Policy, but only to the extent provided in the Conditions.

**IN WITNESS WHEREOF,** the Company has caused this Policy to be signed with the facsimile signatures of its President and Secretary and sealed as required by its By-Laws.

FIDELITY NATIONAL TITLE INSURANCE COMPANY

Countersigned:

By: _____

Authorized Officer or Agent

By:

President

Attest:

Secretary

IMPORTANT NOTICE

To obtain information or make a complaint:

You may call FIDELITY NATIONAL TITLE INSURANCE COMPANY toll free telephone for information or to make a complaint at: 1-877-862-9111

You may also write to FIDELITY NATIONAL TITLE INSURANCE COMPANY at: P.O. Box 45023, Jacksonville, FL 32232-5023

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

1-800-252-3439

You may write to the Texas Department of Insurance at:

PO Box 149104
Austin, TX  78714-9104
Web: http://www.tdi.texas.gov
Email: ConsumerProtection@tdi.texas.gov

PREMIUM OR CLAIM DISPUTES:

Should you have a dispute concerning your premium or about a claim you should contact the company first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

ATTACH THIS NOTICE TO YOUR POLICY:

This notice is for information only and does not become a part or condition of the attached document.

AVISO IMPORTANTE

Para obtener informacion o para someter una queja:

Usted puede llamar al número de teléfono gratuito de FIDELITY NATIONAL TITLE INSURANCE COMPANY para obtener información o para presentar una queja al:

1-800-654-7041

Usted tambien puede escribir a FIDELITY NATIONAL TITLE INSURANCE COMPANY at: P.O. Box 45023, Jacksonville, FL 32232-5023

Puede comunicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas at:

1-800-252-3439

Puede escribir al Departamento de Seguros de Texas:

PO Box 149104
Austin TX  78714-9104
Web: http://www.tdi.texas.gov
Email: ConsumerProtection@tdi.texas.gov

DISPUTAS SOBRE PRIMAS O RECLAMOS:

Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con la compania primero. Si no se resuelve la disputa; puede entonces comunicarse con el departamento (TDI)

UNA ESTE AVISO A SU POLIZA

Este aviso es solo para proposito de informacion no se convierte en parte o condicion del documento adjunto.

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to.
   (i)   the occupancy, use, or enjoyment of the Land;
   (ii)  the character, dimensions, or location of any improvement erected on the Land;
   (iii) subdivision of land; or
   (iv)  environmental protection;
   or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5
   (b) Any governmental police power.  This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2. Rights of eminent domain.  This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims, or other matters
   (a) created, suffered, assumed, or agreed to by the Insured Claimant,
   (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy,
   (c) resulting in no loss or damage to the Insured Claimant;
   (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13 or 14); or
   (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing business laws of the state where the Land is situated.
5. Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth in lending law.
6. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is·
   (a) a fraudulent conveyance or fraudulent transfer, or
   (b) a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy
7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This exclusion does not modify or limit the coverage provided under Covered Risk 11.(b).
8. The refusal of any person to purchase, lease or lend money on the estate or interest covered hereby in the land described in Schedule A because of Unmarketable Title.

## CONDITIONS

### 1. DEFINITION OF TERMS.

(a) "Amount of Insurance"· the amount stated in Schedule A, as may be increased or decreased by endorsement to this policy, increased by Section 8(b), or decreased by Section 10 of these Conditions.

(b) "Date of Policy": The date designated as "Date of Policy" in Schedule A.

(c) "Entity": A corporation, partnership, trust, limited liability company or other similar legal entity.

(d) "Indebtedness". The obligation secured by the Insured Mortgage including one evidenced by electronic means authorized by law, and if that obligation is the payment of a debt, the Indebtedness is the sum of:
   (i)   the amount of the principal disbursed as of Date of Policy,
   (ii)  the amount of the principal disbursed subsequent to Date of Policy;
   (iii) construction loan advances made subsequent to Date of Policy for the purpose of financing in whole or in part the construction of an improvement to the Land or related to the Land that the Insured was and continued to be obligated to advance at Date of Policy and at the date of the advance,
   (iv)  interest on the loan;
   (v)   prepayment premiums, exit fees and other similar fees or penalties allowed by law;
   (vi)  expenses of foreclosure and any other costs of enforcement;
   (vii) amounts advanced to assure compliance with laws or to protect the lien or the priority of the lien of the Insured Mortgage before the acquisition of the estate or interest in the Title;
   (viii) amounts to pay taxes and insurance; and,
   (ix)  reasonable amounts expended to prevent deterioration of improvements, but reduced by the total of all payments and by any amount forgiven by an Insured.

(e) "Insured": the Insured named in Schedule A.  (I) The term "Insured" also includes:
   (A) the owner of the Indebtedness and each successor in ownership of the Indebtedness, whether the owner or successor owns the Indebtedness for its own account or as a trustee or other fiduciary, except a successor who is an obligor under the provisions of Section 12(c) of these Conditions;
   (B) if the Indebtedness is evidenced by a "transferable record," the person or Entity who has

"control" of the "transferable record," as these terms are defined by applicable electronic transactions law;

(C) successors to an Insured by dissolution, merger, consolidation, distribution or reorganization;

(D) successors to an Insured by its conversion to another kind of Entity;

(E) a grantee of an Insured under a deed delivered without payment of actual valuable consideration conveying the Title:

(1) If the stock, shares, memberships, or other equity interests of the grantee are wholly-owned by the named Insured,

(2) If the grantee wholly owns the named Insured, or

(3) If the grantee is wholly-owned by an affiliated Entity of the named Insured, provided the affiliated Entity and the named Insured are both wholly-owned by the same person or Entity;

(F) any government agency or instrumentality that is an insurer or guarantor under an insurance contract or guaranty insuring or guaranteeing the Indebtedness secured by the Insured Mortgage, or any part of it, whether named as an Insured or not,

(ii) With regard to (A), (B), (C), (D) and (E) reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor Insured, unless the successor acquired the Indebtedness as a purchaser for value without Knowledge of the asserted defect, lien, encumbrance or other matter insured against by this policy.

(f) "Insured Claimant". an Insured claiming loss or damage

(g) "Insured Mortgage" the Mortgage described in paragraph 4 of Schedule A.

(h) "Knowledge" or "Known". actual knowledge, not constructive knowledge or notice that may be imputed to an Insured by reason of the Public Records or any other records that impart constructive notice of matters affecting the Title

(i) "Land": the land described in Schedule A, and affixed improvements that by law constitute real property. The term "Land" does not include any property beyond the lines of the area described in Schedule A, nor any right, title, interest, estate or easement in abutting streets, roads, avenues, alleys, lanes, ways or waterways, but this does not modify or limit the extent that a right of access to and from the Land is insured by this policy.

(j) "Mortgage": mortgage, deed of trust, trust deed, or other security instrument, including one evidenced by electronic means authorized by law.

(k) "Public Records". records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge. With respect to Covered Risk 5(d), "Public Records" shall also include environmental protection liens filed in the records of the clerk of the United States District Court for the district where the Land is located.

(l) "Title": the estate or interest described in Schedule A.

(m) "Unmarketable Title": Title affected by an alleged or apparent matter that would permit a prospective purchaser or lessee of the Title or lender on the Title or a prospective purchaser of the Insured Mortgage to be released from the obligation to purchase, lease or lend if there is a contractual condition requiring the delivery of marketable title.

## 2. CONTINUATION OF INSURANCE.

The coverage of this policy shall continue in force as of Date of Policy in favor of an Insured after acquisition of the Title by an Insured or after conveyance by an Insured, but only so long as the Insured retains an estate or interest in the Land, or holds an obligation secured by a purchase money Mortgage given by a purchaser from the Insured, or only so long as the Insured shall have liability by reason of warranties in any transfer or conveyance of the Title. This policy shall not continue in force in favor of any purchaser from the Insured of either (i) an estate or interest in the Land, or (ii) an obligation secured by a purchase money Mortgage given to the Insured.

## 3. NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT.

The Insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 5(a) below, or (ii) in case Knowledge shall come to an Insured of any claim of title or interest that is adverse to the Title or the lien of the Insured Mortgage, as Insured, and that might cause loss or damage for which the Company may be liable by virtue of this policy. If the Company is prejudiced by the failure of the Insured Claimant to provide prompt notice, the Company's liability to the Insured Claimant under the policy shall be reduced to the extent of the prejudice.

Subject to the provisions of this policy, upon acquisition of all or any part of the Title pursuant to the provisions of Section 2 of these Conditions, when, after the Date of the Policy, the Insured notifies the Company as required herein of a lien, encumbrance, adverse claim or other defect in Title insured by this policy that is not excluded or excepted from the coverage of this policy, the Company shall promptly investigate the charge to determine whether the lien, encumbrance, adverse claim or defect or other matter is valid and not barred by law or statute. The Company shall notify the Insured in writing, within a reasonable time, of its determination as to the validity or invalidity of the Insured's claim or charge under the policy. If the Company concludes that the lien, encumbrance, adverse claim or defect is not covered by this policy, or was otherwise addressed in the closing of the transaction in connection with which this policy was issued, the Company shall specifically advise the Insured of the reasons for its determination. If the Company concludes that the lien, encumbrance, adverse claim or defect is valid, the Company shall take one of the following actions· (i) institute the necessary proceedings to clear the lien, encumbrance, adverse claim or defect from the Title as insured; (ii) indemnify the Insured as provided in this policy; (iii) upon payment of appropriate premium and charges therefor, issue to the Insured Claimant or to a subsequent owner, mortgagee or holder of the estate or interest in the Land insured by this policy, a policy of title insurance without exception for the lien, encumbrance, adverse claim or defect, said policy to be in an amount equal to the current value of the Land or, if a loan policy, the amount of the loan; (iv) indemnify another title insurance company in connection with its issuance of a policy(ies) of title insurance without exception for the lien, encumbrance, adverse claim or defect; (v) secure a release or other document discharging the lien, encumbrance, adverse claim or defect, or (vi) undertake a combination of (i) through (v) herein.

## 4. PROOF OF LOSS.

In the event the Company is unable to determine the amount of loss or damage, the Company may, at its

option, require as a condition of payment that the Insured Claimant furnish a signed proof of loss. The proof of loss must describe the defect, lien, encumbrance or other matter insured against by this policy that constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage.

## 5. DEFENSE AND PROSECUTION OF ACTIONS.

(a) Upon written request by the Insured, and subject to the options contained in Sections 3 and 7 of these Conditions, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an Insured in litigation in which any third party asserts a claim covered by this policy adverse to the Insured. This obligation is limited to only those stated causes of action alleging matters insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the Insured to object for reasonable cause) to represent the Insured as to those stated causes of action. It shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs or expenses incurred by the Insured in the defense of those causes of action that allege matters not insured against by this policy.

(b) The Company shall have the right, in addition to the options contained in Sections 3 and 7, at its own cost, to institute and prosecute any action or proceeding or to do any other act that in its opinion may be necessary or desirable to establish the Title or the lien of the Insured Mortgage, as insured, or to prevent or reduce loss or damage to the Insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable to the Insured. The exercise of these rights shall not be an admission of liability or waiver of any provision of this policy. If the Company exercises its rights under this subsection, it must do so diligently.

(c) Whenever the Company brings an action or asserts a defense as required or permitted by this policy, the Company may pursue the litigation to a final determination by a court of competent jurisdiction and it expressly reserves the right, in its sole discretion, to appeal from any adverse judgment or order.

## 6. DUTY OF INSURED CLAIMANT TO COOPERATE.

(a) In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding and any appeals, the Insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, including the right to use, at its option, the name of the Insured for this purpose. Whenever requested by the Company, the Insured, at the Company's expense, shall give the Company all reasonable aid

(i) in securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and

(ii) in any other lawful act that in the opinion of the Company may be necessary or desirable to establish the Title, the lien of the Insured Mortgage, or any other matter as insured. If the Company is prejudiced by the failure of the Insured to furnish the required cooperation, the Company's obligations to the Insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

(b) The Company may reasonably require the Insured Claimant to submit to examination under oath by any authorized representative of the Company and to produce for examination, inspection and copying, at such reasonable times and places as may be designated by the authorized representative of the Company, all records, in whatever medium maintained, including books, ledgers, checks, memoranda, correspondence, reports, e-mails, disks, tapes, and videos whether bearing a date before or after Date of Policy, that reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the Insured Claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect and copy all of these records in the custody or control of a third party that reasonably pertain to the loss or damage. All information designated as confidential by the Insured Claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the Insured Claimant to submit for examination under oath, produce any reasonably requested information or grant permission to secure reasonably necessary information from third parties as required in this subsection, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

## 7. OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY.

In case of a claim under this policy, the Company shall have the following additional options:

(a) To Pay or Tender Payment of the Amount of Insurance or to Purchase the Indebtedness

(i) to pay or tender payment of the Amount of Insurance under this policy together with any costs, attorneys' fees and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment or tender of payment and that the Company is obligated to pay, or

(ii) to purchase the Indebtedness for the amount of the Indebtedness on the date of purchase, together with any costs, attorneys' fees and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of purchase and that the Company is obligated to pay.

When the Company purchases the Indebtedness, the Insured shall transfer, assign, and convey to the Company the Indebtedness and the Insured Mortgage, together with any collateral security.

Upon the exercise by the Company of either of the options provided for in subsections (a)(i) or    (ii), all liability and obligations of the Company to the Insured under this policy, other than to make the payment required in those subsections, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

(b) To Pay or Otherwise Settle With Parties Other than the Insured or With the Insured Claimant.

(i) to pay or otherwise settle with other parties for or in the name of an Insured Claimant any claim insured against under this policy. In addition, the Company will pay any costs, attorneys' fees and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay; or

(ii) to pay or otherwise settle with the Insured Claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in subsections (b)(i) or (ii), the Company's obligations to the Insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute or continue any litigation.

**8. DETERMINATION AND EXTENT OF LIABILITY.**

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the Insured Claimant who has suffered loss or damage by reason of matters insured against by this policy.

(a) The extent of liability of the Company for loss or damage under this policy shall not exceed the least of

(i) the Amount of Insurance;

(ii) the Indebtedness;

(iii) the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy; or

(iv) if a government agency or instrumentality is the Insured Claimant, the amount it paid in the acquisition of the Title or the Insured Mortgage in satisfaction of its insurance contract or guaranty.

(b) If the Company pursues its rights under Section 3 or 5 and is unsuccessful in establishing the Title or the lien of the Insured Mortgage, as insured,

(i) the Amount of Insurance shall be increased by 10%, and

(ii) the Insured Claimant shall have the right to have the loss or damage determined either as of the date the claim was made by the Insured Claimant or as of the date it is settled and paid.

(c) In the event the Insured has acquired the Title in the manner described in Section 2 of these Conditions or has conveyed the Title, then the extent of liability of the Company shall continue as set forth in Section 8(a) of these Conditions.

(d) In addition to the extent of liability under (a), (b) and (c), the Company will also pay those costs, attorneys' fees and expenses incurred in accordance with Sections 5 and 7 of these Conditions.

**9. LIMITATION OF LIABILITY.**

(a) If the Company establishes the Title, or removes the alleged defect, lien or encumbrance, or cures the lack of a right of access to or from the Land, or establishes the lien of the Insured Mortgage, all as insured, or takes action in accordance with Section 3 or 7, in a reasonably diligent manner by any method, including litigation and the completion of any appeals, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused to the Insured.

(b) In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals, adverse to the Title or to the lien of the Insured Mortgage, as Insured.

(c) The Company shall not be liable for loss or damage to the Insured for liability voluntarily assumed by the Insured in settling any claim or suit without the prior written consent of the Company.

**10. REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY.**

(a) All payments under this policy, except payments made for costs, attorneys' fees and expenses, shall reduce the Amount of Insurance by the amount of the payment. However, any payments made prior to the acquisition of

Title as provided in Section 2 of these Conditions shall not reduce the Amount of Insurance afforded under this policy except to the extent that the payments reduce the Indebtedness.

(b) The voluntary satisfaction or release of the Insured Mortgage shall terminate all liability of the Company except as provided in Section 2 of these Conditions.

**11. PAYMENT OF LOSS.**

When liability and the extent of loss or damage have been definitely fixed in accordance with these Conditions, the payment shall be made within 30 days.

**12. RIGHTS OF RECOVERY UPON PAYMENT OR SETTLEMENT.**

(a) The Company's Right to Recover

Whenever the Company shall have settled and paid a claim under this policy, it shall be subrogated and entitled to the rights of the Insured Claimant in the Title or Insured Mortgage and all other rights and remedies in respect to the claim that the Insured Claimant has against any person or property, to the extent of the amount of any loss, costs, attorneys' fees and expenses paid by the Company. If requested by the Company, the Insured Claimant shall execute documents to evidence the transfer to the Company of these rights and remedies. The Insured Claimant shall permit the Company to sue, compromise or settle in the name of the Insured Claimant and to use the name of the Insured Claimant in any transaction or litigation involving these rights and remedies.

If a payment on account of a claim does not fully cover the loss of the Insured Claimant, the Company shall defer the exercise of its right to recover until after the Insured Claimant shall have recovered its loss.

(b) The Insured's Rights and Limitations.

(i) The owner of the Indebtedness may release or substitute the personal liability of any debtor or guarantor, extend or otherwise modify the terms of payment, release a portion of the Title from the lien of the Insured Mortgage, or release any collateral security for the Indebtedness, if it does not affect the enforceability or priority of the lien of the Insured Mortgage.

(ii) If the Insured exercises a right provided in (b)(i), but has Knowledge of any claim adverse to the Title or the lien of the Insured Mortgage insured against by this policy, the Company shall be required to pay only that part of any losses insured against by this policy that shall exceed the amount, if any, lost to the Company by reason of the impairment by the Insured Claimant of the Company's right of subrogation.

(c) The Company's Rights Against Non-insured Obligors.

The Company's right of subrogation includes the Insured's rights against non-insured obligors including the rights of the Insured to indemnities, guaranties, other policies of insurance or bonds, notwithstanding any terms or conditions contained in those instruments that address subrogation rights. The Company's right of subrogation shall not be avoided by acquisition of the Insured Mortgage by an obligor (except an obligor described in Section 1(e)(i)(F) of these Conditions) who acquires the Insured Mortgage as a result of an indemnity, guarantee, other policy of insurance, or bond and the obligor will not be an Insured under this policy.

**13. ARBITRATION.**

Either the Company or the Insured may demand that the claim or controversy shall be submitted to arbitration pursuant to the Title Insurance Arbitration Rules of the American Land Title Association ("Rules"). Except as provided in the Rules, there shall be no joinder or consolidation with claims or controversies of other

persons. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the Insured arising out of or relating to this policy, any service in connection with its issuance or the breach of a policy provision, or to any other controversy or claim arising out of the transaction giving rise to this policy. All arbitrable matters when the Amount of Insurance is $2,000,000 or less shall be arbitrated at the option of either the Company or the Insured, unless the Insured is an individual person (as distinguished from an Entity). All arbitrable matters when the Amount of Insurance is in excess of $2,000,000 shall be arbitrated only when agreed to by both the Company and the Insured. Arbitration pursuant to this policy and under the Rules shall be binding upon the parties. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court of competent jurisdiction.

**14. LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT.**

(a) This policy together with all endorsements, if any, attached to it by the Company is the entire policy and contract between the Insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b) Any claim of loss or damage that arises out of the status of the Title or lien of the Insured

Mortgage or by any action asserting such claim, shall be restricted to this policy.

(c) Any amendment of or endorsement to this policy must be in writing and authenticated by an authorized person, or expressly incorporated by Schedule A of this policy.

(d) Each endorsement to this policy issued at any time is made a part of this policy and is subject to all of its terms and provisions Except as the endorsement expressly states, it does not      (i) modify any of the terms and provisions of the policy,

(ii) modify any prior endorsement,

(iii) extend the Date of Policy or (iv)increase the Amount of Insurance. Each Commitment, endorsement or other form, or provision in the Schedules to this policy that refers to a term defined in Section 1 of the Conditions shall be deemed to refer to the term regardless of whether the term is capitalized in the Commitment, endorsement or other form, or Schedule. Each Commitment, endorsement or other form, or provision in the Schedules that refers to the Conditions and Stipulations shall be deemed to refer to the Conditions of this policy.

**15. SEVERABILITY.**

In the event any provision of this policy, in whole or in part, is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision or such part held to be invalid and all other provisions shall remain in full force and effect.

**16. CHOICE OF LAW; FORUM.**

(a) Choice of Law: The Insured acknowledges the Company has underwritten the risks covered by this policy and determined the premium charged therefor in reliance upon the law affecting interests in real property and applicable to the interpretation, rights, remedies or enforcement of policies of title insurance of the jurisdiction where the Land is located.

Therefore, the court or an arbitrator shall apply the law of the jurisdiction where the Land is located to determine the validity of claims against the Title or the lien of the Insured Mortgage that are adverse to the Insured, and in interpreting and enforcing the terms of this policy. In neither case shall the court or arbitrator apply its conflicts

of laws principles to determine the applicable law.

(b) Choice of Forum Any litigation or other proceeding brought by the Insured against the Company must be filed only in a state or federal court within the United States of America or its territories having appropriate jurisdiction.

**17. NOTICES, WHERE SENT.** Any notice of claim and any other notice or statement in writing required to be given the Company under this Policy must be given to the Company at FIDELITY NATIONAL TITLE INSURANCE COMPANY National Claims Administration, P O. Box 45023, Jacksonville, FL 32232-5023.

FIDELITY NATIONAL TITLE

## LOAN POLICY OF TITLE INSURANCE T-2
### SCHEDULE A

Issued with Policy Number   2744243-217554183

Name and Address of Title Insurance Company      Fidelity National Title
1901 N Roselle Road, Ste 300
Schaumburg, IL 60195

Policy No..   2744343-217554184

File No.     AN19-7981

Loan No..    22117432, 22114481, 2211482

Address for Reference only.  Multiple tracts of land in
Parmer & Deaf Smith Counties, TX

Amount of Insurance. $ 625,000 00                            Premium      $4,117.00

Date of Policy·              August 1, 2019 at 03·40 PM

1.  Name of Insured.

Rabo AgriFinance LLC, and each successor in ownership of the indebtedness secured by the insured mortgage, except a successor who is an obligor under the provisions of Section 12(c) of the Conditions

2.  The estate or interest in the Land that is encumbered by the Insured Mortgage is

Fee Simple

3.  Title is insured as vested in.

7M Cattle Feeders, Inc  (Tract 1)
McClain Feed Yard, Inc. (Tract 2-3)

4.  The Insured Mortgage, and its assignments, if any, are described as follows

Deed of Trust dated July 24, 2019, executed by 7M Cattle Feeders, Inc , a Kentucky corporation and McClain Feed Yard, Inc , a Texas corporation, to Philip R Kirkpatrick, Trustee, securing one note in the original principal sum of $16,957,500 00, payable to the order of Rabo AgriFinance LLC, said deed of trust filed August 1, 2019, under Clerk's File No. 61507 and subsequently recorded in Volume 158, Page 578, Official Public Records of Parmer County, Texas  Said Deed of Trust filed August 5, 2019, under Clerk's File No. 19-1129, Official Public Records of Deaf Smith County, Texas  ***Liability hereunder at the date hereof is hereby limited to $625,000 00***

5.  The Land referred to in this policy is described as follows·

TRACT 1:

A tract of land being all of Section 25 and a portion of Section 24 of Charles E  Harding's Subdivision of Capitol League 473 and parts of Capitol Leagues 459, 460, 461, 472 and 474 in Parmer County, Texas, as shown by the map or plat thereof of record in Volume 6, Page 164, Deed Records of Parmer County, Texas, and being described by metes and bounds as follows.

BEGINNING at a 1/2 inch iron rod with camp stamped "Furman RPLS 1959" set for the southwest corner of said Section 25, being the common corner of Sections 25-36-35-26 from whence a 1/2 inch iron rod found for the common corner of sections 27-34-33-28, all in said subdivision bears North 89° 56' 32" west, 10,564.82 feet, the southwest corner of Section 36 and the southeast corner of Section 35 bears South 00° 11' 46" West, 5,281 81 feet, from this point a harrow tooth found as called for in that certain instrument recorded in Volume 225, Page 730, of the Deed Records of Parmer County, Texas, for the Northwest corner of Section 1, Block C of Capitol Syndicate Subdivision in Parmer County, Texas, as shown by Plat

**SCHEDULE A**
(Continued)

File No.· AN19-7981

Policy No.. 2744343-217554184

thereof of record in Volume 2, Page 495 of said Deed Records bears West (Bearing Basis) 1,411.64 feet,

THENCE North 00° 11' 46" East along the common line of Sections 25 and 26, and the common line of Section 24 and 23, of said Charles E Harding's Subdivision, and along the center of a road, at 5,281 61 feet pass the common line of Sections 25-26-23-24 a total distance of 8,503.54 feet to a 3/4 inch iron pipe found as called for in that certain instrument recorded in Volume 156, Page 603 of said Deed Records, and in Volume 2, Page 219 of the Field Note Records of Parmer County, Texas, from whence the common corner of Sections 24-23-14-13 of said Charles E Harding's Subdivision bears North 00° 11' 46" East 5,281 61 feet and 1 1/4 inch iron pipe with 5/8 inch rod adjacent found for the common corner of Sections 12-13-14-11 of said Charles E Harding's Subdivision, as called for in that certain instrument recorded in Volume 2, Page 343, of said Field Note records bears North 00° 11' 46" East 7,341 28 feet,

THENCE South 89° 40' 58" East 2,100.84 feet along a fence line and along the North line of this tract of land and the North line of that certain tract of land described in said Volume 156, Page 603 and said Volume 2, Page 219 to a 3/4 inch iron pipe found as called for in said Volume 156, Page 603 and said Volume 2, Page 219, said North line being monumented and generally accepted on the ground for over 25 years, from whence the Northeast corner of Section 24 and the Southeast corner of Section 14 of said Charles E. Harding's Subdivision bears North 00° 11' 07" East 7,345 07 feet,

THENCE South 00° 11' 07" West at 3,187.40 feet pass a 3/4 inch iron pipe found, this iron pipe is a monument of record in said Volume 156, Page 603 and said Volume 2, Page 219 for the Southeast corner of Section 24 of said Charles E Harding's Subdivision, it is however the Professional opinion of this surveyor that this corner lies in the East line of this survey but 26.81 feet North of the actual section corner, at 3,214.21 feet pass what is in my Professional opinion the Southeast corner of Section 24 and the Northeast corner of Section 25 of said Charles E. Harding's Subdivision at 3,301 75 feet pass a 1 1/2 inch iron pipe found as called for in said Volume 156, Page 603 and said Volume 2, Page 219 for the Southwest corner of Section 22 and the Northwest corner of Section 27 in Township 1 North, Range 3 East of a Capitol Syndicate Subdivision as shown by Plat thereof of record in Volume 5, Page 394 of said Deed Records, a total distance of 8,493 86 feet to a point being the Southeast corner of Section 25 and the Northeast corner of Section 36 of said Charles E. Harding's Subdivision from whence the Southeast corner of said Section 36 bears South 00° 11' 07" West 5,279 65 feet from this point a railroad spike found as called for in that certain instrument recorded in Volume 225, Page 730 of the Deed Records of Parmer County, Texas, for the Northwest corner of Section 1, Block C of Capitol Syndicate Subdivision in Parmer County, Texas as shown by Plat thereof record in Volume 2, Page 495 of said Deed Records bears East (Bearing Basis) 1,324.17 feet,

THENCE North 89° 56' 48" West 2,102.46 feet along the South line of Section 25 and the North line of Section 36 of said Charles E. Harding's Subdivision to the POINT OF BEGINNING and containing 410.0 acres of land, more or less

TRACT 2:

A 36.03 acre tract, more or less, out of the Southwest part of Section 26, Block K-8, Abstract No 1370, Certificate Number 128 of the T. T R. R. Co. Surveys in Deaf Smith County, Texas, described by metes and bounds as follows·

BEGINNING at a number 60 common nail found for the Southwest corner of Section 26, Block K-8 whence a 1-1/2 inch iron pipe found for the Southeast corner of said section bears North 89 degrees 56 minutes 00 seconds East 5321 58 feet,

THENCE North 89 degrees 56 minutes 00 seconds East along the South line of said section, 48 80 feet to

## SCHEDULE A
(Continued)

File No : AN19-7981

Policy No · 2744343-217554184

a 1/2 inch iron rod set in the East physical line of Farm Road 1057 for the Southwest and beginning corner of this tract;

THENCE North 00 degrees 12 minutes 00 seconds West along the East physical line of Farm Road 1057, at 30.00 feet pass a 1/2 inch iron rod set for reference and at a total distance of 2587.27 feet a 1/2 inch iron rod set for corner;

THENCE North 89 degrees 54 minutes 43 seconds East 606.84 feet to a 1/2 inch iron rod set in the East line of a tract known as the West 40 acres of the Southwest 1/4 of said section whence a 1/2 inch iron rod set for the Northeast corner of the tract known as the West 40 acres of the Southwest 1/4 of said section bears North 00 degrees 11 minutes 29 seconds West 71.78 feet,

THENCE South 00 degrees 11 minutes 29 seconds East at 2557 50 feet pass a 1/2 inch iron rod set for reference and at a total distance of 2587 50 feet a 1/2 inch iron rod found in the South line of said section for the Southeast corner of the track known as the West 40 acres of the Southwest 1/4 of said section;

THENCE South 89 degrees 56 minutes 00 seconds West along the South line of said section, 606 45 feet to the place of beginning

TRACT 3·

A 20 00 acre tract out of the Southwest part of Section 26, Block K-8, Certificate Number 128 of the T T R.R Co, Surveys In Deaf Smith County, Texas, described by metes and bounds as follows.

BEGINNING at a 1/2 inch iron rod with cap marked "RPLS 1848" found in the South line of Section 26 for the Southwest corner and POINT OF BEGINNING of this tract, whence a number 60 common nail found for the Southwest corner of Section 26, Block K-8 bears South 89 degrees 56 minutes 00 seconds West 655 25 feet;

THENCE North 00 degrees 11 minutes 29 seconds West, a distance of 2587 50 feet a fence corner post for the Northwest corner of this tract,

THENCE North 89 degrees 54 minutes 43 seconds East, a distance of 336 69 feet to a 1/2 inch iron rod with cap marked "HBD" set for the Northeast corner of this tract;

THENCE South 00 degrees 11 minutes 29 seconds East, at a distance of 2557.62 feet pass a 1/2 inch iron rod with cap marked "HBD" set for reference, continue for a total distance of 2587.62 feet a point on the South line of Section 26, whence a 1-1/2 inch iron pipe found for the Southeast corner of Section 26 bears North 89 degrees 56 minutes 00 seconds East, 4329.64 feet;

THENCE South 89 degrees 56 minutes 00 seconds West, along the South line of Section 26, a distance of 336.69 feet to the POINT OF BEGINNING.

Note: The Company is prohibited from insuring the area or quantity of the land Any Statement in the legal description contained in Schedule A as to area or quantity of land is not a representation that such area or quantity is correct but is for informal identification purposes and does not override Item 2 of Schedule B hereof.

6. This policy incorporates by reference those endorsements selected below.

## SCHEDULE A
(Continued)

File No.: AN19-7981

Policy No.: 2744343-217554184

- ☐ T-5 (Leasehold Loan Policy Endorsement)
- ☐ T-17 (Planned Unit Development)
- ☐ T-19 (Restrictions, Encroachments, Minerals)
- ☐ T-19.2 (Minerals and Surface Damage)
- ☐ T-19.3 (Minerals and Surface Damage)
- ☐ T-28 (Condominium)
- ☐ T-31 (Manufactured Housing) referring to manufactured housing unit serial number
- ☐ T-31.1 (Supplemental Coverage Manufactured Housing Unit)
- ☒ T-33 (Variable Rate)
- ☐ T-33.1 (Variable Rate--Negative Amortization)
- ☒ T-35 (Revolving Credit/Future Advance)
- ☐ T-36 (Environmental Protection Lien) Paragraph b refers to the following state statute(s):  TEX. HEALTH & SAFETY CODE sec. 361.194; TEX. HEALTH & SAFETY CODE sec. 342.007, 342.008; TEX. LOCAL GOV'T CODEsec 214.0015(b), (d) and (e), 214.001; TEX. NATURAL RESOURCES CODEsec. 134.150.
- ☐ T-39 (Balloon Mortgage)
- ☐ T-42 (Equity Loan Mortgage) and subparagraph 2(f) of the Equity Loan Mortgage Endorsement set forth in Procedural Rule P-44.C(2)      is      is not added.
- ☐ T-42.1 (Supplemental Coverage Equity Loan Mortgage)
- ☐ T-43 (Texas Reverse Mortgage)
- ☒ Section 13 of the Conditions of this policy, which relates to Arbitration, is hereby deleted.

**FIDELITY NATIONAL TITLE**

By: _____

FORM T-2: Loan Policy of Title Insurance
Schedule A

(AN19-7981.PFD/AN19-7981/27)

FIDELITY NATIONAL TITLE

## SCHEDULE B

File No.: AN19-7981

Policy No.: 2744343-217554184

## EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) that arise by reason of the terms and conditions of leases and easements, if any, shown in Schedule A, and the following matters:

1.  ~~The following restrictive covenants of record itemized below, but the Company insures that any such restrictive covenants have not been violated so as to affect, and that future violation thereof will not affect, the validity or priority of the Insured Mortgage (insert specific recording date or delete this exception):~~

2.  Any discrepancies, conflicts, or shortages in area or boundary lines, or any encroachments or protrusions, or any overlapping of improvements.

    ☐   Item 2 of Schedule B is hereby amended to read:  "shortages in area".

3.  Standby fees, taxes and assessments by any taxing authority for the year 2019, and subsequent years; and subsequent taxes and assessments by any taxing authority for prior years due to change in land usage or ownership, but not those taxes or assessments for prior years because of an exemption granted to a previous owner of the property under Section 11.13, Texas Tax Code, or because of improvements not assessed for a previous tax year.

    ☒   Item 3 of Schedule B is hereby amended to delete:  "and subsequent taxes and assessments by any taxing authority for prior years due to change in land usage or ownership,"

    ☒   Item 3 of Schedule B is hereby amended to add the following:  "Company insures that standby fees, taxes and assessments by any taxing authority for the year 2019 are not yet due and payable."

4.  Liens and leases that affect the Title, but that are subordinate to the lien of the Insured Mortgage.

5.  (Insert here all other specific exceptions as to superior liens, easements, outstanding mineral and royalty interests, etc.)

    a.  All leases, grants, exceptions or reservations of coal, lignite, oil, gas and other minerals, together with all rights, privileges, and immunities relating thereto, appearing in the Public Records whether listed in Schedule B or not. There may be leases, grants, exceptions or reservations of mineral interest that are not listed.

    b.  Subject to the rules regulations and tax assessments promulgated by High Plains Underground Water Conservation District No. 1.

    c.  Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the title that would be disclosed by an accurate and complete land survey of the land. (NOTE: Upon receipt of a survey acceptable to the Company, this exception will be deleted. Company reserves the right to add additional exceptions per its examination of said survey.)

**SCHEDULE B**
(Continued)

File No ' AN19-7981                                          Policy No.  2744343-217554184

d.  Any visible and apparent easements that may affect the property such as roadways, sewer, telephone, water and/or telephone or electrical lines, the existence of which does not appear of record

e.  Right of Way executed by Joseph Samuel Talley et ux to Miller Line No 4, dated February 20, 1954, granting sufficient width to permit the Grantees to lay, maintain, operate and remove parallel pipelines of the transportation of gas, filed March 6, 1954 and recorded in Volume 92, Page 253 of the Deed Records of Parmer County, Texas (Sec 24, Harding) (Tract 1)

f.  Deed of Right of Way executed by J W Baxter et ux to Ralph Miller Line No. 4 Maurer Line No 3, granting the free and uninterrupted use, liberty, and privilege of passage in, along, upon and across all of Section 25, Harding Subdivision, filed March 6, 1954 and recorded in Volume 92, Page 255, of the Deed Records of Parmer County, Texas. (Sec 25, Harding)  (Tract 1)

g.  Gasline Agreement executed by and between Ralph B. Miller and J W Baxter dated March 4, 1954, regarding the construction of a gas line, filed March 6, 1954 and recorded in Volume 1, Page 316, Miscellaneous Records of Parmer County, Texas  (Sec 24 Harding) (Tract 1)

h.  Right of Way Easement dated February 17, 1954, executed by Joseph Samuel Talley et ux granting to West Texas Gas Company a right of way 20 feet in width to construct, maintain and operate a pipeline filed March 22, 1954, and recorded in Volume 91, Page 385, Deed Records of Parmer County, Texas. (Sec 24 Harding) (Tract 1)

i.  Right of Way Easement dated August 22, 1967, executed by Joseph Samuel Talley granting to Pioneer Natural Gas Company a right of way and easement sufficient to maintain and operate the presently existing irrigation gas pipeline, filed November 22, 1967 and recorded in Volume 136, Page 654, Deed Records of Parmer County, Texas. (Sec 24 Harding)  (Tract 1)

j  Easement dated October 5, 1972, executed by Joseph Samuel Talley et ux granting to the Hi-Plains Feed Yard, Inc., the free and uninterrupted use, liberty, privilege and easement of passing in and along the property together with the right to construct, reconstruct, and perpetually maintain such existing gas line, filed October 6, 1972 and recorded in Volume 156, Page 608 Deed Records of Parmer County, Texas  (Sec 24, Harding)  (Tract 1)

k.  Water Ditch Easement dated May 18, 1967 executed by Nora Roberts et vir to Hi-Plains Feed Yard, Inc., granting a strip of land 40 feet in width along the East line of Section 25, Harding Subdivision, filed May 22, 1967 and recorded in Volume 135, Page 59, of the Deed Records of Parmer County, Texas. (Sec 25 Harding)  (Tract 1)

l  Right of Way Easement dated October 3, 1967 executed by Hi-Plains Feedyard, Inc. granting to Pioneer Natural Gas Company a right of way and easement of sufficient width to maintain and operate the presently existing irrigation gas pipeline, filed November 22, 1967 and recorded in Volume 136, Page 656, Deed Records of Parmer County, Texas. (Sec 25 Harding)  (Tract 1)

**SCHEDULE B**
(Continued)

File No . AN19-7981

Policy No.  2744343-217554184

m.   Bill of Sale dated September 24, 1969, executed by Miller-Martin Group to Pioneer Natural Gas Company granting that certain gas pipeline, pipeline system and all facilities, equipment and appurtenances and the right of way permits necessary to operate such pipeline, filed February 20, 1970 and recorded in Volume 146, Page 429 of the Deed Records of Parmer County, Texas  (Sec 25 Harding)  (Tract 1)

n    Quit Claim Deed dated July 16, 1992, executed by Mesa Operating Limited Partnership (successor to Pioneer Corporation) granting, selling, conveying and quit claiming unto Energas Company all its rights title and interest in and to certain easements and appurtenances situated in Parmer County, Texas, said Quit Claim Deed filed August 12, 1992 and recorded in Volume 241, Page 708, Deed Records of Parmer County, Texas. (Sec 24-25 Harding)  (Tract 1)

o    Special Warranty Deed dated December 31, 1991, executed by Westar Transmission Company granting, selling and conveying to Energas Company all its rights title and interest in and to all of the real property, easements and appurtenances thereto, situated in Parmer County, Texas, said Special Warranty Deed filed August 12, 1992 and recorded in Volume 241, Page 722, Deed Records of Parmer County, Texas  (Sec 24-25 Harding)  (Tract 1)

p.   Boundary Line Agreement dated March 12, 1998 by and between Associated Beef City, Inc  and Criss Wyly et ux filed of record on March 12, 1998 and recorded in Volume 262, Page 597, Deed Records of Parmer County, Texas. (Sec 24-25 Harding)  (Tract 1)

q.   Right of Way executed by Joseph Samuel Talley, et ux to Calvin Talley Gas Line #1, dated March 5, 1954, granting sufficient width to permit the Grantees to lay, maintain, operate, and remove parallel pipelines for the transportation of gas, filed March 5, 1954, and recorded in Volume 92, Page 260, Deed Records of Parmer County, Texas  (Sec 24 Harding)  (Tract 1)

r     Memorandum of Water Rights and Easement Agreement dated June 23, 2004, by and between Gerall Wyly and Criss Wyly (Grantor) and Monfort Finance Company, Inc., a Delaware corporation, (Grantee) for the Grantee's right to withdraw and pump water from certain water wells located on Grantor's Property, filed June 25, 2004, under Clerk's File No  39790 and subsequently recorded in Volume 6, Page 354, Official Public Records of Parmer County, Texas. (Property being conveyed belonging to Grantee in said document) (Sec 24-25)  (Tract 1)

s    Dedication of Easement for Access dated May 26, 2016, executed by HEC Feedyard, LLC, a Texas limited liability company, filed July 7, 2016, under Clerk's File No. 57533 and subsequently recorded in Volume 127, Page 765, Official Public Records of Parmer County, Texas. (Sec 24-25 Harding)  (Tract 1)

t     Right of Way Deed datted April 6, 1956, executed by A. Clyde Roller and wife, Josephine Roller to the State of Texas, for road purposes, recorded in Volume 169, Page 431, Deed Records of Deaf Smith Coutny, Texas. (Tract 2)

## SCHEDULE B
(Continued)

File No.. AN19-7981

Policy No · 2744343-217554184

u   Right of Way and Easement dated November 30, 1971, executed by R. M. Mason and wife, Mrs. R M Mason to Deaf Smith County Electric Cooperative, Inc , for guy wire purposes, recorded in Volume 272, Page 454, Deed Records of Deaf Smith County, Texas (Tract 2)

v   Right of Way and Easement dated December 17, 1973, executed by R. M. Mason and wife, Jessie J. Mason to Pioneer Natural Gas Company, for gas pipeline purposes, recorded in Volume 282, Page 405, Deed Records of Deaf Smith County, Texas. Assignment and Assumption, Conveyance, Deed and Bill of Sale dated February 29, 2008, executed by Atmos Energy Corporation to IBIS Gas Services, LLC, recorded under Clerk's File No  08-0570, Official Public Records of Deaf Smith County, Texas (Tract 2)

w   Reservation of oil, gas and other minerals contained in Instrument dated December 1, 1947, executed by Walter F. David, et al, to R  N. Cooke, recorded in Volume 114, Page 586, of Deed Records of Deaf Smith County, Texas, reference to which instrument is here made for all purposes. (Tracts 2 & 3)

x.   Reservation of oil, gas and other minerals contained in Instrument dated June 3, 1961, executed by E. W Barnard and wife, Jewel W Barnard to R  M  Mason, recorded in Volume 203, Page 269, of Deed Records of Deaf Smith County, Texas, reference to which instrument is here made for all purposes. (Tract 2)

y   Reservation of oil, gas and other minerals contained in instrument dated April 2, 2001, executed by Dickey B. Mason to Richard Hayes, recorded under Clerk's File No  01-0677, Official Public Records of Deaf Smith County, Texas, reference to which instrument is here made for all purposes. (Tract 2)

z   Right of way dated May 15, 1939, executed by H. W. Price and Walter F. David to Deaf Smith County Electric Cooperative, Inc., recorded in Volume 83, Page 215, Deed Records of Deaf Smith County, Texas. (Tract 3)

Aa   Right of way dated December 17, 1973, executed by R. M. Mason and wife, Jessie J  Mason to Pioneer Natural Gas Company, recorded in Volume 282, Page 405, Deed Records of Deaf Smith County, Texas. (Tract 3)

Ab   Order establishing a 40 foot public road along the South side of this tract, recorded in Volume 2, Page 7, Road Minute Records of the Commissioner's Court Minutes of Deaf Smith County, Texas. (Tract 3)

Ac   Easement Agreement dated August 1, 2019, from 7M Cattle Feeders, Inc  to Parmer County Holdings, LLC, Tony Beauchamp, and TL Harvesting, Inc., granting the right to store silage and free ingress and egress to current silage pile as well as future silage, said easment to expire by its own terms on December 31, 2020, said easement filed August 1, 2019, under Clerk's File No  61506 and subsequently recorded in Volume 158, Page 571, Official Public Records of Parmer County, Texas. (Tract 1)

(AN19-7981.PFD/AN19-7981/27)

## SCHEDULE B
(Continued)

File No.: AN19-7981                                   Policy No · 2744343-217554184

Ad    This tract is located within the boundary lines of Deaf Smith County Wind Erosion Conservation
      District and is therefore subject to its rules, regulations and possible assessments  (Tracts 2 and 3)

Ae    SUBJECT TO. Deed of Trust, Assignment of Rents and Security Agreement dated May 11, 2018,
      executed by McClain Feed Yard, Inc  to Philip R  Kirkpatrick, Trustee, securing the payment of one
      note of even date therewith payable to Rabo Agrifinance LLC, in the original principal amount of
      $332,500.00, said deed of trust recorded under Clerk's File No. 18-0907, Official Public Records of
      Deaf Smith County, Texas. (Tracts 2 and 3)

## ENDORSEMENT  T-3

Issued by
**FIDELITY NATIONAL TITLE**
HEREIN CALLED THE COMPANY

GF Number:  AN19-7981

Attached to and made a part of Fidelity National Title Policy or Interim Construction Binder Number 2744343-217554184, this August 1, 2019.

Schedule B. Item 4. Is hereby deleted.

Schedule B. Item 5. r. Is hereby deleted

Nothing herein contained shall be construed as extending or changing the effective date of the aforesaid policy or interim construction binder, unless otherwise expressly stated.

**FIDELITY NATIONAL TITLE**

By: _Aungei Srumble_

FARWELL ABSTRACT COMPANY, INC., DBA
MULESHOE ABSTRACT COMPANY

Form T-3: Correction Endorsement
(Other Than Policy Amount-Mortgagee)

(AN19-7981.PFD/AN19-7981/28)

## TAX DELETION ENDORSEMENT T-30

Issued by
**FIDELITY NATIONAL TITLE**
HEREIN CALLED THE COMPANY

GF Number: AN19-7981

Attached to and made a part of Fidelity National Title Mortgagee Policy Number or Interim Construction Binder Number 2744343-217554184.

The words "and subsequent taxes and assessments by any taxing authority for prior years due to change in land usage or ownership" as set forth in Item 3, in Schedule B of the Mortgagee Policy or in Item 3, Schedule B-Part I of the Interim Construction Binder (whichever is applicable) to which this endorsement is attached are hereby deleted.

Nothing herein contained shall be construed as extending or changing the effective date of the Mortgagee Policy or Interim Construction Binder (whichever is applicable) to which this endorsement is attached.

IN WITNESS HEREOF, the FIDELITY NATIONAL TITLE has caused this Endorsement to be executed by its President under the seal of the Company, but this Endorsement is to be valid only when it bears an authorized countersignature.

FIDELITY NATIONAL TITLE

By: _____
FARWELL ABSTRACT COMPANY, INC.,
DBA MULESHOE ABSTRACT COMPANY

Countersigned at Farwell, Texas

FORM T-30: Tax Deletion Endorsement                    (AN19-7981.PFD/AN19-7981/29)



## VARIABLE RATE MORTGAGE ENDORSEMENT T-33

Issued by
FIDELITY NATIONAL TITLE
HEREIN CALLED THE COMPANY

GF Number: AN19-7981

Attached to and made a part of Fidelity National Title Mortgagee Policy Number 2744343-217554184, dated the 1st day of August, 2019.

The Company insures the owner of the indebtedness secured by the insured mortgage against loss or damage sustained by reason of:

1.  The invalidity or unenforceability of the lien of the insured mortgage resulting from the provisions therein which provide for changes in the rate of interest.

2.  Loss of priority of the lien of the insured mortgage as security for the unpaid principal balance of the loan, together with interest as changed in accordance with the provisions of the insured mortgage, which loss of priority is caused by the changes in the rate of interest.

"Changes in the rate of interest", as used in this endorsement, shall mean only those changes in the rate of interest calculated pursuant to the formula provided in the insured mortgage at Date of Policy.

This endorsement does not insure against loss or damage based upon (a) usury, or (b) any consumer credit protection or truth in lending law.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

FIDELITY NATIONAL TITLE

By: _____
FARWELL ABSTRACT COMPANY, INC.,
DBA MULESHOE ABSTRACT COMPANY

Form T-33: Variable Rate Mortgage Endorsement

(AN19-7981.PFD/AN19-7981/29)

## FUTURE ADVANCE/REVOLVING CREDIT ENDORSEMENT T-35

Issued by
FIDELITY NATIONAL TITLE

GF Number: AN19-7981

Attached to and made a part of Fidelity National Title Loan Policy Number 2744343-217554184 dated the 1st day of August, 2019.

1.  The insurance for Advances added by Section 2 of this endorsement is subject to the exclusions in Section 3 of this endorsement and the Exclusions from Coverage in the Policy, except Exclusion 3(d), the provisions of the Conditions, and the exceptions contained in Schedule B.

    a.  "Agreement," as used in this endorsement, shall mean the note or loan agreement secured by the Insured Mortgage or the Insured Mortgage.

    b.  "Advances," as used in this endorsement, shall mean only those advances of principal indebtedness made after the Date of Policy as provided in the Agreement, including expenses of foreclosure, amounts advanced pursuant to the Insured Mortgage to pay taxes and insurance, assure compliance with laws, or to protect the lien of the Insured Mortgage before the time of acquisition of the Title and reasonable amounts expended to prevent deterioration of improvements, together with interest on those advances.

2.  The Company insures against loss or damage sustained by the Insured by reason of:

    a.  The invalidity or unenforceability of the lien of the Insured Mortgage as security for each Advance.

    b.  The lack of priority of the lien of the Insured Mortgage as security for each Advance over any lien or encumbrance on the Title.

    c.  The invalidity or unenforceability or loss of priority of the lien of the Insured Mortgage as security for the Indebtedness and Advances resulting from (i) re-Advances and repayments of Indebtedness, (ii) lack of outstanding Indebtedness before an Advance, or (iii) the failure of the Insured Mortgage to comply with the requirements of state law of the state in which the Land is located to secure Advances.

3.  This endorsement does not insure against loss or damage (and the Company will not pay costs, attorneys' fees, or expenses) resulting from:

    a.  Advances made after a Petition for Relief under the Bankruptcy Code (11 U.S.C.) has been filed by or on behalf of the mortgagor.

    b.  The loss of priority of the lien of the Insured Mortgage, as security for Advances, to the lien of real estate taxes or assessments on the Title imposed by governmental authority arising after Date of Policy.

    c.  The loss of priority of the lien of the Insured Mortgage as security for any Advance, to a federal tax lien, which Advance is made after the earlier of (i) actual knowledge of the Insured that a federal tax lien was filed against the mortgagor, or (ii) the expiration of more than forth-five days after notice of a federal tax lien filed against the mortgagor.

    d.  The loss of priority of the lien of the Insured Mortgage as security for Advances to any federal or state environmental protection lien.

    e.  Usury, or any consumer credit protection or truth-in-lending law.

4.  The Amount of Insurance shall include Advances.

## ENDORSEMENT T-35
(Continued)

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

FIDELITY NATIONAL TITLE

By: _Sungei  Shumble_
FARWELL ABSTRACT COMPANY, INC., DBA
MULESHOE ABSTRACT COMPANY

Form T-35: Future Advance/Revolving Credit Endorsement

(AN19-7981.PFD/AN19-7981/29)