David L. LeBas, SBN 12098600
dlebas@namanhowell.com
NAMAN HOWELL SMITH & LEE PLLC
8310 N. Capital of Texas Highway, Ste. 490
Austin, Texas 78731
Ph. (512) 479-0300
Fax (512) 474-1901

*ATTORNEYS FOR AGTEXAS FARM CREDIT SERVICES*
*AGTEXAS, PCA AND*
*THORLAKSON DIAMOND T FEEDERS, LP*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **MCCLAIN FEED YARD, INC., et al.,**1 | § | **CASE NO. 23-20084-RLJ-7** |
| | § | |
| | § | |
| **Debtors** | § | **Jointly Administered** |

1 The Debtors in these chapter 7 cases are: McClain Feed Yard, Inc. (Case No. 23-20084-RLJ), McClain Farms, Inc. (Case No. 23-20085-RLJ), and 7M Cattle Feeders, Inc. (Case No. 23-20086-RLJ)

### *EX PARTE* MOTION FOR RULE 2004 ORDER AUTHORIZING THE ISSUANCE OF DOCUMENT SUBPOENAS TO VARIOUS THIRD PARTIES

TO THE HONORABLE UNITED STATES BANKRUPTCY COURT:

Pursuant to Federal Rule of Bankruptcy Procedure 2004 and L.B.R. 2004-1, Atenas Farm Credit Services, AgTexas PCA, and Thorlakson Diamond T. Feeders, LP ("AgTexas" and "Thorlakson" respectively), Creditors and parties in interest to the above-entitled Chapter 7 cases, through counsel, respectfully request that this Court authorize AgTexas and Thorlakson to issue documents subpoenas to third parties who do or may have information relevant to the acts, conduct, or property of the Debtors' bankruptcy estates, or to the Debtors' liabilities and financial affairs.

1

Specifically, AgTexas and Thorlakson request authority to issue document subpoenas to the following third parties (the "**Examinees**"), and to request from the Examinees those records, and documents set forth in the subpoena riders attached hereto collectively as Exhibit "A."

| Name of Examinee | Brief Description of Relationship to Debtors |
|---|---|
| Oklahoma National Stockyards Company | Supplier of cattle to the Debtors' operations to fulfill feeding agreements made by Thorlakson Diamond T Feeders, LP. Also known as the Oklahoma National Stockyards Company. |
| First Bank & Trust<br><br>Including all lending officers, corporate officers, directors, members, employees, attorneys, agents, and representatives of the foregoing. This entity is a division of HTLF Bank. | Provided a credit facility to 2B Farms, who purchased cattle from the Debtors. 2B Farms has since filed its own Chapter 12 Bankruptcy before this Court under Cause No. 23-50096-rlj12. |
| Community Financial Services Bank<br><br>Including all lending officers, corporate officers, directors, members, employees, attorneys, agents, and representatives of the foregoing. | Kentucky Community Bank and the depository bank for both MAP Enterprises, Inc. and Wildforest Cattle Company, LLC. Cancelled millions of dollars of deposits that were made by it into the Debtors' Mechanics Bank accounts in early April 2023. |
| Angela Powell / H&R Block Office in Benton, Kentucky / ADPOWELL, Inc. | Angela Powell operates an H&R Block location in Benton, KY. Angela Powell is also the registered agent and one of the corporate directors for ADPOWELL, Inc. Angela Powell/ADPOWELL, Inc., /H&R Block provided accounting and bookkeeping services for the Debtors. |

In support hereof, AgTexas and Thorlakson state as follows:

1.      Each of the Debtors filed voluntary petitions for relief under Chapter 7 of Title 11 of the United States Code with this Court on April 28, 2023 (the "**Petition Date**").

2.      On June 28, 2023, this Court entered an Order Granting the Bankruptcy Trustee's (Kent Ries) Motion for Joint Administration. All three above-referenced cause numbers are now being jointly administrated under Chapter 7 bankruptcy, with the lead cause number being 23-20084-RLJ for procedural purposes. Thus, this 2004 Subpoena is being filed solely in cause number 23-2004-RLJ.

3.      AgTexas and Thorlakson incorporate by reference all factual allegations contained in their 2004 Motion filed before the Court on June 9, 2023.

4.      Rabo, AgTexas, and Thorlakson have filed respective 2004 Motions before this court, seeking documents from various third parties. As the proceedings continue to develop, and as information is gathered, it has become necessary to seek further documentation from various parties, to determine the respective positions of the creditors in this case. Accordingly, AgTexas and Thorlakson submit this second 2004 Motion, seeking records from the above-listed entities. The information sought is contained in Exhibit A, attached hereto. A brief description of each party and their involvement is included below.

5.      Federal Rule of Bankruptcy Procedure 2004 authorizes the Court, on motion of any party, to order the examination of any entity. FED. R. BANKER. P. 2004. Further, such examination may relate to the "acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge."

6.      Rule 2004 discovery is "extremely broad." *In re Buckner*, 2001 WL 992063 at *4 (BAP 10th Cir. 2001). Rule 2004 allows an unrestrained "fishing expedition," and "is essentially creditor and trustee oriented." *In re Blinder, Robinson & Co., Inc.*, 127 B.R. 267, 274 (D. Colo.

1991); *In re Kipp*, 86 B.R. 490, 491 (Bankr. W.D. Tex. 1998).

7.      "The object of the examination of the bankrupt and other witnesses to show the condition of the estate is to enable the court to discover its extent and whereabouts, and to come into possession of it, that the rights of creditors may be preserved." *Cameron v. United States*, 231 U.S. 710, 717 (1914). "As a general rule, examinations under Rule 2004 are allowed for the purpose of discovering assets, examining transactions, and determining whether wrongdoing has occurred." *In re Strecker*, 251 B.R. 878, 882 (Bankr. D. Colo. 2000 (internal citations and quotations omitted).

8.      In this case the Examinees are believed to possess records and documents that are squarely within the purview of Rule 2004. For example:

***Oklahoma City Stockyards***

        a)      On information and belief, Debtors were purchasing cattle from the Oklahoma National Stockyards Company (commonly known as the Oklahoma City Stockyards) to fill the feeding agreements entered into between the Debtors and Thorlakson.  Additionally, McClain individually, may have purchased cattle to fill orders and/or agreements with other creditors.

        b)      On further information and belief, the Oklahoma City Stockyards may have reclaimed an unknown amount of cattle from the Debtors' Texas feed-yards in April 2023, prior to, or immediately after Mr. McClain's death. The cattle were reclaimed at such a time that Thorlakson and AgTexas believe they had a superior interest in those cattle based on the feeding agreements, and the inter-creditor agreements, and under the Uniform Commercial Code.

        c)      As was alleged in the 2004 Motion filed by Rabo AgriFinance, LLC on May 9, 2023, the number of cattle stated on the Debtors' borrowing base reports were "substantially overstated." [Doc 17 in Cause No. 23-20084; Doc. 21 in Cause No. 23-20085;

Doc. 19 in Cause No. 23-20086.]  Thus, Thorlakson and AgTexas seek to obtain information related to how many cattle may have been on hand in the Debtors' feed-yards prior to Mr. McClain's death, as well as information related to the number of cattle purchased by McClain, and the dates they were purchased. AgTexas and Thorlakson also seek information related to any reclamation of cattle that were at the Debtors' feed yards to determine if they may have a superior interest in any reclaimed cattle.

***First Bank & Trust***

a)       After the institution of the instant bankruptcy cases, an entity known as 2B Farms, a Texas General Partnership, filed Chapter 12 bankruptcy. The officers in control of 2B farms are Terry M. Robinson (a/k/a "Bo Robinson") and Rebecca A. Robinson (hereinafter "the Robinsons"). The case is filed under cause number 23-50096-rlj12, and is currently pending before this Court, the Honorable Robert L. Jones presiding (hereinafter the "2B bankruptcy case"). The Debtors and 2B Farms had some arrangement in which 2B would purchase cattle from McClain for feeding, and the cattle would later be sold; however, the exact nature of their agreement is unknown.

b)       According to filings made in the 2B bankruptcy case, as well as information obtained during the 341 Meeting of the Creditors ("341 meeting"), First Bank & Trust, a division of HTLF Bank ("First Bank), is a secured creditor of 2B Farms, and also provided a credit facility to 2B Farms in relation to their cattle operations.  Court records further indicate that 2B Farms may have held a regular depository account with First Bank.

c)       On information and belief, funds were transferred between 2B Farms and the Debtors through the accounts 2B Farms held at First Bank. Lending officers and other associates for First Bank had knowledge and awareness of the agreements between 2B Farms and McClain but may have failed to do due diligence in their handling of funds. For example,

5

testimony was given during the 341 meeting in the 2B bankruptcy case that Brian McClain would send pre-signed, blank checks to First Bank, then its employees would keep the checks until such a time they received further instruction from the Robinsons. Megan McClain (Brian McClain's daughter) would send messages to 2B Farms' officers to convey information on how to fill out the checks, which would later be deposited into the Robinson's bank account.

d)    Based upon this information, AgTexas and Thorlakson seek to obtain information from First Bank, which includes, but is not limited to, the extent of knowledge its agents, employees, or officers had about the agreements and business dealings between 2B Farms and McClain, as well as whether McClain and/or the Debtors may ever have "double-pledged" any cattle that he purported to have first sold to Thorlakson. The specific requests are contained in Exhibit A attached hereto.

***Community Financial Services Bank***

a)    On information and belief, Community Financial Services Bank was the depository institution for two entities known as MAP Enterprises, Inc. and Wildforest Cattle Company, LLC (hereinafter "MAP" and "Wildforest" respectively).

b)    Community Financial Services Bank ("CFSB") is the bank from which payments from MAP Enterprises and Wildforest Cattle originated, and it also is the bank that instituted the "chargebacks" and "cancellations" that occurred in the Mechanics Bank accounts. Funds from CFSB may have been remitted to Mechanics Bank to bring the balance back to zero in the days before McClain's death. [Doc 17 in Cause No. 23-20084; Doc. 21 in Cause No. 23-20085; Doc. 19 in Cause No. 23-20086.] On further information and belief, the Debtors and/or Brian McClain had depository accounts at CFSB.

c)    In the 2004 Motion filed by Rabo on May 9, 2023, a subpoena was directed to Community Financial Services Bank. AgTexas and Thorlakson do not seek to duplicate the

efforts made, and documents already produced by CFSB, but do seek additional information from CFSB which includes, but is not limited to, whether CFSB was providing any sort of credit facility to MAP and Wildforest, the extent of the transactions between CFSB and other bank accounts held by the Debtors and/or Brian McClain, and whether any individuals had knowledge of the activities that occurred among the Debtors and CFSB. The specific requests are included in Exhibit A attached hereto.

***Angela Powell/ H&R Block Benton, KY/ ADPOWELL, Inc.***

a)      During the 341 meeting for the Debtors' entities, the Debtors' Chief Restructuring Officer, Glen Karlberg, gave testimony that Angela Powell ("Powell") operated an H&R Block location in Benton, KY. On information and belief, Angela Powell is also a corporate officer for the entity known as ADPOWELL, Inc., a Kentucky for-profit corporation. Public, corporate filings indicate ADPOWELL, Inc. has the same address listed as the H&R Block location in Benton, KY.

b)      Powell, and/or ADPOWELL, Inc., and/or H&R Block assisted the Debtors with bookkeeping and accounting services. Specifically, Powell individually, or agents and employees of the aforementioned entities may have prepared journal entries, and tax returns up through the tax year 2021.

c)      At the 341 meeting for these Debtors, Glen Karlberg indicated that he has attempted to contact Powell, but his requests have gone unanswered. Thus, AgTexas and Thorlakson seek to obtain accounting and bookkeeping records, as well as any other pertinent records that were prepared and maintained by Powell/ADPOWELL, Inc./H&R block, as identified in Exhibit A hereto.

9.      As noted above, AgTexas and Thorlakson request authority to issue document subpoenas to the Examinees directing the Examinees to produce the records and documents identified

7

in the subpoena riders attached hereto as Exhibit A.

10.    "A bankruptcy court 'has abundant legal authority to order the retrieval of information concerning a debtor and his estate from persons and entities who are not parties in a bankruptcy case, *i.e.,* persons or entities who have neither filed a voluntary petition under section 301 of the Bankruptcy Code nor filed a proof of claim or interest under section 501 of the Bankruptcy Code.'" *In re Correa*, 589 B.R. 76, 107 (Bankr. N.D. Tex. 2018) (citations and quotations omitted).

11.    Indeed, "Bankruptcy Rule 2004 of the Federal Rules of Bankruptcy Procedure is 'the basic discovery device in bankruptcy cases.'" *Id.*, at 108. "Third parties are subject to examination pursuant to Rule 2004 if they have knowledge of the debtor's affairs." *Id.* Further, "[a] rule 2004 exam has been explained as a broad investigation into the financial affairs of the debtor for the purpose of the discovery of assets of the estate and the exposure of fraudulent conduct." *Id.* That is why the scope of a Rule 2004 examination is "unfettered and broad" and "is commonly recognized as more in the nature of a 'fishing expedition.'" *Id.*

12.    If the Court grants this Motion, AgTexas and Thorlakson will compel the Examinees to produce records and documents through the issuance of a subpoena issued pursuant to Federal Rule of Bankruptcy Procedure 9016.

13.    AgTexas and Thorlakson represent that the Examinees will all receive not less than 14 days' written notice of deadline to produce documents.

14.    AgTexas and Thorlakson intend to share any documents produced by the Examinees with Kent Ries, the Chapter 7 Trustee.

WHEREFORE, AgTexas and Thorlakson respectfully request that the Court grant this ex parte motion. A proposed Order is submitted herewith.

## CERTIFICATE REGARDING CONFERENCE

Pursuant to LBR 2004-1, AgTexas and Thorlakson are aware that First Bank & Trust is represented by counsel, John Lovell. AgTexas and Thorlakson are not aware whether Oklahoma City Stockyards, Community Financial Services Bank, or Angela Powell/ADPOWELL Inc./H&R Block are represented by counsel. However, this Motion only requests authority to issue document subpoenas but not take Rule 2004 examinations at this time. Because AgTexas and Thorlakson are not requesting authority to conduct Rule 2004 examinations at this time, AgTexas and Thorlakson do not believe the meet and confer requirements of Local Rule 2004-1 apply. AgTexas and Thorlakson also represent to the Court that after they serve subpoenas on the Examinees they will cooperate with the Examinees, and their counsel, to establish a mutually agreeable date, place, and time for the compliance with the document subpoenas.

DATED this 17th day of July, 2023.

NAMAN HOWELL SMITH & LEE PLLC
8310 N. Capital of Texas Highway, Ste. 490
Austin, Texas 78731
Ph. (512) 479-0300
Fax (512) 474-1901
dlebas@namanhowell.com

By: */s/ David L. LeBas*
    David L. LeBas
    SBN 12098600

## CERTIFICATE OF SERVICE

I hereby certify that on July 17th, 2023, the foregoing document was filed with the Clerk of the Court in each of the foregoing Chapter 7 cases using the CM/ECF system, which sent notice of electronic filing to all electronic filing users in each case.


*/s/ David L. LeBas*
David L. LeBas

**EXHIBIT A**

**(DOCUMENT SUBPOENAS)**

**EXHIBIT "A"**

## <u>DEFINITIONS</u>
## <u>(Oklahoma City Stockyards)</u>

1. <u>AgTexas</u>.    The term "AgTexas" shall mean AgTexas Farm Credit Services, a federally chartered agricultural credit association formed under the Farm Credit Act of 1933, and AgTexas PCA, a federally chartered production credit association formed under the Farm Credit Act of 1933.

2. <u>Thorlakson</u>.    The term "Thorlakson" shall mean Thorlakson Diamond T Feeders, LP, a limited partnership organized under the laws of, and doing business in, the State of Texas.

3. <u>2B Farms</u>**.**    The term 2B Farms shall mean 2B Farms, a Texas General Partnership, and its partners, officers, members, agents, or employees.

4. <u>2B Accounts</u>.  The term "2B Accounts" shall mean any and all savings, checking, money market, demand, deposit, loan or other financial accounts owned by or in the name of 2B during the Relevant Time Period.

5. <u>OKCS</u>.The term OKCS shall mean the Oklahoma National Stockyards Company (also referred to as the Oklahoma City Stockyards) and its agents, employees, directors, members, officers, or representatives, located at 107 Livestock Exchange Building, Oklahoma City, Oklahoma 73108.

6. <u>Powell.</u>    The term "Powell" shall mean Angela Powell, individually, and in her capacity as the agent of ADPOWELL, Inc., and in her capacity with H&R Block in Benton, KY.

7. <u>H&R Block.</u>    The term "H&R Block" shall mean the location at 88B Commerce Blvd., Benton, KY 42025, as well as all officers, directors, members, employees, attorney, agents, and representatives of the foregoing.

8. <u>ADPOWELL, Inc.</u>    The term "ADPOWELL, Inc." shall mean ADPOWELL, Inc.,

a Kentucky for-profit corporation, and all officers, directors, members, employees, attorneys, agents, and representatives of the foregoing.

9.      Debtors. The term "Debtors" shall mean McClain Feed Yard, Inc., McClain Farms, Inc., and 7M Cattle Feeders, Inc., as named and described in Cause No.'s 23-20084, 23-20085, and 23-20086 filed in this Court.   This term also includes any of the Debtors' agents, employees, directors, members, officers, or representatives.

10.      McClain. The term "McClain" shall mean Brian Keith McClain, aka Brian K. McClain, and also includes his agents, heirs, and representatives, including but not limited to his estate, his widow Chelsea McClain, his former spouse Crystal McClain, his daughter Meagan B. Goad, f/k/a Meagan B. Powell, and his daughter Kinsey Moreland.

11.      Relevant Documents Time Period. The term "Relevant Documents Time Period" shall mean the period from January 1, 2018, through the present.

12.      Relevant Communications Time Period. The term "Relevant Communications Time Period" shall mean the period from January 1, 2021, through the present.

13.      Documents or Electronically Stored Information. The term "documents or electronically stored information" shall be synonymous in meaning and equal in scope to the usage of those terms in Rule 34 of the Federal Rules of Civil Procedure, and shall include, *without limitation*, any written, printed, electronic, typed, recorded, filmed, punched, transcribed, taped, or other graphic matter of any kind or nature however stored, produced, or reproduced, whether sent or received or neither, including the original, drafts, copies, and non-identical copies bearing notations or marks not found on the original, and includes, but is not limited to, all records, memoranda, reports, financial statements, handwritten and other notes, transcripts, paper, indices, electronic mail messages, electronic text messages, voicemail, word processing documents, spreadsheets, databases, calendars, telephone logs, contact manager information, internet usage files (including activity logs, records of

internet and web browser generated files, history files, caches, and cookies), network access information, blogs, tweets, instant messages, letters, envelopes, telegrams, cables, telex messages, telephone messages, summaries or records of telephone conversations, summaries or records of personal conversations or interviews, summaries or records of meetings or conferences, minutes or transcripts or notations of meetings or telephone conversations or other communications of any type, tabulations, studies, analyses, evaluations, projections, work papers, statements, summaries, opinions, journals, desk calendars, appointment books, diaries, billing records, invoices, or photographs, or other data compilations in any medium from which information can be obtained, including, but not limited to microfilms, magnetic tapes, electronic storage, computers, laptops, hard drives, thumb drives, personal digital assistants, smart phones, and archives, and includes any other documents discoverable under Federal Rule of Civil Procedure 26, which are in your custody, possession, and/or control or to which you otherwise have access. The term "document" *also includes* file and folder tabs associated with each of the aforementioned originals, copies, drafts, or versions. The term "document" also includes "communication" as defined herein.

14.    Communications. The term "communications" shall be construed as broadly as possible, and shall include, but not be limited, to all e-mails, text messages, correspondence, memoranda, or other written documentation in any form.

15.    Concerning. The term "concerning" means referring to, referencing, reflecting, in connection with, describing, evidencing, indicating, supporting or constituting, digesting, embodying, establishing, tending to establish, tending not to establish, comprising, commenting on, responding to, disagreeing with, showing, describing, analyzing, representing, constituting or including, in whole or in part.

16.    All/Each. The terms "all" and "each" shall be construed as all and each.

17.    And/Or. The connectives "and" and "or" shall be construed either disjunctively or

conjunctively as necessary to bring within the scope of the discovery request all responses that might

otherwise be construed to be outside of its scope.

18.    <u>Number</u>. The use of the singular form of any word includes the plural and vice

versa.

19.    <u>Tense</u>. The use of the present tense includes the present and past tense, and the use

of the past tense includes the past and present tense.

20.    <u>You/Your</u>. The terms "You" and/or "Your" means to person or entity to whom this

subpoena is directed, and its agents or employees thereof with knowledge of the matters contained

in the documents requested herein.

## **<u>INSTRUCTIONS</u>**

A.    To the extent any Document Request in this subpoena seeks documents also covered

by any other Document Request(s) to You, it is for purposes of completeness only, and should in

no way be construed as limiting or otherwise narrowing any of the other Requests herein.

B.    These Requests shall extend to all documents in the possession, custody, and/or

control of You, as well as all documents in the possession, custody, or control of persons or

entities under Your control or which You could reasonably gain access.

C.    In the event that more than one copy of a documents exists, You should produce the

original and each non-identical copy of each document or other tangible thing requested herein

that is in Your possession, custody or control, or the control of Your agents, attorneys, accountants,

or employees, or to which You could reasonably gain access.

D.    You should comply with the requirements of the Federal Rules of Civil Procedure

regarding claims of privilege or protection of trial preparation materials.

E.    These Requests shall be deemed continuing in nature to the fullest extent permitted by

law. If further responsive information comes into the possession or attention of You or Your

attorneys at any time during the course of this proceeding, such information must be provided as required by the Federal Rules of Civil Procedure.

## **REQUESTED DOCUMENTS**

1.      All purchase agreements between the Debtors and OKCS for the Relevant Documents Time Period.

2.      All inventory sheets, head counts, or lot identifiers for any cattle purchased by the Debtors and/or Brian McClain, and/or Megan McClain for the Relevant Documents Time Period.

3.      All shipping documents for cattle sent to any of the Debtors' feed yards during the Relevant Documents Time Period.

4.      All bills of lading and/or shipper's manifests for cattle sent to any of the Debtors' feed yards during the Relevant Documents Time Period.

5.      Any documents received from the Texas and Southwestern Cattle Association (including the Texas and Southwestern Cattle Raisers Association Special Rangers) from January 1, 2023, through the date of this subpoena that relate to the Debtors' operations, Brian McClain, or Megan McClain.

6.      Any security agreements made between the Debtors and OKCS during the Relevant Documents Time Period.

7.      Any documents evidencing the reclamation of cattle from the Debtors' feed yards from January 1, 2023, through the present, including bills of lading, shipping manifests, load identifiers, head counts, and inventories.

8.      All notices sent to the Debtors and/or Brian McClain, and/or Megan McClain that OKCS intended to reclaim any cattle from January 1, 2023, through the present.

9.      Any documents evidencing a debt **owed to OKCS** by the Debtors or Brian McClain individually.

10.    All communications between OKCS and the following individuals and/or entities during the Relevant Communications Time Period which relate to the Debtors' operations and/or Brian McClain:

- Brian McClain;

- Meagan B. Goad, aka Megan B. Powell, aka Megan McClain

- Glenn Karlberg

- Texas & Southwestern Cattle Raisers Association, including the Special Rangers (and its agents, officers, or employees)

- Rabo AgriFinance, LLC (and its agents, officers, or employees)

- Cactus Feeders (and its agents, officers, or employees)

- Friona Industries (and its agents, officers, or employees)

- 2B Farms (and its agents, officers, or employees)

- Terry ("Bo") Robinson

- Rebecca Robinson

- Angela Robinson

- MAP Enterprises, LLC (and its agents, officers, or employees)

- Wildforest Cattle Company, LLC (and its agents, officers, or employees)

- Community Financial Services Bank (and its agents, officers, or employees)

11.    If OKCS reclaimed any cattle from January 1, 2023, through the present, all documents from the date of reclamation through the present evidencing the disposition of the cattle, and/or proceeds thereof.

- If cattle were reclaimed but have not been sold or otherwise disposed of at the time of receipt of this subpoena, all documents evidencing the current location and

8

head count of the cattle.

- If cattle were reclaimed, and there are any planned, future sales of the cattle, this request should be considered ongoing, and seeks all information and documentation related to the proceeds of any reclaimed cattle from the Debtors' feed yards, at such a time they are sold or otherwise disposed of after the date of this subpoena.

12.      All records of payments made **by** the Debtors and/ or Brian McClain and/or Megan McClain **to OKCS** during the Relevant Documents Time Period.

13.      All records of payments made **by** OKCS **to** the Debtors and/ or Brian McClain and/or Megan McClain during the Relevant Documents Time Period.

14.      All records and documents evidencing lines of credit (or sales on credit), and the amounts extended (if any) to the Debtors by OKCS during the Relevant Documents Time Period.

15.      All evidence of payments made by the Debtors on any lines of credit extended by OKCS during the Relevant Documents Time Period.

16.      Any communications with any person or entity purporting to be the accountant and/or bookkeeper for the Debtors during the Relevant Communications Time Period, including but not limited to Powell/ADPOWELL, Inc./H&R Block.

17.      Any documents exchanged with any person or entity purporting to be the accountant and/or bookkeeper for the Debtors during the Relevant Communications Time Period.

**EXHIBIT "A"**

## DEFINITIONS
## (First Bank & Trust)

1.     <u>AgTexas</u>.    The term "AgTexas" shall mean AgTexas Farm Credit Services, a federally chartered agricultural credit association formed under the Farm Credit Act of 1933, and AgTexas PCA, a federally chartered production credit association formed under the Farm Credit Act of 1933.

2.     <u>Thorlakson</u>.    The term "Thorlakson" shall mean Thorlakson Diamond T Feeders, LP, a limited partnership organized under the laws of, and doing business in, the State of Texas.

3.     <u>2B Farms</u>.     The term 2B Farms shall mean 2B Farms, a Texas General Partnership, and its partners, officers, members, agents, or employees .

4.     <u>2B Accounts</u>.  The term "2B Accounts" shall mean any and all savings, checking, money market, demand, deposit, loan or other financial accounts owned by or in the name of 2B during the Relevant Time Period.

5.     <u>First Bank</u>.     The term "First Bank" shall mean First Bank & Trust, a division of HTFL Bank, 4500 College Ave., Snyder, TX 79549, and all officers, directors, members, employees, attorneys, agents, and representatives of the foregoing.

6.     <u>Robinsons</u>.     The term "Robinsons" shall refer to Terry Robinson ("Bo Robinson"), Rebecca Robinson, and Angela Robinson.  Terry and Rebecca Robinson are the managing partners of 2B Farms, and Angela Robinson is a co-debtor liable for debts owed by 2B Farms under cause number 23-20096-rlj12 in the Bankruptcy Court for the Northern District of Texas, Amarillo Division.

7.     <u>Debtors</u>. The term "Debtors" shall mean McClain Feed Yard, Inc., McClain Farms, Inc., and 7M Cattle Feeders, Inc., as named and described in Cause No.'s 23-20084, 23-20085, and 23-20086 filed in this Court.  This term also includes any of the Debtors' agents, employees,

11

directors, members, officers, or representatives.

8.    _McClain_. The term "McClain" shall mean Brian Keith McClain, aka Brian K. McClain, and also includes his agents, heirs, and representatives, including but not limited to his estate, his widow Chelsea McClain, his former spouse Crystal McClain, his daughter Meagan B. Goad, f/k/a Meagan B. Powell, and his daughter Kinsey Moreland.

9.    _Relevant Documents Time Period_. The term "Relevant Documents Time Period" shall mean the period from January 1, 2018, through the present.

10.    _Relevant Communications Time Period_. The term "Relevant Communications Time Period" shall mean the period from January 1, 2021, through the present.

11.    _Documents or Electronically Stored Information_. The term "documents or electronically stored information" shall be synonymous in meaning and equal in scope to the usage of those terms in Rule 34 of the Federal Rules of Civil Procedure, and shall include, _without limitation_, any written, printed, electronic, typed, recorded, filmed, punched, transcribed, taped, or other graphic matter of any kind or nature however stored, produced, or reproduced, whether sent or received or neither, including the original, drafts, copies, and non-identical copies bearing notations or marks not found on the original, and includes, but is not limited to, all records, memoranda, reports, financial statements, handwritten and other notes, transcripts, paper, indices, electronic mail messages, electronic text messages, voicemail, word processing documents, spreadsheets, databases, calendars, telephone logs, contact manager information, internet usage files (including activity logs, records of internet and web browser generated files, history files, caches, and cookies), network access information, blogs, tweets, instant messages, letters, envelopes, telegrams, cables, telex messages, telephone messages, summaries or records of telephone conversations, summaries or records of personal conversations or interviews, summaries or records of meetings or conferences, minutes or transcripts or notations of meetings or telephone conversations or other communications of any type,

tabulations, studies, analyses, evaluations, projections, work papers, statements, summaries, opinions, journals, desk calendars, appointment books, diaries, billing records, invoices, or photographs, or other data compilations in any medium from which information can be obtained, including, but not limited to microfilms, magnetic tapes, electronic storage, computers, laptops, hard drives, thumb drives, personal digital assistants, smart phones, and archives, and includes any other documents discoverable under Federal Rule of Civil Procedure 26, which are in your custody, possession, and/or control or to which you otherwise have access. The term "document" *also includes* file and folder tabs associated with each of the aforementioned originals, copies, drafts, or versions. The term "document" also includes "communication" as defined herein.

12.     Communications. The term "communications" shall be construed as broadly as possible, and shall include, but not be limited, to all e-mails, text messages, correspondence, memoranda, or other written documentation in any form.

13.     Concerning. The term "concerning" means referring to, referencing, reflecting, in connection with, describing, evidencing, indicating, supporting or constituting, digesting, embodying, establishing, tending to establish, tending not to establish, comprising, commenting on, responding to, disagreeing with, showing, describing, analyzing, representing, constituting or including, in whole or in part.

14.     All/Each. The terms "all" and "each" shall be construed as all and each.

15.     And/Or. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

16.     Number. The use of the singular form of any word includes the plural and vice versa.

17.     Tense. The use of the present tense includes the present and past tense, and the use

of the past tense includes the past and present tense.

18.     <u>You/Your</u>. The terms "You" and/or "Your" means to person or entity to whom this subpoena is directed, and its agents or employees thereof with knowledge of the matters contained in the documents requested herein.

## **<u>INSTRUCTIONS</u>**

A.      To the extent any Document Request in this subpoena seeks documents also covered by any other Document Request(s) to You, it is for purposes of completeness only, and should in no way be construed as limiting or otherwise narrowing any of the other Requests herein.

B.      These Requests shall extend to all documents in the possession, custody, and/or control of You, as well as all documents in the possession, custody, or control of persons or entities under Your control or which You could reasonably gain access.

C.      In the event that more than one copy of a documents exists, You should produce the original and each non-identical copy of each document or other tangible thing requested herein

that is in Your possession, custody or control, or the control of Your agents, attorneys, accountants, or employees, or to which You could reasonably gain access.

D.      You should comply with the requirements of the Federal Rules of Civil Procedure regarding claims of privilege or protection of trial preparation materials.

E.      These Requests shall be deemed continuing in nature to the fullest extent permitted by law. If further responsive information comes into the possession or attention of You or Your attorneys at any time during the course of this proceeding, such information must be provided as required by the Federal Rules of Civil Procedure.

## **REQUESTED DOCUMENTS**

18.    All lending agreements for the 2B Farms accounts from the opening or inception of the accounts at First Bank through the present that were utilized as lines of credit to purchase cattle from the Debtors and/or Brian McClain, and/or Megan McClain.

19.    Any agreements made between 2B Farms and the Debtors for the purchase, sale, and feeding of cattle provided to First Bank by either 2B Farms or the Debtors.

20.    All communications between First Bank and the Debtors' officers, directors, members, employees, attorneys, agents, and representatives through the Relevant Communications Time Period.

21.    All documents evidencing the lending officer(s) for 2B Farms during the Relevant Documents Time Period.  This request includes any assistants to the lending officers.

22.    All inspection reports created by any officer, agent, or employee of First Bank concerning the presence of cattle at any of the Debtors' feed yards.

23.    Any head counts, inventory sheets, or lot identification documents related to the cattle 2B held with the Debtors during the Relevant Documents Time Period.

24.    Copies of all monthly borrowing base reports ("BBR") submitted by 2B Farms to First Bank during the Relevant Documents Time Period that related to cattle that were located in any of the Debtors' feed yards.

25.    All communications between First Bank and the following individuals during the Relevant Communications Time Period:

- Brian McClain;

- Meagan B. Goad, aka Megan B. Powell, aka Megan McClain

- Jed Goad;

- Angela Powell;

- Glenn Karlberg

- Rabo AgriFinance, LLC

- Cactus Feeders (and its agents, officers, or employees)

- Friona Industries (and its agents, officers, or employees)

- MAP Enterprises, LLC (and its agents, officers, or employees)

- Wildforest Cattle Company, LLC (and its agents, officers, or employees)

- Community Financial Services Bank  (and its agents, officers, or employees)

- Oklahoma City Stockyards (a/k/a Oklahoma National Stockyards Company) (and its agents, officers, or employees)

26.     All records and documents evidencing all transaction activities in or related to the Debtors' banking accounts at any financial institution during the Relevant Documents Time Period, including all wire transfer records by First Bank into any external financial institution.

27.     Copies of all checks written by the Debtors' and/or Brian McClain and/or Megan McClain to 2B Farms during the Relevant Documents Time Period.

28.     Copies of all checks written by the Debtors and/or Brian McClain and/or Megan McClain to First Bank during the Relevant Documents Time Period.

29.     All transaction records related to any cattle purchased by 2B Farms from the Debtors during the Relevant Documents Time Period.

30.     All transaction records related to cattle that were purportedly owned by 2B Farms that the Debtors sold on behalf of 2B Farms during the Relevant Documents Time Period.

31.     All records related to any cattle retrieved by 2B Farms in April 2023 from the Debtors' feed yards during the Relevant Documents Time Period.

32.     All documents First Bank received from the Texas & Southwestern Cattle Raisers

Association (including the Special Rangers) from January 1, 2023, through the present.

33.     All documents related to cattle purchased by the Debtors and/or Brian McClain and/or Megan McClain from the Oklahoma City Stockyards (OKCS) that were used to fulfil the purchases of cattle made by 2B Farms during the Relevant Documents Time Period.

34.     All documents related to cattle purchased by the Debtors and/or Brian McClain and/or Megan McClain from any source/supplier that were used to fulfil the purchases of cattle made by 2B Farms during the Relevant Documents Time Period.

35.     Any inter-creditor agreements between First Bank and the Debtors.

36.     Any inter-creditor agreements between First Bank and Rabo AgriFinance, LLC.

37.     Any inter-creditor agreements between First Bank and any other financial institution related to the cattle purportedly owned by 2B Farms that were located at any of the Debtors' feed yards.

38.     All communications with the Texas Special Rangers or persons employed by the Texas & Southwestern Cattle Raisers' Association which are related to the liquidation of any cattle in the ownership and/or possession of the Debtors in the months of April 2023 and May 2023.

39.     All communications with any auction service or other party which purchased cattle owned or possessed by the Debtors during the months of March 2023, April 2023, and May 2023.

40.     All "Know Your Customer" or "KYC" information collected during the life of the 2B Farms' history with First Bank for as long as 2B Farms was engaged in any business with the Debtors.

41.     All prefunding collateral inspection reports (including drafts) for 2B Farms for any period they did business with the Debtors and/ or Brian McClain.

42.     All post-funding collateral inspection reports (including drafts, Annual, Final and

SAM) for 2B Farms for any period they did business with the Debtors and/ or Brian McClain.

**EXHIBIT "A"**

## **DEFINITIONS**
## **(Community Financial Services Bank)**

1.     AgTexas.   The term "AgTexas" shall mean AgTexas Farm Credit Services, a federally chartered agricultural credit association formed under the Farm Credit Act of 1933, and AgTexas PCA, a federally chartered production credit association formed under the Farm Credit Act of 1933.

2.     Thorlakson.   The term "Thorlakson" shall mean Thorlakson Diamond T Feeders, LP, a limited partnership organized under the laws of, and doing business in, the State of Texas.

3.     McClain.  The term "McClain" shall mean Brian Keith McClain, aka Brian K. McClain, and also includes his agents, heirs and representatives, including but not limited to his estate, his widow Chelsea McClain, his former spouse Crystal McClain, his daughter Meagan B. Goad, f/k/a Meagan B. Powell, and his daughter Kinsey Moreland.

4.     Debtors. The term "Debtors" shall mean McClain Feed Yard, Inc., McClain Farms, Inc., and 7M Cattle Feeders, Inc., as named and described in Cause No.'s 23-20084, 23-20085, and 23-20086 filed in this Court.  This term also includes any of the Debtors' agents, employees, directors, members, officers, or representatives.

5.     First Bank.    The term "First Bank" shall mean First Bank & Trust, a division of HTFL Bank, 4500 College Ave., Snyder, TX 79549, and all officers, directors, members, employees, attorneys, agents, and representatives of the foregoing.

6.     Wildforest. The term "Wildforest" shall mean Wildforest Cattle Company, LLC, a Kentucky limited liability company, and all officers, directors, members, employees, attorneys, agents, and representatives of the foregoing, including but not limited to Samuel S. Brown.

7.     MAP.     The term "MAP" shall mean MAP Enterprises, Inc., a Kentucky

corporation,  and all officers, directors, members, employees, attorneys, agents, and representatives of the foregoing, including but not limited to Michael Gourley.

8.      <u>CFSB</u>. The term "CFSB" shall mean Community Financial Services Bank, and all officers, directors, members, employees, attorneys, agents, and representatives of the foregoing.

9.      <u>Powell</u>.    The term "Powell" shall mean Angela Powell, individually, and in her capacity as the agent of ADPOWELL, Inc., and in her capacity with H&R Block in Benton, KY.

10.     <u>H&R Block.</u>    The term "H&R Block" shall mean the location at 88B Commerce Blvd., Benton, KY 42025, as well as all officers, directors, members, employees, attorney, agents, and representatives of the foregoing.

11.     <u>ADPOWELL, Inc.</u>    The term "ADPOWELL, Inc." shall mean ADPOWELL, Inc., a Kentucky for-profit corporation, and all officers, directors, members, employees, attorneys, agents, and representatives of the foregoing.

12.     <u>MB</u>. The term "MB" shall mean Mechanics Bank, a state or federally charted bank with its executive offices at 1111 Civic Drive, Walnut Creek, California 94596.

13.     <u>McClain Accounts</u>. The term "McClain Accounts" shall mean any and all savings, checking, money market, demand, deposit, loan or other financial accounts owned by or in the name of any of the McClain Parties and held or located at either CFSB or MB during the Relevant Time Period, including but not limited to those accounts at MB identified as Account Nos. XXX3070 in the name of MF, XXX0423 in the name of 7M, and XXX0197 in the name of MFY.

14.     <u>Wildforest Accounts</u>. The term "Wildforest Accounts" shall mean any and all savings, checking, money market, demand, deposit, loan or other financial accounts owned by or in the name of Wildforest during the Relevant Time Period, including but not limited to any accounts held or located at CFSB.

15.     <u>MAP Accounts</u>.     The term "MAP Accounts" shall mean any and  all savings,

checking, money market, demand, deposit, loan or other financial accounts owned by or in the name

of MAP during the Relevant Time Period, including but not limited to any accounts held or located

at CFSB.

16.     <u>2B Accounts</u>.  The term "2B Accounts" shall mean any and all savings, checking,

money market, demand, deposit, loan or other financial accounts owned by or in the name of 2B

during the Relevant Time Period.

17.     <u>Relevant Documents Time Period</u>. The term "Relevant Documents Time Period"

shall mean the period from January 1, 2018, through the present.

18.     <u>Relevant Communications Time Period</u>.  The term "Relevant Communications

Time Period" shall mean the period from January 1, 2021, through the present.

19.     <u>Documents or Electronically  Stored  Information</u>.     The term "documents  or

electronically stored information" shall be synonymous in meaning and equal in scope to the usage

of those terms in Rule 34 of the Federal Rules of Civil Procedure, and shall include, *without

limitation*, any written, printed, electronic, typed, recorded, filmed, punched, transcribed, taped, or

other graphic matter of any kind or nature however stored, produced, or reproduced, whether sent

or received or neither, including the original, drafts, copies, and non-identical copies bearing

notations or marks not found on the original, and includes, but is not limited to, all records,

memoranda, reports, financial statements, handwritten and other notes, transcripts, paper, indices,

electronic  mail  messages,  electronic  text  messages,  voicemail,  word  processing  documents,

spreadsheets, databases, calendars, telephone logs, contact manager information, internet usage files

(including activity logs, records of internet and web browser generated files, history files, caches,

and  cookies),  network  access  information,  blogs,  tweets,  instant  messages,  letters,  envelopes,

telegrams,  cables,  telex  messages,  telephone  messages,  summaries  or  records  of  telephone

conversations, summaries or records of personal conversations or interviews, summaries or records

of meetings or conferences, minutes or transcripts or notations of meetings or telephone

conversations or other communications of any type, tabulations, studies, analyses, evaluations,

projections, work papers, statements, summaries, opinions, journals, desk calendars, appointment

books, diaries, billing records, invoices, or photographs, or other data compilations in any medium

from which information can be obtained, including, but not limited to microfilms, magnetic tapes,

electronic storage, computers, laptops, hard drives, thumb drives, personal digital assistants, smart

phones, and archives, and includes any other documents discoverable under Federal Rule of Civil

Procedure 26, which are in your custody, possession, and/or control or to which you otherwise have

access. The term "document" *also includes* file and folder tabs associated with each of the

aforementioned originals, copies, drafts, or versions. The term "document" also includes

"communications" as defined herein.

      20.    <u>Communications</u>. The term "communications" shall be construed as broadly as

possible, and shall include, but not be limited, to all e-mails, text messages, correspondence,

memoranda, or other written documentation in any form.

      21.    <u>Concerning</u>. The term "concerning" means referring to, referencing, reflecting, in

connection with, describing, evidencing, indicating, supporting or constituting, digesting,

embodying, establishing, tending to establish, tending not to establish, comprising, commenting

on, responding to, disagreeing with, showing, describing, analyzing, representing, constituting or

including, in whole or in part.

      22.    <u>All/Each</u>. The terms "all" and "each" shall be construed as all and each.

      23.    <u>And/Or</u>. The connectives "and" and "or" shall be construed either disjunctively

or conjunctively as necessary to bring within the scope of the discovery request all responses that

might otherwise be construed to be outside of its scope.

24.     <u>Number</u>. The use of the singular form of any word includes the plural and vice versa.

25.     <u>Tense</u>. The use of the present tense includes the present and past tense, and the use of the past tense includes the past and present tense.

26.     <u>You/Your</u>.     The terms "You" and/or "Your" means to person or entity to whom this subpoena is directed, and its agents or employees thereof with knowledge of the matters contained in the documents requested herein.

## **<u>INSTRUCTIONS</u>**

A.     To the extent any Document Request in this subpoena seeks documents also covered by any other Document Request(s) to You, it is for purposes of completeness only, and should in no way be construed as limiting or otherwise narrowing any of the other Requests herein.

B.     These Requests shall extend to all documents in the possession, custody, and/or control of You, as well as all documents in the possession, custody, or control of persons or entities under Your control or which You could reasonably gain access.

C.     In the event that more than one copy of a documents exists, You should produce the original and each non-identical copy of each document or other tangible thing requested herein that is in Your possession, custody or control, or the control of Your agents, attorneys, accountants, or employees, or to which You could reasonably gain access.

D.     You should comply with the requirements of the Federal Rules of Civil Procedure regarding claims of privilege or protection of trial preparation materials.

E.     These Requests shall be deemed continuing in nature to the fullest extent permitted by law. If further responsive information comes into the possession or attention of You or Your attorneys at any time during the course of this proceeding, such information must be provided as

required by the Federal Rules of Civil Procedure.

## REQUESTED DOCUMENTS

1.      Documents related to any lending officers who worked with MAP and/or Wildforest (including the identities of the lending officers).

2.      Documents evidencing any credit facility provided by CFSB to MAP and/or Wildforest.

3.      Any documents exchanged between CFSB and First Bank that relate to the Debtors and 2B Farms' business arrangements.

4.      All communications exchanged between CFSB and First Bank related to the Debtors operations during the Relevant Communications Time Period.

5.      All communications exchanged between CFSB and First Bank related to 2B Farms' operations, as it pertains to their business arrangements with the Debtors during the Relevant Communications Time Period.

6.      All monthly borrowing base reports submitted by either MAP or Wildforest to CFSB during the Relevant Documents Time Period.

7.      All communications with any individual or entity who purported to provide accounting services for the Debtors, and/or Brian McClain, and/or Megan McClain, including but not limited to Powell/ADPOWELL, Inc./ H&R Block.

**EXHIBIT "A"**

## DEFINITIONS
### (Angela Powell/ H&R Block/ ADPOWELL, Inc.)

1.      <u>AgTexas</u>.   The term "AgTexas" shall mean AgTexas Farm Credit Services, a federally chartered agricultural credit association formed under the Farm Credit Act of 1933, and AgTexas PCA, a federally chartered production credit association formed under the Farm Credit Act of 1933.

2.      <u>Thorlakson</u>.   The term "Thorlakson" shall mean Thorlakson Diamond T Feeders, LP, a limited partnership organized under the laws of, and doing business in, the State of Texas.

3.      <u>2B Farms</u>.      The term 2B Farms shall mean 2B Farms, a Texas General Partnership, and its partners, officers, members, agents, or employees.

4.      <u>2B Accounts</u>.  The term "2B Accounts" shall mean any and all savings, checking, money market, demand, deposit, loan or other financial accounts owned by or in the name of 2B during the Relevant Time Period.

5.      <u>OKCS</u>.  The term OKCS shall mean the Oklahoma National Stockyards Company (also referred to as the Oklahoma City Stockyards) and its agents, employees, directors, members, officers, or representatives, located at 107 Livestock Exchange Building, Oklahoma City, Oklahoma 73108.

6.      <u>First Bank</u>.      The term "First Bank" shall mean First Bank & Trust, a division of HTFL Bank, 4500 College Ave., Snyder, TX 79549, and all officers, directors, members, employees, attorneys, agents, and representatives of the foregoing.

7.      <u>CFSB</u>. The term "CFSB" shall mean Community Financial Services Bank, and all officers, directors, members, employees, attorneys, agents, and representatives of the foregoing.

27

8.      <u>Powell.</u>        The term "Powell" shall mean Angela Powell, individually, and in her

capacity as the agent of ADPOWELL, Inc., and in her capacity with H&R Block in Benton, KY.

9.      <u>H&R Block.</u>    The term "H&R Block" shall mean the location at 88B Commerce

Blvd., Benton, KY 42025, as well as all officers, directors, members, employees, attorney, agents,

and representatives of the foregoing.

10.     <u>ADPOWELL, Inc.</u>    The term "ADPOWELL, Inc." shall mean ADPOWELL, Inc.,

a Kentucky for-profit corporation, and all officers, directors, members, employees, attorneys, agents,

and representatives of the foregoing.

11.     <u>MB</u>. The term "MB" shall mean Mechanics Bank, a state or federally charted

bank with its executive offices at 1111 Civic Drive, Walnut Creek, California 94596.

12.     <u>Debtors</u>. The term "Debtors" shall mean McClain Feed Yard, Inc., McClain Farms,

Inc., and 7M Cattle Feeders, Inc., as named and described in Cause No.'s 23-20084, 23-20085, and

23-20086 filed in this Court.   This term also includes any of the Debtors' agents, employees,

directors, members, officers, or representatives.

13.     <u>McClain</u>. The term "McClain" shall mean Brian Keith McClain, aka Brian K.

McClain, and also includes his agents, heirs, and representatives, including but not limited to his

estate, his widow Chelsea McClain, his former spouse Crystal McClain, his daughter Meagan B.

Goad, f/k/a Meagan B. Powell, and his daughter Kinsey Moreland.

14.     <u>Relevant Documents Time Period</u>. The term "Relevant Documents Time Period"

shall mean the period from January 1, 2018, through the present.

15.     <u>Relevant Communications Time Period</u>. The term "Relevant Communications Time

Period" shall mean the period from January 1, 2021, through the present.

16.     <u>Documents or Electronically Stored Information</u>. The term "documents or

electronically stored information" shall be synonymous in meaning and equal in scope to the usage

of those terms in Rule 34 of the Federal Rules of Civil Procedure, and shall include, *without limitation*, any written, printed, electronic, typed, recorded, filmed, punched, transcribed, taped, or other graphic matter of any kind or nature however stored, produced, or reproduced, whether sent or received or neither, including the original, drafts, copies, and non-identical copies bearing notations or marks not found on the original, and includes, but is not limited to, all records, memoranda, reports, financial statements, handwritten and other notes, transcripts, paper, indices, electronic mail messages, electronic text messages, voicemail, word processing documents, spreadsheets, databases, calendars, telephone logs, contact manager information, internet usage files (including activity logs, records of internet and web browser generated files, history files, caches, and cookies), network access information, blogs, tweets, instant messages, letters, envelopes, telegrams, cables, telex messages, telephone messages, summaries or records of telephone conversations, summaries or records of personal conversations or interviews, summaries or records of meetings or conferences, minutes or transcripts or notations of meetings or telephone conversations or other communications of any type, tabulations, studies, analyses, evaluations, projections, work papers, statements, summaries, opinions, journals, desk calendars, appointment books, diaries, billing records, invoices, or photographs, or other data compilations in any medium from which information can be obtained, including, but not limited to microfilms, magnetic tapes, electronic storage, computers, laptops, hard drives, thumb drives, personal digital assistants, smart phones, and archives, and includes any other documents discoverable under Federal Rule of Civil Procedure 26, which are in your custody, possession, and/or control or to which you otherwise have access. The term "document" *also includes* file and folder tabs associated with each of the aforementioned originals, copies, drafts, or versions. The term "document" also includes "communication" as defined herein.

17.    <u>Communications</u>. The term "communications" shall be construed as broadly as possible, and shall include, but not be limited, to all e-mails, text messages, correspondence,

29

memoranda, or other written documentation in any form.

18.    <u>Concerning</u>. The term "concerning" means referring to, referencing, reflecting, in connection with, describing, evidencing, indicating, supporting or constituting, digesting, embodying, establishing, tending to establish, tending not to establish, comprising, commenting on, responding to, disagreeing with, showing, describing, analyzing, representing, constituting or including, in whole or in part.

19.    <u>All/Each</u>. The terms "all" and "each" shall be construed as all and each.

20.    <u>And/Or</u>. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

21.    <u>Number</u>. The use of the singular form of any word includes the plural and vice versa.

22.    <u>Tense</u>. The use of the present tense includes the present and past tense, and the use of the past tense includes the past and present tense.

23.    <u>You/Your</u>. The terms "You" and/or "Your" means to person or entity to whom this subpoena is directed, and its agents or employees thereof with knowledge of the matters contained in the documents requested herein.

# **INSTRUCTIONS**

A.    To the extent any Document Request in this subpoena seeks documents also covered by any other Document Request(s) to You, it is for purposes of completeness only, and should in no way be construed as limiting or otherwise narrowing any of the other Requests herein.

B.    These Requests shall extend to all documents in the possession, custody, and/or control of You, as well as all documents in the possession, custody, or control of persons or entities under Your control or which You could reasonably gain access.

C.    In the event that more than one copy of a documents exists, You should produce the original and each non-identical copy of each document or other tangible thing requested herein

that is in Your possession, custody or control, or the control of Your agents, attorneys, accountants, or employees, or to which You could reasonably gain access.

D.    You should comply with the requirements of the Federal Rules of Civil Procedure regarding claims of privilege or protection of trial preparation materials.

E.    These Requests shall be deemed continuing in nature to the fullest extent permitted by law. If further responsive information comes into the possession or attention of You or Your attorneys at any time during the course of this proceeding, such information must be provided as required by the Federal Rules of Civil Procedure.

## REQUESTED DOCUMENTS

1.      All journals created by Powell, and/or ADPOWELL, Inc., and/or H&R Block that relate to the Debtors' operations during the Relevant Documents Time Period.

2.      All tax returns prepared by Powell, and/or ADPOWELL, Inc., and/or H&R Block for the Debtors during the Relevant Documents Time Period.

3.      All tax returns prepared by Powell, and/or ADPOWELL, Inc., and/or H&R Block for Brian McClain during the Relevant Documents Time Period.

4.      A All tax returns prepared by Powell, and/or ADPOWELL, Inc., and/or H&R Block for Megan McClain during the Relevant Documents Time Period.

5.      All inventory sheets, head counts, or lot identifiers for any cattle at any of the Debtors' feed yards during the Relevant Documents Time Period.

6.      All documents relating to any accounts receivable **owed to** the Debtors by any individual or entity provided to Powell, and/or ADPOWELL, Inc., and/or H&R Block during the Relevant Documents Time Period.

7.      All documents relating to any accounts receivable **owed by** the Debtors to any individual or entity provided to Powell, and/or ADPOWELL, Inc., and/or H&R Block during the Relevant Documents Time Period.

8.      All bank records (including but not limited to wire transfer records, statements, and account information) provided by **the Debtors** to Powell, and/or ADPOWELL, Inc., and/or H&R Block from any financial institution during the Relevant Documents Time Period.

9.      All bank records (including but not limited to wire transfer records, statements, and account information) provided by **Brian McClain** to Powell, and/or ADPOWELL, Inc., and/or H&R Block from any financial institution during the Relevant Documents Time Period.

10.     All bank records (including but not limited to wire transfer records, statements, and account information) provided by **Megan McClain** to Powell, and/or ADPOWELL, Inc., and/or H&R Block from any financial institution during the Relevant Documents Time Period

11.     All bank records (including but not limited to wire transfer records, statements, and account information) provided by **MAP** to Powell, and/or ADPOWELL, Inc., and/or H&R Block from any financial institution during the Relevant Documents Time Period.

12.     All bank records (including but not limited to wire transfer records, statements, and account information) provided by **Wildforest** to Powell, and/or ADPOWELL, Inc., and/or H&R Block from any financial institution during the Relevant Documents Time Period.

13.     All ledgers prepared by Powell, and/or ADPOWELL, Inc., and/or H&R Block that relate to the Debtors' operations during the Relevant Documents Time Period (whether electronic or physical).

14.     Any bookkeeping records that relate to the Debtors' operations stored by Powell, and/or ADPOWELL, Inc., and/or H&R Block during the Relevant Documents Time Period (whether electronic or physical).

15.     Any accounting records that relate to the Debtors' operations stored by Powell, and/or ADPOWELL, Inc., and/or H&R Block during the Relevant Documents Time Period (whether electronic or physical).

16.     All communications, including text messages, e-mails, and/or other written communications, between Powell, ADPOWELL, Inc., and H&R Block, and the following individuals and/or entities during the Relevant Communications Time Period which relate to the Debtors' operations and/or Brian McClain:

- Brian McClain;

- Meagan B. Goad, aka Megan B. Powell, aka Megan McClain

- Glenn Karlberg

- Rabo AgriFinance, LLC (and its agents, officers, or employees)

- Cactus Feeders (and its agents, officers, or employees)

- Friona Industries (and its agents, officers, or employees)

- 2B Farms (and its agents, officers, or employees)

- MAP Enterprises, LLC (and its agents, officers, or employees)

- Wildforest Cattle Company, LLC (and its agents, officers, or employees)

- Oklahoma City Stockyards (a/k/a Oklahoma National Stockyards Company) (and its agents, officers, or employees)

- Community Financial Services Bank (and its agents, officers, or employees)

17.     All records of payments made by the Debtors to Powell, and/or ADPOWELL Inc., and/or H&R Block during the Relevant Documents Time Period.

18.     All records of payments made by Brian McClain to Powell, and/or ADPOWELL Inc., and/or H&R Block during the Relevant Documents Time Period.

19.     All records of payments made by Megan McClain to Powell, and/or ADPOWELL Inc., and/or H&R Block during the Relevant Documents Time Period.

20.     Any communications between any individual or entity who Powell and/or ADPOWELL, Inc., and/or H&R Block communicated with regarding **accounting** services for the Debtors' business operations (including but not limited to firms such as Carr Riggs and Ampleo) during the Relevant Communications Time Period.

21.     Any communications between any individual or entity who Powell and/or ADPOWELL, Inc., and/or H&R Block communicated with regarding **bookkeeping** services for the Debtors' business operations (including but not limited to firms such as Carr Riggs and Ampleo) during the Relevant Communications Time Period.