Hudson M. Jobe, Esq.
QUILLING, SELANDER, LOWNDS,
WINSLETT & MOSER, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 – Telephone
(214) 871-2111 – Facsimile

SPECIAL COUNSEL FOR KENT RIES, TRUSTEE

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| MCCLAIN FEED YARD, INC., et al.,[1] | § | CASE NO. 23-20084-RLJ-7 |
| | § | |
| Debtors. | § | (Jointly Administered) |

**TRUSTEE'S RESPONSE IN OPPOSITION TO
MOTION TO TRANSFER JOINTLY ADMINSTERED CASES (DOCKET NO. 82)**

**TO THE HONORABLE ROBERT L. JONES, BANKRUPTCY JUDGE:**

COMES NOW, Kent Ries, Trustee ("Trustee") of the referenced Chapter 7 bankruptcy estates, and files this Response in Opposition to the *Motion to Transfer Jointly Administered Cases* [Docket No. 82] (the "Motion to Transfer"), and would respectfully show the Court as follows:

**BACKGROUND**

1. As discussed in prior pleadings, based upon the Trustee's investigation thus far, the Debtors' prebankruptcy operations appear to have constituted a massive fraud involving two cattle operations in Texas (Hereford and Friona) and one in Benton, Kentucky. The asserted unpaid claims exceed $175M so far, and the Debtors' records show several hundred million

---

[1] The Debtors in these chapter 7 cases are: McClain Feed Yard, Inc. (Case No. 23-20084-RLJ), McClain Farms, Inc. (Case No. 23-20085-RLJ), and 7M Cattle Feeders, Inc. (Case No. 23-20086-RLJ).

**TRUSTEE'S RESPONSE IN OPPOSITION TO MOTION TO TRANSFER JOINTLY ADMINSTERED CASES (DOCKET NO. 82) - PAGE 1**

dollars flowing through the Debtors in the 3 years before bankruptcy. These cases will involve over 100 parties and their attorneys based upon the service list thus far.

2.  The Debtors' owner, Mr. McClain, committed suicide on April 18, 2023, less than 2 weeks after the appointment of a Chief Restructuring Officer that was investigating the Debtors' financial affairs. The Trustee's investigation thus far, including with the assistance of the pre-bankruptcy CRO, has been considerable and will be ongoing for some time due to, among other things, the Debtors' poor and unreliable records.

3.  The gist of the apparent fraud is that Mr. McClain appears to have raised money from many "investors" located in the Texas Panhanlde and Oklahoma, and to have taken other parties' cattle, sold them out of trust, and failed to remit proceeds from a specific cattle sale to that specific cattle owner. The majority of the cattle shenanigans occurred with respect to cattle at the 2 Texas locations, which is why they had been the focus of the Debtors' CRO before bankruptcy. To be clear, the Trustee expects this case to involve claims by dozens of local "investors" and/or cattle owners, as well as possible claims against such parties to the extent they have liability for their participation in a fraudulent enterprise.

4.  These Chapter 7 bankruptcy cases were filed by the Debtors' appointed CRO on April 28, 2023. He was the only authorized agent to undertake the filings on behalf of the Debtors. Thereafter, the Trustee hired outside counsel (Dkt. No. 69), forensic accountants (Dkt. No. 68), and an IT consultant (Dkt. No. 70), and has begun a lengthy and protracted investigation into the Debtors' prior financial affairs. These efforts have involved initial and ongoing discussions with the <u>many</u> local parties and their counsel that claim to have been defrauded by Mr. McClain and the Debtors. Attached as **Exhibit A** is a compilation of the

names and addresses of the parties that have been listed or appeared so far in these bankruptcy cases. Of particular note:

a. The number of parties exceeds 150;

b. The number of parties either located in Texas or appearing through Texas counsel (in yellow) are the clear majority;

c. The number of parties located in Kentucky without Texas counsel presently (in blue) is a minority and roughly the same as the parties located neither in Texas or Kentucky (in green); and

d. The clear overwhelming number of counsel in this case are located in Texas.

## MOVANTS LACK STANDING

5.     Federal Rule of Bankruptcy Procedure 1014 allows a "party in interest" to seek a timely transfer of venue. Tellingly, movants do not allege an allowable claim or other direct pecuniary interest in the Debtors. Also tellingly is the late timing of the movants' motion. As discussed herein, movants do not have a good faith argument that they have quickly sought to transfer venue of this case due to their concerns as a creditor or other such party in seeking the efficient administration of a bankruptcy case with the highest possible recovery for all parties. Rather, it is clear that they do not have standing and have filed this request only after being made aware that they may be involved in future litigation.

6.     The Debtors' primary secured lender, Rabo AgriFinance LLC ("Rabo"), served many parties with 2004 discovery requests pursuant to this Court's Order entered on May 11, 2023 (Dkt No. 22). This included the 2 daughters of Mr. McClain (Meagan B. Goad and Kinsey Moreland), who are believed to have significantly participated in the Debtors' operations as alleged in Rabo's Motion. *See* Dkt No. 17, page 3. They were served with discovery in Benton, Kentucky on May 21 and 22, 2023. *See* Dkt Nos. 37 and 38. Responses to those discovery requests were due June 5, 2023. *See id*.

7. Ms. Goad and Ms. Moreland did not timely respond. Rather, on July 18, 2023, they filed a Motion to Transfer Venue (Dkt No. 82) of these cases to their home court of Kentucky and self-calendared a setting of these motions on the Court's August 16, 2023, Amarillo docket without conferring with the Trustee on the setting. Their motive for the transfer is clear: they know they are potential litigation targets. By way of example, the Trustee's initial investigation shows that Ms. Goad received over $2,400,000.00 in the year before bankruptcy.

## THE COURT SHOULD MAINTAIN THE CURRENT VENUE

8. Movants admit that one of the Debtors is a Texas corporation and that this Texas Court is a proper venue under 28 U.S.C. 1408 for that case and the affiliate cases. The current motion does not: (i) contest that this Court is a proper venue, and (ii) seek a determination of improper venue. Instead, movants seek to transfer venue from one proper venue to another permissible venue in the interests of justice or for the convenience of parties.

9. It is black-letter law that a debtor's choice of forum is entitled to deference if the case is filed in a proper venue. *In re Caesars Ent. Operating Co., Inc*., No. 15-10047 (KG), 2015 WL 495259, at *7 (Bankr. D. Del. Feb. 2, 2015)(citing *In re Enron,* 274 B.R. 327, 342 (Bankr. S.D.N.Y. 2002)("A debtor's choice of forum is entitled to great weight if venue is proper."); *In re Patriot Coal,* 482 B.R. 718, 739 (Bankr. S.D.N.Y. 2012) (same); *In re Rehoboth Hospitality, LP,* No. 11–12798, 2011 WL 5024267, at *3 (Bankr. D. Del. Oct. 19, 2011) ("Generally, there is a presumption in favor of maintaining the debtor's choice of forum."). A recent Texas bankruptcy court characterizes this as "great weight and deference." *In re ERG Intermediate Holdings, LLC*, No. 15-31858-HDH11, 2015 WL 6521607, at *4 (Bankr. N.D. Tex. Oct. 27, 2015). Both the Debtors and the Debtors' largest secured lender (Rabo) support

maintaining the current venue,[2] and the movants have failed to allege a sufficient basis to rebut the deference that should be afforded to the Debtors and the CRO tasked with implementing the Debtors' liquidation strategy.

10.     First, the Motion ignores that two of the three Debtors had their principal places of business and operations in Texas and principal assets in Texas, and that the Debtor based in Kentucky owned minimal assets compared to the two Texas based Debtors.

11.     Second, the Motion to Transfer Venue misstates the significant number of parties in interest and/or counsel in this case that are located in the Texas Panhandle or southern Oklahoma. *See* **Exhibit A.** The Motion's certificate of conference is tellingly and purposefully vague.[3] Movants conferred with at least 65 parties and their counsel, the vast majority of which were located in Texas. Based upon the email traffic it appears that all parties and counsel opposed transfer, and none were in favor.[4]

12.     Third, movants misstate the efforts of the Trustee to date. As of the filing of the Motion, the Trustee had already spent significant time investigating various aspects of the Debtors' financial affairs and discussing issues with various parties. Further, the Trustee's professionals have been actively working with the Trustee in collecting all the estates records and assets. Destroying multiple months of the Trustees' efforts is the opposite of efficient administration of the estates.

---

[2] The Trustee incorporates the Responses filed by the Debtors (Dkt. No. 88) and Rabo (Dkt No. 90) as if the same were set forth fully herein.

[3] "In accordance with L.B.R. 7007-1, Counsel for the Interested Parties contacted the respective counsels associated with this case and the Motion is opposed."

[4] The Court should require Movants to file a reasonably descriptive Certificate of Conference that requires movants to identify each of the parties and counsel contacted, as well as their response.

**TRUSTEE'S RESPONSE IN OPPOSITION TO MOTION TO TRANSFER JOINTLY ADMINSTERED CASES (DOCKET NO. 82) - PAGE 5**

13. The Motion also attempts to misapply the venue analysis of Chapter 11 case to this Chapter 7 case. Here, as of the petition date the Debtors' were managed by a CRO that was spending the majority of his time at the Debtors' Texas locations. He is the individual that signed the petitions, prepared and signed the SOFA and Statemnet of Financial Affairs, and testified for the Debtors at the 341. The relevant decision maker now is the Trustee, who is located in Texas. The bulk of the Debtors' prebankruptcy cattle operations were located in Texas. Contrary to a Chapter 11, this case does not involve a group of executive and boards members, much less such individuals that are located in another venue such as Kentucky.

14. This Motion makes a litany of other incorrect legal and factual assertions:

| Allegation | Reality |
| --- | --- |
| There is no property of the estate in Texas or principal place of business in Texas. The locations of depository banks matters. | The two Texas based Debtors own their own land, a total of over 466 acres, and the Trustee is actively discussing selling the property with the Debtors' secured lender. The Kentucky based Debtor owns no land. Movants assertion that an order for relief from stay removes property out of the estate is legally incorrect. The vast majority of the assets, real estate and equipment, of these three cases were located in Texas at the two Debtors who operated their businesses primarily in Texas. The location of the Debtor's banks is largely irrelevant, as the Trustee has and will continue to obtain turnover of the bank accounts and records (largely electronic). |
| The majority of records are in Kentucky | The vast majority of the known records of the Debtors are already in the possession or control of the Trustee and provided to financial consultants and available in electronic form. This includes bank statements of the Debtors. |
| The majority of parties are located in Kentucky and relevant events occurred in Kentucky | A large portion of this case is likely to focus on the fraudulent cattle activities of the Debtors and other individuals in Texas and Oklahoma. Based upon the location of parties in Exhibit A, the Trustee anticipates obtaining |

| | |
|---|---|
| | discovery from and possibly court testimony from dozens of parties and counsel in the Texas Panhandle and southern Oklahoma. |
| Chapter 5 claims will be governed by Kentucky law. | Federal bankruptcy law will largely govern the Chapter 5 claims in these cases. For any state law avoidance actions, Texas law will govern the transactions that occurred involving investors or cattle owners in Texas. To the extent Kentucky law would govern any avoidance claims, movants have not shown any difference in UFTA in Kentucky versus Texas. |
| Mileage to the courthouse is a factor | There are far more Texas parties than Kentucky parties in the cases. Inconvenience is going to occur to some parties regardless of the outcome of the Motion. Further, this issue is irrelevant to the movants because the vast majority of routine matters in this case can involve Webex. Also, the convenience of the many Texas claimants (and their Texas counsel) that are alleged to have been defrauded by the Debtors outweighs the convenience of movants or Kentucky parties. *See, ex. In re Crosby National Golf Club, LLC*, 534 B.R. 888 (Bankr. N.D. Tex.) (J. Nelms) (choosing the venue most convenient to individual claimants rather than the location of, among other things, the corporate HQ and relevant records). |
| The Debtors are forum-shopping. The movants request here is timely. | The movants did not file this motion at the inception of the case, or before the 341, or even right after the 341. Or, prior to the Trustee employing various professionals, or prior to the many parties retaining and appearing through counsel in this case (*see* various Notices of Appearance). Rather, they clearly filed this in response to discovery requests aimed at uncovering facts that may result in litigation being filed against the movants. The movants are clearly forum shopping to get this case to their home court, and apparently their local trustee. |
| Transferring the case will result in a new, local trustee. | A trustee is not automatically removed and reassigned following a transfer of venue. *See* 11 U.S.C. § 324. |

**TRUSTEE'S RESPONSE IN OPPOSITION TO MOTION TO TRANSFER JOINTLY ADMINSTERED CASES (DOCKET NO. 82) - PAGE 7**

| | |
|---|---|
| This Court is not suited for a cattle case. | This Court has one of the highest levels of experience in farm and ag cases in the nation. |
| The parties are beyond the subpoena power of this Court. | This bankruptcy court has nationwide reach to compel discovery and exercise jurisdiction over parties in the main case and adversary proceedings. *See* FRCP 7004(f). This is clearly evidenced by the fact that movants have already been served with 2004 discovery from Rabo and requests for production from the Trustee in this matter through this Court. |
| Administering the estate will be more cost efficient in Kentucky. | As set forth in Exhibit A, dozens of parties that have already hired local counsel would be forced to hire new counsel or local counsel. Depending on whether the Trustee and his professionals were replaced or not, transferring venue would result in increased estate administration fees either through new professional ramp up time, or the costs of local counsel and possible travel to the Kentucky courthouse. |

WHEREFORE, PREMISES CONSIDERED, the Trustee respectfully requests that this Court deny the *Motion to Transfer Jointly Administered Cases* and award the Trustee such further relief, general or special, at law or in equity, to which the Trustee is rightfully entitled.

        Respectfully submitted,

        QUILLING, SELANDER, LOWNDS,
          WINSLETT & MOSER, P.C.
        2001 Bryan Street, Suite 1800
        Dallas, Texas 75201
        (214) 871-2100 (Telephone)
        (214) 871-2111 (Facsimile)

By: */s/ Hudson M. Jobe*
      Hudson M. Jobe
      State Bar No. 24041189

SPECIAL COUNSEL FOR KENT RIES, TRUSTEE

- AND-

        Kent Ries, Attorney at Law
        State Bar No. 1691450
        PO Box 3100
        Amarillo, Texas 79116
        (806) 242-7437
        (806) 242-7440-Fax

        COUNSEL FOR TRUSTEE

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on the 8th day of August 2023, a true and correct copy of the foregoing instrument was served upon the counsel and parties of record, electronically through the Bankruptcy Court's Electronic Case Filing System on those parties that have consented to such service and those parties listed in the Matrix, including on counsel for movants.

        */s/ Hudson M. Jobe*