David L. LeBas, SBN 12098600
Rachel Barr, SBN 24118185
dlebas@namanhowell.com
rbarr@namanhowell.com
NAMAN HOWELL SMITH & LEE PLLC
8310 N. Capital of Texas Highway, Ste. 490
Austin, Texas 78731
Ph. (512) 479-0300
Fax (512) 474-1901

*ATTORNEYS FOR AGTEXAS FARM CREDIT SERVICES,
AGTEXAS, PCA AND
THORLAKSON DIAMOND T FEEDERS, LP*

**IN THE UNITED STATES BANKRUPTCY
COURT FOR THE NORTHERN DISTRICT OF
TEXAS AMARILLO DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **MCCLAIN FEED YARD, INC., et al.,**[1] | § | **CASE NO. 23-20084-RLJ-7** |
| | § | |
| | § | |
| **Debtors** | § | **Jointly Administered**[1] |

### CATTLE CLAIMANTS' RESPONSE TO DEALER TRUST QUESTIONS FROM CHAPTER 7 TRUSTEE

TO THE HONORABLE ROBERT L. JONES, BANKRUPTCY JUDGE:

COMES NOW, AgTexas Farm Credit Services, AgTexas PCA ("AgTexas"), and Thorlakson Diamond T. Feeders, LP ("Thorlakson"), joined by the parties in interest to the above-entitled Chapter 7 cases listed in Exhibit A (all which will be collectively referred to below as the, "Cattle Claimants"), and files this Response to the Chapter 7 Trustee's Motion for Status Conference on Trustee's Notice of USDA Approved Trust Claims [Dkt. 128] and the Notice of UDSA Approved Trust Claims [Dkt. 126] and to Response to these pleadings filed by Rabo AgriFinance LLC ("Rabo") [Dkt. 134], and would respectfully show the Court as follows:

---

[1] The Debtors in these chapter 7 cases are: McClain Feed Yard, Inc. (Case No. 23-20084-RLJ), McClain Farms, Inc. (Case No. 23-20085-RLJ), and 7M Cattle Feeders, Inc. (Case No. 23-20086-RLJ)

1. The Cattle Claimants agree with the Chapter 7 Trustee and Rabo that a status conference would be helpful to identify issues for decision, but for the reasons set out below, do not agree that these issues are ripe for decision at this early stage and on this skimpy record.

2. The Cattle Claimants have identified the following issues raised by the Chapter 7 Trustee and by Rabo that need discussion and consideration:

    A. What role should Rabo play in the distribution of the estate?

    B. What is the scope of the Dealer Trust?

    C. Who should determine the status of qualified trust claimants, identify and collect trust assets, and distribute the assets?

    D. The rights of private litigants must be preserved.

### A. What role should Rabo play in the distribution of the estate?

3. The Chapter 7 Trustee suggests—and Rabo insists—that Rabo take control of virtually all of the funds currently in the possession of the Chapter 7 Trustee. The argument, cast by Rabo under the Fifth Amendment of the U.S. Constitution, is that the Dealer Trust Act does not apply to Rabo because its loan documents pre-date the Act. This suggestion should be rejected because it is contrary to established law, and because Rabo's actions do not deserve the exercise of this Court's discretion in its favor.

4. Rabo's argument that the Dealer Trust Act does not apply to it because its loan documents pre-date the passage of that statute side-steps a fundamental principle of trust law. A trustee holds only legal title to assets held in trust, and the trustee lacks the ability to convey to its lender an interest that can deprive the trust beneficiaries of their interests. *See e.g., Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 413 (5th Cir. 2003) (holding in the context of trusts created under the Perishable Agricultural Commodities Act, 7 U.S.C. §§ 499a-499s ("PACA") general principles of trust law govern PACA trusts; *see also S & H Packing & Sales Co. v. Tanimura Distrib.*, 883 F.3d 797, 804 (9th Cir. 2018) (noting the Fifth Circuit, among

other courts, have held that any purported security interest for a lender in PACA-trust assets is inferior to the trust beneficiaries' claims and rights) (internal citations omitted).  Lenders who improperly take trust assets pursuant to claims based on collateral agreements made by trustees must disgorge the trust assets to the beneficiaries, who own equitable, not mere legal, title to the assets. *See In re Fresh Approach, Inc.*, 51 B.R. 412, 424 (Bankr. N.D. Tex. 1985).

5. The theory is that the trust asset does not belong to the defaulting buyer to begin with and as a result it cannot be the subject of a transfer of an asset of the buyer. *See e.g., Nickey Gregory Co., LLC v. AgriCap, LLC*, 597 F.3d 591, 599 (4th Cir. 2010).  The Court in *Nickey Gregory* explained, "At its core, PACA imposes a trust on commodities sold to produce distributors or dealers . . . as well as the *proceeds of those commodities*, for the benefit of the commodities sellers.  The trustee of this trust is required to maintain trust assets—the commodities themselves, the products of the commodities, **or the proceeds** from the sale of the commodities or products—'in a manner that such assets are freely available to *satisfy outstanding obligations to sellers* of perishable agricultural commodities.'  And the commodities sellers' beneficial interest in the trust assets *while outstanding obligations exist* is superior to secured creditors of the trustee, even when the security interest of such creditors is explicitly imposed on the perishable commodities, proceeds, and accounts receivable.  *Id.* (citing *Endico Potatoes v. CIT Grp./Factoring*, 67 F.3d 1063, 1067 (2d Cir. 1995)) (internal quotation referencing 7 C.F.R. § 46.46(d)(1) (our own emphasis added).

6. This means that McClain did not have the ability to convey a superior interest in Dealer Trust proceeds to Rabo without regard to when he signed the loan documents.  If McClain did not own an asset, he could not convey an interest in that asset to his lender.  Therefore, the "takings" argument fails.

7. Second, Rabo should not be afforded the protection of this Court. Rabo has millions of reasons to plead the Fifth Amendment to avoid the Dealer Trust Act. Rabo suggests that it first exercised rights as a secured creditor of the Debtor's accounts at Mechanics' Bank on April 5, 2023 (Dkt. 134, page 10), but in fact it was on notice of the Debtor's fraud much earlier. The records available in this very early stage of this case show that on February 28, 2023, Rabo's collateral inspector conducted an inspection of the Debtor's facilities, found that McClain was short by thousands of cattle worth millions of dollars, and concluded "This is basically a worst-case scenario." (*See* Exhibit B, a copy of the report produced by Glen Karlberg). We note that Rabo produced the same document (*See* Ex. C) but it redacted this language as well as additional non-privileged statements it deemed harmful to its position. The same report noted in its original (unredacted) form that McClain "had [customers who] had cattle on feed … and [who] owned the cattle." In other words, Rabo's collateral base, built on the assumption that McClain owned all the cattle in his facilities, and that there were enough cattle to repay its loans, was a house of cards about to fall.

8. The presence of cattle and cattle proceeds owned by others in the possession of McClain was no surprise to Rabo. Effective January 27, 2021, Rabo, AgTexas, and McClain signed an Intercreditor Agreement (Exhibit D.) The Intercreditor Agreement contained several points of interest here:

1. ¶1(i) Disclaimer of partnership between McClain and Thorlakson

2. ¶1(ii) Agreement that McClain has no ownership of cattle subject to a Cattle Feeding Agreement between Thorlakson and McClain ("CFA");

3. ¶1(iii) Agreement that all cattle subject to a CFA are owned by Thorlakson;

4. ¶1(iv) Agreement that the AgTexas lien on Thorlakson cattle is subject to McClain's agister's lien;

5. ¶1(v) Agreement that Rabo and McClain disclaim a lien on cattle of Thorlakson, except for McClain's agister's lien;

6. ¶1(vi) Agreement that AgTexas disclaims a lien on cattle owned by McClain;

\*\*\*

7. ¶3 Agreement that the proceeds of cattle subject to CFA held by a party contrary to the Intercreditor Agreement are held in trust and must be delivered to the other party or parties.

9. Despite the findings of the Stockett memorandum, Rabo did not declare a default on February 28, 2023. Rabo's pleadings in its Complaint filed in Kentucky on April 25, 2023, show that by February 28, 2023, ample grounds for taking action on McClain's default existed. That Complaint alleges that McClain's "providing financial information that is materially incorrect or misleading, making false representations to Rabo (Section 1.121(b), "*False Representation*")" was an event of default, that his "failure to comply with various Borrower Covenants contained in the Loan Documents (Section 1.121(c), "*Covenant Violation*") was another default, and "the failure to comply with the terms and conditions of the Borrowing Base (Section 1.121(a)," was a default[2], it did not declare a default until April 6, 2023. (*Id*.) Between Rabo's discovery of the "worst case scenario" and the date it declared a default, numerous cattle creditors sent over $22,000,000.00 to McClain for the purchase of cattle which have not been accounted for. Further, based on the bank statements produced in discovery thus far by Mechanics Bank, counsel has calculated that over $250,000,000.00 went into the McClain account, which Rabo claims an interest as holder of a Control Agreement [Dkt. 134, pages 9-10], between February 28 and April 6, 2023.

10. Because discovery is still in the early stages, the Cattle Claimants have not yet developed evidence of how long Rabo knew that McClain was not meeting his obligations. But there is evidence that on or about October 15, 2022, it issued a waiver of McClain's obligations to

---

[2] (See Ex. E, page 7, Rabo's Complaint filed in Case 5:23-cv-00055-BJB in the United States District Court for the Western District of Kentucky (without voluminous exhibits)).

deliver borrowing base reports, even though, as noted above, this was an event of default. *See* Exhibit F. Even if that knowledge did not exist until February 28, 2023, Rabo allowed McClain to continue to operate to the detriment of the Cattle Claimants, and the Cattle Claimants respectfully assert the Court should not reward Rabo for what is, at a minimum, grossly inappropriate risk management.

### B. What is the scope of the Dealer Trust?

11. Both the Chapter 7 Trustee and Rabo take an overly narrow view of the Dealer Trust Act. The Trustee says any cattle proceeds, and possibly other assets in the Debtors' possession are subject to a "Dealer Trust" that arises under 7 U.S.C. § 217(b). [Dkt. 126, page 3, ¶ 8.] Similarly, Rabo asserts the only "property" of the Debtors that could be impressed with a dealer trust are the cattle that were acquired by the Debtors from and after March 30, 2023, because that was the earliest transaction noted in the USDA's claim analysis for approved claims, as well as inventory and receivables or proceeds of such cattle. [Dkt. 134, page 3.]

12. Case law under Packer Trust has described it as creating a "floating" trust, and presumably the same interpretation would be applied to the Dealer Trust. The nature of this type of trust was described by the Fifth Circuit Court of Appeals to construe the Packer Trust. *See generally In re Gotham Provision Co.*, 669 F.2d 1000 (5th Cir. 1982). Referring to legislative history, the Court said: "The 'floating trust' to which Rep. Thone refers here is not limited to assets which unpaid cash sellers can prove were derived from their products. To so construe the statute would effectively destroy the trust provision." *Id.* at 1011. Later cases have relied on *Gotham* to describe this trust this way. *See e.g., JSG Trading Corp. v. TrayWrap, Inc.*, 917 F.2d 75, 78 (2d Cir. 1990) (stating that § 196(b) has "consistently been interpreted as creating a nonsegregated floating trust.")

13. The "floating trust" concept means that a claimant is not required to trace sales proceeds from the sale of its livestock to a particular transaction. Instead, the trust attaches to all funds in an account and all livestock on hand, even if the livestock or proceeds held by the dealer when the trust notice is given were purchased by the dealer from sellers other than the claimant. In addition, as noted by the Court in *Gotham*, when trust funds are commingled with non-trust funds, the entire fund is impressed with the trust:

> According to general principles of trust law, noted by the bankruptcy court below, where trust funds are commingled with funds not subject to the trust, a lien on the entire commingled fund exists for the benefit of the beneficiaries of the trust, and those who receive a transfer of assets from the commingled fund with actual or constructive notice of the trust are subject to the lien. SCOTT, THE LAW OF TRUSTS, §§ 219.4, 519.1 (3d ed. 1967). In this case, the Bank had constructive notice of the trust because a federal statute created the trust.
>
> *In re Gotham*, 669 F.2d at 1011.

14. *Gotham* also held:

> We hold that where there is a commingling of livestock products such that it is impossible to determine whether a packer's inventories and accounts receivable have been derived from livestock purchased by the packer in a cash sale or credit sale, all of the packer's inventories, accounts receivable and proceeds attributable to livestock sales are subject to the § 206 trust to the extent of the amount owed to the unpaid cash seller. The only burden on the unpaid cash sellers in such a case is to prove the balance due to them and the existence of a floating pool of commingled inventories of livestock products, accounts receivables and proceeds derived from cash and credit livestock sales. Since the appellees have carried this burden in this case, they are entitled to recover against the Bank the amount awarded by the bankruptcy court.
>
> *Id*. at 1011-12.

15. Cases under Packers and Stockyards Act ("PSA") and PACA have allowed trust claimants to trace trust claims into assets purchased with trust assets even though the purchased assets would not otherwise qualify as a receivable or as livestock. Under PACA, the court in *Tom Lange Co.*, held that "Units [of real estate], which were indisputably acquired by Kornblum (the

Debtor) prior to its transactions with the Creditors…" could be trust assets. *Tom Lange Co. v. Kornblum & Co. (In re Kornblum & Co.)*, 81 F.3d 280, 284, 286 (2d Cir. N.Y. 1996) (the court eventually holding, "In any event, we agree with the reading of §499e(c)(2) that is provided by §46.46" and that "a single PACA trust exists for the benefit of all of the sellers to a Produce Debtor, and continues in existence until all of the outstanding beneficiaries have been paid in full.").

### i. It is too early to adjudicate Rabo's rights against the Cattle Claimants

16. Cases under PACA have held that a dealer's inventory and proceeds are not "property of the estate" of a bankrupt dealer and therefore not subject to preference claims of a trustee. *See In re Fresh Approach, Inc.*, 51 B.R. 412, 424 (Bankr. N.D. Tex. 1985). The theory is that the trust asset does not belong to the defaulting buyer to begin with and as a result it cannot be the subject of a transfer of an asset of the buyer. We believe this same theory will apply under the Dealer Trust Act. If funds in the Trustee's bank account are trust funds or proceeds from sales of McClain's property that constitute trust corpus, then the Trustee cannot use that money until all Trust Claimants are paid in full. *See Nickey Gregory Co., LLC v. AgriCap, LLC*, 597 F.3d 591, 599 (4th Cir. 2010) (The trustee of a PACA trust is required to maintain trust assets, the commodities, and the proceeds, in a manner to satisfy outstanding obligations, even when secured creditors have express interest in the same assets).

17. At this stage of the case, any conclusions about the scope of the assets that are subject of the trust, as Rabo asserts in its claim to the deposit accounts discussed in its Reply at pages 9-11, are premature.

18. According to the USDA Report, there are $2,687.968.77 in valid Dealer Trust Claims. This means that at least in some instances the USDA considers McClain to have been a dealer. A "dealer" is defined by the Packers and Stockyards Act in 7 U.S.C. § 201 as "any person,

not a market agency, engaged in the business of buying selling in commerce livestock, either on his own account or as the employee or agent of the vendor or purchaser."

19. However, the USDA Summary contains conclusions only. These are not binding on anyone, as evidenced by the Department's own policies. That is, the Department "tracks and schedules all bond and trust claims and assesses the validity of those claims. PSD does not make final determinations of the validity of claims; rather it provides the trustee (bond and statutory trust) with a schedule of the apparently valid claims."[3]

20. The Cattle Claimants urge that there should be an opportunity for the Court to determine whether McClain may have been a dealer under the sell-feed-resell agreements made by many of McClain's customers. If so, then proceeds from sales that were not paid to customers may be trust proceeds. Should this Court determine at this early stage that Rabo is entitled to the relief it seeks, then not only are the Cattle Claimants, and similarly situated claimants going to be left without getting the benefits they would be entitled to if a trust under the Dealer Trust Act is imposed and administered in a similar manner to its PSA and PACA predecessors.

### C. Who should determine the status of qualified trust claimants, identify and collect trust assets, and distribute the assets?

21. At this point no one knows what the new Dealer Trust language to administer the trust means, but the language does not say that the administrator can use trust money for satisfying Rabo's secured interests to the detriment of the Cattle Claimants rights, as Rabo claims is what should occur. Case law under the PASA and PACA trusts unanimously agree that trust money cannot be used for any purpose other than to pay qualified trust claims. *See generally Kingdom Fresh Produce, Inc. v. Stokes Law Office, L.L.P. (In re Delta Produce, L.P.)*, 817 F.3d 141 (5th Cir. 2016) (opinion withdrawn and substituted at 845 F.3d 609 (5th Cir. 2016) (an attorney who

---

[3] www.ams.usda.gov/sites/default/files/media/LivestockDealerStatutoryTrustSenttoCongress.pdf, at page 23

collected trust funds for a PACA trust could not be paid from those proceeds because he was not an "unpaid seller."); In re Harmon, 11 B.R. 162 (Bankr. N.D. Tex. 1980) (Brister, J., for this Court) (Packer trust proceeds cannot be used by middleman to pay his attorney after the attorney acquired knowledge of the trust impressed on the funds). This same rule should apply here, because the Chapter 7 Trustee is in law the representative of McClain, who should not be allowed to use trust assets to pay his own bills before paying trust creditors.

### D. The rights of private litigants must be preserved.

22. The Chapter 7 Trustee suggests that he be granted the exclusive right to pursue claims that would otherwise belong to creditors. [Dkt. 126, pages 11-12.] Chapter 7 Trustees' rights under the Bankruptcy Code are not unlimited. For example, claims that would be subject to an *in pari delicto* defense, such as claim for conspiracy and joint fraud that involve the Debtor, cannot be brought by the Chapter 7 Trustee because the defendant could claim that the Debtor participated in the fraud and cannot profit from it. Any order from the Court should not give away such rights.

23. The Cattle Claimants who are qualified trust claimants also have a private right of action for disgorgement of trust proceeds. *See In re Jack Rich, Inc.*, 176 B.R. 476, 482 (Bankr. CD. Ill (1994) (Bank may not offset trust proceeds); *Classic Harvest, LLC v. Freshworks, LLC*, 2017 WL 3971192 at p 12 (N.D. Ga. 2017) (Secured lender must disgorge proceeds of receivables and inventory subject to the PACA trust, citing to PSA.). In addition, the Cattle Claimants also have other private causes of action against alleged secured creditors and/or parties who participated and assisted in this massive fraudulent scheme. The Cattle Claimants are entitled to bring these claims independent of the Trustee. The Cattle Claimants do not consent to assigning these claims.

## PRAYER

WHEREFORE PREMISES CONSIDERED, the Cattle Claimants agree a status conference on the Dealer Trust Act issues is necessary, but respectfully request this Court deny the relief sought by the Chapter 7 Trustee and Rabo AgriFinance. The Cattle Claimants request this Court preserve the status quo of the assets, and prohibit distribution of any assets until such a time that either an adjudication of issues raised by this pleading can be determined, and until the rights of the private litigants can be determined. The Cattle Claimants further request any relief, at law or in equity, to which they are rightfully entitled.

DATED this 9th day of October, 2023.

Respectfully submitted,

NAMAN HOWELL SMITH & LEE PLLC
8310 N. Capital of Texas Highway, Ste. 490
Austin, Texas 78731
Ph. (512) 479-0300
Fax (512) 474-1901
dlebas@namanhowell.com

By: */s/ David L. LeBas*
David L. LeBas
SBN 12098600

-and-

John Massouh, SBN 24026866
John.massouh@sprouselaw.com
SPROUSE SHRADER SMITH PLLC
701 S. Taylor, Suite 500
P.O. Box 15008
Amarillo, Texas 79105-5008
(806) 468-3300; (806) 373-3454 FAX

*/s/ John Massouh*
John Massouh

*ATTORNEYS FOR DENNIS BUSS, et al., as listed in Exhibit A.*

## CERTIFICATE OF SERVICE

      I hereby certify that on October 9, 2023, the foregoing document was filed with the Clerk of the Court in each of the foregoing Chapter 7 cases using the CM/ECF system, which sent notice of electronic filing to all electronic filing users in each case.

      */s/ David L. LeBas*
      David L. LeBas