Amber S. Miller, SBN 24050320
amiller@cdmlaw.com
CRENSHAW, DUPREE & MILAM, L.L.P.
P.O. Box 1499
Lubbock, Texas 79408-1499
(806) 762-5281
(806) 762-3510 (fax)

*ATTORNEY FOR RIDGEFIELD CAPITAL GROUP, DREW PHILLIPS, CARRAWAY CATTLE, ROBERT ELLIS, BARRY PHILLIPS, BIG SEVEN CAPITAL PARTNERS, RICHARD CARRAWAY, AND SCOTT STEWART*

James D. Bradbury
State Bar No. 02814500
jim@bradburycounsel.com
Kyle K. Weldon
State Bar No. 24097192
kyle@bradburycounsel.com
**JAMES D. BRADBURY, PLLC**
201 Main Street, Suite 600
Fort Worth, Texas 76102
Telephone:    817-339-1105
Fax:          817-886-3495

*ATTORNEYS FOR PRIEST CATTLE COMPANY, LTD, PRIEST VICTORY INVESTMENT LLC, WILEY ROBY RUSSELL, JR., W. ROBBIE RUSSELL LIVING TRUST, AND EDDIE STEWART*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **MCCLAIN FEED YARD, INC., et al.,**[1] | § | **CASE NO. 23-20084-RLJ-7** |
| | § | |
| | § | |
| **Debtors** | § | **Jointly Administered**[1] |

---

[1] The Debtors in these chapter 7 cases are: McClain Feed Yard, Inc. (Case No. 23-20084- RLJ), McClain Farms, Inc. (Case No. 23-20085-RLJ), and 7M Cattle Feeders, Inc. (Case No. 23-20086-RLJ).

**RIDGEFIELD CAPITAL GROUP, ET AL, AND PRIEST CATTLE COMPANY, LTD. ET AL RESPONSE TO NOTICE OF APPROVED TRUST CLAIMS**

TO THE HONORABLE ROBERT L. JONES, BANKRUPTCY JUDGE:

COME NOW, Ridgefield Capital Group, et al[2], and Priest Cattle Company, Ltd. et al[3], Creditors and parties in interest to the above-entitled Chapter 7 cases (collectively, herein, "Cattlemen"), and file this Response to Notice of Approved Trust Claims [Docket No. 126] (the "Notice"), and would respectfully show the Court as follows:

### I. Background

McClain Feed Yard, Inc., McClain Farms, Inc. and/or 7M Cattle Feeders, Inc. ("Debtors" or "McClain") agreed to act as buying and selling agents for the Cattlemen, and further agreed to maintain cattle owned by the Cattlemen in McClain's "grow yards" for feeding and other care. When the cattle were of sufficient size, the Cattlemen would direct Debtors to act as agent, and sell Cattlemen's cattle to a feedlot or other purchaser. Debtors received the cash on behalf of Cattlemen, and as agent, Debtors were responsible for remitting the cash sale proceeds to the Cattlemen, net of Debtors' fees for grazing and other care while in the grow yards as well as Debtors' services. At all relevant times, the cattle were owned by the Cattlemen, not Debtors.

Beginning in March 2023, Debtors failed to pay the Cattlemen for cattle that were owned by the Cattlemen and sold by the Debtors. Since then, various legal disputes have arisen, and ultimately, Debtors filed for this action in bankruptcy. Prior to filing bankruptcy, Debtors incurred debt to various creditors, including but not limited to a large debt to Rabo AgriFinance LLC for an operating loan ("Creditors").

The Cattlemen timely filed notices of claims with the Debtors and the United States Department of Agriculture ("USDA") under a newly enacted statute giving livestock owners and

---

[2] See full list of contributing parties in "Exhibit A"
[3] See full list of contributing parties in "Exhibit A"

producers protection under a dealer's trust pursuant to 7 U.S.C. 217b (the "Dealer's Trust Statute" or "Dealer Trust Act").  While USDA has not yet made an appearance in these cases, its purported determination with respect to the Dealer Trust Act has been filed by the bankruptcy trustee ("Trustee") as the Notice.  The Cattlemen file these objections and response to the Notice.

## II.    Objections and Response to Notice

### A.    The Dealer Trust should be Administered by the USDA.

The Cattlemen object to the Notice filed by the Trustee on the grounds that the Trustee does not have the authority to make determinations with respect to Dealer's Trust Act claims. The Dealer Trust Act is clear – the Dealer Trust is to be administered and enforced by either (1) the dealer (Debtors here) or (2) the USDA, Packers & Stockyards Division. Because the Debtors have failed to enforce the Dealer Trust, any status conference with respect to the Dealer Trust Act claims must include USDA as a party.

The Cattlemen further object to the Notice in that it failed to provide analysis of the Dealer's Trust Statute. The Notice states that "USDA has analyzed the Trust Claims filed by the Trust Claimants and has provided the Trustee with its analysis of those filed claims." [Dkt. 126, ¶11]. However, no such "analysis" has been provided to the Court or the Cattlemen; rather, the Notice contains a spreadsheet with USDA's schedule of the submitted claim. By failing to provide this analysis, the Notice misrepresents the Cattlemen's rights to a Dealer's Trust which is superior in priority to the Creditor's claims in this bankruptcy.

As set out further herein, the Cattlemen maintain that the Dealer's Trust Statute applies to the Cattlemen, as unpaid cash sellers of livestock, and therefore the Cattleman are entitled to Dealer Trust protections *vis a vis* this bankruptcy proceeding and the other secured creditors.

B. **The Dealer Trust Act automatically established a Trust for the protection of the Cattlemen, and Debtor did not perform its Duties under the Act.**

Pursuant to the Dealer's Trust Act, the trust that is called for by the statute is in existence as soon as, and as long as, a dealer operates, i.e., "all livestock purchased by a dealer in cash sales and all inventories of, or receivables or proceeds from, such livestock <u>shall be held by such dealer in trust</u> for the benefit of all unpaid cash sellers of such livestock until full payment has been received by such unpaid cash sellers." 7 U.S.C. § 217b(a)(1). "Dealer" is defined as "any person, not a market agency, engaged in the business of buying or selling in commerce livestock, either on his own account or as the employee or agent of the vendor or purchaser." *Id*. at § 201(d). A "cash sale" is defined as "a sale in which the seller does not expressly extend credit to the buyer." *Id*. at § 217b(d). It is important to understand that the trust is automatically established. Then, in order to preserve the trust, in the event a cash seller is not paid, that cash seller must timely file a claim with the dealer and the USDA. *Id*. at § 217b(b).

Debtors are not a market agency, and they did in fact purchase and sell livestock as agents for the Cattlemen; hence, Debtors are dealers. *See* 7 U.S.C. § 201(d). All sales of cattle owned by the Cattlemen and sold by Debtors constituted cash sales, as the Cattlemen did not extend credit to the buyers for the purchase of their cattle. *See id*. at § 217b(d). The Debtors failed to pay the Cattlemen for cash sales of livestock. Debtor's failure triggered two things under the Act. First, in order to preserve the trust, the Cattlemen were required to timely file claims with the Debtors and USDA. *See* 7 U.S.C. § 217b(b)(1-2). The Cattlemen did so. Second, under 7 U.S.C. § 217b(f), because the Debtors failed to perform their duties under the Act – i.e., the Debtors failed to pay the cash sellers of livestock – then, USDA is required to act and enforce the Trust. *See id*. at § 217b(f). As explained above, USDA has merely processed the claims of multiple cash sellers of livestock and submitted a thumbs up or down chart to the Trustee, scant of any analysis to support its determination and completely void of any effort to act and enforce the Trust and identify Trust assets. Cattlemen file this Response to Trustee's Notice

of Approved Trust Claims and submit that any status conference with respect to this Notice must include USDA, as USDA's failure to act under the Dealer Trust Act must be addressed in the appropriate venue before resolution of claims in this bankruptcy can proceed.

C. **The USDA erred in disqualifying the Cattlemen's claims.**

According to the Notice, the USDA denied the Cattlemen's claims on the grounds that they were deemed "investors." The Dealer's Trust Statute, however, makes no reference at all to an investor. Moreover, it does not define what an 'unpaid cash seller' is, instead, the focus of the trust is on defining "a cash sale" as one "in which the seller does not expressly extend credit to the buyer." 7 U.S.C. 217b(d). Nothing in this definition, or anywhere else in the statute, excludes a seller on the basis of the seller's status as an "investor" or otherwise. Had Congress intended to exclude certain types of ownership of cattle that certainly vary throughout the industry, it could easily have done so, just as it excluded dealers with *de minimis* transactions. Instead, however, the two criteria for establishing a dealer's trust are (1) the debtor is a dealer; and (2) the dealer failed to pay a seller for a cash sale. *Id*. at § 217b (a). Because Debtors are dealers who failed to pay the Cattlemen for cash sales, the USDA had no legal basis for denying the Cattlemen's claims for dealership trusts. *See* 7 U.S.C. 217b. Again, Cattlemen file this Response to Trustee's Notice of Approved Trust Claims and submit that any status conference with respect to this Notice must include USDA, as USDA's failure to act under the Dealer Trust Act must be addressed in the appropriate venue before resolution of claims in this bankruptcy can proceed.

D. **The Dealer's Trust is a "floating" trust.**

Although no court has yet construed the Dealer's Trust Statute, legislative history is informative. The process of drafting the legislation began in 2017. In 2018, following various acts that were introduced, Congress requested a report from the USDA to provide background information on the effectiveness of other trusts under the Packers and Stockyards Act ("P&S Act") and the

feasibility of a Dealer's Trust Act. REPORT PURSUANT TO SEC. 12103 OF THE AGRICULTURE IMPROVEMENT ACT OF 2018: STUDY TO DETERMINE THE FEASIBILITY OF ESTABLISHING A LIVESTOCK DEALER STAT. TRUST, Packers & Stockyards Div., Agricultural Marketing Serv., U.S.D.A. ("USDA Report"). The USDA Report provides insight as to legislative intent. Among other things, the USDA stated the following regarding the other statutory trusts in the P&S Act:

> The statutory trusts do not require buyers to designate a trust account. The trust is a nonsegregated "**floating trust**" made up of all of a firm's commodity-related liquid assets, under which there may be a commingling of trust assets. Under this provision, there is no need to identify specific trust assets through each step of the accrual and disposal process. Since commingling is contemplated, all trust assets are subject to the claims of unpaid sellers and agents to the extent of the amount owed them. As each supplier gives ownership, possession, or control of agricultural commodities to a buyer, and preserves their trust rights, that supplier will automatically become a participant in the trust. Trust participants remain trust beneficiaries until they have been paid in full.

USDA Report at 14-15 (quoting *In re Gotham Provision Co., Inc.*, 669 F.2d 1000 (5th Cir. 1982)) (considering a packer's trust under the P&S Act) (emphasis added).

The USDA Report recognized the unique status of a dealer and the varied transactions a dealer may employ. *Id*. at 25. It further observed that dealers frequently commingle assets and fail to keep adequate records to trace cattle from purchase to sale. *Id*. at 26-27. Based on this Report that was prepared by USDA during the Dealer Trust Act creation, it is reasonable to infer that the Congressional intent was to treat the Dealer Trust in the same manner as the other statutory trusts and make it a "floating" trust -- including *commingled assets* due to the inherent difficulty in tracing livestock purchases and sales by a dealer. *See id.*; *see also In re Gotham*, 669 F.2d at 1011 (explaining that "[a]ccording to general principles of trust law, noted by the bankruptcy court below, where trust funds are commingled with funds not subject to the trust, a lien <u>on the entire commingled fund exists</u> for the benefit of the beneficiaries of the trust, and those who receive a transfer of assets from the commingled fund with actual or constructive notice of the trust are subject to the lien.")(emphasis added).

Because the Dealer Trust is a floating trust and includes commingled assets, the Dealer Trust

claims and the cash livestock seller's objections to the Notice must be resolved in the appropriate venue before resolution of claims in this bankruptcy can proceed.

E.  **The Dealer's Trust is effective for the Cattlemen's claims.**

The Dealer's Trust Statute went into effect on December 27, 2020. Thus, it was in effect at the time of the Cattlemen's unpaid cash sales at issue here. Any contention that the Dealer's Trust does not apply to the McClain situation ignores the fact that the cattle at issue *were owned by the Cattlemen* and not by McClain, and further ignores basic principles of trust law and the design of the Dealer Trust. *See Nickey Gregory Co., LLC v. AgriCap, LLC*, 597 F.3d 591, 599 (4th Cir. 2010) (explaining that, when faced with statutory trust questions under the Perishable Agricultural Commodities Act (similar to the Dealer Trust Act), "the commodities sellers' beneficial interest in the trust assets while outstanding obligations exist is superior to secured creditors of the trustee, even when the security interest of such creditors is explicitly imposed on the perishable commodities, proceeds, and accounts receivable." *Id. (emphasis added)*).

F.  **USDA Has Determined that Debtors were Dealers.**

It is important to note that USDA did approve a certain number of Dealer Trust claims. Hence, the USDA has determined that Debtor was in fact a dealer. And, with respect to the Cattlemen's claims, USDA acknowledged and agreed that the Cattlemen's claims were timely filed. Yet, the Notice that was filed abruptly approves certain claims and denies others – without any analysis whatsoever as to why those determinations were made. This hasty filing that is simply styled as a "Notice" and not a Final Determination of USDA, coupled with the Trustee's assertion that he should be granted the exclusive right to pursue all claims that might otherwise belong to creditors, denies the Cattlemen the due process protections of pursuing administrative claims they should otherwise have against USDA together with other private rights of action the Cattlemen have against the litany of other parties who orchestrated this fraud.

The Cattlemen submit that the Court should order USDA to appear and file a report explaining its Dealer Trust findings and provide whether such report is a final determination. The Cattlemen further object to any assignment of their private claims, and request that the Court deny the Trustee's request for such assignment.

**G.    Rabo's Lien Does Not Apply to Cattle Owned by the Cattlemen.**

Independent of the Dealer Trust, what makes up "Debtors' assets" is a critical question that will need to be answered as part of this proceeding. Based on the arrangements put in place by McClain, the Cattlemen, as well as all others similarly situated, not McClain, owned the cattle located in McClain's feedyards in Texas and Kentucky.  Moreover, the documents that created Rabo's lien are secured by certain collateral limited to "property now owned or hereafter acquired by [Debtors]…." [Dkt. 29-8, p. 2]. Therefore, any lien claimed by Rabo is ineffective to create any superior interest in these cattle as they were not owned by McClain. *See* 11 U.S.C. § 506(a)(1).

**H.    Adoption by Reference of Cattle Claimants' Response [Dkt. 135].**

Finally, the Cattlemen adopt by reference the arguments set forth by the Cattle Claimants in their Response to Dealer Trust Questions from Chapter 7 Trustee.

### III.    PRAYER

WHEREFORE, PREMISES CONSIDERED, Ridgefield Capital Group, Drew Phillips, Carraway Cattle, Robert Ellis, Barry Phillips, Big Seven Capital Partners, Richard Carraway, and Scott Stewart respectfully request that this Court deny the Trustee's requested relief, order USDA to appear and submit a more thorough analysis of its Dealer Trust findings, preserve the status quo of the assets and prohibit distribution of any assets until the rights of the Cattlemen and other similarly situated cash sellers of livestock can be determined. The Cattlemen further request any relief, at law or in equity, to which they are rightfully entitled.

DATED this 10th day of October, 2023.

Respectfully submitted,

/s/ *Amber S. Miller*
  Amber S. Miller
  State Bar No. 24050320
  CRENSHAW, DUPREE & MILAM, L.L.P.
  P.O. Box 1499
  Lubbock, Texas 79408-1499
  (806) 762-5281
  (806) 762-3510 (fax)
  *ATTORNEY FOR RIDGEFIELD CAPITAL GROUP, DREW PHILLIPS, CARRAWAY CATTLE, ROBERT ELLIS, BARRY PHILLIPS, BIG SEVEN CAPITAL PARTNERS, RICHARD CARRAWAY, AND SCOTTSTEWART*

-and-

/s/ *James D. Bradbury*
  James D. Bradbury
  State Bar No. 02814500
  jim@bradburycounsel.com
  Kyle K. Weldon
  State Bar No. 24097192
  kyle@bradburycounsel.com
  **JAMES D. BRADBURY, PLLC**
  201 Main Street, Suite 600
  Fort Worth, Texas 76102
  Telephone:   817-339-1105
  Fax:         817-886-3495

  *ATTORNEYS FOR PRIEST CATTLE COMPANY, LTD, PRIEST VICTORY INVESTMENT LLC, WILEY ROBY RUSSELL, JR., W. ROBBIE RUSSELL LIVING TRUST, AND EDDIE STEWART*

## CERTIFICATE OF SERVICE

I hereby certify that on October 10, 2023, the foregoing document was filed with the Clerk of the Court in each of the foregoing Chapter 7 cases using the CM/ECF system, which sent notice of electronic filing to all electronic filing users in each case.

*/s/ Amber S. Miller*
Amber S. Miller

# Exhibit A

| Party | Attorney of Record |
|---|---|
| <ul><li>Ridgefield Capital Group</li><li>Drew Phillips</li><li>Carraway Cattle</li><li>Robert Ellis</li><li>Barry Phillips</li><li>Big Seven Capital Partners</li><li>Richard Carraway</li><li>Scott Stewart</li></ul> | CRENSHAW, DUPREE & MILAM, L.L.P.<br>Amber S. Miller<br>State Bar No. 24050320<br>amiller@cdmlaw.com<br>P.O. Box 1499<br>Lubbock, Texas 79408-1499<br>(806) 762-5281<br>(806) 762-3510 (fax) |
| <ul><li>Priest Cattle Company, Ltd</li><li>Priest Victory Investment, LLC</li><li>Wiley Roby Russell, Jr.</li><li>W. Robbie Russel Living Trust</li><li>Eddie Stewart</li></ul> | JAMES D. BRADBURY, PLLC<br>Jim Bradbury<br>SBN: 02814500<br>jim@bradburycounsel.com<br>Kyle Weldon<br>SBN: 24097192<br>kyle@bradburycounsel.com<br>201 Main Street, Suite 600<br>Ft. Worth, TX 76102 |