UNDERWOOD LAW FIRM, P.C.
Thomas C. Riney, SBN: 16935100
W. Heath Hendricks, SBN: 240556451
500 South Taylor, Suite 1200, LB 233
Amarillo, Texas 79101
Telephone: (806) 376-5613
Facsimile: (806) 379-0316
Email: tom.riney@uwlaw.com
Email: heath.hendricks@uwlaw.com

    -and-

Michael R. Johnson (*Pro Hac Vice*)
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
Salt Lake City, Utah 84111
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
Email:  mjohnson@rqn.com

*Attorneys for Rabo AgriFinance LLC*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | |
|---|---|
| IN RE:<br><br>McCLAIN FEED YARD, INC., McCLAIN FARMS, INC. and 7M CATTLE FEEDERS, INC.,<br><br>    Debtors.[1] | **CASE NO. 23-20084-7-rlj**<br><br>**(Jointly Administered Cases)**<br><br>**Chapter 7** |

---

[1] The Debtors in these jointly administered Chapter cases are: (a) McClain Feed Yard, Inc. (Case No. 23-20084), (b) McClain Farms, Inc. (Case No. 23-20885) and 7M Cattle Feeders, Inc. (Case No. 23-20886).  All three cases are being jointly administered under the case number for McClain Feed Yard, Inc.

### RABO AGRIFINANCE LLC's RESPONSE AND OBJECTION TO THE TRUSTEE'S MOTION FOR APPROVAL OF COMPROMISE AND SETTLEMENT WITH MEAGAN B. GOAD, JED GOAD, KINSEY MORELAND, AND JOSH MORELAND

Rabo AgriFinance LLC ("**Rabo**"), through counsel, hereby files this Response and Objection to the *Trustee's Motion for Approval of Compromise and Settlement with Meagan B. Goad, Jed Goad, Kinsey Moreland, and Josh Moreland* (the "**Motion**") [Dkt. 147], dated November 14, 2023.

In support of its Response and Objection, Rabo states as follows:

### PRELIMINARY STATEMENT

The Trustee's Motion, which asks this Court to approve a Settlement Agreement and Mutual Release of Claims (the "**Agreement**") with Brian McClain's daughters Meagan B. Goad ("**M. Goad**") and Kinsey Moreland ("**K. Moreland**"), along with their husbands Jed Goad ("**J. Goad**") and Josh Moreland ("**J. Moreland**") (M. Goad, K. Moreland, J. Goad and J. Moreland, collectively, the "**McClain Insiders**") lacks both substance and support, and it should be denied. It is one thing for a bankruptcy trustee to seek approval of a settlement with non-insiders of known claims based on known facts and known damages. It is quite another thing, however, for a bankruptcy trustee to seek court approval of a settlement with insiders who clearly were participants in some fashion in the Debtors' fraudulent actions when the trustee does not know what the claims he is settling are, how much the claims are worth, what assets the insiders have, or what specific role the insiders played in a business that the trustee himself admits "constituted a massive fraud involving two cattle operations in Texas (Hereford and Friona) and one in Benton, Kentucky." [Motion, pg. 3]

Unfortunately, the Agreement before the Court proposes to do the latter. On the one hand, the Trustee wants to settle known avoidance claims against the McClain Insiders related to

2

the millions of dollars in life insurance that the McClain Insiders received, which life insurance was funded by the fraud the Debtors were engaged in, and the Trustee knows precisely how much life insurance the McClain Insiders received and the overall value of his claims related to those life insurance policies.  But on the other hand, the Trustee also asks this Court to approve a settlement with wrongdoers under which, *only after the Agreement has been approved by the Court and without further notice to creditors or review and oversight by the Court*, (a) the McClain Insiders will identify for the Trustee other additional claims that he and the estates may have against them based on other transactions they engaged in involving the Debtors, (b) the McClain Insiders will provide the Trustee information about their assets and liabilities, and (c) the McClain Insiders will then pay to the Trustee "50% of all funds and other property currently in the possession, custody or control of the Cooperating Parties that was acquired from all transfers from the Debtors or from any transferee of any of the Debtors, or constitutes the proceeds of all other potential claims and causes of action that the Trustee could assert against either of the Cooperating Parties." [Agreement, pg. 5, ¶5]

Simply put, Rabo objects to the Motion and the Agreement it relates to, and asks the Court to decline to approve the same, because the Trustee has not shown that the settlement he has negotiated is fair and reasonable and in the best interests of the estates and their numerous creditors.  Indeed, it would be entirely inappropriate for the Court to approve a settlement (particularly when that settlement is with persons who were actively involved in running and operating the Debtors and who, unlike Rabo and others, are not mere innocent victims of the Debtors' fraud) where the claims that are being settled are currently unknown and unidentified by the Trustee, and where neither the Court nor creditors can examine the Trustee's business

3

judgment or determine whether the Trustee has made "an informed and intelligent decision." *In re Age Ref. Inc.*, 801 F.3d 530, 541 (5th Cir. 2015).

## ARGUMENT

    I.    THE TRUSTEE HAS NOT ADEQUATELY SUPPORTED HIS DECISION TO SETTLE THE INSURANCE PROCEEDS CLAIMS FOR THE BARGAIN PRICE OF THIRTY-THREE CENTS ON THE DOLLAR.

The only claims in the Motion that are specifically identified by the Trustee are claims against M. Goad and K. Moreland related to the $3,388,668.00 that each of them received from life insurance policies insuring Brian McClain's life (the "**Life Insurance Claims**"). While not set forth in the Motion or the Agreement, Rabo has reviewed various bank records of the Debtors and it is clear that the premiums for those life insurance policies were paid for by the Debtors not by Brian McClain personally. The Trustee proposes to settle the Life Insurance Claims by having M. Goad and K. Moreland pay the estate 1/3 of the amount they received, or $1,188,260.44 each.

As it relates to the proposed settlement of the Life Insurance Claims, it is impossible to tell whether the settlement is fair and equitable because the Trustee has provided no facts or information for the Court or creditors to make that determination. On page 7 of the Motion, the Trustee correctly cites the *Foster Mortgage Corp.* factors that the bankruptcy court should consider in deciding whether to approve a settlement. Generally speaking, those factors are (a) the probability of success in the litigation, with due consideration for the uncertainty in fact and law, (b) the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and (c) all other factors bearing on the wisdom of the compromise. *See In re Foster Mortgage Corp.*, 68 F.3d 914, 917 (5th Cir. 1995). But while the Trustee references the settlement factors, he then fails to analyze them as they relate to the Life Insurance Claims,

4

and instead just indicates that the claims are "heavily contested" and that he wants to settle those claims for thirty-three cents on the dollar.

While the Trustee's decision to settle the Life Insurance Claims for a third of their value might satisfy the applicable approval standards, it is impossible to tell that based upon the scant information set forth in the Motion. Clearly, the Trustee knows that M. Goad and K. Moreland each received $3,388,668.00 in life insurance proceeds, and he also knows that the life insurance policies that paid those proceeds were funded by the Debtors using funds that were generated as part of a massive fraud. And he also knows that the McClain Insiders were knee deep participants in the fraud. In other words, the basic facts are not in dispute. The Debtors paid for life insurance policies on Brian McClain's life, those life insurance policies paid out a substantial death benefit to Brian McClain's daughters who were insiders, and the Debtors received no value, let alone reasonably equivalent value, in the transactions. So what is it about the Life Insurance Claims that make them "heavily contested" such that settling them for a third of their value is a prudent exercise of the Trustee's business judgment? Is the law uncertain or conflicting? Are there facts that are difficult to establish? At a minimum, the Trustee should be required to provide that explanation before the Court approves the Trustee's proposed settlement of the Life Insurance Claims for just a third of their face value.

    II.    THE COURT SHOULD NOT APPROVE, IN ADVANCE, THE SETTLEMENT OF UNKNOWN CLAIMS BASED UPON UNKNOWN FACTS FOR UNKNOWN AMOUNTS, PARTICULARLY WHEN THE CLAIMS ARE AGAINST INSIDERS WHO PARTICIPATED IN THE DEBTORS' FRAUDULENT CONDUCT.

The Motion at least provides some basic facts about the Life Insurance Claims and how the Trustee proposes to deal with those claims. The same cannot be said about the other "claims" that the Trustee wants authority to settle. With respect to those claims (the

"**Undisclosed Claims**"), page 6 of the Motion discloses that McClain Insiders "will pay to the Trustee 50% of the remaining funds on any other claims or cause of action that the Trustee could assert against the [McClain Insiders]." [Motion, pg. 6]

Paragraph 3 of the Agreement, in turn, discloses how those claims will be identified. Specifically, instead of the Trustee further investigating the McClain Insiders and deciding what claims he and the estates may have against them, *the McClain Insiders* (i.e., the very persons who assisted the Debtors in their fraudulent activities) are going to tell the Trustee what other claims he may bring through their disclosure of "all transfers from the Debtors or from any transferee of any of the Debtors to the Cooperating Parties or to a third-party for the benefit of either of the Cooperating Parties," "all subsequent transferees of the Cooperating Parties of each of the foregoing transfers," and "the facts and circumstances of all other potential claims and causes of action that the Trustee could assert against any of the Cooperating Parties." [Agreement, ¶3]

Finally, once the McClain Insiders have disclosed to the Trustee what claims he may have against them based upon the transfers they have received (and voluntarily tell him about), the Trustee would settle those claims for "50% of all funds and other property currently in the possession, custody or control of the Cooperating Parties that was acquired from all transfers from the Debtors or from any transferee of any of the Debtors, or constitutes the proceeds of all other potential claims and causes of action that the Trustee could assert against either of the Cooperating Parties." [Agreement, ¶5]

There are numerous problems with the Trustee's proposal on how to handle these Undisclosed Claims. Initially, the Trustee's recommended approach is contrary to how the process is supposed to work when the bankruptcy court approves a settlement under Bankruptcy

6

Rule 9019. As the Trustee admits in the Motion, while the bankruptcy court does not need to conduct a "mini-trial" before approving a settlement, the court "must apprise itself of the relevant facts and law so that it can make an informed and intelligent decision." *See In re Age Ref.*, 801 F.3d at 541; *see also Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424, 88 S. Ct. 1157, 1163-64, 20 L.Ed2d 1, 9-10 (1968) (in considering whether to approve a compromise, the bankruptcy court should "apprise [itself] of all facts necessary for an intelligent and objective opinion on the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties in collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise"). In fact, case law holds that when a bankruptcy court approves a settlement, "the bankruptcy judge must make findings and explain his reasoning sufficiently to show that he examined the property factors and made an informed and independent judgment." *In re American Reserve Corp.*, 841 F.2d 159, 162 (7th Cir. 1987). The failure to make such findings is reversible error. *Id.*

Given that the Trustee has not disclosed to the Court and creditors what the Undisclosed Claims are (because he does not yet know what the claims are), let alone his probability of success on those claims and all other relevant factors such as likelihood of success and cost to litigate, it is impossible for the Court to fulfill its duty to insure that the Trustee's proposed settlement of the Undisclosed Claims constitutes a fair and reasonable compromise. Simply put, the Court is incapable of approving a settlement of claims when it does not know any specifics, such as (a) what role the McClain Insiders played in the "massive fraud" the Debtors committed, (b) what the claims are, (c) what the awardable damages thereon would be, (c) how complicated

it will be to prosecute the claims, or (d) collectability and other issues associated with continued litigation. *See In re Spansion, Inc.*, 2009 WL 1531788, at *9 (Bankr. D. Del. June 2, 2009) (refusing to approve settlement because, "given the above reasons and the largely conclusory record with which I am presented to evaluate likelihood of success of the Actions, there is not enough evidence before me to conclude whether the proposed settlement is within the 'range of reasonableness'").

Furthermore, it is important to remember that this is not a proposed settlement with an innocent creditor who, for example, may have received an avoidable preference and is being asked to pay a portion of the preference back. Rather, this is a proposed settlement with the daughters of Brian McClain, who committed suicide when his fraud was revealed and who both were employed by and actively involved along with Brian McClain in the Debtors' fraudulent activities. "While insider status alone is not fatal to dealings between a debtor and an insider, the court must scrutinize these dealings more carefully." *In re HyLoft, Inc.*, 451 B.R. 104, 114 (Bankr. D. Nev. 2011) (rejecting settlement between trustee and insider of debtor); *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 493, 498 (Bankr. S.D.N.Y. 1991) (when determining whether a proposed settlement is fair and reasonable under Bankruptcy Rule 9019, a bankruptcy court must scrutinize insider agreements more closely than agreements between the debtor and non-insider parties). Yet instead of providing more transparency and disclosure to the Court about what claims he has against these insiders, the Trustee provides none at all. Rather, the McClain Insiders will make disclosures only to the Trustee, and he will then consummate his settlement with them, all without further oversight by the Court or the creditor body.

Finally, even assuming that the McClain Insiders make a full, complete and candid disclosure to the Trustee of "all transfers from the Debtors or from any transferee of any of the

Debtors to the Cooperating Parties or to a third-party for the benefit of either of the Cooperating Parties," "all subsequent transferees of the Cooperating Parties of each of the foregoing transfers," and "the facts and circumstances of all other potential claims and causes of action that the Trustee could assert against any of the Cooperating Parties," the terms of the proposed settlement regarding the Undisclosed Claims are extremely problematic.

For example, assuming the McClain Insiders make a full disclosure as required by the Agreement, the McClain Insiders get a release of all claims revealed by that full disclosure as long as they "pay the Trustee 50% of all funds and other property currently in the possession, custody, or control of the Cooperating Parties that was acquired from all transfers from the Debtors or from any transferee or any of the Debtors, or constitutes the proceeds of all other potential claims and causes of action that the Trustee could assert against either of the Cooperating Parties." [Agreement, ¶5]

While Rabo and its legal and accounting experts are still conducting their investigation of the facts and circumstances surrounding the Debtors' massive fraud, it is crystal clear based upon their review of the Debtors' bank records that the McClain Insiders were not only active participants in but also financial beneficiaries of that massive fraud. For example, attached hereto as Exhibits "A" through "D" are summary schedules showing the currently known *non-payroll* distributions that were made from the Debtor's bank accounts to M. Goad, J. Goad and his company JLE Trucking, K. Moreland and J. Moreland. Those schedules show that the Debtors, at a minimum, made non-payroll transfers to the McClain Insiders in the following amounts:

9

| Name of Transferee | Gross Transfer Amounts |
|---|---|
| M. Goad | $3,875,085.03 |
| J. Goad/JLE Trucking | $8,223,580.15 |
| K. Moreland | $ 122,848.80 |
| J. Moreland | $ 7,669.76 |

In short, based upon the records that Rabo and its professionals have reviewed so far, it appears that the Debtors transferred over *$12,000,000.00* to the McClain Insiders over the last several years, including over $11 million to M. Goad and her husband. No disclosures are provided to the Court or to the parties concerning these transfers, including what they were for or whether the Trustee has even questioned the McClain Insiders about them let alone reviewed any documentation to support these types of insider payments.[2] Yet the Trustee is not proposing to settle for 50% of this number, or approximately $6,000,000.00. Rather, his proposal is to settle for 50% of "all funds *currently in the possession, custody, or control* of the Cooperating Parties that were acquired from all transfers from the Debtors . . ." (Emphasis supplied). In other words, not half of what they received, but half of whatever they have left. That amount could be substantial, but it also could be negligible and perhaps even nothing. It is impossible on this record to tell.

Further, in addition to the foregoing transfers, the Trustee's proposed settlement appears to give the McClain Insiders a free pass on the tens of millions of dollars in damages that Rabo

---

[2] Rabo is informed that JLE is a trucking company. Presumably, JLE will claim that it hauled cattle for the Debtors. Of course, most of the "cattle" that the Debtors claimed they owned never in fact existed, and it is very unlikely that JLE Trucking actually hauled the number of cattle it would take to generate $8 million in hauling charges. In any event, both the Court and creditors are entitled to know what evidence supports the transfers made to the McClain Insiders *before* those claims are settled and compromised.

10

and the other creditors in this case suffered because of the Debtors' fraud. As set forth above, the Trustee's settlement of the Undisclosed Claims is tied to the amount of transfers that the McClain Insiders have remaining on hand and, in particular, 50% of whatever that amount may be. Yet in his Motion, the Trustee admits that (a) the Debtors were engaged in a "massive fraud," (b) asserted claims in the Debtors' bankruptcy cases "exceed $175M so far," and (c) the McClain Insiders had "considerable dealings on behalf of the Debtors . . ." While Rabo's investigation is currently ongoing, describing the McClain Parties as having had "considerable dealings" with the Debtor is putting it mildly. In fact, if the Debtors were engaged in a "massive fraud" (and Rabo agrees with the Trustee on that), then some or all of the McClain Insiders actively participated in that fraud and could very well be held liable on theories such as aiding and abetting fraud or engaging (with Brian McClain) in a conspiracy to defraud. Both M. Goad and K. Moreland, for example, were employed by the Debtors and M. Goad is the person who initiated most if not all of the financial transactions (i.e., transfers into and transfers out of) in the Debtors' bank accounts. All parties who aid and abet a fraud, and all parties who enter into a conspiracy to commit a fraud, are jointly and severally liable for all damages that result from the fraud. *See, e.g., Energy Maintenance Servs. Group I, LLC v. Sandt*, 401 S.W.3d 204, 220 (Tex. App., Houston (14th Dist.) 2012) ("A finding of civil conspiracy imposes joint and several liability on all conspirators for actual damages resulting from acts in furtherance of the conspiracy"). Thus, to the extent the McClain Insiders conspired with or aided and abetted the Debtors' fraud,[3] they are potentially on the hook for *all damages* that Rabo and other creditors suffered as a result of that fraud. Yet, because the settlement payments that the Trustee would

---

[3] The Debtors are entities and could only act through their agents and representatives. At all relevant times, M. Goad and K. Moreland were both agents of the Debtors.

11

receive for the Undisclosed Claims are tied only to transfers that the McClain Insiders directly received (and still have possession of), it appears that the Trustee is foregoing any claims against the McClain Insiders based on the damage they caused to the Debtors and their creditors.

Finally, while M. Goad and K. Moreland are the ones who received the life insurance proceeds, the Trustee's proposed settlement also includes their husbands, J. Goad and J. Moreland. There is no explanation in the Motion as to why J. Goad and J. Moreland are included as part of the settlement. Further, as noted above, J. Goad and his company, JLE Trucking, received over $8 million in transfers from the Debtors. Does the proposed settlement include potential claims against JLE Trucking, or just J. Goad personally. Finally, neither the Motion nor the Agreement explain what consideration the husbands are providing to the Trustee and the estate, or whether they also have beneficial documents, information or testimony that may be of assistance. That also needs to be explained and clarified.

### III. THE OTHER "BENEFITS" OF THE SETTLEMENT IDENTIFIED BY THE TRUSTEE ARE LARGELY ILLUSORY.

The Trustee points to other supposed "benefits" under the Agreement as reasons why the Court should approve it. While at first blush the items he highlights may appear beneficial, further consideration reveals that they are largely illusory. For example, on page 5 of the Motion the Trustee indicates that the McClain Insiders have "represented and warranted that they have documents and information that would aid the Trustee in his investigation of the Debtors' financial affairs, and pursuit of claims against third parties, specifically including cattle load information, claims information, investor information, use of cattle information, lot number information, and banking information . . ." (the "**Documents and Information**"). But any such Documents appear to belong to *the Debtor to begin with*, as those Documents concern the Debtors, their businesses, and their business records, and the McClain Insiders only possess the

12

Documents because they were the Debtors' agents. While Rabo admits that it would be beneficial for the Trustee to have all of the Debtor's records, that hardly justifies settling with the McClain Insiders to get them. The Trustee presumably can obtain all such records either through a subpoena or a turnover action. Further, even if the Documents and Information belong to or are otherwise within the sole knowledge of the McClain Insiders and not the Debtors, Bankruptcy Rule 2004 provides the Trustee with an easy tool to obtain information from third parties who have knowledge of a debtor's assets, liabilities and financial affairs.[4]

Another supposed benefit of approving the Agreement is that, if the Agreement is approved, M. Goad and K. Moreland will withdraw their pending motion to transfer venue. In Rabo's view, however, that motion had little if any chance to succeed anyways, and the only "benefit" from its withdrawal is that the Court and parties won't have to think about it any further. The Trustee, the Debtor, Rabo, and numerous other creditors have opposed that motion and have explained to the Court why it lacks merit. Further, because M. Goad and K. Moreland are not creditors of the Debtors but, instead, potential litigation targets (as the present Motion makes clear), they lack standing to even request a change of venue of the Debtors' cases. *See, e.g., In re Manshul Const. Corp.*, 223 B.R. 428, 429 (Bankr. S.D.N.Y. 1998) (explaining that "standing is limited to parties in interest" and that a "party in interest is a person whose **pecuniary interests** are directly affected by the bankruptcy proceedings.") (Emphasis supplied).

Yet another supposed benefit of the Agreement is that McClain Insiders will be required to generally cooperate with the Trustee as part of his investigation, including by "producing all non-privileged documents and other materials" in their possession, custody or control that the

---

[4] Rabo is unaware of any formal efforts by the Trustee to obtain information or documents from the McClain Insiders under Bankruptcy Rule 2004 or through formal discovery on their pending Motion to Transfer Venue.

Trustee might request, and appearing for and testifying in depositions and trial.[5]  As pointed out above, the Trustee has several tools at his disposal (like subpoenas issued under Rule 2004 or as part of adversary proceedings or contested matters) to obtain information, documents and testimony from witnesses who have or may have relevant information about the assets, liabilities and financial dealings of a bankruptcy debtor.  And in any event, the "Cooperation Obligation" of the McClain Insiders would essentially lose all value if, when put under oath to answer questions about the Debtors and their involvement with the Debtors (such as explaining how the Debtors' fraud worked and their role in it), the McClain Insiders invoke their Fifth Amendment rights against self-incrimination.  What assurances can the Trustee give to the Court and creditors about that possibility?  And, if the McClain Insiders do "take the Fifth" when put under oath to be examined, what impact will that have on the Trustee's proposed settlement?

Simply put, for the reasons explained above, in considering the Trustee's Motion and whether to approve the Agreement, the Court should give little if any weight to the supposed "non-financial benefits" of the Agreement.  There just is not that much benefit to be gained from those non-financial aspects of the Agreement.

      IV.    THE COURT SHOULD ENTER A SCHEDULING ORDER AND OTHERWISE PERMIT REASONABLE DISCOVERY ON THE MOTION AND THE TERMS THEREOF BEFORE HOLDING A FINAL HEARING.

Federal Rule of Bankruptcy Procedure 9014 provides that, with certain limited exceptions, the same discovery rules that are applicable in adversary proceedings also apply in contested matter.  *See* Fed. R. Bank. P. 9014.  The Motion is a contested matter, and Rabo

---

[5] Although the McClain Insiders will appear for depositions and trials, the Agreement requires the bankruptcy estate to pay their expenses incurred in doing so. [*See* Agreement, ¶2(b)]

desires to take relevant discovery concerning the Motion, including issuing written discovery to and taking the depositions of some or all of the McClain Insiders.

Rabo respectfully requests that the Court enter a Scheduling Order setting a reasonable schedule for discovery concerning the Motion, and a reasonable time frame for conducting a final evidentiary hearing on the Motion. Given the impending holiday season, Rabo suggests that the Court establish February 28, 2024 as the deadline for discovery concerning the Motion, with a final evidentiary hearing to be scheduled as shortly thereafter as the Court can accommodate.

      V.      IF THE COURT APPROVES THE AGREEMENT, THE COURT'S APPROVAL ORDER SHOULD MAKE CRYSTAL CLEAR THAT THE TRUSTEE HAS NOT COMPROMISED, AND CANNOT COMPROMISE, INDEPENDENT CLAIMS AGAINST THE MCCLAIN INSIDERS THAT ARE HELD BY RABO AND OTHERS.

Without a doubt the Trustee has Chapter 5 and potentially other claims that he, as representative of the bankruptcy estate, can assert against the McClain Insiders on behalf of the entire creditor body. That said, a "bankruptcy trustee has no standing generally to sue third parties on behalf of the estate's creditors, but may only assert claims held by the bankrupt corporation itself." *In re Bernard L. Madoff Inv. Sec. LLC*, 721 F.3d 54, 58 (2nd Cir. 2013). For example, if a creditor has suffered a direct injury because of a third party's fraud or other misconduct, the creditor and not the trustee has standing to pursue those claims even if the third party had some relationship to the debtor. *See, e.g., In re Enron Corp. Securities, Derivative & ERISA Litigation*, 511 F. Supp.2d 742 (S.D. Tex. 2005); *In re Plaza Mortg. and Finance Corp.*, 187 B.R. 37, 40 (Bankr. N.D. Ga. 1995) ("The case law is well-settled that a trustee in bankruptcy lacks standing to assert claims on behalf of investors/creditors of a debtor as opposed to claims belonging to the debtor."); *In re The 1031 Tax Group, LLC*, 397 B.R. 670, 679 (Bankr.

S.D.N.Y. 2008) ("Section 544, however, does not extend beyond avoidance actions, and does not permit the trustee to assert the personal, direct claims of creditors for the benefit of the estate or for a particular class of creditors.").

Here, in the event the Court decides to grant the Trustee's Motion notwithstanding the numerous concerns raised by Rabo herein, then Rabo requests language in the Court's approval order expressly clarifying that the Court's approval of the Motion and the Agreement will not release, compromise or otherwise impact or impair any direct, independent claims or causes of action that Rabo or any other creditors have or may have against any of the McClain Insiders, even if such direct and independent claims and causes of action arise out of the same facts, transactions and occurrences as the claims and causes of action that the Trustee is settling.[6]

## RELIEF REQUESTED

The Trustee suggests on page 8 of the Motion that the Court has two choices. First, the Court can grant the Motion and approve the Agreement in its entirety. Second, the Court can deny the Motion, and require the Trustee to "litigate the known claims concerning insurance, and other claims that the Trustee could uncover." In fact, the Trustee and the Court have a third choice. The Trustee could substantially narrow his settlement proposal to deal only with the Life Insurance Claims. The Court could then consider whether to authorize a settlement of those Life Insurance Claims based upon whatever terms the Trustee can get the McClain Insiders to agree to (which might be the same financial terms as contained in the current Agreement). Thereafter, once the Trustee has information about the "other claims the Trustee could uncover" and can

---

[6] By way of example only, suppose the McClain Insiders removed cattle from the Debtors' feed yards prior to the filing of the bankruptcy cases. The Trustee might have Chapter 5 avoidance claims against the McClain Insiders based on those actions. And Rabo, which had a perfected security interest on all of the Debtors' cattle, also would have independent claims against the McClain Insiders for conversion of its collateral.

16

make an informed decision about those claims, the Trustee can bring a subsequent motion asking the Court to approve a settlement of those currently Undisclosed Claims.

While Rabo does not fault the Trustee for trying to obtain unencumbered funds for the bankruptcy estate, the settlement he has proposed simply has it backwards. Instead of asking the Court, in advance, to approve undisclosed claims based upon undisclosed facts for undisclosed and unknown amounts, the Trustee should conduct a full investigation of the McClain Insiders, including their dealings with and behalf of the Debtors, as well as an examination of their assets and ability to pay any claims that the Trustee might assert against them. Once he has done that, he can then make an informed decision about what a fair and reasonable settlement would look like, and he can present his recommendation to the Court and creditor for their review.[7]

WHEREFORE, Rabo hereby requests that the Motion be denied, or at a minimum that its resolution be deferred until Rabo and other parties in interest have had an opportunity to engage in meaningful discovery concerning the Motion and the issues raised therein. Further, in the event the Court grants the Motion and approves any settlement with the McClain Parties, either in whole or in part, then Rabo requests that the Court make clear that its ruling does not impact or resolve any independent claims that Rabo and other creditors might hold, whether against the McClain Insiders or anyone else.

DATED this 5th day of December, 2023.

>UNDERWOOD LAW FIRM, P.C.
>Thomas C. Riney, SBN: 16935100
>W. Heath Hendricks, SBN: 240556451
>500 South Taylor, Suite 1200, LB 233

---

[7] The Trustee admits that one factor the Court must consider in deciding whether to approve a settlement are "the reasonable views of creditors." While Rabo is but one of numerous creditors in these cases, it holds claims against the Debtors and their estates exceeding $53.5 million. *See* Claim No. 56. Rabo does not support the settlement in its current form.

17

Amarillo, Texas 79101
Telephone: (806) 376-5613
Facsimile: (806) 379-0316
Email: tom.riney@uwlaw.com
Email: heath.hendricks@uwlaw.com

--and--

RAY QUINNEY & NEBEKER P.C.
Michael R. Johnson *(Pro Hac Vice)*
36 South State, Suite 1400
Salt Lake City, UT 84111
Telephone:  (801) 532-1500
Facsimile:  (801) 532-7543
Email:  mjohnson@rqn.com


*/s/ Michael R. Johnson*
Michael R. Johnson
*Attorneys for Rabo AgriFinance LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2023, the foregoing document was filed with the Clerk of the Court in the above-entitled Chapter 7 case using the CM/ECF system, which sent notice of electronic filing to all electronic filing users in the case.

        */s/ Michael R. Johnson*
        Michael R. Johnson