Case 23-20084-rlj7    Doc 192    Filed 03/12/24    Entered 03/12/24 10:43:24    Desc Main
Document      Page 1 of 18

UNDERWOOD LAW FIRM, P.C.
Thomas C. Riney, SBN: 16935100
W. Heath Hendricks, SBN: 240556451
500 South Taylor, Suite 1200, LB 233
Amarillo, Texas 79101
Telephone: (806) 376-5613
Facsimile: (806) 379-0316
Email: tom.riney@uwlaw.com
Email: heath.hendricks@uwlaw.com

    -and-

Michael R. Johnson (*Pro Hac Vice*)
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
Salt Lake City, Utah 84111
Telephone:  (801) 532-1500
Facsimile:  (801) 532-7543
Email:  mjohnson@rqn.com

*Attorneys for Creditor Rabo AgriFinance LLC*

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### AMARILLO DIVISION

| | |
|---|---|
| IN RE:<br><br>McCLAIN FEED YARD, INC., McCLAIN FARMS, INC. and 7M CATTLE FEEDERS, INC.,<br><br>    Debtors.[1] | **CASE NO. 23-20084-7-rlj**<br><br>**(Jointly Administered Cases)**<br><br>**Chapter 7** |

---

[1] The Debtors in these jointly administered Chapter cases are: (a) McClain Feed Yard, Inc. (Case No. 23-20084), (b) McClain Farms, Inc. (Case No. 23-20885) and 7M Cattle Feeders, Inc. (Case No. 23-20886). All three cases are being jointly administered under the case number for McClain Feed Yard, Inc.

**RABO'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY OR, ALTERNATIVELY, FOR ABANDONMENT OF CERTAIN CATTLE AND PROCEEDS OF CATTLE**

**NOTICE OF HEARING**

PLEASE SEE THE "NOTICE – RESPONSE DEADLINE" SET FORTH BELOW, REGARDING THE DEADLINE FOR FILING A RESPONSE TO THIS MOTION AND THE DATE OF A FINAL HEARING IF A TIMELY RESPONSE IS FILED. IF A TIMELY RESPONSE IS FILED, THE COURT WILL CONDUCT A HEARING VIA DOCKET CALL ON **APRIL 11, 2024, AT THE HOUR OF 1:30 P.M**.

PLEASE FURTHER NOTE THAT THE MOVANT MAY REQUEST A PRELIMINARY HEARING OR EMERGENCY HEARING PRIOR TO THE RESPONSE DEADLINE OR FINAL HEARING DATE, WHICH MAY BE THE SUBJECT OF A SEPARATE NOTICE.

TO THE HONORABLE UNITED STATES BANKRUPTCY COURT:

Rabo AgriFinance LLC ("**Rabo**"), a secured creditor of each of Debtors (collectively, the "**McClain Debtors**") in the above-entitled jointly administered cases, through counsel, hereby respectfully moves this Court pursuant to 11 U.S.C. § 362(d)(2), Federal Rule of Bankruptcy Procedure 4001, and Local Bankruptcy Rule 4001-1, for entry of an order terminating the automatic stay with respect to the "Removed Cattle and Proceeds," as that term is defined below. Additionally, pursuant to 11 U.S.C. § 554(b), Rabo moves for an Order compelling the Trustee to abandon the Removed Cattle and Proceeds, because the Removed Cattle and Proceeds are burdensome to the estate or are of inconsequential value and benefit to the estate.

For purposes of this Motion, the phrase "Removed Cattle and Proceeds" refers to any and/or all of the following:

2

A. Any cattle (or the proceeds thereof or claims related thereto) removed from the Debtor's Texas facilities by the following parties, with the assistance of the Texas and Southwest Cattle Raisers Association, on or about April 18 and 19, 2023:

| Removing Party | Total Head Removed | Alleged Value Per TSCRA Report | Location Removed From |
|---|---|---|---|
| Cory Don Priest | 523 | $523,000.00 | McClain Feed Yard – Friona |
| Bo Robinson | 552 | $552,000.00 | McClain Feed Yard— Friona |
| Scott Michael Skinner | 349 | $349,000.00 | McClain Feed Yard- Friona |
| Douglas Carroll Pritchett | 329 | $329,000.00 | |
| Ed Duferrena | 301 | $301,000.00 | McClain Feed Yard- Friona |
| Scarlet & Black Cattle, LLC | 213 | $213,000.00 | 7M-Hereford |
| Thorlakson Diamond T Feeder, LP | 288 | $288,000.00 | 7M-Hereford |
| Dwight Jesko | 92 | $92,000.00 | 7M-Hereford |
| Bo Robinson | 250 | $250,000.00 | 7M-Hereford |
| Tom Thorlakson | 13 | $13,000.00 | 7M-Friona |

B. Any McClain Debtors cattle located at Ed Dufferena's home/property as of the Petition Date, and any proceeds thereof or claims related thereto (believed to be one load);

C. Any McClain Debtors cattle located at Phil Rapp's home/property as of the Petition Date, and any proceeds thereof or claims related thereto (believed to be one load);

3

D. Any McClain Debtors cattle located at Collette Lesh's home/property as of the Petition Date, and any proceeds thereof or claims related thereto (believed to be one load);

E. Any McClain Debtors cattle located at Doug Pritchett's home/property as of the Petition Date, and any proceeds thereof or claims related thereto (believed to be one load);

F. Any McClain Debtors cattle located with Scott Keeling/Keeling Cattle Feeders as of the Petition Date, and any proceeds thereof or claims related thereto (believed to be 49 head of cattle);

G. Any McClain cattle mistakenly "checked in" by Thorlakson Diamond T Feeders, LP prior to the Petition Date, and any proceeds thereof or claims related thereto (believed to be 228 head of cattle);

H. Net proceeds of 49 head of cattle previously in the possession of Scott Keeling/Keeling Cattle Feeders and held in David LeBas' trust account (believed to be $36,810.71);

I. Proceeds, if any, of the 228 head of cattle "checked in" by Thorlakson Diamond T. Feeders, LP prior to the Petition Date, and any claims related to such proceeds; and

J. Any other McClain Debtors cattle that were removed by third parties without authorization prior to the Petition Date, if any, and the proceeds of such cattle.

## STATEMENT OF FACTS[2]

1. Each of the McClain Debtors filed voluntary petitions for relief under Chapter 7

---

[2] The Loan Documents referred to herein are attached to the Proof of Claim Rabo filed in this case, Claim No. 56, on September 13, 2023.

4

of Title 11 of the United States Code with the United States Bankruptcy Court for the Northern District of Texas (the "**Court**") on April 28, 2023 (the "**Petition Date**").

2. The McClain Debtors are being jointly administered under the lead case number of <u>In re McClain Feed Yard, Inc.</u>, Case No. 23-20884-rlj.

3. Brian McClain ("**McClain**") was the sole owner of each of the McClain Debtors. McClain passed away on April 18, 2023.

4. Rabo and the McClain Debtors are parties to certain loan and security documents evidencing loans made by Rabo to the McClain Debtors. Rabo agreed to make credit facilities available to the McClain Debtors in connection with their livestock, cattle feeder, and cattle production businesses in Texas and Kentucky, in return for payment by the McClain Debtors under certain terms and conditions.

5. The credit facilities between Rabo and the McClain Debtors are evidenced by, among other loan and security documents, that certain (a) *Master Credit Agreement* dated May 11, 2018, by and between MFY and Rabo, (b) that certain *Joinder*, dated July 15, 2019, by and between 7M, MFY, and Rabo, (c) that certain *Joinder*, dated August 27, 2021, by and between McClain, MFY, 7M and Rabo, (d) that certain *Addendum to Master Credit Agreement*, dated July 24, 2019, by and between MFY, 7M and Rabo, (e) that certain *Addendum to Master Credit Agreement*, dated January 13, 2023, by and between MFI, MFY, 7M, McClain and Rabo. The Master Credit Agreement, Joinders, and Addendum to Master Credit Agreement(s) are collectively referred to herein as the "**MCA**").

6. Along with the execution of the MCA, the McClain Debtors executed and

5

delivered to Rabo (a) that certain *Real Estate Term Loan 1 Note*, dated May 11, 2018, in the principal amount of $332,500.00, executed by MFY in favor of Rabo, (b) that certain *Real Estate Term Loan 2 Note*, dated July 24, 2019, in the principal amount of $625,000.00, executed by 7M in favor of Rabo, (c) that certain *Real Estate Term Loan 3 Note*, dated August 27, 2021, in the principal amount of $1,019,800.00 executed by McClain in favor of Rabo, (d) that certain *Operating Line of Credit 3 Note*, dated January 13, 2023, in the principal amount of $54,000,000.00, executed by MFY, MFI and 7M in favor of Rabo. Each Note was accompanied by those certain *Facility Sheets*, of various dates, by and between the McClain Debtors, McClain and/or Crystal D. McClain ("**C. McClain**") in favor of Rabo. The Real Estate Term Loan Note 1, Real Estate Term Loan Note 2, Real Estate Term Loan Note 3, Operating Line of Credit 3 Note, and accompanying Facility Sheets are collectively referred to herein as the "**Notes**".

7.    To secure repayment of the indebtedness and obligations evidenced under and by the MCA, Notes and Facility Sheets, the McClain Debtors, each as a Grantor, in favor of Rabo, executed that certain (a) *Master Security Agreement*, dated August 27, 2021, and (b) that certain *Master Security Agreement*, dated July 24, 2019 (collectively, the "**MSA**").

8.    Under and pursuant to the MSA, the McClain Debtors, each as a Grantor, pledged essentially all of their personal property assets now owned or hereafter acquired, defined as the "**Collateral**"(Exhibit C, MSA, ¶ 1, *The Collateral*), including but not limited to: all accounts, contract rights, documents, documents of title, payment intangibles, investment property, chattel paper, instruments, deposit accounts, inventory, equipment, fixtures, farm

6

products (including crops grown, growing or to be grown and livestock, born or unborn, supplies used in farming operations,and products of crops and livestock), general intangibles, including all Intellectual Property, all proceeds of crop insurance, price support payments, government program payments, rights and interests under Hedging Agreements, and all accessions, attachments, additions to, substitutes or replacements for any Collateral, and all proceeds, products, rents and profits of any Collateral, allrights under warranties and insurance contracts covering the Collateral, and any causes of action relating to the Collateral, and all Books and Records pertaining to any Collateral, including but notlimited to any computer-readable memory and any computer hardware or software necessary to process such memory (hereinafter, the "**Personal Property Collateral**") in both Texas and Kentucky to secure the Loan Obligations, as defined below, due and owing to Rabo under the Loan Documents.

9. Rabo perfected its first priority security interest in the Personal Property Collateral by filing UCC-1 Financing Statements ("**UCC-1's**) in Office of the Secretary of State of Kentucky and Office of the Secretary of State of Texas. *See* Proof of Claim 56, Case No. 23-20084-rlj (UCC-1 Financing Statements attached as exhibits).

10. To secure the repayment of the indebtedness and obligations due and owing to Rabo under the MCA and Notes and to induce Rabo into making the Loans to the McClain Debtors, McClain, C. McClain, MFI, MFY and 7M each executed and delivered certain *Master Loan Guaranty Agreements*, of various dates, in favor of Rabo (collectively, the "**MLGs**" or "**Master Loan Guarantees**").

11. The MCA, Facility Sheets, Notes, MSA, UCC-1's, and MLGs, and all other

7

documents evidencing or securing payment of the indebtedness or obligations due and owing to Rabo by the McClain Debtors, or any of them, as each may be amended, modified, and/or assigned, are collectively referred to as the "**Loan Documents**" and all of the loans evidenced by the Loan Documents hereinafter referred to as the "**Loans**").

12. Rabo has been and is at the time of the filing of this Motion the owner and holder of the Loan Documents and the entity to whom the McClain Debtors are obligated under the Loan Documents. Rabo also is the entity that holds the liens on the Personal Property Collateral.

13. Events of Default are defined in the Schedule of Definitions and Covenants (the "**Schedules**"), attached as Exhibit A to the MCA, which are part of the Loan Documents.

14. As of the Petition Date, the McClain Debtors were in material default under the terms of the Loan Documents.

15. On April 6, 2023, Rabo sent a Notice of Default and Acceleration, and Demand for Payment letter (the "**Default Notice**") to the McClain Debtors, notifying them that, because they were in default under the Loan Documents, Rabo had accelerated and declared the entire amount of the Loan Obligations, as defined under the Loan Documents, immediately due and payable in full.

16. The Loan Documents are cross-defaulted and cross-collateralized such that all Collateral granted to Rabo under the Loan Documents secures the repayment of all Loan Obligations.

17. Further, all of the McClain Debtors are jointly and severally liable, both as primary obligors and as guarantors, for the repayment of all Loan Obligations.

18. As of the Petition Date, the outstanding indebtedness due and owing to Rabo pursuant to the terms of the Loan Documents, exclusive of attorneys' fees/professional fees and costs, default interest, and other charges as allowed under the Loan Documents (the "**Loan Obligations**") totaled no less than $53,516.988.33. *See* Proof of Claim 56, Case No. 23-20884-rlj7.

19. After the Petition Date, Rabo received some proceeds on account of its real and personal property collateral, but such proceeds were just a fraction of the Loan Obligations owed as of the Petition Date (less than $4,000,000.00 in total as of the date of this Motion).

20. As of the date of this Motion, Rabo is still owed in excess of $49,000,000.00 under the Loan Documents even without adding interest or attorneys' fees and costs incurred since the Petition Date.

21. The Removed Cattle and Proceeds constitute part of Rabo's Personal Property Collateral.

22. While the specific value of the Removed Cattle and Proceeds is unknown, Rabo is informed and believes and on that basis alleges that the value of the Removed Cattle and Proceeds is less than $4,000,000.00.

23. In short, there is no equity in Removed Cattle and Proceeds that are the subject of this Motion. The Removed Cattle and Proceeds are fully encumbered by Rabo's perfected

liens.

24. Because there is no equity in the Removed Cattle and Proceeds, the Removed Cattle and Proceeds also are burdensome to the estate or are of inconsequential value and benefit to the estate.

## ARGUMENT

### A. THE COURT SHOULD TERMINATE THE AUTOMATIC STAY UNDER SECTION 362(d)(2) BECAUSE THERE IS NO EQUITY IN THE REMOVED CATTLE AND PROCEEDS, AND THIS IS A CHAPTER 7 CASE WHERE REORGANIZATION IS NOT AT ISSUE.

As an initial matter, it is not clear that the Removed Cattle and Proceeds are property of the bankruptcy estate since the Removed Cattle were taken by third parties prior to the Petition Date which may have divested the bankruptcy estate of an interest in such property. But assuming the Removed Cattle and Proceeds are property of the bankruptcy estate or the McClain Debtors' estates otherwise have a property interest in such assets, the automatic stay should be terminated to allow Rabo to go and pursue their recovery.

Section 362(d)(2) of the Bankruptcy Code requires the bankruptcy court, on request of a party in interest, to grant relief from the automatic stay when (a) the debtor has no equity in the property that is the subject of the lift of stay motion, and (b) the property is not necessary to the debtor's effective reorganization. Pursuant to Section 362(g) of the Bankruptcy Code, the moving party (here Rabo) has the burden of proof on the issue of equity, and any party opposing relief has the burden of proof on all other issues.

The McClain Debtors' cases are Chapter 7 cases. "Because chapter 7 strictly involves liquidation, there can be no reorganization as a matter of law." *In re Machado*, 2022 WL 257396, at *5 (Bankr. W.D. Tex. Jan. 27, 2022). As such, the Removed Cattle and Proceeds that are the subject of this Motion are not necessary to the McClain Debtors' effective reorganization.

Further, there is no equity in the Removed Cattle and Proceeds that are the subject of this Motion. Those assets are fully encumbered—and then some—by Rabo's perfected liens. "Equity" as used in Section 362(d)(2) "portends the difference between the value of the subject property and the encumbrances against it." *Sutton v. Bank One, Tex., Nat'l Ass'n (In re Sutton)*, 904 F.2d 327, 329 (5th Cir. 1990) (citations omitted). "To establish a lack of equity, the Movants must show that the debt encumbering the Property exceeds the value of the Property." *Machado*, *supra*. Here, the amount the McClain Debtors owe to Rabo under the Loan Documents is staggering—over $53.5 million as of the Petition Date. Further, while Rabo does not know the precise value of the Removed Cattle and Proceeds, Rabo asserts that the total gross value of all of the Removed Cattle and Proceeds is not more than $4,000,000.00, and it is likely less than that.

In short, because the Removed Cattle and Proceeds are not necessary for the McClain Debtors' reorganization in these Chapter 7 cases, and because there is no equity in the Removed Cattle and Proceeds for the McClain Debtors or their bankruptcy estates, the Court should terminate the automatic stay, pursuant to Section 362(d)(2) of the Bankruptcy Code, and authorize Rabo to recover, repossess and foreclose upon, sell, or otherwise liquidate its interest

in the Removed Cattle and Proceeds pursuant to non-bankruptcy law, without further order of the Court.

### B. THE COURT SHOULD ORDER THE CHAPTER 7 TRUSTEE TO ABANDON THE ESTATE'S INTEREST IN THE REMOVED CATTLE AND PROCEEDS.

As noted above, it is not clear that the Removed Cattle and Proceeds are property of the bankruptcy estate since the Removed Cattle were taken by third parties prior to the Petition Date. But even assuming the estate has a remaining interest in such assets, the Court should order the Chapter 7 Trustee, Mr. Ries, to abandon that interest.

Section 554(b) of the Bankruptcy Code provides that, "[u]pon request of a party in interest, and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(b). "[P]roof that an estate lacks equity in property sets forth at least a prima facie case that the property is of inconsequential value and benefit to the estate." *In re Paolella*, 79 B.R. 607, 610 (Bankr. E.D. Pa. 1987). Here, Rabo believes the Chapter 7 Trustee will concur in Rabo's position that the Removed Cattle and Proceeds are assets that should be abandoned. There is clearly no equity in the Removed Cattle and Proceeds that could insure to the benefit of unsecured creditors, and the Trustee has informed Rabo that he has no intention of pursuing the Removed Cattle and Proceeds for that reason. Thus, the Removed Cattle and Proceeds are of inconsequential value and benefit.

And, even if that were not the case, the Removed Cattle and Proceeds are burdensome. In order to recover the Removed Cattle and Proceeds, the Chapter 7 Trustee would likely need

to institute litigation to recover any value from these assets, as the Removed Cattle and Proceeds are in the possession of third parties. At a minimum, the Chapter 7 Trustee would need to institute and prosecute turnover actions. This makes these assets burdensome, particularly given that these assets are fully encumbered. *See In re Eurogas, Inc.*, 560 B.R. 574 (585 (Bankr. D. Utah 2016) (finding that "Talc Claims" were burdensome and should be abandoned because it would require expensive and time-consuming litigation in order to monetize the claims, even if the claims did have value).

In short, even if the Removed Cattle and Proceeds are property of the estate, they are burdensome to the estate or of inconsequential value and benefit to the estate. Accordingly, the Trustee should be compelled to abandon any interest the estate has in these assets.

### C. THE COURT SHOULD WAIVE THE FOURTEEN (14) DAY STAY PERIOD.

Federal Rule of Bankruptcy Procedure 4001(a)(3) provides that any order granting a creditor relief from the automatic stay "is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." If the Court agrees with Rabo that the automatic stay should be terminated with respect to the Removed Cattle and Proceeds, then Rabo requests that the Court also waive the fourteen (14) day stay period and allow Rabo to immediately exercise its rights as a secured creditor.

WHEREFORE, Rabo respectfully requests that the Court grant this Motion, and enter an Order terminating the automatic stay pursuant to 11 U.S.C. § 362(d)(2) with respect to the Removed Cattle and Proceeds. Rabo also respectfully requests an Order directing the Chapter 7 Trustee to abandon any interest the estate may have in the Removed Cattle and Proceeds.

Finally, Rabo requests the Court further waive the 14-day stay period established by Federal Rule of Bankruptcy Procedure 4001(a)(3), such that the Court's Order terminating the automatic stay and directing abandonment would be immediately effective on its entry. Rabo also respectfully requests that the Court grant it such other and further relief as the Court deems justified in these cases.

A proposed Order is submitted herewith.

DATED this 12th day of March, 2024.

> UNDERWOOD LAW FIRM, P.C.
> Thomas C. Riney, SBN: 16935100
> W. Heath Hendricks, SBN: 240556451
> 500 South Taylor, Suite 1200, LB 233
> Amarillo, Texas 79101
> Telephone: (806) 376-5613
> Facsimile: (806) 379-0316
> Email: tom.riney@uwlaw.com
> Email: heath.hendricks@uwlaw.com
>
> --and--
>
> RAY QUINNEY & NEBEKER P.C.
> Michael R. Johnson *(Pro Hac Vice)*
> 36 South State, Suite 1400
> Salt Lake City, UT 84111
> Telephone: (801) 532-1500
> Facsimile: (801) 532-7543
> Email: mjohnson@rqn.com
>
> */s/ Michael R. Johnson*
> Michael R. Johnson
> *Attorneys for Rabo AgriFinance LLC*

14

**NOTICE/RESPONSE DEADLINE**

**NO HEARING WILL BE CONDUCTED ON THIS MOTION UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS AT 205 SOUTHEAST 5TH AVENUE, ROOM 133, AMARILLO, TEXAS, 79101-1559, BEFORE THE CLOSE OF BUSINESS *FOURTEEN (14) DAYS* FROM THE SERVICE OF THIS MOTION. IF SERVICE IS BY MAIL, THREE ADDITIONAL DAYS ARE ALLOWED PURSUANT TO FED. R. BANKR. P. 9006(f). THUS, THE OUTSIDE DATE FOR OBJECTING TO THIS MOTION IS MARCH 29, 2024.**

**ANY RESPONSE MUST BE IN WRITING AND FILED WITH THE CLERK OF THE BANKRUPTCY COURT, AND A COPY SERVED UPON COUNSEL FOR THE MOVING PARTY WITHIN THE TIME DESCRIBED ABOVE. IF NO RESPONSE IS TIMELY FILED, THE RELIEF REQUESTED SHALL BE DEEMED UNOPPOSED AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT.**

**IF A RESPONSE TO THIS MOTION IS FILED, THE COURT WILL HOLD A HEARING AT A VIDEO DOCKET CALL, WHICH HEARING WILL BE HELD ON:**

*April 11, 2024, at the hour of 1:30 p.m.*

**THE RESPONSE MUST CONTAIN THE INFORMATION REQUIRED BY N.D. TEX. LOCAL BANKRUPTCY RULE 4001.1(b).**

**CERTIFICATE REGARDING CONFERENCE**

Pursuant to LBR 2004-1, counsel states that he has conferred by email with Kent Ries, the Chapter 7 Trustee, regarding this motion. The Trustee has not definitively responded whether he opposes the motion, but counsel believes that the Trustee is, or at least may be, opposed to this motion.

DATED this 12th day of March, 2024.

*/s/ Michael R. Johnson*
Michael R. Johnson
*Attorneys for Rabo AgriFinance LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on March 12, 2024, the foregoing document was filed with the Clerk of the Court in each of the foregoing Chapter 7 cases using the CM/ECF system, which sent notice of electronic filing to all electronic filing users in each case.

I also hereby certify that on March 12, 2024, a true and correct copy of the foregoing document was served by first class U.S. mail, with postage fully prepaid, upon the following:

McClain Feed Yard, Inc.
4010 FM 1057
Hereford, Texas 76655

7M Cattle Feeders, Inc.
2546 CR 15
Friona, Texas 79035

McClain Farms, Inc.
824 Mullin Lane
Benton, Kentucky 42025

Northland Capital Financial Services, LLC
P.O. Box 7278
Saint Cloud, MN 56302

Willis Kleinjan, RA
333 33rd Ave. So., #100
Saint Cloud, MN 56301

First Kentucky Bank
605 Main Street
Benton, KY 42025

Caterpillar Financial Services Corp
2120 West End Ave.
Nashville, TN 37203

First Capital Bank of Texas
3900 S. Soncy Road
Amarillo, TX 79119

Takeuchi Financial Services, a program of Bank of the West
1625 W. Fountainhead Pkwy AZ-FTN-10C-A
Tempe, AZ  85282

United State Trustee
1100 Commerce Street
Room 976
Dallas, Texas 75202


                */s/ Michael R. Johnson*
                Michael R. Johnson