# EXHIBIT B

Elaine Ger
District C
Deaf Smith County, Te
/s/ Whitney Figueiras
C: D. LEBAS

IN THE <u>222nd</u> JUDICIAL DISTRICT COURT
DEAF SMITH COUNTY, TEXAS

| | | |
|---|---|---|
| AGTEXAS FARM CREDIT SERVICES, | § | |
| AGTEXAS, PCA | § | |
| THORLAKSON DIAMOND T FEEDERS, LP | § | |
| | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CAUSE NO. CI-2023D-025 |
| | § | |
| MCCLAIN FEED YARD, INC, | § | |
| 7M CATTLE FEEDERS, INC. and | § | |
| CHELSEA WALTERS MCCLAIN, | § | |
| AS PRESUMED HEIR AND | § | |
| PERSONAL REPRESENTATIVE OF | § | |
| THE ESTATE OF BRIAN MCCLAIN, AND | § | |
| RABO AGRIFINANCE, LLC, | § | |
| | § | |
| Defendants. | § | |

**Plaintiffs' Original Petition,**
**Application for Emergency Appointment of a Receiver, and**
**Request for Injunctive Relief**

1.    Plaintiffs AgTexas Farm Credit Services, a federally chartered agricultural credit association formed under the Farm Credit Act of 1933 and AgTexas, PCA a federally chartered production credit association formed under the Farm Credit Act of 1933 (collectively "AgTexas"), Thorlakson Diamond T Feeders, LP ("Thorlakson"), complaining of McClain Feed Yard, Inc., 7M Cattle Feeders, Inc. Chelsea Walters McClain, Defendant in her capacity as presumed heir and personal representative of the estate of Brian McClain (the McClain Defendants"), and Rabo AgriFinance, LLC ("Rabo") submit the following for their Original Petition, Application for Emergency Appointment of a Receiver, and Request for Injunctive Relief.

## Discovery Control Plan

2.       Pursuant to TEX. R. CIV. P. 190, Plaintiffs state that discovery in this matter is intended to be conducted under Level 3, as specified by TEX. R. CIV. P. 190.3.

## Statement of Relief Requested

3.       Pursuant to Rule 47 of the Texas Rules of Civil Procedure, Plaintiffs assert a cause of action for injunction, interpleader, for declaratory judgment, and for damages within the jurisdictional limits of the Court.

4.       Pursuant to TEX. R. CIV. P. 47 and TEX. CIV. PRAC. & REM. CODE §64.001(a)(2), (5), and (6), Plaintiffs make an application for emergency appointment of a receiver for sequestration and the protection of property rights of Plaintiffs and other interested parties.

## Parties and Service

5.       Plaintiffs allege that the requirements of Section 30.014 of the Texas Civil Practice & Remedies Code impinge a fundamental right guaranteed to them by the Texas Constitution, and Plaintiffs accordingly withhold any further identifying information other than as set forth below, unless and until ordered to do so by the Court.

6.       AgTexas Farm Credit Services, Plaintiff, is a federally chartered agricultural credit association formed under the Farm Credit Act of 1933. It does business in various locations in Texas, including Deaf Smith County, Texas.

7.       AgTexas, PCA, Plaintiff, is a federally chartered production credit association formed under the Farm Credit Act of 1933. It does business in various locations in Texas, including Deaf Smith County, Texas.

8.       Thorlakson Diamond T Feeders, LP, is a Texas limited partnership. It does business in various locations in Texas, including Deaf Smith County, Texas.

9.      Rabo AgriFinance, Defendant, is a limited liability company that does business in various locations in Texas, including Deaf Smith County. It can be served by serving it registered agent, Corporate Creations Network Inc., 5444 Westheimer #1000, Houston, Texas 77056.

10.     McClain Feed Yard, Inc., Defendant, is a domestic for-profit corporation. It can be served through its registered agent Brian McClain, 320 Schley Street, Hereford, Texas 79045.

11.     7M Cattle Feeders, Inc., Defendant, is a foreign for-profit corporation incorporated under the laws of Kentucky and registered to do business in Texas. It may be served through its registered agent, McClain Feed Yard, Inc., 4010 FM 1057, Hereford, Texas 79045.

12.     Chelsea Walters McClain, Defendant in her capacity as presumed heir and personal representative of the estate of Brian McClain, is the widow of Brian McClain, a deceased individual resident of Kentucky who engaged in business in this State. Mrs. McClain does not maintain a designated agent for service of process in Texas. Service of process on this Defendant may therefore be obtained under TEX. CIV. PRAC. & REM. CODE §17.044, by serving the Texas Secretary of State for forwarding to Defendant Brian McClain at 824 Mullins Lane, Benton, KY 42025. The forwarding address for the Texas Secretary of State to issue citation to this Defendant is: Texas Secretary of State Statutory Document Section, P.O. Box 12887, Austin, Texas 78711. The address of this Defendant is stated above.

13.     There are many additional parties who are believed to have an interest in the subject matter of this case.

### Jurisdiction and Venue

14.     This case falls within the general jurisdiction of this Court.

15. Venue is mandatory in this county pursuant to Texas Civil Practice and Remedies Code 64.07 because this is a suit to appoint a receiver for a corporation with property in Texas and this is the county where the principal office of the corporation is located.

16. Venue is proper in this case pursuant to Texas Civil Practice and Remedies Code section 15.002(a)(1) because it is the county in which all or a substantial part of the events or omissions giving rise to the claims occurred and 15.002(a)(3), because it is the county in which Defendants McClain Feed Yard and 7M Feeders have their principal office in this state.

17. Venue exists in this case over the Defendants under TEX. CIV. PRAC. & REM. CODE §15.035 because one or more of these Defendants entered into contracts in whole or in part, in Deaf Smith County, Texas.

18. The acts of all Defendants the subject of this suit involve their purposeful contacts involving Texas. The causes of action asserted in this case arise from or are connected with the acts committed by Defendants in Texas. As a result, this Court can assert in personam jurisdiction over Defendants in accordance with state and federal constitutional guarantees, and the Texas Secretary of State is an agent for service of process for Defendants.

19. Venue is proper in Deaf Smith County in accordance with TEX. CIV. PRAC. & REM. CODE § 15.002 because it is the county in which all or a substantial part of the events or omissions giving rise to the claim occurred, and if venue is valid as to one Defendant, it is valid as to all, pursuant to TEX. CIV. PRAC. & REM. CODE § 15.003.

### Facts

20. This case concerns the business of buying, selling, feeding, or providing financing for cattle feeding and related activities. Plaintiff AgTexas and their borrowers purchased cattle to be delivered to grow yard facilities in Texas under the name "McClain Feed Yard, Inc." which

were owned and operated in whole or in part by Decedent Brian McClain; Decedent also owned and operated Defendant 7M Cattle Feeders, a Kentucky corporation. The cattle were delivered for growing and health care before there were to be shipped to a finishing feedyard.

21.     Rabo provided a credit facility to the McClain Defendants. On information and belief, Plaintiffs allege that Rabo has itself or through contract with third parties started liquidating the cattle and other assets of the McClain Parties and taken custody and control of the records of the McClain Parties.

22.     Some of these cattle were and are believed to be currently located in Deaf Smith County, Texas.

23.     In April of 2023, Plaintiffs learned of some of the issues that are the subject of this suit, including disappearance or inability of the McClain Parties to account for many thousands of cattle and millions of dollars in cattle proceeds. Before this, the McClain Defendants had represented to Plaintiffs that they had possession of thousands of cattle in which Plaintiffs had an interest, which Plaintiffs paid. The chart below summarizes the cattle and monetary claims of the Plaintiffs known at this time:

| Party | Approximate Missing Cattle Head Count | Approximate Claim Amount |
|---|---|---|
| AgTexas | Lender to Thorlakson and others | $8,000,000 |
| Thorlakson | 9,605 | $9,000,000 |

24.     On April 18, 2023, decedent passed away unexpectedly at age 52.

25.     Because of the movable nature of the cattle, the uncertain location of the cattle, Mr. McClain's sudden death, and because of the unaccountability for the cattle entrusted to Defendants, a reasonable conclusion can be drawn that there is immediate danger that Defendants

will neglect, conceal, dispose of, ill-treat, waste, or destroy the cattle, or remove them from their present location during the pendency of this suit.

26.     Rabo has engaged a third party or parties to gather cattle and records in the possession of the McClain Defendants and has refused to permit one or more of the Plaintiffs to have access to such cattle and records.  A reasonable conclusion can also be drawn that Rabo should be ordered to protect and preserve assets and records of the McClain Parties and of its dealings with the McClain Parties.

27.     Throughout this Petition, where it is alleged that any Defendant performed or failed to perform any acts or activities, or made any representations, it is meant that such Defendant's agents, officers, servants, employees or representatives performed or failed to perform such acts or activities and at the time such acts or activities were done, they were with full authorization or ratification of said Defendant, or were in the normal or routine course of business.

### Conversion and Common Law Fraud

28.     The allegations stated above are incorporated by reference.

29.     Plaintiffs are entitled to and seek recovery of judgment for conversion against the McClain Defendants for the value of any cattle they accepted for feed and care and which they have not returned, and/or cattle misappropriated and converted from Plaintiffs, and the profits they would have made from these cattle.

30.     Plaintiffs are entitled to and seek recovery of judgment for conversion against Rabo to the extent that Rabo acquired cattle or proceeds belonging to Plaintiffs.

31.     The McClain Defendants made misrepresentations to Plaintiffs recklessly without any knowledge of the truth and as a positive assertion.  Moreover, the misrepresentations were made with the intention that they should be acted on by Plaintiffs, and Plaintiffs in fact relied

upon on those misrepresentations, suffering injury and damage as a result thereof. Thus, the misrepresentations and reliance so described were a proximate cause of injury and damage to the Plaintiffs for which Plaintiffs now sue in a sum within the jurisdictional limits of the Court.

30.     Plaintiffs seek judgment for their reasonable attorney fees at trial and through all applicable appellate levels, pursuant to TEX. CIV. PRAC. & REM. CODE § 38.001(6).

## Negligence of Defendants in Care and Maintenance and Hiring or Supervision or Management Personnel

31.     The allegations stated above are incorporated by reference.

32.     Defendants were negligent in the care and maintenance of cattle including, but not limited to keeping proper records of feeding and ownership, and in the hiring or supervision of their management personnel. Defendants are therefore liable for the losses Plaintiffs suffered as a result of their actions and omissions. Their actions and omissions are described above.

33.     The losses incurred by Plaintiffs as a proximate result of Defendants' negligent actions exceed the minimum jurisdictional limits of this Court. Plaintiffs seek judgment for these damages.

## Tortious Actions by the Individual Defendant

34.     The allegations stated above are incorporated by reference.

35.     Decedent directed and controlled the actions and omissions of the McClain Defendant-entities in a manner that was tortious in at least the following ways:

a.     They misrepresented the existence of cattle in their possession;

b.     They promised and agreed to purchase individual lots of cattle for customers, but sent false yard sheets to the customers for whom they promised and agreed to purchase cattle, although there were far fewer lots of cattle than were represented, such that multiple customers were being informed they were owners if the same cattle;

c.  They used the yard sheets, and other means, such as verbal reports and inspections, to report to Plaintiffs that cattle delivered to Defendants were in their possession and under their control when in fact they were not;

d.  They directed and allowed the Defendant-entities to keep and use the proceeds of their wrongdoing for their own purposes.

36.  The Decedent's estate is therefore personally liable for all damages, both actual and punitive, that Plaintiffs suffered as a result of Defendant-entities' actions and omissions.

## The Corporation Fiction of McClain Feed Yard Inc. and 7 M Cattle Company, LLC Should be Disregarded

37.  The allegations stated above are incorporated by reference.

38.  McClain Feed Yard, Inc.'s and 7M Cattle Company, LLC's corporate entity should be disregarded and the Decedent's estate held personally liable for the damages, both actual and punitive, suffered by Plaintiffs because:

a.  The corporate entity has been used by the Defendants and their owners and principals as a sham to perpetuate a fraud;

b.  The corporate entity was organized and perpetrated as a mere tool or business conduit of Decedent's personal business;

c.  The corporate fiction has been used as a means to evade an existing legal obligation;

d.  The corporate fiction has been used to circumvent a statute; or

e.  The corporate fiction has been used to commit a protection of crime or to justify a wrong.

## Civil Conspiracy

39.  Additionally, and/or in the alternative and based on information and belief, the McClain Defendants, and their agents or employees had an agreement with and/or understanding among them to commit and to cover up the wrongs and damages inflicted on Plaintiffs. To this end, Defendants and their agents, employees and/or representatives had a meeting of the minds

and committed unlawful and overt acts which proximately caused further and additional damages to Plaintiffs. Therefore, the McClain Defendants and their agents, employees and/or representatives are directly and vicariously liable for the actions of each other in furtherance of this conspiracy.

40.    Plaintiffs seek judgment for all damages, both actual and punitive, that Plaintiffs suffered as a result of the actions of any of them.

41.    Plaintiffs seek judgment for their reasonable and necessary attorney's fees at trial and through all applicable appellate levels.

## Attorneys' Fees

42.    By reason of the wrongful acts and conduct of the Defendants, Plaintiffs have been required to employ attorneys to bring and prosecute this action. Plaintiffs seeks to recover the reasonable and necessary attorneys' fees and legal expenses, including expert witness fees.

43.    Under all claims asserted herein, Plaintiffs seek recovery of their reasonable and necessary attorneys' fees at trial and all appellate levels.

## Damages

44.    The facts and allegations stated above are incorporated herein by reference.

45.    The McClain Defendants' acts, omissions, conduct, and breaches were, and continue to be, a proximate and/or producing cause of damages to Plaintiffs, and the McClain Defendants have been unjustly enriched by their actions.

46.    To the extent that Rabo has receive funds or property in which the Plaintiffs have superior rights, Plaintiffs seek recovery of their damages from Rabo, either directly or by way of disgorgement.

47.    Plaintiffs will respectfully request the Court or Jury to determine the amount of

Plaintiffs' damages.   Plaintiffs seek recovery of their damages proximately caused by any responsible party, including without limitation, all damages caused by the Defendants, both actual and punitive.

48.    The conduct of the McClain Defendants as described above, was done in bad faith and in violation of the law and public policy of the State of Texas, was done willfully, knowingly and maliciously, was intentional and/or committed with conscious indifference to the rights of Plaintiffs such as to warrant the imposition of punitive and/or exemplary damages, expert witness fees and attorney's fees which Plaintiffs seeks to recover from the McClain Defendants.

## Request for Declaratory Judgment

49.    The facts and allegations stated above are incorporated herein by reference.

50.    Plaintiffs seek declaratory judgment as to priority of their claims to cattle and sales proceeds.

## Application for Injunctive Relief

51.    The facts and allegations stated above are incorporated herein by reference.

52.    Plaintiffs pray for a temporary restraining order, and following a hearing, a temporary injunction to restrain and enjoin the Defendants from interfering with their request to move the remaining cattle to a secure location for feeding and care.  Plaintiffs also seek an order requiring Defendants to preserve their records.

53.    Plaintiffs need immediate injunctive relief in this case to avoid the following irreparable injuries:

a.    Rabo and the McClain Defendants threaten to, have and unless restrained and enjoined, will continue to prevent access to the enclosures or pens where the Cattle are located, either in Deaf Smith County or other locations, and therefore jeopardize the health and values of these cattle, and the integrity of these records, and thus

jeopardize Plaintiffs' rights before the question of ownership and priority of claims can be determined.

b.    The McClain Defendants have demonstrated their willingness to falsify records and conceal the location of cattle and should be ordered to preserve any and all business records concerning their cattle and financial affairs.

c.    The McClain Defendants have demonstrated their willingness to falsify records and conceal the location of cattle and should be ordered to refrain from withdrawing the funds from financial institutions.

54.    Plaintiffs have no adequate remedy at law because the health of the cattle, or their physical location if moved, may deprive Plaintiffs from recourse against the Defendants and recourse to possession of cattle they claim to own. The inability to gain access to the cattle may put the Defendants in the position of an insolvent without the ability to respond in damages and, as a result Plaintiffs' interest in the cattle may be lost and their ability to recover from the party(ies) who wrongfully caused the problem may also be lost. In addition, Defendants have demonstrated their willingness to falsify records and conceal the location of cattle and should be ordered to preserve any and all business records concerning their cattle and financial affairs to enable Plaintiffs to determine the status of their cattle and accounts.

55.    The enjoined Defendants will not be harmed by any delay resulting from an injunction.

56.    To prevent irreparable harm to Plaintiffs, all and any persons having notice of the injunction requested by Plaintiffs should be restrained and prevented from transferring in any respect, selling, disposing, moving, transferring, concealing, or encumbering any property, including any cattle and including the funds at any bank accounts.

57.    Plaintiffs are therefore entitled to a temporary restraining order restraining the Defendants, their agents, in any person having notice of the order from taking any action in selling,

disposing, moving, transferring, encumbering, or otherwise affecting any of the Defendants' property, or cattle or funds in the Defendants' possession, and, upon hearing, that the terms of the temporary restraining order become a temporary injunction.

### Request for Appointment of Receiver

58.     Plaintiffs incorporate the allegations stated above.

59.     Plaintiffs request the Court to appoint a receiver in this action who is qualified under the provisions of TEX. CIV. PRAC. & REM. CODE , § 64.021, who is not a party to this lawsuit, is not an attorney for a party to this lawsuit, and is not otherwise interested in this lawsuit including the application for appointment of a receiver.

60.     Plaintiffs have a probable interest in or right to the cattle described above.

61.     The property, and particularly the remaining cattle, is in danger of being lost, removed, wasted or materially injured.  Because of the McClain Defendants' defaults and Decedent's sudden death, it is likely that the McClain Defendants cannot to properly care for the Cattle.

62.     Receivers may be appointed to prevent fraud or protect rights of persons in property which is in danger of being lost or suffering material injury. *Ellis v. Filgo*, 185 S.W.2d 739 (Tex. Civ. App. - Dallas 1945, no writ).  Here a receiver is appropriate to protect Plaintiffs' rights in the property and to prevent the property from being further lost, removed, wasted or materially injured by Defendants.

63.     Receivers may be appointed when, among other things, (a) in an action by a creditor to subject any property or fund to his claim; (b) for a corporation that is insolvent, is in imminent danger of insolvency, has been dissolved, or has forfeited its corporate rights; or (c) in any other case in which a receiver may be appointed under the rules of equity.  TEX. CIV. PRAC. & REM. CODE, §§ 64.001(a)(4), (5) and (6); and 64.001(c)(1) and (2).

## Sequestration

64.    Plaintiffs incorporate the allegations stated above, as if fully set forth verbatim hereunder, and incorporates the exhibits referenced therein.

65.    If this Court does not immediately enter an order appointing a Receiver, Plaintiffs request the issuance of a Writ of Sequestration for the cattle.

66.    Because of the movable nature of the cattle, and because of the defaults of Defendants, a reasonable conclusion may be drawn that Defendants will engage in using, selling, disposing, encumbering, mortgaging, leasing, moving, operating, pledging, or otherwise adversely affecting the interests of Plaintiffs in the cattle, Defendant-entities and any asset that secures repayment of the loans.

67.    Plaintiffs seek assistance through a writ of sequestration to enforce its security interest and it meets the requirements of TEX. CIV. PRAC. & REM. CODE Ch. 62.

## Injunction and Restraining Order

68.    Plaintiffs incorporate the allegations stated above, as if fully set forth verbatim hereunder, and incorporates the exhibits referenced therein.

69.    Pending the final outcome of this action, and until further order, and for the purpose of affording Plaintiffs appropriate protection under the Texas Rules of Civil Procedure, Plaintiffs request the issuance of a mandatory injunction and restraining order directing Defendants to deliver the Defendant-entities to the Receiver and restraining Defendants and its respective partners, officers, agents, servants, employees, attorneys or associates from using, selling, disposing, encumbering, mortgaging, leasing, moving, operating, pledging, or in any manner adversely affecting the interests of Plaintiffs in the Defendant-entities.

70.     If this Court does not immediately enter an order appointing a Receiver, sequestering the cattle, proceeds, and accounts receivables and granting such other relief as is necessary or appropriate to protect Plaintiffs' ownership and security interests and liens, Plaintiffs will be irreparably harmed. It has no adequate remedy at law if such relief is not granted.

71.     If the Court does not immediately appoint a Receiver, and if Defendants are permitted to stay in possession or control of its assets, Plaintiffs also request the Court to grant additional relief protecting Plaintiffs' interest and liens as follows:

    a.    Prohibiting any payments or distributions to or for the benefit of the McClain Defendant-entities' insiders, affiliates, parents or partners or other related individuals or entities for management services, commissions or otherwise, or Rabo;

    b.    Requiring Defendant-entities to furnish Plaintiffs, without further demand, the following information:

        i.    Cattle sales and purchase records;

        ii.    Banking records;

        iii.    Cattle movement records;

## Conclusion

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully pray that all Defendants be cited to appear and to answer this Petition and that upon final hearing hereof, Plaintiffs have Judgment as follows:

    a.    An Order from this Court restraining and enjoining Defendants and their attorneys and agents and employees from removing the Cattle and permitting inspection of the records;

    b.    An Order from this Court restraining and enjoining Defendants and their attorneys and agents and employees from disposing of records of their activities related to the subject of this case;

    c.    An Order from this Court restraining and enjoining Defendants from disposing or, altering, or concealing records concerning their cattle and financial affairs;

d.      An Order declaring the rights of the parties to the cattle and their proceeds;

e.      Judgment for actual and punitive damages;

f.      Judgment for attorneys' fees through trial and at all applicable appellate levels, and costs;

g.      Any and all further relief, legal and equitable, to which Plaintiffs may be now and ever more entitled.

Respectfully submitted,

NAMAN HOWELL SMITH & LEE, PLLC
8310 N. Capital of Texas Hwy., Ste. 490
Austin, Texas 78731
(512) 479-0300; FAX (512) 474-1901
Email: dlebas@namanhowell.com

By:     /s/ David L. LeBas
        David L. LeBas
        State Bar No. 12098600
        Rachel Barr
        State Bar No.24118185

**Attorneys for Plaintiffs**

# VERIFICATION

STATE OF TEXAS                          §
                                        §
COUNTY OF Potter _____                §

      BEFORE ME, the undersigned authority, on this day personally appeared
Brandon Brock _____, who upon oath says that he is authorized to make this verification on behalf
of AgTexas Farm Credit Servs, and states that he has read the foregoing Plaintiffs' Original Petition
and Application for Injunctive Relief, and that the factual statements are true and correct to the
best of his knowledge.

      SUBSCRIBED to and before me on this the 21st day of April, 2023.

CHARLOTTE MULLICAN
Notary Public, State of Texas
Comm. Expires 06-27-2026
Notary ID 1252865

_____
Notary Public, State of Texas

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

David LeBas on behalf of David LeBas
Bar No. 12098600
dlebas@namanhowell.com
Envelope ID: 74915824
Filing Code Description: Petition
Filing Description: Petition
Status as of 4/24/2023 8:27 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| David LeBas | | dlebas@namanhowell.com | 4/21/2023 4:56:10 PM | SENT |
| Rachel Barr | | rbarr@namanhowell.com | 4/21/2023 4:56:10 PM | SENT |
| Jennifer Aucoin | | jaucoin@namanhowell.com | 4/21/2023 4:56:10 PM | SENT |



**NAMANHOWELL
SMITH&LEE** FLLC
ATTORNEYS AT LAW

David L. LeBas
Direct Dial: (512) 807-2460
dlebas@namanhowell.com

8310 N. Capital of Texas
Highway, Suite 490
Austin, Texas 78731
(512) 479-0300
Fax (512) 474-1901

Offices in:

· Austin

· Fort Worth

· San Antonio

· Waco

www.namanhowell.com

April 21, 2023

**Via Efile**
Elaine Gerber
Deaf Smith County District Clerk
235 East Third Street, RM 304
Hereford, Texas 79045

RE:    **Issue Citations**; *AgTexas Farm Credit Services, AgTexas, PCA,
Tholakson Diamond T Feeders, LP v. McClain Feed Yard, Inc., 7M Cattle Feeders,
Inc., and Chelsea Walters McClain, as presumed heir and personal representative
of the Estate of Brian McClain, and Rabo AgriFinance, LLC*

Dear Clerk of the Court:

Plaintiffs AgTexas Farm Credit Services, AgTexas, PCA, Tholakson Diamond T Feeders,
LP filed their **Plaintiffs' Original Petition, Application for Emergency Appointment of a
Receiver, Request for Injunctive Relief** on April 21, 2023. Please issue citations for service
upon the following Defendants:

**For Personal Service:**

> **Rabo AgriFinance**
> **Registered Agent:  Corporate Creations Network Inc.**
> **5444 Westheimer #1000**
> **Houston, Texas 77056**
>
> **McClain Feed Yard, Inc.**
> **Registered Agent:  Brian McClain**
> **320 Schley Street**
> **Hereford, Texas  79045**
>
> **7M Cattle Feeders, Inc.**
> **Registered Agent:  McClain Feed Yard, Inc.**
> **4010 FM 1057**
> **Hereford, Texas  79045**

Elaine Gerber
April 21, 2023
Page 2

**For Service through Texas Secretary of State:**

**Chelsea Walters McClain,**
**As presumed heir and personal representative of the Estate of Brian McClain**
**824 Mullins Lane**
**Benton, Kentucky  42025**

We would appreciate it if you would send the citations to my assistant Jennifer Aucoin at jaucoin@namanhowell.com, for service on Defendants.  The cost of the citations is included with this filing.

If you should have any questions, please do not hesitate to call.

Thank you for your assistance.

Sincerely,

NAMAN HOWELL SMITH & LEE, PLLC

By: *Dave LeBas*

David LeBas

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

David LeBas on behalf of David LeBas
Bar No. 12098600
dlebas@namanhowell.com
Envelope ID: 74915824
Filing Code Description: Petition
Filing Description: Petition
Status as of 4/24/2023 8:27 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| David LeBas | | dlebas@namanhowell.com | 4/21/2023 4:56:10 PM | SENT |
| Rachel Barr | | rbarr@namanhowell.com | 4/21/2023 4:56:10 PM | SENT |
| Jennifer Aucoin | | jaucoin@namanhowell.com | 4/21/2023 4:56:10 PM | SENT |

CIVIL CITATION-PERSONAL SERVICE

# THE STATE OF TEXAS

**TO:** 7M CATTLE FEEDERS, INC., REGISTERED AGENT: MCCLAIN FEED YARD, INC., 4010 FM 1057, HEREFORD, TX, 79045

DEFENDANT IN THE HEREINAFTER STYLED AND NUMBERED CAUSE: CI-2023D-025

YOU ARE HEREBY COMMANDED TO APPEAR BEFORE THE 222ND JUDICIAL DISTRICT COURT OF DEAF SMITH COUNTY, TEXAS, TO BE HELD AT THE COURTHOUSE OF SAID COUNTY IN THE CITY OF HEREFORD, DEAF SMITH COUNTY, TEXAS BY FILING A WRITTEN ANSWER TO THE PETITION OF PLAINTIFF AT OR BEFORE 10:00 O'CLOCK A.M. OF THE MONDAY NEXT AFTER THE EXPIRATION OF 20 DAYS AFTER THE DATE OF SERVICE HEREOF, A COPY OF PLAINTIFFS' ORIGINAL PETITION, APPLICATION FOR EMERGENCY APPOINTMENT OF A RECEIVER, AND REQUEST FOR INJUNCTIVE RELIEF WHICH ACCOMPANIES THIS CITATION, IN CAUSE NUMBER CI-2023D-025:

AGTEXAS FARM CREDIT SERVICES, AGTEXAS, PCA THORLAKSON DIAMOND T FEEDERS, LP
Plaintiffs,
VS
MCCLAIN FEED YARD, INC, 7M CATTLE FEEDERS, INC. AND CHELSEA WALTERS MCCLAIN, AS PRESUMED HEIR AND PERSONAL REPRESENTATIVE OF THE ESTATE OF BRIAN MCCLAIN, AND RABO AGRIFINANCE, LLC, DEFENDANTS.

FILED IN SAID COURT ON THE 24TH DAY OF APRIL, 2023

THE NAME AND ADDRESS OF THE ATTORNEY IS: DAVID L. LEBAS, ATTORNEY AT LAW, 8310 N. CAPITAL OF TX HWY, STE 490, AUSTIN, TX, 78731

**NOTICE TO DEFENDANT:** YOU HAVE BEEN SUED.  YOU MAY EMPLOY AN ATTORNEY.  IF YOU OR YOUR ATTORNEY DO NOT FILE A WRITTEN ANSWER WITH THE CLERK WHO ISSUED THIS CITATION BY 10:00 A.M. ON THE MONDAY NEXT FOLLOWING THE EXPIRATION OF TWENTY DAYS AFTER YOU WERE SERVED THIS CITATION AND PETITION, A DEFAULT JUDGMENT MAY BE TAKEN AGAINST YOU. IN ADDITION TO FILING A WRITTEN ANSWER WITH THE CLERK, YOU MAY BE REQUIRED TO MAKE INITIAL DISCLOSURES TO THE OTHER PARTIES OF THIS SUIT.  THESE DISCLOSURES GENERALLY MUST BE MADE NO LATER THAN 30 DAYS AFTER YOU FILE YOUR ANSWER WITH THE CLERK.  FIND OUT MORE AT TexasLawHelp.org.

ISSUED AND GIVEN UNDER MY HAND AND SEAL OF COURT AT OFFICE ON 24TH DAY OF APRIL, 2023.

ELAINE GERBER

ELAINE GERBER, DISTRICT CLERK
DEAF SMITH COUNTY, TEXAS
BY: _W. Figueroa_ DEPUTY

## OFFICER'S RETURN

CAME TO HAND ON THE _____ DAY OF _____, 20____, AT _____ O'CLOCK ____.M. EXECUTED AT _____ WITHIN THE COUNTY OF _____ AT _____ O'CLOCK ___.M. ON THE _____ DAY OF _____ 20_____, BY DELIVERING TO THE WITHIN NAMED ACCOMPANYING COPY OF PETITION, HAVING FIRST ATTACHED A COPY OF SUCH PETITION TO SUCH CITATION AND INDORSED ON SUCH COPY OF CITATION THE DATE OF DELIVERY.

*** NOT EXECUTED FOR THE FOLLOWING REASON: _____

_____

**FEE FOR SERVICE: $_____**    _____ SHERIFF,

_____ COUNTY, TEXAS

BY: _____, DEPUTY

CIVIL CITATION-PERSONAL SERVICE

# THE STATE OF TEXAS

**TO:** TEXAS SECRETARY OF STATE: CHELSEA WALTERS MCCLAIN, AS PRESUMED HEIR AND PERSONAL REPRESENTATIVE OF THE ESTATE OF BRIAN MCCLAIN, 824 MULLINS LANE, BENTON, KENTUCKY, 42025

DEFENDANT IN THE HEREINAFTER STYLED AND NUMBERED CAUSE: CI-2023D-025

YOU ARE HEREBY COMMANDED TO APPEAR BEFORE THE 222ND JUDICIAL DISTRICT COURT OF DEAF SMITH COUNTY, TEXAS, TO BE HELD AT THE COURTHOUSE OF SAID COUNTY IN THE CITY OF HEREFORD, DEAF SMITH COUNTY, TEXAS BY FILING A WRITTEN ANSWER TO THE PETITION OF PLAINTIFF AT OR BEFORE 10:00 O'CLOCK A.M. OF THE MONDAY NEXT AFTER THE EXPIRATION OF 20 DAYS AFTER THE DATE OF SERVICE HEREOF, A COPY OF PLAINTIFFS' ORIGINAL PETITION, APPLICATION FOR EMERGENCY APPOINTMENT OF A RECEIVER, AND REQUEST FOR INJUNCTIVE RELIEF WHICH ACCOMPANIES THIS CITATION, IN CAUSE NUMBER CI-2023D-025:

AGTEXAS FARM CREDIT SERVICES, AGTEXAS, PCA THORLAKSON DIAMOND T FEEDERS, LP
Plaintiffs,
VS
MCCLAIN FEED YARD, INC, 7M CATTLE FEEDERS, INC. AND CHELSEA WALTERS MCCLAIN, AS PRESUMED HEIR AND PERSONAL REPRESENTATIVE OF THE ESTATE OF BRIAN MCCLAIN, AND RABO AGRIFINANCE, LLC, DEFENDANTS.

FILED IN SAID COURT ON THE 24TH DAY OF APRIL, 2023

THE NAME AND ADDRESS OF THE ATTORNEY IS: DAVID L. LEBAS, ATTORNEY AT LAW, 8310 N. CAPITAL OF TX HWY, STE 490, AUSTIN, TX, 78731

**NOTICE TO DEFENDANT:** YOU HAVE BEEN SUED. YOU MAY EMPLOY AN ATTORNEY. IF YOU OR YOUR ATTORNEY DO NOT FILE A WRITTEN ANSWER WITH THE CLERK WHO ISSUED THIS CITATION BY 10:00 A.M. ON THE MONDAY NEXT FOLLOWING THE EXPIRATION OF TWENTY DAYS AFTER YOU WERE SERVED THIS CITATION AND PETITION, A DEFAULT JUDGMENT MAY BE TAKEN AGAINST YOU. IN ADDITION TO FILING A WRITTEN ANSWER WITH THE CLERK, YOU MAY BE REQUIRED TO MAKE INITIAL DISCLOSURES TO THE OTHER PARTIES OF THIS SUIT. THESE DISCLOSURES GENERALLY MUST BE MADE NO LATER THAN 30 DAYS AFTER YOU FILE YOUR ANSWER WITH THE CLERK. FIND OUT MORE AT TexasLawHelp.org.

ISSUED AND GIVEN UNDER MY HAND AND SEAL OF COURT AT OFFICE ON 24TH DAY OF APRIL, 2023.

ELAINE GERBER
ELAINE GERBER, DISTRICT CLERK
DEAF SMITH COUNTY, TEXAS
BY: _____ DEPUTY

## OFFICER'S RETURN

CAME TO HAND ON THE _____ DAY OF _____, 20____, AT _____ O'CLOCK ____.M. EXECUTED IN _____ WITHIN THE COUNTY OF _____ AT _____ O'CLOCK ____.M. ON THE _____ DAY OF _____, 20_____, BY DELIVERING TO THE WITHIN NAMED ACCOMPANYING COPY OF PETITION, HAVING FIRST ATTACHED A COPY OF SUCH PETITION TO SUCH CITATION AND INDORSED ON SUCH COPY OF CITATION THE DATE OF DELIVERY.

*** NOT EXECUTED FOR THE FOLLOWING REASON: _____

FEE FOR SERVICE: $_____        _____ SHERIFF,

_____ COUNTY, TEXAS

BY: _____, DEPUTY

CIVIL CITATION-PERSONAL SERVICE

# THE STATE OF TEXAS

**TO:** MCCLAIN FEED YARD, INC., REGISTERED AGENT: BRIAN MCCLAIN, 320 SCHLEY STREET, HEREFORD, TX, 79045

DEFENDANT IN THE HEREINAFTER STYLED AND NUMBERED CAUSE: CI-2023D-025

YOU ARE HEREBY COMMANDED TO APPEAR BEFORE THE 222ND JUDICIAL DISTRICT COURT OF DEAF SMITH COUNTY, TEXAS, TO BE HELD AT THE COURTHOUSE OF SAID COUNTY IN THE CITY OF HEREFORD, DEAF SMITH COUNTY, TEXAS BY FILING A WRITTEN ANSWER TO THE PETITION OF PLAINTIFF AT OR BEFORE 10:00 O'CLOCK A.M. OF THE MONDAY NEXT AFTER THE EXPIRATION OF 20 DAYS AFTER THE DATE OF SERVICE HEREOF, A COPY OF PLAINTIFFS' ORIGINAL PETITION, APPLICATION FOR EMERGENCY APPOINTMENT OF A RECEIVER, AND REQUEST FOR INJUNCTIVE RELIEF WHICH ACCOMPANIES THIS CITATION, IN CAUSE NUMBER CI-2023D-025:

AGTEXAS FARM CREDIT SERVICES, AGTEXAS, PCA THORLAKSON DIAMOND T FEEDERS, LP
Plaintiffs,
VS
MCCLAIN FEED YARD, INC, 7M CATTLE FEEDERS, INC. AND CHELSEA WALTERS MCCLAIN, AS PRESUMED HEIR AND PERSONAL REPRESENTATIVE OF THE ESTATE OF BRIAN MCCLAIN, AND RABO AGRIFINANCE, LLC, DEFENDANTS.

FILED IN SAID COURT ON THE 24TH DAY OF APRIL, 2023

THE NAME AND ADDRESS OF THE ATTORNEY IS: DAVID L. LEBAS, ATTORNEY AT LAW, 8310 N. CAPITAL OF TX HWY, STE 490, AUSTIN, TX, 78731

**NOTICE TO DEFENDANT:** YOU HAVE BEEN SUED.  YOU MAY EMPLOY AN ATTORNEY.  IF YOU OR YOUR ATTORNEY DO NOT FILE A WRITTEN ANSWER WITH THE CLERK WHO ISSUED THIS CITATION BY 10:00 A.M. ON THE MONDAY NEXT FOLLOWING THE EXPIRATION OF TWENTY DAYS AFTER YOU WERE SERVED THIS CITATION AND PETITION, A DEFAULT JUDGMENT MAY BE TAKEN AGAINST YOU. IN ADDITION TO FILING A WRITTEN ANSWER WITH THE CLERK, YOU MAY BE REQUIRED TO MAKE INITIAL DISCLOSURES TO THE OTHER PARTIES OF THIS SUIT.  THESE DISCLOSURES GENERALLY MUST BE MADE NO LATER THAN 30 DAYS AFTER YOU FILE YOUR ANSWER WITH THE CLERK.  FIND OUT MORE AT TexasLawHelp.org.

ISSUED AND GIVEN UNDER MY HAND AND SEAL OF COURT AT OFFICE ON 24TH DAY OF APRIL, 2023.

ELAINE GERBER

ELAINE GERBER, DISTRICT CLERK
DEAF SMITH COUNTY, TEXAS
BY: _W. Figueiroa_ DEPUTY

## OFFICER'S RETURN

CAME TO HAND ON THE _____ DAY OF _____, 20____, AT _____ O'CLOCK ____.M. EXECUTED AT _____ WITHIN THE COUNTY OF _____ AT _____ O'CLOCK ___.M. ON THE _____ DAY OF _____, 20_____, BY DELIVERING TO THE WITHIN NAMED ACCOMPANYING COPY OF PETITION, HAVING FIRST ATTACHED A COPY OF SUCH PETITION TO SUCH CITATION AND INDORSED ON SUCH COPY OF CITATION THE DATE OF DELIVERY.

*** NOT EXECUTED FOR THE FOLLOWING REASON: _____

_____

FEE FOR SERVICE: $_____          _____ SHERIFF,

_____ COUNTY, TEXAS

BY: _____, DEPUTY

CIVIL CITATION–PERSONAL SERVICE

# THE STATE OF TEXAS

**TO:** RABO AGRIFINANCE, LLC; REGISTERED AGENT: CORPORATE CREATIONS NETWORK INC., 5444 WESTHEIMER #1000, HOUSTON, TX, 77056

DEFENDANT IN THE HEREINAFTER STYLED AND NUMBERED CAUSE: CI-2023D-025

YOU ARE HEREBY COMMANDED TO APPEAR BEFORE THE 222ND JUDICIAL DISTRICT COURT OF DEAF SMITH COUNTY, TEXAS, TO BE HELD AT THE COURTHOUSE OF SAID COUNTY IN THE CITY OF HEREFORD, DEAF SMITH COUNTY, TEXAS BY FILING A WRITTEN ANSWER TO THE PETITION OF PLAINTIFF AT OR BEFORE 10:00 O'CLOCK A.M. OF THE MONDAY NEXT AFTER THE EXPIRATION OF 20 DAYS AFTER THE DATE OF SERVICE HEREOF, A COPY OF PLAINTIFFS' ORIGINAL PETITION, APPLICATION FOR EMERGENCY APPOINTMENT OF A RECEIVER, AND REQUEST FOR INJUNCTIVE RELIEF WHICH ACCOMPANIES THIS CITATION, IN CAUSE NUMBER CI-2023D-025:

AGTEXAS FARM CREDIT SERVICES, AGTEXAS, PCA THORLAKSON DIAMOND T FEEDERS, LP
Plaintiffs,
VS
MCCLAIN FEED YARD, INC, 7M CATTLE FEEDERS, INC. AND CHELSEA WALTERS MCCLAIN, AS PRESUMED HEIR AND PERSONAL REPRESENTATIVE OF THE ESTATE OF BRIAN MCCLAIN, AND RABO AGRIFINANCE, LLC, DEFENDANTS.

FILED IN SAID COURT ON THE 24TH DAY OF APRIL, 2023

THE NAME AND ADDRESS OF THE ATTORNEY IS: DAVID L. LEBAS, ATTORNEY AT LAW, 8310 N. CAPITAL OF TX HWY, STE 490, AUSTIN, TX, 78731

**NOTICE TO DEFENDANT:** YOU HAVE BEEN SUED. YOU MAY EMPLOY AN ATTORNEY. IF YOU OR YOUR ATTORNEY DO NOT FILE A WRITTEN ANSWER WITH THE CLERK WHO ISSUED THIS CITATION BY 10:00 A.M. ON THE MONDAY NEXT FOLLOWING THE EXPIRATION OF TWENTY DAYS AFTER YOU WERE SERVED THIS CITATION AND PETITION, A DEFAULT JUDGMENT MAY BE TAKEN AGAINST YOU. IN ADDITION TO FILING A WRITTEN ANSWER WITH THE CLERK, YOU MAY BE REQUIRED TO MAKE INITIAL DISCLOSURES TO THE OTHER PARTIES OF THIS SUIT. THESE DISCLOSURES GENERALLY MUST BE MADE NO LATER THAN 30 DAYS AFTER YOU FILE YOUR ANSWER WITH THE CLERK. FIND OUT MORE AT TexasLawHelp.org.

ISSUED AND GIVEN UNDER MY HAND AND SEAL OF COURT AT OFFICE ON 24TH DAY OF APRIL, 2023.

ELAINE GERBER
ELAINE GERBER, DISTRICT CLERK
DEAF SMITH COUNTY, TEXAS
BY: W. Figueiras                DEPUTY

## OFFICER'S RETURN

CAME TO HAND ON THE _____ DAY OF _____, 20____, AT _____ O'CLOCK ____.M. EXECUTED AT _____ WITHIN THE COUNTY OF _____ AT _____ O'CLOCK ____.M. ON THE _____ DAY OF _____, 20_____, BY DELIVERING TO THE WITHIN NAMED ACCOMPANYING COPY OF PETITION, HAVING FIRST ATTACHED A COPY OF SUCH PETITION TO SUCH CITATION AND INDORSED ON SUCH COPY OF CITATION THE DATE OF DELIVERY.

*** NOT EXECUTED FOR THE FOLLOWING REASON: _____

_____

FEE FOR SERVICE: $_____        _____ SHERIFF,

_____ COUNTY, TEXAS

BY: _____, DEPUTY

Elaine Gerl
District Cl
Deaf Smith County, Tex
/s/ Whitney Figueiras
C: D. LEBAS, K. NETARDUS

Cause No. CI-2023D-025

| | | |
|---|---|---|
| AGTEXAS FARM CREDIT SERVICES, AGTEXAS, PCA, THORLAKSON DIAMOND T FEEDERS, LP, | § § § § § | IN THE 222nd DISTRICT COURT |
| Plaintiffs, | § § | |
| v. | § § | IN AND FOR |
| McCLAIN FEED YARD, INC., 7M CATTLE FEEDERS, INC., AND CHELSEA WALTERS McCLAIN, AS PRESUMED HEIR AND PERSONAL REPRESENTATIVE OF THE ESTATE OF BRIAN McCLAIN, AND RABO AGRIFINANCE, LLC, | § § § § § § § § § | |
| Defendants | § | DEAF SMITH COUNTY, TEXAS |

## EDWARD DUFURRENA AND OPEN A ARENA, LLC'S, ORIGINAL PETITION FOR INTERVENTION

TO THE HONORABLE JUDGE OF THIS COURT:

COME NOW INTERVENOR PLAINTIFFS, EDWARD DUFURRENA AND OPEN A ARENA, LLC, and file this Original Petition for Intervention, complaining of Defendants McCLAIN FEED YARD, INC., 7M CATTLE FEEDERS, INC., AND CHELSEA WALTERS McCLAIN, AS PRESUMED HEIR AND PERSONAL REPRESENTATIVE OF THE ESTATE OF BRIAN McCLAIN, AND RABO AGRIFINANCE, LLC, and, in support thereof, respectfully show the Court the following:

### I.
### PARTIES

1.1    Pursuant to Rule 60 of the Texas Rules of Civil Procedure, Intervenor files this Petition for Intervention as a party Plaintiff in the above-captioned action.

1.2    Intervenor Plaintiffs allege that the requirements of Section 30.014 of the Texas Civil Practices & Remedies Code impinge a fundamental right guaranteed to them by the Texas Constitution, and Intervenor Plaintiffs accordingly withhold any further identifying information other than as set forth below, unless and until ordered to do so by the Court.

1.3    Edward Dufurrena is an individual resident of Texas whose address is 820 CR 133, Gainesville, Texas 76240, that conducts business in various locations in Texas, including Deaf Smith County.

1.4    Open A Arena, LLC, is a Texas limited liability company with a principal place of business located at 19601 FM 1541, Canyon, Texas 79015, that conducts business in various locations in Texas, including Deaf Smith County.

## II.
## JURISDICTION, VENUE, AND DISCOVERY

2.1    This case falls within the general jurisdiction of this Court.  The acts of all Defendants the subject of this suit involve their purposeful contacts involving Texas.  The causes of action asserted in this case arise from or are connected with the acts committed by Defendants in Texas.  As a result, this Court can assert in personam jurisdiction over Defendants in accordance with state and federal constitutional guarantees, and the Texas Secretary of State is an agent for service of process for Defendants.

2.2    Venue is mandatory in this county pursuant to Texas Civil Practice and Remedies Code 64.07 because this is a suit to appoint a receiver for a corporation with property in Texas and this is the county where the principal office of the corporation is located.  Venue is proper in this case pursuant to Texas Civil Practice and Remedies Code Section 15.002(a)(1) because it is the county in which all or a substantial part of the events or omissions giving rise to the claims occurred and 15.002(a)(3), because it is the county in which Defendants McClain Feed Yard and 7M

Feeders have their principal office in this state. Venue exists in this case over the Defendants under TEX. CIV. PRAC.&REM. CODE §15.035 because one or more of these Defendants entered into contracts in whole or in part, in Deaf Smith County, Texas. Venue is proper in Deaf Smith County in accordance with TEX. CIV. PRAC.&REM. CODE § 15.002 because it is the county in which all or a substantial part of the events or omissions giving rise to the claim occurred, and if venue is valid as to one Defendant, it is valid as to all, pursuant to TEX. CIV. PRAC. & REM. CODE § 15.003.

2.3     Intervenor Plaintiffs intend to conduct discovery under Level 3 of Texas Rule of Civil Procedure 190.

2.4     Pursuant to Texas Rule of Civil Procedure 47, Intervenor Plaintiffs seek monetary relief in excess of $1,000,000.00.

## III.
### FACTUAL BACKGROUND

3.1     The original action and the Intervenors' action in this case all arise out of the facts set forth in Plaintiffs' Original Petition, Application for Emergency Appointment of a Receiver, and Request for Injunctive Relief that was filed in this cause on Friday, April 21, 2023, which facts are incorporated herein as if set forth fully verbatim. Like Plaintiffs, Intervenor Plaintiffs purchased cattle to be delivered to the grow yard facilities in Texas under the name "McClain Feed Yard, Inc.," which facilities were owned and operated in whole or in part by Decedent Brian McClain. Decedent also owned and operated Defendant 7M Cattle Feeders, a Kentucky corporation. The cattle were delivered for growing and health care before they were to be shipped to a finishing feed yard.

3.2     Defendant Rabo AgriFinance, LLC ("Rabo"), provided a credit facility to the McClain Defendants. On information and belief, Intervenor Plaintiffs allege that Rabo has itself

or through contract with third parties started liquidating the cattle and other assets of the McClain Parties and taken custody and control of the records of the McClain Parties.

3.3    Like Plaintiffs, Intervenor Plaintiffs also have experienced the disappearance of their cattle or the inability of the McClain Parties to account for their cattle. Intervenor Plaintiffs have been unable to locate at least the following head counts: Edward Dufurrena—520 head; Open A Arena, LLC—480 head. Because of the movable nature of the cattle, the uncertain location of the cattle, Mr. McClain's sudden death, and because of the unaccountability for the cattle entrusted to Defendants, a reasonable conclusion can be drawn that there is immediate danger that Defendants will neglect, conceal, dispose of, ill-treat, waste, or destroy the cattle, or remove them from their present location during the pendency of this suit.

3.4    Rabo has engaged a third party or parties to gather cattle and records in the possession of the McClain Defendants and has refused to permit one or more of the Plaintiffs to have access to such cattle and records. A reasonable conclusion can also be drawn that Rabo should be ordered to protect and preserve assets and records of the McClain Parties and of its dealings with the McClain Parties.

3.5    Pursuant to Rule 54, Intervenor Plaintiffs plead that all conditions precedent to their recovery have been performed or have occurred.

3.6    Throughout this Petition, where it is alleged that any Defendant performed or failed to perform any acts or activities, or made any representations, it is meant that such Defendant's agents, officers, servants, employees or representatives performed or failed to perform such acts or activities and at the time such acts or activities were done, they were with full authorization or ratification of said Defendant, or were in the normal or routine course of business.

## IV.
## CONVERSION AND COMMON LAW FRAUD

4.1     The allegations stated above are incorporated by reference.

4.2     Intervenor Plaintiffs are entitled to and seek recovery of judgment for conversion against the Defendants for the value of any cattle Defendants accepted for feed and care and which the Defendants have not returned, and/or for cattle misappropriated and converted from Intervenor Plaintiffs, and the profits they would have made from these cattle.

4.3     Intervenor Plaintiffs are entitled to and seek recovery of judgment for conversion against Rabo to the extent that Rabo acquired cattle or proceeds belonging to Intervenor Plaintiffs.

4.4     The McClain Defendants made misrepresentations to Intervenor Plaintiffs recklessly without any knowledge of the truth and as a positive assertion. Moreover, the misrepresentations were made with the intention that they should be acted on by Intervenor Plaintiffs, and Intervenor Plaintiffs in fact reasonably relied upon on those misrepresentations, suffering injury and damage as a result thereof. Thus, the misrepresentations and reliance so described were a proximate cause of injury and damage to the Intervenor Plaintiffs for which Intervenor Plaintiffs now sue in a sum within the jurisdictional limits of the Court.

4.5     Intervenor Plaintiffs seek judgment for their reasonable attorney fees at trial and through all applicable appellate levels, pursuant to TEX. CIV. PRAC. & REM. CODE § 38.001(6).

## V.
## NEGLIGENCE OF DEFENDANTS IN CARE AND MAINTENANCE, AND HIRING OR SUPERVISION OF MANAGEMENT PERSONNEL

5.1     The allegations stated above are incorporated by reference.

5.2     Defendants were negligent in the care and maintenance of cattle including, but not limited to keeping proper records of feeding and ownership, and in the hiring or supervision of their management personnel. Defendants are therefore liable for the losses Intervenor Plaintiffs

suffered as a result of their actions and omissions.  Their actions and omissions are described above.

5.3     The losses incurred by Intervenor Plaintiffs as a proximate result of Defendants' negligent actions exceed the minimum jurisdictional limits of this Court.  Intervenor Plaintiffs seek judgment for these damages.

## VI.
### TORTIOUS ACTIONS BY THE INDIVIDUAL DEFENDANT

6.1     The allegations stated above are incorporated by reference.

6.2     Decedent directed and controlled the actions and omissions of the McClain Defendant entities in a manner that was tortious in at least the following ways:

    a.  They misrepresented the existence of cattle in their possession;

    b.  They promised and agreed to purchase individual lots of cattle for customers, but sent false yard sheets to the customers for whom they promised and agreed to purchase cattle, although there were far fewer lots of cattle than were represented, such that multiple customers were being informed they were owners if the same cattle;

    c.  They used the yard sheets, and other means, such as verbal reports and inspections, to report to Plaintiffs that cattle delivered to Defendants were in their possession and under their control when in fact they were not; and

    d.  They directed and allowed the Defendant entities to keep and use the proceeds of their wrongdoing for their own purposes.

6.3     The Decedent's estate is therefore personally liable for all damages, both actual and punitive, that Plaintiffs suffered as a result of Defendant-entities' actions and omissions.

## VII.
### THE CORPORATE FICTION OF DEFENDANTS' LLCS SHOULD BE DISREGARDED

7.1     The allegations stated above are incorporated by reference.

7.2     The corporate entities of McClain Feed Yard, Inc., and 7M Cattle Company, LLC, should be disregarded and the Decedent's estate held personally liable for the damages, both actual and punitive, suffered by Intervenor Plaintiffs because:

a.      The corporate entities have been used by Defendants and their owners and principals as a sham to perpetuate a fraud;

b.      The corporate entity was organized and perpetrated as a mere tool or business conduit of Decedent's personal business;

c.      The corporate fiction has been used as a means to evade an existing legal obligation;

d.      The corporate fiction has been used to circumvent a statute; or

e.       The corporate fiction has been used to commit a protection of crime or to justify a wrong.

## VIII.
### CIVIL CONSPIRACY

8.1     Additionally, and/or in the alternative and based on information and belief, the McClain Defendants, and their agents or employees had an agreement with and/or understanding among them to commit and to cover up the wrongs and damages inflicted on Intervenor Plaintiffs. To this end, McClain Defendants and their agents, employees and/or representatives had a meeting of the minds and committed unlawful and overt acts which proximately caused further and additional damages to Intervenor Plaintiffs. Therefore, the McClain Defendants and their agents, employees and/or representatives are directly and vicariously liable for the actions of each other in furtherance of this conspiracy.

8.2     Intervenor Plaintiffs seek judgment for all damages, both actual and punitive, that Intervenor Plaintiffs suffered as a result of the actions of any of them.

8.3     Intervenor Plaintiffs seek judgment for their reasonable and necessary attorney's fees at trial and through all applicable appellate levels.

## IX.
### ATTORNEY'S FEES

9.1    By reason of the wrongful acts and conduct of the Defendants, Intervenor Plaintiffs have been required to employ attorneys to bring and prosecute this action. Intervenor Plaintiffs seek to recover their reasonable and necessary attorneys' fees and legal expenses, including expert witness fees.

9.2    Under all claims asserted herein, Intervenor Plaintiffs seek recovery of their reasonable and necessary attorneys' fees at trial and all appellate levels.

## X.
### DAMAGES

10.1    The facts and allegations stated above are incorporated herein by reference.

10.2    The McClain Defendants' acts, omissions, conduct and breaches were and continue to be a proximate and/or producing cause of damages to Intervenor Plaintiffs in an amount in excess of $1,000,000.00, and the McClain Defendants have been unjustly enriched by their actions in the same amount.

10.3    To the extent that Rabo has received funds or property in which the Intervenor Plaintiffs have superior rights, Intervenor Plaintiffs seek recovery of their damages from Rabo, either directly or by way of disgorgement.

10.4    Intervenor Plaintiffs will respectfully request the Court or Jury to determine the amount of Intervenor Plaintiffs' actual damages. Intervenor Plaintiffs seek recovery of their damages proximately caused by any responsible party, including without limitation, all damages caused by the Defendants, both actual and punitive.

10.5    The conduct of the McClain Defendants as described above, was committed in bad faith and in violation of the law and public policy of the State of Texas, was done willfully, knowingly and maliciously, was intentional and/or committed with conscious indifference to the rights of Intervenor Plaintiffs such as to warrant the imposition of punitive and/or exemplary

damages, expert witness fees and attorney's fees which Intervenor Plaintiffs seek to recover from Defendants.

## XI.
## REQUEST FOR DECLARATORY JUDGMENT

11.1    The facts and allegations stated above are incorporated herein by reference.

11.2    Intervenor Plaintiffs seek declaratory judgment as to priority of their claims to cattle and sales proceeds.

## XII.
## APPLICATION FOR INJUNCTIVE RELIEF

12.1    The facts and allegations stated above are incorporated herein by reference.

12.2    Intervenor Plaintiffs pray for a temporary restraining order, and following a hearing, a temporary injunction to restrain and enjoin the Defendants from interfering with their request to move their cattle to a secure location for feeding and care.  Intervenor Plaintiffs also seek an order requiring Defendants to preserve their records.

12.3    Intervenor Plaintiffs need immediate injunctive relief in this case to avoid the following irreparable injuries:

a.    Rabo and the McClain Defendants threaten to, have, and unless restrained and enjoined, will continue to prevent access to the enclosures or pens where the Cattle are located, either in Deaf Smith County or other locations, and therefore jeopardize the health and values of these cattle, and the integrity of these records, and thus jeopardize Intervenor Plaintiffs' rights before the question of ownership and priority of claims can be determined.

b.    The McClain Defendants have demonstrated their willingness to falsify records and conceal the location of cattle, and should be ordered to preserve any and all business records concerning their cattle and financial affairs.

c.    The McClain Defendants have demonstrated their willingness to falsify records and conceal the location of cattle, and should be ordered to refrain from withdrawing funds attributable to Intervenor Plaintiffs' cattle from financial institutions.

12.4    Intervenor Plaintiffs have no adequate remedy at law because the health of the cattle, or their physical location if moved, may deprive them of recourse against the Defendants

and recourse to possession of cattle they claim to own.  The inability to gain access to the cattle may put the Defendants in the position of an insolvent without the ability to respond in damages and, as a result Intervenor Plaintiffs' interest in the cattle may be lost and their ability to recover from the party(ies) who wrongfully caused the problem may also be lost.  In addition, Defendants have demonstrated their willingness to falsify records and/or conceal the location of cattle, and should be ordered to preserve any and all business records concerning their cattle and financial affairs to enable Intervenor Plaintiffs to determine the status of their cattle and accounts.

12.5    The enjoined Defendants will not be harmed by any delay resulting from an injunction.

12.6    To prevent irreparable harm to Intervenor Plaintiffs, all and any persons having notice of the injunction requested by Intervenor Plaintiffs should be restrained and prevented from transferring in any respect, selling, disposing, moving, transferring, concealing, or encumbering any property, including any cattle and including the funds at the Bank of Commerce.

12.7    Intervenor Plaintiffs are therefore entitled to a temporary restraining order restraining the Defendants, their agents, in any person having notice of the order from taking any action in selling, disposing, moving, transferring, encumbering, or otherwise affecting any of the Intervenor Plaintiffs' property, or cattle or funds in the Defendants' possession, and, upon hearing, that the terms of the temporary restraining order become a temporary injunction.

## XIII.
## REQUEST FOR APPOINTMENT OF RECEIVER

13.1    Intervenor Plaintiffs incorporate the allegations stated above.

13.2    Intervenor Plaintiffs request the Court to appoint a receiver in this action who is qualified under the provisions of TEX. CIV. PRAC. & REM. CODE , § 64.021, who is not a party

to this lawsuit, is not an attorney for a party to this lawsuit, and is not otherwise interested in this lawsuit including the application for appointment of a receiver.

13.3    Intervenor Plaintiffs have a probable interest in or right to the cattle described above.

13.4    The property, and particularly the Intervenor Plaintiffs' remaining cattle, is in danger of being lost, removed, wasted or materially injured.  Because of the McClain Defendants' defaults and Decedent's sudden death, it is likely that the McClain Defendants cannot to properly care for the Cattle.

13.5    Receivers may be appointed to prevent fraud or protect rights of persons in property which is in danger of being lost or suffering material injury.  *Ellis v. Filgo*, 185 S.W.2d 739 (Tex. Civ. App. - Dallas 1945, no writ).  Here a receiver is appropriate to protect Intervenor Plaintiffs' rights in their property and to prevent the property from being further lost, removed, wasted or materially injured by Defendants.

13.6    Receivers may be appointed when, among other things, (a) in an action by a creditor to subject any property or fund to his claim; (b) for a corporation that is insolvent, is in imminent danger of insolvency, has been dissolved, or has forfeited its corporate rights; or (c) in any other case in which a receiver may be appointed under the rules of equity.  TEX. CIV. PRAC. & REM. CODE, §§64.001(a)(4), (5) and (6); and 64.001(c)(1) and (2).

## XIV.
## SEQUESTRATION

14.1    Intervenor Plaintiffs incorporate the allegations stated above, as if fully set forth verbatim hereunder, and incorporates the exhibits referenced therein.

14.2    If this Court does not immediately enter an order appointing a Receiver, Intervenor Plaintiffs request the issuance of a Writ of Sequestration for the cattle.

14.3    Because of the movable nature of the cattle, and because of the defaults of Defendants, a reasonable conclusion may be drawn that Defendants will engage in using, selling, disposing, encumbering, mortgaging, leasing, moving, operating, pledging, or otherwise adversely affecting the interests of Intervenor Plaintiffs in the cattle.

14.4    Intervenor Plaintiffs seek assistance through a writ of sequestration to enforce its security interest and it meets the requirements of TEX. CIV. PRAC. & REM. CODE Ch. 62.

## XV.
## INJUNCTION AND RESTRAINING ORDER

15.1    Intervenor Plaintiffs incorporate the allegations stated above, as if fully set forth verbatim hereunder, and incorporates the exhibits referenced therein.

15.2    Pending the final outcome of this action, and until further order, and for the purpose of affording Intervenor Plaintiffs appropriate protection under the Texas Rules of Civil Procedure, Intervenor Plaintiffs request the issuance of a mandatory injunction and restraining order directing Defendants to deliver the Defendant-entities to the Receiver and restraining Defendants and its respective partners, officers, agents, servants, employees, attorneys or associates from using, selling, disposing, encumbering, mortgaging, leasing, moving, operating, pledging, or in any manner adversely affecting the interests of Plaintiffs in the Defendant-entities.

15.3    If this Court does not immediately enter an order appointing a Receiver, sequestering the cattle, proceeds, and accounts receivables and granting such other relief as is necessary or appropriate to protect Intervenor Plaintiffs' ownership and security interests and liens, Intervenor Plaintiffs will be irreparably harmed.  They have no adequate remedy at law if such relief is not granted.

15.4   If the Court does not immediately appoint a Receiver, and if Defendants are permitted to stay in possession or control of its assets, Intervenor Plaintiffs also request the Court to grant additional relief protecting Intervenor Plaintiffs' interest and liens as follows:

a. Prohibiting any payments or distributions to or for the benefit of the McClain Defendant-entities' insiders, affiliates, parents or partners or other related individuals or entities for management services, commissions or otherwise, or Rabo;

b. Requiring Defendant-entities to furnish Plaintiffs, without further demand, the following information:

   i.   Cattle sales and purchase records;

   ii.  Banking records; and

   iii. Cattle movement and shipping records.

## PRAYER

WHEREFORE, ALL PREMISES CONSIDERED, Intervenor Plaintiffs respectfully pray that all Defendants be cited to appear and to answer this Petition and that upon final hearing hereof, Intervenor Plaintiffs have Judgment as follows:

a. An Order from this Court restraining and enjoining Defendants and their attorneys and agents and employees from removal of the cattle and from preventing Intervenor Plaintiffs from inspecting the records;

b. An Order from this Court restraining and enjoining Defendants and their attorneys and agents and employees from disposing of records of their activities related to the subject of this case;

c. An Order from this Court restraining and enjoining Defendants from disposing or, altering, or concealing records concerning their cattle and financial affairs;

d. An Order declaring the rights of the parties to the cattle and their proceeds;

e. Judgment for actual and punitive damages;

e. Judgment for attorney's fees through trial and at all applicable appellate levels, as well as costs; and

f. Any and all further relief, legal and equitable, to which Intervenor Plaintiffs may have now and ever more shown themselves justly entitled.

Respectfully submitted,

STOCKARD, JOHNSTON, BROWN,
NETARDUS & DOYLE, P.C.

Kenneth R. Netardus, SBN 00791343
P.O. Box 3280
Amarillo, Texas, Texas 79116
Tel: (806) 372-2202
Fax: (806) 379-7799
knetardus@sjblawfirm.com

By: */s/Kenneth R. Netardus*
      Kenneth R. Netardus

ATTORNEYS FOR INTERVENOR PLAINTIFFS

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing document was sent to the following as signified below on this 25th day of April 2023:

| | | |
|---|---|---|
| David L. LeBas<br>dlebas@namanhowell.com | Certified Mail, Return Receipt Requested | ☐ |
| Rachel Barr<br>rbarr@namanhowell.com | United States Regular Mail | ☐ |
| Naman Howell Smith & Lee, PLLC<br>8310 N. Capital of Texas Highway, Suite 490 | Overnight Mail | ☐ |
| Austin, Texas 78731<br>*Attorneys for Plaintiffs AgTexas Farm Credit* | Electronic Mail | ☒ |
| *Services, AgTexas PCA, and Thorlakson<br>Diamond T Feeders, L.P.* | Electronic Filing System | ☒ |

                    */s/Kenneth R. Netardus*
                    Kenneth R. Netardus

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Rebecca McMurry on behalf of Kenneth Netardus
Bar No. 791343
rmcmurry@sjblawfirm.com
Envelope ID: 74989095
Filing Code Description: Counter Claim/Cross Action/Interpleader/Intervention/Third Party
Filing Description: Petition in Intervention
Status as of 4/25/2023 1:10 PM CST

Associated Case Party: AgTexas Farm Credit Services

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| DAVID LLEBAS | | dlebas@namanhowell.com | 4/25/2023 11:40:38 AM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Rachel Barr | 24118185 | rbarr@namanhowell.com | 4/25/2023 11:40:38 AM | SENT |
| Kenneth RNetardus | | knetardus@sjblawfirm.com | 4/25/2023 11:40:38 AM | SENT |
| Rebecca AMcMurry | | rmcmurry@sjblawfirm.com | 4/25/2023 11:40:38 AM | SENT |

4/28/2023 2:22:08 pm
Elaine Gerber
District Clerk
Deaf Smith County, Texas
/s/ Whitney Figueiras
c: All

## CAUSE NO. CI-2023D-025

| | | |
|---|---|---|
| **AGTEXAS FARM CREDIT SERVICES, AGTEXAS, PCA, THORLAKSON DIAMOND T FEEDERS, LP**<br><br>*Plaintiffs,*<br>**and**<br><br>**DENNIS BUSS, BUSS FAMILY TRUST, EDDIE BRYANT, ROBERT E. GRAY, RONNIE GRAY, GRAY BROTHERS, CRAIG SUTTON, AMY SUTTON, STEVE RYAN, JANICE LAWHON, AJ JACQUES LIVING TRUST, GUNGOLL CATTLE, LLC, LEAH GUNGOLL, MORRISON CAFÉ, LLC, GARY AND JAN LESH FAMILY TRUST, JARED LESH, JORDAN LESH, LLC, JOEL BROOKSHIRE, GENE BROOKSHIRE FAMILY, LP, DOUGLAS FINLEY, SCARLET AND BLACK CATTLE, LLC, BRYAN BLACKMAN, STEVE T SCOTT FARM, INC., SCOTT LIVESTOCK COMPANY, INC., ARNOLD BRAUN TRUST, ROBERT BRAUN, JIM RININGER, ROBERT SPRING, MICHAEL EVANS, MIRANDA EVANS, CHARLES LOCKWOOD, COLE LOCKWOOD, SHERLE LOCKWOOD, NIKKI LOCKWOOD, LYNDAL VAN BUSKIRK, JANE VAN BUSKIRK, COLBY VAN BUSKIRK, SUSAN VAN BUSKIRK, JIMMY GREER, DUSTIN JOHNSON**<br><br>**Intervenors-Plaintiffs** | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | **IN THE DISTRICT COURT**<br><br><br><br><br>**222nd JUDICIAL DISTRICT**<br><br><br><br><br><br>**DEAF SMITH COUNTY, TEXAS** |

---

**ORIGINAL PLEA IN INTERVENTION**                                    **Page 1 of 20**

| | |
|---|---|
| **v.**<br><br>**MCCLAIN FEED YARD, INC.,**<br>**MCCLAIN FARMS, INC., 7M CATTLE**<br>**FEEDERS, INC., CHELSEA WALTERS**<br>**MCCLAIN, AS PRESUMED HEIR AND**<br>**PERSONAL REPRESENTATIVE OF**<br>**THE ESTATE OF BRIAN MCCLAIN,**<br>**AND RABO AGRIFINANCE, LLC.**<br><br>     *Defendants.*<br>**and**<br><br>**MCCLAIN FARMS, INC.,**<br><br>   **Intervenor-Defendant.** | |

### ORIGINAL PLEA IN INTERVENTION

**TO THE HONORABLE COURT:**

   Pursuant to Texas Rule of Civil Procedure 60, Dennis Buss, Buss Family Trust, Eddie Bryant, Robert E. Gray, Ronnie Gray, Gray Brothers, Steven Ryan, Janice Lawhon, AJ Jacques Living Trust, Gungoll Cattle, LLC, Leah Gungoll, Morrison Café, LLC, Gary and Jan Lesh Family Trust, Jared Lesh, Jordan Lesh, LLC, Joel Brookshire, Gene Brookshire Family, LP, Douglas Finley, Scarlet and Black Cattle, LLC, Bryan Blackman, Steve T. Scott Farm, Inc., Scott Livestock Company, Inc., Arnold Braun Trust, Robert Braun, Jim Rininger, Robert Spring, Michael Evans, Miranda Evans, Charles Lockwood, Cole Lockwood, Sherle Lockweood, Nikki Lockwood, Lyndal Van Buskirk, Jane Van Buskirk, Colby Van Buskirk, Susan Van Buskirk, Jimmy Greer, and Dustin Johnson file this Original Plea in Intervention and would respectfully show the Court the following:

## I.      BACKGROUND

1.      The Defendants in this case perpetrated a complex and far-reaching scheme to commit fraud through the purchase and sale of cattle.  This scheme, which spanned multiple states and involved numerous individuals, resulted in substantial losses in the millions of dollars. Through a combination of false representations, fraudulent transactions, and other illegal activities, Defendants engaged in a deliberate and systematic effort to deceive and defraud numerous innocent victims.  The details of this scheme, which are being uncovered daily, demonstrate a callous disregard for the law and the well-being of others.

2.      The scope and magnitude of Defendants' fraudulent scheme is staggering.  This scheme has had devastating financial consequences for numerous individuals and entities.  The Intervenors deserve swift and decisive action to protect their interests and to preserve the status quo during the pendency of this litigation.  This may include freezing Defendants' assets, reclaiming cattle that have been removed from Defendants' feed yards, enjoining further fraudulent activity, appointing a receiver, and other appropriate remedies deemed necessary to protect the interest of Intervenors.

## II.      STATUS OF INTERVENORS

3.      Dennis Buss is an individual with citizenship in Oklahoma.  Intervenor entered into an agreement with one or more of the McClain Defendants.

4.      Buss Family Trust is an entity formed under the laws of Oklahoma.  Intervenor entered into an agreement with one or more of the McClain Defendants

5.      Eddie Bryant is an individual with citizenship in Texas. Intervenor entered into an agreement with one or more of the McClain Defendants.

---

6.      Robert Gray is an individual with citizenship in Oklahoma. Intervenor entered into an agreement with one or more of the McClain Defendants.

7.      Ronnie Gray is an individual with citizenship in Oklahoma. Intervenor entered into an agreement with one or more of the McClain Defendants.

8.      Gray Brothers is a partnership formed in Oklahoma.  Intervenor entered into an agreement with one or more of the McClain Defendants.

9.      Craig Sutton is an individual with citizenship in Texas. Intervenor entered into an agreement with one or more of the McClain Defendants.

10.     Amy Sutton is an individual with citizenship in Texas. Intervenor entered into an agreement with one or more of the McClain Defendants.

11.     Steve Ryan is an individual with citizenship in Oklahoma. Intervenor entered into an agreement with one or more of the McClain Defendants.

12.     AJ Jacques Living Trust is entity formed under the laws of Oklahoma. Intervenor entered into an agreement with one or more of the McClain Defendants.

13.     Gungoll Cattle, LLC is a Oklahoma limited liability company. Intervenor entered into an agreement with one or more of the McClain Defendants.

14.     Leah Gungoll is a citizen of Oklahoma.  Intervenor entered into an agreement with one or more of the McClain Defendants.

15.     Morrison Café, LLC is an Oklahoma limited liability company.  Intervenor entered into an agreement with one or more of the McClain Defendants.

16.     Gary and Jan Lesh Family Trust is an Oklahoma entity.  Intervenor entered into an agreement with one or more of the McClain Defendants.

17.     Jared Lesh is an individual with citizenship in Texas.  Intervenor entered into an agreement with one or more of the McClain Defendants.

18.     Joel Brookshire is an individual with citizenship in Texas.  Intervenor entered into an agreement with one or more of the McClain Defendants.

19.     Gene Brookshire Family Limited Partnership is a Texas entity.  Intervenor entered into an agreement with one or more of the McClain Defendants.

20.     Douglas Finley is a citizen of Texas.  Intervenor entered into an agreement with one or more of the McClain Defendants.

21.     Scarlet and Black Cattle, LLC is an entity formed under the laws of Texas. Intervenor entered into an agreement with one or more of the McClain Defendants.

22.     Janice Lawhon is a citizen of Oklahoma.  Intervenor entered into an agreement with one or more of the McClain Defendants.

23.     Jordan Lesh, LLC is an Oklahoma entity.  Intervenor entered into an agreement with one or more of the McClain Defendants.

24.     Bryan Blackman is a citizen of Oklahoma.  Intervenor entered into an agreement with one or more of the McClain Defendants.

25.     Steve T Scott Farm, Inc. is a Mississippi entity.   Intervenor entered into an agreement with one or more of the McClain Defendants.

26.     Scott Livestock Company, Inc. is a Mississippi entity.  Intervenor entered into an agreement with one or more of the McClain Defendants.

27.     Arnold Braun Trust is an Indiana entity. is a Mississippi entity.  Intervenor entered into an agreement with one or more of the McClain Defendants.

---

28.     Robert Braun is a citizen of Indiana.  is a Mississippi entity.  Intervenor entered into an agreement with one or more of the McClain Defendants.

29.     Jim Rininger is a citizen of Indiana. is a Mississippi entity.  Intervenor entered into an agreement with one or more of the McClain Defendants.

30.     Robert Spring is a citizen of Oklahoma.  Intervenor entered into an agreement with one or more of the McClain Defendants.

31.     Michael Evans is a citizen of Kentucky.  Intervenor entered into an agreement with one or more of the McClain Defendants.

32.     Miranda Evans is a citizen of Kentucky.  Intervenor entered into an agreement with one or more of the McClain Defendants.

33.     Charles Lockwood is a citizen of Oklahoma. is a Mississippi entity.  Intervenor entered into an agreement with one or more of the McClain Defendants.

34.     Cole Lockwood is a citizen of Oklahoma. is a Mississippi entity.  Intervenor entered into an agreement with one or more of the McClain Defendants.

35.     Sherle Lockwood is a citizen of Oklahoma. is a Mississippi entity.  Intervenor entered into an agreement with one or more of the McClain Defendants.

36.     Nikki Lockwood is a citizen of Oklahoma. is a Mississippi entity.  Intervenor entered into an agreement with one or more of the McClain Defendants.

37.     Lyndal Van Buskirk is a citizen of Oklahoma. is a Mississippi entity.  Intervenor entered into an agreement with one or more of the McClain Defendants.

38.     Colby Van Buskirk is a citizen of Oklahoma. is a Mississippi entity.  Intervenor entered into an agreement with one or more of the McClain Defendants.

39.     Susan Van Buskirk is a citizen of Oklahoma. is a Mississippi entity.  Intervenor entered into an agreement with one or more of the McClain Defendants.

40.     Jimmy Greer is a citizen of Kentucky.  Intervenor entered into an agreement with one or more of the McClain Defendants.

41.     Dustin Johnson is a citizen of Mississippi.  Intervenor entered into an agreement with one or more of the McClain Defendants.

### III.    STATUS OF OTHER PARTIES

42.     Plaintiffs AgTexas Farm Credit Services is a federally chartered agricultural credit association formed under the Farm Credit Act of 1933.  AgTexas, PCS is a federal chartered production credit association formed under the Farm Credit Act of 1933 (collectively "AgTexas"). AgTexas does business in Texas, including Deaf Smith County, Texas.

43.     Thorlakson Diamond Feeders, L.P. ("Thorlakson") is a Texas limited partnership. It does business in Texas, including Deaf Smith County Texas.

44.     Rabo AgriFinance, Defendant, is a limited liability company that does business in various locations in Texas, including Deaf Smith County ("Rabo"). It can be served by serving it registered agent, Corporate Creations Network Inc., 5444 Westheimer #1000, Houston, Texas 77056.

45.     McClain Feed Yard, Inc., Defendant, is a domestic for-profit corporation.  It can be served through its registered agent Brian McClain, 320 Schley Street, Hereford, Texas 79045. Issuance of citation is requested at this time.

46.     McClain Farms, Inc., Defendant, is a foreign for-profit corporation incorporated under the laws of Kentucky and registered to do business in Texas.  It may be served through its

---

registered agent, Brian McClain, at 824 Mullins Lane, Benton, Kentucky 42025. Issuance of citation is requested at this time.

47. 7M Cattle Feeders, Inc., Defendant, is a foreign for-profit corporation incorporated under the laws of Kentucky and registered to do business in Texas. It may be served through its registered agent, McClain Feed Yard, Inc., 4010 FM 1057, Hereford, Texas 79045. Issuance of citation is requested at this time.

48. Chelsea Walters McClain, Defendant in her capacity as presumed heir and personal representative of the estate of Brian McClain, is the widow of Brian McClain, a deceased individual resident of Kentucky who engaged in business in this State. Mrs. McClain does not maintain a designated agent for service of process in Texas. Service of process on this Defendant may therefore be obtained under TEX. CIV. PRAC. & REM. CODE §17.044, by serving the Texas Secretary of State for forwarding to Defendant Brian McClain at 824 Mullins Lane, Benton, KY 42025. The forwarding address for the Texas Secretary of State to issue citation to this Defendant is: Texas Secretary of State Statutory Document Section, P.O. Box 12887, Austin, Texas 78711. The address of this Defendant is stated above. Issuance of citation is requested at this time. (McClain Feed Yard, Inc., McClain Farms, Inc., and 7M Cattle Feeders, Inc., and Chelsea Walters McClain are collectively referred to as "McClain Defendants").

## IV. STATEMENT OF RELEF REQUESTED

49. Pursuant to Rule 47 of the Texas Rules of Civil Procedure, Intervenors assert a cause of action for injunction, interpleader, for declaratory judgment, and for damages within the jurisdictional limits of the Court.

50. Pursuant to TEX. R. CIV. P. 47 and TEX. CIV. PRAC. & REM. CODE §64.001(a)(2), (5), and (6), Intervenors make an application for emergency appointment of a

receiver and for sequestration and the protection of property rights of Intervenors and other interested parties

## V.   JURISDICTION AND VENUE

51.     This case falls within the general jurisdiction of this Court.

52.     Venue is mandatory in this county pursuant to Texas Civil Practice and Remedies Code 64.07 because this is a suit to appoint a receiver for a corporation with property in Texas and this is the county where the principal office of the corporation is located.

53.     Venue is proper in this case pursuant to Texas Civil Practice and Remedies Code section 15.002(a)(1) because it is the county in which all or a substantial part of the events or omissions giving rise to the claims occurred and 15.002(a)(3), because it is the county in which Defendants McClain Feed Yard and 7M Feeders have their principal office in this state.

54.     Venue exists in this case over the Defendants under TEX. CIV. PRAC. & REM. CODE §15.035 because one or more of these Defendants entered into contracts in whole or in part, in Deaf Smith County, Texas.

55.     The acts of all Defendants the subject of this suit involve their purposeful contacts involving Texas. The causes of action asserted in this case arise from or are connected with the acts committed by Defendants in Texas. As a result, this Court can assert in personam jurisdiction over Defendants in accordance with state and federal constitutional guarantees, and the Texas Secretary of State is an agent for service of process for Defendants.

56.     Venue is proper in Deaf Smith County in accordance with TEX. CIV. PRAC. & REM. CODE § 15.002 because it is the county in which all or a substantial part of the events or omissions giving rise to the claim occurred, and if venue is valid as to one Defendant, it is valid as to all, pursuant to TEX. CIV. PRAC. & REM. CODE § 15.003.

## VI.   FACTUAL BACKGROUND

57.     Intervenors entered into an agreement with one or more of the McClain Defendants that functioned similar to a cattle feeding agreement or profit sharing agreement.   Under these agreements, Intervenors would purchase cattle, which would then be delivered to the McClain Defendants for the feeding and management of the cattle.   The McClain Defendants were responsible for covering the cost of feeding and management of cattle.   The cattle feeding agreements included a provision for the sale of the finished cattle and the distribution of proceeds between Intervenors and the McClain Defendants.

58.     Pursuant to the these agreements, cattle were to be delivered to feed yards located in Texas and Kentucky for growing and then shipped to a finishing feed yard.

59.     Rabo provided a credit facility to the McClain Defendants. On information and belief, Intervenors allege that Rabo has itself or through contract with third parties started liquidating the cattle and other assets of the McClain Defendants and taken custody and control of the records of the McClain Parties.

60.     Some of these cattle were and are believed to be currently located in Deaf Smith County, Texas.

61.     In April of 2023, Intervenors learned of some of the issues that are the subject of this suit, including the disappearance or inability of the McClain Defendants to account for many thousands of cattle and millions of dollars in cattle proceeds. Before this, the McClain Defendants had represented to Intervenors that they had possession of thousands of cattle in which Intervenors had an interest, which Intervenors paid for pursuant to the cattle feeding agreements.

62.     On April 13, 2023, decedent passed away unexpectedly at the age of 52.

---

63.    Because of the movable nature of the cattle, the uncertain location of the cattle, Mr. McClain's sudden death, and because of the unaccountability for the cattle entrusted to Defendants, a reasonable conclusion can be drawn that there is immediate danger that Defendants will neglect, conceal, dispose of, ill-treat, waste, or destroy the cattle, or remove them from their present location during the pendency of this suit.

64.    Rabo has engaged a third party or parties to gather cattle and records in the possession of the McClain Defendants and has refused to permit one or more of the Intervenors to have access to such cattle and records. A reasonable conclusion can also be drawn that Rabo should be ordered to protect and preserve assets and records of the McClain Parties and of its dealings with the McClain Parties.

65.    Throughout this Petition, where it is alleged that any Defendant performed or failed to perform any acts or activities, or made any representations, it is meant that such Defendant's agents, officers, servants, employees or representatives performed or failed to perform such acts or activities and at the time such acts or activities were done, they were with full authorization or ratification of said Defendant, or were in the normal or routine course of business.

## VII.    CONDITIONS PRECEDENT

66.    Any applicable notices under the Texas Civil Practice and Remedies Code and the Texas Business and Commerce Code, and any other applicable statute or law, have been given in a timely manner prior to the filing of this action.  All conditions precedent to Intervenors' claims for relief have been performed, been waived, or have occurred.

## VIII.    CLAIMS FOR RELIEF

67.    Intervenors assert the following claims for relief, all of which are pled in the alternative where necessary.

---

**ORIGINAL PLEA IN INTERVENTION**                                    **Page 11 of 20**

## COUNT 1 – BREACH OF CONTRACT

68.    Intervenors incorporate by reference as if fully set forth herein the preceding and proceeding paragraphs.

69.    Intervenors would show that the agreements with one of more of the McClain Defendants constitute valid and enforceable contracts.  The agreements state that Intervenors would purchase cattle, the McClain Defendants would be responsible for feeding and managing the cattle, the McClain Defendants would sell the cattle directly to third parties or through authorized dealers, and that the parties would divide the proceeds according to the terms of the agreements.

70.    Intervenors performed under the agreements. The McClain Defendants breached the agreements by wholly failing to perform their contractual obligations owed to Intervenors. The McClain Defendants breach caused Intervenors actual damages.

71.    Intervenors seek judgment against The McClain Defendants for actual damages within the jurisdictional limits of this court, along with interests, costs, and attorney's fees.

## COUNT 2 – CONVERSION AND COMMON LAW FRAUD

72.    Intervenors incorporate by reference as if fully set forth herein the preceding and proceeding paragraphs.

73.    Intervenors are entitled to and seek recovery of judgment for conversion against the McClain Defendants for the value of any cattle they accepted for feed and care and which they have not returned (or sold without remittance of the proceeds), and/or cattle misappropriated and converted from Intervenors, and the profits they would have made from these cattle.

74.    Intervenors are entitled to and seek recovery of judgment for conversion against Rabo to the extent that Rabo acquired cattle or proceeds belonging to Intervenors.

75.    The McClain Defendants made misrepresentations to Intervenors recklessly without any knowledge of the truth and as a positive assertion. Moreover, the misrepresentations were made with the intention that they should be acted on by Intervenors, and Intervenors in fact relied upon on those misrepresentations, suffering injury and damage as a result thereof. Thus, the misrepresentations and reliance so described were a proximate cause of injury and damage to the Intervenors for which Intervenors now sue in a sum within the jurisdictional limits of the Court.

76.    Intervenors seek judgment for their reasonable attorney fees at trial and through all applicable appellate levels, pursuant to TEX. CIV. PRAC. & REM. CODE § 38.001(6).

## COUNT 3 - NEGLIGENCE

77.    Intervenors incorporate by reference as if fully set forth herein the preceding and proceeding paragraphs.

78.    Defendants were negligent in the care and maintenance of cattle including, but not limited to keeping proper records of feeding and ownership, and in the hiring or supervision of their management personnel. Defendants are therefore liable for the losses Intervenors suffered as a result of their actions and omissions. Their actions and omissions are described above.

79.    The losses incurred by Intervenors as a proximate result of Defendants' negligent actions exceed the minimum jurisdictional limits of this Court. Intervenors seek judgment for these damages.

## COUNT 4 – DISREGARD CORPORATE FICTION/CORPORATE VEIL PIERCING

80.    Intervenors incorporate by reference as if fully set forth herein the preceding and proceeding paragraphs.

---

81.     McClain Feed Yard, Inc.'s, McClain Farms, Inc., and 7M Cattle Company, LLC's corporate entity should be disregarded and the Decedent's estate held personally liable for the damages, both actual and punitive, suffered by Intervenors because:

     a.    The corporate entity has been used by the Defendants and their owners and principals as a sham to perpetuate a fraud;

     b.    The corporate entity was organized and perpetrated as a mere tool or business conduit of Decedent's personal business;

     c.    The corporate fiction has been used as a means to evade an existing legal obligation;

     d.    The corporate fiction has been used to circumvent a statute; or

     e.    The corporate fiction has been used to commit a protection of crime or to justify a wrong.

### COUNT 4 – CIVIL CONSPIRACY

82.     Intervenors incorporate by reference as if fully set forth herein the preceding and proceeding paragraphs.

83.     Additionally, and/or in the alternative and based on information and belief, the McClain Defendants, and their agents or employees had an agreement with and/or understanding among them to commit and to cover up the wrongs and damages inflicted on Intervenors. To this end, Defendants and their agents, employees and/or representatives had a meeting of the minds and committed unlawful and overt acts which proximately caused further and additional damages to Intervenors. Therefore, the McClain Defendants and their agents, employees and/or representatives are directly and vicariously liable for the actions of each other in furtherance of this conspiracy.

84.     Intervenors seek judgment for all damages, both actual and punitive, that

---

Intervenors suffered as a result of the actions of any of them.

85.    Intervenors seek judgment for their reasonable and necessary attorney's fees at trial and through all applicable appellate levels.

## COUNT 5 – DECLARATORY JUDGMENT

86.    Intervenors incorporate by reference as if fully set forth herein the preceding and proceeding paragraphs.

87.    Intervenors seek declaratory judgment as to priority of their claims to cattle and sales proceeds.

## COUNT 6 – APPLICATION FOR INJUNCTIVE RELIEF

88.    Intervenors incorporate by reference as if fully set forth herein the preceding and proceeding paragraphs.

89.    Intervenors pray for a temporary restraining order, and following a hearing, a temporary injunction to restrain and enjoin the Defendants from interfering with their request to move the remaining cattle to a secure location for feeding and care. Intervenors also seek an order requiring Defendants to preserve their records.

90.    Intervenors need immediate injunctive relief in this case to avoid the following irreparable injuries:

      a.  Rabo and the McClain Defendants threaten to, have and unless restrained and enjoined, will continue to prevent access to the enclosures or pens where the Cattle are located, either in Deaf Smith County or other locations, and therefore jeopardize the health and values of these cattle, and the integrity of these records, and thus jeopardize Intervenors' rights before the question of ownership and priority of claims can be determined.

      b.  The McClain Defendants have demonstrated their willingness to falsify records and conceal the location of cattle and should be ordered to preserve any and all

---

**ORIGINAL PLEA IN INTERVENTION**           **Page 15 of 20**



business records concerning their cattle and financial
affairs.

    c.  The McClain Defendants have demonstrated their
willingness to falsify records and conceal the location of
cattle and should be ordered to refrain from withdrawing
the funds from financial institutions.

    91.    Intervenors have no adequate remedy at law because the health of the cattle, or their

physical location if moved, may deprive Intervenors from recourse against the Defendants and

recourse to possession of cattle they claim to own. The inability to gain access to the cattle may

put the Defendants in the position of being insolvent without the ability to respond in damages

and, as a result Intervenors' interest in the cattle may be lost and their ability to recover from the

party(ies) who wrongfully caused the problem may also be lost. In addition, Defendants have

demonstrated their willingness to falsify records and conceal the location of cattle and should be

ordered to preserve any and all business records concerning their cattle and financial affairs to

enable Intervenors to determine the status of their cattle and accounts.

    92.    The enjoined Defendants will not be harmed by any delay resulting from an

injunction.

    93.    To prevent irreparable harm to Intervenors, all and any persons having notice of the

injunction requested by Intervenors should be restrained and prevented from transferring in any

respect, selling, disposing, moving, transferring, concealing, or encumbering any property,

including any cattle and including the funds at any bank accounts.

    94.    Intervenors are therefore entitled to a temporary restraining order restraining the

Defendants, their agents, in any person having notice of the order from taking any action in selling,

disposing, moving, transferring, encumbering, or otherwise affecting any of the Defendants'

property, or cattle or funds in the Defendants' possession, and, upon hearing, that the terms of the

---

temporary restraining order become a temporary injunction.

## COUNT 7 -SEQUESTRATION

95.     Intervenors incorporate by reference as if fully set forth herein the preceding and proceeding paragraphs and incorporates the exhibits referenced therein.

96.     Intervenors request the issuance of a Writ of Sequestration for the cattle.

97.     Because of the movable nature of the cattle, and because of the defaults of Defendants, a reasonable conclusion may be drawn that Defendants will engage in using, selling, disposing, encumbering, mortgaging, leasing, moving, operating, pledging, or otherwise adversely affecting the interests of Intervenors in the cattle, Defendant-entities and any asset that secures repayment of the loans.

98.     Intervenors seek assistance through a writ of sequestration to enforce its security interest and it meets the requirements of TEX. CIV. PRAC. & REM. CODE Ch. 62.

## COUNT 8 – INJUNCTION AND RESTRAINING ORDER

99.     Intervenors incorporate the allegations stated above, as if fully set forth verbatim hereunder, and incorporates the exhibits referenced therein.

100.     Pending the final outcome of this action, and until further order, and for the purpose of affording Intervenors appropriate protection under the Texas Rules of Civil Procedure, Intervenors request the issuance of a mandatory injunction and restraining order directing Defendants to deliver the Defendant-entities to the Receiver and restraining Defendants and its respective partners, officers, agents, servants, employees, attorneys or associates from using, selling, disposing, encumbering, mortgaging, leasing, moving, operating, pledging, or in any manner adversely affecting the interests of Intervenors in the Defendant-entities.

---

**ORIGINAL PLEA IN INTERVENTION**

101.    If this Court does not immediately enter an order appointing a Receiver, sequestering the cattle, proceeds, and accounts receivables and granting such other relief as is necessary or appropriate to protect Intervenors' ownership and security interests and liens, Intervenors will be irreparably harmed. It has no adequate remedy at law if such relief is not granted.

102.    If the Court does not immediately appoint a Receiver, and if Defendants are permitted to stay in possession or control of its assets, Intervenors also request the Court to grant additional relief protecting Intervenors' interest and liens as follows:

    a.    Prohibiting any payments or distributions to or for the benefit of the McClain Defendant-entities' insiders, affiliates, parents or partners or other related individuals or entities for management services, commissions or otherwise, or Rabo;

    b.    Requiring Defendant-entities to furnish Intervenors, without further demand, the following information:

    c.    Cattle sales and purchase records;

    d.    Banking records;

    e.    Cattle movement records;

## CONCLUSIONS

WHEREFORE, PREMISES CONSIDERED, Intervenors respectfully pray that all Defendants be cited to appear and to answer this Petition and that upon final hearing hereof, Intervenors have Judgment as follows:

    a.    An Order from this Court restraining and enjoining Defendants and their attorneys and agents and employees from removing the Cattle and permitting inspection of the records;

    b.    An Order from this Court restraining and enjoining Defendants and their attorneys and agents and employees from disposing of records of their activities related to the subject of this case;

    c.    An Order from this Court restraining and enjoining Defendants

---

from disposing or, altering, or concealing records concerning their cattle and financial affairs;

d.      An Order declaring the rights of the parties to the cattle and their proceeds;

e.      Judgment for actual and punitive damages;

f.      Judgment for attorneys' fees through trial and at all applicable appellate levels, and costs;

g.      Any and all further relief, legal and equitable, to which Intervenors may be now and ever more entitled.

Respectfully submitted,

SIMMONS SMITH BROWN, PLLC

By:    _____

**Abel A. Leal**
**Of Counsel**
State Bar No. 24026989
abel@ssbtxlaw.com
Tel. (214) 395-5325
8144 Walnut Hill Lane
Suite 1080
Dallas, Texas 75231
Fax. (806) 364-2526
**Cody L. Simmons**
State Bar No. 24027981
cody@ssbtxlaw.com
623 N. Main Street
Hereford, Texas 79045
**Mason Leal**
**Of Counsel**
State Bar No. 24118438
mason@ssbtxlaw.com
Tel. (214) 772-7747
8144 Walnut Hill Lane
Suite 1080
Dallas, Texas 75231
Fax. (806) 364-2526

AND

SPROUSE SHRADER SMITH PLLC

**John F. Massouh**
State Bar No. 24026866
john.massouh@sprouselaw.com
Tel. (806) 468-3337
701 S. Taylor, Suite 500
Amarillo, Texas 79109

**ATTORNEYS FOR INTERVENORS**

---

**ORIGINAL PLEA IN INTERVENTION**                                              **Page 20 of 20**

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Abel Leal on behalf of Abel Leal
Bar No. 24026989
abel@ebs-law.net
Envelope ID: 75107773
Filing Code Description: Counter Claim/Cross Action/Interpleader/Intervention/Third Party
Filing Description: Original Plea in Intervention
Status as of 4/28/2023 2:37 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Kenneth RNetardus | - - - | knetardus@sjblawfirm.com | 4/27/2023 6:28:48 PM | SENT |
| Rebecca AMcMurry | | rmcmurry@sjblawfirm.com | 4/27/2023 6:28:48 PM | SENT |
| Rachel Barr | 24118185 | rbarr@namanhowell.com | 4/27/2023 6:28:48 PM | SENT |
| Cody Simmons | | cody@ssbtxlaw.com | 4/27/2023 6:28:48 PM | SENT |
| Cody Simmons | | cody@ssbtxlaw.com | 4/27/2023 6:28:48 PM | SENT |
| Mason Leal | | mason@ssbtxlaw.com | 4/27/2023 6:28:48 PM | SENT |
| Abel Leal | | abel@ssbtxlaw.com | 4/27/2023 6:28:48 PM | SENT |
| John Frederick Massouh | 24026866 | john.massouh@sprouselaw.com | 4/27/2023 6:28:48 PM | SENT |

Associated Case Party: AgTexas Farm Credit Services

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| DAVID LLEBAS | | dlebas@namanhowell.com | 4/27/2023 6:28:48 PM | SENT |

Elaine Ge
District C
Deaf Smith County, Te
/s/ Whitney Figueiras

C: ALL

## CAUSE NO. CI-2023D-025

| | | |
|---|---|---|
| **AGTEXAS FARM CREDIT SERVICES, AGTEXAS, PCA, THORLAKSON DIAMOND T FEEDERS, LP** | § § § § § § § | **IN THE DISTRICT COURT** |
| *Plaintiffs,* and | § § § | |
| **DENNIS BUSS, BUSS FAMILY TRUST, EDDIE BRYANT, ROBERT E. GRAY, RONNIE GRAY, GRAY BROTHERS, CRAIG SUTTON, AMY SUTTON, STEVE RYAN, JANICE LAWHON, AJ JACQUES LIVING TRUST, GUNGOLL CATTLE, LLC, LEAH GUNGOLL, MORRISON CAFÉ, LLC, GARY LESH, JAN LESH, LESH FAMILY TRUST, JARED LESH, JORDAN LESH, LLC, JOEL BROOKSHIRE, GENE BROOKSHIRE FAMILY, LP, DOUGLAS FINLEY, SCARLET AND BLACK CATTLE, LLC, BRYAN BLACKMAN, STEVE T SCOTT FARM, INC., SCOTT LIVESTOCK COMPANY, INC., ARNOLD BRAUN TRUST, ROBERT BRAUN, JIM RININGER, ROBERT SPRING, MICHAEL EVANS, MIRANDA EVANS, CHARLES LOCKWOOD, COLE LOCKWOOD, SHERLE LOCKWOOD, NIKKI LOCKWOOD, LYNDAL VAN BUSKIRK, JANET VAN BUSKIRK, COLBY VAN BUSKIRK, SUSAN VAN BUSKIRK, JIMMY GREER, DUSTIN JOHNSON AND DORA BLACKMAN** | § § § § § § § § § § § § § § § § § § § § § § § § § § § | **222nd JUDICIAL DISTRICT** |
| **Intervenors-Plaintiffs** | § § § § § | |
| | § § § | **DEAF SMITH COUNTY, TEXAS** |

---

**ORIGINAL PLEA IN INTERVENTION**                                                  **Page 1 of 21**

| | |
|---|---|
| **v.**<br><br>**MCCLAIN FEED YARD, INC., MCCLAIN FARMS, INC., 7M CATTLE FEEDERS, INC., CHELSEA WALTERS MCCLAIN, AS PRESUMED HEIR AND PERSONAL REPRESENTATIVE OF THE ESTATE OF BRIAN MCCLAIN, AND RABO AGRIFINANCE, LLC.**<br><br>     *Defendants.*<br>**and**<br><br>**MCCLAIN FARMS, INC.,**<br><br>    **Intervenor-Defendant.** | |

## FIRST AMENDED PLEA IN INTERVENTION

**TO THE HONORABLE COURT:**

  Pursuant to Texas Rule of Civil Procedure 60, Dennis Buss, Buss Family Trust, Eddie Bryant, Robert E. Gray, Ronnie Gray, Gray Brothers, Steven Ryan, Janice Lawhon, AJ Jacques Living Trust, Gungoll Cattle, LLC, Leah Gungoll, Morrison Café, LLC, Gary Lesh, Jan Lesh, Lesh Family Trust, Jared Lesh, Jordan Lesh, LLC, Joel Brookshire, Gene Brookshire Family, LP, Douglas Finley, Scarlet and Black Cattle, LLC, Bryan Blackman, Steve T. Scott Farm, Inc., Scott Livestock Company, Inc., Arnold Braun Trust, Robert Braun, Jim Rininger, Robert Spring, Michael Evans, Miranda Evans, Charles Lockwood, Cole Lockwood, Sherle Lockweood, Nikki Lockwood, Lyndal Van Buskirk, Janet Van Buskirk, Colby Van Buskirk, Susan Van Buskirk, Jimmy Greer, Dustin Johnson, and Dora Blackman file this First Amended Plea in Intervention and would respectfully show the Court the following:

## I.    BACKGROUND

1.      The Defendants in this case perpetrated a complex and far-reaching scheme to commit fraud through the purchase and sale of cattle.  This scheme, which spanned multiple states and involved numerous individuals, resulted in substantial losses in the millions of dollars. Through a combination of false representations, fraudulent transactions, and other illegal activities, Defendants engaged in a deliberate and systematic effort to deceive and defraud numerous innocent victims.  The details of this scheme, which are being uncovered daily, demonstrate a callous disregard for the law and the well-being of others.

2.      The scope and magnitude of Defendants' fraudulent scheme is staggering.  This scheme has had devastating financial consequences for numerous individuals and entities.  The Intervenors deserve swift and decisive action to protect their interests and to preserve the status quo during the pendency of this litigation.  This may include freezing Defendants' assets, reclaiming cattle that have been removed from Defendants' feed yards, enjoining further fraudulent activity, appointing a receiver, and other appropriate remedies deemed necessary to protect the interest of Intervenors.

## II.    STATUS OF INTERVENORS

3.      Dennis Buss is an individual with citizenship in Oklahoma.  Intervenor entered into an agreement with one or more of the McClain Defendants.

4.      Buss Family Trust is an entity formed under the laws of Oklahoma. Intervenor entered into an agreement with one or more of the McClain Defendants

5.      Eddie Bryant is an individual with citizenship in Texas. Intervenor entered into an agreement with one or more of the McClain Defendants.

6.      Robert Gray is an individual with citizenship in Oklahoma. Intervenor entered into an agreement with one or more of the McClain Defendants.

7.      Ronnie Gray is an individual with citizenship in Oklahoma. Intervenor entered into an agreement with one or more of the McClain Defendants.

8.      Gray Brothers is a partnership formed in Oklahoma.  Intervenor entered into an agreement with one or more of the McClain Defendants.

9.      Craig Sutton is an individual with citizenship in Texas. Intervenor entered into an agreement with one or more of the McClain Defendants.

10.     Amy Sutton is an individual with citizenship in Texas. Intervenor entered into an agreement with one or more of the McClain Defendants.

11.     Steve Ryan is an individual with citizenship in Oklahoma. Intervenor entered into an agreement with one or more of the McClain Defendants.

12.     AJ Jacques Living Trust is entity formed under the laws of Oklahoma. Intervenor entered into an agreement with one or more of the McClain Defendants.

13.     Gungoll Cattle, LLC is a Oklahoma limited liability company. Intervenor entered into an agreement with one or more of the McClain Defendants.

14.     Leah Gungoll is a citizen of Oklahoma.  Intervenor entered into an agreement with one or more of the McClain Defendants.

15.     Morrison Café, LLC is an Oklahoma limited liability company.  Intervenor entered into an agreement with one or more of the McClain Defendants.

16.      Lesh Family Trust is an Oklahoma entity.  Intervenor entered into an agreement with one or more of the McClain Defendants.

17.   Gary Lesh is a citizen of Oklahoma. Intervenor entered into an agreement with one or more of the McClain Defendants.

18.   Jan Lesh is a citizen of Oklahoma. Intervenor entered into an agreement with one or more of the McClain Defendants.

19.   Jared Lesh is an individual with citizenship in Texas. Intervenor entered into an agreement with one or more of the McClain Defendants.

20.   Joel Brookshire is an individual with citizenship in Texas. Intervenor entered into an agreement with one or more of the McClain Defendants.

21.   Gene Brookshire Family Limited Partnership is a Texas entity. Intervenor entered into an agreement with one or more of the McClain Defendants.

22.   Douglas Finley is a citizen of Texas. Intervenor entered into an agreement with one or more of the McClain Defendants.

23.   Scarlet and Black Cattle, LLC is an entity formed under the laws of Texas. Intervenor entered into an agreement with one or more of the McClain Defendants.

24.   Janice Lawhon is a citizen of Oklahoma. Intervenor entered into an agreement with one or more of the McClain Defendants.

25.   Jordan Lesh, LLC is an Oklahoma entity. Intervenor entered into an agreement with one or more of the McClain Defendants.

26.   Bryan Blackman is a citizen of Oklahoma. Intervenor entered into an agreement with one or more of the McClain Defendants.

27.   Steve T Scott Farm, Inc. is a Mississippi entity. Intervenor entered into an agreement with one or more of the McClain Defendants.

28.     Scott Livestock Company, Inc. is a Mississippi entity.  Intervenor entered into an agreement with one or more of the McClain Defendants.

29.     Arnold Braun Trust is an Indiana entity.  is a Mississippi entity.  Intervenor entered into an agreement with one or more of the McClain Defendants.

30.     Robert Braun is a citizen of Indiana.  is a Mississippi entity.  Intervenor entered into an agreement with one or more of the McClain Defendants.

31.     Jim Rininger is a citizen of Indiana. is a Mississippi entity.  Intervenor entered into an agreement with one or more of the McClain Defendants.

32.     Robert Spring is a citizen of Oklahoma.  Intervenor entered into an agreement with one or more of the McClain Defendants.

33.     Michael Evans is a citizen of Kentucky.  Intervenor entered into an agreement with one or more of the McClain Defendants.

34.     Miranda Evans is a citizen of Kentucky.  Intervenor entered into an agreement with one or more of the McClain Defendants.

35.     Charles Lockwood is a citizen of Oklahoma. is a Mississippi entity.  Intervenor entered into an agreement with one or more of the McClain Defendants.

36.     Cole Lockwood is a citizen of Oklahoma. is a Mississippi entity.  Intervenor entered into an agreement with one or more of the McClain Defendants.

37.     Sherle Lockwood is a citizen of Oklahoma. is a Mississippi entity.  Intervenor entered into an agreement with one or more of the McClain Defendants.

38.     Nikki Lockwood is a citizen of Oklahoma. is a Mississippi entity.  Intervenor entered into an agreement with one or more of the McClain Defendants.

39.     Lyndal Van Buskirk is a citizen of Oklahoma. is a Mississippi entity.  Intervenor entered into an agreement with one or more of the McClain Defendants.

40.     Janet Van Buskirk is a citizen of Oklahoma. is a Mississippi entity.  Intervenor entered into an agreement with one or more of the McClain Defendants

41.     Colby Van Buskirk is a citizen of Oklahoma. is a Mississippi entity.  Intervenor entered into an agreement with one or more of the McClain Defendants.

42.     Susan Van Buskirk is a citizen of Oklahoma. is a Mississippi entity.  Intervenor entered into an agreement with one or more of the McClain Defendants.

43.     Jimmy Greer is a citizen of Kentucky.  Intervenor entered into an agreement with one or more of the McClain Defendants.

44.     Dustin Johnson is a citizen of Mississippi.  Intervenor entered into an agreement with one or more of the McClain Defendants.

45.     Dora Blackman is a citizen of Oklahoma. Intervenor entered into an agreement with one or more of the McClain Defendants.

## III.     STATUS OF OTHER PARTIES

46.     Plaintiffs AgTexas Farm Credit Services is a federally chartered agricultural credit association formed under the Farm Credit Act of 1933.  AgTexas, PCS is a federal chartered production credit association formed under the Farm Credit Act of 1933 (collectively "AgTexas"). AgTexas does business in Texas, including Deaf Smith County, Texas.

47.     Thorlakson Diamond Feeders, L.P. ("Thorlakson") is a Texas limited partnership. It does business in Texas, including Deaf Smith County Texas.

48.     Rabo AgriFinance, Defendant, is a limited liability company that does business in various locations in Texas, including Deaf Smith County ("Rabo"). It can be served by serving it

registered agent, Corporate Creations Network Inc., 5444 Westheimer #1000, Houston, Texas 77056.

49.   McClain Feed Yard, Inc., Defendant, is a domestic for-profit corporation. It can be served through its registered agent Brian McClain, 320 Schley Street, Hereford, Texas 79045. Issuance of citation is requested at this time.

50.   McClain Farms, Inc., Defendant, is a foreign for-profit corporation incorporated under the laws of Kentucky and registered to do business in Texas. It may be served through its registered agent, Brian McClain, at 824 Mullins Lane, Benton, Kentucky 42025. Issuance of citation is requested at this time.

51.   7M Cattle Feeders, Inc., Defendant, is a foreign for-profit corporation incorporated under the laws of Kentucky and registered to do business in Texas. It may be served through its registered agent, McClain Feed Yard, Inc., 4010 FM 1057, Hereford, Texas 79045. Issuance of citation is requested at this time.

52.   Chelsea Walters McClain, Defendant in her capacity as presumed heir and personal representative of the estate of Brian McClain, is the widow of Brian McClain, a deceased individual resident of Kentucky who engaged in business in this State. Mrs. McClain does not maintain a designated agent for service of process in Texas. Service of process on this Defendant may therefore be obtained under TEX. CIV. PRAC. & REM. CODE § 17.044, by serving the Texas Secretary of State for forwarding to Defendant Brian McClain at 824 Mullins Lane, Benton, KY 42025. The forwarding address for the Texas Secretary of State to issue citation to this Defendant is: Texas Secretary of State Statutory Document Section, P.O. Box 12887, Austin, Texas 78711. The address of this Defendant is stated above. Issuance of citation is requested at this time.

(McClain Feed Yard, Inc., McClain Farms, Inc., and 7M Cattle Feeders, Inc., and Chelsea Walters McClain are collectively referred to as "McClain Defendants").

## IV.    STATEMENT OF RELEF REQUESTED

53.    Pursuant to Rule 47 of the Texas Rules of Civil Procedure, Intervenors assert a cause of action for injunction, interpleader, for declaratory judgment, and for damages within the jurisdictional limits of the Court.

54.    Pursuant to TEX. R. CIV. P. 47 and TEX. CIV. PRAC. & REM. CODE §64.001(a)(2), (5), and (6), Intervenors make an application for emergency appointment of a receiver and for sequestration and the protection of property rights of Intervenors and other interested parties

## V.    JURISDICTION AND VENUE

55.    This case falls within the general jurisdiction of this Court.

56.    Venue is mandatory in this county pursuant to Texas Civil Practice and Remedies Code 64.07 because this is a suit to appoint a receiver for a corporation with property in Texas and this is the county where the principal office of the corporation is located.

57.    Venue is proper in this case pursuant to Texas Civil Practice and Remedies Code section 15.002(a)(1) because it is the county in which all or a substantial part of the events or omissions giving rise to the claims occurred and 15.002(a)(3), because it is the county in which Defendants McClain Feed Yard and 7M Feeders have their principal office in this state.

58.    Venue exists in this case over the Defendants under TEX. CIV. PRAC. & REM. CODE §15.035 because one or more of these Defendants entered into contracts in whole or in part, in Deaf Smith County, Texas.

---

59.    The acts of all Defendants the subject of this suit involve their purposeful contacts involving Texas. The causes of action asserted in this case arise from or are connected with the acts committed by Defendants in Texas. As a result, this Court can assert in personam jurisdiction over Defendants in accordance with state and federal constitutional guarantees, and the Texas Secretary of State is an agent for service of process for Defendants.

60.    Venue is proper in Deaf Smith County in accordance with TEX. CIV. PRAC. & REM. CODE § 15.002 because it is the county in which all or a substantial part of the events or omissions giving rise to the claim occurred, and if venue is valid as to one Defendant, it is valid as to all, pursuant to TEX. CIV. PRAC. & REM. CODE § 15.003.

## VI.    FACTUAL BACKGROUND

61.    Intervenors entered into an agreement with one or more of the McClain Defendants that functioned similar to a cattle feeding agreement or profit sharing agreement.    Under these agreements, Intervenors would purchase cattle, which would then be delivered to the McClain Defendants for the feeding and management of the cattle.    The McClain Defendants were responsible for covering the cost of feeding and management of cattle.    The cattle feeding agreements included a provision for the sale of the finished cattle and the distribution of proceeds between Intervenors and the McClain Defendants.

62.    Pursuant to the these agreements, cattle were to be delivered to feed yards located in Texas and Kentucky for growing and then shipped to a finishing feed yard.

63.    Rabo provided a credit facility to the McClain Defendants. On information and belief, Intervenors allege that Rabo has itself or through contract with third parties started liquidating the cattle and other assets of the McClain Defendants and taken custody and control of the records of the McClain Parties.

64.     Some of these cattle were and are believed to be currently located in Deaf Smith County, Texas.

65.     In April of 2023, Intervenors learned of some of the issues that are the subject of this suit, including the disappearance or inability of the McClain Defendants to account for many thousands of cattle and millions of dollars in cattle proceeds. Before this, the McClain Defendants had represented to Intervenors that they had possession of thousands of cattle in which Intervenors had an interest, which Intervenors paid for pursuant to the cattle feeding agreements.

66.     On April 13, 2023, decedent passed away unexpectedly at the age of 52.

67.     Because of the movable nature of the cattle, the uncertain location of the cattle, Mr. McClain's sudden death, and because of the unaccountability for the cattle entrusted to Defendants, a reasonable conclusion can be drawn that there is immediate danger that Defendants will neglect, conceal, dispose of, ill-treat, waste, or destroy the cattle, or remove them from their present location during the pendency of this suit.

68.     Rabo has engaged a third party or parties to gather cattle and records in the possession of the McClain Defendants and has refused to permit one or more of the Intervenors to have access to such cattle and records. A reasonable conclusion can also be drawn that Rabo should be ordered to protect and preserve assets and records of the McClain Parties and of its dealings with the McClain Parties.

69.     Throughout this Petition, where it is alleged that any Defendant performed or failed to perform any acts or activities, or made any representations, it is meant that such Defendant's agents, officers, servants, employees or representatives performed or failed to perform such acts or activities and at the time such acts or activities were done, they were with full authorization or ratification of said Defendant, or were in the normal or routine course of business.

---

## VII.   CONDITIONS PRECEDENT

70.     Any applicable notices under the Texas Civil Practice and Remedies Code and the Texas Business and Commerce Code, and any other applicable statute or law, have been given in a timely manner prior to the filing of this action.  All conditions precedent to Intervenors' claims for relief have been performed, been waived, or have occurred.

## VIII.   CLAIMS FOR RELIEF

71.     Intervenors assert the following claims for relief, all of which are pled in the alternative where necessary.

## COUNT 1 – BREACH OF CONTRACT

72.     Intervenors incorporate by reference as if fully set forth herein the preceding and proceeding paragraphs.

73.     Intervenors would show that the agreements with one of more of the McClain Defendants constitute valid and enforceable contracts.  The agreements state that Intervenors would purchase cattle, the McClain Defendants would be responsible for feeding and managing the cattle, the McClain Defendants would sell the cattle directly to third parties or through authorized dealers, and that the parties would divide the proceeds according to the terms of the agreements.

74.     Intervenors performed under the agreements. The McClain Defendants breached the agreements by wholly failing to perform their contractual obligations owed to Intervenors. The McClain Defendants breach caused Intervenors actual damages.

75.     Intervenors seek judgment against The McClain Defendants for actual damages within the jurisdictional limits of this court, along with interests, costs, and attorney's fees.

## COUNT 2 – CONVERSION AND COMMON LAW FRAUD

76. Intervenors incorporate by reference as if fully set forth herein the preceding and proceeding paragraphs.

77. Intervenors are entitled to and seek recovery of judgment for conversion against the McClain Defendants for the value of any cattle they accepted for feed and care and which they have not returned (or sold without remittance of the proceeds), and/or cattle misappropriated and converted from Intervenors, and the profits they would have made from these cattle.

78. Intervenors are entitled to and seek recovery of judgment for conversion against Rabo to the extent that Rabo acquired cattle or proceeds belonging to Intervenors.

79. The McClain Defendants made misrepresentations to Intervenors recklessly without any knowledge of the truth and as a positive assertion. Moreover, the misrepresentations were made with the intention that they should be acted on by Intervenors, and Intervenors in fact relied upon on those misrepresentations, suffering injury and damage as a result thereof. Thus, the misrepresentations and reliance so described were a proximate cause of injury and damage to the Intervenors for which Intervenors now sue in a sum within the jurisdictional limits of the Court.

80. Intervenors seek judgment for their reasonable attorney fees at trial and through all applicable appellate levels, pursuant to TEX. CIV. PRAC. & REM. CODE § 38.001(6).

## COUNT 3 - NEGLIGENCE

81. Intervenors incorporate by reference as if fully set forth herein the preceding and proceeding paragraphs.

82. Defendants were negligent in the care and maintenance of cattle including, but not limited to keeping proper records of feeding and ownership, and in the hiring or supervision of

their management personnel. Defendants are therefore liable for the losses Intervenors suffered as a result of their actions and omissions. Their actions and omissions are described above.

83.     The losses incurred by Intervenors as a proximate result of Defendants' negligent actions exceed the minimum jurisdictional limits of this Court. Intervenors seek judgment for these damages.

## COUNT 4 – DISREGARD CORPORATE FICTION/CORPORATE VEIL PIERCING

84.     Intervenors incorporate by reference as if fully set forth herein the preceding and proceeding paragraphs.

85.     McClain Feed Yard, Inc.'s, McClain Farms, Inc., and 7M Cattle Company, LLC's corporate entity should be disregarded and the Decedent's estate held personally liable for the damages, both actual and punitive, suffered by Intervenors because:

     a.    The corporate entity has been used by the Defendants and their owners and principals as a sham to perpetuate a fraud;

     b.    The corporate entity was organized and perpetrated as a mere tool or business conduit of Decedent's personal business;

     c.    The corporate fiction has been used as a means to evade an existing legal obligation;

     d.    The corporate fiction has been used to circumvent a statute; or

     e.    The corporate fiction has been used to commit a protection of crime or to justify a wrong.

## COUNT 4 – CIVIL CONSPIRACY

86.     Intervenors incorporate by reference as if fully set forth herein the preceding and proceeding paragraphs.

87.     Additionally, and/or in the alternative and based on information and belief, the

---

McClain Defendants, and their agents or employees had an agreement with and/or understanding among them to commit and to cover up the wrongs and damages inflicted on Intervenors. To this end, Defendants and their agents, employees and/or representatives had a meeting of the minds and committed unlawful and overt acts which proximately caused further and additional damages to Intervenors. Therefore, the McClain Defendants and their agents, employees and/or representatives are directly and vicariously liable for the actions of each other in furtherance of this conspiracy.

88.      Intervenors seek judgment for all damages, both actual and punitive, that Intervenors suffered as a result of the actions of any of them.

89.      Intervenors seek judgment for their reasonable and necessary attorney's fees at trial and through all applicable appellate levels.

## COUNT 5 – DECLARATORY JUDGMENT

90.      Intervenors incorporate by reference as if fully set forth herein the preceding and proceeding paragraphs.

91.      Intervenors seek declaratory judgment as to priority of their claims to cattle and sales proceeds.

## COUNT 6 – APPLICATION FOR INJUNCTIVE RELIEF

92.      Intervenors incorporate by reference as if fully set forth herein the preceding and proceeding paragraphs.

93.      Intervenors pray for a temporary restraining order, and following a hearing, a temporary injunction to restrain and enjoin the Defendants from interfering with their request to move the remaining cattle to a secure location for feeding and care. Intervenors also seek an order requiring Defendants to preserve their records.

94.    Intervenors need immediate injunctive relief in this case to avoid the following irreparable injuries:

    a.  Rabo and the McClain Defendants threaten to, have and unless restrained and enjoined, will continue to prevent access to the enclosures or pens where the Cattle are located, either in Deaf Smith County or other locations, and therefore jeopardize the health and values of these cattle, and the integrity of these records, and thus jeopardize Intervenors' rights before the question of ownership and priority of claims can be determined.

    b.  The McClain Defendants have demonstrated their willingness to falsify records and conceal the location of cattle and should be ordered to preserve any and all business records concerning their cattle and financial affairs.

    c.  The McClain Defendants have demonstrated their willingness to falsify records and conceal the location of cattle and should be ordered to refrain from withdrawing the funds from financial institutions.

95.    Intervenors have no adequate remedy at law because the health of the cattle, or their physical location if moved, may deprive Intervenors from recourse against the Defendants and recourse to possession of cattle they claim to own. The inability to gain access to the cattle may put the Defendants in the position of being insolvent without the ability to respond in damages and, as a result Intervenors' interest in the cattle may be lost and their ability to recover from the party(ies) who wrongfully caused the problem may also be lost. In addition, Defendants have demonstrated their willingness to falsify records and conceal the location of cattle and should be ordered to preserve any and all business records concerning their cattle and financial affairs to enable Intervenors to determine the status of their cattle and accounts.

96.    The enjoined Defendants will not be harmed by any delay resulting from an injunction.

97.    To prevent irreparable harm to Intervenors, all and any persons having notice of the injunction requested by Intervenors should be restrained and prevented from transferring in any respect, selling, disposing, moving, transferring, concealing, or encumbering any property, including any cattle and including the funds at any bank accounts.

98.    Intervenors are therefore entitled to a temporary restraining order restraining the Defendants, their agents, in any person having notice of the order from taking any action in selling, disposing, moving, transferring, encumbering, or otherwise affecting any of the Defendants' property, or cattle or funds in the Defendants' possession, and, upon hearing, that the terms of the temporary restraining order become a temporary injunction.

## COUNT 7 -SEQUESTRATION

99.    Intervenors incorporate by reference as if fully set forth herein the preceding and proceeding paragraphs and incorporates the exhibits referenced therein.

100.    Intervenors request the issuance of a Writ of Sequestration for the cattle.

101.    Because of the movable nature of the cattle, and because of the defaults of Defendants, a reasonable conclusion may be drawn that Defendants will engage in using, selling, disposing, encumbering, mortgaging, leasing, moving, operating, pledging, or otherwise adversely affecting the interests of Intervenors in the cattle, Defendant-entities and any asset that secures repayment of the loans.

102.    Intervenors seek assistance through a writ of sequestration to enforce its security interest and it meets the requirements of TEX. CIV. PRAC. & REM. CODE Ch. 62.

## COUNT 8 – INJUNCTION AND RESTRAINING ORDER

103.    Intervenors incorporate the allegations stated above, as if fully set forth verbatim

hereunder, and incorporates the exhibits referenced therein.

104.    Pending the final outcome of this action, and until further order, and for the purpose of affording Intervenors appropriate protection under the Texas Rules of Civil Procedure, Intervenors request the issuance of a mandatory injunction and restraining order directing Defendants to deliver the Defendant-entities to the Receiver and restraining Defendants and its respective partners, officers, agents, servants, employees, attorneys or associates from using, selling, disposing, encumbering, mortgaging, leasing, moving, operating, pledging, or in any manner adversely affecting the interests of Intervenors in the Defendant-entities.

105.    If this Court does not immediately enter an order appointing a Receiver, sequestering the cattle, proceeds, and accounts receivables and granting such other relief as is necessary or appropriate to protect Intervenors' ownership and security interests and liens, Intervenors will be irreparably harmed. It has no adequate remedy at law if such relief is not granted.

106.    If the Court does not immediately appoint a Receiver, and if Defendants are permitted to stay in possession or control of its assets, Intervenors also request the Court to grant additional relief protecting Intervenors' interest and liens as follows:

      a.    Prohibiting any payments or distributions to or for the benefit of the McClain Defendant-entities' insiders, affiliates, parents or partners or other related individuals or entities for management services, commissions or otherwise, or Rabo;

      b.    Requiring Defendant-entities to furnish Intervenors, without further demand, the following information:

      c.    Cattle sales and purchase records;

      d.    Banking records;

      e.    Cattle movement records;

## CONCLUSIONS

WHEREFORE, PREMISES CONSIDERED, Intervenors respectfully pray that all Defendants be cited to appear and to answer this Petition and that upon final hearing hereof, Intervenors have Judgment as follows:

a.   An Order from this Court restraining and enjoining Defendants and their attorneys and agents and employees from removing the Cattle and permitting inspection of the records;

b.   An Order from this Court restraining and enjoining Defendants and their attorneys and agents and employees from disposing of records of their activities related to the subject of this case;

c.   An Order from this Court restraining and enjoining Defendants from disposing or, altering, or concealing records concerning their cattle and financial affairs;

d.   An Order declaring the rights of the parties to the cattle and their proceeds;

e.   Judgment for actual and punitive damages;

f.   Judgment for attorneys' fees through trial and at all applicable appellate levels, and costs;

g.   Any and all further relief, legal and equitable, to which Intervenors may be now and ever more entitled.

Respectfully submitted,

**SIMMONS SMITH BROWN, PLLC**

By: _____

**Abel A. Leal**
**Of Counsel**
State Bar No. 24026989
abel@ssbtxlaw.com
Tel. (214) 395-5325
8144 Walnut Hill Lane
Suite 1080
Dallas, Texas 75231
Fax. (806) 364-2526
**Cody L. Simmons**
State Bar No. 24027981
cody@ssbtxlaw.com
623 N. Main Street
Hereford, Texas 79045
**Mason Leal**
**Of Counsel**
State Bar No. 24118438
mason@ssbtxlaw.com
Tel. (214) 772-7747
8144 Walnut Hill Lane
Suite 1080
Dallas, Texas 75231
Fax. (806) 364-2526

AND

**SPROUSE SHRADER SMITH PLLC**

**John F. Massouh**
State Bar No. 24026866
john.massouh@sprouselaw.com
Tel. (806) 468-3337
701 S. Taylor, Suite 500
Amarillo, Texas 79109

**ATTORNEYS FOR INTERVENORS**

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2023, a true and correct copy of this pleading has been served on all counsel of record through the Court's electronic filing system.

/s/Abel A. Leal
Abel A. Leal

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Abel Leal on behalf of Abel Leal
Bar No. 24026989
abel@ebs-law.net
Envelope ID: 75144217
Filing Code Description: Amended Filing
Filing Description: First Amended Petition in Intervention
Status as of 5/1/2023 1:14 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Kenneth RNetardus | | knetardus@sjblawfirm.com | 4/28/2023 3:47:20 PM | SENT |
| John Frederick Massouh | 24026866 | john.massouh@sprouselaw.com | 4/28/2023 3:47:20 PM | SENT |
| Rebecca AMcMurry | | rmcmurry@sjblawfirm.com | 4/28/2023 3:47:20 PM | SENT |
| Rachel Barr | 24118185 | rbarr@namanhowell.com | 4/28/2023 3:47:20 PM | SENT |
| Mason Leal | | mason@ssbtxlaw.com | 4/28/2023 3:47:20 PM | SENT |
| Abel Leal | | abel@ssbtxlaw.com | 4/28/2023 3:47:20 PM | SENT |
| Cody Simmons | | cody@ssbtxlaw.com | 4/28/2023 3:47:20 PM | SENT |

Associated Case Party: AgTexas Farm Credit Services

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| DAVID LLEBAS | | dlebas@namanhowell.com | 4/28/2023 3:47:20 PM | SENT |

Filed 3/5/2024 3:14 PM
Elaine Gerber
District Clerk
Deaf Smith County, Texas
/s/ Nellye Morrow

IN THE 222ND JUDICIAL DISTRICT COURT
DEAF SMITH COUNTY, TEXAS

AGTEXAS FARM CREDIT SERVICES,      §
AGTEXAS, PCA, and                   §
THORLAKSON DIAMOND T FEEDERS, LP, §
                                    §
                                    §
        Plaintiffs,                 §
                                    §
and                                 §        CAUSE NO. CI-2023D-025
                                    §
EDWARD DUFURRENA,                   §
OPEN A ARENA, LLC'S,                §
DENNIS BUSS, BUSS FAMILY TRUST,     §
EDDIE BRYANT, ROBERT E. GRAY,       §
RONNIE GRAY, GRAY BROTHERS,         §
CRAIG SUTTON, AMY SUTTON,           §
STEVE RYAN, JANICE LAWHON,          §
AJ JACQUES LIVING TRUST,            §
GUNGOLL CATTLE, LLC,                §
LEAH GUNGOLL,                       §
MORRISON CAFÉ, LLC, GARY LESH,      §
JAN LESH, LESH FAMILY TRUST,        §
JARED LESH, JORDAN LESH, LLC,       §
JOEL BROOKSHIRE, GENE BROOKSHIRE    §
FAMILY, LP, DOUGLAS FINLEY,         §
SCARLET AND BLACK CATTLE, LLC,      §
BRYAN BLACKMAN, STEVE T             §
SCOTT FARM, INC., SCOTT LIVESTOCK   §
COMPANY, INC., ARNOLD BRAUN         §
TRUST, ROBERT BRAUN,                §
JIM RININGER, ROBERT SPRING,        §
MICHAEL EVANS, MIRANDA EVANS,       §
CHARLES LOCKWOOD,                   §
COLE LOCKWOOD, SHERLE LOCKWOOD, §
NIKKI LOCKWOOD, LYNDAL VAN          §
BUSKIRK, JANET VAN BUSKIRK,         §
COLBY VAN BUSKIRK, SUSAN VAN        §
BUSKIRK, JIMMY GREER, DUSTIN        §
JOHNSON AND DORA BLACKMAN           §
                                    §
        Intervenors-Plaintiffs,     §
                                    §
                                    §
V.                                  §

|  | § |
|---|---|
| MCCLAIN FEED YARD, INC, | § |
| 7M CATTLE FEEDERS, INC., | § |
| CHELSEA WALTERS MCCLAIN, | § |
| AS PRESUMED HEIR AND | § |
| PERSONAL REPRESENTATIVE OF | § |
| THE ESTATE OF BRIAN MCCLAIN, and | § |
| RABO AGRIFINANCE, LLC, | § |
|  | § |
| Defendants, | § |
|  | § |
| and | § |
|  | § |
| MCCLAIN FARMS, INC., | § |
|  | § |
| Intervenor-Defendant. | § |

**PLAINTIFFS AND INTERVENORS' NOTICE OF PARTIAL NONSUIT WITHOUT
PREJUDICE AS TO MCCLAIN FEED YARD, INC., 7M CATTLE FEEDERS, INC.,
MCCLAIN FARMS, INC., and CHELSEA WALTERS MCCLAIN, AS PRESUMED
HEIR AND PERSONAL REPRESENTATIVE OF THE ESTATE OF BRIAN MCCLAIN**

Plaintiffs AgTexas Farm Credit Services, AgTexas, PCA (collectively "AgTexas"),

Thorlakson Diamond T Feeders, LP ("Thorlakson"), (collectively "Plaintiffs"), joined by

Intervenors Edward Dufurrena, Open A Arena, LLC, Dennis Buss, Buss Family Trust, Eddie

Bryant, Robert E. Gray, Ronnie Gray, Gray Brothers, Craig Sutton, Amy Sutton, Steve Ryan,

Janice Lawhon, AJ Jacques Living Trust, Gungoll Cattle, LLC, Leah Gungoll, Morrison Café,

LLC, Gary Lesh, Jan Lesh, Lesh Family Trust, Jared Lesh, Jordan Lesh, LLC, Joel Brookshire,

Gene Brookshire Family, LP, Douglas Finley, Scarlet And Black Cattle, LLC, Bryan Blackman,

Steve T Scott Farm, Inc., Scott Livestock Company, Inc., Arnold Braun Trust, Robert Braun, Jim

Rininger, Robert Spring, Michael Evans, Miranda Evans, Charles Lockwood, Cole Lockwood,

Sherle Lockwood, Nikki Lockwood, Lyndal Van Buskirk, Janet Van Buskirk, Colby Van

Buskirk, Susan Van Buskirk, Jimmy Greer, Dustin Johnson And Dora Blackman, give notice of

this their Notice of Partial Nonsuit, without prejudice, as to their claims against McClain Feed

Yard, Inc., 7M Cattle Feeders, Inc, McClain Farms, Inc., and Chelsea Walters McClain, as

presumed heir and personal representative of the Estate of Brian McClain, in the above styled

and numbered cause.

Respectfully submitted,

**NAMAN HOWELL SMITH & LEE, PLLC**
8310 N. Capital of Texas Hwy., Ste. 490
Austin, Texas 78731
(512) 479-0300; FAX (512) 474-1901
Email: dlebas@namanhowell.com

By:      */s/ David L. LeBas*
         David L. LeBas
         State Bar No. 12098600
         Rachel Barr
         State Bar No.24118185

**Attorneys for Plaintiffs AgTexas Farm Credit
Services, AgTexas, PCA, and Thorlakson
Diamond T Feeders, LP**

**And**

**Stockard, Johnston, Brown,
Netardus & Doyle, P.C.**
Kenneth R. Netardus, SBN 00791343
P.O. Box 3280
Amarillo, Texas, Texas 79116
Tel: (806) 372-2202
Fax: (806) 379-7799
knetardus@sjblawfirm.com

By:      */s/ Kenneth R. Netardus*
         Kenneth R. Netardus

**Attorneys for Intervenor Plaintiffs Edward
Dufurrena and Open A Arena, LLC**

**And**

By:      */s/ Abel A. Leal*
        Abel A. Leal

Abel A. Leal
Of Counsel
State Bar No. 24026989
abel@ssbtxlaw.com
Tel. (214) 395-5325; Fax. (806) 364-2526
8144 Walnut Hill Lane, Suite 1080
Dallas, Texas 75231

Cody L. Simmons
State Bar No. 24027981
cody@ssbtxlaw.com
623 N. Main Street
Hereford, Texas79045

Mason Leal
Of Counsel
State Bar No. 24118438
mason@ssbtxlaw.com
Tel. (214) 772-7747; Fax. (806) 364-2526
8144 Walnut Hill Lane, Suite 1080
Dallas, Texas 75231

**And**

**SPROUSE SHRADER SMITH PLLC**
John Massouh, SBN 24026866
701 S. Taylor, Suite 500
P.O. Box 15008
Amarillo, Texas 79105-5008
(806) 468-3300; (806) 373-3454 FAX
John.massouh@sprouselaw.com

By:      */s/ John Massouh*
        John Massouh

**Attorneys For Dennis Buss, Buss Family Trust, Eddie Bryant, Robert E. Gray, Ronnie Gray, Gray Brothers, Craig Sutton, Amy Sutton, Steve Ryan, Janice Lawhon, AJ Jacques Living Trust, Gungoll Cattle, LLC, Leah Gungoll, Morrison Café, LLC, Gary Lesh, Jan Lesh, Lesh Family Trust, Jared Lesh, Jordan Lesh, LLC, Joel Brookshire, Gene Brookshire Family, LP, Douglas Finley, Scarlet And Black Cattle, LLC, Bryan Blackman, Steve T Scott Farm, Inc., Scott Livestock Company, Inc., Arnold Braun Trust,**

**Robert Braun, Jim Rininger, Robert Spring, Michael Evans, Miranda Evans, Charles Lockwood, Cole Lockwood, Sherle Lockwood, Nikki Lockwood, Lyndal Van Buskirk, Janet Van Buskirk, Colby Van Buskirk, Susan Van Buskirk, Jimmy Greer, Dustin Johnson And Dora Blackman**

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a true and correct copy of the foregoing was served, by efile on March 5, 2024, to all counsel of record.

*/s/ David L. LeBas*
David L. LeBas

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

David LeBas on behalf of David LeBas
Bar No. 12098600
dlebas@namanhowell.com
Envelope ID: 85220396
Filing Code Description: Notice
Filing Description: Notice of Nonsuit
Status as of 3/5/2024 3:17 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Kenneth RNetardus | | knetardus@sjblawfirm.com | 3/5/2024 3:14:25 PM | SENT |
| John Frederick Massouh | 24026866 | john.massouh@sprouselaw.com | 3/5/2024 3:14:25 PM | SENT |
| Rebecca AMcMurry | | rmcmurry@sjblawfirm.com | 3/5/2024 3:14:25 PM | SENT |
| Rachel Barr | 24118185 | rbarr@namanhowell.com | 3/5/2024 3:14:25 PM | SENT |
| Mason Leal | | mason@ssbtxlaw.com | 3/5/2024 3:14:25 PM | SENT |
| Abel Leal | | abel@ssbtxlaw.com | 3/5/2024 3:14:25 PM | SENT |
| Cody Simmons | | cody@ssbtxlaw.com | 3/5/2024 3:14:25 PM | SENT |
| Daniela SRubio | | drubio@namanhowell.com | 3/5/2024 3:14:25 PM | SENT |
| Jennifer Aucoin | | jaucoin@namanhowell.com | 3/5/2024 3:14:25 PM | SENT |

Associated Case Party: Intervenors - Plaintiffs

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| CODY LSIMMONS | | cody@ebs-law.net | 3/5/2024 3:14:25 PM | SENT |
| ABEL ALEAL | | abel@ebs-law.net | 3/5/2024 3:14:25 PM | SENT |
| JOHN MASSOUH | | john.massouh@sprouselaw.com | 3/5/2024 3:14:25 PM | SENT |

Associated Case Party: AgTexas Farm Credit Services

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| DAVID LLEBAS | | dlebas@namanhowell.com | 3/5/2024 3:14:25 PM | SENT |
| RACHEL BARR | | RBARR@NAMANHOWELL.COM | 3/5/2024 3:14:25 PM | SENT |

Associated Case Party: Edward Dufurrena

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

David LeBas on behalf of David LeBas
Bar No. 12098600
dlebas@namanhowell.com
Envelope ID: 85220396
Filing Code Description: Notice
Filing Description: Notice of Nonsuit
Status as of 3/5/2024 3:17 PM CST

Associated Case Party: Edward Dufurrena

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| KENNETH NETARDUS | | KNETARDUS@SJBLAWFIRM.COM | 3/5/2024 3:14:25 PM | SENT |

/s/ DEE SIFUENTES
C: ALL



## NAMANHOWELL
### SMITH&LEE PLLC
ATTORNEYS AT LAW

David L. LeBas
Direct Dial: (512) 807-2460
dlebas@namanhowell.com

8310 N. Capital of Texas
Highway, Suite 490
Austin, Texas 78731
(512) 479-0300
Fax (512) 474-1901

Offices in:
· Austin
· Fort Worth
· San Antonio
· Waco

www.namanhowell.com

March 5, 2024

**Via Efile**
Elaine Gerber
Deaf Smith County District Clerk
235 East Third Street, RM 304
Hereford, Texas 79045

RE:    **Issue Citations**; Cause No. CI-2023D-025:  *AgTexas Farm Credit Services, AgTexas, PCA, Thorlakson Diamond T Feeders, LP v. Rabo AgriFiance LLC, HTLF Bank, et al.* – In the 22nd District Court of Deaf Smith County, Texas

Dear Clerk of the Court:

Please issue citations for service on the following Defendants:

Rabo AgriFinance LLC
Registered Agent:  Corporate Creations Network Inc.
5444 Westheimer #1000
Houston, Texas 77056

Mechanics Bank
Registered Agent:  C T Corporation System
1999 Bryan St., Ste. 900
Dallas, Texas 75201-3136

HTLF Bank, as successor to First Bank & Trust
Registered Agent:   Corporation Service Company dba CSC – Lawyers Incorporating Service Company
211 E. 7th Street, Suite 620
Austin, Texas 78701-3218

Shawn Ragland
2317 Memorial Way
Snyder, Texas 79549

Meagan Goad
1775 Wadesboro Rd. South
Benton, Kentucky 42025

Established 1917

Addressee
March 5, 2024
Page 2

Please send the citations to my assistant, Jennifer Aucoin, at jaucoin@namanhowell.com for personal service.  We have included the cost of the citations with this filing.

If you should have any questions, please do not hesitate to call.

Thank you for your assistance.

Sincerely,

NAMAN HOWELL SMITH & LEE, PLLC

By:    */s/ David LeBas*
       David LeBas

DLL/ja

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing was served, by efile on March 5, 2024, to all counsel of record.

*/s/ David L. LeBas*
David L. LeBas

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

David LeBas on behalf of David LeBas
Bar No. 12098600
dlebas@namanhowell.com
Envelope ID: 85227064
Filing Code Description: Amended Filing
Filing Description: Amended Filing
Status as of 3/5/2024 4:37 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Kenneth RNetardus | | knetardus@sjblawfirm.com | 3/5/2024 4:25:09 PM | SENT |
| John Frederick Massouh | 24026866 | john.massouh@sprouselaw.com | 3/5/2024 4:25:09 PM | SENT |
| Rebecca AMcMurry | | rmcmurry@sjblawfirm.com | 3/5/2024 4:25:09 PM | SENT |
| Jennifer Aucoin | | jaucoin@namanhowell.com | 3/5/2024 4:25:09 PM | SENT |
| Rachel Barr | 24118185 | rbarr@namanhowell.com | 3/5/2024 4:25:09 PM | SENT |
| Mason Leal | | mason@ssbtxlaw.com | 3/5/2024 4:25:09 PM | SENT |
| Abel Leal | | abel@ssbtxlaw.com | 3/5/2024 4:25:09 PM | SENT |
| Cody Simmons | | cody@ssbtxlaw.com | 3/5/2024 4:25:09 PM | SENT |
| Daniela SRubio | | drubio@namanhowell.com | 3/5/2024 4:25:09 PM | SENT |

Associated Case Party: Intervenors - Plaintiffs

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| CODY LSIMMONS | | cody@ebs-law.net | 3/5/2024 4:25:09 PM | SENT |
| ABEL ALEAL | | abel@ebs-law.net | 3/5/2024 4:25:09 PM | SENT |
| JOHN MASSOUH | | john.massouh@sprouselaw.com | 3/5/2024 4:25:09 PM | SENT |

Associated Case Party: AgTexas Farm Credit Services

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| RACHEL BARR | | RBARR@NAMANHOWELL.COM | 3/5/2024 4:25:09 PM | SENT |
| DAVID LLEBAS | | dlebas@namanhowell.com | 3/5/2024 4:25:09 PM | SENT |

Associated Case Party: Edward Dufurrena

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

David LeBas on behalf of David LeBas
Bar No. 12098600
dlebas@namanhowell.com
Envelope ID: 85227064
Filing Code Description: Amended Filing
Filing Description: Amended Filing
Status as of 3/5/2024 4:37 PM CST

Associated Case Party: Edward Dufurrena

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| KENNETH NETARDUS | | KNETARDUS@SJBLAWFIRM.COM | 3/5/2024 4:25:09 PM | SENT |

CIVIL CITATION-PERSONAL SERVICE

## THE STATE OF TEXAS

**TO:** HTLF BANK, AS SUCCESSOR TO FIRST BANK & TRUST, REGISTERED AGENT: CORPORATION SERVICE COMPANY DBA CSC – LAWYERS INCORPORATING SERVICE COMPANY, 211 EAST 7TH STREET, SUITE 620, AUSTIN, TEXAS 78701-3218

DEFENDANT IN THE HEREINAFTER STYLED AND NUMBERED CAUSE: CI-2023D-025

YOU ARE HEREBY COMMANDED TO APPEAR BEFORE THE 222ND JUDICIAL DISTRICT COURT OF DEAF SMITH COUNTY, TEXAS, TO BE HELD AT THE COURTHOUSE OF SAID COUNTY IN THE CITY OF HEREFORD, DEAF SMITH COUNTY, TEXAS BY FILING A WRITTEN ANSWER TO THE PETITION OF PLAINTIFF AT OR BEFORE 10:00 O'CLOCK A.M. OF THE MONDAY NEXT AFTER THE EXPIRATION OF 20 DAYS AFTER THE DATE OF SERVICE HEREOF, A COPY OF, PLAINTIFF'S SECOND AMENDED PETITION, WHICH ACCOMPANIES THIS CITATION, IN CAUSE NUMBER CI-2023D-025:

AGTEXAS FARM CREDIT SERVICES, AG TEXAS, PCA
THORLAKSON DIAMOND T FEEDERS, LP,
PLAINTIFFS

AND

EDWARD DUFURRENA, OPEN A ARENA, LLC'S. DENNIS BUSS, BUSS FAMILY TRUST, EDDIE BYRANT, ROBERT E. GRAY, RONNIE GRAY, GRAY BROTHERS, CRAIG SUTTON, AMY SUTTON, STEVE RYAN, JANICE LAWHON, AJ JACQUES LIVING TRUST, GUNGOLL CATTLE, LLC, LEAH GUNGOLL, MORRISON CAFÉ, LLC, GARY LESH, JAN LESH, LESH FAMILY TRUST, JARED LESH, JORDAN LESH, LLC, JOEL BROOKSHIRE, GENE BROOKSHIRE FAMILY, LP, DOUGLAS FINLEY, SCARLET AND BLACK CATTLE, LLC, BRYAN BLACKMAN, STEVE T SCOTT FARM, INC., SCOTT LIVESTOCK COMPANY, INC., ARNOLD BRAUN TRUST, ROBERT BRAUN, JIM RININGER, ROBERT SPRING, MICHAEL EVANS, MIRANDA EVANS, CHARLES LOCKWOOD, COLE LOCKWOOD, SHERLE LOCKWOOD, NIKKI LOCKWOOD, LYNDAL VAN BUSKIRK, JANET VAN BUSKIRK, COLBY VAN BUSKIRK, SUSAN VAN BUSKIRK, JIMMY GREER, DUSTIN JOHNSON AND DORA BLACKMAN,
INTERVENORS-PLAINTIFFS,

V.

RABO AGRIFINANCE LLC; HTLF BANK, AS SUCCESSOR TO FIRST BANK & TRUST; SHAWN RAGLAND; MECHANICS BANK; AND MEAGAN GOAD
DEFENDANTS,

FILED IN SAID COURT ON THE 5TH DAY OF MARCH, 2024

THE NAME AND ADDRESS OF THE ATTORNEY FOR PLAINTIFF IS:
DAVID L. LEBAS, NAMAN HOWELL SMITH & LEE, PLLC, 8310 N. CAPITAL OF TEXAS HWY, STE. 490, AUSTIN, TEXAS 78731.

**NOTICE TO DEFENDANT:** YOU HAVE BEEN SUED. YOU MAY EMPLOY AN ATTORNEY. IF YOU OR YOUR ATTORNEY DO NOT FILE A WRITTEN ANSWER WITH THE CLERK WHO ISSUED THIS CITATION BY 10:00 A.M. ON THE MONDAY NEXT FOLLOWING THE EXPIRATION OF TWENTY DAYS AFTER YOU WERE SERVED THIS CITATION AND PETITION, A DEFAULT JUDGMENT MAY BE TAKEN AGAINST YOU. IN ADDITION TO FILING A WRITTEN ANSWER WITH THE CLERK, YOU MAY BE REQUIRED TO MAKE INITIAL DISCLOSURES TO THE OTHER PARTIES OF THIS SUIT. THESE DISCLOSURES GENERALLY MUST BE MADE NO LATER THAN 30 DAYS AFTER YOU FILE YOUR ANSWER WITH THE CLERK. FIND OUT MORE AT TexasLawHelp.org.

ISSUED AND GIVEN UNDER MY HAND AND SEAL OF COURT AT OFFICE ON 6TH DAY OF MARCH, 2024.



**ELAINE GERBER**

ELAINE GERBER, DISTRICT CLERK
DEAF SMITH COUNTY, TEXAS
BY:_____ DEPUTY

# OFFICER'S RETURN

CAME TO HAND ON THE _____ DAY OF _____, 20_____, AT _____ O'CLOCK ____.M.
EXECUTED AT _____ WITHIN
THE COUNTY OF _____ AT _____ O'CLOCK ____.M. ON THE _____ DAY OF _____,
20_____, BY DELIVERING TO THE WITHIN NAMED ACCOMPANYING COPY OF PETITION, HAVING FIRST
ATTACHED A COPY OF SUCH PETITION TO SUCH CITATION AND INDORSED ON SUCH COPY OF CITATION THE
DATE OF DELIVERY.

*** NOT EXECUTED FOR THE FOLLOWING REASON: _____

_____

FEE FOR SERVICE: $_____

_____ SHERIFF,

_____ COUNTY, TEXAS

BY: _____, DEPUTY

CIVIL CITATION-PERSONAL SERVICE

# THE STATE OF TEXAS

**TO:** MEAGAN GOAD, 1775 WADESBORO RD. SOUTH, BENTON, KENTUCKY, 42025

DEFENDANT IN THE HEREINAFTER STYLED AND NUMBERED CAUSE: CI-2023D-025

YOU ARE HEREBY COMMANDED TO APPEAR BEFORE THE 222ND JUDICIAL DISTRICT COURT OF DEAF SMITH COUNTY, TEXAS, TO BE HELD AT THE COURTHOUSE OF SAID COUNTY IN THE CITY OF HEREFORD, DEAF SMITH COUNTY, TEXAS BY FILING A WRITTEN ANSWER TO THE PETITION OF PLAINTIFF AT OR BEFORE 10:00 O'CLOCK A.M. OF THE MONDAY NEXT AFTER THE EXPIRATION OF 20 DAYS AFTER THE DATE OF SERVICE HEREOF, A COPY OF, PLAINTIFF'S SECOND AMENDED PETITION, WHICH ACCOMPANIES THIS CITATION, IN CAUSE NUMBER CI-2023D-025:

AGTEXAS FARM CREDIT SERVICES, AG TEXAS, PCA
THORLAKSON DIAMOND T FEEDERS, LP,
PLAINTIFFS

AND

EDWARD DUFURRENA, OPEN A ARENA, LLC'S. DENNIS BUSS, BUSS FAMILY TRUST, EDDIE BYRANT, ROBERT E. GRAY, RONNIE GRAY, GRAY BROTHERS, CRAIG SUTTON, AMY SUTTON, STEVE RYAN, JANICE LAWHON, AJ JACQUES LIVING TRUST, GUNGOLL CATTLE, LLC, LEAH GUNGOLL, MORRISON CAFÉ, LLC, GARY LESH, JAN LESH, LESH FAMILY TRUST, JARED LESH, JORDAN LESH, LLC, JOEL BROOKSHIRE, GENE BROOKSHIRE FAMILY, LP, DOUGLAS FINLEY, SCARLET AND BLACK CATTLE, LLC, BRYAN BLACKMAN, STEVE T SCOTT FARM, INC., SCOTT LIVESTOCK COMPANY, INC., ARNOLD BRAUN TRUST, ROBERT BRAUN, JIM RININGER, ROBERT SPRING, MICHAEL EVANS, MIRANDA EVANS, CHARLES LOCKWOOD, COLE LOCKWOOD, SHERLE LOCKWOOD, NIKKI LOCKWOOD, LYNDAL VAN BUSKIRK, JANET VAN BUSKIRK, COLBY VAN BUSKIRK, SUSAN VAN BUSKIRK, JIMMY GREER, DUSTIN JOHNSON AND DORA BLACKMAN,
INTERVENORS-PLAINTIFFS,

V.

RABO AGRIFINANCE LLC; HTLF BANK, AS SUCCESSOR TO FIRST BANK & TRUST; SHAWN RAGLAND; MECHANICS BANK; AND MEAGAN GOAD
DEFENDANTS,

FILED IN SAID COURT ON THE 5TH DAY OF MARCH, 2024

THE NAME AND ADDRESS OF THE ATTORNEY FOR PLAINTIFF IS:
DAVID L. LEBAS, NAMAN HOWELL SMITH & LEE, PLLC, 8310 N. CAPITAL OF TEXAS HWY, STE. 490, AUSTIN, TEXAS 78731.

**NOTICE TO DEFENDANT:** YOU HAVE BEEN SUED. YOU MAY EMPLOY AN ATTORNEY. IF YOU OR YOUR ATTORNEY DO NOT FILE A WRITTEN ANSWER WITH THE CLERK WHO ISSUED THIS CITATION BY 10:00 A.M. ON THE MONDAY NEXT FOLLOWING THE EXPIRATION OF TWENTY DAYS AFTER YOU WERE SERVED THIS CITATION AND PETITION, A DEFAULT JUDGMENT MAY BE TAKEN AGAINST YOU. IN ADDITION TO FILING A WRITTEN ANSWER WITH THE CLERK, YOU MAY BE REQUIRED TO MAKE INITIAL DISCLOSURES TO THE OTHER PARTIES OF THIS SUIT. THESE DISCLOSURES GENERALLY MUST BE MADE NO LATER THAN 30 DAYS AFTER YOU FILE YOUR ANSWER WITH THE CLERK. FIND OUT MORE AT TexasLawHelp.org.

ISSUED AND GIVEN UNDER MY HAND AND SEAL OF COURT AT OFFICE ON 6TH DAY OF MARCH, 2024.



**ELAINE GERBER**
ELAINE GERBER, DISTRICT CLERK
DEAF SMITH COUNTY, TEXAS
BY: _Dee Fuentes_ DEPUTY

Exhibit Page 98 of 159

**OFFICER'S RETURN**

CAME TO HAND ON THE _____ DAY OF _____, 20_____, AT _____ O'CLOCK ____.M. EXECUTED AT _____ WITHIN THE COUNTY OF _____ AT _____ O'CLOCK ____.M. ON THE _____ DAY OF _____, 20_____, BY DELIVERING TO THE WITHIN NAMED ACCOMPANYING COPY OF PETITION, HAVING FIRST ATTACHED A COPY OF SUCH PETITION TO SUCH CITATION AND INDORSED ON SUCH COPY OF CITATION THE DATE OF DELIVERY.

*** NOT EXECUTED FOR THE FOLLOWING REASON: _____

_____

**FEE FOR SERVICE: $**_____

_____ SHERIFF,

_____ COUNTY, TEXAS

BY: _____, DEPUTY

CIVIL CITATION-PERSONAL SERVICE

# THE STATE OF TEXAS

**TO:** MECHANICS BANK; REGISTERED AGENT: C T CORPORATION SYSTEM, 1999 BRYAN STREET, STE. 900, DALLAS, TEXAS 75201-3136

DEFENDANT IN THE HEREINAFTER STYLED AND NUMBERED CAUSE: CI-2023D-025

YOU ARE HEREBY COMMANDED TO APPEAR BEFORE THE 222ND JUDICIAL DISTRICT COURT OF DEAF SMITH COUNTY, TEXAS, TO BE HELD AT THE COURTHOUSE OF SAID COUNTY IN THE CITY OF HEREFORD, DEAF SMITH COUNTY, TEXAS BY FILING A WRITTEN ANSWER TO THE PETITION OF PLAINTIFF AT OR BEFORE 10:00 O'CLOCK A.M. OF THE MONDAY NEXT AFTER THE EXPIRATION OF 20 DAYS AFTER THE DATE OF SERVICE HEREOF, A COPY OF, PLAINTIFF'S SECOND AMENDED PETITION, WHICH ACCOMPANIES THIS CITATION, IN CAUSE NUMBER CI-2023D-025:

AGTEXAS FARM CREDIT SERVICES, AG TEXAS, PCA
THORLAKSON DIAMOND T FEEDERS, LP,
PLAINTIFFS

AND

EDWARD DUFURRENA, OPEN A ARENA, LLC'S. DENNIS BUSS, BUSS FAMILY TRUST, EDDIE BYRANT, ROBERT E. GRAY, RONNIE GRAY, GRAY BROTHERS, CRAIG SUTTON, AMY SUTTON, STEVE RYAN, JANICE LAWHON, AJ JACQUES LIVING TRUST, GUNGOLL CATTLE, LLC, LEAH GUNGOLL, MORRISON CAFÉ, LLC, GARY LESH, JAN LESH, LESH FAMILY TRUST, JARED LESH, JORDAN LESH, LLC, JOEL BROOKSHIRE, GENE BROOKSHIRE FAMILY, LP, DOUGLAS FINLEY, SCARLET AND BLACK CATTLE, LLC, BRYAN BLACKMAN, STEVE T SCOTT FARM, INC., SCOTT LIVESTOCK COMPANY, INC., ARNOLD BRAUN TRUST, ROBERT BRAUN, JIM RININGER, ROBERT SPRING, MICHAEL EVANS, MIRANDA EVANS, CHARLES LOCKWOOD, COLE LOCKWOOD, SHERLE LOCKWOOD, NIKKI LOCKWOOD, LYNDAL VAN BUSKIRK, JANET VAN BUSKIRK, COLBY VAN BUSKIRK, SUSAN VAN BUSKIRK, JIMMY GREER, DUSTIN JOHNSON AND DORA BLACKMAN,
INTERVENORS-PLAINTIFFS,

V.

RABO AGRIFINANCE LLC; HTLF BANK, AS SUCCESSOR TO FIRST BANK & TRUST; SHAWN RAGLAND; MECHANICS BANK; AND MEAGAN GOAD
DEFENDANTS,

FILED IN SAID COURT ON THE 5TH DAY OF MARCH, 2024

THE NAME AND ADDRESS OF THE ATTORNEY FOR PLAINTIFF IS:
DAVID L. LEBAS, NAMAN HOWELL SMITH & LEE, PLLC, 8310 N. CAPITAL OF TEXAS HWY, STE. 490, AUSTIN, TEXAS 78731.

**NOTICE TO DEFENDANT:** YOU HAVE BEEN SUED. YOU MAY EMPLOY AN ATTORNEY. IF YOU OR YOUR ATTORNEY DO NOT FILE A WRITTEN ANSWER WITH THE CLERK WHO ISSUED THIS CITATION BY 10:00 A.M. ON THE MONDAY NEXT FOLLOWING THE EXPIRATION OF TWENTY DAYS AFTER YOU WERE SERVED THIS CITATION AND PETITION, A DEFAULT JUDGMENT MAY BE TAKEN AGAINST YOU. IN ADDITION TO FILING A WRITTEN ANSWER WITH THE CLERK, YOU MAY BE REQUIRED TO MAKE INITIAL DISCLOSURES TO THE OTHER PARTIES OF THIS SUIT. THESE DISCLOSURES GENERALLY MUST BE MADE NO LATER THAN 30 DAYS AFTER YOU FILE YOUR ANSWER WITH THE CLERK. FIND OUT MORE AT TexasLawHelp.org.

ISSUED AND GIVEN UNDER MY HAND AND SEAL OF COURT AT OFFICE ON 6TH DAY OF MARCH, 2024.



**ELAINE GERBER**

ELAINE GERBER, DISTRICT CLERK
DEAF SMITH COUNTY, TEXAS
BY: _____ DEPUTY

## OFFICER'S RETURN

CAME TO HAND ON THE _____ DAY OF _____, 20_____, AT _____ O'CLOCK ____.M.
EXECUTED AT _____ WITHIN
THE COUNTY OF _____ AT _____ O'CLOCK ___.M. ON THE _____ DAY OF _____,
20_____, BY DELIVERING TO THE WITHIN NAMED ACCOMPANYING COPY OF PETITION, HAVING FIRST
ATTACHED A COPY OF SUCH PETITION TO SUCH CITATION AND INDORSED ON SUCH COPY OF CITATION THE
DATE OF DELIVERY.

*** NOT EXECUTED FOR THE FOLLOWING REASON: _____

_____

FEE FOR SERVICE: $_____

_____ SHERIFF,

_____ COUNTY, TEXAS

BY: _____, DEPUTY

CIVIL CITATION-PERSONAL SERVICE

# THE STATE OF TEXAS

**TO:** SHAWN RAGLAND, 2317 MEMORIAL WAY, SNYDER, TEXAS 79549

DEFENDANT IN THE HEREINAFTER STYLED AND NUMBERED CAUSE: CI-2023D-025

YOU ARE HEREBY COMMANDED TO APPEAR BEFORE THE 222ND JUDICIAL DISTRICT COURT OF DEAF SMITH COUNTY, TEXAS, TO BE HELD AT THE COURTHOUSE OF SAID COUNTY IN THE CITY OF HEREFORD, DEAF SMITH COUNTY, TEXAS BY FILING A WRITTEN ANSWER TO THE PETITION OF PLAINTIFF AT OR BEFORE 10:00 O'CLOCK A.M. OF THE MONDAY NEXT AFTER THE EXPIRATION OF 20 DAYS AFTER THE DATE OF SERVICE HEREOF, A COPY OF, PLAINTIFF'S SECOND AMENDED PETITION, WHICH ACCOMPANIES THIS CITATION, IN CAUSE NUMBER CI-2023D-025:

AGTEXAS FARM CREDIT SERVICES, AG TEXAS, PCA
THORLAKSON DIAMOND T FEEDERS, LP,
PLAINTIFFS

AND

EDWARD DUFURRENA, OPEN A ARENA, LLC'S. DENNIS BUSS, BUSS FAMILY TRUST, EDDIE BYRANT, ROBERT E. GRAY, RONNIE GRAY, GRAY BROTHERS, CRAIG SUTTON, AMY SUTTON, STEVE RYAN, JANICE LAWHON, AJ JACQUES LIVING TRUST, GUNGOLL CATTLE, LLC, LEAH GUNGOLL, MORRISON CAFÉ, LLC, GARY LESH, JAN LESH, LESH FAMILY TRUST, JARED LESH, JORDAN LESH, LLC, JOEL BROOKSHIRE, GENE BROOKSHIRE FAMILY, LP, DOUGLAS FINLEY, SCARLET AND BLACK CATTLE, LLC, BRYAN BLACKMAN, STEVE T SCOTT FARM, INC., . SCOTT LIVESTOCK COMPANY, INC., ARNOLD BRAUN TRUST, ROBERT BRAUN, JIM RININGER, ROBERT SPRING, MICHAEL EVANS, MIRANDA EVANS, CHARLES LOCKWOOD, COLE LOCKWOOD, SHERLE LOCKWOOD, NIKKI LOCKWOOD, LYNDAL VAN BUSKIRK, JANET VAN BUSKIRK, COLBY VAN BUSKIRK, SUSAN VAN BUSKIRK, JIMMY GREER, DUSTIN JOHNSON AND DORA BLACKMAN,
INTERVENORS-PLAINTIFFS,

V.

RABO AGRIFINANCE LLC; HTLF BANK, AS SUCCESSOR TO FIRST BANK & TRUST; SHAWN RAGLAND; MECHANICS BANK; AND MEAGAN GOAD
DEFENDANTS,

FILED IN SAID COURT ON THE 5TH DAY OF MARCH, 2024

THE NAME AND ADDRESS OF THE ATTORNEY FOR PLAINTIFF IS:
DAVID L. LEBAS, NAMAN HOWELL SMITH & LEE, PLLC, 8310 N. CAPITAL OF TEXAS HWY, STE. 490, AUSTIN, TEXAS 78731.

**NOTICE TO DEFENDANT:** YOU HAVE BEEN SUED. YOU MAY EMPLOY AN ATTORNEY. IF YOU OR YOUR ATTORNEY DO NOT FILE A WRITTEN ANSWER WITH THE CLERK WHO ISSUED THIS CITATION BY 10:00 A.M. ON THE MONDAY NEXT FOLLOWING THE EXPIRATION OF TWENTY DAYS AFTER YOU WERE SERVED THIS CITATION AND PETITION, A DEFAULT JUDGMENT MAY BE TAKEN AGAINST YOU. IN ADDITION TO FILING A WRITTEN ANSWER WITH THE CLERK, YOU MAY BE REQUIRED TO MAKE INITIAL DISCLOSURES TO THE OTHER PARTIES OF THIS SUIT. THESE DISCLOSURES GENERALLY MUST BE MADE NO LATER THAN 30 DAYS AFTER YOU FILE YOUR ANSWER WITH THE CLERK. FIND OUT MORE AT TexasLawHelp.org.

ISSUED AND GIVEN UNDER MY HAND AND SEAL OF COURT AT OFFICE ON 6TH DAY OF MARCH, 2024.



ELAINE GERBER
ELAINE GERBER, DISTRICT CLERK
DEAF SMITH COUNTY, TEXAS
BY: _____ DEPUTY

/s/ DEE SIFUENTES

IN THE 222ND JUDICIAL DISTRICT COURT
DEAF SMITH COUNTY, TEXAS

C: ALL

| | |
|---|---|
| AGTEXAS FARM CREDIT SERVICES, § | |
| AGTEXAS, PCA § | |
| THORLAKSON DIAMOND T FEEDERS, LP § | |
| § | |
| § | |
| Plaintiffs, § | |
| § | |
| and § | CAUSE NO. CI-2023D-025 |
| § | |
| EDWARD DUFURRENA, § | |
| OPEN A ARENA, LLC'S, § | |
| DENNIS BUSS, BUSS FAMILY TRUST, § | |
| EDDIE BRYANT, ROBERT E. GRAY, § | |
| RONNIE GRAY, GRAY BROTHERS, § | |
| CRAIG SUTTON, AMY SUTTON, § | |
| STEVE RYAN, JANICE LAWHON, § | |
| AJ JACQUES LIVING TRUST, § | |
| GUNGOLL CATTLE, LLC, § | |
| LEAH GUNGOLL, § | |
| MORRISON CAFÉ, LLC, GARY LESH, § | |
| JAN LESH, LESH FAMILY TRUST, § | |
| JARED LESH, JORDAN LESH, LLC, § | |
| JOEL BROOKSHIRE, GENE BROOKSHIRE § | |
| FAMILY, LP, DOUGLAS FINLEY, § | |
| SCARLET AND BLACK CATTLE, LLC, § | |
| BRYAN BLACKMAN, STEVE T § | |
| SCOTT FARM, INC., SCOTT LIVESTOCK § | |
| COMPANY, INC., ARNOLD BRAUN § | |
| TRUST, ROBERT BRAUN, § | |
| JIM RININGER, ROBERT SPRING, § | |
| MICHAEL EVANS, MIRANDA EVANS, § | |
| CHARLES LOCKWOOD, § | |
| COLE LOCKWOOD, SHERLE LOCKWOOD, § | |
| NIKKI LOCKWOOD, LYNDAL VAN § | |
| BUSKIRK, JANET VAN BUSKIRK, § | |
| COLBY VAN BUSKIRK, SUSAN VAN § | |
| BUSKIRK, JIMMY GREER, DUSTIN § | |
| JOHNSON AND DORA BLACKMAN § | |
| § | |
| Intervenors-Plaintiffs, § | |
| § | |
| § | |
| v. § | |

RABO AGRIFINANCE LLC;                          §
HTLF BANK, AS SUCCESSOR TO                     §
FIRST BANK & TRUST;                            §
SHAWN RAGLAND;                                 §
MECHANICS BANK; AND                            §
MEAGAN GOAD                                    §
                                               §
       Defendants.                      §
                                               §

## Plaintiffs' Second Amended Petition

**TO THE HONORABLE JUDGE OF SAID COURT:**

Plaintiffs AgTexas Farm Credit Services, a federally chartered agricultural credit association formed under the Farm Credit Act of 1933 and AgTexas, PCA a federally chartered production credit association formed under the Farm Credit Act of 1933 (collectively "AgTexas"), Thorlakson Diamond T Feeders, LP ("Thorlakson"); (collectively, "Plaintiffs"), complaining of Rabo AgriFinance LLC ("Rabo"), Mechanics Bank ("Mechanics"),  HTLF Bank, as successor to First Bank & Trust ("HTLF"), Shawn Ragland, and Meagan Goad (collectively, "Defendants"), submit the following for their Amended Petition:

## Discovery Control Plan

1.      Pursuant to TEX. R. CIV. P. 190, Plaintiffs state that discovery in this matter is intended to be conducted under Level 3, as specified by TEX. R. CIV. P. 190.3.

## Statement of Relief Requested

2.      Pursuant to Rule 47 of the Texas Rules of Civil Procedure, Plaintiffs seek monetary relief over $1,000,000.00.

## Parties and Service

3.      Plaintiffs allege that the requirements of Section 30.014 of the Texas Civil Practice

101049-0002 4867-1942-9035v1

& Remedies Code impinge a fundamental right guaranteed to them by the Texas Constitution, and Plaintiffs accordingly withhold any further identifying information other than as set forth below, unless and until ordered to do so by the Court.

4.      AgTexas Farm Credit Services, Plaintiff, is a federally chartered agricultural credit association formed under the Farm Credit Act of 1933.  It does business in various locations in Texas, including Deaf Smith County, Texas.

5.      AgTexas, PCA, Plaintiff, is a federally chartered production credit association formed under the Farm Credit Act of 1933.  It does business in various locations in Texas, including Deaf Smith County, Texas.

6.      Thorlakson Diamond T Feeders, LP, is a Texas limited partnership.  It does business in various locations in Texas, including Deaf Smith County, Texas.

7.      Rabo AgriFinance LLC ("Rabo"), Defendant, is a limited liability company that does business in various locations in Texas, including Deaf Smith County.  It can be served by serving its registered agent, Corporate Creations Network Inc., 5444 Westheimer #1000, Houston, Texas 77056.

8.      Mechanics Bank, Defendant, is a California stock corporation that does business in Texas.  It can be served by serving its registered agent, C T Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136.

9.      HTLF Bank, as successor to First Bank & Trust ("First Bank"), Defendant, is a Colorado corporation, that does business in various locations in Texas.  It can be served by serving its registered agent, Corporation Service Company dba CSC – Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

10.     Shawn Ragland, Defendant, is an individual who resides in the State of Texas. He may be served with process by personal service at his last known address of 2317 Memorial Way, Snyder, Texas 79549, or wherever he may be found.

11.     Meagan Goad, Defendant, is an individual who resides in the State of Kentucky. She may be served with process by personal service at her last known address at 1775 Wadesboro Rd. South, Benton, Kentucky 42025, or wherever she may be found.

## Jurisdiction and Venue

12.     This case falls within the general jurisdiction of this Court.

13.     Jurisdiction in the State of Texas is proper because individual Defendant, Shawn Ragland, is a resident of the State of Texas. *See e.g., Milliken v. Meyer*, 311 U.S. 457, 462-63 (1940) (domicile in state is alone sufficient to support exercise of personal jurisdiction over defendant)).

14.     Furthermore, Defendants Rabo AgriFinance LLC, First Bank, Mechanics Bank, and Megan Goad subjected themselves to the jurisdiction of this Court because their acts or omissions, described below, caused Plaintiffs injuries in the State of Texas. Jurisdiction is also proper because Defendants had systematic and continuous contacts with the State of Texas. *See e.g., Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 572 (Tex. 2007) (a Texas court may assert specific jurisdiction over an out-of-state-defendant if the defendant's contact with this state is purposeful and the injury arises from or relates to those contacts).

15.     Venue is proper in Deaf Smith County in this case pursuant to TEX. CIV. PRAC. & REM. CODE § 15.002(a)(1) because Deaf Smith is the county in which all or a substantial part of the events or omissions giving rise to the claims occurred.

16.     Further, venue exists in this case over the Defendants under TEX. CIV. PRAC. &
REM. CODE §15.035 because one or more Defendants entered contracts in whole or in part, in
Deaf Smith County, Texas.

17.     Venue is proper in Deaf Smith County in accordance with TEX. CIV. PRAC. & REM.
CODE § 15.002 because it is the county in which all or a substantial part of the events or omissions
giving rise to the claim occurred, and if venue is valid as to one Defendant, it is valid as to all,
pursuant to TEX. CIV. PRAC. & REM. CODE § 15.003.

**Summary**

18.     Rabo is one of the largest lenders in the agricultural industry in the United States
and has over 100 years of experience in the agriculture lending industry. Rabo touts its robust
understanding of all segments of the agricultural industry, including cattle feeding, with a
nationwide team of agricultural lenders, financial analysts, and other leading professionals in the
agricultural finance space. Rabo's own website explains that its "Relationship Managers are
agricultural specialists with global networks and local knowledge, on-farm experience and
financial expertise…."

19.     Starting in about 2017, Rabo gave Brian McClain the opportunity to expand his
backgrounding and cattle feeding operations from Kentucky into the Texas Panhandle—the cattle
feeding capital of the world. At that time, Rabo financed McClain's purchase of a feedyard outside
of Hereford, Texas, which would be known as the 'McClain Feed Yard.' Two years later in May
2019, Rabo extended $12,000,000.00 to McClain as an operating line of credit. Later that year,
Rabo financed a second feedyard for McClain, this time outside of Friona, Texas, which would be
operated by McClain under the name '7M Cattle Feeders.' At the same time, Rabo extended an
additional operating line of $4,000,000.00 to McClain. Six months later, in January 2020, both

operating lines of credit were substantially increased, from $16,000,000.00 total to $23,000,000.00 extended across both operating notes. The extension and expansion of credit to the McClain operation continued, with an additional $2,000,000.00 in operating capital being extended in March 2021, and then, a short five months later, in August 2021, a new operating line in the amount of $45,000,000.00 was extended to McClain, together with a third real estate note in the amount of $1,019,800.00.

20.    In just over three years, sophisticated and experienced agricultural lender, Rabo, loaned McClain nearly $2 million for real estate purchases, together with $70 million in operating capital. Over this time frame, Rabo relied largely on McClain's limited submissions and reports with respect to the McClain operation and the numbers of cattle that were purportedly owned by McClain to be collateral for its multi-million dollar extension of credit. Periodically, a Rabo representative would prepare and submit a collateral inspection report to the Rabo finance team. On more than one occasion, these internal reports raised questions and concerns with respect to the McClain operation, including the actual ownership of the cattle in the McClain yards, the number of cattle present in the McClain yards, and the sheer lack of operational safeguards and procedures. These reports were ignored by Rabo management, and the credit line was only increased.

21.    Finally in February 2023, Rabo initiated a collateral inspection, substantiating these concerns. The investigation revealed that McClain had been providing false reports regarding the number of cattle his companies purportedly owned. Despite McClain's claims that his companies possessed approximately 80,000 head of cattle, the collateral inspection uncovered a stark reality: only around 8,000 cattle were present at the two facilities in Texas. Furthermore, the inspection revealed and confirmed that the cattle in these yards were not even owned by McClain; therefore,

they were not financed with Rabo funds and not subject to its security interest. Rather, third-party feedyard customers owned the cattle that were actually present—not McClain. In the words of one of Rabo's inspectors, "This is basically a worst-case scenario" and a "Possible Fraud Case. Recommendation to Downgrade immediately and take control of cattle as soon as possible due to concerns related to cattle being owned by other parties."

22.    It quickly became apparent to Rabo that it had to act quickly and quietly to deal with a $70 million operating line that was not secured by any cattle assets owned by McClain. After years of not dealing with the hard questions related to McClain's business operations, Rabo, now armed with the understanding of what it described as Ponzi Scheme, took quick actions to protect its own interests, presenting a Forbearance Agreement to McClain to keep the operation afloat, and then, after taking charge of the McClain Entities, Rabo brought it is own "fixer" to serve as the Chief Restructuring Officer. Plans were quickly arranged for Rabo to take possession of and auction off the cattle in the McClain yards, despite the fact that Rabo knew they were owned by third-parties and not subject to its lending or security agreements with McClain.

23.    While Rabo was busy taking action to collapse the house of cards it had created (orchestrating the bankruptcy filing of McClain, taking possession of McClain's business records and documents from McClain's Kentucky headquarters and shipping them to their investigators in Chicago), Plaintiffs, the cattle producers who had live animals on feed at McClains' yards, continued to unknowingly pay for feed, buy cattle, and expect McClain to send them checks for cattle purchased and/or sold on Plaintiffs' behalf. Millions of dollars went into McClain's accounts, now actually controlled by Rabo. Despite knowing of the Ponzi Scheme, Rabo continued

to keep Plaintiffs in the dark until it was prepared to fold the matter into bankruptcy, where it was set to be the largest "secured" creditor.

24.    The February 2023 investigation was not the first red flag that had shown up with respect to the McClain operation. As Rabo's pleadings in Bankruptcy Court make clear, Rabo had control over three McClain accounts at Mechanics Bank through Deposit Account Control Agreements. A cursory examination of the financial records and bank accounts associated with the McClain Entities would have revealed the fraudulent nature of the McClain operation. As is described further herein, the circumstantial and direct evidence shows that Rabo knew that McClain was running a Ponzi Scheme as early as May 2022, if not before. Yet, Rabo failed to take any action to stop the McClain fraud. Rather, Rabo continued to facilitate and support the Ponzi and check kiting scheme orchestrated by McClain.

25.    At around the same time, the McClain Entities' bank, Mechanics Bank, knew or should have known that there were multiple transactions involving several millions of dollars per transaction flowing through the McClain Entities' bank accounts.  The number of transactions and the amount of those transactions continued to grow over time through the McClain Entities' bank accounts with Mechanics Bank.  Applicable banking industry standards required Mechanics Bank to review these transactions to detect illicit activity.  Upon information and belief, despite repeated alerts, Mechanics Bank did not take any affirmative action to determine if the McClain Entities were using Mechanics Bank's banking services for purposes of perpetuating fraud through a Ponzi and/or check kiting scheme.

26.    In addition, as described more fully below, HTLF, a bank that facilitated multiple transactions between its customer, 2B Farms, and the McClain Entities, was intimately involved and knew about the McClain Entities' business operations.  The banking procedures HTLF utilized

were unorthodox and, upon information and belief, in violation of industry banking standards. HTLF's unusual banking methods aided and assisted the McClain Entities to further its Ponzi and/or check kiting scheme.

27.    The Defendants' deliberate participation in McClain's Ponzi scheme, at various stages and with differing degrees of involvement, exacerbated the extent of the damage inflicted upon unsuspecting cattle purchasers – the Plaintiffs herein.

### Procedural History

28.    This case was filed on April 24, 2023, concerning, in part, a cattle operation involving Brian McClain, McClain Feed Yard, Inc., 7M Cattle Feeders, Inc., another non-party entity owned and controlled by Brian McClain, McClain Farms, Inc, and Rabo.

29.    On April 28, 2023, the following bankruptcy cases were filed in the United States Bankruptcy Court for the Northern District of Texas, Amarillo Division: McClain Feed Yard, Inc. (Case No. 23-20084-RLJ); McClain Farms, Inc. (Case No. 23-20085-RLJ); and 7M Cattle Feeders, Inc. (Case No. 23-20086-RLJ).   On or about April 18, 2023, Brian McClain died.   These bankruptcy debtors and Mr. McClain will be described collectively in this pleading as "the McClain Entities," and the bankruptcy cases as the "bankruptcy proceedings."

30.    Plaintiffs disclaim that this suit is an effort to recover from the McClain Entities.

### Fact Allegations

31.    All Plaintiffs had dealings with the McClain Entities.   For the most part, these dealings involved cattle owned by Plaintiffs which were delivered to one or more of the McClain Entities' facilities for growing and health care before they were ready for shipment to a finishing feedyard.   Details of specific arrangements concerning these dealings are too voluminous for description in this pleading and will be provided in discovery.

32.     The Trustee in the bankruptcy proceedings confirmed that the McClain Entities engaged in a massive Ponzi scheme involving cattle, and that over $120,000,000.00 in claims for missing cattle have been filed by over 100 parties.

## *Allegations as to Rabo AgriFinance, LLC*

33.     Rabo provided a credit facility to the McClain Entities and based on records provided to date in the bankruptcy proceedings, their lending relationship started in approximately May 2018.

34.     Based upon many pieces of direct and circumstantial evidence, Rabo knew of the McClain Entities' Ponzi scheme by May 2022. In February 2023 Rabo conducted a collateral inspection at the McClain Entities' facilities in Texas and the internal report confirmed that the McClain operation was in distress.

35.     Rabo's inspector reported that the McClain Entities were short by thousands of cattle worth millions of dollars. The report stated, "**This is basically a worst-case scenario.**" The report also stated: "Large negative borrowing base after adjustments for cattle. **Possible Fraud Case.** Recommendation to Downgrade immediately **and take control of cattle as soon as possible due to concerns related to cattle being owned by other parties**." (emphasis added)

36.     Despite the findings from the February inspection, Rabo did not shut down the McClain Entities' operation or inform any others of the massive Ponzi scheme.  Instead, Rabo allowed the McClain Entities to continue operations.  This decision was intentional to Plaintiffs' detriment.  Indeed, Rabo knew that it had invested roughly $50 million in the McClain Entities' Ponzi scheme, which enabled the Ponzi scheme to grow exponentially.  Yet, Rabo elected to act and protect its own interest by continuing to allow Plaintiffs to deposit millions of dollars in the McClain Entities' bank account while preventing payments from being made to Plaintiffs.

37.    Thorlakson alone paid McClain more than $2,800,000.00 to purchase cattle between March 12 and March 18, 2023, long after Rabo discovered the huge discrepancy. The money went straight to Rabo's controlled account. After Thorlakson discovered the problem, the cattle were long gone. Other Plaintiffs continued to pay and send hundreds of thousands, if not millions of dollars, for deposit into the McClain Entities bank accounts during this same time.

38.    The McClain Entities had three separate bank accounts at Mechanics Bank. Rabo's pleadings in Bankruptcy Court allege that it had control over the Mechanics Bank accounts used by the McClain Entities through "deposit account control agreements" (DACAs).[1]    Neither Mechanics Bank, nor Rabo, raised any red flags about the substantial amount of money being funneled through these accounts—although they knew of McClain's Ponzi scheme. Both Rabo and Mechanics Bank deliberately allowed Plaintiffs to continue to fund McClain's Ponzi scheme. Some of those transactions are described in further detail herein in the allegations against HTLF and Mechanics Bank.

39.    Plaintiffs further allege that after Rabo discovered McClain's Ponzi scheme, it wrongfully and unlawfully began liquidating cattle that belonged to Plaintiffs. Rabo did not provide Plaintiffs with notice of its intent to collect all the cattle and liquidate them.

40.    The circumstantial and direct evidence shows that Rabo knew of McClain's Ponzi scheme as early as May 2022 when it performed a collateral inspection. According to Rabo, around the time it provided its initial credit facility, the McClain Entities' operations consisted of buying lightweight calves and stocker cattle in the southeastern United States and would have them shipped to Texas to grow to marketing weight and condition health for optimal performance. The

---

[1] These allegations may be found in Rabo's Amended Complaint was filed in Cause No. 23-02005-rlj, in the U.S. Bankruptcy Court for the Northern District of Texas, Amarillo Division.

McClain Entities would then contract the cattle to a livestock agent for sale to commercial feeding companies with the primary purchaser being Friona Industries. Brian McClain represented that all the cattle were always "company owned."

41.    Sometime prior to May 2022, the McClain Entities' business model changed significantly because it was no longer feeding cattle for Friona Industries. Rabo learned of this change in approximately May 2022, when it conducted a collateral inspection.

42.    In Rabo's May 11, 2022 collateral inspection report, Rabo's inspector noted that all cattle inventory were "claimed as owned by [the McClain Entities] and viewed on the date of inspection . . . ." The inspector noted that the change in the McClain Entities' business operations "has caused McClain to own more cattle personally . . ." and that would be a "temptation for McClain to grow more so that he can fill the hole left in his capacity which occurred once [Friona Industries] quite feeding/growing cattle on a regular basis." The inspector noted that it would take McClain great discipline not to expand his "personal" headcount and recommended that the McClain Entities not expand its operations any further until its accounting processes and procedures are up the standard needed for his current alleged head count of 70,000 cattle.

43.    The inspector further noted that the McClain Entities had a large account receivable for feed relating to cattle that were owned by various customers. The account receivable noted in the inspection report reflected that the account receivable for feed was approximately 1/3 of the value of the feed and grain inventory accounted for in the inspection report—thus confirming that a substantial amount of cattle at the McClain Entities' facilities were not "company owned" as McClain represented.

44.    Moreover, Rabo's inspector openly acknowledged reviewing all bank statements of the McClain Entities for March 2022, in collaboration with Mechanics Bank. These statements

unveiled numerous substantial transactions from external parties supposedly for cattle purchases. Additionally, these statements showed several perplexing intercompany transactions and Rabo's collateral inspection reports have always noted that the McClain Entities' record-keeping and accounting procedures consistently fell short of Rabo's standards. Indeed, Rabo discovered that the McClain Entities grossly understated the number of outstanding checks by over $3.4 million. This error, according to Rabo, emphasized the problems with the McClain Entities' record-keeping and accounting procedures.

45.     According to Rabo's standards, the McClain Entities were required to submit borrowing base certificates ("BBC") monthly to Rabo that contains pertinent information based on their financial records. According to the inspection report, the McClain Entities did not provide accurate numbers for its BBC for the relevant period. The inspector noted that the McClain Entities' documentation of their financial transactions has been an issue since the inception of the loan in 2018. One would reasonably anticipate that such suspicious transactions and accounting discrepancies would trigger a comprehensive investigation into the legitimacy of McClain's operations. However, Rabo chose to disregard these glaring red flags, turning a blind eye and allowing McClain's Ponzi scheme to persist unchecked.

46.     As of January 27, 2021, AgTexas and Rabo, joined by Thorlakson and McClain, had signed an Intercreditor Agreement by which Rabo acknowledged that Thorlakson would purchase cattle from McClain and place them with McClain for feeding and care. Rabo disclaimed any interest in these cattle. Thus, Rabo had actual knowledge that McClain had cattle in his possession that it knew did not belong to him, and which directly contradicted McClain's representation report at the time of the May 2022 inspection that all cattle inventory were "claimed as owned by [the McClain Entities] and viewed on the date of inspection . . . ." Despite this, Rabo

did nothing to investigate this discrepancy at the heart of its multi-million-dollar loan to McClain. Instead, it encouraged him by increasing his line of credit.

### *Allegations as to HTLF*

47.    The McClain Entities did business with 2B Farms, a partnership with its principal place of business in Lubbock County, Texas.  2B Farms filed a Chapter 12 Bankruptcy after the McClain Entities were allegedly unable to repay it approximately $16 million dollars.[2]  This loss was documented in part by checks drawn on the McClain Entities' Mechanics Bank accounts, controlled by Rabo, which were returned non-sufficient funds (NSF) after the McClain crisis hit.

48.    After 2B Farms filed its bankruptcy case, Terry and Rebecca Robinson ("the Robinsons") provided testimony at the meeting of creditors.  Their testimony described an arrangement between the McClain Entities and 2B Farms.  2B Farms would purchase cattle (usually from McClain), those cattle would be delivered to the McClain Entities' grow yards, and the McClain Entities would provide the feed and care.  After the cattle reached 725-750 lbs, the McClain Entities would sell them to a finishing operation.  The two parties would split the financing cost for the cattle and feed, then split the profits, if any, from the sale of the cattle.  While these proceeds were split, at no time did the McClain Entities own the cattle.

49.    Mr. Robinson testified also that the McClain Entities, or Megan McClain also known as Megan Goad (Brian McClain's daughter), would send blank, pre-signed checks written on the McClain Entities' accounts at Mechanics Bank to HTLF.  Those checks were kept by an employee (or multiple employees) at HTLF until it was time to "close out" a transaction for the sale of a lot of cattle.  The McClain Entities told Robinson the information needed to fill out the checks, such as head counts and amounts, and this information was relayed by 2B Farms to an

---

[2] *See* Case No. 23-50096-rlj-12, pending in the U.S. Bankruptcy Court, Northern District of Texas, Lubbock Division.

HTLF employee. The HTLF employee would then fill out the blank, pre-signed checks for the amounts given to them by the Robinsons. The checks were then deposited into 2B Farms' HTLF account and HTLF provided immediate credit for the deposit. Often on the same day, 2B Farms would write a check back to the McClain Entities, using funds that HTLF had given it immediate credit, thus enabling a check kite.

50.     According to documents provided as a part of the 2B Farms bankruptcy proceeding, 2B Farms transferred more than $231,000,000.00 from its account at HTLF to the McClain Entities' Mechanics Bank accounts between January 30, 2023, and April 6, 2023. The same source describes transfers in excess of $246,000,000.00 from the McClain Entities' accounts into 2B Farm's accounts, much of it in the same time period. The Robinsons also testified that during this timeframe, the transactions with the McClain Entities went from approximately $1.4 million to $1.5 million and then on approximately February 7, 2023, those transactions nearly doubled to $2.5 million and upwards of $3.5 million. The Robinsons acknowledged that they were involved in either a cattle sale and/or a purchase of cattle on their part almost every single day other than weekends or holidays during this timeframe.

51.     The Robinsons testified that that Shawn Ragland was their loan officer and that they knew Ragland for all their lives. The Robinsons testified that no one at HTLF ever verified that the funds represented real cattle transactions.

***Allegations as to Mechanics Bank***

52.     The McClain Entities maintained three separate accounts at Mechanics Bank: one for 7M Cattle Feeders, Inc.; one for McClain Farms, Inc.; and one for McClain Feedyards, Inc.

53.     As mentioned previously, Rabo had established control agreements (DACA's) with Mechanics Bank regarding the management of these accounts. The bank statements provided by

Mechanics Bank prominently display the designation: "Rabo AgriFinance Powered by Mechanics Bank," signifying the collaborative nature of the financial arrangements. In the months leading up to the events prompting this legal action, a substantial volume of funds, totaling hundreds of millions of dollars, flowed in and out of all three Mechanics Bank accounts with remarkable frequency. Notably, transactions involving sums in the millions occurred almost daily from January 2023 through to the point when the accounts were eventually frozen. Furthermore, at the close of each month during this period, the account balances consistently reverted to zero, indicating a complete turnover of credits. This recurrent cycle of substantial transactions, coupled with the consistent reset of balances, should have served as a glaring indicator to Mechanics Bank and its management that something potentially dubious was occurring within the business operations of the McClain Entities.

54.    As of April 2023, the McClain Entities' bank accounts reached a deposit amount in excess of $22,000,000.00.  The accounts were frozen early April 2023 because of a demand made by Rabo.

55.    Rabo alleged in the bankruptcy cases that after the accounts were frozen, an entity known as MAP Enterprises allegedly wired just over $3 million into the Mechanics Bank account to bring it up to a zero balance.

56.    Mechanics Bank, either on its own, or through its DACA agreement with Rabo, knew or should have known that the transactions were part of a fraudulent check kiting scheme. Instead, it allowed millions of dollars to flow in and out of the account, to the Plaintiffs' detriment.

***General allegations***

57.    Plaintiffs have or will present their claims more than 30 days before Judgment can be rendered in this case.  All payments, offsets, and credits due have or will be provided.

58.     Plaintiffs have engaged the services of the undersigned attorneys to assist them in pursuing this cause of action and have agreed to pay reasonable attorneys' fees.

59.     Pursuant to Rule 54, Plaintiffs plead that all conditions precedent to their recovery have been performed or have occurred.

60.     Throughout this Petition, where it is alleged that any Defendant performed or failed to perform any acts or activities, or made any representations, it is meant that such Defendant's agents, officers, servants, employees or representatives performed or failed to perform such acts or activities and at the time such acts or activities were done, they were with full authorization or ratification of said Defendant, or were in the normal or routine course of business.

### Conversion and Common Law Fraud

61.     The allegations stated above are incorporated by reference.

62.     Plaintiffs are entitled to and seek recovery of judgment for conversion against Rabo to the extent that Rabo acquired cattle or proceeds belonging to Plaintiffs.

63.     The Defendants made misrepresentations to Plaintiffs recklessly without any knowledge of the truth and as a positive assertion.  Moreover, the misrepresentations were made with the intention that they should be acted on by Plaintiffs, and Plaintiffs in fact relied upon those misrepresentations, suffering injury and damage as a result thereof.  Thus, the misrepresentations and reliance so described were a proximate cause of injury and damage to the Plaintiffs for which Plaintiffs now sue in a sum within the jurisdictional limits of the Court.

64.     Plaintiffs seek judgment for their reasonable attorney fees at trial and through all applicable appellate levels, pursuant to TEX. CIV. PRAC. & REM. CODE § 38.001(6).

### Negligence of Defendants in Lending and Hiring or Supervision or Management Personnel

65.     The allegations stated above are incorporated by reference.

66.     Defendants were negligent in their banking and lending practices, including, but not limited to, their underwriting, investigative, and assessment of customer, and in the hiring or supervision of their management personnel.  Defendants failed to property monitor and manage their lending relationships with the McClain Entities.  Defendants are therefore liable for the losses Plaintiffs suffered because of their actions and omissions.   Their actions and omissions are described above.

67.     The losses incurred by Plaintiffs as a proximate result of Defendants' negligent actions exceed the minimum jurisdictional limits of this Court.  Plaintiffs seek judgment for these damages.

### Tortious Actions by the Individual Defendant Goad

68.     The allegations stated above are incorporated by reference.

69.     Goad directed and controlled the actions and omissions of the McClain Entities-entities in a manner that was tortious in at least the following ways:

   a.     They misrepresented the existence of cattle in their possession;

   b.     They promised and agreed to purchase individual lots of cattle for customers, but sent false yard sheets to the customers for whom they promised and agreed to purchase cattle, although there were far fewer lots of cattle than were represented, such that multiple customers were being informed they were owners if the same cattle;

   c.     They used the yard sheets, and other means, such as verbal reports and inspections, to report to Plaintiffs that cattle delivered to Defendants were in their possession and under their control when in fact they were not;

   d.     They directed and allowed the Defendant-entities to keep and use the proceeds of their wrongdoing for their own purposes.

70.     Goad is therefore personally liable for all damages, both actual and punitive, that Plaintiffs suffered because of the McClain Entities' actions and omissions.

### Aiding and Abetting Fraud

71.    The allegations stated above are incorporated by reference.

72.    Plaintiffs were each victimized by the McClain Entities' Ponzi and/or check kiting scheme. Through the McClain Entities, Brian McClain solicited and accepted payment from Plaintiffs for the purchase of cattle with the intent to defraud Plaintiffs. McClain did not tell Plaintiffs that their purchase money was being used to make payments other than for the purchase of cattle.

73.    Defendants actively facilitated, enabled and supported the Ponzi and/or check kiting scheme orchestrated by the McClain Entities. With significantly greater access to the inner workings of McClain Entities' operations, Defendants were in a prime position to identify the numerous red flags and glaring inconsistencies in the books and records, yet they chose to turn a blind eye to the unmistakable signs of illegitimacy. Rabo was aware of the staggering, unsustainable growth trajectory of the McClain Entities and the evident lack of operational capabilities on McClain's part to support such rapid expansion. Despite conducting inspections that revealed glaring deficiencies in McClain's accounting procedures and overall business operations, Rabo failed to take decisive action. They were cognizant of irregularities such as McClain's unorthodox practice of receiving purchase orders via text, particularly given the significant scale of cattle purchases involved. Moreover, Rabo was aware of discrepancies between the McClain Entities' claim of owning all cattle in their feedyard and the conflicting information in accounting and banking records, which indicated that Rabo was feeding cattle owned by others. Internal communications within Rabo further confirmed their awareness that, despite outward appearances of financial health and profitability, the McClain Entities were perpetually strapped for cash to sustain their operations. Additionally, Rabo's scrutiny of the McClain Entities' bank statements revealed information that directly contradicted representations made by Brian McClain.

Rather than launching a thorough investigation into these glaring issues, Defendants allowed the Ponzi and check kiting scheme to continue.

74.     HTLF and Mechanics bank aided and abetted McClain's Ponzi and check kiting scheme.  Shawn Ragland was 2B Farms loan officer for several years, including when 2B Farms was banking with Aim Bank.  2B Farms continued its relationship with Ragland when Aim Bank was apparently purchased by HTLF.

75.     2B Farm's representative, Bo Robinson, testified that Goad would send HTLF a batch of signed blank checks from the McClain Entities' Mechanics Bank accounts.  2B Farms would wire funds to Mechanics Bank for the alleged purchase of cattle.  At or around the same time, Robinson would advise Ragland and/or other representatives of HTLF of the amount of a cattle sale transaction based on an invoice Robinson received from Goad or another McClain Entity representative.  HTLF would then fill out the signed blank checks for the money the McClain Entities owed 2B Farms for the purported sale of cattle and would deposit the check in 2B Farm's bank account at HTLF.

76.     Mr. Robinson testified that HTLF relied on a simple invoice from the McClain Entities to effectuate the banking transaction between 2B Farms and the McClain Entities.  HTLF did not ask for any additional documents, such as a bill of sale or close out sheets, to confirm that cattle were being purchased and sold.  Mr. Robinson testified that he rarely saw the actual check HTLF completed and deposited in 2B Farm's bank account.

77.     The average transactions between 2B Farms and the McClain Entities and the frequency of those transactions spiked significantly, leading to a transaction of approximately $2.5 - $3 million daily from January 2023 until mid-April 2023.  The sum of these transactions for the

alleged purchase and sale of cattle amounted to approximately $240 million from January 2023 – mid-April 2023.

78.     Mechanics Bank was on the receiving side of these large transactions between 2B Farms and the McClain Entities. The McClain Entities' bank account statements confirm that Mechanics Bank knew there were multiple transactions involving millions of dollars being transferred on almost a daily basis between 2B Farms and the McClain Entities. These transactions were unusual, but Mechanics Bank did not stop them from happening.

79.     Upon information and belief, as part of banking industry standards, client monitoring is particularly important when large amounts of money are involved, which creates a greater risk that the bank's services are being used for illicit purposes. HTLF and Mechanics Bank knew a lot about the McClain Entities' business and accounts. According to Mr. Robinson, Ragland and other HTLF representatives were intimately involved in 2B Farm's business with the McClain Entities. Ragland and other HTLF representatives worked closely with Mr. Robinson regarding 2B Farms banking transactions with the McClain Entities. The spike in the amount and frequency of transactions, among other things, should have raised red flags for HTLF and Mechanics Bank that McClain was involved in illicit activity.

80.     Defendants Ragland, HTLF and Mechanics Bank aided and abetted the McClain Entities Ponzi and check kiting scheme and are accordingly liable for the damage caused to Plaintiffs. Defendants Ragland, HTLF and Mechanics Bank gave assistance to the illicit schemes, which was a substantial factor in causing fraud against Plaintiffs.

81.     As a result of Defendants Ragland, HTLF and Mechanics Bank aiding and abetting of fraud, Plaintiffs have been damaged in an amount to be determined at trial.

### Civil Conspiracy

82.     Additionally, and/or in the alternative and based on information and belief, the Defendants, and their agents or employees had an agreement with and/or understanding among them to commit and to cover up the wrongs and damages inflicted on Plaintiffs.  To this end, Defendants and their agents, employees and/or representatives had a meeting of the minds and committed unlawful and overt acts which proximately caused further and additional damages to Plaintiffs.  Therefore, Defendants and their agents, employees and/or representatives are directly and vicariously liable for the actions of each other in furtherance of this conspiracy.

83.     Plaintiffs seek judgment for all damages, both actual and punitive, that Plaintiffs suffered as a result of the actions of any of them.

84.     Plaintiffs seek judgment for their reasonable and necessary attorney's fees at trial and through all applicable appellate levels.

### Claims of Thorlakson and AgTexas Based on InterCreditor Agreement

85.     The allegations stated above are incorporated by reference.

86.     Effective as of January 27, 2021, Rabo, Brian McClain DBA McClain Feed Yard, and AgTexas, joined by Thorlakson, entered into a written agreement "to set forth the relative priority of the security interests, lien and other interests relating to cattle and related assets subject to the Cattle Feeding Agreements and the underlying transactions between McClain and Thorlakson LP."

87.     Among other provisions, the Intercreditor Agreement provided:

A.     ¶1(i) Disclaimer of partnership between McClain and Thorlakson

B.     ¶1(ii) Agreement that McClain has no ownership of cattle subject to a Cattle Feeding Agreement ("CFA")

C.     ¶1(iii) Agreement that all cattle subject to a CFA are owned by Thorlakson

D.     ¶1(iv) Agreement that the AgTexas lien on Thorlakson cattle is subject to

McClain's agister's lien

E.      ¶1(v) Agreement that RAF and McClain disclaim a lien on cattle of Thorlakson, except for McClain's agister's lien

F.      ¶1(vi) Agreement that AgTexas disclaims a lien on cattle owned by McClain

\*\*\*

G.      ¶3 Agreement that the proceeds of cattle subject to CFA held by a party contrary to the Intercreditor Agreement are held in trust and must be delivered to the other party or parties.

88.      Rabo induced AgTexas and Thorlakson to enter into the Intercreditor Agreement with representations that it knew that Thorlakson would "purchase from McClain and/or place cattle owned by Thorlakson with McClain" and that AgTexas, not Rabo, would have a security interest in these cattle, except to the extent an agister's lien existed.  Rabo also represented that if it acquired possession of proceeds from cattle sales of Thorlakson, it would hold those proceeds in trust for the benefit of the other parties to the Agreement and pay them to the party entitled to receive them.

89.      AgTexas and Thorlakson reasonably relied on these representations. Thorlakson relied by shipping and/or buying thousands of cattle to or from the McClain operations and AgTexas relied by providing financing for these operations to Thorlakson.

90.      Despite these assurances to Thorlakson and AgTexas, Rabo conducted collateral inspections, and received borrowing base reports, to the effect that all cattle in McClain's possession were subject to its interest.  Rabo made no effort to segregate or hold Thorlakson proceeds in trust.

91.      Even after its February 2023 collateral inspection report described noted: "**Possible Fraud Case**. Recommendation to Downgrade immediately and take control of cattle as soon as possible due to **concerns related to cattle being owned by other parties**" (emphasis added) Rabo

took no action to notify Thorlakson or AgTexas that it considered its borrower to have committed fraud and that the fraud related to the very subject of the Intercreditor Agreement. Instead, Rabo permitted McClain to accept payment from Thorlakson more than $2.8 million for cattle purchases, which funds were deposited into bank account controlled by Rabo. These funds were held in trust for the benefit of Thorlakson and AgTexas, and Rabo's failure to return the funds constitutes conversion and breach of trust.

92.    AgTexas and Rabo are therefore entitled to and seek recovery of judgment for conversion against Rabo to the extent that Rabo acquired cattle or proceeds belonging to Plaintiffs.

## Attorneys' Fees

93.    By reason of the wrongful acts and conduct of the Defendants, Plaintiffs have been required to employ attorneys to bring and prosecute this action. Plaintiffs seek to recover the reasonable and necessary attorneys' fees and legal expenses, including expert witness fees.

94.    Under all claims asserted herein, Plaintiffs seek recovery of their reasonable and necessary attorneys' fees at trial and all appellate levels.

## Damages

95.    The facts and allegations stated above are incorporated herein by reference.

96.    The Defendants' acts, omissions, conduct, and breaches were, and continue to be, a proximate and/or producing cause of damages to Plaintiffs, and the Defendants have been unjustly enriched by their actions.

97.    To the extent that Defendants have received funds or property in which the Plaintiffs have superior rights, Plaintiffs seek recovery of their damages from Defendants, either directly or by way of disgorgement.

98.    Plaintiffs will respectfully request the Court or Jury to determine the amount of

Plaintiffs' damages.   Plaintiffs seek recovery of their damages proximately caused by any

responsible party, including without limitation, all damages caused by the Defendants, both actual

and punitive.

99.     The conduct of the Defendants as described above, was done in bad faith and in

violation of the law and public policy of the State of Texas, was done willfully, knowingly and

maliciously, was intentional and/or committed with conscious indifference to the rights of

Plaintiffs such as to warrant the imposition of punitive and/or exemplary damages, expert witness

fees and attorney's fees which Plaintiffs seeks to recover from the Defendants.

### Request for Declaratory Judgment

100.   The facts and allegations stated above are incorporated herein by reference.

101.   Plaintiffs seek declaratory judgment as to priority of their claims to cattle and sales

proceeds.

### Conclusion

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully pray that all

Defendants be cited to appear and to answer this Petition and that upon final hearing hereof,

Plaintiffs have Judgment as follows:

a.     An Order declaring the rights of the parties to the cattle and their proceeds;

b.     Judgment for actual and punitive damages;

c.     Judgment for attorneys' fees through trial and at all applicable appellate levels, and costs;

d.     Any and all further relief, legal and equitable, to which Plaintiffs may be now and ever more entitled.

Respectfully submitted,

**NAMAN HOWELL SMITH & LEE, PLLC**
8310 N. Capital of Texas Hwy., Ste. 490
Austin, Texas 78731
(512) 479-0300; FAX (512) 474-1901
Email: dlebas@namanhowell.com

By:    */s/ David L. LeBas*
       David L. LeBas
       State Bar No. 12098600
       Rachel Barr
       State Bar No. 24118185

**Attorneys for Plaintiffs AgTexas Farm Credit
Services, AgTexas, PCA, Thorlakson Diamond T
Feeders, LP**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing was served, by efile on March 5, 2024, to all counsel of record.

*/s/ David L. LeBas*
David L. LeBas

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

David LeBas on behalf of David LeBas
Bar No. 12098600
dlebas@namanhowell.com
Envelope ID: 85227064
Filing Code Description: Amended Filing
Filing Description: Amended Filing
Status as of 3/5/2024 4:37 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Kenneth RNetardus | | knetardus@sjblawfirm.com | 3/5/2024 4:25:09 PM | SENT |
| John Frederick Massouh | 24026866 | john.massouh@sprouselaw.com | 3/5/2024 4:25:09 PM | SENT |
| Rebecca AMcMurry | | rmcmurry@sjblawfirm.com | 3/5/2024 4:25:09 PM | SENT |
| Jennifer Aucoin | | jaucoin@namanhowell.com | 3/5/2024 4:25:09 PM | SENT |
| Rachel Barr | 24118185 | rbarr@namanhowell.com | 3/5/2024 4:25:09 PM | SENT |
| Mason Leal | | mason@ssbtxlaw.com | 3/5/2024 4:25:09 PM | SENT |
| Abel Leal | | abel@ssbtxlaw.com | 3/5/2024 4:25:09 PM | SENT |
| Cody Simmons | | cody@ssbtxlaw.com | 3/5/2024 4:25:09 PM | SENT |
| Daniela SRubio | | drubio@namanhowell.com | 3/5/2024 4:25:09 PM | SENT |

Associated Case Party: Intervenors - Plaintiffs

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| CODY LSIMMONS | | cody@ebs-law.net | 3/5/2024 4:25:09 PM | SENT |
| ABEL ALEAL | | abel@ebs-law.net | 3/5/2024 4:25:09 PM | SENT |
| JOHN MASSOUH | | john.massouh@sprouselaw.com | 3/5/2024 4:25:09 PM | SENT |

Associated Case Party: AgTexas Farm Credit Services

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| RACHEL BARR | | RBARR@NAMANHOWELL.COM | 3/5/2024 4:25:09 PM | SENT |
| DAVID LLEBAS | | dlebas@namanhowell.com | 3/5/2024 4:25:09 PM | SENT |

Associated Case Party: Edward Dufurrena

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

David LeBas on behalf of David LeBas
Bar No. 12098600
dlebas@namanhowell.com
Envelope ID: 85227064
Filing Code Description: Amended Filing
Filing Description: Amended Filing
Status as of 3/5/2024 4:37 PM CST

Associated Case Party: Edward Dufurrena

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| KENNETH NETARDUS | | KNETARDUS@SJBLAWFIRM.COM | 3/5/2024 4:25:09 PM | SENT |

## OFFICER'S RETURN

CAME TO HAND ON THE _____ DAY OF _____, 20____, AT _____ O'CLOCK ____.M. EXECUTED AT _____ WITHIN THE COUNTY OF _____ AT _____ O'CLOCK ___.M. ON THE _____ DAY OF _____, 20_____, BY DELIVERING TO THE WITHIN NAMED ACCOMPANYING COPY OF PETITION, HAVING FIRST ATTACHED A COPY OF SUCH PETITION TO SUCH CITATION AND INDORSED ON SUCH COPY OF CITATION THE DATE OF DELIVERY.

*** NOT EXECUTED FOR THE FOLLOWING REASON: _____

_____

FEE FOR SERVICE: $_____

_____ SHERIFF,

_____ COUNTY, TEXAS

BY: _____, DEPUTY

IN THE 222ND JUDICIAL DISTRICT COURT
DEAF SMITH COUNTY, TEXAS

| | | |
|---|---|---|
| AGTEXAS FARM CREDIT SERVICES, | § | |
| AGTEXAS, PCA | § | |
| THORLAKSON DIAMOND T FEEDERS, LP | § | |
| | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| and | § | CAUSE NO. CI-2023D-025 |
| | § | |
| EDWARD DUFURRENA, | § | |
| OPEN A ARENA, LLC'S, | § | |
| DENNIS BUSS, BUSS FAMILY TRUST, | § | |
| EDDIE BRYANT, ROBERT E. GRAY, | § | |
| RONNIE GRAY, GRAY BROTHERS, | § | |
| CRAIG SUTTON, AMY SUTTON, | § | |
| STEVE RYAN, JANICE LAWHON, | § | |
| AJ JACQUES LIVING TRUST, | § | |
| GUNGOLL CATTLE, LLC, | § | |
| LEAH GUNGOLL, | § | |
| MORRISON CAFÉ, LLC, GARY LESH, | § | |
| JAN LESH, LESH FAMILY TRUST, | § | |
| JARED LESH, JORDAN LESH, LLC, | § | |
| JOEL BROOKSHIRE, GENE BROOKSHIRE | § | |
| FAMILY, LP, DOUGLAS FINLEY, | § | |
| SCARLET AND BLACK CATTLE, LLC, | § | |
| BRYAN BLACKMAN, STEVE T | § | |
| SCOTT FARM, INC., SCOTT LIVESTOCK | § | |
| COMPANY, INC., ARNOLD BRAUN | § | |
| TRUST, ROBERT BRAUN, | § | |
| JIM RININGER, ROBERT SPRING, | § | |
| MICHAEL EVANS, MIRANDA EVANS, | § | |
| CHARLES LOCKWOOD, | § | |
| COLE LOCKWOOD, SHERLE LOCKWOOD, | § | |
| NIKKI LOCKWOOD, LYNDAL VAN | § | |
| BUSKIRK, JANET VAN BUSKIRK, | § | |
| COLBY VAN BUSKIRK, SUSAN VAN | § | |
| BUSKIRK, JIMMY GREER, DUSTIN | § | |
| JOHNSON AND DORA BLACKMAN | § | |
| | § | |
| Intervenors-Plaintiffs, | § | |
| | § | |
| v. | § | |

|                                      |   |
|--------------------------------------|---|
|                                      | § |
| RABO AGRIFINANCE LLC;                | § |
| HTLF BANK, AS SUCCESSOR TO           | § |
| FIRST BANK & TRUST;                  | § |
| SHAWN RAGLAND;                       | § |
| MECHANICS BANK; AND                  | § |
| MEAGAN GOAD                          | § |
|                                      | § |
|                Defendants.           | § |
|                                      | § |

### Plaintiffs' Third Amended Petition

**TO THE HONORABLE JUDGE OF SAID COURT:**

Plaintiffs AgTexas Farm Credit Services, a federally chartered agricultural credit association formed under the Farm Credit Act of 1933 and AgTexas, PCA a federally chartered production credit association formed under the Farm Credit Act of 1933 (collectively "AgTexas"), Thorlakson Diamond T Feeders, LP ("Thorlakson"); (collectively, "Plaintiffs"), complaining of Rabo AgriFinance LLC ("Rabo"), Mechanics Bank ("Mechanics"),  HTLF Bank, as successor to First Bank & Trust ("HTLF"), Shawn Ragland, and Meagan Goad (collectively, "Defendants"), submit the following for their Amended Petition:

### Discovery Control Plan

1.    Pursuant to TEX. R. CIV. P. 190, Plaintiffs state that discovery in this matter is intended to be conducted under Level 3, as specified by TEX. R. CIV. P. 190.3.

### Statement of Relief Requested

2.    Pursuant to Rule 47 of the Texas Rules of Civil Procedure, Plaintiffs seek monetary relief over $1,000,000.00.

### Parties and Service

3.    Plaintiffs allege that the requirements of Section 30.014 of the Texas Civil Practice

& Remedies Code impinge a fundamental right guaranteed to them by the Texas Constitution, and Plaintiffs accordingly withhold any further identifying information other than as set forth below, unless and until ordered to do so by the Court.

4.      AgTexas Farm Credit Services, Plaintiff, is a federally chartered agricultural credit association formed under the Farm Credit Act of 1933.  It does business in various locations in Texas, including Deaf Smith County, Texas.

5.      AgTexas, PCA, Plaintiff, is a federally chartered production credit association formed under the Farm Credit Act of 1933.  It does business in various locations in Texas, including Deaf Smith County, Texas.

6.      Thorlakson Diamond T Feeders, LP, is a Texas limited partnership.  It does business in various locations in Texas, including Deaf Smith County, Texas.

7.      Rabo AgriFinance LLC ("Rabo"), Defendant, is a limited liability company that does business in various locations in Texas, including Deaf Smith County.  It can be served through its attorney of record Michael Johnson, Ray Quinney & Nebeker P.C., 36 South State Street, Suite 1400, Salt Lake City, Utah 84111 and W. Heath Hendricks, Underwood Law Firm, P.C., 500 South Taylor, Suite 1200, LB 233, Amarillo, Texas 79101.

8.      Mechanics Bank, Defendant, is a California stock corporation that does business in Texas.  It can be served through its attorney of record Rick Illmer, Husch Blackwell, 1900 N. Pearl Street, Suite 1800, Dallas, Texas 75201.

9.      HTLF Bank, as successor to First Bank & Trust ("First Bank"), Defendant, is a Colorado corporation, that does business in various locations in Texas.  It can be served through its attorney of record John Lovell, Lovell, Isern & Farabough, LLP, 112 West 8th Avenue, Suite 1000, Amarillo, Texas 79101.

10.      Shawn Ragland, Defendant, is an individual who resides in the State of Texas.  He may be served with process by personal service at his last known address of 2317 Memorial Way, Snyder, Texas 79549, or wherever he may be found.

11.      Meagan Goad, Defendant, is an individual who resides in the State of Kentucky and who does not maintain a designated agent for service of process in Texas.  Service of process on this Defendant may therefore be obtained under TEX. CIV. PRAC. & REM. CODE §17.044, by serving the Texas Secretary of State for forwarding to Defendant Meagan Goadat her last known address at 1775 Wadesboro Rd. South, Benton, Kentucky 42025.  The forwarding address for the Texas Secretary of State to issue citation to this Defendant is:  Service of Process, Secretary of State, P.O. Box 12079, Austin, Texas 78711.  The address of this Defendant is stated above.

**Jurisdiction and Venue**

12.      This case falls within the general jurisdiction of this Court.

13.      Jurisdiction in the State of Texas is proper because individual Defendant, Shawn Ragland, is a resident of the State of Texas.  *See e.g., Milliken v. Meyer*, 311 U.S. 457, 462-63 (1940) (domicile in state is alone sufficient to support exercise of personal jurisdiction over defendant)).

14.      Furthermore, Defendants Rabo AgriFinance LLC, First Bank, Mechanics Bank, and Megan Goad subjected themselves to the jurisdiction of this Court because their acts or omissions, described below, caused Plaintiffs injuries in the State of Texas.  Jurisdiction is also proper because Defendants had systematic and continuous contacts with the State of Texas.  *See e.g.*, *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 572 (Tex. 2007) (a Texas court may assert specific jurisdiction over an out-of-state-defendant if the defendant's contact with this state is purposeful and the injury arises from or relates to those contacts).

15.      Venue is proper in Deaf Smith County in this case pursuant to TEX. CIV. PRAC. & REM. CODE § 15.002(a)(1) because Deaf Smith is the county in which all or a substantial part of the events or omissions giving rise to the claims occurred.

16.      Further, venue exists in this case over the Defendants under TEX. CIV. PRAC. & REM. CODE §15.035 because one or more Defendants entered contracts in whole or in part, in Deaf Smith County, Texas.

17.      Venue is proper in Deaf Smith County in accordance with TEX. CIV. PRAC. & REM. CODE § 15.002 because it is the county in which all or a substantial part of the events or omissions giving rise to the claim occurred, and if venue is valid as to one Defendant, it is valid as to all, pursuant to TEX. CIV. PRAC. & REM. CODE § 15.003.

## Summary

18.      Rabo is one of the largest lenders in the agricultural industry in the United States and has over 100 years of experience in the agriculture lending industry. Rabo touts its robust understanding of all segments of the agricultural industry, including cattle feeding, with a nationwide team of agricultural lenders, financial analysts, and other leading professionals in the agricultural finance space. Rabo's own website explains that its "Relationship Managers are agricultural specialists with global networks and local knowledge, on-farm experience and financial expertise…."

19.      Starting in about 2017, Rabo gave Brian McClain the opportunity to expand his backgrounding and cattle feeding operations from Kentucky into the Texas Panhandle—the cattle feeding capital of the world. At that time, Rabo financed McClain's purchase of a feedyard outside of Hereford, Texas, which would be known as the 'McClain Feed Yard.' Two years later in May 2019, Rabo extended $12,000,000.00 to McClain as an operating line of credit. Later that year,

Rabo financed a second feedyard for McClain, this time outside of Friona, Texas, which would be operated by McClain under the name '7M Cattle Feeders.' At the same time, Rabo extended an additional operating line of $4,000,000.00 to McClain. Six months later, in January 2020, both operating lines of credit were substantially increased, from $16,000,000.00 total to $23,000,000.00 extended across both operating notes. The extension and expansion of credit to the McClain operation continued, with an additional $2,000,000.00 in operating capital being extended in March 2021, and then, a short five months later, in August 2021, a new operating line in the amount of $45,000,000.00 was extended to McClain, together with a third real estate note in the amount of $1,019,800.00.

20.    In just over three years, sophisticated and experienced agricultural lender, Rabo, loaned McClain nearly $2 million for real estate purchases, together with $70 million in operating capital.  Over this time frame, Rabo relied largely on McClain's limited submissions and reports with respect to the McClain operation and the numbers of cattle that were purportedly owned by McClain to be collateral for its multi-million dollar extension of credit. Periodically, a Rabo representative would prepare and submit a collateral inspection report to the Rabo finance team. On more than one occasion, these internal reports raised questions and concerns with respect to the McClain operation, including the actual ownership of the cattle in the McClain yards, the number of cattle present in the McClain yards, and the sheer lack of operational safeguards and procedures. These reports were ignored by Rabo management, and the credit line was only increased.

21.    Finally in February 2023, Rabo initiated a collateral inspection, substantiating these concerns. The investigation revealed that McClain had been providing false reports regarding the number of cattle his companies purportedly owned. Despite McClain's claims that his companies

possessed approximately 80,000 head of cattle, the collateral inspection uncovered a stark reality: only around 8,000 cattle were present at the two facilities in Texas.  Furthermore, the inspection revealed and confirmed that the cattle in these yards were not even owned by McClain; therefore, they were not financed with Rabo funds and not subject to its security interest. Rather, third-party feedyard customers owned the cattle that were actually present—not McClain. In the words of one of Rabo's inspectors, "This is basically a worst-case scenario" and a "Possible Fraud Case. Recommendation to Downgrade immediately and take control of cattle as soon as possible due to concerns related to cattle being owned by other parties."

22.    It quickly became apparent to Rabo that it had to act quickly and quietly to deal with a $70 million operating line that was not secured by any cattle assets owned by McClain. After years of not dealing with the hard questions related to McClain's business operations, Rabo, took quick actions to protect its own interests, presenting a Forbearance Agreement to McClain to keep the operation afloat, and then, after taking charge of the McClain Entities, Rabo brought it is own "fixer" to serve as the Chief Restructuring Officer. Plans were quickly arranged for Rabo to take possession of and auction off the cattle in the McClain yards, despite the fact that Rabo knew they were owned by third-parties and not subject to its lending or security agreements with McClain.

23.    While Rabo was busy taking action to collapse the fraud it had created (orchestrating the bankruptcy filing of McClain, taking possession of McClain's business records and documents from McClain's Kentucky headquarters and shipping them to their investigators in Chicago), Plaintiffs, the cattle producers who had live animals on feed at McClains' yards, continued to unknowingly pay for feed, buy cattle, and expect McClain to send them checks for

cattle purchased and/or sold on Plaintiffs' behalf. Millions of dollars went into McClain's accounts, now actually controlled by Rabo.

24.     The February 2023 investigation was not the first red flag that had shown up with respect to the McClain operation. As Rabo's pleadings in Bankruptcy Court make clear, Rabo had control over three McClain accounts at Mechanics Bank through Deposit Account Control Agreements. A cursory examination of the financial records and bank accounts associated with the McClain Entities would have revealed the fraudulent nature of the McClain operation. Yet, Rabo failed to take any action to stop the McClain fraud.

25.     At around the same time, the McClain Entities' bank, Mechanics Bank, knew or should have known that there were multiple transactions involving several millions of dollars per transaction flowing through the McClain Entities' bank accounts.  The number of transactions and the amount of those transactions continued to grow over time through the McClain Entities' bank accounts with Mechanics Bank.  Applicable banking industry standards required Mechanics Bank to review these transactions to detect illicit activity.  Upon information and belief, despite repeated alerts, Mechanics Bank did not take any affirmative action to determine if the McClain Entities were using Mechanics Bank's banking services for purposes of perpetuating fraud.

26.     In addition, as described more fully below, HTLF, a bank that facilitated multiple transactions between its customer, 2B Farms, and the McClain Entities, was intimately involved and knew about the McClain Entities' business operations.  The banking procedures HTLF utilized were unorthodox and, upon information and belief, in violation of industry banking standards.  HTLF's unusual banking methods aided and assisted the McClain Entities to further its fraud.

27.     The Defendants' deliberate participation in McClain's fraudulent scheme, at various stages and with differing degrees of involvement, exacerbated the extent of the damage inflicted

upon unsuspecting cattle purchasers – the Plaintiffs herein.

**Procedural History**

28.     This case was filed on April 24, 2023, concerning, in part, a cattle operation involving Brian McClain, McClain Feed Yard, Inc., 7M Cattle Feeders, Inc., another non-party entity owned and controlled by Brian McClain, McClain Farms, Inc, and Rabo.

29.     On April 28, 2023, the following bankruptcy cases were filed in the United States Bankruptcy Court for the Northern District of Texas, Amarillo Division: McClain Feed Yard, Inc. (Case No. 23-20084-RLJ); McClain Farms, Inc. (Case No. 23-20085-RLJ); and 7M Cattle Feeders, Inc. (Case No. 23-20086-RLJ).   On or about April 18, 2023, Brian McClain died.   These bankruptcy debtors and Mr. McClain will be described collectively in this pleading as "the McClain Entities," and the bankruptcy cases as the "bankruptcy proceedings."

30.     Plaintiffs disclaim that this suit is an effort to recover from the McClain Entities.

**Fact Allegations**

31.     All Plaintiffs had dealings with the McClain Entities.   For the most part, these dealings involved cattle owned by Plaintiffs which were delivered to one or more of the McClain Entities' facilities for growing and health care before they were ready for shipment to a finishing feedyard.   Details of specific arrangements concerning these dealings are too voluminous for description in this pleading and will be provided in discovery.

32.     The Trustee in the bankruptcy proceedings confirmed that the McClain Entities engaged in a massive fraud involving cattle, and that over $120,000,000.00 in claims for missing cattle have been filed by over 100 parties.

***Allegations as to Rabo AgriFinance, LLC***

33.     Rabo provided a credit facility to the McClain Entities and based on records provided to date in the bankruptcy proceedings, their lending relationship started in approximately May 2018.

34.     Based upon many pieces of direct and circumstantial evidence, Rabo knew of the McClain Entities' fraud by May 2022. In February 2023 Rabo conducted a collateral inspection at the McClain Entities' facilities in Texas and the internal report confirmed that the McClain operation was in distress.

35.     Rabo's inspector reported that the McClain Entities were short by thousands of cattle worth millions of dollars.  The report stated, "**This is basically a worst-case scenario**."  The report also stated: "Large negative borrowing base after adjustments for cattle.  **Possible Fraud Case.** Recommendation to Downgrade immediately **and take control of cattle as soon as possible due to concerns related to cattle being owned by other parties**."  (emphasis added)

36.     Despite the findings from the February inspection, Rabo did not shut down the McClain Entities' operation or inform the Plaintiffs of the results of .  Instead, Rabo allowed the McClain Entities to continue operations.  This decision was intentional to Plaintiffs' detriment. Indeed, Rabo knew that it had invested roughly $70 million in the McClain Entities' fraud, which enabled the fraudulent operation to grow exponentially.  Yet, Rabo elected to act and protect its own interest by continuing to allow Plaintiffs to deposit millions of dollars in the McClain Entities' bank account while preventing payments from being made to Plaintiffs.

37.     Thorlakson alone paid McClain more than $2,800,000.00 to purchase cattle between March 12 and March 18, 2023, long after Rabo discovered the huge discrepancy.  The money went straight to Rabo's controlled account.  After Thorlakson discovered the problem, the

cattle were long gone.  Other Plaintiffs continued to pay and send hundreds of thousands, if not millions of dollars, for deposit into the McClain Entities bank accounts during this same time.

38.     The McClain Entities had three separate bank accounts at Mechanics Bank.  Rabo's pleadings in Bankruptcy Court allege that it had control over the Mechanics Bank accounts used by the McClain Entities through "deposit account control agreements" (DACAs).[1]   Neither Mechanics Bank, nor Rabo, raised any red flags about the substantial amount of money being funneled through these accounts—although they knew of McClain's fraudulent activities. Both Rabo and Mechanics Bank deliberately allowed Plaintiffs to continue to fundthe operation, despite knowledge of the potential fraud..  Some of those transactions are described in further detail herein in the allegations against HTLF and Mechanics Bank.

39.     Plaintiffs further allege that after Rabo discovered McClain's illegitimate activities , it wrongfully and unlawfully began liquidating cattle that belonged to Plaintiffs.  Rabo did not provide Plaintiffs with notice of its intent to collect all the cattle and liquidate them.

40.     The circumstantial and direct evidence shows that Rabo knew of McClain's fraudulent activity as early as May 2022 when it performed a collateral inspection.  According to Rabo, around the time it provided its initial credit facility, the McClain Entities' operations consisted of buying lightweight calves and stocker cattle in the southeastern United States and would have them shipped to Texas to grow to marketing weight and condition health for optimal performance.  The McClain Entities would then contract the cattle to a livestock agent for sale to commercial feeding companies with the primary purchaser being Friona Industries.  Brian McClain represented that all the cattle were always "company owned."

---

[1] These allegations may be found in Rabo's Amended Complaint was filed in Cause No. 23-02005-rlj, in the U.S. Bankruptcy Court for the Northern District of Texas, Amarillo Division.

41.    Sometime prior to May 2022, the McClain Entities' business model changed significantly because it was no longer feeding cattle for Friona Industries.  Rabo learned of this change in approximately May 2022, when it conducted a collateral inspection.

42.    In Rabo's May 11, 2022 collateral inspection report, Rabo's inspector noted that all cattle inventory were "claimed as owned by [the McClain Entities] and viewed on the date of inspection . . . ."  The inspector noted that the change in the McClain Entities' business operations "has caused McClain to own more cattle personally . . ." and that would be a "temptation for McClain to grow more so that he can fill the hole left in his capacity which occurred once [Friona Industries] quite feeding/growing cattle on a regular basis."  The inspector noted that it would take McClain great discipline not to expand his "personal" headcount and recommended that the McClain Entities not expand its operations any further until its accounting processes and procedures are up the standard needed for his current alleged head count of 70,000 cattle.

43.    The inspector further noted that the McClain Entities had a large account receivable for feed relating to cattle that were owned by various customers.  The account receivable noted in the inspection report reflected that the account receivable for feed was approximately 1/3 of the value of the feed and grain inventory accounted for in the inspection report—thus confirming that a substantial amount of cattle at the McClain Entities' facilities were not "company owned" as McClain represented.

44.    Moreover, Rabo's inspector openly acknowledged reviewing all bank statements of the McClain Entities for March 2022, in collaboration with Mechanics Bank. These statements unveiled numerous substantial transactions from external parties supposedly for cattle purchases. Additionally, these statements showed several perplexing intercompany transactions and Rabo's collateral inspection reports have always noted that the McClain Entities' record-keeping and

accounting procedures consistently fell short of Rabo's standards.  Indeed, Rabo discovered that the McClain Entities grossly understated the number of outstanding checks by over $3.4 million. This error, according to Rabo, emphasized the problems with the McClain Entities' record-keeping and accounting procedures.

45.     According to Rabo's standards, the McClain Entities were required to submit borrowing base certificates ("BBC") monthly to Rabo that contains pertinent information based on their financial records.  According to the inspection report, the McClain Entities did not provide accurate numbers for its BBC for the relevant period.  The inspector noted that the McClain Entities' documentation of their financial transactions has been an issue since the inception of the loan in 2018.  One would reasonably anticipate that such suspicious transactions and accounting discrepancies would trigger a comprehensive investigation into the legitimacy of McClain's operations. However, Rabo chose to disregard these glaring red flags, turning a blind eye and allowing McClain's fraudulent activities to persist unchecked.

46.     As of January 27, 2021, AgTexas and Rabo, joined by Thorlakson and McClain, had signed an Intercreditor Agreement by which Rabo acknowledged that Thorlakson would purchase cattle from McClain and place them with McClain for feeding and care.  Rabo disclaimed any interest in these cattle.  Thus, Rabo had actual knowledge that McClain had cattle in his possession that it knew did not belong to him, and which directly contradicted McClain's representation report at the time of the May 2022 inspection that all cattle inventory were "claimed as owned by [the McClain Entities] and viewed on the date of inspection . . . ."  Despite this, Rabo did nothing to investigate this discrepancy at the heart of its multi-million-dollar loan to McClain. Instead, it encouraged him by increasing his line of credit.

***Allegations as to HTLF***

47.     The McClain Entities did business with 2B Farms, a partnership with its principal place of business in Lubbock County, Texas.  2B Farms filed a Chapter 12 Bankruptcy after the McClain Entities were allegedly unable to repay it approximately $16 million dollars.[2]  This loss was documented in part by checks drawn on the McClain Entities' Mechanics Bank accounts, controlled by Rabo, which were returned non-sufficient funds (NSF) after the McClain crisis hit.

48.     After 2B Farms filed its bankruptcy case, Terry and Rebecca Robinson ("the Robinsons") provided testimony at the meeting of creditors.  Their testimony described an arrangement between the McClain Entities and 2B Farms.  2B Farms would purchase cattle (usually from McClain), those cattle would be delivered to the McClain Entities' grow yards, and the McClain Entities would provide the feed and care.  After the cattle reached 725-750 lbs, the McClain Entities would sell them to a finishing operation.  The two parties would split the financing cost for the cattle and feed, then split the profits, if any, from the sale of the cattle.  While these proceeds were split, at no time did the McClain Entities own the cattle.

49.     Mr. Robinson testified also that the McClain Entities, or Megan McClain also known as Megan Goad (Brian McClain's daughter), would send blank, pre-signed checks written on the McClain Entities' accounts at Mechanics Bank to HTLF.  Those checks were kept by an employee (or multiple employees) at HTLF until it was time to "close out" a transaction for the sale of a lot of cattle.  The McClain Entities told Robinson the information needed to fill out the checks, such as head counts and amounts, and this information was relayed by 2B Farms to an HTLF employee.  The HTLF employee would then fill out the blank, pre-signed checks for the amounts given to them by the Robinsons.  The checks were then deposited into 2B Farms' HTLF account and HTLF provided immediate credit for the deposit.  Often on the same day, 2B Farms

---

[2] *See* Case No. 23-50096-rlj-12, pending in the U.S. Bankruptcy Court, Northern District of Texas, Lubbock Division.

would write a check back to the McClain Entities, using funds that HTLF had given it immediate credit, thus enabling a check kite.

50.     According to documents provided as a part of the 2B Farms bankruptcy proceeding, 2B Farms transferred more than $231,000,000.00 from its account at HTLF to the McClain Entities' Mechanics Bank accounts between January 30, 2023, and April 6, 2023.  The same source describes transfers in excess of $246,000,000.00 from the McClain Entities' accounts into 2B Farm's accounts, much of it in the same time period.  The Robinsons also testified that during this timeframe, the transactions with the McClain Entities went from approximately $1.4 million to $1.5 million and then on approximately February 7, 2023, those transactions nearly doubled to $2.5 million and upwards of $3.5 million.  The Robinsons acknowledged that they were involved in either a cattle sale and/or a purchase of cattle on their part almost every single day other than weekends or holidays during this timeframe.

51.     The Robinsons testified that that Shawn Ragland was their loan officer and that they knew Ragland for all their lives.  The Robinsons testified that no one at HTLF ever verified that the funds represented real cattle transactions.

### *Allegations as to Mechanics Bank*

52.     The McClain Entities maintained three separate accounts at Mechanics Bank: one for 7M Cattle Feeders, Inc.; one for McClain Farms, Inc.; and one for McClain Feedyards, Inc.

53.     As mentioned previously, Rabo had established control agreements (DACA's) with Mechanics Bank regarding the management of these accounts. The bank statements provided by Mechanics Bank prominently display the designation "Rabo AgriFinance Powered by Mechanics Bank," signifying the collaborative nature of the financial arrangements. In the months leading up to the events prompting this legal action, a substantial volume of funds, totaling hundreds of

millions of dollars, flowed in and out of all three Mechanics Bank accounts with remarkable frequency. Notably, transactions involving sums in the millions occurred almost daily from January 2023 through to the point when the accounts were eventually frozen. Furthermore, at the close of each month during this period, the account balances consistently reverted to zero, indicating a complete turnover of credits. This recurrent cycle of substantial transactions, coupled with the consistent reset of balances, should have served as a glaring indicator to Mechanics Bank and its management that something potentially dubious was occurring within the business operations of the McClain Entities.

54.     As of April 2023, the McClain Entities' bank accounts reached a deposit amount in excess of $22,000,000.00.  The accounts were frozen early April 2023 because of a demand made by Rabo.

55.     Rabo alleged in the bankruptcy cases that after the accounts were frozen, an entity known as MAP Enterprises allegedly wired just over $3 million into the Mechanics Bank account to bring it up to a zero balance.

56.     Mechanics Bank, either on its own, or through its DACA agreement with Rabo, knew or should have known that the transactions were part of a fraudulent check kiting scheme. Instead, it allowed millions of dollars to flow in and out of the account, to the Plaintiffs' detriment.

### *General allegations*

57.     Plaintiffs have or will present their claims more than 30 days before Judgment can be rendered in this case.  All payments, offsets, and credits due have or will be provided.

58.     Plaintiffs have engaged the services of the undersigned attorneys to assist them in pursuing this cause of action and have agreed to pay reasonable attorneys' fees.

59.     Pursuant to Rule 54, Plaintiffs plead that all conditions precedent to their recovery have been performed or have occurred.

60.     Throughout this Petition, where it is alleged that any Defendant performed or failed to perform any acts or activities, or made any representations, it is meant that such Defendant's agents, officers, servants, employees or representatives performed or failed to perform such acts or activities and at the time such acts or activities were done, they were with full authorization or ratification of said Defendant, or were in the normal or routine course of business.

### Conversion and Common Law Fraud

61.     The allegations stated above are incorporated by reference.

62.     Plaintiffs are entitled to and seek recovery of judgment for conversion against Rabo to the extent that Rabo acquired cattle or proceeds belonging to Plaintiffs.

63.     The Defendants made misrepresentations to Plaintiffs recklessly without any knowledge of the truth and as a positive assertion.  Moreover, the misrepresentations were made with the intention that they should be acted on by Plaintiffs, and Plaintiffs in fact relied upon those misrepresentations, suffering injury and damage as a result thereof.  Thus, the misrepresentations and reliance so described were a proximate cause of injury and damage to the Plaintiffs for which Plaintiffs now sue in a sum within the jurisdictional limits of the Court.

64.     Plaintiffs seek judgment for their reasonable attorney fees at trial and through all applicable appellate levels, pursuant to TEX. CIV. PRAC. & REM. CODE § 38.001(6).

### Negligence of Defendants in Lending and Hiring or Supervision or Management Personnel

65.     The allegations stated above are incorporated by reference.

66.     Defendants were negligent in their banking and lending practices, including, but not limited to, their underwriting, investigative, and assessment of customer, and in the hiring or

supervision of their management personnel.  Defendants failed to property monitor and manage

their lending relationships with the McClain Entities.  Defendants are therefore liable for the losses

Plaintiffs suffered because of their actions and omissions.  Their actions and omissions are

described above.

67.     The losses incurred by Plaintiffs as a proximate result of Defendants' negligent

actions exceed the minimum jurisdictional limits of this Court.  Plaintiffs seek judgment for these

damages.

## Tortious Actions by the Individual Defendant Goad

68.     The allegations stated above are incorporated by reference.

69.     Goad directed and controlled the actions and omissions of the McClain Entities-

entities in a manner that was tortious in at least the following ways:

a.     They misrepresented the existence of cattle in their possession;

b.     They promised and agreed to purchase individual lots of cattle for
customers, but sent false yard sheets to the customers for whom they
promised and agreed to purchase cattle, although there were far fewer lots
of cattle than were represented, such that multiple customers were being
informed they were owners if the same cattle;

c.     They used the yard sheets, and other means, such as verbal reports and
inspections, to report to Plaintiffs that cattle delivered to Defendants were
in their possession and under their control when in fact they were not;

d.     They directed and allowed the Defendant-entities to keep and use the
proceeds of their wrongdoing for their own purposes.

70.     Goad is therefore personally liable for all damages, both actual and punitive, that

Plaintiffs suffered because of the McClain Entities' actions and omissions.

## Aiding and Abetting Fraud

71.     The allegations stated above are incorporated by reference.

72.    Plaintiffs were each victimized by the McClain Entities' fraud.  Through the McClain Entities, Brian McClain solicited and accepted payment from Plaintiffs for the purchase of cattle with the intent to defraud Plaintiffs.  McClain did not tell Plaintiffs that their purchase money was being used to make payments other than for the purchase of cattle.

73.    Defendants actively facilitated, enabled and supported the fraud orchestrated by the McClain Entities. With significantly greater access to the inner workings of McClain Entities' operations, Defendants were in a prime position to identify the numerous red flags and glaring inconsistencies in the books and records, yet they chose to turn a blind eye to the unmistakable signs of illegitimacy. Rabo was aware of the staggering, unsustainable growth trajectory of the McClain Entities and the evident lack of operational capabilities on McClain's part to support such rapid expansion. Despite conducting inspections that revealed glaring deficiencies in McClain's accounting procedures and overall business operations, Rabo failed to take decisive action. They were cognizant of irregularities such as McClain's unorthodox practice of receiving purchase orders via text, particularly given the significant scale of cattle purchases involved. Moreover, Rabo was aware of discrepancies between the McClain Entities' claim of owning all cattle in their feedyard and the conflicting information in accounting and banking records, which indicated that Rabo was feeding cattle owned by others. Internal communications within Rabo further confirmed their awareness that, despite outward appearances of financial health and profitability, the McClain Entities were perpetually strapped for cash to sustain their operations. Additionally, Rabo's scrutiny of the McClain Entities' bank statements revealed information that directly contradicted representations made by Brian McClain. Rather than launching a thorough investigation into these glaring issues, Defendants allowed the fraud to continue.

74.    HTLF and Mechanics bank aided and abetted McClain's fraud.  Shawn Ragland was 2B Farms loan officer for several years, including when 2B Farms was banking with Aim Bank.  2B Farms continued its relationship with Ragland when Aim Bank was apparently purchased by HTLF.

75.    2B Farm's representative, Bo Robinson, testified that Goad would send HTLF a batch of signed blank checks from the McClain Entities' Mechanics Bank accounts.  2B Farms would wire funds to Mechanics Bank for the alleged purchase of cattle.  At or around the same time, Robinson would advise Ragland and/or other representatives of HTLF of the amount of a cattle sale transaction based on an invoice Robinson received from Goad or another McClain Entity representative.  HTLF would then fill out the signed blank checks for the money the McClain Entities owed 2B Farms for the purported sale of cattle and would deposit the check in 2B Farm's bank account at HTLF.

76.    Mr. Robinson testified that HTLF relied on a simple invoice from the McClain Entities to effectuate the banking transaction between 2B Farms and the McClain Entities.  HTLF did not ask for any additional documents, such as a bill of sale or close out sheets, to confirm that cattle were being purchased and sold.  Mr. Robinson testified that he rarely saw the actual check HTLF completed and deposited in 2B Farm's bank account.

77.     The average transactions between 2B Farms and the McClain Entities and the frequency of those transactions spiked significantly, leading to a transaction of approximately $2.5 - $3 million daily from January 2023 until mid-April 2023.  The sum of these transactions for the alleged purchase and sale of cattle amounted to approximately $240 million from January 2023 – mid-April 2023.

78.     Mechanics Bank was on the receiving side of these large transactions between 2B Farms and the McClain Entities.  The McClain Entities' bank account statements confirm that Mechanics Bank knew there were multiple transactions involving millions of dollars being transferred on almost a daily basis between 2B Farms and the McClain Entities.  These transactions were unusual, but Mechanics Bank did not stop them from happening.

79.     Upon information and belief, as part of banking industry standards, client monitoring is particularly important when large amounts of money are involved, which creates a greater risk that the bank's services are being used for illicit purposes.  HTLF and Mechanics Bank knew a lot about the McClain Entities' business and accounts.  According to Mr. Robinson, Ragland and other HTLF representatives were intimately involved in 2B Farm's business with the McClain Entities.  Ragland and other HTLF representatives worked closely with Mr. Robinson regarding 2B Farms banking transactions with the McClain Entities.  The spike in the amount and frequency of transactions, among other things, should have raised red flags for HTLF and Mechanics Bank that McClain was involved in illicit activity.

80.     Defendants Ragland, HTLF and Mechanics Bank aided and abetted the McClain Entities fraud and are accordingly liable for the damage caused to Plaintiffs.  Defendants Ragland, HTLF and Mechanics Bank gave assistance to the illicit schemes, which was a substantial factor in causing fraud against Plaintiffs.

81.     As a result of Defendants Ragland, HTLF and Mechanics Bank aiding and abetting of fraud, Plaintiffs have been damaged in an amount to be determined at trial.

## Civil Conspiracy

82.     Additionally, and/or in the alternative and based on information and belief, the Defendants, and their agents or employees had an agreement with and/or understanding among

them to commit and to cover up the wrongs and damages inflicted on Plaintiffs. To this end, Defendants and their agents, employees and/or representatives had a meeting of the minds and committed unlawful and overt acts which proximately caused further and additional damages to Plaintiffs. Therefore, Defendants and their agents, employees and/or representatives are directly and vicariously liable for the actions of each other in furtherance of this conspiracy.

83.     Plaintiffs seek judgment for all damages, both actual and punitive, that Plaintiffs suffered as a result of the actions of any of them.

84.     Plaintiffs seek judgment for their reasonable and necessary attorney's fees at trial and through all applicable appellate levels.

### **Claims of Thorlakson and AgTexas Based on InterCreditor Agreement**

85.     The allegations stated above are incorporated by reference.

86.     Effective as of January 27, 2021, Rabo, Brian McClain DBA McClain Feed Yard, and AgTexas, joined by Thorlakson, entered into a written agreement "to set forth the relative priority of the security interests, lien and other interests relating to cattle and related assets subject to the Cattle Feeding Agreements and the underlying transactions between McClain and Thorlakson LP."

87.     Among other provisions, the Intercreditor Agreement provided:

A.      ¶1(i) Disclaimer of partnership between McClain and Thorlakson

B.      ¶1(ii) Agreement that McClain has no ownership of cattle subject to a Cattle Feeding Agreement ("CFA")

C.      ¶1(iii) Agreement that all cattle subject to a CFA are owned by Thorlakson

D.      ¶1(iv) Agreement that the AgTexas lien on Thorlakson cattle is subject to McClain's agister's lien

E.      ¶1(v) Agreement that RAF and McClain disclaim a lien on cattle of Thorlakson, except for McClain's agister's lien

F.      ¶1(vi) Agreement that AgTexas disclaims a lien on cattle owned by McClain

***

G.      ¶3 Agreement that the proceeds of cattle subject to CFA held by a party contrary to the Intercreditor Agreement are held in trust and must be delivered to the other party or parties.

88.     Rabo induced AgTexas and Thorlakson to enter into the Intercreditor Agreement with representations that it knew that Thorlakson would "purchase from McClain and/or place cattle owned by Thorlakson with McClain" and that AgTexas, not Rabo, would have a security interest in these cattle, except to the extent an agister's lien existed. Rabo also represented that if it acquired possession of proceeds from cattle sales of Thorlakson, it would hold those proceeds in trust for the benefit of the other parties to the Agreement and pay them to the party entitled to receive them.

89.     AgTexas and Thorlakson reasonably relied on these representations. Thorlakson relied by shipping and/or buying thousands of cattle to or from the McClain operations and AgTexas relied by providing financing for these operations to Thorlakson.

90.     Despite these assurances to Thorlakson and AgTexas, Rabo conducted collateral inspections, and received borrowing base reports, to the effect that all cattle in McClain's possession were subject to its interest. Rabo made no effort to segregate or hold Thorlakson proceeds in trust.

91.     Even after its February 2023 collateral inspection report described noted: "**Possible Fraud Case**. Recommendation to Downgrade immediately and take control of cattle as soon as possible due to **concerns related to cattle being owned by other parties**" (emphasis added) Rabo took no action to notify Thorlakson or AgTexas that it considered its borrower to have committed fraud and that the fraud related to the very subject of the Intercreditor Agreement. Instead, Rabo

permitted McClain to accept payment from Thorlakson more than $2.8 million for cattle purchases, which funds were deposited into bank account controlled by Rabo. These funds were held in trust for the benefit of Thorlakson and AgTexas, and Rabo's failure to return the funds constitutes conversion and breach of trust.

92.     AgTexas and Rabo are therefore entitled to and seek recovery of judgment for conversion against Rabo to the extent that Rabo acquired cattle or proceeds belonging to Plaintiffs.

**Attorneys' Fees**

93.     By reason of the wrongful acts and conduct of the Defendants, Plaintiffs have been required to employ attorneys to bring and prosecute this action. Plaintiffs seek to recover the reasonable and necessary attorneys' fees and legal expenses, including expert witness fees.

94.     Under all claims asserted herein, Plaintiffs seek recovery of their reasonable and necessary attorneys' fees at trial and all appellate levels.

**Damages**

95.     The facts and allegations stated above are incorporated herein by reference.

96.     The Defendants' acts, omissions, conduct, and breaches were, and continue to be, a proximate and/or producing cause of damages to Plaintiffs, and the Defendants have been unjustly enriched by their actions.

97.     To the extent that Defendants have received funds or property in which the Plaintiffs have superior rights, Plaintiffs seek recovery of their damages from Defendants, either directly or by way of disgorgement.

98.      Plaintiffs will respectfully request the Court or Jury to determine the amount of Plaintiffs' damages. Plaintiffs seek recovery of their damages proximately caused by any responsible party, including without limitation, all damages caused by the Defendants, both actual

and punitive.

99.     The conduct of the Defendants as described above, was done in bad faith and in violation of the law and public policy of the State of Texas, was done willfully, knowingly and maliciously, was intentional and/or committed with conscious indifference to the rights of Plaintiffs such as to warrant the imposition of punitive and/or exemplary damages, expert witness fees and attorney's fees which Plaintiffs seeks to recover from the Defendants.

## Request for Declaratory Judgment

100.    The facts and allegations stated above are incorporated herein by reference.

101.    Plaintiffs seek declaratory judgment as to priority of their claims to cattle and sales proceeds.

## Conclusion

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully pray that all Defendants be cited to appear and to answer this Petition and that upon final hearing hereof, Plaintiffs have Judgment as follows:

a.     An Order declaring the rights of the parties to the cattle and their proceeds;

b.     Judgment for actual and punitive damages;

c.     Judgment for attorneys' fees through trial and at all applicable appellate levels, and costs;

d.     Any and all further relief, legal and equitable, to which Plaintiffs may be now and ever more entitled.

Respectfully submitted,

**NAMAN HOWELL SMITH & LEE, PLLC**
8310 N. Capital of Texas Hwy., Ste. 490
Austin, Texas 78731
(512) 479-0300; FAX (512) 474-1901
Email: dlebas@namanhowell.com

By:     */s/ David L. LeBas*
         David L. LeBas
         State Bar No. 12098600
         Rachel Barr
         State Bar No. 24118185

**Attorneys for Plaintiffs AgTexas Farm Credit Services, AgTexas, PCA, Thorlakson Diamond T Feeders, LP**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing was served, by efile on March 21, 2024, to all counsel of record.

In addition, the undersigned certifies that service of this pleading was made on the following counsel, who have agreed to accept service for the parties named below:

Michael Johnson                 **Via Email to mjohnson@rqn.com**
Ray Quinney & Nebeker P.C.
36 South State Street, Suite 1400
Salt Lake City, Utah 84111

W. Heath Hendricks          **Via Email to heath.hendricks@uwlaw.com**
Underwood Law Firm, P.C.
500 South Taylor, Suite 1200, LB 233
Amarillo, Texas 79101
***Attorneys for Rabo AgriFinance LLC***

Rick Illmer                     **Via Email to rick.illmer@huschblackwell.com**
Husch Blackwell
1900 N. Pearl Street, Suite 1800
Dallas, Texas 75201
***Attorneys for Mechanics Bank***

John Lovell           **<u>Via Email to john@lovell-law.net</u>**
Lovell, Isern & Farabough, LLP
112 West 8th Avenue, Suite 1000
Amarillo, Texas 79101
***Attorneys for HTLF Bank as successor to First Bank & Trust***

*<u>/s/ David L. LeBas</u>*
David L. LeBas

IN THE 222ND JUDICIAL DISTRICT COURT
DEAF SMITH COUNTY, TEXAS

AGTEXAS FARM CREDIT SERVICES,            §
AGTEXAS, PCA                             §
THORLAKSON DIAMOND T FEEDERS, LP         §
                                         §
                                         §
        Plaintiffs,                      §
                                         §
and                                      §          CAUSE NO. CI-2023D-025
                                         §
EDWARD DUFURRENA,                        §
OPEN A ARENA, LLC'S,                     §
DENNIS BUSS, BUSS FAMILY TRUST,          §
EDDIE BRYANT, ROBERT E. GRAY,            §
RONNIE GRAY, GRAY BROTHERS,              §
CRAIG SUTTON, AMY SUTTON,                §
STEVE RYAN, JANICE LAWHON,               §
AJ JACQUES LIVING TRUST,                 §
GUNGOLL CATTLE, LLC,                     §
LEAH GUNGOLL,                            §
MORRISON CAFÉ, LLC, GARY LESH,           §
JAN LESH, LESH FAMILY TRUST,             §
JARED LESH, JORDAN LESH, LLC,            §
JOEL BROOKSHIRE, GENE BROOKSHIRE         §
FAMILY, LP, DOUGLAS FINLEY,              §
SCARLET AND BLACK CATTLE, LLC,           §
BRYAN BLACKMAN, STEVE T                  §
SCOTT FARM, INC., SCOTT LIVESTOCK        §
COMPANY, INC., ARNOLD BRAUN              §
TRUST, ROBERT BRAUN,                     §
JIM RININGER, ROBERT SPRING,             §
MICHAEL EVANS, MIRANDA EVANS,            §
CHARLES LOCKWOOD,                        §
COLE LOCKWOOD, SHERLE LOCKWOOD,          §
NIKKI LOCKWOOD, LYNDAL VAN               §
BUSKIRK, JANET VAN BUSKIRK,              §
COLBY VAN BUSKIRK, SUSAN VAN             §
BUSKIRK, JIMMY GREER, DUSTIN             §
JOHNSON AND DORA BLACKMAN                §
                                         §
        Intervenors-Plaintiffs,          §
                                         §
                                         §
v.                                       §

|  | § |
|---|---|
| RABO AGRIFINANCE LLC; | § |
| HTLF BANK, AS SUCCESSOR TO | § |
| FIRST BANK & TRUST; | § |
| SHAWN RAGLAND; | § |
| MECHANICS BANK; AND | § |
| MEAGAN GOAD | § |
|  | § |
| Defendants. | § |
|  | § |

### ACCEPTANCE OF SERVICE OF PLAINTIFF'S THIRD AMENDED PETITION

(Rabo AgriFinance, LLC)

The undersigned, Heath Hendricks, counsel for Rabo AgriFinance, LLC ("Rabo") affirms that he

has received a copy of *Plaintiff's Third Amended Petition*, on March 21, 2024, filed in the above-entitled

cases by David LeBas, counsel for AgTexas Farm Credit Services; AgTexas, PCA; and Thorlakson

Diamond T. Feeders, LP. Heath Hendricks accepted service of the Third Amended Petition on March 25,

2024, on behalf of Rabo without the requirement of formal service, and waives any right that Rabo might

have to service of the Petition by any other means.

The parties further agree that Rabo's deadline to file an Answer to Plaintiff's live pleadings will be

April 25, 2024.  Rabo reserves all other rights afforded to it under Texas law in Answering Plaintiff's

Petition.

Dated this 25th day of MARCH , 2024.

W. Heath Hendriks
The Underwood Law Firm
500 S. Taylor, Suite 1200
Amarillo, TX 79101
Heath.hendricks@uwlaw.com
*Local Counsel and Attorney for Rabo
AgriFinance, LLC*