# EXHIBIT 2

# KEELING CATTLE FEEDERS, INC
## CATTLE FEEDING AND FINANCING AGREEMENT

THIS CATTLE FEEDING AND FINANCING AGREEMENT is entered into effective the day and year set forth below by and between Keeling Cattle Feeders, Inc, a corporation organized and existing under the laws of the State of Texas whose mailing address is <u>PO BOX 1853 HEREFORD, TX 79045</u>, and the undersigned, whose mailing address is immediately set forth below the signature below, (hereinafter called FEEDER).

## WITNESSETH:

WHEREAS, Keeling Cattle Feeders, Inc is engaged in the custom feeding and care of cattle in facilities located in <u>DEAF SMITH</u> County, Texas (hereinafter referred to as the Premises); and

WHEREAS, Feeder desires to place cattle belonging to the Feeder on such Premises and requests Keeling Cattle Feeders, Inc to provide the necessary feed, supplements, and medicines, and other implements, items, and services, to properly feed, take care of and market such cattle; and

WHEREAS, Feeder has agreed to promptly pay Keeling Cattle Feeders, Inc for such feed, supplements, medicines, and other implements, items, and services, or in the absence thereof, agreed to pay Keeling Cattle Feeders, Inc interest on the funds not paid and grant to Keeling Cattle Feeders, Inc a security interest in such cattle.

**KEELING CATTLE FEEDERS, INC AND FEEDER DO HEREBY AGREE AS FOLLOWS:**

1. SERVICES BY KEELING CATTLE FEEDERS, INC —KEELING CATTLE FEEDERS, INC agrees to furnish the necessary feed, supplements, medicines, and other implements, items, and services that are normally supplied by a feed yard in <u>DEAF SMITH</u>, County in the feeding, care of, and marketing of cattle belonging to the Feeder at the Premises. Feeder further agrees that KEELING CATTLE FEEDERS, INC shall make any and all decisions relating to the processing, holding, and disposition of the cattle, whether at the end of the feeding cycle or otherwise, unless Feeder directs otherwise in writing to KEELING CATTLE FEEDERS, INC.

2. OWNERSHIP OF CATTLE—notwithstanding the authority granted to KEELING CATTLE FEEDERS, INC as set forth under Paragraph 1. Above or the granting of the security interest in the cattle and recognition of the agisters lien in the cattle as set forth in Paragraph 4. And 5. Below, Feeder retains title to all such cattle, and shall bear all normal risk of ownership, including risk of death, sickness, theft, and other casualties.

3. PAYMENT OF SERVICES—Feeder agrees to pay KEELING CATTLE FEEDERS, INC, KEELING CATTLE FEEDERS, INC's normal charges for the feed, supplements, medicines, implements, items, and other services as set forth in Paragraph 1. Above, on or before the 10th of the month next following the month such feed was delivered, medicine administered, or services performed by KEELING CATTLE FEEDERS, INC. In the event the Feeder fails to pay such charges on or before such due date, Feeder agrees to pay interest on such charges for the due date at the rate of interest equivalent to BASE +/- 2% per annum from the due date until paid. NOTWITHSTANDING SUCH INTEREST RATE, IN NO EVENT SHALL INTEREST OR FINANCE CHARGES DEMANDED OR RECEIVED PURSUANT TO THIS AGREEMENT EXCEED THE AMOUNT LEGALLY

COLLECTIBLE UNDER THE LAWS OF THE STATE OF TEXAS. KEELING CATTLE FEEDERS, INC reserves the right to rebate or repay to Feeder any interest or finance charges deemed usurious pursuant to this agreement, so as to remain in compliance with the Usury Laws of the State of Texas.

Feeder agrees that KEELING CATTLE FEEDERS, INC's charges for all the feed, supplements, medicines, implements, items, and services plus any accrued interest thereon, as above provided, shall be paid by Feeder to KEELING CATTLE FEEDERS, INC prior to the removal of such cattle from the Premises. Such payment shall be made by Feeder in cash prior to removal, or in the absence thereof, Feeder hereby transfers and assigns to KEELING CATTLE FEEDERS, INC all Feeder's right, title, and interest in and to any and all funds to be received for the benefit of Feeder as the seller of such livestock from any person, firm, corporation, or association buying cattle for slaughter or other disposition. In connection therewith, Feeder hereby expressly authorizes KEELING CATTLE FEEDERS, INC to deliver a copy of this agreement evidencing such transfer and assignment to any purchaser of such cattle. Any purchaser of such cattle to whom a copy of this agreement has been delivered shall be authorized to pay the entire proceeds to KEELING CATTLE FEEDERS, INC. KEELING CATTLE FEEDERS, INC will then account to Feeder and/or mortgagee, as hereinafter mentioned, after deduction of any sums money due to KEELING CATTLE FEEDERS, INC under the terms of this agreement.

4. SECURITY INTEREST IN CATTLE—KEELING CATTLE FEEDERS, INC is hereby granted a security interest in the cattle placed on the Premises under this Agreement under Article 9 of the Texas Business and Commerce Code. Proceeds from the sale of the cattle (Collateral) are also covered. This security interest is given to secure any and all indebtedness owing by Feeder to KEELING CATTLE FEEDERS, INC under terms of this agreement. In connection therewith, Feeder agrees to execute a UCC-1, evidencing this security agreement and hereby authorize KEELING CATTLE FEEDERS, INC to file such UCC-1 in the appropriate places for recordation as provided by the Statutes of the State of Texas.

5. RECOGNITION OF AGISTER'S LIEN—Feeder hereby expressly covenants, acknowledges, agrees, and grants to KEELING CATTLE FEEDERS, INC an agister's lien in and to all the cattle belonging to Feeder placed at the Premises under the terms of this agreement, as provided under § 70.003 of the Texas Property Code.

6. CATTLE FREE OF ENCUMBRANCES—Feeder warrants to KEELING CATTLE FEEDERS, INC that the cattle placed on the Premises under the terms of this agreement are free against all claims and demands of all persons, firms, and associations, and that such cattle have not been mortgaged, encumbered, or prior security interest granted in such cattle EXCEPT AS FOLLOWS:

_____
_____

In the event Feeder acknowledges the existence of a prior claim, interest, or security interest in the cattle as above set forth, such named person joins herein in the space set forth below acknowledging consent to this agreement.

7. RIGHT OF KEELING CATTLE FEEDERS, INC TO ASSIGN—KEELING CATTLE FEEDERS, INC may assign its right to payments or funds under this agreement, as well as its security interest and register's lien therein, as above set out to any financial institution or third party as collateral for obligations to KEELING CATTLE FEEDERS, INC.

Feeding and Financing Agreement                                                                                   05039001.doc

8. NO WARRANTY BY KEELING CATTLE FEEDERS, INC — KEELING CATTLE FEEDERS, INC makes no representations, warranties, expressed or implied, or guaranties as to the success or results of feeding cattle under the terms of this agreement. KEELING CATTLE FEEDERS, INC's standard of care in providing the feed, supplements, medicines, implements, items, and services under the terms of this agreement shall be consistent with the standard of care of an ordinary prudent custom feed yard operation in Texas, County.

9. PLACE OF PERFORMANCE—this agreement shall be performable, and all payments hereunder shall be made to KEELING CATTLE FEEDERS, INC in <u>DEAF SMITH</u> County, Texas.

10. ATTORNEYS FEES—In the event either KEELING CATTLE FEEDERS, INC or Feeder is required to employ an attorney to enforce provisions of this agreement by reason of the alleged default of the other, then the prevailing party in any court litigation by reason of said default shall be entitled to be awarded reasonable attorney's fees and costs.

Executed 3/1/23

**KEELING CATTLE FEEDERS, INC**

By: Scott Keeling
ITS: President


Debtor: Brian Keith McClain

By: Brian Keith McClain
Manager/Member
**Address: 824 Mullins Lane
Benton, KY 42025**

Feeding and Financing Agreement

05039001.doc

## OPTIONAL ADVANCE NOTE

**DEAF SMITH** County, Texas                                           Date: **3/1/23**

On demand, or if no demand be made, then on or before 3/1/24 the undersigned, Brian Keith McClain (the "Borrower") agrees and promises to pay to the order of Keeling Cattle Feeders, Inc, a corporation at the office of Keeling Cattle Feeders, Inc in Deaf Smith County, Texas, the sum of TEN DOLLARS ($10.00), receipt of which is hereby acknowledged, PLUS such other and further sums as Keeling Cattle Feeders, Inc or the holder thereof may hereafter loan or advance for the benefit of Borrower in accordance with terms hereof, together with interest on the unpaid principal balance outstanding from time to time until maturity at a variable rate of interest equal to the lesser of (i) the base commercial lending rate of interest as announced from time to time by Keeling Cattle Feeders, Inc (the "Base Rate") plus 1.0 percent or (ii) the maximum rate of interest allowed by applicable law which, if Texas law deemed applicable hereto, shall be deemed to be the Indicated Rate Ceiling published by the Texas Consumer Credit Commissioner pursuant to Article 5069-1.04, Vernon's Texas Statutes Annotated, as amended. Said Base Rate shall vary from time to time with all announced changes in such rate announced by Keeling Cattle Feeders, Inc. Interest shall be computed on the basis of a 365 day year and actual days elapsed and be payable on demand. Any principal or interest not paid when due hereunder shall bear interest from its maturity date at a rate of interest which is the lesser of (a) two percent per annum higher than the interest rate being charged in (i) above, or (ii) the maximum rate if interest allowed by applicable law. The unpaid balance of this obligation at any time shall be the total amount of principal advanced hereunder by the holder hereof, less the amount of principal payments made hereon by or for the Borrower, plus accrued and unpaid interest on such amounts which balance may be endorsed hereon from time to time by the holder hereof, and such endorsements will be prima facie evidence of the amount owing hereon.

Advances may be made by Keeling Cattle Feeders, Inc or the holder hereof, to pay for all or part of the purchase price of Borrower's cattle to be fed, maintained and cared for by Keeling Cattle Feeders, Inc and for all other charges and expenses including feed, supplies and services provided by Keeling Cattle Feeders, Inc all pursuant to the "Cattle Feeding Agreement" signed of even date herewith by Borrower and Keeling Cattle Feeders, Inc. It is specifically agreed that advances may be made from time to time after the execution hereof to pay such obligations as they become due under said Cattle Feeding Agreement and may at its option from time to time, pay Keeling Cattle Feeders, Inc sums of money as they become due there under, Keeling Cattle Feeders, Inc being sole judge of the necessity of such payments.

The Borrower agrees to pay all costs and expenses, including reasonable attorney's fees, incurred by the holder in enforcing payment hereof and hereby waives to

full extent permitted by law, all right to plead any state of limitation as a defense to any action hereunder.

It is the intention of Keeling Cattle Feeders, Inc and the maker(s) hereof that this Note and all provisions hereof and of all documents securing this Note or relating hereto conform in all respects to applicable law so that no payment of interest or other sum construed to interest shall exceed the highest lawful rate permissible. In determining the rate of interest paid or payable under this Note or any such documents, all funds paid or to be paid as interest or construed to be interest shall be prorated, allocated, or spread as permitted under applicable law. If, through any circumstances, the contract of maker(s) and Keeling Cattle Feeders, Inc would result in exceeding the highest lawful interest rate applicable to this transaction, or if the maker(s) pay(s) any sum as interest or construed to be interest in excess of such rate, the ipso facto, 1) the amount contracted for shall be automatically reduced to the highest lawful rate authorized for this transaction, and 2) the amount of excess interest paid shall be applied to the reduction of the principal balance of this Note, if any, and if the principal balance has been fully paid, the excess interest shall be refunded to the maker(s) and maker(s) agree(s) to accept refund. Thereupon, to the extent permitted by law, the holder shall not be subject to any penalty provided for the contracting for, charging, or receiving of interest in excess of such highest lawful rate, regardless of when or the circumstances under which such refund or application was made.

The Borrower and each surety, endorser, guarantor and other person liable upon this note waive all notices, demands and presentments for payments; all notices of non-payment, protest, and dishonor; and diligence in taking any action to collect amounts hereunder and in the handling of any collateral securing this note at any time.

This Note shall be construed in accordance with and governed by the law of the State of Texas, except as otherwise required by law.

This Note is secured by a Security Agreement of even date herewith executed by Borrower, covering livestock and other collateral more particularly described therein, and by such other security agreements, documents and instruments for a complete description of collateral covered thereby and the nature and extent of the security and the rights and powers of the holder of this Note with respect to such security.

BORROWER HEREBY ACKNOWLEDGES AND REPRESENTS THAT THIS NOTE IS GIVEN FOR A BUSINESS, COMMERCIAL, INVESTMENT, AGRICULTURAL OR OTHER SIMILAR PURPOSES AND IS NOT GIVEN FOR BORROWER'S PERSONAL, FAMILY OR HOUSEHOLD USE. BORROWER HEREBY ACKNOWLEDGES AND AGREES THAT THIS NOTE AND THE INDEBTEDNESS EVIDENCED HEREBY ARE NOT SUBJECT TO THE PROVISIONS OF CHAPTER 15 OF THE TEXAS CONSUMER CREDIT CODE. It is

understood and agreed that the holder of the Note is relying upon the representation set forth above in extending the credit evidenced by this Note.

**Debtor:** **Brian Keith McClain**
**Address: 824 Mullins Lane**
**Benton, KY 42025**

_____
By: Brian Keith McClain

---

ASSIGNED TO:   Bank of America, N.A., 8101 West 34 Ave., Amarillo, TX 79121
With recourse.

**KEELING CATTLE FEEDERS, INC**

_____
By: Scott Keeling
ITS: President

## SECURITY AGREEMENT

The State of <u>TEXAS</u>
<u>DEAF SMITH</u> County

This agreement entered into between Brian Keith McClain ("Debtor") and Keeling Cattle Feeders, Inc, the Secured Party ("Lender").

    1.    Debtor hereby grants to Lender a security interest in and to: all livestock and their increases, substitutes, and replacements which are or will be owned by Debtor, which may be located on pasture or placed in the feedlot operated by Keeling Cattle Feeders, Inc, or a subsidiary, affiliate or successor thereof (Livestock); proceeds and products of the sale or other disposition of the Livestock feed or grain purchased for the Livestock; warehouse receipts, commodities futures contracts, hedging accounts, option contracts, documents of title, and all other instruments, accounts, and general intangibles now owned or hereafter acquired by Debtor pertaining to any of the Livestock or the feed or grain purchased thereof. All of the above will be referred to collectively, as the "Collateral."

    2.    The Security Interest granted hereby shall secure:

    (i)    Payment of any indebtedness evidenced by the note or notes executed by Debtor and payable to Lender, and any renewals, extensions, and reamortizations thereof (all of which shall hereafter be referred to as the "Note").

    (ii)    Payment of all advances made to the Lender or the holder of the Note for taxes and levies on the collateral and for all costs and expenses incurred in the collection of the same; and

    (iii)    Payment of all other debts arising for money heretofore and hereafter advanced by Lender or the holder of the Note to or for the Account of Debtor.

All of the above will be hereafter referred to collectively as the "Indebtedness."

    3.    "Debtor's Equity," as used in this agreement, shall mean the difference between the market value of the security (whether composed of Collateral or otherwise) furnished by Debtor to Lender to secure the Indebtedness at that time. Lender may determine the market value of such security in its sole discretion. Debtor's Equity will at all times be equal to or greater than thirty percent (30%) of the market value of the livestock. If, for any reason, Debtor's Equity falls to below the aforementioned amount, Lender may demand that Debtor restore the required level of Debtor's Equity by reducing the Indebtedness, furnishing additional security for the Indebtedness, or by any other method satisfactory to Lender, including hedging the cattle for the Debtor's account. If Debtor fails to satisfactorily respond to Lender's demand to restore the required level of Debtor's Equity within (5) days after the issuance of such demand, that failure may be treated as an event of default hereunder, under the Note, and under any or all of the

payable, whether by demand or acceleration, Lender shall thereupon be authorized to immediately sell Livestock on either the live market or the commodities futures contract market without prior notice to Debtor. It is agreed that Lender does not assume and shall not be subject to any obligations or liability of Debtor or others owning any interest in the Livestock in connection with the sale of such livestock and Debtor hereby agrees to indemnify and hold Lender harmless against all loss, claims, or demands of others owning any interest in the Livestock in connection with the sale of such Livestock and Debtor hereby agrees to indemnify and hold Lender harmless against all loss, claims, demands and liabilities arising out of the exercise by Lender of its rights and remedies provided herein, including without limitations the cost and expense incurred by Lender in the repossession, care, storage, preparation for sale, sale or transportation of the Livestock.

8. If there be more than one Debtor, the obligations, representations, and warranties shall be joint and several and the term Debtor shall include each as well as all of them.

9. This agreement shall be construed under and in accordance with the Texas Business and Commerce Code and other applicable laws of the State of Texas and all obligations of the parties created hereunder are performable in <u>Deaf Smith</u> County, Texas.

10. In case any one or more of the provisions contained in this agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or enforceability shall not affect any other provision thereof, and this agreement shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein. Notwithstanding anything else herein to the contrary, if the debt secured by this Security Agreement is a loan made under any chapter of the Texas Credit Code that limits charges or expenses that may be collected by secured parties, the provisions of such Code shall govern in the Event of a conflict between the provision for this Security Agreement and the provision of such Code

11. This Agreement contains the entire agreement of the parties hereto relating to the matters herein discussed. Lender makes no warranties, expressed or implied, and no representations, promises or statements which relate to the matters addressed by this Agreement which are not included in this Agreement.

12. The waiver by Lender of any default of Debtor hereunder shall not constitute a continuing waiver of any default or of the same default on a future occasion.

13. The rights, duties, and obligations of the Debtor and Lender shall inure to benefit of and bind their respective successors-in-interest and assigns.

(ii) The Debtor's failure to make punctual payment of the Indebtedness when and as any part of the Indebtedness becomes due and payable;

(iii) The Debtor's default in the performance or observance of any covenant or agreement provided herein, in the Note, or in any other agreement relating to the Indebtedness.

(iv) The determination that any warranty, representation or statement made or furnished to Lender by or on behalf of the Debtor in connections with this agreement or in connection with the Indebtedness was false in any material respect when made or furnished;

(v) The Collateral suffers substantial damage or destruction;

(vi) The Collateral is levied upon or seized under any levy or attachment or under any other legal process;

(vii) The death, incompetence, dissolution or termination of existence of the Debtor;

(viii) The failure of Debtor to restore required Debtor's Equity within (5) days of demand under paragraph three hereof; or

(ix) The appointment of a receiver for any portion of Collateral, Debtor's making an assignment for the benefit of creditors or commencement of any bankruptcy or insolvency proceedings by or against the Debtor or any guarantor or surety for the Debtor.

6. Debtor agrees that upon the occurrence of any of the events of default as set forth above, the full amount remaining unpaid on the Indebtedness shall, at the option of the Lender, become due and payable forthwith, and Lender shall have the rights, options, duties and remedies of a secured party under, and the Debtor shall have the rights and duties of a debtor under, the Texas Business and Commerce Code (regardless of whether such Code or a law similar thereto has been enacted in the jurisdiction where the rights and remedies are asserted), including without limitation the Lender's right to take possession of the collateral and the right for that purpose without legal process to enter any premises where the Collateral may be found, provided such entry be done lawfully, the Debtor further agrees in any such case to deliver the Collateral to Lender at a place to be designated by Lender. Any Requirements of said Code of reasonable notification of the time and place of any public sale or of the time after which any private sale or other disposition is to be made, shall be met by mailing such notice to the Debtor at the address shown in this agreement at least (5) days prior to the time of disposition is to made. Debtor shall be and remain liable for any deficiency remaining after applying the proceeds of disposition of the Collateral first to expenses incurred by the Lender in connection therewith, and then to the satisfaction of the Indebtedness secured hereunder.

7. Debtor and all persons owning any interest in the Livestock acknowledge that all Livestock are deemed perishable in nature, and agree that when an event of default under paragraph five hereof occurs, and the Indebtedness is declared fully due and

agreements by which the Indebtedness may be secured or which may relate to the Indebtedness. Lender may thereafter exercise all rights and remedies to which it is entitled hereunder, under the Note, and under any or all such agreements.

4. Debtor warrants and covenants as follows:

(i) Except for the security interest granted hereby, the Debtor is the owner of the Collateral free from any lien, security interest or encumbrances. Debtor will defend the Collateral against all claims and demands of all persons at any time claiming the collateral or any interest therein;

(ii) Without the prior written consent of the Lender or the holder of the Note, Debtor will not sell or offer to sell or otherwise transfer or dispose of the Collateral or of any Debtor's rights therein or permit any lien, encumbrance or security interest to attach to the collateral except that created by this agreement;

(iii) No Financing Statement covering any of the Collateral or any proceeds thereof is on file in any public office and, at the request of Lender, Debtor will join with Lender in executing one or more Financing Statements in form satisfactory to Lender and will pay the cost of filing the same in all public offices wherever filing is deemed by Lender to be necessary or desirable;

(iv) Debtor will keep the Collateral in good condition and in an unmanufactured state and will not waste or destroy the Collateral or any part thereof and Lender may examine and inspect the Collateral at any time wherever located;

(v) Debtor will pay all costs of filing any financing, continuation or termination statements with respect to the security interest created by this agreement; Lender is hereby appointed Debtor's attorney-in-fact to do, at Lender's option and at Debtor's expense, all facts and things which Lender may deem necessary to perfect and continue the perfection of the security interest created by this agreement and to protect the Collateral;

(vi) Lender may, at any time, request that Debtor furnish a list of buyers to whom Livestock will be sold, and a list of sales agents and commission merchants through who Livestock will be sold, and Debtor will promptly execute any financing statement furnished by Lender to Debtor for delivery to the persons and entities shown on such lists, or to persons and entities who are not on such lists to whom or through whom Livestock will be sold.

5. The following shall constitute events of default for the purpose of this Security Agreement;

(i) The Debtor's failure to pay promptly when due all taxes and assessments upon the Collateral or failure to keep the Collateral in good condition;

Executed this 1st day of March, 2023

**DEBTOR: Brian Keith McClain**

_/s/ Brian McClain_

By: Brian McClain
Address: 824 Mullins Ln
Benton, KY 42025


**LENDER:** Keeling Cattle Feeders, Inc

_/s/ Scott Keeling_

By: Scott Keeling
ITS: President

---

Assigned to:  Bank of America, N.A., 8101 West 34 Ave, Amarillo, TX  79121
with recourse.