Hudson M. Jobe
Texas Bar No. 24041189
QUILLING, SELANDER, LOWNDS,
WINSLETT & MOSER, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Facsimile)

SPECIAL COUNSEL TO THE TRUSTEE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| MCCLAIN FEED YARD, INC., et al.,[1] | § § § § | CASE NO. 23-20084-RLJ-7 |
| Debtors. | § | Jointly Administered |

**TRUSTEE'S *EX PARTE* MOTION FOR RULE 2004 ORDER AUTHORIZING THE
ISSUANCE OF DOCUMENT AND EXAMINATION SUBPOENAS
TO VARIOUS THIRD PARTIES**

**TO THE HONORABLE ROBERT L. JONES, BANKRUPTCY JUDGE:**

COMES NOW, Kent Ries, Trustee ("Trustee") of the referenced Chapter 7 bankruptcy cases the "Bankruptcy Cases"), and files this his *Ex Parte* Motion for Rule 2004 Order Authorizing the Issuance of Document and Examination Subpoenas to Various Third Parties (the "Motion"), respectfully stating as follows:

I.  **SUMMARY**

1. This Motion seeks Court authorization to issue subpoenas to 3 categories of third-parties: (i) three parties that appear to have purchased and/or brokered the majority of the Debtors' cattle during certain times; (ii) three banks that played a material role in the Debtors' transactions during certain times and one bank consultant that analyzed various records and information of the

---

[1] The Debtors in these Chapter 7 cases are: McClain Feed Yard, Inc. (Case No. 23-20084-RLJ), McClain Farms, Inc. (Case No. 23-20085-RLJ), and 7M Cattle Feeders, Inc. (Case No. 23-20086-RLJ).

**Page 1**

Debtors; and (iii) several accountants that appear to have performed outside accounting functions for the Debtors.

2.  The Trustee seeks authorization to issue a subpoena for documents, and if the Trustee deems appropriate, an examination of the party, consistent with the *ex parte* procedure previously allowed by this Court in connection with, for example, Order at Dkt. No. 157. The examinees shall have all rights to object under the applicable rules of procedure.

3.  Several of these examinees have already provided documents to other parties in connection with the Debtors' bankruptcy cases. The Trustee nevertheless needs to issue his own subpoena for several reasons: (i) in several instances the Trustee seeks an additional scope of documents than has produced to these other parties; (ii) the Trustee is not certain what outstanding objections the examinees maintain to prior requests and whether all documents have been provided, and the Trustee arguably cannot compel compliance with another party's Rule 2004 subpoena, and (iii) the Trustee needs to have the presumption of authenticity of such documents produced by the examinee to the Trustee. The Trustee will work in good faith with the parties to minimize duplication in a manner that ensures the Trustee has all rights of a requesting party.

##  II.  BACKGROUND

4.  The Debtors filed for relief under Chapter 7 of the United States Bankruptcy Code on April 28, 2023 (the "Petition Date"). Kent Ries was subsequently appointed and qualified to serve as the Trustee over the bankruptcy estate.

5.  Each of the Debtors operated a cattle feedlot and/or growyard. McClain Feed Yard, Inc. ("MFY") owned real property outside of Hereford, Texas; McClain Farms, Inc. ("MF") leased real property in Kentucky; and 7M Cattle Feeders, Inc. ("7M") owned real property outside of Friona, Texas (collectively, the "Debtors").

6.  The Debtors' business operations have significant overlap, including one major

secured creditor (Rabo AgriFinance LLC) whose alleged claim exceeds $53,000,000.00 pursuant to its recent motion for relief from the automatic stay. Rabo claims cross-collateralization and a blanket lien on substantially all of the Debtors' assets. Further, many of the same vendors, customers and investors did business with all three Debtors. Finally, the owner of all three Debtor entities was Brian McClain.

7. All of the Debtors' business operations were shut down prior to their bankruptcy filings. All cattle and other livestock were apparently sold by the Debtors or removed by their alleged owner's pre-petition.

8. As discussed in prior pleadings, based upon the Trustee's investigation thus far, the Debtors' prebankruptcy operations appear to have constituted a massive fraud involving two cattle operations in Texas (Hereford and Friona) and one in Benton, Kentucky. The asserted unpaid claims exceed $175M so far, and the Debtors' records show several hundred million dollars flowing through the Debtors in the 3 years before bankruptcy. These cases will involve over 100 parties and their attorneys based upon the service list thus far.

9. The Debtors' owner, Mr. McClain, committed suicide on April 18, 2023, less than 2 weeks after the appointment of a Chief Restructuring Officer that was investigating the Debtors' financial affairs. The Trustee's investigation thus far, including with the assistance of the pre-bankruptcy CRO, has been considerable and will be ongoing for some time due to, among other things, the Debtors' poor and unreliable records.

10. It appears that the Debtors' cattle operations included at least some actual cattle transactions whereby, in some instances, the Debtors' purchased cattle ("Cattle Purchases"), and in other instances, took possession of third-parties' cattle for the Debtors' to fatten/grow prior to sale ("Feed Yard Services"). In addition to Cattle Purchases and Feed Yard Services, it appears

that Mr. McClain also raised money from many "investors" pursuant to "partnership agreements" whereby the "investors" would advance funds to one of the Debtors to "purchase" unspecified cattle from the Debtor (that were purportedly already under a contract for sale in the future at a higher weight and price), the Debtor would continue to hold and feed the cattle at its expenses, and the investor and applicable Debtor intended to split the later profit 1/3 to the Debtor and 2/3 to the investor (the "Partnership Agreements").

11. Over 100 claimants have asserted claims exceeding $100 million with the United States Department of Agriculture ("USDA") under the Dealer Trust Statute for allegedly unpaid amounts for Cattle Purchases, cattle that were dropped off for Feed Yard Services, investments under the Partnership Agreement, and possibly other transactions not yet specified by the claimants. Additionally, upon belief many of these claimants and possibly other parties ostensibly "reclaimed" millions of dollars of cattle in the chaotic period following Mr. McClain's death.

12. The Trustee has spent considerable time and resources investigating the Debtors' pre-bankruptcy financial affairs, and the investigation is ongoing. Based upon his investigation thus far, the Trustee believes that the Debtors' estates may have claims against investors, lenders, and other agricultural entities.

### III. RELIEF REQUESTED

13. Buyers/Brokers: Based upon his investigation thus far, the Trustee believes that the majority of the Debtors' cattle may have been purchased during certain times by "Cactus Feeders"[2] and Friona Industries, L.P.,[3] and that Riley Livestock, Inc. may have acted as broker and/or other

---

[2] With respect to "Cactus Feeders," the Trustee has reviewed records referencing Cactus Feeders Finance, LLC and Cactus Operating LLC. Based upon his research, these entities appear to have various successor and affiliated entities. The Trustee seeks discovery from Cactus Feeders Finance, LLC and Cactus Operating LLC, including any of their successors, predecessors, and affiliates, including but not limited to Cactus Operating, Ltd., Cactus Feeders Finance, Ltd., Cactus Feeders, Inc., Cactus Feedyard, Ltd., Cactus Corporate Feeding Club, Inc., and Cactus Feeding Club, Inc.

[3] Based upon his research, this entity appears to have various successor and affiliated entities. The Trustee seeks

intermediary in purchases and sales of livestock by the Debtors involving these companies. The Trustee further believes that Friona Industries, L.P. may have had financing or similar arrangements to fund the Debtors' cattle purchases during certain times.

14. <u>Banks and Bank Consultants</u>: Rabo AgriFinance LLC is the largest alleged secured creditor of the Debtors and appears to have maintained a large credit facility with the Debtors that included the routine sweeping of the Debtors' bank accounts. Rabo appears to have utilized Focus Management Group to process certain records and other information of the Debtors. Mechanics Bank appears to have acted as the primary banking institution for the Debtors during certain times. Community Financial Services Bank appears to have acted as the primary banking institution for certain parties that transacted significant amounts with the Debtors, and also acted as a lending and/or depository institution for the Debtors in the past.

15. <u>Accountants.</u> Carr, Riggs & Ingram CPAs and Angela Powell, including possibly in her individual capacity as well as on behalf of ADPOWELL, Inc. and/or H&R Block, Inc., appears to have acted as outside accountants for the Debtors during certain times.

16. Each of the foregoing parties (the "<u>Examinees</u>") may hold highly relevant and material financial information concerning the Debtors and their transactions. The Trustee requests authority to issue document subpoenas to these Examinees directing the Examinees to produce the documents and information identified in the subpoena riders attached hereto as <u>Exhibit A</u> as to the Buyers/Brokers, <u>Exhibit B</u> as to the Banks and Bank Consultants, and <u>Exhibit C</u> as to the Accountants. The Trustee also requests authority to conduct Rule 2004 examinations of the Examinees, if and to the extent the Trustee deems a Rule 2004 examination to be appropriate.

---

discovery from Friona Industries, L.P., including any of its successors, predecessors, and affiliates, including but not limited to Randall Feeders, L.P. and Friona Industries, Inc.

17. Rule 2004 provides that, "[o]n motion of any party in interest, the court may order the examination of any entity." Fed. R. Bankr. P. 2004(a) (emphasis added). *See also In re Fearn,* 96 B.R. 135, 138 (Bankr. S.D. Ohio 1989) (the "examination is not limited to the debtor or his agents, but may properly extend to creditors and third parties who have had dealings with the debtor"); *In re GHR Energy Corp.,* 35 B.R. 534, 537 (Bankr. D. Mass. 1983); *In re Maidman,* 2 B.R. 18, 18-19 (Bankr. S.D. Fla. 1979). The scope of the Rule 2004 examination "may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." Fed. R. Bankr. P. 2004(b). "The purpose of a Rule 2004 examination is to determine the condition, extent, and location of the debtor's estate in order to maximize distribution to unsecured creditors." *In re Lufkin,* 255 B.R. 204, 208 (Bankr. E.D. Tenn. 2000).

18. The scope of a Rule 2004 examination is "extremely broad," and has even been likened by some courts to a "lawful 'fishing expedition.'" *Id.* (*quoting Bank One, Columbus, N.A. v. Hammond (In re Hammond),* 140 B.R. 197, 201 (S.D. Ohio 1992)). "The scope of [a] Rule 2004 examination is 'unfettered and broad.' Its purpose is to facilitate the discovery of assets and the unearthing of frauds and has been likened to a quick 'fishing expedition' into general matters and issues regarding the administration of the bankruptcy case." *In re Bakalis,* 199 B.R. 443, 447 (Bankr. E.D.N.Y. 1996) (quoting *In re GHR Energy Corp.,* 33 B.R. 451, 453 (Bankr. D. Mass. 1983). The standard for granting a Rule 2004 examination is whether the movant has established "good cause." *In re Hammond,* 140 B.R. 197, 201 (S.D. Ohio 1992).

19. Here, good cause exists for ordering the Production. The Trustee needs to better understand the financial transactions involving the Debtors and their affiliates, and possible claims that may arise from same, which is a standard purpose behind Rule 2004.

20. If the Court grants this Motion, the Trustee will compel the Examinees to produce records and documents through the issuance of a subpoena issued pursuant to Federal Rule of Bankruptcy Procedure 9016.

21. The Trustee represents that the Examinees will all receive not less than 14 days' written notice of deadline to produce documents.

22. With respect to the Examinees that have known counsel, the Trustee will coordinate and cooperate with counsel for the Examinees concerning both the production of documents and any subsequent Rule 2004 examinations.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, the Trustee respectfully requests that the Court enter an Order: (i) authorizing the Trustee to issue subpoenas to the foregoing parties substantially in the same form as the subpoena riders attached as Exhibit A-C hereto; (ii) authorizing the Trustee to notice and conduct an examination of any of the Examinees; and (iii) granting the Trustee such other relief, general or special, at law or in equity, as may be appropriate.

Respectfully submitted,

By: */s/ Hudson M. Jobe*
Hudson M. Jobe
Texas Bar No. 24041189
QUILLING, SELANDER, LOWNDS,
WINSLETT & MOSER, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Facsimile)

SPECIAL COUNSEL TO THE TRUSTEE

## CERTIFICATE OF CONFERENCE

Pursuant to LBR 2004-1, the undersigned represents that after the subpoenas are served on the Examinees, the undersigned will cooperate with the Examinees, and their counsel if applicable, to establish a mutually agreeable date, place and time for the compliance with the document subpoenas and any subsequent examinations.

                                                        */s/ Hudson M. Jobe*
                                                        Hudson M. Jobe

## CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2024, a true and correct copy of the foregoing was served via the Court's ECF system on the debtor, debtor's counsel, the United States Trustee, and, all parties that have appeared and requested notice.

                                                        */s/ Hudson M. Jobe*
                                                        Hudson M. Jobe