James D. Bradbury
State Bar No. 02814500
jim@bradburycounsel.com
Kyle K. Weldon
State Bar No. 24097192
kyle@bradburycounsel.com
**JAMES D. BRADBURY, PLLC**
201 Main Street, Suite 600
Fort Worth, Texas 76102
Telephone: (817) 339-1105

*ATTORNEYS FOR PRIEST CATTLE COMPANY, LTD
AND PRIEST VICTORY INVESTMENT LLC*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | |
|---|---|
| **IN RE:** <br><br> **McCLAIN FEED YARD, INC., et al.,** [1] <br><br> *Debtors*. | **CASE NO. 23-20084-7-rlj** <br><br> **Chapter 7** <br><br> **Jointly Administered** |

**PRIEST CATTLE COMPANY, LTD AND PRIEST VICTORY INVESTMENT LLC'S
*EX PARTE* MOTION FOR RULE 2004 ORDER AUTHORIZING ISSUANCE OF
DOCUMENT SUBPOENAS TO VARIOUS THIRD PARTIES**

**TO THE HONORABLE ROBERT L. JONES, BANKRUPTCY JUDGE:**

Pursuant to Federal Rule of Bankruptcy Procedure 2004 and L.B.R. 2004-1, Priest Cattle Company, Ltd and Priest Victory Investments LLC (collectively, "Priest"), creditors and parties in interest in the above-entitled Chapter 7 cases, through counsel, respectfully request that this Court authorize Priest to issue document subpoenas to third parties who may have information

---

[1] The Debtors in these Chapter 7 cases are: McClain Feed Yard, Inc. (Case No. 23-20084-RLJ), McClain Farms, Inc. (Case No. 23-20085-RLJ), and 7M Cattle Feeders, Inc. (Case No. 23-20086-RLJ).

1

relevant to the acts and conduct of the Debtors and another creditor related to the wrongful sale of cattle owned by Priest that were, upon information and belief, were sold by Debtors' prior to the filing of the bankruptcies.

Specifically, Priest requests the authority to issue document subpoenas to the following third parties (the "Examinees"), and to request from the Examinees those records and documents set forth in the subpoena riders attached as Exhibits A – C hereto.

In support hereof, Priest states as follows:

## I.    BACKGROUND

1.     Through their principal, Brian McClain, each of the Debtor entities operated beef cattle backgrounding operations in Kentucky and Texas. McClain Feed Yard, Inc. owned real property outside of Hereford, Texas; McClain Farms, Inc. leased real property in Kentucky; and 7M Cattle Feeders, Inc. owned real property outside of Friona, Texas (collectively, the "Debtors").

2.     In general, the Debtors would procure feeder cattle on behalf of third parties using funds from third parties. They, on behalf of the third parties or on account, would then feed and grow those cattle at one of three feed yards (located in Friona and Hereford, Texas, and Benton, Kentucky), and then would sell those cattle to a finishing feedyard on behalf of the third parties. At all relevant times, these cattle were owned by and the property of third parties.

3.     Rabo AgriFinance LLC ("Rabo") has known for years that third parties owned cattle on feed at Debtors' feed yards. In fact, Rabo executed a Letter of Understanding with Priest in January of 2022 acknowledging that Debtors were feeding cattle owned by Priest. The cattle owned by Priest and on feed at Debtors' feed yards, were branded with Priest's brand, had ear tags with lots that matched Priest's records, were segregated from the other cattle, and at all times, were owned by Priest. Rabo was aware of this fact, or at a minimum that third parties owned cattle on

feed at Debtors' feed yards. This is evidenced by Rabo's March 10, 2023 "Beef Cattle Collateral Inspection Report" report, which states:

> "The other primary concern that Inspection Team has is that cattle at the yards **could belong to someone else**…. This would lead us to believe that these people had cattle on feed with McClain Feedyard and owned the cattle."

4.      In early April 2023, Focus Management Group, a company hired by Rabo, conducted several physical head counts of the cattle on feed at the Debtors' feed yards and realized that instead of some 88,000 head that had previously been represented as the correct number of cattle that were on feed at the yards, only about 10,000 head were actually on feed.

5.      At this time, Rabo took control of the Debtors operation, instructing the Debtors' banks to freeze their bank accounts, and entering into a Forbearance Agreement with the Debtors. This allowed money to flow into Debtors and Rabo but cut off all outgoing funds for otherwise valid checks to Priest and other third parties.

6.      On April 13, 2023, Rabo required that Mr. McClain sign over control of the Debtors to Glenn Karlberg, as Chief Restructuring Officer, who had been selected by Rabo.

7.      On April 18, 2024, Glenn Karlberg, as Chief Restructuring Officer for Debtors, shipped 10 loads of cattle that were on feed at Debtors' Texas feed yards to Cactus Feeders. These cattle were not owned by Debtors and this sale was done without notice or any consent from the owners of the cattle or their lenders. Upon information and belief, some of these cattle were owned by Priest.

8.      On April 24 and 25, 2023, over 2,400 head of cattle that were on feed in the Debtors yards were sold at auction (in Texas and Kentucky) at the direction of Rabo and Mr. Karlberg. This sale was done without notice or consent by the owners of the cattle who were on feed at the yards.

9. On April 28, 2023, each of the Debtors filed voluntary petitions for relief under Chapter 7 of Title 11 of the United States Code with this Court.

### III.
### RELIEF REQUESTED

10. While disputed, Rabo claims to be the largest secured creditor of the Debtors and claims to have a priority lien on cattle that were owned by third parties. Moreover, Rabo appears to have controlled all business dealings of the Debtors from at least April 2023, including the sale of cattle on feed at Debtors' feed yards that were owned by third parties and not collateral securing the >$50 million that Rabo loaned to Debtors.

11. Rabo appears to have utilized Focus Management Group to process certain records and other information of the Debtors, including information related to the cattle on feed at Debtors' feed yards.

12. Moreover, Rabo appointed Glenn Karlberg to serve as the Chief Restructuring Officer for Debtors, who controlled the winding up of Debtors and the filing of their bankruptcies.

13. Each of these parties holds highly relevant and material information concerning Debtors and their transactions, including the sale of cattle owned by third parties, including Priest.

14. By this Motion, Priest requests that the Court order the production of documents as set forth in the subpoena riders attached hereto as Exhibit A as to Rabo AgriFinance LLC, Exhibit B as to Focus Management Group, and Exhibit C as to Glenn Karlberg (collectively, the "Production").

15. Rule 2004 provides that, "[o]n motion of any party in interest, the court may order the examination of any entity." Fed. R. Bankr. P. 2004(a). The scope of this examination "may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right

4

to a discharge." Fed. R. Bankr. P. 2004(b). "The purpose of a Rule 2004 examination is to determine the condition, extent, and location of the debtor's estate in order to maximize distribution to unsecured creditors." *In re Lufkin,* 255 B.R. 204, 208 (Bankr. E.D. Tenn. 2000). "The scope of a Rule 2004 examination is extremely broad and has often been likened to a lawful fishing expedition." *Id*. (internal citations and quotations omitted).

16. "The object of the examination of the bankrupt and other witnesses to show the condition of the estate is to enable the court to discover its extent and whereabouts, and to come into possession of it, that the rights of creditors may be preserved." *Cameron v. United States*, 231 U.S. 710, 717 (1914). "As a general rule, examinations under Rule 2004 are allowed for the purpose of discovering assets, examining transactions, and determining whether wrongdoing has occurred." *In re Strecker*, 251 B.R. 878, 882 (Bankr. D. Colo. 2000) (internal citations and quotations omitted).

17. Here, good cause exists for ordering the Production.

### **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Priest respectfully requests that the Court enter an Order: (i) authorizing Priest to issue subpoenas to the Examinees substantially in the form as the subpoena rider attached as Exhibits A – C hereto; and (ii) granting Priest such other relief, general or special, at law or in equity, as may be appropriate.

Respectfully submitted,

*/s/ James D. Bradbury*
James D. Bradbury
State Bar No. 02814500
jim@bradburycounsel.com
Kyle K. Weldon
State Bar No. 24097192
kyle@bradburycounsel.com
**JAMES D. BRADBURY, PLLC**

5

>       201 Main Street, Suite 600
>       Fort Worth, Texas 76102
>       Telephone:    817-339-1105
>
>       ***ATTORNEYS FOR PRIEST CATTLE
>       COMPANY, LTD AND PRIEST VICTORY
>       INVESTMENT LLC***

## **CERTIFICATE OF CONFERENCE**

Pursuant to LBR 2004-1, the undersigned represents that after the subpoenas are served on the Examinees, the undersigned will cooperate with the Examinees, and their counsel, if applicable, to establish a mutually agreeable date, place, and time for the compliance with the document subpoenas.

>       */s/ Kyle K. Weldon*
>       Kyle K. Weldon

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 12, 2024, the foregoing document was served using the Court's CM/ECF system, which sent notice of electronic filing to all electronic filing users in each case.

>       */s/ Kyle K. Weldon*
>       Kyle K. Weldon

# EXHIBIT A – RABO AGRIFINANCE LLC

## DEFINITIONS

1.  <u>7M</u>. The term "7M" shall mean 7M Cattle Feeders, Inc, a Kentucky corporation, and all officers, directors, members, employees, attorneys, agents, and representatives of the foregoing.

2.  <u>All/Each</u>. The terms "all" and "each" shall be construed as all and each.

3.  <u>And/Or.</u> The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

4.  <u>Communications</u>. The term "communications" shall be construed as broadly as possible, and shall include, but not be limited, to all e-mails, text messages, correspondence, memoranda, or other written documentation in any form.

5.  <u>Concerning</u>. The term "concerning" means referring to, referencing, reflecting, in connection with, describing, evidencing, indicating, supporting or constituting, digesting, embodying, establishing, tending to establish, tending not to establish, comprising, commenting on, responding to, disagreeing with, showing, describing, analyzing, representing, constituting or including, in whole or in part.

6.  <u>Documents or Electronically Stored Information</u>. The term "documents or electronically stored information" shall be synonymous in meaning and equal in scope to the usage of those terms in Rule 34 of the Federal Rules of Civil Procedure, and shall include, *without limitation*, any written, printed, electronic, typed, recorded, filmed, punched, transcribed, taped, or other graphic matter of any kind or nature however stored, produced, or reproduced, whether sent or received or neither, including the original, drafts, copies, and non-identical copies bearing notations or marks not found on the original, and includes, but is not limited to, all records, memoranda, reports, financial statements, handwritten and other notes, transcripts, paper, indices, electronic mail messages, electronic text messages, voicemail, word processing documents, spreadsheets, databases, calendars, telephone logs, contact manager information, internet usage files (including activity logs, records of internet and web browser generated files, history files, caches, and cookies), network access information, blogs, tweets, instant messages, letters, envelopes, telegrams, cables, telex messages, telephone messages, summaries or records of telephone conversations, summaries or records of personal conversations or interviews, summaries or records of meetings or conferences, minutes or transcripts or notations of meetings or telephone conversations or other communications of any type, tabulations, studies, analyses, evaluations, projections, work papers, statements, summaries, opinions, journals, desk calendars, appointment books, diaries, billing records, invoices, or photographs, or other data compilations in any medium from which information can be obtained, including, but not limited to microfilms, magnetic tapes, electronic storage, computers, laptops, hard drives, thumb drives, personal digital assistants, smart phones and archives, and includes any other documents discoverable under Federal Rule of Civil Procedure 26, which are in your custody, possession, and/or control or to which you otherwise

have access. The term "document" *also includes* file and folder tabs associated with each of the aforementioned originals, copies, drafts, or versions. The term "document" also includes "communication" as defined herein.

7. <u>MF</u>. The term "MF" shall mean McClain Farms, Inc., a Kentucky corporation, and all officers, directors, members, employees, attorneys, agents, and representatives of the foregoing.

8. <u>MFY</u>. The term "MFY" shall mean McClain Feed Yards, Inc., a Texas corporation, and all officers, directors, members, employees, attorneys, agents, and representatives of the foregoing.

9. <u>McClain</u>. The term "McClain" shall mean Brian Keith McClain, aka Brian K. McClain, and also includes his agents, heirs, and representatives, including but not limited to his estate, his widow Chelsea McClain, his former spouse Crystal McClain, his daughter Meagan B. Goad, f/k/a Meagan B. Powell, and his daughter Kinsey Moreland.

10. <u>McClain Parties</u>. The term "McClain Parties" shall mean each and all of MF, MFY, 7M, and McClain, either individually or collectively as the context may require. For purposes of this subpoena, the term shall also include any collateral, property, or assets of the McClain Parties. It shall also include any representative or agent of the McClain Parties.

11. <u>Rabo</u>. The term "Rabo" shall mean Rabo AgriFinance LLC, and all officers, directors, members, employees, attorneys, agents, and representatives of the foregoing.

12. <u>Relevant Time Period</u>. The term "Relevant Time Period" shall mean the period from January 1, 2023, through the present.

13. <u>Tense</u>. The use of the present tense includes the present and past tense, and the use of the past tense includes the past and present tense.

14. <u>You/Your</u>. The terms "You" and/or "Your" means to person or entity to whom this subpoena is directed.

## **INSTRUCTIONS**

A. To the extent any Document Request in this subpoena seeks documents also covered by any other Document Request(s) to You, it is for purposes of completeness only, and should in no way be construed as limiting or otherwise narrowing any of the other Requests herein.

B. These Requests shall extend to all documents in the possession, custody, and/or control of You, as well as all documents in the possession, custody, or control of persons or entities under Your control or which You could reasonably gain access.

C. In the event that more than one copy of a documents exists, You should produce the original and each non-identical copy of each document or other tangible thing requested herein

that is in Your possession, custody or control, or the control of Your agents, attorneys, accountants, or employees, or to which You could reasonably gain access.

D. You should comply with the requirements of the Federal Rules of Civil Procedure regarding claims of privilege or protection of trial preparation materials.

E. These Requests shall be deemed continuing in nature to the fullest extent permitted by law. If further responsive information comes into the possession or attention of You or Your attorneys at any time during the course of this proceeding, such information must be provided as required by the Federal Rules of Civil Procedure.

## REQUESTED DOCUMENTS

1. All documents or electronically stored information concerning any cattle the McClain Parties purchased or acquired an interest in during the Relevant Time Period, including, but not limited to, documents that evidence the dates that the McClain Parties took possession of the cattle.

2. All documents or electronically stored information concerning any collateral inspections conducted by You during the Relevant Time Period at the McClain Parties' feed yards. This request includes, but is not limited to, inspection records evidencing the number, type, lot number, and/or details evidencing the ownership of the cattle located at the McClain Parties' feed yards.

3. All documents or electronically stored information concerning any cattle owned by third-parties that were fed by the McClain Parties during the Relevant Time Period.

4. All documents or electronically stored information concerning any feed yard (including, but not limited to, Cactus Feeders), auction service, or third party that purchased cattle from the McClain Parties during the Relevant Time Period.

5. All documents or electronically stored information of any purchases or sales of cattle by the McClain Parties, including, but not limited to, shipping records or other records concerning livestock sales, that were made, executed, delivered, or effective at any point during the Relevant Time Period.

6. All documents or electronically stored information that demonstrate the McClain Parties' ownership interest in any cattle located at the McClain Parties' feed yards at any point during the Relevant Time Period.

7. All documents or electronically stored information concerning the loads of cattle that, upon information and belief, were sold by the McClain Parties on April 18, 2023 to Cactus Feeders.

8. All documents or electronically stored information concerning any assets, including cattle, seized by Rabo and/or proceeds received by Rabo during the Relevant Time Period to satisfy any security interest or debt owed to it by the McClain Parties.

9. All documents or electronically stored information regarding any representations made by Rabo regarding the McClain Parties' ownership of cattle sold to Cactus Feeders and other third parties during the Relevant Time Period.

10. All documents or electronically stored information, including any pictures, of the cattle, including any images of brands on the cattle, that were sold to Cactus Feeders and other third parties during the Relevant Time Period.

11. All documents or electronically stored information and any reports or summaries detailing where the funds Rabo loaned to the McClain Parties were applied and to whom from January 2020 to April 28, 2023.

12. All documents and communications exchanged between You and the McClain Parties concerning cattle located at the McClain Parties' feed yards during the Relevant Time Period.

13. All documents and communications exchanged between You and Focus Management concerning cattle located at the McClain Parties' feed yards during the Relevant Time Period.

14. All documents and communications exchanged between You and Glenn Karlberg concerning cattle located at the McClain Parties' feed yards, during the Relevant Time Period.

15. All documents that form the basis of Rabo's purported perfected security interest in the cattle located at the McClain Parties' feed yards.

16. All documents or electronically stored information regarding any notifications or communications provided by Rabo to third-parties who had actual or potential ownership interests in the cattle located at the McClain Parties' feed yards regarding Rabo's purported perfected security interest in those cattle during the Relevant Time Period.

17. All documents or electronically stored information regarding any notifications or communications provided by Rabo to third-parties regarding the sale or liquidation of the cattle located at the McClain Parties' feed yards during the Relevant Time Period.

18. All documents or electronically stored information regarding Rabo's receipt and/or review of any checks made by the McClain Parties during the Relevant Time Period that were later dishonored by Mechanics Bank at the direction of Rabo.

## EXHIBIT B – FOCUS MANAGEMENT GROUP

## DEFINITIONS

1. <u>7M</u>. The term "7M" shall mean 7M Cattle Feeders, Inc, a Kentucky corporation, and all officers, directors, members, employees, attorneys, agents, and representatives of the foregoing.

2. <u>All/Each</u>. The terms "all" and "each" shall be construed as all and each.

3. <u>And/Or.</u> The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

4. <u>Communications</u>. The term "communications" shall be construed as broadly as possible, and shall include, but not be limited, to all e-mails, text messages, correspondence, memoranda, or other written documentation in any form.

5. <u>Concerning</u>. The term "concerning" means referring to, referencing, reflecting, in connection with, describing, evidencing, indicating, supporting or constituting, digesting, embodying, establishing, tending to establish, tending not to establish, comprising, commenting on, responding to, disagreeing with, showing, describing, analyzing, representing, constituting or including, in whole or in part.

6. <u>Documents or Electronically Stored Information</u>. The term "documents or electronically stored information" shall be synonymous in meaning and equal in scope to the usage of those terms in Rule 34 of the Federal Rules of Civil Procedure, and shall include, *without limitation*, any written, printed, electronic, typed, recorded, filmed, punched, transcribed, taped, or other graphic matter of any kind or nature however stored, produced, or reproduced, whether sent or received or neither, including the original, drafts, copies, and non-identical copies bearing notations or marks not found on the original, and includes, but is not limited to, all records, memoranda, reports, financial statements, handwritten and other notes, transcripts, paper, indices, electronic mail messages, electronic text messages, voicemail, word processing documents, spreadsheets, databases, calendars, telephone logs, contact manager information, internet usage files (including activity logs, records of internet and web browser generated files, history files, caches, and cookies), network access information, blogs, tweets, instant messages, letters, envelopes, telegrams, cables, telex messages, telephone messages, summaries or records of telephone conversations, summaries or records of personal conversations or interviews, summaries or records of meetings or conferences, minutes or transcripts or notations of meetings or telephone conversations or other communications of any type, tabulations, studies, analyses, evaluations, projections, work papers, statements, summaries, opinions, journals, desk calendars, appointment books, diaries, billing records, invoices, or photographs, or other data compilations in any medium from which information can be obtained, including, but not limited to microfilms, magnetic tapes, electronic storage, computers, laptops, hard drives, thumb drives, personal digital assistants, smart phones and archives, and includes any other documents discoverable under Federal Rule of Civil Procedure 26, which are in your custody, possession, and/or control or to which you otherwise

11

have access. The term "document" *also includes* file and folder tabs associated with each of the aforementioned originals, copies, drafts, or versions. The term "document" also includes "communication" as defined herein.

7. <u>MF</u>. The term "MF" shall mean McClain Farms, Inc., a Kentucky corporation, and all officers, directors, members, employees, attorneys, agents, and representatives of the foregoing.

8. <u>MFY</u>. The term "MFY" shall mean McClain Feed Yards, Inc., a Texas corporation, and all officers, directors, members, employees, attorneys, agents, and representatives of the foregoing.

9. <u>McClain</u>. The term "McClain" shall mean Brian Keith McClain, aka Brian K. McClain, and also includes his agents, heirs, and representatives, including but not limited to his estate, his widow Chelsea McClain, his former spouse Crystal McClain, his daughter Meagan B. Goad, f/k/a Meagan B. Powell, and his daughter Kinsey Moreland.

10. <u>McClain Parties</u>. The term "McClain Parties" shall mean each and all of MF, MFY, 7M, and McClain, either individually or collectively as the context may require. For purposes of this subpoena, the term shall also include any collateral, property, or assets of the McClain Parties. It shall also include any representative or agent of the McClain Parties.

11. <u>Rabo</u>. The term "Rabo" shall mean Rabo AgriFinance, LLC, and all officers, directors, members, employees, attorneys, agents, and representatives of the foregoing.

12. <u>Relevant Time Period</u>. The term "Relevant Time Period" shall mean the period from January 1, 2023, through the present.

13. <u>Tense</u>. The use of the present tense includes the present and past tense, and the use of the past tense includes the past and present tense.

14. <u>You/Your</u>. The terms "You" and/or "Your" means to person or entity to whom this subpoena is directed.

## INSTRUCTIONS

A. To the extent any Document Request in this subpoena seeks documents also covered by any other Document Request(s) to You, it is for purposes of completeness only, and should in no way be construed as limiting or otherwise narrowing any of the other Requests herein.

B. These Requests shall extend to all documents in the possession, custody, and/or control of You, as well as all documents in the possession, custody, or control of persons or entities under Your control or which You could reasonably gain access.

C. In the event that more than one copy of a documents exists, You should produce the original and each non-identical copy of each document or other tangible thing requested herein

that is in Your possession, custody or control, or the control of Your agents, attorneys, accountants, or employees, or to which You could reasonably gain access.

D.  You should comply with the requirements of the Federal Rules of Civil Procedure regarding claims of privilege or protection of trial preparation materials.

E.  These Requests shall be deemed continuing in nature to the fullest extent permitted by law. If further responsive information comes into the possession or attention of You or Your attorneys at any time during the course of this proceeding, such information must be provided as required by the Federal Rules of Civil Procedure.

## REQUESTED DOCUMENTS

1.  All documents or electronically stored information concerning any cattle the McClain Parties purchased or acquired an interest in during the Relevant Time Period, including, but not limited to, documents that evidence the dates that the McClain Parties took possession of the cattle.

2.  All documents or electronically stored information concerning any collateral inspections conducted by You during the Relevant Time Period at the McClain Parties' feed yards. This request includes, but is not limited to, inspection records evidencing the number, type, lot number, and/or details evidencing the ownership of the cattle located at the McClain Parties' feed yards.

3.  All documents or electronically stored information concerning any cattle owned by third-parties that were fed by the McClain Parties during the Relevant Time Period.

4.  All documents or electronically stored information concerning any feed yard (including, but not limited to, Cactus Feeders), auction service, or third party that purchased cattle from the McClain Parties during the Relevant Time Period.

5.  All documents or electronically stored information of any purchases or sales of cattle by the McClain Parties, including, but not limited to, shipping records or other records concerning livestock sales, that were made, executed, delivered, or effective at any point during the Relevant Time Period.

6.  All documents or electronically stored information that demonstrate the McClain Parties' ownership interest in any cattle located at the McClain Parties' feed yards at any point during the Relevant Time Period.

7.  All documents or electronically stored information concerning the loads of cattle that, upon information and belief, were sold by the McClain Parties on April 18, 2023 to Cactus Feeders.

8. All documents or electronically stored information concerning any assets, including cattle, seized by Rabo and/or proceeds received by Rabo during the Relevant Time Period to satisfy any security interest or debt owed to it by the McClain Parties.

9. All documents or electronically stored information regarding any representations made by Rabo regarding the McClain Parties' ownership of cattle sold to Cactus Feeders and other third parties during the Relevant Time Period.

10. All documents or electronically stored information, including any pictures, of the cattle, including any images of brands on the cattle, that were sold to Cactus Feeders and other third parties during the Relevant Time Period.

11. All documents and communications exchanged between You and the McClain Parties concerning cattle located at the McClain Parties' feed yards during the Relevant Time Period.

12. All documents and communications exchanged between You and Rabo concerning cattle located at the McClain Parties' feed yards during the Relevant Time Period.

13. All documents and communications exchanged between You and Glenn Karlberg concerning cattle located at the McClain Parties' feed yards, during the Relevant Time Period.

# EXHIBIT C – GLENN KARLBERG

## DEFINITIONS

1. <u>7M</u>. The term "7M" shall mean 7M Cattle Feeders, Inc, a Kentucky corporation, and all officers, directors, members, employees, attorneys, agents, and representatives of the foregoing.

2. <u>All/Each</u>. The terms "all" and "each" shall be construed as all and each.

3. <u>And/Or.</u> The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

4. <u>Communications</u>. The term "communications" shall be construed as broadly as possible, and shall include, but not be limited, to all e-mails, text messages, correspondence, memoranda, or other written documentation in any form.

5. <u>Concerning</u>. The term "concerning" means referring to, referencing, reflecting, in connection with, describing, evidencing, indicating, supporting or constituting, digesting, embodying, establishing, tending to establish, tending not to establish, comprising, commenting on, responding to, disagreeing with, showing, describing, analyzing, representing, constituting or including, in whole or in part.

6. <u>Documents or Electronically Stored Information</u>. The term "documents or electronically stored information" shall be synonymous in meaning and equal in scope to the usage of those terms in Rule 34 of the Federal Rules of Civil Procedure, and shall include, *without limitation*, any written, printed, electronic, typed, recorded, filmed, punched, transcribed, taped, or other graphic matter of any kind or nature however stored, produced, or reproduced, whether sent or received or neither, including the original, drafts, copies, and non-identical copies bearing notations or marks not found on the original, and includes, but is not limited to, all records, memoranda, reports, financial statements, handwritten and other notes, transcripts, paper, indices, electronic mail messages, electronic text messages, voicemail, word processing documents, spreadsheets, databases, calendars, telephone logs, contact manager information, internet usage files (including activity logs, records of internet and web browser generated files, history files, caches, and cookies), network access information, blogs, tweets, instant messages, letters, envelopes, telegrams, cables, telex messages, telephone messages, summaries or records of telephone conversations, summaries or records of personal conversations or interviews, summaries or records of meetings or conferences, minutes or transcripts or notations of meetings or telephone conversations or other communications of any type, tabulations, studies, analyses, evaluations, projections, work papers, statements, summaries, opinions, journals, desk calendars, appointment books, diaries, billing records, invoices, or photographs, or other data compilations in any medium from which information can be obtained, including, but not limited to microfilms, magnetic tapes, electronic storage, computers, laptops, hard drives, thumb drives, personal digital assistants, smart phones and archives, and includes any other documents discoverable under Federal Rule of Civil Procedure 26, which are in your custody, possession, and/or control or to which you otherwise

have access. The term "document" *also includes* file and folder tabs associated with each of the aforementioned originals, copies, drafts, or versions. The term "document" also includes "communication" as defined herein.

      7.      <u>MF</u>. The term "MF" shall mean McClain Farms, Inc., a Kentucky corporation, and all officers, directors, members, employees, attorneys, agents, and representatives of the foregoing.

      8.      <u>MFY</u>. The term "MFY" shall mean McClain Feed Yards, Inc., a Texas corporation, and all officers, directors, members, employees, attorneys, agents, and representatives of the foregoing.

      9.      <u>McClain</u>. The term "McClain" shall mean Brian Keith McClain, aka Brian K. McClain, and also includes his agents, heirs, and representatives, including but not limited to his estate, his widow Chelsea McClain, his former spouse Crystal McClain, his daughter Meagan B. Goad, f/k/a Meagan B. Powell, and his daughter Kinsey Moreland.

      10.      <u>McClain Parties</u>. The term "McClain Parties" shall mean each and all of MF, MFY, 7M, and McClain, either individually or collectively as the context may require. For purposes of this subpoena, the term shall also include any collateral, property, or assets of the McClain Parties. It shall also include any representative or agent of the McClain Parties.

      11.      <u>Rabo</u>. The term "Rabo" shall mean Rabo AgriFinance, LLC, and all officers, directors, members, employees, attorneys, agents, and representatives of the foregoing.

      12.      <u>Relevant Time Period</u>. The term "Relevant Time Period" shall mean the period from January 1, 2023, through the present.

      13.      <u>Tense</u>. The use of the present tense includes the present and past tense, and the use of the past tense includes the past and present tense.

      14.      <u>You/Your</u>. The terms "You" and/or "Your" means to person or entity to whom this subpoena is directed.

## INSTRUCTIONS

      A.      To the extent any Document Request in this subpoena seeks documents also covered by any other Document Request(s) to You, it is for purposes of completeness only, and should in no way be construed as limiting or otherwise narrowing any of the other Requests herein.

      B.      These Requests shall extend to all documents in the possession, custody, and/or control of You, as well as all documents in the possession, custody, or control of persons or entities under Your control or which You could reasonably gain access.

      C.      In the event that more than one copy of a documents exists, You should produce the original and each non-identical copy of each document or other tangible thing requested herein

that is in Your possession, custody or control, or the control of Your agents, attorneys, accountants, or employees, or to which You could reasonably gain access.

D. You should comply with the requirements of the Federal Rules of Civil Procedure regarding claims of privilege or protection of trial preparation materials.

E. These Requests shall be deemed continuing in nature to the fullest extent permitted by law. If further responsive information comes into the possession or attention of You or Your attorneys at any time during the course of this proceeding, such information must be provided as required by the Federal Rules of Civil Procedure.

## REQUESTED DOCUMENTS

1. All documents or electronically stored information concerning any cattle the McClain Parties purchased or acquired an interest in during the Relevant Time Period, including, but not limited to, documents that evidence the dates that the McClain Parties took possession of the cattle.

2. All documents or electronically stored information concerning any collateral inspections conducted by You during the Relevant Time Period at the McClain Parties' feed yards. This request includes, but is not limited to, inspection records evidencing the number, type, lot number, and/or details evidencing the ownership of the cattle located at the McClain Parties' feed yards.

3. All documents or electronically stored information concerning any cattle owned by third-parties that were fed by the McClain Parties during the Relevant Time Period.

4. All documents or electronically stored information concerning any feed yard (including, but not limited to, Cactus Feeders), auction service, or third party that purchased cattle from the McClain Parties during the Relevant Time Period.

5. All documents or electronically stored information of any purchases or sales of cattle by the McClain Parties, including, but not limited to, shipping records or other records concerning livestock sales, that were made, executed, delivered, or effective at any point during the Relevant Time Period.

6. All documents or electronically stored information that demonstrate the McClain Parties' ownership interest in any cattle located at the McClain Parties' feed yards at any point during the Relevant Time Period.

7. All documents or electronically stored information concerning the loads of cattle that, upon information and belief, were sold by the McClain Parties on April 18, 2023 to Cactus Feeders.

8. All documents or electronically stored information concerning any assets, including cattle, seized by Rabo and/or proceeds received by Rabo during the Relevant Time Period to satisfy any security interest or debt owed to it by the McClain Parties.

9. All documents or electronically stored information regarding any representations made by Rabo regarding the McClain Parties' ownership of cattle sold to Cactus Feeders and other third parties during the Relevant Time Period.

10. All documents or electronically stored information, including any pictures, of the cattle, including any images of brands on the cattle, that were sold to Cactus Feeders and other third parties during the Relevant Time Period.

11. All documents and communications exchanged between You and the McClain Parties concerning cattle located at the McClain Parties' feed yards during the Relevant Time Period.

12. All documents and communications exchanged between You and Rabo concerning cattle located at the McClain Parties' feed yards during the Relevant Time Period.

13. All documents and communications exchanged between You and Focus Management concerning cattle located at the McClain Parties' feed yards, during the Relevant Time Period.

14. All documents or electronically stored information regarding any notifications or communications provided by You to third-parties regarding the sale or liquidation of the cattle located at the McClain Parties' feed yards during the Relevant Time Period.

14. All documents or electronically stored information regarding Your receipt and/or review of any checks made by the McClain Parties during the Relevant Time Period that were later dishonored by Mechanics Bank at the direction of Rabo.