IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| IN RE: | § § § § | |
| MCCLAIN FEED YARD, INC., et al.,[1] | § § § § § § | CASE NO. 23-20084-RLJ-7 |
| Debtors. | § | Jointly Administered |

**THE TRUSTEE'S MOTION TO COMPEL PRODUCTION OF
DOCUMENTS FROM RABO AGRIFINANCE AND FOCUS MANAGEMENT**

TO THE HONORABLE ROBERT L. JONES, BANKRUPTCY JUDGE:

Kent Ries, the Trustee of the referenced Chapter 7 bankruptcy cases (the "Bankruptcy Cases"), files this Motion to Compel Production of Documents from Rabo Agrifinance LLC and Focus Management Group USA, Inc. (the "Motion").

## I.   INTRODUCTION

Rabo is the Debtors' secured creditor with an alleged claim of $53MM. The Trustee believes Rabo has important documents related to the Debtors' finances and cattle trading operations—which appear to have been a massive Ponzi scheme. These documents include internal or external communications, financial analyses, and reports about the Debtors – including during times that Rabo purportedly exercised control over the Debtors' funds pursuant to a Deposit Account Control Agreement and also pre-petition when Rabo (including its various consultants including Focus) performed substantial analysis of the Debtors' finances and took control over

---

[1] The Debtors in these Chapter 7 cases are: McClain Feed Yard, Inc. (Case No. 23-20084-RLJ), McClain Farms, Inc. (Case No. 23-20085-RLJ), and 7M Cattle Feeders, Inc. (Case No. 23-20086-RLJ).

Page **1** of **18**

virtually all of the Debtors physical and electronic records. These documents are probative of not only the Debtors' pre-petition financial affairs generally, but also potential claims against Rabo and/or other third parties stemming from their knowledge of various aspects of the Debtors' operations and control over property. Rabo refuses to produce such documents—instead lodging meritless objections. Because such objections have no support, the Court should overrule Rabo's objections and compel it to produce the documents.

## II. CASE SUMMARY

1. The Debtors filed for relief under Chapter 7 of the United States Bankruptcy Code on April 28, 2023 (the "Petition Date"). Kent Ries was subsequently appointed and qualified to serve as the Trustee over the bankruptcy estate.

2. Each of the Debtors operated a cattle feedlot and/or growyard. McClain Feed Yard, Inc. ("MFY") owned real property outside of Hereford, Texas; McClain Farms, Inc. ("MF") leased real property in Kentucky; and 7M Cattle Feeders, Inc. ("7M") owned real property outside of Friona, Texas (collectively, the "Debtors").

3. The Debtors' business operations have significant overlap, including one major secured creditor (Rabo AgriFinance LLC) whose alleged claim exceeds $53,000,000.00 pursuant to its recent motion for relief from the automatic stay. Rabo claims cross-collateralization and a blanket lien on substantially all of the Debtors' assets. Further, many of the same vendors, customers and investors did business with all three Debtors. Finally, the owner of all three Debtor entities was Brian McClain.

4. All of the Debtors' business operations were shut down prior to their bankruptcy filings. All cattle and other livestock were apparently sold by the Debtors or removed by their alleged owners' pre-petition.

5.      As discussed in prior pleadings, based upon the Trustee's investigation thus far, the Debtors' prebankruptcy operations appear to have constituted a massive fraud involving two cattle operations in Texas (Hereford and Friona) and one in Benton, Kentucky. The asserted unpaid claims exceed $175M so far, and the Debtors' records show several hundred million dollars flowing through the Debtors in the 3 years before bankruptcy. These cases will involve over 100 parties and their attorneys based upon the service list thus far.

6.      The Debtors' owner, Mr. McClain, committed suicide on April 18, 2023, less than 2 weeks after the appointment of a Chief Restructuring Officer that was investigating the Debtors' financial affairs. The Trustee's investigation thus far, including with the assistance of the pre-bankruptcy CRO, has been considerable and will be ongoing for some time due to, among other things, the Debtors' poor and unreliable records.

7.      It appears that the Debtors' cattle operations included at least some actual cattle transactions whereby, in some instances, the Debtors' purchased cattle ("Cattle Purchases"), and in other instances, took possession of third-parties' cattle for the Debtors' to fatten/grow prior to sale ("Feed Yard Services"). In addition to Cattle Purchases and Feed Yard Services, it appears that Mr. McClain also raised money from many "investors" pursuant to "partnership agreements" whereby the "investors" would advance funds to one of the Debtors to "purchase" unspecified cattle from the Debtor (that were purportedly already under a contract for sale in the future at a higher weight and price), the Debtor would continue to hold and feed the cattle at its expenses, and the investor and applicable Debtor intended to split the later profit 1/3 to the Debtor and 2/3 to the investor (the "Partnership Agreements").

8.      Over 100 claimants have asserted claims exceeding $100 million with the United States Department of Agriculture ("USDA") under the Dealer Trust Statute for allegedly unpaid

amounts for Cattle Purchases, cattle that were dropped off for Feed Yard Services, investments under the Partnership Agreement, and possibly other transactions not yet specified by the claimants. Additionally, upon belief many of these claimants and possibly other parties ostensibly "reclaimed" millions of dollars of cattle in the chaotic period following Mr. McClain's death.

9. The Trustee has spent considerable time and resources investigating the Debtors' pre-bankruptcy financial affairs, and the investigation is ongoing. Based upon his investigation thus far, the Trustee believes that the Debtors' estates may have claims against investors, lenders, and other agricultural entities.

### III. RABO AND FOCUS

9. Rabo was the Debtors' lender who provided revolving lines of credit that apparently "auto-swept" the Debtors' deposit accounts daily. Rabo accomplished its auto-sweeping through Deposit Account Control Agreements ("DACAs") that purportedly allowed Rabo to control—and assert liens on—the Debtors' funds at Mechanics Bank and Community Financial Services Bank.

10. As the Court is aware, the Debtors transacted over $100 million through Rabo and other banks each month. Before the Petition Date, Rabo became concerned about the legitimacy of the Debtors' cattle trading operations. Rabo thus required more reporting from the Debtors and more inspections. Rabo discovered that the Debtors had far less cattle than reported to Rabo.

11. Rabo hired Focus Management Group USA, Inc. ("Focus") as a consultant. Rabo also hired Steve Dawson ("Dawson") to perform forensic accounting of the Debtors, and possibly other third party consultants. The Trustee believes Rabo retained other parties to help it investigate the Debtors' activities. As part of that investigation, Rabo instructed the Debtors to hire Karlberg as their CRO in March of 2023 in an effort to try to avoid bankruptcy.

12. Contemporaneous with McClain's death in April 2023, Karlberg (Rabo's chosen CRO) authorized Rabo via Focus to take possession of all of the Debtors' physical and electronic records and move same to Focus' Chicago office. Focus has purportedly since provided the Debtors' records to the Trustee through an electronic download link and turnover of the physical records and computers. .

13. Rabo has provided the Trustee with a copy of the loan documents attached to its Proof of Claim, the Debtors' payment history, and certain borrowing base reports for the Debtors. But Rabo has not yet confirmed that **_all_** of the relevant loan documents are enclosed in its Proof of Claim or have been otherwise provided to the Trustee.

14. Rabo has also declined to produce to the Trustee internal or external communications, financial analyses, and reports about the Debtors—regardless of whether those documents originate from Rabo or others. Notwithstanding the Trustee's inquiries, Rabo has refused to confirm that its previously produced documents constitute all responsive material for each named category. The Trustee believes Rabo is withholding important documents about the Debtors that are necessary for a final resolution of the Bankruptcy Cases.

15. The Trustee has attempted to obtain the missing documents from Rabo and Focus for approximately one year. In August 2023, the Trustee requested additional documents and information from Rabo and Focus.[2] Neither Rabo nor Focus gave the Trustee the documents necessary to understand the Debtors' transactions. The Trustee obtained a court Order on Rule 2004 Examination that authorized the Trustee to subpoena Rabo and Focus. The Trustee

---

[2] A true and correct copy of the relevant e-mail exchange is attached as Exhibit A (**APP002–003**).

subpoenaed Rabo and Focus on May 10, 2024.[3] Rabo and Focus accepted service of the Trustee's Subpoena through authorized representatives.[4]

16. Despite the Trustee's best efforts to collaborate with Rabo and Focus, the Trustee has been unable to obtain documents essential to proper disposition of the Bankruptcy Cases. For example, Rabo asserted sweeping privilege objections in an attempt to shield its cache of pre- and post-bankruptcy communications about the Debtors—including those with Focus and Dawson—from the Trustee.[5] But Rabo has refused to provide the Trustee with a privilege log so the Trustee can evaluate the propriety of Rabo's privilege claims.[6] And Focus refused to produce any documents or information in response to the Trustee's authorized Subpoena.[7]

17. Because the Debtors' records are poorly kept and incomplete, the Trustee must rely on third party discovery to more fully understand the Debtors' transactions, including the identities of parties involved with transfers from and to the Debtors.

18. The Trustee requests that the Court overrule Rabo's and Focus's meritless discovery objections, order the immediate production of responsive documents, and award the Trustee his attorney's fees and costs incurred in connection with this unnecessary dispute.

---

[3] True and correct copies of Trustee's subpoenas to Rabo and Focus are attached as Exhibits B and C (**APP005–012, APP017–024**).
[4] True and correct copies of the relevant e-mail exchanges with counsel for Rabo and Focus are attached as Exhibits D and E (**APP029–030**; **APP032–033**).
[5] *See* Rabo's First and Fourth Objections to Trustee's Subpoena. A true and correct copy of Rabo's Objections and Responses to Trustee's Subpoena is attached as Exhibit F (**APP035–039**).
[6] *See id*. (**APP035–039**).
[7] *See* Focus's Objections and Responses to Trustee's Subpoena. A true and correct copy of this document is attached as Exhibit G (**APP041–045**).

## IV. ARGUMENT AND AUTHORITIES

18. The Trustee's discovery requests to Rabo and Focus are narrowly tailored to documents about the Debtors, their affiliates, and their transactions. Rabo and Focus have responded with generic discovery objections that overstate privilege protections.

19. The Trustee has previously briefed the types of transactions and claims under investigation.[8] That briefing shows why it is important that the Trustee obtain the financial analysis documents beyond that already provided by Rabo and Focus.[9] And the Trustee's discussion of the Bankruptcy Case illustrates why the Court must reject the conclusory discovery objections made by Rabo and Focus absent evidence.[10] For example, Rabo's liens might be invalid or subject to subordination due to its implicit (or otherwise) participation in the Debtors' fraudulent conduct or Rabo's lack of due diligence. And the interest or principal payments Rabo received due to a Ponzi scheme may be subject to fraudulent transfer claims. The Trustee asks the Court to overrule the objections of Rabo and Focus and order immediate production.

### A. Neither Rabo nor Focus properly invoked privilege as a basis to avoid production to the Trustee.

20. Rabo responded to the Trustee's Subpoena with a generic privilege objection.[11] Such unparticularized objections are legally insufficient under Federal Rule of Civil Procedure 26(b)(5)(A)(i)–(ii). That rule requires all parties who withhold documents and information on privilege grounds to "expressly make the claim" and describe the withheld materials in a manner that "will enable other parties to assess the claim" of privilege.[12] Rabo's privilege objection must be overruled for lack of a legally sufficient privilege log.

---

[8] ECF No. 195.
[9] *See generally id.*
[10] *See generally id.*
[11] Ex. F (General Objection Nos. 1, 4) (**APP035, 037**).
[12] *Heller v. City of Dallas*, 303 F.R.D. 466, 475 (N.D. Tex. 2014).

21. In overruling Rabo's meritless privilege objection, this Court should note the seminal *Heller v. City of Dallas* case about discovery disputes. There, Judge Horan rebuked a party because it "asserted a general objection for privileged or proprietary information, yet [the resisting party] d[id] not explain (in a privileged document log or otherwise) what, if any, information was withheld."[13] Judge Horan then explained that, "[t]o comply with the requirements to support withholding any responsive document or information as privileged or protected work product, a privilege log or equivalent document complying with Federal Rule of Civil Procedure 26(b)(5)(A)'s requirements must be produced" for all withheld material.[14]

22. *City of Dallas* does not stand alone on the privilege log issue. In *Rogge v. Bandera Falls Property Owner's Association*,[15] the Western District of Texas concluded that a resisting party's "reliance on the attorney-client privilege fails because [the party] failed to provide a privilege log pursuant to Fed. R. Civ. P. 26(b)(5), which would enable this Court to assess the nature of the documents, communications, or tangible things not produced. Failure to provide a privilege log waives this privilege." Those cases favor overruling Rabo's privilege objection.

23. Focus's privilege objection fares no better. The essence of Focus's three-page-long privilege objection is that Rabo and its counsel retained Focus as a consulting expert for "matters dealing with the Debtors."[16] Focus also asserts a generic privilege objection unaccompanied by a privilege log.[17]

---

[13] *Id*. at 483, 485.
[14] *Id*. at 486.
[15] No. SA-07-CV-996-OLG, 2009 WL 10713559, at *3 (W.D. Tex. Aug. 11, 2006) (citing *Burlington Northern & Santa Fe Railway Co. v. Kapsner*, 408 F.3d 1142, 1149 (9th Cir. 2005)).
[16] Ex. G 1–3 (**APP041–043**).
[17] Ex. G at 3 (Objection No. 1) (**APP043**).

24. Even setting aside Focus's fatal failure to supply a privilege log, this Court must overrule Focus's privilege objection because Focus independently misunderstands the scope of the applicable legal privilege.

25. The *LifeScan, Inc. Smith Roche Diagnostics Corporation v. Smith* case from the District of New Jersey is instructive.[18] That matter involved a diversion of profits via a fraudulent reimbursement scheme involving pharmacy benefit plans.[19] The plaintiff alleged that one of the debtor's primary creditors—Zion Bancorporation S.A.—"knowingly and deliberately supported this scheme."[20] As part of that scheme, Zion loaned tens of millions of dollars to the debtor just three years before the debtor filed for Chapter 11 bankruptcy. Two months before the debtor's bankruptcy filing, Zion hired a forensic accounting firm called Rocky Mountain Advisory ("RMA") to provide services in connection with the debtor. RMA provided consulting services to Zion before and after the debtor filed its bankruptcy petition.[21]

26. Upon discovering RMA's involvement, the plaintiff requested discovery of certain RMA documents related to the debtor. RMA and Zion rebuffed this request by asserting privilege objections and producing a privilege log.[22] The plaintiff moved to compel production of "privileged" material.[23]

27. The District of New Jersey conclusively resolved in the plaintiff's favor the issue of whether "communications between a party and consultants retained to perform certain work in the broad context of litigation should be protected by the attorney-client privilege and/or the

---

[18] Civil Action Nos. 17-5552, 19-8761-CCC-JSA, 2023 WL 7089249 (D.N.J. Feb. 15, 2023).
[19] *Id*. at *1.
[20] *Id*.
[21] *Id*.
[22] *Id*.
[23] *Id*. at *2.

attorney work product doctrine."[24] In doing so, the court rejected Zion's argument that RMA "was employed to provide assistance to its attorneys as to a legal issue" relevant to the plaintiff's case.[25]

28. At the outset, the District of New Jersey specified that, "while legal advice given to a client by an attorney is protected by . . . privilege, business advice generally is not."[26] The legal "privilege does not apply simply because a statement was made to an attorney and the fact that an attorney is copied on emails does not prove a document is privileged."[27] And "communications amongst corporate or company personnel do not become privileged because in-house or outside counsel are copied."[28] Besides, the work product privilege extends to only those documents prepared exclusively in anticipation of future litigation and for no other purpose.[29]

29. Applying those basic principles, the District of New Jersey determined that RMA's documents were not privileged. Those documents "reflect[ed] a creditor's concerns with the financial stability of a debtor (Alliance). RMA appears to have been hired to explore [related] issues, obtain information and report back to Zions as to its findings. The communications also reflect that RMA was in direct contact with Alliance and its employees."[30] Ultimately, "retention of a third-party forensic accountant (RMA) to act as a consultant and analyze the financial viability of a creditor constitutes action taken in the ordinary course of business," so related documents and communications do not fall within the scope of any privilege.[31]

30. The District of New Jersey **_granted_** the plaintiff's motion to compel. Zion and RMA were ordered immediately to produce all documents and communications created during

---

[24] *Id*. at *4.
[25] *Id*.
[26] *Id*. at *5.
[27] *Id*.
[28] *Id*.
[29] *Id*.
[30] *Id*. at *7.
[31] *Id*.

their evaluation of the debtor's financial condition and necessary next steps.[32] *Lifescan* thus confirms that bank or consultant documents containing analysis of third parties are not privileged in any sense.

31. Like Zion and RMA, Rabo and Focus are trying to protect as privileged their analysis of—and discussions about—struggling third-party borrowers and their various counterparties. Rabo and Focus similarly want to withhold documents and communications reflecting their pre-bankruptcy actions in connection with the Debtors' failure. Those actions include, but are not limited to, Rabo's decision to continue funding the Debtors' operations, Rabo's analyses of the Debtors' operations and collateral, and Rabo honoring or rejecting the Debtors' checks and wires under its DACA with Mechanics Bank. This Court should apply the reasoning of *Lifescan* by rejecting the privilege claimed by Rabo and Focus, and ordering immediate production of Focus documents generated in connection with the Debtors' financial condition and operations.

32. In applying *Lifescan*, this Court should note that Zion and RMA had a business relationship ***identical*** to the relationship between Rabo and Focus—a bank retaining a consulting firm to give business advice about a troubled borrower. Rabo and Focus cannot distinguish *Lifescan* in a futile attempt to evade their discovery obligations.

> **B. Rabo and Focus cannot resist the Trustee's subpoena through their "unduly burdensome" objections.**

33. Unsatisfied with their groundless privilege objections, Rabo and Focus objected to the Trustee's subpoena as unduly burdensome.[33] That objection makes no sense because it is based—not on any burden to Rabo or Focus—but on a groundless assertion that the Trustee already

---

[32] *Id.* at *7–*8. A true and correct copy of the *Lifescan* order is attached as Exhibit H (**APP047–053**).
[33] Ex. F (General Objection Nos. 2, 3, 4, 6) (**APP036–037**); Ex. G (General Objection Nos. 2, 3, 4, 6) (**APP043–044**).

has the relevant materials. The Trustee's purported custody of documents does not establish any burden on Rabo or Focus. This Court must reject the efforts of Rabo and Focus to draw a false equivalence between the Trustee's possession of documents and "burden" on Rabo and Focus.

34. Moreover, "[a] party resisting discovery must show specifically how each interrogatory or document request is overly broad, unduly burdensome, or oppressive" to sustain such an objection.[34] That rule "requires the party resisting discovery to show how the requested discovery was overly broad, unduly burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden."[35] Failure to carry this high burden, "as a general matter, makes such an unsupported objection nothing more than unsustainable boilerplate."[36] An attorney's *ipse dixit* claim of undue burden is legally insufficient under the Federal Rules of Civil Procedure.[37]

35. Rabo and Focus failed to provide a single shred of evidence to verify their assertion that compliance with the Trustee's Subpoena is unduly burdensome. That objection must be overruled. "Despite this District's well established authority on the level of detail needed to support an undue burden objection," Rabo and Focus "did not submit an affidavit or otherwise attempt to describe how" The Trustee's Subpoenas are "unduly burdensome in terms of time, expense, or procedure."[38] Put simply, Rabo and Focus gave "the Court with no information about the burden involved in responding to these discovery requests" from the Trustee.[39]

36. Even setting aside the lack of evidence, Rabo and Focus cannot prevail on a spurious claim that compliance with the Trustee's subpoena will require Rabo and Focus to: (a)

---

[34] *City of Dallas*, 303 F.R.D. at 490.
[35] *Id*.
[36] *Id*.
[37] *See id*.
[38] *Id*.
[39] *Id*.

search several years' worth of documents; (b) create written discovery responses; and (c) generate a privilege log.[40] Their discovery objections do not definitively say that any relevant records are in fact inaccessible due to age. Indeed, Rabo and Focus should have document retention periods that automatically preserve their files for a set number of years. Nor do Rabo and Focus articulate a factual or legal basis for their position that the expense of document collection, written discovery responses, and a privilege log is disproportionate such that compensation from the Trustee would be warranted.

### C. Overbreadth does not help Rabo or Focus.

37. Beyond privilege and undue burden, Rabo and Focus asserted virtually identical overbreadth and proportionality objections.[41] Once again, that objection of Rabo and Focus is inapt. "If a discovery request is overbroad, the responding party must, to comply with Rule 33 or Rule 34, explain the extent to which it is overbroad and answer or respond to the extent that it is not—and explain the scope of what" the party is "answering or responding to" in discovery.[42] Neither Rabo nor Focus supplied the requisite level of detail needed to sustain an overbreadth or proportionality objection in this Court. Those objections must be overruled as "boilerplate objections made without Defendant's counsel pausing and considering whether, based on a reasonable inquiry, there is a factual basis for an objection."[43]

### D. Confidentiality is not a basis for non-compliance.

38. In yet another attempt to frustrate the Trustee's discovery efforts, Rabo and Focus rely on disclosure of allegedly confidential information as a reason to disregard the Trustee's Subpoenas.[44] But "[c]onfidentiality does not act as a *per se* bar to disclosure or constitute grounds

---

[40] Ex. F (General Objection No. 4) (**APP037**); Ex. G (General Objection No. 4) (**APP044**).
[41] *Compare* Ex. F (General Objection No. 3 (**APP036**)) *with* Ex. G (General Objection No. 3 (**APP044**)).
[42] *City of Dallas*, 303 F.R.D. at 488.
[43] *See id.*
[44] Ex. F (General Objection No. 5) (**APP037**); Ex. G (General Objection No. 5) (**APP044**).

to withhold documents from discovery."[45] It is true that this Court can enter a protective order.[46] Yet the discovery objections served by Rabo and Focus do not cite any pending requests for entry of a protective order in the Bankruptcy Cases.[47] Further, parties "seeking a Rule 26(c) protective order prohibiting document production must establish good cause and a specific need for protection."[48] The conclusory claims of Rabo and Focus about as-yet unidentified "confidential information" do "not come close to the particular and specific demonstration of fact required to satisfy the burden of establishing the need for a protective order."[49]

### E. Rabo and Focus misapply the relevance standard.

39. The ensuing discovery objection presented by Rabo and Focus is about relevance and proportionality.[50] But those objections have no factual or legal basis. This Court must overrule the relevance objection of Rabo and Focus.

40. In *Heller v. City of Dallas*, Judge Horan emphasized that "simply objecting to requests as overly broad, unduly burdensome, oppressive, and irrelevant, without showing specifically how each request is not relevant or how each question is overly broad, burdensome, or oppressive, is inadequate to voice a successful objection."[51] Indeed, "failure to particularize" relevance objections as directed by the Federal Rules of Civil Procedure, "leads to one of two conclusions: either the responding parties lacked a factual basis to make the objections that they did, which would violate Rule 26(g), or they complied with Rule 26(g), made a reasonable inquiry before answering and discovered facts that would support a legitimate objection, but they were

---

[45] *Hunsinger v SKO Brenner Am., Inc.*, No. 3:13-CV-0988-D, 2014 WL 114348, at *2 (N.D. Tex. Jan. 9, 2014).
[46] *Id*.
[47] *Id*.
[48] *Id*. (cleaned up).
[49] *Id*.
[50] Ex. F (General Objection No. 6) (**APP037**); Ex. G (General Objection No. 6) (**APP044**).
[51] 303 F.R.D. at 483–84.

waived for failure to specify them as required."[52] Rabo and Focus have—at best—waived their relevance objections for lack of specificity.[53]

41. Moreover, relevance is liberally construed under federal discovery rules. "Relevant information includes any matter that bears on, or that reasonably could lead to other material that could bear on, any issue that is or may be in the case."[54] As such, "[i]n the discovery context, relevance is broadly construed, and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party."[55] To assert a relevance objection, the responding party must "make a specific objection explaining how and to what extent the requested documents or information are not relevant and discoverable."[56] Rabo and Focus entirely failed to satisfy that requirement.

### F. The "scope" of Bankruptcy Rule 2004 is unexplained.

42. In their penultimate discovery objections, Rabo and Focus protest "the Subpoena to the extent it seeks information beyond the scope of permissible discovery authorized by Federal Rule of Bankruptcy Procedure 2004."[57] Because neither Rabo nor Focus give additional analysis, the instant objection is waived for want of particularity and must be overruled.[58] Rabo and Focus's objections give this Court zero insight into how—or why—the Trustee's Subpoenas allegedly exceed the scope of Rule 2004 discovery, which is the bare minimum for a successful objection.

---

[52] *Id*. at 484.
[53] *See id*.
[54] *Hunsinger*, 2014 WL 114348, at *1 (cleaned up).
[55] *Id*. (cleaned up).
[56] *City of Dallas*, 303 F.R.D. at 489.
[57] Ex. F (General Objection No. 7) (**APP037**); Ex. G (General Objection No. 7) (**APP045**).
[58] *See City of Dallas*, 303 F.R.D. at 484.

### G. The Trustee's Subpoenas do not exceed the applicable Rules of Civil Procedure, Bankruptcy Rules, or Orders issued by this Court.

43. Rabo and Focus end their discovery responses with a threadbare objection that the Trustee's Subpoenas impose "responsibility" beyond that prescribed by the Federal Rules of Civil Procedure, Bankruptcy Rules, and this Court's Orders.[59] Once again, Rabo and Focus decline to offer any factual or legal justification for this objection to the Trustee's Subpoenas. Rabo and Focus do not even attempt to identify the relevant Federal Rules, explain how they limit the discovery available to the Trustee, and reconcile the Subpoenas against the zone of permitted discovery. Such analysis is required to demonstrate that the Trustee overstepped his authority. Because Rabo and Focus forewent that discussion, the Court must overrule their final objection.

### V. CONCLUSION AND PRAYER FOR RELIEF

44. For the foregoing reasons, the Trustee asks this Court to grant its motion to compel and command Rabo and Focus to: (a) immediately produce all materials responsive to the Trustee's subpoenas; (b) confirm whether Rabo attached all the Debtor loan documents to its Proof of Claim; and (c) confirm whether Rabo and Focus produced all responsive materials in their possession, custody, or control. The Trustee also seeks all other relief to which he is entitled consistent with such disposition of the Motion.

---

[59] Ex. F (General Objection No. 8) (**APP037–038**); Ex. G (General Objection No. 8) (**APP045**).

DATE: July 26, 2024            Respectfully submitted,

*/s/ Alan Dabdoub*
Alan Dabdoub
  State Bar No. 24056836
  adabdoub@lynnllp.com
P. Campbell Sode
  State Bar No. 24134507
  csode@lynnllp.com
**LYNN PINKER HURST & SCHWEGMANN LLP**
  2100 Ross Avenue, Suite 2700
  Dallas, Texas 75201
  Telephone: 214-981-3800
  Facsimile: 214-981-3839

Hudson M. Jobe
  State Bar No. 24041189
  hjobe@jobelawpllc.com
**JOBE LAW PLLC**
  6060 North Central Expressway, Suite 500
  Dallas, Texas 75206
  Telephone: (214) 807-0563

***PROPOSED SPECIAL COUNSEL FOR THE TRUSTEE***

### CERTIFICATE OF CONFERENCE

Before filing this Motion, the undersigned attempted to confer with counsel for Rabo and Focus regarding the need for additional documents and information beyond the initial production. To date, no agreement has been reached on further production. The Trustee will continue to engage with Rabo and Focus on these issues in good faith in an effort to avoid further judicial resources being spent on this matter. This is in addition to various discussions and negotiations involving other parties from which the Trustee may require discovery in resolving this matter.

*/s/ Hudson M. Jobe*
Hudson M. Jobe

### CERTIFICATE OF SERVICE

I hereby certify that on July 26, 2024, a true and correct copy of the foregoing motion was served via the Court's ECF system on the debtor, debtor's counsel, the United States Trustee, and all parties that have appeared and requested notice.

*/s/ Alan Dabdoub*
Alan Dabdoub