# Exhibit A

APP001

**From:** Hudson Jobe on behalf of Hudson Jobe <hjobe@qslwm.com>
**To:** Michael Johnson
**Cc:** Annette Sanchez; j.schwartzkopf@focusmg.com; Kent Ries; Jason Rae; Rick Cass; Nita Chancellor; Carrie Hurst
**Subject:** RE: [EXTERNAL] - RE: McClain Case Documents
**Date:** Tuesday, August 1, 2023 5:34:03 PM
**Attachments:** image001.png
image002.png

Thanks – for underwriting, all financial statements and applications submitted by the obligors throughout the loan, and any non-privileged financial analysis.

**Hudson Jobe**
**Board Certified Business Bankruptcy Attorney**
**Texas Board of Legal Specialization**
**Quilling, Selander, Lownds, Winslett & Moser, P.C.**
**2001 Bryan Street, Suite 1800, Dallas TX 75201**
**Direct: (214) 880-1858 | Fax: (214) 871-2111**
**Email: hjobe@qslwm.com**

**From:** Michael Johnson <MJohnson@rqn.com>
**Sent:** Tuesday, August 1, 2023 2:21 PM
**To:** Hudson Jobe <hjobe@qslwm.com>
**Cc:** Annette Sanchez <ASanchez@rqn.com>; j.schwartzkopf@focusmg.com; Kent Ries <kent@kentries.com>; Jason Rae <jrae@lainfaulkner.com>; Rick Cass <fcass@lainfaulkner.com>; Nita Chancellor <nchancellor@qslwm.com>; Carrie Hurst <churst@RQN.COM>
**Subject:** [EXTERNAL] - RE: McClain Case Documents



Thanks Hudson.

On the 2004 records responses, yes, we will get those over to you asap.

On the Focus records, perhaps Juanita, who you copied on the email, can send those directly to you. If not, we can send what we have.

On the "underwriting" requests, I am not sure what you are asking for. Can you clarify? We can certainly produce all the loan documents and the payment histories, as well as the Borrowing Base Reports that McClain sent and the AFCID inspection reports that Rabo generated when it inspected its collateral. There are, of course, also internal Rabo documents (for example, credit decisions and credit writeups) but we need to be careful producing those because they contain confidential and proprietary information and also may include privileged communications (it is not uncommon, for example, for an in-house Rabo attorney to show up in those records).

APP002

Michael Johnson | Ray Quinney & Nebeker P.C. | 36 South State Street, Suite 1400 | Salt Lake City, Utah 84111
Direct: +1 (801) 323-3363 | Facsimile: +1 (801) 532-7543 | www.rqn.com| vCard

This email is from a law firm and may contain privileged or confidential information.  Any unauthorized disclosure, distribution, or other use of this email and its contents is prohibited.  If you are not the intended recipient, please contact the sender and delete this email. Thank you.

**From:** Hudson Jobe <hjobe@qslwm.com>
**Sent:** Tuesday, August 1, 2023 1:03 PM
**To:** Michael Johnson <MJohnson@rqn.com>
**Cc:** j.schwartzkopf@focusmg.com; Kent Ries <kent@kentries.com>; Jason Rae <jrae@lainfaulkner.com>; Rick Cass <fcass@lainfaulkner.com>; Nita Chancellor <nchancellor@qslwm.com>
**Subject:** McClain Case Documents

> **CAUTION:** EXTERNAL EMAIL

Michael – good talking with you earlier.  Per our discussion I would appreciate if you would forward me a copy of all items received by Rabbo in connection with the 2004 discovery and the non-privileged information with/of Focus.  I would also appreciate a copy of the original underwriting file as well as any subsequent updates to underwriting.

I have created 3 upload links below.  One to use for the 04 exam documents, one for the Focus documents, and another general "other" category for your use in this case to get me large files. Please let me know if you have any issues with using the links.  Thanks – hmj

2004 Exam
https://qslwm.sharefile.com/r-r0104bb786b144971afe70a075c8dc53d

Focus
https://qslwm.sharefile.com/r-rb2f18355083b454782230b701b669a49

Other
https://qslwm.sharefile.com/r-rf42cf5aceac3495089547625a208aa40

**Hudson Jobe**
**Board Certified Business Bankruptcy Attorney**
**Texas Board of Legal Specialization**
**Quilling, Selander, Lownds, Winslett & Moser, P.C.**
**2001 Bryan Street, Suite 1800, Dallas TX 75201**
**Direct: (214) 880-1858 | Fax: (214) 871-2111**
**Email: hjobe@qslwm.com**

# Exhibit B

APP004

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

Northern    District of    Texas, Amarillo Division

In re    McClain Feed Yard, Inc., et al.
_____
Debtor

*(Complete if issued in an adversary proceeding)*

_____
Plaintiff

v.

_____
Defendant

Case No.    23-20084-rlj7

Chapter    7

Adv. Proc. No.    _____

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To:    Rabo AgriFinance LLC c/o registered agent, Corporate Creations Network Inc., 1521 Concord Pike Suite 201, Wilmington, DE 19803
*(Name of person to whom the subpoena is directed)*

[X]  *Production*:  **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Exhibit B.

| PLACE   By email to: hjobe@qslwm.com and gsudbury@qslwm.com QSLWM, 2001 Bryan St, Ste 1800, Dallas, TX 75201 | DATE AND TIME May 31, 2024 at 10:00 am |
|---|---|

[ ]  *Inspection of Premises*:  **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
| | |

The following provisions of **Fed. R. Civ. P. 45**, made applicable in bankruptcy cases by **Fed. R. Bankr. P. 9016**, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    5/10/2024

CLERK OF COURT

OR

_____        /s/ Hudson M. Jobe
*Signature of Clerk or Deputy Clerk*           *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)*
Kent Ries, Trustee                , who issues or requests this subpoena, are:
Hudson M. Jobe, QSLWM, 2001 Bryan St, Ste 1800, Dallas, TX 75201; (214) 871-2100; hjobe@qslwm.com

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

<span style="color:red">APP005</span>

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .


        I declare under penalty of perjury that this information is true and correct.

Date:  _____


                                                         _____
                                                                         *Server's signature*


                                                         _____
                                                                         *Printed name and title*


                                                         _____
                                                                         *Server's address*


Additional information concerning attempted service, etc.:

APP006

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:

(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*

*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

*(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*

*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*

*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

APP007

## EXHIBIT B – BANKS AND BANK CONSULTANTS

## DEFINITIONS

1.    <u>You/Your</u>. The terms "You" and/or "Your" means the person or entity to whom this discovery is directed, as well as Your officers, directors, members, employees, attorneys, agents, representatives, and/or anyone else acting on Your behalf, as well as your predecessors, successors, assigns, and affiliates as that term is defined in 11 U.S.C. § 101(2).

2.    <u>Debtors</u>. The term "Debtors" shall mean McClain Feed Yard, Inc., McClain Farms, Inc., and 7M Cattle Feeders, Inc., as well as all officers, directors, members, employees, attorneys, agents, and representatives of the foregoing.

3.    <u>Debtor Affiliates</u>. The term "Debtor Affiliates" shall mean Brian McClain, Chelsea McClain, Crystal McClain, Meagan B. Goad, aka Meagan B. Powell, Angela Powell, Piper McClain, Kinsey Moreland, Josh Moreland, Leslie K. White, Jed Goad, JLE Trucking, Inc., any other entities affiliated with the foregoing, as well as all officers, directors, members, employees, attorneys, agents, and representatives of the foregoing, as well as any other known affiliates of any of the Debtors as that term is defined in 11 U.S.C. § 101(2).

4.    <u>Debtor/Affiliate Accounts</u>. The term "Debtor/Affiliate Accounts" shall mean any savings, checking, demand deposit, or other financial account that was owned by or under the control of any of the Debtors or the Debtor Affiliates.

5.    <u>Debtor/Affiliate Loan</u>. The term "Debtor/Affiliate Loan" shall mean any indebtedness of any of the Debtors or any of the Debtor Affiliates.

6.    <u>Transfer</u>. The term "transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or an interest in property, and includes payment of money, release, lease, and creation of a lien or other encumbrance.

7.    <u>Property</u>. The term "property" means anything that may be the subject of ownership.

8.    <u>Documents or Electronically Stored Information</u>. The term "documents or electronically stored information" shall be synonymous in meaning and equal in scope to the usage of those terms in Rule 34 of the Federal Rules of Civil Procedure, and shall include, *without limitation*, any written, printed, electronic, typed, recorded, filmed, punched, transcribed, taped, or other graphic matter of any kind or nature however stored, produced, or reproduced, whether sent or received or neither, including the original, drafts, copies, and non-identical copies bearing notations or marks not found on the original, and includes, but is not limited to, all records, memoranda, reports, financial statements, handwritten and other notes, transcripts, paper, indices, electronic mail messages,

APP008

electronic text messages, voicemail, word processing documents, spreadsheets, databases, calendars, telephone logs, contact manager information, internet usage files (including activity logs, records of internet and web browser generated files, history files, caches, and cookies), network access information, blogs, tweets, instant messages, letters, envelopes, telegrams, cables, telex messages, telephone messages, summaries or records of telephone conversations, summaries or records of personal conversations or interviews, summaries or records of meetings or conferences, minutes or transcripts or notations of meetings or telephone conversations or other communications of any type, tabulations, studies, analyses, evaluations, projections, work papers, statements, summaries, opinions, journals, desk calendars, appointment books, diaries, billing records, invoices, or photographs, or other data compilations in any medium from which information can be obtained, including, but not limited to microfilms, magnetic tapes, electronic storage, computers, laptops, hard drives, thumb drives, personal digital assistants, smart phones, and archives, and includes any other documents discoverable under Federal Rule of Civil Procedure 26, which are in Your custody, possession, and/or control or to which You otherwise have access. The term "document" *also includes* file and folder tabs associated with each of the aforementioned originals, copies, drafts, or versions. The term "document" also includes "communications" as defined herein.

9.      Communications. The term "communications" shall be construed as broadly as possible, and shall include, but not be limited, to all e-mails, text messages, correspondence, memoranda, or other written documentation in any form.

10.     Concerning.  The term "concerning" means referring to, referencing, reflecting, in connection with, describing, evidencing, indicating, supporting or constituting, digesting, embodying, establishing, tending to establish, tending not to establish, comprising, commenting on, responding to, disagreeing with, showing, describing, analyzing, representing, constituting or including, in whole or in part.

11.     All/Each.  The terms "all" and "each" shall be construed as all and each.

12.     And/Or.  The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

13.     Number.  The use of the singular form of any word includes the plural and vice versa.

14.     Tense.  The use of the present tense includes the present and past tense, and the use of the past tense includes the past and present tense.

## INSTRUCTIONS

A.      Identify all documents that are available in both physical and electronic format, and initially provide only the electronic version. Identify electronic data that is available in more than one format, and provide all formats.

APP009

B.      These Requests shall extend to all documents in the possession, custody, and/or control of You, as well as all documents in the possession, custody, or control of persons or entities under Your control or which You could reasonably gain access, such as Your attorney(s), accountant(s), employee(s), agent(s), or other representative(s), regardless of who obtained the documents on its behalf, and regardless of the source from which the documents were obtained

C.      In the event that more than one copy of a documents exists, You should produce the original and each non-identical copy of each document or other tangible thing requested herein that is in Your possession, custody or control, or the control of Your agents, attorneys, accountants, or employees, or to which You could reasonably gain access.

D.      You should comply with the requirements of the Federal Rules of Civil Procedure and Federal Rules of Bankruptcy Procedure regarding claims of privilege or protection of trial preparation materials.

E.      These Requests shall be deemed continuing in nature to the fullest extent permitted by law. If further responsive information comes into the possession or attention of You or Your attorneys at any time during the course of this proceeding, such information must be provided as required by the Federal Rules of Civil Procedure.

F.      If any portion of any document is responsive to any request, then the entire document must be produced.

G.      In the event that no document exists which is responsive to a particular request, a written response indicating the same must be provided

H.      If any document is withheld on the basis of privilege, or any request is objected to on the basis of privilege, You must nevertheless produce other responsive documents pursuant to such request which are not subject to any privilege, and You must produce a privilege log concerning documents withheld on the basis for privilege.

I.      You may withhold documents prohibited from discovery under the Bank Secrecy Act, 31 U.S.C. § 5318(g). This Request does not seek production of documents protected by 31 U.S.C.S. § 5318(g)(2)(A)(i) and implementing regulations including 12 C.F.R. § 353.3 and 31 C.F.R. § 1020.320(e)(1), concerning suspicious activity reports (a "SAR"). Instead, this request seeks documents and reports that were generated by You that concern Your investigations of suspicious activity, such as kiting, produced by You as a part of Your measures to protect Your interest. *See In re Whitley,* 2011 Bankr. LEXIS 4793 at *10-11 (Bankr. M.D.N.C. 2011).

## **REQUESTED DOCUMENTS**

1.      All documents or electronically stored information accessible to You concerning

all Debtor/Affiliate Accounts and all Debtor/Affiliate Loans.  This includes:

a. All remote deposit detail (including wire receipts and checks). This includes all documents or electronically stored information evidencing all financial transaction activities or transfers of funds, including checks, wire transfer records, deposit records, payment records or other documents evidencing, concerning, or documenting the transfer of money or property in any Debtor/Affiliate Accounts or any Debtor/Affiliate Loans;

b. All withdrawal detail (including wire requests and checks).  This includes all documents or electronically stored information evidencing all financial transaction activities or transfers of funds, including checks, wire transfer records, deposit records, payment records or other documents evidencing, concerning, or documenting the transfer of money or property in any Debtor/Affiliate Accounts or any Debtor/Affiliate Loans;

c. All signature cards, account opening agreements, and other agreements or contracts governing Debtor/Affiliate Accounts and Debtor/Affiliate Loans;

d. All communications between the You and any Debtor or any Debtor Affiliate;

e. All communications between the You and any third party referring or relating to the Debtor or a Debtor Affiliate, including the Debtor/Affiliate Accounts or any Debtor/Affiliate Loan;

f. All Your internal communications referring or relating to the Debtor or a Debtor Affiliate, including the Debtor/Affiliate Accounts or any Debtor/Affiliate Loan;

g. All financial analysis and reports You have prepared concerning any of the Debtors or Debtor Affiliates, including working papers and drafts;

h. All loan and security documents or electronically stored information evidencing or documenting any Debtor/Affiliate Loan, and any documents or electronically stored information concerning a Debtor/Affiliate Loan, including but not limited to loan history reports, loan ledgers and any loan statements;

i. All documents or electronically stored information evidencing, referencing, or otherwise concerning any transfer of property by, on account of, or on behalf of, any of the Debtors or the Debtor Affiliates, including but not limited to any transfers made in connection with Debtor/Affiliate Account or Debtor/Affiliate Loan;

j. All documents or electronically stored information referencing any of the Debtors or the Debtor Affiliates.

k. All reports generated by procedures, systems, or controls for detecting kiting or other bank fraud that refer to any of the Debtors or any of the Debtor Affiliates, or are concerning any Debtor/Affiliate Account or Debtor/Affiliate Loan. This includes any

reports generated, created, and/or stored by any third-party or outside vendors. This includes all documents or other correspondence that forwards, discusses, relates to or otherwise references any report responsive to this request.

l.  All reports and other similar documents concerning any of the Debtors or any of Debtor Affiliates which were generated data analytic and/or fraud detection software (e.g., Abrigo/Banker's Toolbox, Trenisis, Wayne Barnett, or similar programs) that mention or refer to any of the Debtors or any of the Debtor Affiliates, and all documents relating to or evidencing internal and external communications regarding those reports or other similar documents.

2.      All documents or electronically stored information concerning either: (a) any transfer of property to any of the Debtors or the Debtors' Affiliates (including anyone on any of their behalf); or (b) any transfer of property by the Debtors or the Debtors' Affiliates (including anyone on any of their behalf).  Documents responsive to this request include, but are not limited to: (1) banking records (such as bank statements, copies of checks, wire instructions, wire receipts, ledger entries); (2) investment contracts, agreements, invoices, or receipts, including shipping records or other records concerning livestock sales involving any of the Debtors or the Debtors' Affiliates; and (3) communications with any party concerning any such transfers.

3.      All documents or electronically stored information concerning any property of any of the Debtors or any of the Debtors' affiliates, including but not limited to, all financial records of any of the Debtors or any of the Debtors' affiliates.



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed May 6, 2024**

**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| MCCLAIN FEED YARD, INC., et al.,[1] | § | CASE NO. 23-20084-RLJ-7 |
| | § | |
| | § | |
| Debtors. | § | Jointly Administered |

### ORDER GRANTING TRUSTEE'S *EX PARTE* MOTION FOR RULE 2004 ORDER AUTHORIZING THE ISSUANCE OF DOCUMENT AND EXAMINATION SUBPOENAS TO VARIOUS THIRD PARTIES

On this day came for consideration the *Ex Parte* Motion for Rule 2004 Order Authorizing the Issuance of Document and Examination Subpoenas to Various Third Parties (the "Motion") filed by Kent Ries, Trustee ("Trustee") of the referenced Chapter 7 bankruptcy cases. Having considered the Motion and finding good cause to approve same, it is hereby

ORDERED that the Motion is GRANTED as provided for herein; it is further

---

[1] The Debtors in these Chapter 7 cases are: McClain Feed Yard, Inc. (Case No. 23-20084-RLJ), McClain Farms, Inc. (Case No. 23-20085-RLJ), and 7M Cattle Feeders, Inc. (Case No. 23-20086-RLJ).

APP013

ORDERED that the Trustee shall be, and hereby is, authorized to issue document subpoenas to the following persons or entities for the compelled production of the records and documents in substantially the same form as the subpoena riders attached as Exhibit A – C to the Motion:

a. Cactus Feeders Finance, LLC for production of its own documents and electronically stored information, as well as any in its possession, custody, or control of its successors, predecessors, and affiliates, including, but not limited to, Cactus Operating LLC, Cactus Operating, Ltd., Cactus Feeders Finance, Ltd., Cactus Feeders, Inc., Cactus Feedyard, Ltd., Cactus Corporate Feeding Club, Inc., and Cactus Feeding Club, Inc.;

b. Cactus Operating LLC, for production of its own documents and electronically stored information, as well as any in its possession, custody, or control of its successors, predecessors, and affiliates, including, but not limited to, Cactus Feeders Finance, LLC, Cactus Operating, Ltd., Cactus Feeders Finance, Ltd., Cactus Feeders, Inc., Cactus Feedyard, Ltd., Cactus Corporate Feeding Club, Inc., and Cactus Feeding Club, Inc.;

c. Friona Industries, L.P., for production of its own documents and electronically stored information, as well as any in its possession, custody, or control of its successors, predecessors, and affiliates, including, but not limited to, Randall Feeders, L.P. and Friona Industries, Inc.;

d. Riley Livestock, Inc.;

e. Rabo AgriFinance LLC;

f. Focus Management Group;

g. Mechanics Bank;

h. Community Financial Services Bank;

i. Carr, Riggs & Ingram CPAs;

j. Angela Powell, individually

k. ADPOWELL, Inc.; and

l. H&R Block, Inc.

IT IS FURTHER

APP014

ORDERED that the Trustee shall provide each party served with a subpoena pursuant to this Order with at least 14 days' notice of the date and time for any required production of records, documents and things. IT IS FURTHER

ORDERED that the Trustee is also authorized, in his discretion, to issue subsequent subpoenas for Rule 2004 examinations to the foregoing parties. The Trustee shall coordinate with the foregoing parties, or their counsel, with respect to the date, time and location of any Rule 2004 examinations that he conducts.

# # # END OF ORDER # # #

Order submitted by:
Hudson M. Jobe
QUILLING, SELANDER, LOWNDS,
WINSLETT & MOSER, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Facsimile)
SPECIAL COUNSEL FOR TRUSTEE

APP015

# Exhibit C

APP016

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

Northern    District of    Texas, Amarillo Division

In re    McClain Feed Yard, Inc., et al.
_____
Debtor

*(Complete if issued in an adversary proceeding)*

_____

_____
Plaintiff

v.

_____
Defendant

Case No.    23-20084-rlj7

Chapter    7

Adv. Proc. No.    _____

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To:    Focus Management Group USA, Inc. c/o COO Michael  Doland, 30725 US Highway 19th N #330, Palm Harbor, FL 34684
*(Name of person to whom the subpoena is directed)*

[X]  *Production*:  **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Exhibit B.

| PLACE   By email to: hjobe@qslwm.com and gsudbury@qslwm.com  QSLWM, 2001 Bryan St, Ste 1800, Dallas, TX 75201 | DATE AND TIME  May 31, 2024 at 10:00 am |
|---|---|

[ ]  *Inspection of Premises*:  **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
| | |

The following provisions of **Fed. R. Civ. P. 45**, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    5/10/2024

CLERK OF COURT

OR

_____
Signature of Clerk or Deputy Clerk

_____
/s/ Hudson M. Jobe
*Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)*
Kent Ries, Trustee _____ , who issues or requests this subpoena, are:
Hudson M. Jobe, QSLWM, 2001 Bryan St, Ste 1800, Dallas, TX 75201; (214) 871-2100; hjobe@qslwm.com

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

APP017

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $ _____ .

 My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

        I declare under penalty of perjury that this information is true and correct.

Date: _____

                                                                _____
                                                                                *Server's signature*

                                                                _____
                                                                                *Printed name and title*

                                                                _____
                                                                                *Server's address*

Additional information concerning attempted service, etc.:

APP018

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 3)

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i) is a party or a party's officer; or
    (ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
  (A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
  *(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  *(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
  *(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    (i) fails to allow a reasonable time to comply;
    (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv) subjects a person to undue burden.
  *(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify a subpoena if it requires:
    (i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  *(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  *(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  *(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  *(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  *(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
  *(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    (i) expressly make the claim; and
    (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  *(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

## EXHIBIT B – BANKS AND BANK CONSULTANTS

## DEFINITIONS

1.      <u>You/Your</u>. The terms "You" and/or "Your" means the person or entity to whom this discovery is directed, as well as Your officers, directors, members, employees, attorneys, agents, representatives, and/or anyone else acting on Your behalf, as well as your predecessors, successors, assigns, and affiliates as that term is defined in 11 U.S.C. § 101(2).

2.      <u>Debtors</u>. The term "Debtors" shall mean McClain Feed Yard, Inc., McClain Farms, Inc., and 7M Cattle Feeders, Inc., as well as all officers, directors, members, employees, attorneys, agents, and representatives of the foregoing.

3.      <u>Debtor Affiliates</u>. The term "Debtor Affiliates" shall mean Brian McClain, Chelsea McClain, Crystal McClain, Meagan B. Goad, aka Meagan B. Powell, Angela Powell, Piper McClain, Kinsey Moreland, Josh Moreland, Leslie K. White, Jed Goad, JLE Trucking, Inc., any other entities affiliated with the foregoing, as well as all officers, directors, members, employees, attorneys, agents, and representatives of the foregoing, as well as any other known affiliates of any of the Debtors as that term is defined in 11 U.S.C. § 101(2).

4.      <u>Debtor/Affiliate Accounts</u>. The term "Debtor/Affiliate Accounts" shall mean any savings, checking, demand deposit, or other financial account that was owned by or under the control of any of the Debtors or the Debtor Affiliates.

5.      <u>Debtor/Affiliate Loan</u>. The term "Debtor/Affiliate Loan" shall mean any indebtedness of any of the Debtors or any of the Debtor Affiliates.

6.      <u>Transfer</u>. The term "transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or an interest in property, and includes payment of money, release, lease, and creation of a lien or other encumbrance.

7.      <u>Property</u>. The term "property" means anything that may be the subject of ownership.

8.      <u>Documents or Electronically Stored Information</u>. The term "documents or electronically stored information" shall be synonymous in meaning and equal in scope to the usage of those terms in Rule 34 of the Federal Rules of Civil Procedure, and shall include, *without limitation*, any written, printed, electronic, typed, recorded, filmed, punched, transcribed, taped, or other graphic matter of any kind or nature however stored, produced, or reproduced, whether sent or received or neither, including the original, drafts, copies, and non-identical copies bearing notations or marks not found on the original, and includes, but is not limited to, all records, memoranda, reports, financial statements, handwritten and other notes, transcripts, paper, indices, electronic mail messages,

APP020

electronic text messages, voicemail, word processing documents, spreadsheets, databases, calendars, telephone logs, contact manager information, internet usage files (including activity logs, records of internet and web browser generated files, history files, caches, and cookies), network access information, blogs, tweets, instant messages, letters, envelopes, telegrams, cables, telex messages, telephone messages, summaries or records of telephone conversations, summaries or records of personal conversations or interviews, summaries or records of meetings or conferences, minutes or transcripts or notations of meetings or telephone conversations or other communications of any type, tabulations, studies, analyses, evaluations, projections, work papers, statements, summaries, opinions, journals, desk calendars, appointment books, diaries, billing records, invoices, or photographs, or other data compilations in any medium from which information can be obtained, including, but not limited to microfilms, magnetic tapes, electronic storage, computers, laptops, hard drives, thumb drives, personal digital assistants, smart phones, and archives, and includes any other documents discoverable under Federal Rule of Civil Procedure 26, which are in Your custody, possession, and/or control or to which You otherwise have access. The term "document" *also includes* file and folder tabs associated with each of the aforementioned originals, copies, drafts, or versions. The term "document" also includes "communications" as defined herein.

9.      Communications. The term "communications" shall be construed as broadly as possible, and shall include, but not be limited, to all e-mails, text messages, correspondence, memoranda, or other written documentation in any form.

10.     Concerning. The term "concerning" means referring to, referencing, reflecting, in connection with, describing, evidencing, indicating, supporting or constituting, digesting, embodying, establishing, tending to establish, tending not to establish, comprising, commenting on, responding to, disagreeing with, showing, describing, analyzing, representing, constituting or including, in whole or in part.

11.     All/Each.  The terms "all" and "each" shall be construed as all and each.

12.     And/Or.  The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

13.     Number.  The use of the singular form of any word includes the plural and vice versa.

14.     Tense.  The use of the present tense includes the present and past tense, and the use of the past tense includes the past and present tense.

## INSTRUCTIONS

A.      Identify all documents that are available in both physical and electronic format, and initially provide only the electronic version. Identify electronic data that is available in more than one format, and provide all formats.

B.      These Requests shall extend to all documents in the possession, custody, and/or control of You, as well as all documents in the possession, custody, or control of persons or entities under Your control or which You could reasonably gain access, such as Your attorney(s), accountant(s), employee(s), agent(s), or other representative(s), regardless of who obtained the documents on its behalf, and regardless of the source from which the documents were obtained

C.      In the event that more than one copy of a documents exists, You should produce the original and each non-identical copy of each document or other tangible thing requested herein that is in Your possession, custody or control, or the control of Your agents, attorneys, accountants, or employees, or to which You could reasonably gain access.

D.      You should comply with the requirements of the Federal Rules of Civil Procedure and Federal Rules of Bankruptcy Procedure regarding claims of privilege or protection of trial preparation materials.

E.      These Requests shall be deemed continuing in nature to the fullest extent permitted by law. If further responsive information comes into the possession or attention of You or Your attorneys at any time during the course of this proceeding, such information must be provided as required by the Federal Rules of Civil Procedure.

F.      If any portion of any document is responsive to any request, then the entire document must be produced.

G.      In the event that no document exists which is responsive to a particular request, a written response indicating the same must be provided

H.      If any document is withheld on the basis of privilege, or any request is objected to on the basis of privilege, You must nevertheless produce other responsive documents pursuant to such request which are not subject to any privilege, and You must produce a privilege log concerning documents withheld on the basis for privilege.

I.      You may withhold documents prohibited from discovery under the Bank Secrecy Act, 31 U.S.C. § 5318(g). This Request does not seek production of documents protected by 31 U.S.C.S. § 5318(g)(2)(A)(i) and implementing regulations including 12 C.F.R. § 353.3 and 31 C.F.R. § 1020.320(e)(1), concerning suspicious activity reports (a "SAR"). Instead, this request seeks documents and reports that were generated by You that concern Your investigations of suspicious activity, such as kiting, produced by You as a part of Your measures to protect Your interest. *See In re Whitley,* 2011 Bankr. LEXIS 4793 at *10-11 (Bankr. M.D.N.C. 2011).

**REQUESTED DOCUMENTS**

1.      All documents or electronically stored information accessible to You concerning

APP022

all Debtor/Affiliate Accounts and all Debtor/Affiliate Loans.  This includes:

a.  All remote deposit detail (including wire receipts and checks). This includes all documents or electronically stored information evidencing all financial transaction activities or transfers of funds, including checks, wire transfer records, deposit records, payment records or other documents evidencing, concerning, or documenting the transfer of money or property in any Debtor/Affiliate Accounts or any Debtor/Affiliate Loans;

b.  All withdrawal detail (including wire requests and checks).  This includes all documents or electronically stored information evidencing all financial transaction activities or transfers of funds, including checks, wire transfer records, deposit records, payment records or other documents evidencing, concerning, or documenting the transfer of money or property in any Debtor/Affiliate Accounts or any Debtor/Affiliate Loans;

c.  All signature cards, account opening agreements, and other agreements or contracts governing Debtor/Affiliate Accounts and Debtor/Affiliate Loans;

d.  All communications between the You and any Debtor or any Debtor Affiliate;

e.  All communications between the You and any third party referring or relating to the Debtor or a Debtor Affiliate, including the Debtor/Affiliate Accounts or any Debtor/Affiliate Loan;

f.  All Your internal communications referring or relating to the Debtor or a Debtor Affiliate, including the Debtor/Affiliate Accounts or any Debtor/Affiliate Loan;

g.  All financial analysis and reports You have prepared concerning any of the Debtors or Debtor Affiliates, including working papers and drafts;

h.  All loan and security documents or electronically stored information evidencing or documenting any Debtor/Affiliate Loan, and any documents or electronically stored information concerning a Debtor/Affiliate Loan, including but not limited to loan history reports, loan ledgers and any loan statements;

i.  All documents or electronically stored information evidencing, referencing, or otherwise concerning any transfer of property by, on account of, or on behalf of, any of the Debtors or the Debtor Affiliates, including but not limited to any transfers made in connection with Debtor/Affiliate Account or Debtor/Affiliate Loan;

j.  All documents or electronically stored information referencing any of the Debtors or the Debtor Affiliates.

k.  All reports generated by procedures, systems, or controls for detecting kiting or other bank fraud that refer to any of the Debtors or any of the Debtor Affiliates, or are concerning any Debtor/Affiliate Account or Debtor/Affiliate Loan. This includes any

reports generated, created, and/or stored by any third-party or outside vendors. This includes all documents or other correspondence that forwards, discusses, relates to or otherwise references any report responsive to this request.

l.   All reports and other similar documents concerning any of the Debtors or any of Debtor Affiliates which were generated data analytic and/or fraud detection software (e.g., Abrigo/Banker's Toolbox, Trenisis, Wayne Barnett, or similar programs) that mention or refer to any of the Debtors or any of the Debtor Affiliates, and all documents relating to or evidencing internal and external communications regarding those reports or other similar documents.

2.      All documents or electronically stored information concerning either: (a) any transfer of property to any of the Debtors or the Debtors' Affiliates (including anyone on any of their behalf); or (b) any transfer of property by the Debtors or the Debtors' Affiliates (including anyone on any of their behalf).  Documents responsive to this request include, but are not limited to: (1) banking records (such as bank statements, copies of checks, wire instructions, wire receipts, ledger entries); (2) investment contracts, agreements, invoices, or receipts, including shipping records or other records concerning livestock sales involving any of the Debtors or the Debtors' Affiliates; and (3) communications with any party concerning any such transfers.

3.      All documents or electronically stored information concerning any property of any of the Debtors or any of the Debtors' affiliates, including but not limited to, all financial records of any of the Debtors or any of the Debtors' affiliates.

APP024



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed May 6, 2024**

**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| MCCLAIN FEED YARD, INC., et al.,[1] | § | CASE NO. 23-20084-RLJ-7 |
| | § | |
| | § | |
| Debtors. | § | Jointly Administered |

### ORDER GRANTING TRUSTEE'S *EX PARTE* MOTION FOR RULE 2004 ORDER AUTHORIZING THE ISSUANCE OF DOCUMENT AND EXAMINATION SUBPOENAS TO VARIOUS THIRD PARTIES

On this day came for consideration the *Ex Parte* Motion for Rule 2004 Order Authorizing the Issuance of Document and Examination Subpoenas to Various Third Parties (the "Motion") filed by Kent Ries, Trustee ("Trustee") of the referenced Chapter 7 bankruptcy cases. Having considered the Motion and finding good cause to approve same, it is hereby

ORDERED that the Motion is GRANTED as provided for herein; it is further

---

[1] The Debtors in these Chapter 7 cases are: McClain Feed Yard, Inc. (Case No. 23-20084-RLJ), McClain Farms, Inc. (Case No. 23-20085-RLJ), and 7M Cattle Feeders, Inc. (Case No. 23-20086-RLJ).

---

APP025

ORDERED that the Trustee shall be, and hereby is, authorized to issue document subpoenas to the following persons or entities for the compelled production of the records and documents in substantially the same form as the subpoena riders attached as Exhibit A – C to the Motion:

a. Cactus Feeders Finance, LLC for production of its own documents and electronically stored information, as well as any in its possession, custody, or control of its successors, predecessors, and affiliates, including, but not limited to, Cactus Operating LLC, Cactus Operating, Ltd., Cactus Feeders Finance, Ltd., Cactus Feeders, Inc., Cactus Feedyard, Ltd., Cactus Corporate Feeding Club, Inc., and Cactus Feeding Club, Inc.;

b. Cactus Operating LLC, for production of its own documents and electronically stored information, as well as any in its possession, custody, or control of its successors, predecessors, and affiliates, including, but not limited to, Cactus Feeders Finance, LLC, Cactus Operating, Ltd., Cactus Feeders Finance, Ltd., Cactus Feeders, Inc., Cactus Feedyard, Ltd., Cactus Corporate Feeding Club, Inc., and Cactus Feeding Club, Inc.;

c. Friona Industries, L.P., for production of its own documents and electronically stored information, as well as any in its possession, custody, or control of its successors, predecessors, and affiliates, including, but not limited to, Randall Feeders, L.P. and Friona Industries, Inc.;

d. Riley Livestock, Inc.;

e. Rabo AgriFinance LLC;

f. Focus Management Group;

g. Mechanics Bank;

h. Community Financial Services Bank;

i. Carr, Riggs & Ingram CPAs;

j. Angela Powell, individually

k. ADPOWELL, Inc.; and

l. H&R Block, Inc.

IT IS FURTHER

ORDERED that the Trustee shall provide each party served with a subpoena pursuant to this Order with at least 14 days' notice of the date and time for any required production of records, documents and things. IT IS FURTHER

ORDERED that the Trustee is also authorized, in his discretion, to issue subsequent subpoenas for Rule 2004 examinations to the foregoing parties. The Trustee shall coordinate with the foregoing parties, or their counsel, with respect to the date, time and location of any Rule 2004 examinations that he conducts.

# # # END OF ORDER # # #

Order submitted by:
Hudson M. Jobe
QUILLING, SELANDER, LOWNDS,
WINSLETT & MOSER, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Facsimile)
SPECIAL COUNSEL FOR TRUSTEE

# Exhibit D

APP028

| | |
|---|---|
| **From:** | Gregory Sudbury |
| **To:** | Michael Johnson; Hudson Jobe |
| **Cc:** | Annette Sanchez; Heather Shlachtman; Nita Chancellor; Kent Ries; Jason Rae; Rick Cass; Austin Nate; Matthew Cannon; Heath Hendricks (heath.hendricks@uwlaw.com) |
| **Subject:** | RE: [EXTERNAL] - McClain Bankruptcy Case - Order on Rule 2004 Examination |
| **Date:** | Friday, May 10, 2024 2:24:03 PM |
| **Attachments:** | image001.png |
| | image002.png |
| | Subpoena to Rabo AgriFinance LLC.pdf |
| | Waiver and Acceptance of Service - Rabo AgriFinance LLC.pdf |

Michael

Attached are the Subpoena and Acceptance of Service. Please sign and return the Acceptance when you get a chance.

Thanks.

Gregory M. Sudbury
QSLWM, P.C.
2001 Bryan St., Suite 1800
Dallas, TX 75201
(214) 880-1878 direct
gsudbury@qslwm.com
www.qslwm.com

---

**From:** Michael Johnson <MJohnson@rqn.com>
**Sent:** Thursday, May 09, 2024 8:01 PM
**To:** Hudson Jobe <hjobe@qslwm.com>
**Cc:** Annette Sanchez <ASanchez@rqn.com>; Gregory Sudbury <gsudbury@qslwm.com>; Heather Shlachtman <hshlachtman@qslwm.com>; Nita Chancellor <nchancellor@qslwm.com>; Kent Ries <kent@kentries.com>; Jason Rae <jrae@lainfaulkner.com>; Rick Cass <fcass@lainfaulkner.com>; Austin Nate <ANate@rqn.com>; Matthew Cannon <mcannon@rqn.com>; Heath Hendricks (heath.hendricks@uwlaw.com) <heath.hendricks@uwlaw.com>
**Subject:** [EXTERNAL] - RE: McClain Bankruptcy Case - Order on Rule 2004 Examination



Yes, I can accept service, subject to all defenses other than ineffective or improper service.  Please send the full subpoena along with an Acceptance of Service for me to review.

Michael Johnson | Ray Quinney & Nebeker P.C. | 36 South State Street, Suite 1400 | Salt Lake City, Utah 84111
Direct: +1 (801) 323-3363 | Facsimile: +1 (801) 532-7543 | www.rqn.com | vCard
This email is from a law firm and may contain privileged or confidential information.  Any unauthorized disclosure, distribution, or other use of this email and its contents is prohibited.  If you are not the intended recipient, please contact the sender and delete this email. Thank you.

**From:** Hudson Jobe <hjobe@qslwm.com>

APP029

**Sent:** Wednesday, May 8, 2024 9:48 AM
**To:** Michael Johnson <MJohnson@rqn.com>
**Cc:** Gregory Sudbury <gsudbury@qslwm.com>; Heather Shlachtman <hshlachtman@qslwm.com>;
Nita Chancellor <nchancellor@qslwm.com>; Kent Ries <kent@kentries.com>; Jason Rae
<jrae@lainfaulkner.com>; Rick Cass <fcass@lainfaulkner.com>
**Subject:** McClain Bankruptcy Case - Order on Rule 2004 Examination

Michael – please let me know if you will agree to receive service of subpoena on behalf of Rabo
in connection with the attached Order.

Thanks,

**Hudson Jobe**
**Board Certified Business Bankruptcy Attorney**
**Texas Board of Legal Specialization**
**Quilling, Selander, Lownds, Winslett & Moser, P.C.**
**2001 Bryan Street, Suite 1800, Dallas TX 75201**
**Direct: (214) 880-1858 | Fax: (214) 871-2111**
**Email: hjobe@qslwm.com**

# Exhibit E

APP031

| | |
|---|---|
| **From:** | Heather Shlachtman |
| **To:** | Michael Doland |
| **Cc:** | Gregory Sudbury; Nita Chancellor; Kent Ries; Jason Rae; Rick Cass; Hudson Jobe |
| **Subject:** | RE: [EXTERNAL] - McClain Bankruptcy Case - Order on Rule 2004 Examination |
| **Attachments:** | image001.png |
| | image002.png |
| | image003.png |
| | 2024 0510 Subpoena to Focus Management Group USA Inc..pdf |

Mr. Doland,

Attached please find the Subpoena to Produce Documents directed to Focus Management Group USA, Inc.

**Heather Shlachtman** | Paralegal
Quilling, Selander, Lownds, Winslett & Moser, P.C.
2001 Bryan Street, Suite 1800, Dallas TX 75201
Direct: (214) 880-1830 | Fax: (214) 871-2111 | hshlachtman@qslwm.com

**From:** Michael Doland <m.doland@focusmg.com>
**Sent:** Wednesday, May 8, 2024 11:59 AM
**To:** Hudson Jobe <hjobe@qslwm.com>
**Cc:** Gregory Sudbury <gsudbury@qslwm.com>; Heather Shlachtman <hshlachtman@qslwm.com>;
Nita Chancellor <nchancellor@qslwm.com>; Kent Ries <kent@kentries.com>; Jason Rae
<jrae@lainfaulkner.com>; Rick Cass <fcass@lainfaulkner.com>
**Subject:** [EXTERNAL] - RE: McClain Bankruptcy Case - Order on Rule 2004 Examination



Yes Focus will accept service of the subpoena

**Michael Doland**
Chief Operating Officer
813.281.0062 Office | 813.281.0063 Fax | 727.510.3979 Cell
m.doland@focusmg.com

**Focus Management Group**
30725 US HWY 19N PMB 330
Palm Harbor, FL 34684
**www.focusmg.com**

**From:** Hudson Jobe <hjobe@qslwm.com>

**Sent:** Wednesday, May 8, 2024 11:51 AM
**To:** Michael Doland <m.doland@focusmg.com>
**Cc:** Gregory Sudbury <gsudbury@qslwm.com>; Heather Shlachtman <hshlachtman@qslwm.com>;
Nita Chancellor <nchancellor@qslwm.com>; Kent Ries <kent@kentries.com>; Jason Rae
<jrae@lainfaulkner.com>; Rick Cass <fcass@lainfaulkner.com>
**Subject:** McClain Bankruptcy Case - Order on Rule 2004 Examination

Michael – please let me know if you will agree to receive service of subpoena on behalf of
Focus Management Group in connection with the attached Order.

Thanks,

**Hudson Jobe**
**Board Certified Business Bankruptcy Attorney**
**Texas Board of Legal Specialization**
**Quilling, Selander, Lownds, Winslett & Moser, P.C.**
**2001 Bryan Street, Suite 1800, Dallas TX 75201**
**Direct: (214) 880-1858 | Fax: (214) 871-2111**
**Email: hjobe@qslwm.com**

APP033

# Exhibit F

APP034

RAY QUINNEY & NEBEKER

June 5, 2024

**VIA EMAIL (hjobe@qslwm.com and gsudbury@qslwm.com) AND
REGULAR MAIL**

QUILLING, SELANDER, LOWNDS, WINSLETT & MOSER, P.C.
Attn: Hudson M. Jobe, Esq. & Gregory Sudbury, Esq.
2001 Bryan St, Ste 1800
Dallas, TX 75201

Michael R. Johnson
ATTORNEY AT LAW

PO Box 45385
Salt Lake City, Utah
84145-0385

36 South State Street
Suite 1400
Salt Lake City, Utah
84111

801 532-1500 FIRM
801 323-3363 DIRECT
801 532-7543 FAX
mjohnson@rqn.com
www.rqn.com

> *Re: Rabo AgriFinance LLC/McClain Farms Inc.*
> *U.S. Bankruptcy Court Northern District of Texas*
> *Case No. 23-20084-rlj7; Objections and Responses*
> *to Subpoena Served on Rabo AgriFinance LLC*

Dear Hudson and Gregory:

I am writing on behalf of our client Rabo AfriFinance LLC ("**RAF**") to provide both RAF's objections and its responses to the *Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Bankruptcy Case (or Adversary Proceeding)* (the "**Subpoena**") dated May 10, 2024, and which I accepted service of on May 28, 2024.

RAF's General Objections to the Subpoena are as follows:

1.    RAF objects to the Subpoena to the extent the same seeks the production of documents protected by the attorney client privilege, the work product doctrine, trial-preparation material privilege, or any other applicable privilege or non-disclosure rules, whether based on rule, statute, or recognized at common law. Pursuant to F.R.C.P. 26(b)(3)(A), a party may not discover documents prepared in anticipation of litigation for another party including materials prepared by a party's representative such as a consultant. Additionally, F.R.C.P. 26(b)(4)(D) states that a party may not discover facts or opinions held by a non-testifying expert. Some of the information requested in the Subpoena would fall into these categories, and RAF objects to the production of any documents or information falling within these categories.

2.     RAF objects to the Subpoena as unduly burdensome under F.R.C.P. 45(d)(1) to the extent the Subpoena requires production of any documents that are duplicative of any prior discovery or are presumably in your client's possession or in the possession of any other party in the Case.  In this regard, numerous parties, including RAF, have already voluntarily provided the Trustee and his professionals with numerous records and documents.  RAF has already provided the Trustee and his counsel with numerous records and documents, both from RAF's own files and also from the files of third parties that RAF obtained through discovery.  *See, e.g.,* email and documents from Annette Sanchez to the Trustee, Hudson Jobe and Jason Rae, dated August 2, 2023; email and documents from Annette Sanchez to the Trustee and numerous others, dated September 5, 2023; email and documents from Annette Sanchez to Hudson Jobe and others, dated November 3, 2023; email and documents from Annette Sanchez to the Trustee and others, dated March 5, 2024; email and documents from Annette Sanchez to the Trustee and others, dated May 1, 2024; second email and documents from Annette Sanchez to the Trustee and others, dated May 1, 2024; Email from me to the Trustee and Hudson Jobe, dated April 23, 2024.  Further, we are aware that the Trustee and his counsel have been provided with numerous documents from third parties both informally and through formal discovery.  We also are aware that the Trustee and his counsel are now in possession of all of the records, documents and information (including iPhones, iPads, computer hard drives, etc.) that Focus took custody of when Brian McClain committed suicide.  In short, if and to the extent the Trustee is asking RAF to produce records the Trustee already has (and we believe he is), the Subpoena is unduly burdensome.

3.     RAF further objects to the Subpoena on the ground that the use of terms such as "all documents or electronically stored information," "all communications" with any "Debtor or any Debtor Affiliate," "all communications" with any third party referring to any "Debtor or a Debtor Affiliate," "all internal communications," "all financial analysis and reports," etc., render the discovery requests in the Subpoena overly broad, unduly burdensome, and not proportional, and thereby the Subpoena fails to comply with F.R.C.P. 26(b)(1) and 45(d)(1).

APP036

4.     RAF further objects to the Subpoena on the ground that it imposes an undue burden and expense on RAF but does not offer to compensate RAF for its compliance.  Specifically, the Subpoena requires RAF to search and identify tens if not hundreds of thousands of pages of potentially responsive documents going back numerous years, some of which may be located in storage on backup discs and at other locations. Additionally, the Subpoena requires a written response and/or privilege log for items that are unavailable or privileged, which constitutes a substantial portion of the information and documents requested in the Subpoena. The Subpoena, however, does not offer to compensate RAF for the time and costs spent by its internal legal department and its outside counsel in having to make such a time-intensive search, conduct a privilege review, and/or prepare a privilege log.

5.     RAF further objects to the Subpoena because the same requests the production of numerous internal documents that contain highly confidential information related to RAF, its internal processes and procedures, and its internal review, underwriting, monitoring and/or decision-making processes.  Even if it were appropriate to produce such documents pursuant to the Subpoena, those documents will not be produced absent entry of a protective order, satisfactory to RAF and its counsel, and agreed to by the Trustee and approved by an Order of the Bankruptcy Court.

6.     RAF further objects to the Subpoena under F.R.C.P. 26(b)(1), because it seeks information and documents that are not relevant to the Debtors or the Case, not proportional to the needs of the case, and does not justify the burden or expense of the proposed discovery.

7.     RAF further objects to the Subpoena to the extent it seeks information beyond the scope of permissible discovery authorized by Federal Rule of Bankruptcy Procedure 2004.

8.     RAF objects to the Subpoena to the extent the same purports to impose any responsibility on RAF beyond those required by

3

APP037

any applicable Rules of Civil Procedure, the Local Rules of the
Bankruptcy Court, or any applicable Orders of the Bankruptcy Court.

Subject to the foregoing General Objections and any specific
objections or comments noted below, RAF responds as follows to the
document requests set forth in the Subpoena, but does not repeat the
text of those document requests here in for the sake of brevity:

RESPONSE TO DOCUMENT REQUEST 1:  Subject to the
limitation that "all documents or electronically stored information
accessible to You concerning all Debtor/Affiliate Accounts and all
Debtor/Affiliate Loans" is referring to RAF's own business records that
have not already been provided to the Trustee, RAF states that it will
provide responsive documents at a time and place mutually agreeable
to the parties once RAF and its counsel have conducted privilege and
other reviews and have compiled the documents and, with respect to
confidential, proprietary and/or sensitive information and documents,
after RAF and the Trustee have entered into a protective order
acceptable to RAF and its counsel, as set forth in General Objection 5
above.  Further, as has already been explained to the Trustee and his
counsel, RAF is not a depository institution and much if not all of the
banking and financial information sought in this request is not kept or
maintained by RAF but, instead would be kept or maintained by the
Debtors' financial institutions who RAF understands were Community
Financial Security Bank and Mechanics Bank.  RAF has already
provided the Trustee with all records it obtained from CFSB in
response to RAF's subpoena on CFSB.  In fact, RAF has voluntarily
provided to the Trustee and his counsel all records that RAF has
obtained through Rule 2004 subpoenas from any third parties that
would be relevant to the Case.  Likewise, RAF understands that the
Trustee has already obtained all responsive Mechanics Bank records
from Mechanics Bank.  Information regarding draws made on RAF's
line of credit to the Debtors and any repayments on that line of credit
has already been provided to the Trustee and his counsel.

RESPONSE TO DOCUMENT REQUEST 2:  The records of any
"transfers of property" by and between RAF and the Debtors or their
affiliates are reflected in the loan and security documents that were
executed by the parties, and the accounting statements showing draws
on the line of credit that RAF extended and payments made on that
line of credit. RAF's core loan documents, which would identify all of
the property that was pledged to RAF by either the Debtors or Brian

4

APP038

McClain to secure RAF's loans, are attached to the proof of claim filed by RAF in the Case. Further, details of all draws against and payments on the line of credit loan have been provided to the Trustee and his counsel. Rabo does not believe it has any records of property transfers by and between the Debtors and any third parties (other than records that have already been provided to the Trustee) but, to the extent it locates such records, it will provide copies thereof to the Trustee and his counsel at a time and place mutually agreeable to the parties.

RESPONSE TO DOCUMENT REQUEST 3: See responses to Document Requests 1 and 2 above. In short, RAF believes it has already provided the Trustee with any documents in its possession that would be responsive to this request but, to the extent it locates any additional responsive documents, it will provide copies thereof to the Trustee and his counsel at a time and place mutually agreeable to the parties.

Please let me know if you would like to discuss this response further.

Sincerely,

RAY QUINNEY & NEBEKER P.C.

Michael R. Johnson

MRJ/mjc

cc: Rabo AgriFinance LLC

5

APP039

# Exhibit G

APP040

**RAY ● QUINNEY & NEBEKER**

June 5, 2024

<u>VIA EMAIL (hjobe@qslwm.com and gsudbury@qslwm.com)</u> **AND
REGULAR MAIL**

QUILLING, SELANDER, LOWNDS, WINSLETT & MOSER, P.C.
Attn: Hudson M. Jobe, Esq. & Gregory Sudbury, Esq.
2001 Bryan St, Ste 1800
Dallas, TX 75201

**Michael R. Johnson**
ATTORNEY AT LAW

PO Box 45385
Salt Lake City, Utah
84145-0385

36 South State Street
Suite 1400
Salt Lake City, Utah
84111

801 532-1500 FIRM
801 323-3363 DIRECT
801 532-7543 FAX
mjohnson@rqn.com
www.rqn.com

> *Re: Rabo AgriFinance LLC/McClain Farms Inc.*
> *U.S. Bankruptcy Court Northern District of Texas*
> *Case No. 23-20084-rlj7; Objections to Subpoena*
> *Served on Focus Management Group USA, Inc.*

Dear Hudson and Gregory:

I am writing on behalf of Focus Management Group USA, Inc.
("**Focus**"), a management consulting firm, as well as my client Rabo
AgriFinance LLC ("**RAF**") and my law firm Ray Quinney & Nebeker
P.C. ("**RQN**") (Focus, RAF and RQN, collectively, the "**Objecting
Parties**") in response to the *Subpoena to Produce Documents,
Information, or Objects or to Permit Inspection of Premises in a
Bankruptcy Case (or Adversary Proceeding)* (the "**Subpoena**") dated
May 10, 2024, issued to Focus out of the above-referenced jointly
administered Chapter 7 bankruptcy cases (the "**Case**") pending before
the U.S. Bankruptcy Court for the Northern District of Texas (the
"**Bankruptcy Court**").

On or about March 17, 2023, RQN, in its capacity as counsel to
RAF, engaged Focus as an expert consultant in anticipation of both
potential litigation against McClain Feedyard, McClain Farms and 7M
Cattle Feeders (collectively, the "**Debtors**"), and likely bankruptcy
filings by the Debtors, as well as to provide general consulting and
related services to RQN and RAF with respect to RAF's loans to the
Debtors and the collateral securing those loans. At your request, I
previously sent to you that certain *Focus Management Group USA,
Inc. Agreement for Consulting Services General Terms and Conditions*
(the "**Consulting Agreement**"), dated March 17, 2024, by and between
Focus and RQN.

A PROFESSIONAL CORPORATION

APP041

Shortly after the Consulting Agreement was signed, and pursuant to the terms thereof, Focus provided various services to RQN. Focus's services commenced on or about March 20, 2023, and generally concluded on or about June 2, 2023. Pursuant to the Consulting Agreement, Focus was retained in anticipation of litigation as an expert consultant to RQN, produced privileged work product to RQN, and RQN and its client RAF have no current intention to retain Focus to testify about any facts or opinions in either the Case or any related adversary proceedings. Therefore, under Federal Rules of Civil Procedure ("**F.R.C.P.**") 26 and 45 and Federal Rules of Evidence 501 and 502, the documents and information the Subpoena seeks from Focus is protected from discovery. If and to the extent that RQN were to retain Focus in the future as a testifying expert, then RQN would fully intend on complying with F.R.C.P. 26 and would produce the information required by that rule to the adverse parties in such matters.

In addition to the foregoing, we note that paragraph 3 of the Consulting Agreement makes clear that all reports and other information provided by Focus to RQN shall be considered the work product of RQN: "Although Lender will pay Consultant directly, Counsel shall retain exclusive rights to ownership of all work product hereunder. Work product shall include, without limitation, all of Consultant's reports issued pursuant to the Authorization." Thus, not only is the information sought in the Subpoena protected from discovery, but Focus has now ownership of the work product it provided under the Consulting Agreement and, instead, all of that work product belongs to RQN. Paragraph 9 of the Consulting Agreement likewise contains a strict confidentiality statement pertaining to all information that is gained or developed under the Consulting Agreement. The confidentiality statement is still in effect according to the Consulting Agreement which specifically states that the "confidentiality requirements set forth herein will continue in effect even after termination of this Agreement."

Furthermore, RQN is informed and believes that Focus does not have any materials, documents, records of communications, or information that is not subject to the claims of privilege or protection of trial preparation materials set forth herein. To be sure, at RQN and RAF's request, Focus took possession of various business records of the Debtors once Brian McClain committed suicide and it became

2

APP042

necessary to preserve and protect those records. As you know, however, Focus make electronic copies/images of all records obtained which were immediately provided to the Chapter 7 Trustee and his professionals, and, pursuant to a recent request of the Chapter 7 Trustee and his professionals, all of those records (including electronic such as iPhones, iPads and hard drives) were physically delivered to Lain Faulkner, with RAF footing the bill for that production.

Simply put, due to the narrow scope and involvement of Focus in matters dealing with the Debtors, the confidential and privileged nature of the work product created by Focus, and the privileged relationship between RAF and Focus as a non-testifying expert consultant retained in anticipation of litigation, the Objecting Parties all object to the Subpoena in its entirety.

In addition to the foregoing, the Objecting Parties object to the Subpoena on the following grounds:

1.      The Objecting Parties object to the Subpoena to the extent the same seeks the production of documents protected by the attorney client privilege, the work product doctrine, trial-preparation material privilege, or any other applicable privilege or non-disclosure rules, whether based on rule, statute, or recognized at common law. Pursuant to F.R.C.P. 26(b)(3)(A), a party may not discover documents prepared in anticipation of litigation for another party including materials prepared by a party's representative such as a consultant. Additionally, F.R.C.P. 26(b)(4)(D) states that a party may not discover facts or opinions held by a non-testifying expert. The Trustee seeks all documents and reports held or controlled by Focus connected to the Debtors' accounts, loans, and financial records and all internal and external communications about the Debtors including those between Focus and third parties such as RAF. These documents and communications are confidential, privileged, and protected from discovery and no waiver or exception applies. As stated in the Subpoena, Focus must "comply with the requirements of the Federal Rules of Civil Procedure and Federal Rules of Bankruptcy Procedure regarding claims of privilege or protection of trial preparation materials," and must therefore, object to the Subpoena on this basis.

2.      The Objecting Parties object to the Subpoena as unduly burdensome under F.R.C.P. 45(d)(1) to the extent the Subpoena requires production of any documents that are duplicative of any prior

3

APP043

discovery or are presumably in your client's possession or in the possession of any other party in the Case. In this regard, numerous parties, including RAF, have already voluntarily provided the Trustee with numerous records and documents.

3.     The Objecting Parties further object to the Subpoena on the ground that the use of the term "all documents" used in paragraphs A and B under the "Instructions" section and paragraphs 1, 1 (misnumbered) 2, and 3 under the "Requested Documents" section of Exhibit B of the Subpoena renders the discovery request overly broad, unduly burdensome, and not proportional, and thereby fails to comply with F.R.C.P. 26(b)(1) and 45(d)(1).

4.     The Objecting Parties further object to the Subpoena on the ground that it imposes an undue burden and expense on the Objecting Parties but does not offer to compensate the Objecting Parties for their compliance. Specifically, the Subpoena requires Focus to search and identify various business records going back over a year, some of which may be located in storage on backup discs and at other locations. Additionally, the Subpoena requires a written response and/or privilege log for items that are unavailable or privileged, which constitutes most if not all of the information and documents requested in the Subpoena. The Subpoena, however, does not offer to compensate RQN or any of the other Objecting Parties for their time and costs in having to make such a time-intensive search.

5.     The Objecting Parties further object to the Subpoena to the extent the same requires the production of internal documents that contain highly confidential information related to RAF and/or its clients and only minor references to the Debtors. Accordingly, even if it were appropriate to produce documents pursuant to the Subpoena, those documents will not be produced absent entry of a protective order, satisfactory to the Objecting Parties, and agreed to by the Trustee and approved by an Order of the Bankruptcy Court.

6.     The Objecting Parties further object to the Subpoena under F.R.C.P. 26(b)(1), to the extent it seeks information and documents that are not relevant to the Debtors or the Case, not proportional to the needs of the case, and does not justify the burden or expense of the proposed discovery.

APP044

7.      The Objecting Parties further object to the Subpoena to the extent it seeks information beyond the scope of permissible discovery authorized by Federal Rule of Bankruptcy Procedure 2004.

8.      The Objecting Parties further object to the Subpoena to the extent the same purports to impose any responsibility on any of the Objecting Parties beyond those required by any applicable Rules of Civil Procedure, the Local Rules of the Bankruptcy Court, or any applicable Orders of the Bankruptcy Court.

Based upon the foregoing, no documents or other information will be produced in response to the Subpoena at this time. However, if and to the extent you desire to further discuss the Subpoena and the conditions upon which some information (such as any written reports prepared by Focus) might be provided, we are happy to have those further discussions.

I look forward to discussing this matter further with you.

Sincerely,

RAY QUINNEY & NEBEKER P.C.

Michael R. Johnson

MRJ/mjc

cc:    Rabo AgriFinance LLC
        Focus Management Group USA, Inc.

5

APP045

# Exhibit H

APP046

2023 WL 7089249
Only the Westlaw citation is currently available.
United States District Court, D. New Jersey.

LIFESCAN, INC., et al., Plaintiffs,
v.
Jeffrey C. SMITH., et al., Defendants
ROCHE DIAGNOSTICS
CORPORATION, et al., Plaintiffs,
v.
Jeffrey C. SMITH., et al., Defendants

Civil Action No. 17-5552 and , Civil
Action No.19-8761 (CCC)(JSA)
|
Signed February 15, 2023

**Attorneys and Law Firms**

Peter C. Harvey, Patterson, Belknap, Webb & Tyler, LLP, New York, NY, Katelyn O'reilly, Lauren Ruth Malakoff, Liza M. Walsh, Peter Joseph Pizzi, Stephen V. Falanga, Christopher Matthew Hemrick, William T. Walsh, Jr., Walsh Pizzi O'reilly Falanga LLP, Newark, NJ, Claudia A. Costa, Gordon & Rees LLP, Florham Park, NJ, for Plaintiffs.

Gino A. Zonghetti, Iram Pagan Valentin, Kaufman, Dolowich & Voluck, LLP, Hackensack, NJ, Claudia A. Costa, Gordon & Rees LLP, Florham Park, NJ, Mary Susan Henifin, Buchanan Ingersoll & Rooney, PC, Princeton, NJ, Andrew George Hope, Buchanan Ingersoll & Rooney, P.C., for Defendants.

**ORDER & OPINION OF THE SPECIAL MASTER JUDGE DENNIS CAVANAUGH, RET. (FOLLOWING _IN CAMERA_ REVIEW)**

DENNIS M. CAVANAUGH, Special Master

**\*1** Plaintiffs LifeScan, Inc., Roche Diagnostics Corporation and Roche Diabetes Care, Inc. ("Plaintiffs") have filed a motion before the Special Master. Plaintiffs seek to compel Defendant Zions Bancorporation, S.A. ("Zions") to produce communications with a third party consultant, Rocky Mountain Advisory ("RMA").

In deciding this motion, the Special Master has reviewed the following:

1. Plaintiffs' letter brief in support of motion with attachments;

2. Zions' letter brief in opposition to motion with attachments; and

3. Plaintiffs' reply brief with attachments.

Additionally, during the course of a status conference held on January 25, 2023, the Special Master and the litigants addressed the pending motion at the conclusion of which Zions agreed to submit the entirety of the documents at issue for _in camera_ review.

Following _in camera_ review and for the reasons to be set forth more fully below, it is the opinion of the Special Master that Plaintiffs' motion is **GRANTED**.

**I. Procedural History and Factual Background**
Once again, the Special Master recognizes that the parties are closely familiar with the procedural history and underlying facts which form the basis of this motion. Therefore, the Special Master will only briefly summarize the procedural and factual events pertinent to this motion.

The litigation concerns the distribution and sale of diabetic testing strips ("DTS") manufactured by LifeScan and Roche. Plaintiffs contend that various named defendants including officers, directors and investors in Alliance Medical Holdings LLC ("Alliance") engaged in a complex scheme which defrauded them of profits through improper reimbursement of the sales of these strips through pharmacy benefit plans ("PBMs"). Pertinent to this particular motion, LifeScan asserts that another Defendant, Zions, a bank and an Alliance creditor, knowingly and deliberately supported this scheme.

In 2014, Zions closed a loan to Alliance. Approximately three years later, on April 7, 2017, Alliance filed for Chapter 11 bankruptcy, an event which Zions contends caused the bank to suffer a $29 million loss under the credit agreement. On July 28, 2017, LifeScan filed this action and then later named Zions as a Defendant in an amended complaint filed on November 22, 2017. Roche filed its respective pleadings on March 19, 2019 and November 1, 2019.

RMA is a forensic accounting firm. In February 2017, just months before Alliance filed for bankruptcy, RMA was retained on behalf of Zions to provide services with regard

to the borrower. Accordingly, RMA, a third party, acted as a consultant to Zions. It is RMA's role as a consultant which is at the center of this dispute. As part of the discovery process in this suit, Zions has created a privilege log identifying communications between the bank and RMA. In that log, Zions identified certain documents which the bank asserts are shielded from discovery and are described as documents in which legal advice was either sought or provided. The documents are overwhelmingly described as being attorney-client privileged while a few are also designated as work product. The log, a copy of which has been submitted to the Court, consists of seven pages and describes 82 documents. [1]

 **\*2** Plaintiffs now seek an order compelling Zions to produce these documents. As mentioned, the documents have been submitted for *in camera* review.

## II. Plaintiffs' Arguments

Plaintiffs argue, in part, that the documents sought are the same category of documents the Special Master directed to be produced when Zions challenged LifeScan's claims of privilege over its communications with three third party consultants and memorialized in an Order. [2] Effectively, Plaintiffs say RMA was retained to further Zions' commercial interests and did so in the normal course of business.

As to the attorney-client privilege, Plaintiffs argue, communications involving third parties are not ordinarily subject to protection. There is a limited exception, i.e., when the communications to the third party are made in confidence and for the purpose of obtaining legal advice, citing *E.I. du Pont de Nemours & Co. v. MacDermid, Inc.*, 06-cv-3383, 2009 WL 3048421, at \*3 (D.N.J. Sept. 17, 2009). However, the third party's involvement must be necessary to the provision of legal advice, citing *Louisiana Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 312 (D.N.J. 2008) ("*Sealed Air*").

As to work product, there is a two part inquiry: (1) At one point in time could litigation be reasonably anticipated and (2) were the documents generated because of the prospect of litigation and for no other purpose? Citing *Mondis Tech. Ltd v. LG Elecs., Inc.* 2017 WL 4155121, at \*4 (D.N.J. Sept. 19, 2017), *aff'd* 2017 WL 5495523 (D.N.J. Nov. 15, 2017). Here, say Plaintiffs, Zions cannot meet its burden to establish the privilege applies.

Although Zions asserts that it sought and received legal advice from RMA, Plaintiffs say none of the RMA employees identified is an attorney. Therefore, Zions' "bare invocation of the shadow of legal advice" does not support the notion that the communications were necessary to provide such advice. Additionally, there is a distinction between facts and advice. A party cannot shield facts from discovery even if at some point the facts are conveyed to an attorney. Here, that principle applies especially given that the communications do not involve attorneys at all.

However, Plaintiffs stress, the most fundamental flaw in Zions' assertion arises from the fact that the documents collectively concern matters of commercial interest and would have been generated regardless of the prospect of litigation or the need for legal advice. Plaintiffs assert that the descriptions associated with entries on Zions' privilege log show that the communications were generated for the purpose of conducting bank business. Therefore, such documents are not privileged. Plaintiffs point to selected documents which reference legal advice as to "corporate planning and strategy" and "contract negotiations" as examples of non-privileged, business related subjects which would have been the topic of communication with Zions' consultants irrespective of its need for legal advice or the prospect of litigation.

## III. Zions' Argument
 **\*3** Zions opposes the motion on the grounds that the communications here, unlike those subject to the prior motion, are protected by attorney-client privilege and the work-product doctrine. Therefore, this motion is merely an attempt to retaliate as a consequence of Plaintiffs having been ordered to produce documents from their third party consultants.

Zions provides some brief background to buttress its opposition. Zions served as a lender to Alliance between June 2014 and March 2017. Beginning in October 2016 until Alliance filed for bankruptcy, that entity experienced financial issues and repeatedly defaulted on its loan. On February 23, 2017, the FBI served warrants on Alliance accounts held by the bank. These events, according to Zions, raised concerns that Alliance would file for bankruptcy. As a result, in late February 2017, attorneys for Zions retained RMA "for the purpose of potential litigation with or related to Alliance," i.e., "to assist in analyzing the priority of claims between the bank and the government which could result in potential litigation." RMA continued to act as a consultant until Zions' claims in bankruptcy were resolved.

LifeScan, Inc. Smith Roche Diagnostics Corporation v. Smith, Not Reported in Fed....
2023 WL 7089249

Zions makes the following legal arguments in opposition.

### A. Attorney-Client Privilege

Zions reiterates that it retained RMA "to facilitate counsel's representation...in connection with potential litigation with Alliance." Zions says that the withheld documents show that RMA investigated Alliance's financial history and viability, "digested the acquired information" and "translated it into understandable terms" for those attorneys. Citing, *Sealed Air,* 253 F.R.D. at 312, Zions maintains third party involvement was necessary to the lawyer's provision of legal advice.

Zions effectively points to three reasons why the documents fall under the penumbra of being needed to provide legal advice. Here, the engagement letter was sent directly from RMA to Zions' attorneys and explicitly states that the consultant understood its engagement "to be directed by counsel for the purpose of potential litigation." The letter, therefore, helps demonstrate that the communications would not have been made but for the prospect of litigation. Similarly, the letter also says that any documents produced in connection with the case would be protected by applicable privileges "signifying that the parties engaged in protected communications related to counsel's provision of legal advice."

Second, unlike the litigant in *Sealed Air,* Zions' counsel here contemplated using RMA services "to render effective legal advice" as to the probable bankruptcy and government investigation.

Third, the timing of the retention, which occurred when Alliance began defaulting and the government had executed warrants, supports the position that Zions does not claim the privilege simply because the communications later became beneficial to its representation. Rather, the retention reflected then immediate legal concerns.

### B. Work-Product Doctrine

Zions asserts that this doctrine, which is more expansive than attorney-client privilege, is equally applicable. Again, Zions emphasizes that the documents were prepared because of reasonably anticipated litigation and for no other purpose. Only four days before the retention, warrants were served and therefore the bank reasonably assumed – and was ultimately proven correct – that Alliance was heading for bankruptcy. "Nothing suggests that Zions would have hired

RMA absent the combination of government warrants and Alliance's defaulted loan."

 **\*4** In short, Zions contends that the documents are protected but has submitted the documents for *in camera* review.

### IV. Plaintiffs' Reply

Plaintiffs reiterate their position that communications with third parties, such as RMA, are presumptively not privileged due to the presence of that party. This is evidenced by the fact that a substantial portion of the communications listed on Zions' privilege log are between RMA and the bank alone. Plaintiffs again harken back to the previous ruling by the Special Master to the effect that the involvement of an outside law firm who has engaged a vendor fails to constitute a "silver bullet" which protects those communications. Further, while the absence of any attorney on communications may not be dispositive, it is probative especially when documents which are claimed to be privileged bear no apparent connection to a party's litigation interest.

Zions asserts that RMA is an accounting firm not equipped to analyze the priority of claims which might result in potential litigation. Plaintiffs point to redacted documents suggesting that RMA provided accounting support, which is equally important to business decisions as to a legal strategy. In fact, factors cited by Zions to support the claim that the communications were necessary to allow its counsel to provide legal advice are equally consistent with a need for general business and financial advice. The timing of RMA's retention in early 2017 actually encompasses a time period when "Zions was wrestling with business decisions, not just legal ones." Additionally, other documentation partially produced in discovery show that an RMA employee met with the Alliance board to discuss a refinancing proposal – a purely business issue.

### V. Findings (Legal Principles)

The Special Master finds that this motion does, in fact, bear a remarkable resemblance to Zions' motion compelling Plaintiffs to produce documents and communications relating to "business practices and pre-suit investigations" performed by several third party consultants. Ultimately, Zions' motion produced an Order issued by the Special Master (following *in camera* review) compelling production of those documents.

The Special Master's decision here is not based upon what Plaintiffs mistakenly describe as a "what's good for the goose

WESTLAW   © 2024 Thomson Reuters. No claim to original U.S. Government Works.

LifeScan, Inc. Smith Roche Diagnostics Corporation v. Smith, Not Reported in Fed....
2023 WL 7089249

is good for the gander" legal principle but entirely upon the facts and circumstances that exist here. As it turns out, however, the facts and circumstances which underlie this motion are generally similar to the facts and circumstances of Zions' previous application, perhaps because Plaintiffs and Defendants found themselves in similar circumstances when it came to Alliance and engaged in similar activities.

Again, the Court is called upon to determine whether or not communications between a party and consultants retained to perform certain work in the broad context of litigation should be protected by the attorney-client privilege and/or the attorney work product doctrine (more so the former here). Zions, now in a defensive role, maintains that its consultant, RMA, was employed to provide assistance to its attorneys as to a legal issue while Plaintiffs now assert that the consultants were hired to address a business issue and that RMA would have been employed in that capacity irrespective of litigation.

**\*5** Since the Court decided the prior motion, there has been no new law on these issues nor have the parties cited any additional precedent which alters the existing legal principles. With this in mind, and recognizing that the analysis which appears below is substantially similar to the analysis contained in the Order and Opinion of May 5, 2022, the Special Master will briefly address the attorney-client privilege and work-product doctrine in that order.

Again, the primary purpose of the attorney-client privilege is to encourage "full and frank communications between attorneys and their clients". *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981). Given this, the principle inquiry "is whether a communication is one that was made by a client to an attorney for the purpose of obtaining legal advice". *In Re: Spalding Worldwide, Inc.,* 203 F. 3d 800 (Fed. Cir. 2000).

This privilege is narrowly construed since it obstructs the truth finding process. *Westinghouse Elec. Corp. v. Republic of the Philippines,* 95 F. 2d 1414, 1423 (3d Cir. 1991) and our Courts are admonished to be cautious in its application since "it protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege". *Fischer v. United States,* 425 U.S. 391, 403, 93 S. Ct 1569, 48 L. Ed.2[nd] 39 (1976). The privilege includes within its ambit corporations; although the administration of the privilege in the case of corporations presents "special problems". See, *In Re: Bevill, Bresler & Schulman Asset Mgmt. Corp.,* 805 F. 2d 120, 124 (3d Cir. 1986). Significantly here, communications relating to business matters rather than legal matters do not fall within the protection of the privilege. Therefore, "while legal advice given to a client by an attorney is protected by the privilege, business advice generally is not". See, *Leonen v. Johns-Manville,* 135 F.R.D. 94, 98 (D.N.J. 1990). The privilege does not apply simply because a statement was made to an attorney and the fact that an attorney is copied on emails does not prove a document is privileged. *In Re Riddell Concussion Reduction Litig.,* 2016 WL 7108455, at \*3 (D.N.J. Dec. 5, 2016). Routine communications amongst corporate or company personnel do not become privileged because in-house or outside counsel are copied since litigants could "facilely avoid producing relevant discovery by simply copying an attorney on every email". *Id.* at \*3.

The fact that an attorney communicates with a third party does not necessarily waive the privilege provided that the disclosure is necessary "for the client to obtain informed legal advice" and constitutes an exception to the rule. *Westinghouse Corp.,supra,* at 1424. Or, as the Court stated in *Riddell*: "To be protected communications with a third party agent must be made in confidence for the purpose of obtaining legal advice from the lawyer". *Id.* at \*6.

The party claiming the third-party as an agent has the burden of showing that a privilege exists and that it has not been waived. *Id.*

The work-product doctrine provides qualified immunity from discovery of materials prepared by an attorney or the attorney's agent in anticipation of litigation or for trial. *In Re Gabapentin Litigation,* 214 F.R.D. 178, 182 D.N.J. 2003). This doctrine is codified in Fed. R. Civ. P. 26(b)(3):

> A party may obtain discovery of documents and tangible things otherwise discoverable...and prepared in anticipation of litigation or for a trial by or for another party or by or for that party's representative (including the other party's attorney, consultant...or agent...) only upon a showing that the party...has substantial need for the materials...and cannot, without undue hardship...obtain

LifeScan, Inc. Smith Roche Diagnostics Corporation v. Smith, Not Reported in Fed. ....

2023 WL 7089249

their substantial equivalent by other means.

**\*6** Courts in this Circuit have applied a two part test in determining whether communications should be protected under the doctrine. *In re Gabapentin, supra,* at 183. The first prong is the "reasonable anticipation" test which requires the Court to "determine at what point in time litigation could reasonably have been anticipated". *Id.* While the phrase "in anticipation of litigation" may be incapable of the precise definition, the Courts in this Circuit and District have provided a template for assessing whether a document can be said to be prepared in anticipation of litigation:

> In general, though, "a party must show more than a 'remote prospect' and 'inchoate possibility', or a 'likely chance of litigation' ". Rather, a party must show that there existed "an identifiable specific claim of impending litigation when the materials were prepared"...The mere involvement of, consultation with, or investigation by an attorney does not, in itself, evidence the "anticipation of litigation"...Neither will the mere fact that litigation actually occurred establish that documents prepared before the litigation were created in anticipation thereof. *In Re Gabapentin Litigation, supra,* at 183 (citations omitted).

In this Circuit, there is a second prong – whether the material was produced because of the prospect of litigation "and for no other purpose". Documents created for other purposes that prove useful in subsequent litigation are not attorney work-product while documents that are routinely prepared in the ordinary course of business are outside the scope of work-product protection. *In Re Gabapentin Litigation, supra,* at 184.

The Special Master will now apply those principles to the facts and circumstances which form the basis of this motion.

## VI. Findings

In order to provide context to this ruling, the Special Master will briefly summarize the contents of the documents submitted for *in camera* review.

As set forth previously, Zions provided 82 documents along with a corresponding privilege log. In that log, Zions asserts that the documents have been withheld on the basis of

attorney-client privilege, work product or both. However, as noted previously, overwhelmingly Zions asserts attorney-client privilege as a basis for shielding these documents with only seven emails withheld, in part, as work product.

The documents themselves encompass a time frame from March 23, 2017 to April 5, 2017. All are emails – some single emails but most are email "strings" in which communications are being replied to or forwarded among the parties. Those parties can generally be categorized into three groups: employees of Rocky Mountain Advisory (RMA), the consultant; employees of Zions; and attorneys from the law firm of Ray Quinney & Nebeker P.C. ("RQN"). The firm appears to be Zions' local counsel.

Few of the documents (11 in number) are actually authored by Zions' counsel although RQN lawyers are copied on a large majority of the communications. Perhaps a third of the documents consist of emails in which the RQN attorneys were neither the sender, the recipient, nor one of those copied. In other words, no apparent attorney participation at all.

In the Special Master's assessment, the emails contain little substantive information. A substantial number of them are merely repetitive or reflect a recipient's acknowledgement of receipt. Many of the communications simply involve the timing of meetings or phone calls.

The emails initially concern the engagement letter which has been produced for *in camera* review and has been partially referenced by Zions in its opposition. The communications reflect that RMA, the consultant, prepared the engagement letter. While Zions' counsel were copied on emails concerning the letter, and while counsel appear to have approved the final draft, this was essentially an exchange between Zions and RMA.

**\*7** From this point forward, the substantive topics addressed generally concerned requesting and/or obtaining information relating to Alliance's (that is, another third party's) financial status. Among the topics addressed were: access to Alliance's computer system to monitor the company's transactions; Alliance's cash flows; Alliance's accounts receivable; questions as to whether Alliance was diverting monies to new accounts; the company's attempts at cost cutting measures; the potential for a "white knight" to buy the failing company; extending draws to Alliance; and generally determining Alliance's viability moving forward.

2023 WL 7089249

In short, virtually all of the substantive communications reflect a creditor's (Zions') concerns with the financial stability of a debtor (Alliance). RMA appears to have been hired to explore these issues, obtain information and report back to Zions as to its findings. The communications also reflect that RMA was in direct contact with Alliance and its employees.

Taking all of these emails into consideration, the broad picture painted by them can be described as follows. After it appeared that Alliance was in financial and legal trouble and perhaps heading to bankruptcy, Zions hired RMA to perform forensic accounting services in order to retrieve pertinent information as to Alliance's status. Ultimately, a bankruptcy took place, so it could be argued that litigation was certainly looming, but the retention of a forensic accountant was clearly the type of action that would be taken by any lender which had made a substantial loan to a borrower whose business appeared to be in trouble. Moreover, as we know from other communications cited by Plaintiffs, the bank and Alliance had discussed a forbearance agreement, i.e., an alternative plan by which Alliance could pay off its debt. Therefore, Zions, like any other lender, also considered steps short of litigation in an effort to mitigate the losses associated with a potentially bad loan – a business concern.

It is the Special Master's finding that the retention of a third party forensic accountant (RMA) to act as a consultant and analyze the financial viability of a creditor constitutes action taken in the ordinary course of business, an action that would have been taken irrespective of the prospect of litigation. Many of the emails at issue are communications between Zions and RMA as to which the bank's attorneys seem to have had little or no input. Additionally, a number of the entries in the privilege log which describe the communications as "seeking" or "providing" legal advice are simply exchanges of factual information as to Alliance's ongoing financial status such that the characterizations in the log are a far cry from the actual content of the communications. Furthermore, no communications, emanating from or directed to the bank's counsel in any way suggests an exchange containing legal advice or needed to provide legal advice or commentary.

In summary, the Special Master concludes that the communications are protected neither by attorney-client privilege nor the work product doctrine. Nothing in the emails transmitted between Zions, RMA and Zions' counsel demonstrate that the disclosure was necessary for the client to obtain informed legal advice so as to fall under the rubric of attorney-client privilege. While Alliance ultimately declared bankruptcy and thereby, in effect, instituted litigation, the Special Master finds that there was not an identifiable specific claim of impending litigation when the materials were prepared and that the communications were not prepared solely for the purposes of litigation. Instead, the communications were prepared in the ordinary course of the bank's business and would have been prepared irrespective of litigation.

*8 Therefore, for all of the reasons stated above, Plaintiffs' motion is **GRANTED** and Zions is **ORDERED** to produce the documents at issue.

### VII. Conclusion

For the reasons previously set forth, it is the opinion of the Special Master that Plaintiffs' motion is **GRANTED** and Zions is **ORDERED** to produce the documents at issue.

### All Citations

Not Reported in Fed. Supp., 2023 WL 7089249

---

### Footnotes

1   The last page is entitled a "Redaction Log" but the document will simply be referred to here in the singular ("log").

2   The opinion that Plaintiffs reference arose from the Special Master's Order of May 5, 2022. Zions had sought production of documents relating to pre-suit investigations performed by consultants retained by Plaintiffs. The motion was denied pending *in camera* review and the parties were ordered to provide an agreed upon set of documents. After review, an Order dated August 5, 2022 was entered compelling Plaintiffs to produce these communications. The Order and Opinion compelling production included a finding that communications

---

**LifeScan, Inc. Smith Roche Diagnostics Corporation v. Smith, Not Reported in Fed....**

2023 WL 7089249

were not protected by either attorney-client privilege or the work product doctrine and were neither necessary to obtain informed legal advice "nor related solely to an identifiable specific claim of impending litigation and for no other purpose."

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.