# Exhibit A

APP001

Whitney, Thompson & Jeffcoach LLP
Timothy L. Thompson, #133537
 *tthompson@wtjlaw.com*
Paul Gaus, #319979
 *pgaus@wtjlaw.com*
970 W. Alluvial Ave.
Fresno, California 93711
Telephone:    (559) 753-2550
Facsimile:    (559) 753-2560

Freedman & Taitelman
Bryan J. Freedman, #151990
 bfreedman@ftllp.com
1801 Century Park W Fl 5,
Los Angeles, CA 90067-6408
Phone:    (310) 201-0005
Facsimile:    (310) 201-0045

Ewing Johnson & Graves, PLC
Vance B. McAlister, #156624
 *v.mcalister@ejgd.com*
636 W. State Street
El Centro, CA 92243
Phone:    (760) 352-6371
Facsimile:    (760) 353-5355

Attorneys for CHARLES JOHNSON, dba  CJ
CATTLE CO.

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF IMPERIAL

| | |
|---|---|
| RABO AGRIFINANCE, LLC a Delaware limited liability company;<br><br>            Plaintiff,<br><br>      v.<br><br>PHILLIPS CATTLE CO., INC., a California corporation; WESTERN MEAT PROCESSORS, INC., a California corporation; ROBERT BAUER, as Co-Trustee of the Bauer Family Trust dated March 4, 1991; JOAN BAUER, as Co-Trustee of the Bauer Family Trust dated March 4, 1991; ROBERT BAUER, as Trustee of the Phillip Himmelfarb Testamentary Trust dated April 9, 1997, and DOES 1-50, inclusive,<br><br>            Defendants. | Case No.  ECU003066<br><br>**REAL PARTY IN INTEREST, CJ CATTLE'S OPPOSITION TO RABO AGRIFINANCE, LLC'S MOTION FOR INSTRUCTIONS TO RECEIVER TO REPAY EMERGENCY ADVANCES**<br><br>Date:      September 4, 2024<br>Time:      8:30 a.m.<br>Dept.:      5<br><br><br>Assigned for all purposes including trial to Judge Jeffrey B. Jones |

716.0 06122524.000

WHITNEY
THOMPSON &
JEFFCOACH

REAL PARTY IN INTEREST, CJ CATTLE'S OPPOSITION TO RABO AGRIFINANCE, LLC'S MOTION FOR
INSTRUCTIONS TO RECEIVER TO REPAY EMERGENCY ADVANCES

APP002

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................1

II.   FACTS .......................................................................................................................4

    A.    Denise Matejovsky's Account of PCC's Collapse.......................................4

    B.    In Late July and Early August of 2023, Focus Begins Working At PCC and
        Becker Acknowledges Rabo's Collateral Does not Include Cattle on PCC's
        Yard ..............................................................................................................5

    C.    Rabo's Receivership Application Represents its Collateral Includes Cattle
        on PCC's Yard ...............................................................................................6

    D.    In August of 2023, Focus Management Denies CJ Access to His Business
        Records in the Possession of PCC and Forces CJ to Pay Over $100,000 to
        Retrieve His Cattle .......................................................................................8

    E.    On November 28 and 29, 2023 Focus Provides Rabo Access to Information
        and Apparently Concedes that "Not all Assets in the Receivership Estate"
        are Rabo's Collateral ....................................................................................9

    F.    Rabo Produces a Privilege Log in the "CJ Cattle Action" Evidencing
        Communications Between Rabo and Focus in April of 2023 ...................10

    G.    Evidence of Preexisting But Undisclosed Relationship Between Rabo and
        Focus Management in *In re Waggoner Cattle* (Bankr. N.D. Tx. Case No.
        18-20126) and Related Adversary Proceeding..........................................11

    H.    Evidence of a Preexisting But Undisclosed Relationship Between Focus
        Management and Rabo in the McClain Feed Yard Bankruptcy ................11

III.  LAW AND ARGUMENT .......................................................................................12

    A.    Rabo Cannot Receive Money From the Receivership Estate Until it Proves
        its Legal and Factual Entitlement to the Property ....................................12

    B.    Rabo's Failure to Disclose its Extensive Preexisting Relationship With
        Focus Management Groups Warrants Denial of the Motion ...................13

IV.   CONCLUSION ........................................................................................................14

716.0 06122524.000                                              i

WHITNEY
THOMPSON &
JEFFCOACH

REAL PARTY IN INTEREST, CJ CATTLE'S OPPOSITION TO RABO AGRIFINANCE, LLC'S MOTION FOR
INSTRUCTIONS TO RECEIVER TO REPAY EMERGENCY ADVANCES

APP003

1

# <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

<u>CASES</u>

4

*City of Sierra Madre v. SunTrust Mortgage, Inc.* (2019) 32 Cal.App.5th 648, 656 ...................... 12

5

*Kaura v. Stabilis Fund II, LLC* (2018) 24 Cal.App.5th 420, 433 ............................................... 1, 13

6

*People v. Conagra Grocery Prods. Co.*, (2017) 17 Cal.App.5th 51 ............................................... 14

7

*Southern California Sunbelt Developers, Inc. v. Banyan Limited Partnership* (2017) 8
    Cal.App.5th 910, 923 .................................................................................................. 2, 13

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WHITNEY
THOMPSON &
JEFFCOACH

REAL PARTY IN INTEREST, CJ CATTLE'S OPPOSITION TO RABO AGRIFINANCE, LLC'S MOTION FOR
INSTRUCTIONS TO RECEIVER TO REPAY EMERGENCY ADVANCES

APP004

# I.
# INTRODUCTION

Rabo's Motion for an interim distribution of roughly one-fifth (1/5) of PCC's receivership estate should be summarily denied for two reasons.

*First*, Rabo has no claim to the property comprising PCC's receivership estate. Roger Becker, a Senior Financial Restructuring Manager at Rabo, admitted this. In an email dated August 3, 2023 – weeks before Rabo sought appointment of a receiver - Mr. Becker wrote of PCC:

> "[T]hey own almost no cattle, it appears to me that it is basically a custom feeding operation *so the cattle in the lot belong to others*. . . . Now that I understand that, *there is really none of our livestock collateral to count*[.]" (*See* Declaration of Paul R. Gaus ("Gaus Decl.") ¶ 13.a, Ex. I [August 3, 2023 email from Roger Becker].)[1]

Notwithstanding Mr. Becker's admission, Rabo represented to this Court its personal property collateral included "approximately 10,200 head of livestock, as *well as proceeds therefrom*" in its receivership application filed three weeks later. (*See* Request for Judicial Notice ("RJN") ¶ 2, Ex. 2 at p. 2:7-8 [Rabo's ex parte application for receiver].) Presently, PCC's receivership estate consists almost entirely of cattle proceeds.

Rabo did not gain an interest in or title to property just because it obtained a receivership over PCC based on the erroneous representation that its collateral included cattle on PCC's yard. (*Kaura v. Stabilis Fund II, LLC* (2018) 24 Cal.App.5th 420, 433 [title to receivership property "remains in those in whom it was vested" when receiver appointed].) Thus, one reason for denying Rabo's Motion boils down to a pretty simple proposition: Rabo wants to get paid out of property it knows it does not own or have an interest in.

*Second*, Rabo tainted the integrity of this receivership because it failed to accurately disclose to this Court its extensive preexisting business relationship with Focus Management Group. Had Rabo properly disclosed this, it would have been clear to this Court that Focus Management cannot serve as a court appointed neutral because it is aligned with Rabo. (*Southern California Sunbelt*

---

[1] Mr. Becker's email was produced by Rabo in connection with *Charles Johnson v. Rabo Agrifinance et al.* (Imperial County Case No. ECU003300) (the "CJ Action"). (Gaus Decl. ¶¶ 8, 13.) It is Bates Numbered RABO-0000511. (*Id.*)

716.0 06122524.000                                                          1

REAL PARTY IN INTEREST, CJ CATTLE'S OPPOSITION TO RABO AGRIFINANCE, LLC'S MOTION FOR
INSTRUCTIONS TO RECEIVER TO REPAY EMERGENCY ADVANCES
APP005

WHITNEY
THOMPSON &
JEFFCOACH

1  *Developers, Inc. v. Banyan Limited Partnership* (2017) 8 Cal.App.5th 910, 923 ["A receiver is an

2  agent and officer of the court, and is under the control and supervision of the court[.]"].)

3       To avoid this, Rabo claimed in its receivership application that **PCC** hired Focus

4  Management to provide outside consultancy services as the company collapsed. (RJN ¶ 2, Ex. 2

5  ["The Borrowers retained an outside consultancy firm, Focus Group, to make sense of their

6  remaining records . . . .".) Moreover, Rabo  supported its receivership application with a declaration

7  from Juanita Schwartzkopf. (RJN ¶ 4, Ex. 4 [Declaration of Juanita Schwartzkopf].) Ms.

8  Schwartzkopf  misleadingly declared that neither she nor Focus had a preexisting "business

9  relationship" with Rabo. (RJN ¶ 3, Ex. 3 at p. 2 .)

10       None of this was true. In late July or early August 2023, PCC general manager Steve Snow

11  told Charles Johnson that Rabo had asked PCC to allow a group of "forensic accountants"

12  associated with Focus Management to analyze the business records of PCC. (*See* Declaration of

13  Charles Johnson ("Johnson Decl.") ¶ 2.) Snow later clarified to Mr. Johnson that Focus

14  Management were "workout people" Rabo wanted PCC to use. (*Id*.) There is evidence that Rabo

15  and Focus representatives were scheduling daily calls as early as August 8, 2023 which allowed

16  Focus to share with Rabo the findings of its investigation of PCC which were then used by Rabo in

17  its receivership application.  Effectively, Focus has been working as an agent for Rabo once they

18  began their "consulting" work at PCC.  Based on this existing relationship, on August 14, 2023,

19  Roger Becker expressly invited Ms. Schwartzkopf and Focus to serve as PCC's receiver so the

20  relationship could continue.  None of this direct/prior relationship was fully disclosed to the court in

21  the receivership application

22       In addition, court documents filed in similar cattle feedlot related bankruptcies in the

23  Northern District of Texas remove any doubt of an extensive – yet undisclosed – preexisting

24  relationship between Rabo and Focus. The cases, identified below, indicate a pattern and practice

25  whereby Rabo employs Focus as a "consultant" to (i) take over distressed cattle operations (usually

26  involving fraud); (2) seize physical and electronic evidence; and (3) stonewall other parties' efforts

27  to obtain that evidence. The cases are:

28       • Bankr. N.D. Tex. Case No. 18-20126 ("Waggoner Cattle Bankruptcy");

WHITNEY
THOMPSON &
JEFFCOACH

716.0 06122524.000

2

REAL PARTY IN INTEREST, CJ CATTLE'S OPPOSITION TO RABO AGRIFINANCE, LLC'S MOTION FOR
INSTRUCTIONS TO RECEIVER TO REPAY EMERGENCY ADVANCES

APP006

- Bankr. N.D. Tex. Adv. Proc. 18-02007 ("LSSB Adversary Proceeding")[2];

- Bankr. N.D. Tex. Case No. 23-20084 ("McClain Feed Yard, Inc. Bankruptcy").

For example, the Court can take judicial notice that Rabo and Focus are **presently** the subject of a motion to compel filed by the chapter 7 trustee in the McClain Feed Yard, Inc. Bankruptcy. (RJN ¶ 11, Ex. 11 [trustee's motion to compel].)[3] There, the trustee alleges "Rabo hired Focus Management Group USA" as a consultant in early 2023. (*Id*.) As in this case, the trustee alleges Focus took "possession of all of the Debtors' physical and electronic records and move[d] the same to Focus' Chicago office." (*Id*.)   This pre-existing business/consulting relationship between Rabo and Focus should have been, but was not disclosed to this Court.

Thus, no monies should leave the receivership estate and Rabo's Motion should be denied. Instead, an order to show cause should issue as to (i) why neither Rabo nor the Receiver (Focus Management Group) disclosed their extensive preexisting business relationship; and (ii) whether Focus Management Group should be disqualified as Receiver.[4]

**II.**

---

[2] The LSSB Adversary Proceeding involves an action between Lone Star State Bank of West Texas ("LSSB") and Rabo. (RJN ¶ 8, Ex. 8.)  LSSB's third amended complaint includes allegations that Rabo seized cattle belonging to LSSB as it realized Waggoner Cattle was collapsing. (*Id*. at ¶ 184-185.) Paragraph 185 of LSSB's third amended complaint alleges that "[B]etween November 30 and December 14, 2016, Roger Becker (the same person involved in this case) directed that many of the calves . . . be taken out of the calf ranch as quickly as possible in order to avoid [LSSB] discovery that those cattle – its collateral – had "disappeared"." (*Id*. at ¶ 185) Paragraph 251 alleges a Waggoner Cattle related entity (Cliff Hanger) "resold" cattle "at the direction of Roger Becker, and Rabo accepted and kept all the proceeds of these cattle sales, even though Rabo had no security interest or lien as to the Waggoner Collateral[.]" (*Id*. at ¶ 251.)

[3] This document is entitled *The Trustee's Motion to Compel Production of Documents From Rabo Agrifinance and Focus Management*" and it appears as ECF No. 268 in the McClain Feed Yard, Inc. Bankruptcy. (RJN ¶ 11, Ex. 11.)

[4] CJ Cattle is continuing to learn of additional wrongdoing by Rabo, Focus Management, and PCC and are examining whether and to what extent their pattern and practice of  wrongdoing in similar transactions establishes viable RICO violations. Rabo has a pattern and practice of illegal activities such as money laundering which resulted in criminal charges and Rabo forfeiting over $360 million in assets in United States District Court for Southern District of California Case No. 18-00614.

WHITNEY
THOMPSON &
JEFFCOACH

716.0 06122524.000                     3
REAL PARTY IN INTEREST, CJ CATTLE'S OPPOSITION TO RABO AGRIFINANCE, LLC'S MOTION FOR
INSTRUCTIONS TO RECEIVER TO REPAY EMERGENCY ADVANCES

APP007

**FACTS**

**A.**     **Denise Matejovsky's Account of PCC's Collapse**

Denise Matejovsky served as PCC's controller and chief financial officer. (*See* Declaration of Denise Matejovsky ("Matejovsky Decl.") ¶ 2.) She worked at PCC for over thirty years. (*Id*.)

In December 2022 and January 2023, Ms. Matejovsky began warning Robert Bauer and PCC management that PCC would be facing serious cash flow issues during 2023. (*Id*. at ¶ 4.) She recommended PCC begin cutting costs by deferring maintenance and repair projects, reducing payroll expenses, and postponing purchases on vehicles and equipment, among other things. (*Id*.) Her recommendations were ignored. (*Id*.)

Ms. Matejovsky warned Bauer about PCC's cash flow issues again in February 2023 and asked him how he planned to address the cash flow issue. (*Id*. at ¶ 5.) According to Ms. Matejovsky, Mr. Bauer said "Let's talk to Rabobank" about extending and increasing PCC's line of credit to provide additional funds to create cash flow. (*Id*.)

In late February or early March of 2023, Ms. Matejovsky spoke with Jarrod Redden of Rabo about PCC needing to extend and increase its line of credit to meet cash flow issues. (*Id*.) Ms. Matejovsky provided Redden the information needed to process the request. Ms. Matejovsky is aware that Mr. Bauer also spoke with Rabo (including Redden) about this increase in the line of credit. (*Id*.)

In late Spring of 2023 (April), Ms. Matejovsky was informed the line of credit had been approved and was working its way through Rabo's process. (*Id*. at ¶ 7.) Ms. Matejovsky called several times a week to check on the status because PCC's cash-flow issues had become acute. (*Id*.)

In May of 2023, Ms. Matejovsky was calling or texting Mr. Redden several times a day regarding the line of credit. Mr. Redden always told her that the increase had been approved and funds would be available shortly.

In early May 2023, Ms. Matejovsky told Bauer that she needed to pay Chuck Johnson. (*Id*. at ¶ 9.) According to Ms. Matejovsky, Bauer told her that Mr. Johnson's payment would just have to wait. (*Id*.) She understood this to mean that payments to Chuck Johnson would have to wait for the additional funds to come from Rabo. (*Id*.)  This evidence demonstrates that Rabo had knowledge of

4

REAL PARTY IN INTEREST, CJ CATTLE'S OPPOSITION TO RABO AGRIFINANCE, LLC'S MOTION FOR
INSTRUCTIONS TO RECEIVER TO REPAY EMERGENCY ADVANCES

1  PCC's financial decline well before August of 2023 as represented in Rabo's receivership

2  application.

3      Ms. Matejovsky informed Bauer she was quitting PCC in June of 2023 because she was tired

4  of dealing with vendors and customers. (*Id*. at ¶ 10.) Bauer assured her that he had a plan to correct

5  the issues at PCC and that he was consulting with others and accountants to restructure the business

6  to address the cash flow issues. (*Id*.) She took a week off of work to consider whether to return to

7  PCC. (*Id*.) She returned to work because of Bauer's assurances, including the assurance that Rabo

8  would be providing additional funds. (*Id*.) She went back to work, but stopped working several

9  weeks later when it became clear that there was no plan to address PCC's cash-flow problems and

10  no additional funds were coming from Rabo. (*Id*.)

11      Ms. Matejovsky's work-related information was stored on her company smartphone,

12  computer, or laptop computer. (*Id*. at ¶ 11.) PCC personnel took these devices after she quit and Ms.

13  Matejovsky does not have access to these devices or her work email. (*Id*.) Ms. Matejovsky believes

14  evidence of some of her statements can be found on these devices, which she is informed may be in

15  the possession of Focus Management Group. (*Id*.)

16      Evidence in Ms. Matejovsky's electronic files may shed light on the veracity on what Rabo

17  represented to the Court when it sought a receiver  Additionally, Focus initially denied access to

18  these electronic records/devices when requested by CJ's counsel in November 2023.

19  **B.    In Late July and Early August of 2023, Focus Begins Working At PCC and Becker**
   **Acknowledges Rabo's Collateral Does not Include Cattle on PCC's Yard**

20

21      There is evidence that (i) Focus Management began working at PCC in late July or early

22  August of 2023; (ii) Rabo concurrently concluded it had no lien interest in the cattle at PCC's yard

23  before it sought appointment of a receiver.

24      For example, in late July or early August of 2023, Mr. Johnson had a call with Steve Snow

25  to determine why Mr. Johnson had not been paid proceeds from the sale of his cattle. (Johnson Decl.

26  ¶ 3.) During the call, Snow mentioned Rabo had asked PCC to allow a group of "forensic

27  accountants" who were employed by a company called Focus Management to analyze the business

28  records of PCC. (*Id*.) In a subsequent conversation with Mr. Snow days later, Mr. Snow corrected

WHITNEY
THOMPSON &
JEFFCOACH

716.0 06122524.000

5

REAL PARTY IN INTEREST, CJ CATTLE'S OPPOSITION TO RABO AGRIFINANCE, LLC'S MOTION FOR
INSTRUCTIONS TO RECEIVER TO REPAY EMERGENCY ADVANCES

APP009

himself and told Mr. Johnson Focus Management were "work out people" that Rabo wanted PCC to use in sorting out their financial problems. (*Id.*)

Meanwhile, on August 3, 2023, Roger Becker emailed Lisa Grill, another senior financial restructuring coordinator at Rabo, the following related to PCC:

> "*[T]hey own almost no cattle,* it appears to me that it is basically a custom feeding operation so the cattle in the lot belong to others . . . Now that I understand that, *there is really none of our livestock collateral to count*, we need to focus on A/R and feed inventory and make sure those numbers are accurate." (Gaus Decl. ¶ 13.a, Ex. I.)

Shortly thereafter, on August 8, 2023, there is evidence indicating Mr. Becker, Ms. Schwartzkopf, Sam Williams (Focus), and others, began participating in a "Daily Rabo Call re Phillips". (Gaus Decl. ¶ 8, Ex. E.)[5] On August 14, 2023, Mr. Becker, and not PCC, asked Ms. Scwartzkopf if Focus Management would serve as a receiver over PCC. (Gaus Decl. ¶ 13.b, Ex. J.)

Thus, for approximately one month prior to the receivership being established, Focus Management was effectively working as Rabo's agent, exercising control over the PCC's operations, while CJ Cattle and other creditors were not being paid.  The full scope of Focus's work during this pre-appointment period, how it benefitted Rabo, and the potential conflict it created, does not appear to have been disclosed to this Court in the receivership application.

**C.    Rabo's Receivership Application Represents its Collateral Includes Cattle on PCC's Yard**

Three days after inviting Focus to act as a receiver, Rabo filed the instant action on August 17, 2023. (RJN ¶ 1, Ex. 1.) The over 500 page Complaint suggests it had been planned for some time.

On August 18, 2023, Rabo filed its application for a receivership over PCC. (RJN ¶ 2, Ex. 2.) Rabo's application contained the following representation:

> "The real and personal property collateral (the "**Property**") that is the subject of this Application consists of, without limitation, a feed lot and adjacent land located

---

[5] As discussed below, the evidence of these communications comes from a privilege log produced by Rabo the CJ Action. (Gaus Decl. ¶ 8.) The emails (improperly) logged as privileged between Rabo and Focus are highlighted in Exhibit "E" to the Gaus Declaration, which is comprised of relevant pages extracted from Rabo's privilege log.

WHITNEY
THOMPSON &
JEFFCOACH

APP010

in Imperial County, **approximately 10,200 head of livestock, as well as proceeds therefrom**, as more particularly described in the Security Agreements and Deed of Trust attached as exhibits to the Declaration of Roger Becker filed concurrently herewith." (RJN ¶ 2, Ex. 2 at p. 2:3-10.)

If PCC hired Focus, it was at the direction of Rabo. However, Rabo's receivership application represented that "[t]he Borrowers" (i.e. PCC) "retained an outside consultancy firm, Focus Group" to examine PCC's business records. (RJN ¶ 2, Ex. 2 at p. 3:18-19.)

Rabo supported the application with a declaration from Mr. Becker. Under penalty of perjury, Mr. Becker carefully described Focus Group as a "consulting firm retained to help comb through" PCC's business records without disclosing who retained Focus. (RJN ¶ 3, Ex. 3 at p. 2:10-12.) Moreover, Mr. Becker attributed the need for a receivership, in part, on "substantially overstated" accounts receivable on PCC's books and "substantially understated" accounts payable.[6] (RJN ¶ 3, Ex. 3 at p. 9:18-22.) Mr. Becker claimed the "poor state of Borrowers operations….rais[ed] substantial concerns of fraud." (RJN ¶ 3, Ex. at p. 10:20-21.)[7]  Presumably, Becker's contentions arise from what he characterizes as "first-hand observations and from extensive discussions with Mr. Bauer [and] representatives of Focus Group[.]" but must have also included information supplied by Focus. (RJN ¶ 3, Ex. 3 at p. 2:14-17.)

---

[6] However, Rabo already knew PCC overstated its accounts receivable and understated its payables as early as 2015 (as evidenced by a credit application) and as late as 2021, if not later (as evidenced by a collateral inspection report prepared by Brook Guestin). (Gaus Decl. ¶¶ 13.(f)-(g), Ex. N [extracted page from 2015 credit application]; Ex. O [collateral inspection report dated November 5, 2021].) The relevant portions of these exhibits are highlighted.

[7] As litigation related to PCC progresses, it will become clear Rabo knew of, encouraged, and substantially participated in PCC's pattern and practice of using CJ Cattle's prepaid money (annually totaling in the millions and typically paid in December) for illegal purposes, including paying Rabo. Critically, Rabo's own internal business records stated that prepaids PCC received from customers belonged in a "special and separate account dedicated exclusively for prepaid-feed monies." Despite this, beginning in at least 2019 (if not sooner), Rabo misrepresented to PCC it would be "perfectly fine" and that there was "no reason why" PCC could not use CJ Cattle's prepaid money for illegal purchases such as paying down PCC's then-existing loans with Rabo.

Simply put, Rabo knew what was going on at PCC the whole time. Therefore, Becker's representations that PCC's fraud only recently came to light lacks credibility.

WHITNEY
THOMPSON &
JEFFCOACH

716.0 06122524.000

7

REAL PARTY IN INTEREST, CJ CATTLE'S OPPOSITION TO RABO AGRIFINANCE, LLC'S MOTION FOR
INSTRUCTIONS TO RECEIVER TO REPAY EMERGENCY ADVANCES

APP011

Rabo also submitted a declaration from Juanita Schwartzkopf. (RJN ¶ 3, Ex. 4.) Her declaration attached her resume which identifies "Lenders Served" and lists "Rabo Agrifinance", but does not disclose to the court the scope of the prior services provided to Rabo, including the apparent pre-existing and ongoing consulting relationship with Rabo in the McClain Feed Yard, Inc. Bankruptcy matter. (*Id.* [Exhibit A to Schwartzkopf Declaration].) However, Schwartzkopf declared in Paragraph 5 that:

> "5.    I am not an employee of and **have no business relationship** with RAF or its counsel, Fennemore Dowling Aaron, nor do I have conflicts of interest with any of the defendants identified in the caption of this case." (RJN ¶ 4, Ex. 4.)

On August 25, 2023, the Court entered an *Amended Order Appointing Receiver*. (RJN ¶ 5, Ex. 5.) The order appointed Focus Management Group, by and through Juanita Schwartzkopf as the Receiver. (RJN ¶ 5, Ex. 5 at p. 2:20-22.)

As outlined above, Ms. Schwartzkopf's assertion that neither she nor Focus had no previous business relationship with Rabo was obviously false. Rabo and Focus had been communicating directly on PCC since early August 2023 (if not earlier). Moreover, as discussed below, Rabo and Focus certainly had an extensive preexisting relationship in bankruptcy proceedings in the United States Bankruptcy Court for the Northern District of Texas.

**D.    In August of 2023, Focus Management Denies CJ Access to His Business Records in the Possession of PCC and Forces CJ to Pay Over $100,000 to Retrieve His Cattle**

Focus Management stonewalled Mr. Johnson's efforts to obtain his business records from PCC, and in fact, forced Mr. Johnson to pay to recover his cattle.

For example, in early August of 2023, Mr. Johnson participated in a call with two members of Focus Management and Steve Snow of PCC. (*See* Johnson Decl. ¶ 4.) Mr. Johnson recalls Sam Williams of Focus participated in the call. (Johnson Decl. ¶ 4.)

Mr. Johnson requested access to his files and records related to his cattle and was informed that Focus Management was not releasing records (even though it had not yet been appointed as the receiver) and was securing them, including Mr. Johnson's records. (*Id.* at ¶ 5.)[8]. Between August 21

---

[8] It should be noted that the Amended Order Appoint the Receiver stated that "[t]he Receiver shall promptly made all books and record described in this subsection available to counsel for Plaintiffs."

WHITNEY
THOMPSON &
JEFFCOACH

APP012

1 and August 24, 2023, the Receiver forced Mr. Johnson to pay $132,143.55 purportedly for feedbills

2 during that time. (*Id.* at ¶ 6.) Mr. Johnson does not understand why he was forced to pay that

3 amount because he had an approximately $3.5 million feedbill credit with PCC on account of his

4 prepayment. (*Id.*) However, Steve Snow informed Mr. Johnson via email that the Receiver would

5 not ship his cattle to El Toro feed yard without the additional payment. (*Id.*)

6 **E.** **On November 28 and 29, 2023 Focus Provides Rabo Access to Information and
Apparently Concedes that "Not all Assets in the Receivership Estate" are Rabo's
7 Collateral**

8 As this receivership progressed, there is evidence that Focus Management (i) continued to

9 act as an agent for Rabo; (ii) internally concluded that PCC's receivership estate was not exclusively

10 comprised of property subject to Rabo's lien interest; and (iii) reported that internal conclusion to

11 Rabo. Concurrently, the Receiver continued to frustrate Mr. Johnson's efforts to access information.

12 For example, on November 17, 2023, counsel for CJ Cattle requested that CJ Cattle be

13 "allowed to inspect and copy books, records, and other material Phillips Cattle Co., Inc. turned

14 over" pursuant to the Order Appointing Receiver. (Gaus Decl. ¶ 3, Ex. A.)

15 Specifically, counsel for CJ Cattle posed the following question:

16 "Will the receiver make available to CJ Cattle the books and records of
Phillips Cattle Co., Inc. that it has provided to counsel for Rabo Agrifinance, LLC in
17 accordance with Paragraph 3(c) of the *Amended Order Appointing Receiver* dated
August 25, 2023 in Imperial County Case No. ECU003066?" (*Id.*)
18 Meanwhile, Rabo continued to receive separate preferential professional services from

19 Focus. On November 28, 2023, Sam Williams emailed Roger Becker and proposed a "catch up call"

20 on PCC. (Gaus. Decl. ¶ 13.c, Ex. K.) One day later, Simon Coughlin (Focus) circulated an "agenda"

21 for the proposed Focus-Rabo meeting. (Gaus Decl. ¶ 13.d, Ex. L.) A document labeled

22 "Phillips/Western Receivership Status Call Agenda" contains the following statement:

23 "The Receivership realizes that *not all assets in the Receivership estate are Rabo's
collateral*." (Gaus. Decl. ¶ 13.e, Ex. M.[9])
24

25 Shortly thereafter, the Receiver, through counsel, denied CJ Cattle's request for information

26

27 (RJN ¶ 5, Ex. 5 at p. 4:5-6.)

28 [9] Exhibits K through M were produced by Rabo in the CJ Cattle Action. (Gaus Decl. ¶ 13.)

WHITNEY
THOMPSON &
JEFFCOACH

REAL PARTY IN INTEREST, CJ CATTLE'S OPPOSITION TO RABO AGRIFINANCE, LLC'S MOTION FOR
INSTRUCTIONS TO RECEIVER TO REPAY EMERGENCY ADVANCES

APP013

1   via letter dated December 4, 2023. (Gaus Decl. ¶ 4, Ex. B.) By letter, counsel for the Receiver

2   stated, in relevant part:

> "The Receiver will not provide the requested information at the present time.
>
> Phillips Cattle's records are voluminous and include information subject to HIPAA, attorney-client privilege, privacy and other confidentiality protections which would require detailed, time-consuming and expensive review and redaction before the information requested by CJ Cattle could be produced." (*Id*.)[10]

7   The above communications provide further concrete evidence that the Receiver has acted as

8   an agent protecting Rabo instead of acting for the benefit of all parties and this Court.

9   **F.   Rabo Produces a Privilege Log in the "CJ Cattle Action" Evidencing Communications Between Rabo and Focus in April of 2023**

10  On May 24, 2024, Rabo produced documents and a privilege log in connection with the CJ

11  Cattle Action. (Gaus. Decl. ¶ 8.) Page 10 of Rabo's privilege log contained entries claiming

12  attorney-client privilege on certain communications that included Juanita Schwartzkopf in April of

13  2023. (*Id*.) Two of those emails (purportedly sent on April 24 and April 25, 2023) contain the

14  subject line "DRAFT – Recovery Process for Focus Client". (Gaus Decl. ¶ 8, Ex. E [printout of page

15  10 of Rabo's privilege log produced on May 24, 2024].) Page 13 of the privilege log indicates Ms.

16  Schwartzkopf, Mr. Williams, Roger Becker, and other individuals were participating on a "Daily

17  Rabo Call re Phillips" beginning on August 8, 2023. (Gaus Decl. ¶ 8, Ex. E.)

18  Counsel for CJ Cattle raised the issue of a potential preexisting relationship between Rabo

19  and Focus Management in a telephone call on June 14, 2024 with counsel for the Receiver and again

20  via letter on June 17, 2024. (Gaus Decl. ¶ 10, Ex. F.)

21  On June 19, 2024, counsel for Rabo emailed counsel for CJ Cattle stating:

> "Chris Seymour forwarded me a letter concerning a request for discovery from Focus dating back to April, 2023. Certain documents on Rabo's privilege log were referenced as evidence that Rabo and Focus were in communication prior to August, 2023. I have reviewed those documents and can confirm that they pertain to

---

[10] As set forth in the Gaus Declaration, further meet and confer efforts took place between counsel for the Receiver and CJ Cattle in 2024. Through those efforts, CJ Cattle finally gained access to certain of PCC's books and records in June of 2024.

716.0 06122524.000

10

REAL PARTY IN INTEREST, CJ CATTLE'S OPPOSITION TO RABO AGRIFINANCE, LLC'S MOTION FOR INSTRUCTIONS TO RECEIVER TO REPAY EMERGENCY ADVANCES

APP014

1  an entirely unrelated matter having nothing to do with this case."   (Gaus Decl. ¶ 11,

2  Ex. G.)

3      Counsel did not disclose what this "entirely unrelated matter" was, but if it pertains to another

4  preexisting business relationship between Rabo and Focus that was not disclosed to this Court in the

5  receivership application, it should be disclosed now. Counsel for Rabo also did not elaborate on why

6  the privilege log entries contain the subject line "Recovery Process for Focus Client" or whether

7  Rabo and Focus Management have a preexisting but undisclosed client relationship.

8  **G.**     **Evidence of Preexisting But Undisclosed Relationship Between Rabo and Focus
       Management in *In re Waggoner Cattle* (Bankr. N.D. Tx. Case No. 18-20126) and
       Related Adversary Proceeding**

9

10     On April 9, 2018, Waggoner Cattle, LLC filed chapter 11 bankruptcy in the Northern

11  District of Texas.  (*See* RJN ¶ 6, Ex. 6 [Waggoner Cattle bankruptcy petition].) As discussed in

12  Footnote 2, *supra*, Lone Star State Bank of West Texas commenced the LSSB Adversary

13  Proceeding against Rabo. (*See* RJN ¶ 8, Ex. 8.) In the Third Amended Complaint, LSSB alleges (i)

14  Rabo knew Waggoner Cattle entities were "incorrectly" recording "negative accounts payable"

15  (similar to PCC); (ii) Rabo "manipulated" borrowing base reports to conceal borrowing base

16  deficits; and (iii) Rabo – at the direction of Roger Becker – "directed that many of the calves at the

17  calf ranch . . . be taken out of the calf ranch" to conceal from LSSB that its collateral had

18  disappeared. (*See* RJN ¶ 8, Ex. 8 at ¶¶ 102, 131, 185.)

19     ECF No. 121 in the LSSB Adversary Proceeding reflects that LSSB issued a subpoena to

20  Juanita Schwartzkopf and Focus Management on August 20, 2019. (RJN ¶ 7, Ex. 7.) The subpoena

21  references a "Focus Management Group USA, Inc Agreement for Consulting Services and Scope of

22  Work" between Rabo and Focus. (*Id*.)

23  **H.**     **Evidence of a Preexisting But Undisclosed Relationship Between Focus Management
       and Rabo in the McClain Feed Yard Bankruptcy**

24     Publicly available documents in the McClain Feed Yard Bankruptcy indicate an extensive

25  preexisting relationship between Rabo and Focus that should have been disclosed to this Court.

26     For example, on April 28, 2023, McClain Feed Yard, Inc. filed chapter 7 in the Northern

27  District of Texas. (RJN ¶ 9, Ex. 9.)  On July 27, 2024, the chapter 7 bankruptcy trustee filed a

28  *Motion to Compel Production of Documents from Rabo Agrifinance and Focus Management*. (RJN

WHITNEY
THOMPSON &
JEFFCOACH

¶ 11, Ex. 11.) Paragraphs 9 to 18 of the trustee's motion describe a relationship between "Rabo and

Focus" and alleges "Rabo hired Focus Management Group USA, Inc. ("Focus") as a consultant."

(*Id*. at p. 4.) In April of 2023, Rabo and Focus "took possession of all of the Debtors' physical and

electronic records and move[d] same to Focus's Chicago office." (*Id*.)

Similarly, ECF No. 265 in the McClain Feed Yard Bankruptcy docket reflects that Priest

Cattle Company, LTF and Priest Victory Investment LLC's sought an order from the Bankruptcy

Court authorizing a document subpoena to Focus Management Group. (RJN ¶ 10, Ex. 10.) Priest

Cattle's motion contains the following allegations in Paragraphs 4 and 5:

> "4.    In early April 2023, Focus Management Group, a company hired by
> Rabo, conducted several physical head counts of the cattle on feed at the Debtors'
> feed yards and realized that instead of some 88,000 head that had previously
> represented as the correct number of cattle that were on feed at the yard, only about
> 10,000 head were actually on feed.
>
> 5.    At this time, Rabo took control of the Debtors operation, instructing
> the Debtors' banks to freeze their bank accounts, and entering into Forbearance
> Agreement with the Debtors. This allowed money to flow into Debtors and Rabo but
> cut off all outgoing funds for otherwise valid checks to Priest and other third parties."
> (RJN ¶ 10, Ex. 10 at p. 3.)

In sum, publicly available federal court records indicate Rabo and Focus had a preexisting

business relationship months before Rabo came to this Court and nominated Focus Management as

a receiver. In light of this, it is hard to draw any other conclusion than Rabo and Focus elected to

conceal this relationship and hope this Court never found out.

### III.
### LAW AND ARGUMENT

A.    **Rabo Cannot Receive Money From the Receivership Estate Until it Proves its Legal
and Factual Entitlement to the Property**

"The function of a receiver is to aid the court in preserving and managing the property

involved in a particular lawsuit for the benefit of those to whom it can ultimately be determined to

belong." (*City of Sierra Madre v. SunTrust Mortgage, Inc.* (2019) 32 Cal.App.5th 648, 656.) The

"receiver acquires no title, but only the right of possession . . . The title remains in those in whom it

was vested when the appointment was made." (*Kaura v. Stabilis Fund II, LLC* (2018) 24

Cal.App.5th 420, 433.)

716.0 06122524.000

WHITNEY
THOMPSON &
JEFFCOACH

12

REAL PARTY IN INTEREST, CJ CATTLE'S OPPOSITION TO RABO AGRIFINANCE, LLC'S MOTION FOR
INSTRUCTIONS TO RECEIVER TO REPAY EMERGENCY ADVANCES

APP016

1    Here, PCC's receivership estate consists almost entirely of cattle slaughter proceeds. The

2    Receiver's latest report indicates there is "$4.4 million" in a segregated account arising from cattle

3    slaughter proceeds and another $1.2 million in a "general account". The Receiver has not explained

4    or traced the source of the funds comprising the "general account" it deems "unrestricted".

5    Moreover, Rabo's Motion only asserts the receivership estate "has sufficient funds" to pay the

6    "emergency advances" without explaining where that payment will come from.

7    However, Rabo, by virtue of Roger Becker's admission in his August 3, 2023 email,

8    concedes that cattle in PCC's lot "belong[ed] to others" and "there [was] really none of our livestock

9    collateral" on PCC's yard. (Gaus Decl. ¶ 13.a, Ex. I.) This precludes Rabo from receiving a

10    distribution from any property that consists of cattle proceeds.

11    Moreover, the Receiver has admitted the receivership estate does not consist of Rabo's

12    collateral. A document entitled "Phillips/Western Receivership Status Call Agenda" states "[t]he

13    Receivership realizes that not all the assets in the Receivership estate are Rabo's collateral." (Gaus

14    Decl. ¶ 13.d, Ex. L.) It is unclear whether and to what extent the Receiver's internal conclusion –

15    apparently disclosed to Rabo - has been disclosed to the Court.

16    In sum, the above evidence suggests that, at minimum, further discovery and adjudication

17    must take place with respect to who owns what. Further, Focus Management cannot be the entity

18    entrusted with performing that endeavor, as Focus is clearly acting for the exclusive benefit of Rabo

19    in this receivership. Therefore, Rabo's Motion should be denied.

20    **B.    Rabo's Failure to Disclose its Extensive Preexisting Relationship With Focus Management Groups Warrants Denial of the Motion**

21

22    The Fourth District Court of Appeal observes that "[t]he receiver is an agent of the court and

23    not of any party, and as such: (1) *Is neutral*; [¶] (2) Acts for benefit of all who may have an interest

24    in the receivership property; and [¶] Holds assets for the court and not for [any party]." (*Southern

25    California Sunbelt Developers, Inc. v. Banyan Limited Partnership* (2017) 8 Cal.App.5th 910, 922.)

26    Rabo's material nondisclosure of its preexisting relationship with Focus Management casts

27    serious doubt on the Receiver's ability to discharge its duties as a neutral office of this Court. It

28    further calls into question the veracity of the Receiver's positions that there will no distribution to

WHITNEY
THOMPSON &
JEFFCOACH

716.0 06122524.000

13

REAL PARTY IN INTEREST, CJ CATTLE'S OPPOSITION TO RABO AGRIFINANCE, LLC'S MOTION FOR
INSTRUCTIONS TO RECEIVER TO REPAY EMERGENCY ADVANCES

APP017

1  PCC's unsecured creditors (implying, of course, that PCC's receivership estate will go exclusively

2  to Rabo).

3      Moreover, the Receiver has not acted neutrally. For example, counsel for CJ Cattle requested

4  access to PCC's book and records via letter on November 17, 2023. (Gaus Decl. ¶ 3, Ex. A.) The

5  Receiver, through counsel, denied that request on December 4, 2023. (Gaus Decl. ¶ 4, Ex. B.)

6  Evidently, in the time period between November 17 and December 4, 2023, Focus Management was

7  scheduling meetings with Rabo and providing separate written materials to Rabo. (Gaus Decl. ¶

8  13.(c)-(e), Exs. K-M.) Essentially, Focus Management provided Rabo with separate and exclusive

9  professional services, while, for a period of time, denying CJ Cattle access to his own business

10  records located as PCC. Thus, the Receiver has failed to properly discharge its duties as fiduciary

11  for this Court and is protecting/favoring Rabo in its conduct.

12      In sum, this receivership is tainted. Accordingly, property should not leave the receivership

13  estate until further inquiry is made into Rabo's material nondisclosure and whether a new receiver

14  should be appointed. (*People v. Conagra Grocery Prods. Co.*, (2017) 17 Cal.App.5th 51[directing

15  the trial court to hold an evidentiary hearing on whether the receiver is "sufficiently impartial"].)

16  For this additional reason, Rabo's Motion must be denied.

### IV.
### CONCLUSION

17

18      Rabo is not entitled to receive an interim distribution of over $1 million from PCC's

19  receivership estate. Rabo has no claim to the property comprising PCC's receivership estate and

20  further inquiry must be made into the Receiver's impartiality before property leaves PCC's

21  receivership estate.

22  Dated:  August 21, 2024                WHITNEY, THOMPSON & JEFFCOACH LLP

23

24

25                                     By: _____

26                                          ~~Timothy L. Thompson~~
                                            Paul Gaus
27                                      Attorneys for CHARLES JOHNSON, dba  CJ CATTLE
                                            CO.
28

WHITNEY
THOMPSON &
JEFFCOACH

716.0 06122524.000                                14

REAL PARTY IN INTEREST, CJ CATTLE'S OPPOSITION TO RABO AGRIFINANCE, LLC'S MOTION FOR
INSTRUCTIONS TO RECEIVER TO REPAY EMERGENCY ADVANCES

APP018

## PROOF OF SERVICE

**Rabo v. Phillips Cattle Co. et al.,
Case No. ECU003066**

**STATE OF CALIFORNIA, COUNTY OF FRESNO**

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Fresno, State of California.  My business address is 970 W. Alluvial Ave., Fresno, CA 93711.

On August 21, 2024, I served true copies of the following document(s) described as **REAL PARTY IN INTEREST, CJ CATTLE'S OPPOSITION TO RABO AGRIFINANCE, LLC'S MOTION FOR INSTRUCTIONS TO RECEIVER TO REPAY EMERGENCY ADVANCES** on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

**BY MAIL:**  I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices.  I am readily familiar with the practice of Whitney, Thompson & Jeffcoach LLP for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.  I am a resident or employed in the county where the mailing occurred.  The envelope was placed in the mail at Fresno, California.

**BY E-MAIL OR ELECTRONIC TRANSMISSION:**  I caused a copy of the document(s) to be sent from e-mail address rleal@wtjlaw.com to the persons at the e-mail addresses listed in the Service List.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on August 21, 2024, at Fresno, California.

Rebeccah Leal

WHITNEY
THOMPSON &
JEFFCOACH

716.0 06122524.000

15

REAL PARTY IN INTEREST, CJ CATTLE'S OPPOSITION TO RABO AGRIFINANCE, LLC'S MOTION FOR
INSTRUCTIONS TO RECEIVER TO REPAY EMERGENCY ADVANCES

APP019

**SERVICE LIST**
**Rabo v. Phillips Cattle Co. et al.,**
**Case No. ECU003066**

| | |
|---|---|
| Hagop T. Bedoyan, Esq.<br>MCCORMICK BARSTOW, LLP<br>7647 North Fresno Street<br>Fresno, CA 93720<br>Hagop.Bedoyan@mccormickbarstow.com | *Attorneys for Defendants PHILLIP CATTLE CO., INC., a California corporation; and WESTERN MEAT PROCESSORS, INC., a California corporation* |
| Christopher E. Seymour, Esq.<br>GILMORE MAGNESS JANISSE<br>7789 N. Ingram Avenue, Suite 105<br>Fresno, CA 93711<br>cseymour@gmlegal.net | *Attorney for Receiver Juanita Schwartzkopf* |
| Leslie Cohen<br>LESLIE COHEN LAW PC<br>1615-A Montana Avenue<br>Santa Monica, CA 90403<br>leslie@lesliecohenlaw.com | *Bankruptcy Attorneys for JOAN BAUER, as Co-Trustee of the Bauer Family Trust dated March 4, 1991* |
| Richard C. Conway<br>Rissa A. Stuart<br>KAHN SOARES & CONWAY LLP<br>219 North Douty Street<br>Hanford, CA 93230<br>rconway@kschanford.com;<br>rstuart@kschanford.com,<br>pavila@kschanford.com;<br>kdelira@kschanford.com;<br>mcabrera@kschanford.com | *Attorneys for Overland Stock Yards, Inc.* |
| J. Jackson Waste<br>FENNEMORE DOWLING AARON<br>8080 N. Palm Avenue, Third Floor<br>Fresno, CA 93711<br>jwaste@fennemorelaw.com<br>clalonde@fennemorelaw.com<br>jgill@fennemorelaw.com<br>lzanoni@fennemorelaw.com | *Attorneys for Defendant RABO AGRIFINANCE, LLC* |
| Marc Brainich<br>FENNEMORE WENDEL<br>1111 Broadway, 24th Floor,<br>Oakland, CA 94607<br>mbrainich@fennemorelaw.com<br>lmason@fennemorelaw.com<br>aaustin@fennemorelaw.com | *Attorneys for Defendant RABO AGRIFINANCE, LLC* |

WHITNEY THOMPSON & JEFFCOACH

716.0 06122524.000

16

REAL PARTY IN INTEREST, CJ CATTLE'S OPPOSITION TO RABO AGRIFINANCE, LLC'S MOTION FOR INSTRUCTIONS TO RECEIVER TO REPAY EMERGENCY ADVANCES

APP020

| 1 | Bryan J. Freedman, Esq. | *Attorneys for Plaintiff CHARLES JOHNSON* |
| 2 | Theresa Troupson | *dba CJ CATTLE CO* |
|   | FREEDMAN TAITELMAN + COOLEY, LLP | |
| 3 | 1801 Century Park West, 5th Floor | |
|   | Los Angeles, California  90067 | |
| 4 | bfreedman@ftllp.com | |
|   | ttroupson@ftllp.com | |
| 5 | cpuello@ftllp.com | |
|   | tdavis@ftllp.com | |
| 6 | Vance B. McAlister | *Attorneys for Plaintiff CHARLES JOHNSON* |
|   | EWING JOHNSON & GRAVES, PLC | *dba CJ CATTLE CO* |
| 7 | 636 W. State Street | |
|   | El Centro, CA 92243 | |
| 8 | v.mcalister@ejgd.com | |
| 9 | Teri T. Pham | *Attorneys for Defendant ROBERT BAUER as* |
|   | ENENSTEIN PHAM GLASS & RABBAT | *Co-Trustee of the Bauer Family Trust dated* |
| 10 | 3200 Bristol Street, Suite 500 | *March 4, 1991; JOAN BAUER, as Co-Trustee of* |
|   | Costa Mesa, CA 92626 | *the Bauer Family Trust dated March 4, 1991,* |
| 11 | ysepidnameh@epgrlawyers.com | *and ROBERT BAUER, as Trustee of the Phillip* |
|   | tpham@epgrlawyers.com | *Himmelfarb Testamentary Trust dated April 9,* |
| 12 | | *1997* |
| 13 | Mitchell A. Driskill | *Attorneys for Related Party Denise* |
|   | WALKER & DRISKILL, PLC | *Matejovsky* |
| 14 | 300 South Imperial Avenue, Suite 10 | |
|   | El Centro, CA 92243 | |
| 15 | mitch@walkerdriskill.com | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

WHITNEY
THOMPSON &
JEFFCOACH

716.0 06122524.000

REAL PARTY IN INTEREST, CJ CATTLE'S OPPOSITION TO RABO AGRIFINANCE, LLC'S MOTION FOR
INSTRUCTIONS TO RECEIVER TO REPAY EMERGENCY ADVANCES

APP021