# FOCUS MANAGEMENT GROUP USA, INC.

Agreement for Consulting Services
General Terms and Conditions

This Agreement (the "Agreement") is made this 17th day of March, 2023 by and among Focus Management Group USA Inc. ("Consultant") and Ray Quinney & Nebeker PC ("Counsel") in its capacity as counsel to Rabo AgriFinance LLC ("Lender"), as lender to various loans and security agreements to McClain Feedyards and its subsidiaries and affiliates, including but not limited to 7M Cattle Feeders, Inc., McClain Farms, Inc., Friona Cattle and Cactus Farms (collectively, "Company"). In consideration of the mutual covenants contained herein, the parties agree as follows:

1. Scope of Work. Consultant shall perform services as set forth in the annexed Authorization. This Authorization shall become effective only upon execution by Counsel and Consultant. In the event certain provisions of an Authorization conflict with the provisions of this Agreement, the parties hereto agree that the provisions of this Agreement shall be controlling.

2. Compensation – Payment of Fees and Expenses. Lender shall pay Consultant fees for services as set forth in the Authorization, within 30 days of receipt of an invoice. Time traveling will be charged at 50% of such hourly rates. Lender shall also pay Consultant for all reasonable costs and expenses incurred in connection with the services provided pursuant to the Authorization. All invoices for Consultant's work shall include a detailed description of the work provided. Consultant shall provide any anticipated budgets for its services requested by Lender or its Counsel. Consultant understands and agrees that the payment of all fees and expenses incurred in connection with this Agreement and any Authorization are solely the responsibility of Lender and that in no event shall Counsel or any of its partners or members be liable in any capacity for any of Consultant's invoices, fees, expenses, costs, damages or other liabilities in connection with this engagement.

3. Rights to Work Product. Although Lender will pay Consultant directly, Counsel shall retain exclusive rights to ownership of all work product hereunder. Work product shall include, without limitation, all of Consultant's reports issued pursuant to the Authorization. Consultant shall have the right to retain copies of reports issued to Counsel for Consultant's records.

4. Access. Lender shall arrange for Consultant and its Personnel (as defined below) to be provided with reasonable access during normal business hours upon reasonable advance notice to the Company, to all of the Company's information, Personnel, books, records, and facilities deemed reasonably necessary by Consultant to complete the work under the Authorization.

5. Personnel. Each party agrees that neither it nor its affiliates will at any time during the period commencing on the date hereof and continuing until the first anniversary of the date that (i) all work provided under the Authorization has been completed or (ii) this Agreement is otherwise terminated, whichever occurs last, directly or indirectly, specifically target and knowingly solicit for employment any current or former director, officer, employee or representative of the other party ("Personnel") without the prior written consent of the other party.

6. Independent Contractor. None of Consultant or its Personnel shall be deemed to be an employee, officer or director of Counsel or Lender. Consultant acknowledges that no tax withholding, workers' compensation coverage, unemployment insurance coverage, or other benefits normally associated with an employer-employee relationship will not be provided by Lender or its Counsel, and Consultant covenants to be solely responsible for any such benefits or coverage it desires.

7. No Assumption of Liabilities. Notwithstanding any provision herein to the contrary, Consultant does not assume, and shall not be deemed to have assumed, any liabilities, debts or obligations of Counsel or Lender of any kind or description.

4824-0616-7359\2    1    EXHIBIT 6

CONFIDENTIAL    RABO-MCCLAIN 000001

8. <u>Limitation of Liability; Indemnification</u>.

(a) Neither Consultant nor any of its Personnel shall have any liability to Counsel or Lender for any action taken or for refraining from the taking of any action, or for errors in judgment, except for any such claims, damages, liabilities and expenses that are found in a final judgment by a court of competent jurisdiction to have resulted directly from such person's willful misconduct, bad faith, or gross negligence of any sort.

(b) Consultant warrants that the services it provides hereunder will be performed consistent with industry standards and the Code of Professional Ethics. Notwithstanding the foregoing, in no event will Consultant be liable any other party for any loss of profit, business or goodwill or any indirect, special, consequential, incidental, exemplary, or punitive damages, howsoever arising under or in connection with this Agreement, regardless of the basis of the claim or form of any action, even if Consultant has been advised of the possibility of such damages.

(c) Counsel and Consultant hereby agree to defend, protect, indemnify and hold harmless the other (each of the foregoing being an "Indemnitee" and all of the foregoing being collectively the "Indemnitees") from and against any and all claims, actions, damages, liabilities, judgments, reasonable costs and expenses (including reasonable fees and disbursements of counsel, legal assistants and paralegals which may be incurred in the defense of any matter relating to the Consultant's services under this Agreement and, in the event of litigation, at all trial and appellate levels) imposed upon, incurred by or asserted against any Indemnitee, whether direct, indirect or consequential and whether based on any federal, state, local or foreign laws or regulations, under common law on an equitable cause, or on contract or otherwise by reasons of Consultant's services under this Agreement, except to the extent that any such claims, damages, liabilities and expenses that are found in a final judgment by a court of competent jurisdiction to have resulted directly from such Indemnitee's willful misconduct, bad faith, or gross negligence of any sort. In the event this indemnity is unenforceable as a matter of law as to a particular matter or consequence referred to herein, it shall be enforceable to the full extent permitted by law.

(d) This indemnification applies, without limitation, to any act, omission, event or circumstance existing or occurring on or prior to the termination of the relationship between Consultant and Counsel. The indemnification provisions set forth above shall be in addition to any liability any Indemnitee may otherwise have to the other. Without prejudice to the survival of any other obligation, the indemnities and obligations of each Indemnitee contained herein shall survive the termination of the relationship between Consultant and Counsel for twelve (12) months following termination of the relationship among the Indemnitees.

(e) If any claim arises with respect to which indemnification is, or may be, claimed pursuant to this section, (i) the party claiming a right to indemnification must notify the other in writing within 90 days after receiving any notice of such claim, (ii) the party against which indemnification is claimed shall have control of the defense and all related negotiations, including settlement negotiations, and (iii) the party claiming a right to indemnification shall provide reasonable assistance to the other, unless the parties' interests are or become adverse.

9. <u>Confidentiality</u>. Consultant shall maintain in strict confidence any information of a non-public nature relating to Counsel, Lender, Company or their business that Consultant may gain or develop in the course of its engagement by Counsel, and shall not disclose any such information to any person during or after its engagement by Counsel except (i) information that becomes publicly available; (ii) information that becomes legally available to Consultant on a non-confidential basis from any third party; (iii) information that Consultant discloses as required by law or order of court; or (iv) information that is disclosed with the written consent of Counsel. Notwithstanding the above, Consultant shall be permitted to disclose any information to Consultant's Personnel who need to know such information to perform the services described in the Authorization. In the event Consultant is requested pursuant to subpoena or other legal process to produce or disclose any confidential information related to this engagement, to which Lender or its Counsel are not parties, Consultant will, to the extent permitted by applicable law, immediately

CONFIDENTIAL                                                                                       RABO-MCCLAIN 00000

notify Counsel. The confidentiality requirements set forth herein will continue in effect even after termination of this Agreement.

      10.    Termination. This Agreement may be terminated by Consultant or Counsel, for any reason whatsoever, with or without cause, by giving written notice of termination to the other party. Upon termination of this Agreement, Consultant shall be entitled to all unpaid expenses incurred pursuant to this Agreement and the remaining unpaid balance of any fee which is due and payable pursuant hereto. For the purposes of this Section 10, "Agreement" shall include the Authorization issued pursuant to this Agreement.

      11.    Incorporation of Regulatory Requirements Addendum. Consultant acknowledges that it has executed that certain Regulatory Requirements Addendum dated as of March 13, 2015 in favor of Lender (the "Addendum") and agrees that each and every term of the Addendum shall be deemed incorporated herein. To the extent of any conflict between the terms contained in this Agreement or the Authorization and the terms contained in the Addendum, the terms of the Addendum shall supersede and control.

      12.    Governing Law and Venue. This Agreement shall be interpreted, construed and enforced under the laws of the State of Illinois, without regard to conflicts of laws, regardless of the location of the performance of services hereunder.

      13.    Assignment. No party shall assign this Agreement or delegate any work or duties to be performed hereunder without the prior written consent of the other party.

      14.    Miscellaneous. This Agreement expresses the entire agreement of the parties hereto and supersedes all prior promises, representations, understandings, arrangements and agreements among the parties with respect to the subject matter hereof. No change, alteration, or modification of this Agreement shall be effective unless made in writing and signed by both parties hereto. This Agreement shall inure to the benefit of, and shall be binding upon, the successors and assigns of the parties hereto. Failure of either party hereto to enforce any of the provisions of this Agreement or any rights with respect thereto shall in no way be considered to be a waiver of such provisions or rights or in any way affect the validity of this Agreement. In the event that any provision of this Agreement is held to be invalid, void or illegal by any court of competent jurisdiction, then the court making such determination may reduce the obligations so as to be enforceable according to applicable law and enforce such obligations as reduced. The remaining provisions of this Agreement shall be enforced according to their terms. This Agreement may be executed one or more counterparts, each of which shall be deemed an original (including electronic copies) but all of which together shall constitute one and the same instrument.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

CONFIDENTIAL

RABO-MCCLAIN 00000

IN WITNESS WHEREOF, the parties have executed this Agreement on the date first above written.

| "Consultant" | "Counsel" |
|---|---|
| FOCUS MANAGEMENT GROUP USA INC. | Ray Quinney & Nebeker PC |
| By: *[signature]* | By: *[signature]* |
| Name: Michael Doland | Name: Michael R. Johnson |
| Title: Chief Operating Officers | Title: Shareholder and Director |

**ACKNOWLEDGED:**

"Lender"

RABO AGRIFINANCE LLC

By:_____

Name: Jeff Hanson
Title:   VP LFR

CONFIDENTIAL                                                                                       RABO-MCCLAIN 000000

IN WITNESS WHEREOF, the parties have executed this Agreement on the date first above written.

| "Consultant" | "Counsel" |
|---|---|
| FOCUS MANAGEMENT GROUP USA INC. | Ray Quinney & Nebeker PC |

By: _____  By: _____

Name: Michael Doland  Name: Michael R. Johnson
Title: Chief Operating Officers  Title: Shareholder and Director

**ACKNOWLEDGED:**

"Lender"

RABO AGRIFINANCE LLC

By: _____

Name: Jeff Hanson
Title: VP LFR

4

CONFIDENTIAL                                                                                        RABO-MCCLAIN 000010

# FOCUS MANAGEMENT GROUP USA, INC.

<u>WORK/PROJECT AUTHORIZATION NO.1</u>

DATED: <u>March 17, 2023</u>

In accordance with that certain Agreement for Consulting Services dated March 17, 2023 (the "Agreement"), by and between Ray Quinney & Nebeker PC ("Counsel") and Focus Management Group USA, Inc. ("Consultant"), Counsel hereby authorizes Consultant to perform the following services in accordance with the terms, conditions and covenants set forth in the Agreement and in this Authorization:

Services relating to McClain Feedyards and its subsidiaries and affiliates (collectively, "Company")

1. Prepare working capital (cash, AR, inventory and AP) roll forwards from December 31, 2022 and moving through January, February, and March of 2023 using a download of the Company's QuickBooks data file, the BBCs, and other requested data.
    - Test a sample of the AR, AP, purchase/sales invoices to validate authenticity and accuracy.

2. Conduct a full count of the McClain cattle located at all facilities and pastures where the client reports ownership of cattle. Count will be conducted simultaneously at all locations including owned facilities listed below:
    - Benton KY: Tract layout
    - Hereford TX: 3 locations, Feed lot layout
    - Friona TX: 1 location, Feed lot layout, majority of cattle are at this location.

3. Reconcile the inventory count and the working capital roll forwards to the Company's BBC submissions.

4. Review and verification of documents supporting cattle ownership during the inventory inspection.

5. Provide recommendations for improvements to the Company reporting and/or bank monitoring policies and procedures moving forward based on results.

6. Assist Lender in other activities related to the foregoing, as requested.

7. Communicate with, and provide required financial information to, Lender with respect to any information required by Lender concerning Company, as frequently as required.

<u>Reports</u>:
- Based on the analysis, findings and conclusions developed, prepare an informationalmemorandum including but not limited to the above services. The memorandum should speak to the possibility of fraud in the Company's reporting.

<u>Compensation</u>:
- Professional Fees: Professional fees for this Authorization will be charged at the following hourly rates plus reasonable expenses, as stated in Section 2 of the Agreement: Travel time will be charged at 50% of such hourly rates.
    - Managing Directors         $400.00 per hour
    - Business Analyst & Field Auditors     $200.00 per hour

*Signature page follows:*

5

| "Consultant" | "Counsel" |
|---|---|
| FOCUS MANAGEMENT GROUP USA, INC. | Ray Quinney & Nebeker PC |
| By: *(signature)* | By: *(signature)* |
| Name: Michael Doland | Name: Michael R. Johnson |
| Title: Chief Operating Officer | Title: Shareholder and Director |

6

CONFIDENTIAL

RABO-MCCLAIN 000011