UNDERWOOD LAW FIRM, P.C.
Thomas C. Riney, SBN: 16935100
W. Heath Hendricks, SBN: 240556451
500 South Taylor, Suite 1200, LB 233
Amarillo, Texas 79101
Telephone: (806) 376-5613
Facsimile: (806) 379-0316
Email: tom.riney@uwlaw.com
Email: heath.hendricks@uwlaw.com

      -and-

Michael R. Johnson (*Pro Hac Vice*)
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
Salt Lake City, Utah 84111
Telephone:  (801) 532-1500
Facsimile:  (801) 532-7543
Email:  mjohnson@rqn.com

*Attorneys for Rabo AgriFinance LLC*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | |
|---|---|
| IN RE:<br><br>McCLAIN FEED YARD, INC., McCLAIN FARMS, INC. and 7M CATTLE FEEDERS, INC.,<br><br>    Debtors.[1] | **CASE NO. 23-20084-7-rlj**<br><br>**(Jointly Administered Cases)**<br><br>**Chapter 7** |

---

[1] The Debtors in these jointly administered Chapter 7 cases are: (a) McClain Feed Yard, Inc. (Case No. 23-20084), (b) McClain Farms, Inc. (Case No. 23-20885) and 7M Cattle Feeders, Inc. (Case No. 23-20886).  All three cases are being jointly administered under the case number for McClain Feed Yard, Inc.

**RABO AGRIFINANCE LLC'S AND FOCUS MANAGEMENT GROUP USA, INC.'S
OBJECTION AND RESPONSE TO THE TRUSTEE'S UNAUTHORIZED AND LATE-
FILED "REPLY SUPPLEMENT" [DKT. 295[ AND "FIRST AMENDED REPLY
SUPPLEMENT" [DKT. 296] TO THE TRUSTEE'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS FROM RABO AGRIFINANCE AND FOCUS
MANAGEMENT**

Rabo AgriFinance LLC ("**Rabo**") and Focus Management Group USA, Inc. ("**Focus**"),

through counsel, respectfully file this Objection and Response to the Trustee's (a) "Reply

Supplement" to the Trustee's Motion to Compel, filed at 6:19 p.m. on September 10, as Dkt.

295, and (b) "First Amended Reply to Supplement" to the Trustee's Motion to Compel, filed at

8:48 a.m. on September 11, as Dkt. 296. The "Reply Supplement" and the "First Amended Reply

to Supplement" are collectively referred to herein as the "**Unauthorized Supplements**."

**I.      The Court Must Either Refuse to Consider the Trustee's Unauthorized
          Supplements or Fully Consider the Counterarguments in this Brief.**

The Trustee filed the Motion to Compel on July 26, 2024. [Dkt. 268] Rabo and Focus

filed their joint response to the Motion to Compel on August 23, 2024. [Dkt. 284] The Trustee

filed his reply to his Motion to Compel on August 30, 2024. [Dkt. 288] The Trustee also set a

hearing on his Motion to Compel for September 11, 2024, at 1:30 p.m. The Trustee, through his

counsel, then filed the Unauthorized Supplements at 6:19 p.m. on September 10, 2024, and at

8:48 a.m. on September 11, 2024, i.e., the evening before and the morning of the scheduled

September 11 hearing.

The Unauthorized Supplements are anything but "supplements" to the Trustee's timely

filed original reply memorandum. In fact, they raise entirely new arguments by the Trustee,

including that Rabo and Focus's production of documents failed to comply with Federal Rule of

2

Civil Procedure 34(b)(2)(E). Because these new arguments were raised for the first time within

just a few hours before the September 11 hearing, Rabo was unable to adequately respond to

these new arguments at the hearing, or in a responsive brief filed prior to the hearing.

Given these facts, the Court must either refuse to consider the Unauthorized

Supplements, or at least give Rabo a fair opportunity to respond to them. *See, e.g., Georgia*

*Firefighters' Pension Fund v. Anadarko Petroleum Co.*, 99 F.4th 770, 774 (5th Cir. 2024) ("But

when a party raises new arguments or evidence for the first time in a reply, the district court must

either give the other party an opportunity to respond or decline to rely on the new arguments and

evidence."); *Residents of Gordon Plaza, Inc. v. Cantrell*, 25 F.4th 288, 296 (5th Cir. 2022) ("[A]

district court abuses its discretion when it considers new arguments raised for the first time in a

reply brief without providing the non-movant an adequate opportunity to respond prior to

ruling.") (cleaned up).

Given the lateness in filings and the fact that the Trustee's counsel has made entirely new

arguments in those filings which Rabo has not had a meaningful opportunity to respond to, the

Court should simply refuse to consider them, including the Trustee's new arguments about

Federal Rule of Civil Procedure 34(b)(2)(E). However, as the new arguments were both

extensively briefed and extensively argued by the Trustee at the September 11 hearing as part of

an apparent "litigation by ambush" tactic, and as the Court specifically asked questions about

Rule 34(b)(2)(E) at the hearing, Rabo and Focus feel they must put their response to those

arguments in writing so that the Court has the benefit of their views on the matter.

## II.      Rule 34(b)(2)(E) does not Apply in this Rule 45 Dispute.

The Court will recall the discussion at the hearing about the "Pending Proceedings Rule"

and Mr. Jobe's statements regarding the same. Specifically, the Court will recall Mr. Jobe

asserting that the Trustee issued Rule 45 subpoenas, instead of Rule 34 document requests,

because Rule 45 provides the most protection to parties, like Rabo and Focus, that are the subject

of a discovery request. In the same breath, however, the Trustee through Mr. Jobe also argued

that Rabo's production violated Rule 34(b)(2)(E). But if Rule 45 and its requirements apply to

the subpoenas the Trustee served on Rabo, then Rule 34's requirements clearly do not apply.

And the Trustee has made no argument or assertion that Rabo's production was deficient under

Rule 45's production standards.

Rule 45(e) contains express provisions setting forth a party's duties in responding to a

subpoena, including requirements for how documents are to be produced. Under that rule, and

specifically under Rule 45(e)(1)(B), "[i]f a subpoena does not specify a form for producing

electronically stored information, the person responding must produce it in a form or forms in

which it is ordinarily maintained or in a reasonably useable form or forms." Fed. R. Civ. P.

45(e)(1)(B). While the Trustee's subpoenas provide a definition of "Documents or Electronically

Stored Information," they say nothing about how documents are to be produced other than that

for both physical and electronic documents, Rabo and Focus were to "initially provide only the

electronic version." Specifically, the Trustee's subpoenas do not state that any documents

produced must be "produced . . . in their original native file format (Word, Excel, Outlook

message, .txt., etc.) with the same file names originally maintained . . . and either: (i) organized

as originally maintained (ex. Folder such as "BorrowingBaseReports"), or (ii) organized and

labeled them (ex. Folders such as "Trustee's Requests—Debtor Reporting.")

Yet the Trustee now belatedly argues that those requirements do exist, and that they were

not met (which in any case is not true, as discussed below). As the Trustee's Unauthorized

Supplements admit, and as Mr. Jobe also admitted at the hearing, some of the documents

produced were indeed in native format, whereas other documents were produced in both PDF

and .txt format.  The Trustee takes no issue with the documents that were produced in native

format, and indeed argues that this is how all of the documents needed to be produced. But that is

not what Rule 45(e)(1)(B) says. Rather, the rule says documents should be produced either in the

"form or forms in which [they are] ordinarily maintained, or in reasonably useable form or

forms."  That is precisely what Rabo has done with this production.  Indeed, many of the

documents produced to the Trustee, such as the various notes, security agreements, credit

agreements, deeds of trust, collateral inspection reports, etc., are maintained electronically by

Rabo in a PDF format, and that is how they were produced here.  That certainly satisfies Rule

45's requirements that documents be produced in "reasonably useable form or forms."[2]

Finally, the Trustee's assertion that Rabo was required to "label" its document production

is just wrong. Like most businesses in today's modern world, Rabo's records are generally

maintained electronically and not in hard copy form. While Rule 34 does not even apply to this

---

[2] There is nothing in the language of Federal Rule of Civil Procedure 45 requiring a party to
produce documents in original native file formats with original file names and either organized
as originally maintained or organized and labeled to correspond to the document requests in a
subpoena.

dispute as noted above, even if it did, "the rule 34(b)(2)(E)(i) requirement that documents be produced either in the usual course of business or labeled to correspond to the categories in the request does not apply to ESI." *Anderson Living Trust v. WPX Energy Prod., LLC*, 298 F.R.D. 514, 515 (D.N.M. 2014).

**III.**     <u>**Rabo's Production Fully Complied with the Requirements of Federal Rule of Civil Procedure 34(b)(2)(E), and Counsel has Misrepresented the Form of Rabo's Production to the Court**</u>**.**

Based on the new arguments in the Unauthorized Supplements, the Trustee's counsel would have this Court believe that Rabo's production did not include metadata for the documents and records that were produced, and that Rabo did not provide information to the Trustee showing the original file names as maintained by Rabo, how the documents were originally stored and categorized, etc. In fact, Mr. Jobe hammered home these precise arguments at the September 11, 2024 hearing. Unfortunately and disappointingly, these assertions are not true, and counsel has been less than candid with the Court about Rabo's production.

Rabo's production was overseen by Troy Mollerup, an attorney at Ray Quinney & Nebeker, Rabo's lead counsel. Mr. Mollerup is the firm's expert on document discovery, including the production of electronic discovery and the manner in which records are supposed to be produced in large cases with many documents such as this. Because of the lateness in filing of the Unauthorized Supplements which raised the Rule 34(b)(2)(E) arguments (again, these were filed the evening before and the morning of the September 11 hearing), Mr. Mollerup was unable to review and weigh-in on the Trustee's Rule 34(b)(2)(E) arguments prior to the hearing. He has now done so.  In fact, in addition to providing the Trustee with the PDF and .txt files, <u>he</u>

also provided the Trustee with the load files for all documents produced. Yet neither the

Unauthorized Supplements nor Mr. Jobe's statements at the September 11 hearing mentioned

this critical and dispositive fact.[3]

The load file that was produced to the Trustee contains all of the information that Mr.

Jobe incorrectly told the Court was not provided. "A load file is a 'file that relates to a set of

scanned images or electronically processed files, and indicates where individual pages or files

belong together as documents, to include attachments, and where each document begins and

ends,' and may also include 'data relevant to the individual documents, such as metadata, coded

data, text, and the like.'" *Aguilar v. INS*, 255 F.R.D. 350, 353 n. 3 (S.D.N.Y. 2008) (citations

omitted). Metadata, in turn "is electronically-stored evidence that describes the 'history, tracking,

or management of an electronic document.' It includes the 'hidden text, formatting codes,

formulae, and other information associated' with an electronic document." *Id.*, at 353 (quoting

*Williams v. Sprint/United Mgmt. Co.*, 230 F.R.D. 640, 647 (D. Kan. 2005); *see also Auto Techs.*

*Ltd. P'Ship v. Automationdirect.com, Inc.*, 248 F.R.D. 55, 557 n.1 (N.D. Ill. 2008) (Metadata

includes "all of the contextual, processing, and use information needed to identify and certify the

scope, authenticity, and integrity of active or archival electronic information or records").

Simply put, the format of Rabo's document production to the Trustee is the most

common and the most preferred format used in litigation for at least the last twenty years. "[I]f a

party wants metadata, it should 'Ask for it. Up front. . .'" *Aguilar*, 255 F.R.D. at 357. Even

---

[3] If necessary, Mr. Mollerup can provide a sworn declaration to the Court averring to the fact that
the load files were provided to the Trustee's counsel as part of Rabo's production.

though the Trustee's subpoenas <u>did not ask for metadata,</u> Rabo provided the Trustee's counsel

with a metadata load file and multipage PDFs with accompany text files. The metadata load file

contains all the metadata from the native files collected by Rabo, including filenames, authors,

creation dates, email subjects, email to, email from, email cc, etc. Rabo's production can be

loaded into all legitimate eDiscovery review tools in use today, and once loaded, the PDF files

and the files' metadata are fully searchable and sortable. This production format, which includes

the native file metadata, fully complies with the requirement that documents be produced as the

records are kept in the ordinary course of business. Moreover, Rabo actually went above and

beyond to make its production reviewer friendly by providing the image files as multipage PDFs.

Typically, the document images are produced as single page TIFF files which make a manual

review without a review platform exceedingly difficult. Mr. Jobe's statements to the Court that

Rabo's production failed to satisfy the requirements of Rule 34(b)(3)(E) because Rabo failed to

provide metadata is either deliberately misleading, or he is unfamiliar with standard discovery

practices in large cases involving large document productions. In either event, these untimely

Rule 34(b)(2)(E)'s objections are completely without merit and must be rejected.  Further, the

Trustee's counsel should formally withdreaw these factually incorrect arguments from the

record.

## IV.    **The Trustee's New Rule 34(b)(2)(C) Arguments Should be Rejected.**

The Unauthorized Supplements also contain new arguments regarding Rule 34(b)(2)(C)

with respect to documents "withheld due to a non-privilege objection." Because these arguments

8

also were first made in pleadings filed hours before the hearing on the Trustee's Motion to

Compel they should be ignored by the Court, based on the authorities set forth above.

Moreover, even if the Court does consider them, the Court should reject them.  As an

initial matter, the Trustee served Rule 45 subpoenas, not Rule 34 document requests. Yet the

Trustee fails to assert, let alone show, that Rabo's production fails to satisfy the production

requirements imposed by Rule 45.  Again, it is ironic that the Trustee argued at the September 11

hearing that the Trustee served subpoenas because he wanted to provide Rabo and Focus the

broader protections afforded by Rule 45 to non-parties, and yet the Trustee then argues that Rabo

failed to satisfy the Rule 34 requirements that are applicable only to parties.

In any event, even if Rule 34 applies, as previously briefed, a party need not respond to

document requests that are facially overbroad or unduly burdensome on their face. [*See*

arguments and case law cited in Sections IV and V of Dkt. 284] As Rabo showed the Court at the

September 11 hearing, the Trustee's subpoenas are both facially overbroad, and unduly

burdensome on their face to respond to. As just one example, the definition of "You" in the

subpoenas included not only Rabo, but also its officers, directors, members, employees,

<u>attorneys, agents, representatives</u>, and/or anyone else acting on Your behalf, as well as your

predecessors, successors, assigns and affiliates as that term is defined in 11 U.S.C. § 101(2)."

(emphasis added). Then, after lumping anyone associated with Rabo into the definition of "You,"

including Rabo's retained outside counsel, the Trustee's subpoenas demand production of a

broad range of documents with no time limitations whatsoever. For example, the subpoenas

demand production of any communications "between You and any third party referring or

relating to the Debtor or a Debtor Affiliate, including the Debtor/Affiliate Accounts or any

Debtor/Affiliate Loans," and "all documents or electronically stored information referencing any

of the Debtors or the Debtors Affiliates."

As explained at the September 11 hearing, these facially overbroad requests necessarily

ensnare within their scope every privileged communication that Rabo's retained outside

attorneys have had with their clients regarding the Debtors or their accounts or their loans. These

facially overbroad requests also necessarily encompass within their scope every communication,

privileged or not, that Rabo's outside attorneys have had with their staff members regarding this

case or the Debtors, including such mundane communications as emails directing staff members

to file documents in this case or to input billing entries into the firm's billing software. These

facially overbroad requests also necessarily encompass within their scope a requirement that

Rabo produce (a) every third party record it has obtained regarding the Debtors from Rule 2004

subpoenas even though the Trustee already has all of those records, and (b) every

communication that Rabo's outside attorneys have had with other attorneys involved in this case,

including email communications with the Trustee and/or the Trustee's attorneys themselves.

At the September 11 hearing, Mr. Jobe basically conceded that the document requests

were facially overbroad and improper. In an effort to ameliorate the clear problem caused by that

indisputable fact, he suggested to the Court that the Trustee's document requests be limited in

time to the period prior to the Petition Date, which was April 28, 2023. While Rabo agrees that

the Trustee's document requests must be limited in time, the applicable time-period should be

prior to March 15, 2023, not April 28, 2023, at least with respect to communications that would

be protected by the attorney-client privilege or work product doctrine.  The reason for that is

because March 15, 2023, is the day that outside counsel was retained to represent Rabo's

interests in litigation regarding the Debtors.

Finally, with respect to the Trustee's complaint that Rabo has failed to explain the

examples or categories of non-privileged documents that Rabo says it should not have to

produce, Rabo invites the Court to review the emails between Rabo's counsel and the Trustee's

counsel contained in Dkts. 294 and 297, as those emails do exactly what the Unauthorized

Supplements claim has not been done—provide the categories of non-privileged documents that

will not be produced. But to make it clear and provide the Trustee and his counsel in one place

with the list they claim is missing, Rabo believes that it should not have to produce any non-

privileged communications or documents falling under the following categories, even if the

communications or documents fall within the scope of the Trustee's facially overbroad document

requests:

1.      Any non-privileged communications created or generated from and after March

15, 2023, that Rabo's outside attorneys (including staff members) have had with anyone

(including but not limited to communications between Rabo's outside attorneys and attorney

staff members and communications between Rabo's outside attorneys and staff members and

either the Trustee or attorneys or staff members for the other parties in these cases) even if those

communications refer or relate to the Debtor or a Debtor Affiliate, including the Debtor/Affiliate

Accounts or any Debtor/Affiliate Loans;

2.      Any documents or electronically stored information referencing any of the

Debtors or the Debtor Affiliates, including the Debtor/Affiliate Accounts or any Debtor/Affiliate

Loans that Rabo first came into possession of after the April 28, 2023 Petition Date, provided

such documents or electronically stored information (or copies thereof) are already in the

Trustee's possession, custody or control (such as all of the documents produced to Rabo in

response to Rule 2004 subpoenas, copies of which were then provided to the Trustee); and

3.      Any documents or electronically stored information constituting Rabo's business

records that have already been produced to the Trustee, formally or informally, in this case.

**V.   Rabo Should not be Required to Provide a Privilege Log Absent a Narrowing of the Trustee's Facially Overbroad Document Requests, Because Preparing a Privilege Log in and of Itself Would be Unduly Burdensome.**

The final argument in the Trustee's Unauthorized Supplements relates to privileged

documents and privileged communications. Even though the Trustee deliberately and

intentionally drafted his document requests to ensnare thousands of documents that the Trustee

certainly knows are privileged (such as all of the many, many communications that Rabo's

outside attorneys have had with their clients regarding this case), the Trustee suggests that Rabo

has somehow waived the privilege by not providing a privilege log concerning those privileged

communications.

That is not the law, and the Court should not reward counsel's improper conduct in

deliberately drafting document requests designed to capture thousands of privilege

communications in their all-encompassing web. *See Williams v. City of Dallas,* 178 F.R.D. 103,

115 (N.D. Tex. 1998) (holding that because issuing party served "facially overbroad" subpoenas,

"Babcock and Carter had no obligation to undertake the task of lodging objections to a

potentially vast array of protected material that technically fell within the scope of the

subpoenas," and that there was no waiver of any privileges by failing to lodge specific objections

or provide a privilege log); *Hamilton v. Ogden Weber Tech Coll.*, 2017 WL 5633106, at *4 (D.

Utah Nov. 21, 2017) ("Yet here, even providing a privilege log responsive to this request is

overly burdensome because Defendant would be forced to describe all communications with its

attorneys.").

        As noted above (and at the hearing), Rabo's outside counsel was retained on or about

March 15, 2023, to provide legal services to Rabo concerning the Debtors, and since that time

Rabo's outside attorneys have had many hundreds if not thousands of privileged communications

with their clients about this case, and with the consulting and potentially testifying experts that

Rabo's outside attorneys have retained to assist counsel. Providing a privilege log of those

communications would in and of itself impose an undue burden and needless expense on Rabo as

it would take countless hours and costs tens of thousands of dollars to complete such an

inappropriate task.

        As Rabo's counsel also noted at the September 11 hearing, however, Rabo has no

objection to providing a privilege log for any communications or documents concerning the

Debtors or any Debtor Affiliates or any Debtor Accounts or Debtor Loans that are withheld from

production, provided those communications or documents were first created or generated prior to

the retention of Rabo's outside counsel on or about March 15, 2023.  An example of the type of

documents or communications for which Rabo can provide a privilege log would be for

communications between Rabo business people and Rabo's in-house attorneys from loan

origination in 2018 through March 15, 2023, regarding or relating to the Debtors or the loans

Rabo made to the Debtors, to the extent such documents exist and are withheld from production

on the grounds of privilege.

The Court here is faced with a situation were the Trustee has served Rabo and Focus with

document requests that are overbroad on their face and unduly burdensome to respond to on their

face.  That makes it extremely burdensome and impractical, if not close to impossible, for any

privilege log to be prepared in this case. Before the Court even considers the issue of a privilege

log, it should find that the Trustee's subpoenas must be narrowed both in time and wording so

that the subpoenas do not, on their face, intentionally capture communications that are protected

by the attorney-client privilege or the work product doctrine. Specifically, the Court should order

that Rabo need not produce any privileged or otherwise protected communications or documents

concerning the Debtors or any Debtor Affiliates or any Debtor Accounts or Debtor Loans

consistent with clear and controlling rules and case authority, and in the event the Court chooses

to order Rabo to produce any further documents, that Rabo be required to provide a privilege log

for only those communications or documents that were created or generated prior to March 15,

2023 and that are withheld from production on the basis of any applicable privilege or rule.

WHEREFORE, for the additional reasons set forth herein, the Trustee's Motion to

Compel should be denied.

14

DATED this 13th day of September, 2024.

UNDERWOOD LAW FIRM, P.C.
Thomas C. Riney, SBN: 16935100
W. Heath Hendricks, SBN: 240556451
500 South Taylor, Suite 1200, LB 233
Amarillo, Texas 79101
Telephone: (806) 376-5613
Facsimile: (806) 379-0316
Email: tom.riney@uwlaw.com
Email: heath.hendricks@uwlaw.com

--and--

RAY QUINNEY & NEBEKER P.C.
Michael R. Johnson *(Pro Hac Vice)*
36 South State Street, Suite 1400
Salt Lake City, UT 84111
Telephone:  (801) 532-1500
Facsimile:  (801) 532-7543
Email:  mjohnson@rqn.com


*/s/ Michael R. Johnson*
Michael R. Johnson
*Attorneys for Rabo AgriFinance LLC*

15

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on September 13, 2024, the foregoing **RABO AGRIFINANCE LLC'S AND FOCUS MANAGEMENT GROUP USA, INC.'S OBJECTION AND RESPONSE TO THE TRUSTEE'S UNAUTHORIZED AND LATE-FILED "REPLY SUPPLEMENT" [DKT. 295[ AND "FIRST AMENDED REPLY SUPPLEMENT" [DKT. 296] TO THE TRUSTEE'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM RABO AGRIFINANCE AND FOCUS MANAGEMENT** was filed with the Clerk of the Court in the above-entitled case, which sent notice of electronic filing to all electronic filing users in the case.

*/s/ Michael R. Johnson*
Michael R. Johnson

1682115

16