**LYNN PINKER HURST SCHWEGMANN**

ALAN DABDOUB
*Partner*

D 214 981 3818
F 214 981 3839
adabdoub@lynnllp.com

Lynn Pinker Hurst & Schwegmann, LLP
2100 Ross Avenue
Suite 2700
Dallas, Texas 75201
lynnllp.com

**VIA CM/ECF**
The Honorable Robert L. Jones
United States Bankruptcy Court
Northern District of Texas
1205 Texas Avenue, Room 306
Lubbock, Texas 79401

Re: Privilege questions in connection with the Trustee's Motion to Compel Production of Documents and Information from Rabo AgriFinance LLC and Focus Management USA, ECF No. 268, *McClain Feed Yard, Inc., et al.*, Bankruptcy Case No. 23-20084-RLJ-7.

Dear Judge Jones:

The Trustee Kent Ries files this letter brief to help the Court assess Rabo and Focus's privilege objection argued at the September 11, 2024, hearing on the Trustee's Motion to Compel Production of Documents and Information from Rabo AgriFinance, LLC and Focus Management USA, ECF No. 268 (the "Motion").

### I. The Focus engagement letter does not support a blanket work product privilege.

As a threshold matter, the Trustee seeks materials from Rabo and Focus that were prepared in the ordinary course of business. Materials prepared in the ordinary course of a party's business, even if prepared at a time when litigation was reasonably anticipated, are not protected work product.[1] But Rabo and Focus have cast such a wide privilege net as to catch non-privileged documents. That is the problem and central issue before the Court. Because Rabo has failed to meet its burden to validate its sweeping privilege objections, those objections should be overruled.

District courts within the Fifth Circuit uniformly hold that "[t]he party asserting a privilege bears the burden of proof sufficient to substantiate its claim by proving that each document it has withheld is privileged, rather than relying on a blanket assertion of privilege."[2] Put differently, "[t]he parties resisting discovery by asserting any privilege bear the burden of proof sufficient to substantiate their privilege claims and cannot rely merely on a blanket assertion of privilege."[3] And "[w]hether a document is protected from discovery by attorney work product is a fact intensive determination" that turns on the nature of the document and the factual context of the particular case.[4]

---

[1] *See Evans v. City of Chicago*, 231 F.R.D. 302 (N.D. Ill. 2005).
[2] *G.K. v. D.M.*, Civil Action No. 21-2242, 2024 WL 1198349, at *6 & n.33, 34 (E.D. La. March 20, 2024).
[3] *Enron Corp. Savs. Plan v. Hewitt Assocs., L.L.C.*, 258 F.R.D. 149, 160 (S.D. Tex. 2009).
[4] *In re Hardwood P-G, Inc.*, 403 B.R. 445, 462 (Bankr. W.D. Tex. 2009).

The only evidence Rabo has introduced to support its claim of privilege or remaining non-privilege objections is the Focus engagement agreement.[5] This does not support a privilege claim or any other objection. First, it is unknown when exactly Focus (or any other known or unknown third-parties retained by Rabo) actually began work because the parties refuse to provide the Rule-mandated privilege log. Second, the engagement agreement itself is dated March 17, 2023, or—6 weeks before the April 28, 2023 petition date. The scope of work attached to the engagement agreement details a host of *fact-focused* services that Focus will provide to the "Lender" (not counsel). Rather than support a privilege objection, these *fact-focused* services (#1-#7 below) are ordinary loan servicing functions for an agricultural lender such as Rabo:

**FOCUS MANAGEMENT GROUP USA, INC.**

WORK/PROJECT AUTHORIZATION NO.1

DATED: March 17, 2023

In accordance with that certain Agreement for Consulting Services dated March 17, 2023 (the "Agreement"), by and between Ray Quinney & Nebeker PC ("Counsel") and Focus Management Group USA, Inc. ("Consultant"), Counsel hereby authorizes Consultant to perform the following services in accordance with the terms, conditions and covenants set forth in the Agreement and in this Authorization:

Services relating to McClain Feedyards and its subsidiaries and affiliates (collectively, "Company")

1. Prepare working capital (cash, AR, inventory and AP) roll forwards from December 31, 2022 and moving through January, February, and March of 2023 using a download of the Company's QuickBooks data file, the BBCs, and other requested data.
   - Test a sample of the AR, AP, purchase/sales invoices to validate authenticity and accuracy.

2. Conduct a full count of the McClain cattle located at all facilities and pastures where the client reports ownership of cattle. Count will be conducted simultaneously at all locations including owned facilities listed below:
   - Benton KY: Tract layout
   - Hereford TX: 3 locations, Feed lot layout
   - Friona TX: 1 location, Feed lot layout, majority of cattle are at this location.

3. Reconcile the inventory count and the working capital roll forwards to the Company's BBC submissions.

4. Review and verification of documents supporting cattle ownership during the inventory inspection.

5. Provide recommendations for improvements to the Company reporting and/or bank monitoring policies and procedures moving forward based on results.

6. Assist Lender in other activities related to the foregoing, as requested.

7. Communicate with, and provide required financial information to, Lender with respect to any information required by Lender concerning Company, as frequently as required.

Reports:
- Based on the analysis, findings and conclusions developed, prepare an informational memorandum including but not limited to the above services. The memorandum should speak to the possibility of fraud in the Company's reporting.

Because the work–product doctrine is intended only to guard against divulging an attorney's strategies and legal impressions, it does not protect facts concerning creation of

---

[5] Ex. 6.

work product or facts contained within work product.[6] And the *fact-focused* services above reveal nothing of an attorney's strategies and legal impressions.[7]

"[T]he work product doctrine protects only the attorney's work product and not the underlying facts."[8] That is because "the purpose of the doctrine is to protect an attorney's mental impressions, legal theories and strategies as he prepares his client's case."[9] It follows that "counsel are entitled to protect … their work and their analysis of the case, not the knowledge possessed by third parties."[10] Any opinion based on financial analysis of the Debtors here (certainly at least pre-petition and arguably post-petition) would fall under the lender's ordinary loan servicing functions and be non-privileged under the reasoning of the *LifeScan* case discussed at the hearing.[11]

Furthermore, an engagement letter, by itself, is not dispositive. *In Phillips v. C.R. Bard*,[12] the defendant Bard argued that when an outside consultant <u>is retained by and acts at the direction of counsel on behalf of a corporation</u>, communications with the consultant are privileged, if the consultant is retained to assist the attorney in rendering legal advice to the corporation. But that fact did not end the analysis. Rather, the Court indicated "where Bard asserts that a specific communication with a consultant is protected by the work product doctrine, the court will have to engage in an analysis of whether the consultants were retained to perform work in anticipation of litigation." [13] Simply having an engagement letter between a lawyer and a third-party consultant does not by itself establish that all communications between them are protected attorney work product. <u>Each</u> communication must be assessed based on its content, purpose, and the context in which it was made, specifically if it was in anticipation of litigation and contains material reflecting the attorney's strategy or legal reasoning. As this Court once emphasized, "[t]he work-product privilege does not protect facts merely because they were communicated either to an attorney or by an attorney if the attorney obtained the facts from independent sources," as is the case with Rabo and Focus.[14] Accordingly, it is very likely that some or all of the Focus communications and other documents are not privileged, and a mere engagement agreement with Rabo's counsel is far from dispositive. The timing and scope of work actually undercuts Rabo and Focus's blanket privilege claim. With nothing other than an engagement letter to attempt to support Rabo and Focus's sweeping privilege objections,

---

[6] *See Resolution Trust Corp. v. Dabney*, 73 F.3d 262 (10th Cir. 1995).
[7] *See Wultz v. Bank of China Ltd.*, 304 F.R.D. 384 (S.D. N.Y. 2015) (Documents relating to a bank's investigation into a terrorist's accounts following receipt of a letter from counsel for family members informing the bank that they intended to sue the bank for facilitating wire transfers to a terrorist group were not protected work product because the bank provided virtually no evidence that it would not have generated documents had it not anticipated litigation).
[8] *Adams v. Memorial Hermann*, 973 F.3d 343, 350 (5th Cir. 2020).
[9] *Walker v. George Koch Sons, Inc.*, Civil Action No. 2:07-CV-274-KS-MTP, 2008 WL 4371372, at *5 (S.D. Miss. Sept. 18, 2008) (citing *Hickman v. Taylor*, 329 U.S. 495, 511 (1947)).
[10] *Id*.
[11] *LifeScan, Inc. Smith Roche Diagnostics Corporation v. Smith* , Civil Action Nos. 17-5552, 19-8761-CCC-JSA, 2023 WL 7089249 (D.N.J. Feb. 15, 2023).
[12] , 290 F.R.D. 615, 632-33 (D. Nev. 2013).
[13] *Id.* at 633.
[14] *In re Reagor-Dykes Motors, LP*, Case No. 18-50214-RLJ-11 (Jointly Administered), 2021 WL 5226485, at *4 (Bankr. N.D. Tex. Nov. 4, 2021) (Jones, J.).

Fifth Circuit law compels the overruling of such objections. Indeed, Fifth Circuit law is clear: blanket assertions of a privilege are unacceptable, and the court and other parties must be able to test the merits of a privilege claim.[15]

## II. Failing to provide a privilege log is fatal to Rabo and Focus at this stage.

Even assuming *arguendo* that Rabo and Focus could claim work product privilege (they cannot), they have not carried their burden of proving that privilege exists. To start, neither Rabo nor Focus have produced a privilege log, which was due May 31, 2024. That basic omission is fatal to the work product privilege asserted by Rabo and Focus.

The Fifth Circuit's April 2024 published decision in *United States v. Fluitt* aptly illustrates the Trustee's point by explaining that a party asserting a privilege claim must "show their work" to counterparties and courts.[16] In doing so, the Fifth Circuit affirmed a magistrate judge's conclusion that the "privilege logs failed to adequately substantiate [a resisting party's] assertions of privilege" because they "do not provide a description for the documents/emails to explain why each one should be protected from disclosure."[17] The privilege logs in *Fluitt* were problematic because they "list[ed] only the names of the parties to the document or communication, the date, the file name (the subject line if an email), and an assertion of privilege."[18] On those facts, the Fifth Circuit agreed with the magistrate judge that "this is not enough information to assess whether the … assertions of privilege are proper."[19] And the Fifth Circuit expressly extended that ruling to the work product doctrine by noting that a party asserting the privilege must prove—***through competent evidence***—that "the materials were prepared in anticipation of litigation" and satisfy all pre-conditions for non-disclosure.[20]

If the privilege logs analyzed in *Fluitt* were insufficient to justify non-production, the same must be true here. After all, Rabo and Focus have refused to produce any privilege log, let alone a log containing the information deemed insufficient in *Fluitt*. Rabo and Focus's refusal to produce a privilege log means their privilege objections are waived.[21] Their refusal to produce a log prevents the Trustee from timely "mak[ing] a meaningful determination regarding the merits of the claims of privilege and test[ing] those merits before the Court."[22] And such "failure to provide a complete privilege log is, on its own, sufficient to warrant a finding that any privilege, even if it had been established, has been waived."[23]

---

[15] *See United States v. El Paso Co.*, 682 F.2d 530, 541 (5th Cir.1982) (citing *United States v. Davis*, 636 F.2d 1028, 1044 n. 20 (5th Cir.1981)).
[16] 99 F.4th 753, 763–64 (5th Cir. 2024).
[17] *Id*. at 763 (cleaned up).
[18] *Id*. at 763–64 (cleaned up).
[19] *Id*. at 764 (cleaned up).
[20] *Id*.
[21] *See Barnett v. Deere & Co.*, Civil Action No. 2:15-CV2-KS-MTP, 2016 WL 10179585, at *3 (S.D. Miss. April 5, 2016).
[22] *Id*.
[23] *Id*. (internal quotation marks omitted).

Separately, Rabo and Focus cannot pretermit the privilege log issue by claiming the Trustee's Subpoenas are overbroad and unduly burdensome. Rabo and Focus attempt to shift the burden in order to uphold their sweeping privilege objections. But such burden shifting efforts fall flat. Rabo and Focus have failed to carry their own burden on their overbreadth objection. As another judge in this district once stated, the "party resisting discovery must show specifically how each document request is overly broad, unduly burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden."[24]

Rabo and Focus have not offered any competent evidence about the burden that will be unduly imposed by compliance with the Trustee's subpoenas and preparation of a sufficient privilege log. Besides, Rabo has yet to cite any controlling authority for the proposition that preparation of a privilege log is conditional on the resolution of an overbreadth objection. Rabo and Focus cite *Williams v. City of Dallas*,[25] to argue that they should not be required to provide a privilege log "absent a narrowing of the Trustee's facially overbroad document requests" and that "preparing a privilege log in and of itself would be unduly burdensome." Such arguments are unpersuasive. Rabo failed to tell the Court that in *Williams* the responding party moved to quash the subpoena. In light of that motion to quash, the Court stated "to adopt Williams' view would be to deprive a subpoenaed party of its right to quashal or modification by requiring that it comply with Rule 45(d)(2),[26] notwithstanding the protection afforded by Rule 45(a)(3)(A)."[27] Here, Rabo filed no such motion. Williams is thus plainly distinguishable.

Rabo fares no better by relying on *Hamilton v. Ogden Weber Tech College*.[28] *Hamilton* is an employment case (hostile work environment allegations) where the Court concluded that the needs of the case did not warrant the production of a privilege log where the scope of the request seeking "all communications regarding this lawsuit" was a ten-year period. Moreover, *Hamilton* is a district court case out of Utah. Conversely, Rabo is a secured creditor who filed a proof of claim for $53,000,000 and the issues before the Court are very discovery intensive. The "fact that the compilation of such a [privilege] log is burdensome will not obviate the obligation of providing one."[29] In short, Rabo has failed to meet its burden to sustain its privilege objections. Accordingly, the Court should grant the Trustee's motion.

Respectfully submitted,
/s/ Alan Dabdoub
Alan Dabdoub

---

[24] *Heller v. City of Dallas*, 303 F.R.D. 466, 490 (N.D. Tex. 2014) (citing *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)).
[25] 178 F.R.D. 103, 115 (N.D. Tex. 1998).
[26] Rule 45(d)(2) indicated: "When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim." *Williams*, 178 F.R.D. at 115 (N.D. Tex. 1998).
[27] *Id.* at 115.
[28] 2017 WL 5633106, at *4 (D. Utah Nov. 21, 2017).
[29] *Pensacola Firefighters' Relief Pension Fund Bd. Of Trustees v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 265 F.R.D. 589, 593-594 (N.D. Fla. 2010).