# EXHIBIT B

# LYNN PINKER HURST SCHWEGMANN

ALAN DABDOUB
*Partner*

D 214 981 3818
F 214 981 3839
adabdoub@lynnllp.com

Lynn Pinker Hurst & Schwegmann, LLP
2100 Ross Avenue
Suite 2700
Dallas, Texas 75201
lynnllp.com

July 15, 2024

*VIA E-MAIL:* kent@kentries.com

Kent Ries, Trustee
P.O. Box 3100
Amarillo, Texas 79116

> **PRIVILEGED AND CONFIDENTIAL ATTORNEY-CLIENT COMMUNICATION**

RE: *Terms of Engagement*

Dear Kent:

## I. Introduction.

Thank you for retaining Lynn Pinker Hurst & Schwegmann, LLP ("LPHS") to represent Kent Ries, Chapter 7 Trustee ("Client") in the investigation of potential claims that the bankruptcy estates may have against investors, banks, lenders, and accountants and audit firms in connection with the matters entitled *In Re McClain Farms, Inc.*, (Case No. 23-20085-rlj7); *In Re McClain Feed Yard, Inc.*, (Case No. 23-20084-rlj7); and 7M Cattle Feeders, Inc. (Case No. 23-20086-rlj7) (collectively the "Chapter 7 bankruptcies"), pending in the United States Bankruptcy Court for the Northern District of Texas, Amarillo Division. The purpose of this letter is to confirm our engagement and to provide you with certain information concerning our fees, billing and collection policies, and other terms on which we propose to represent Client.

## II. Scope of Engagement.

LPHS has been engaged to represent Client as special counsel, which the parties expect to include obtaining and investigating records and other information of the Debtors and other case parties in interest, investigating litigation claims of the Debtors' bankruptcy estates, matters that would generally aid in that overall effort of identifying, pursuing, and liquidating assets of the Debtors, and other general legal advice and assistance to the Trustee. Because we are not Client's general counsel, our acceptance of this engagement does not involve an undertaking to advise Client, or represent him or his interests in, any other matter, except for other matters in which we may expressly agree to represent Client. Unless otherwise agreed to in writing, the scope of LPHS's retention does not include acting as counsel of record in any lawsuit or other proceeding other than the bankruptcy cases and related adversary proceedings.

LPHS agrees to the following discounted rates for the investigation of claims through December 1, 2024:

Mr. Kent Ries
July 15, 2024
Page 2 of 6

> **PRIVILEGED AND CONFIDENTIAL ATTORNEY-CLIENT COMMUNICATION**

| TIMEKEEPER RATE | NORMAL HOURLY RATE | DISCOUNTED RATE |
|---|---|---|
| Alan Dabdoub | $875 | $450 |
| Campbell Sode | $625 | $350 |
| Whitney Gillespie, Paralegal | $345 | $200 |
| LP Doc Review Attorneys | $375 | $300 |

Although impossible to predict with certainty, the parties plan to divide the investigation tasks as follows:

1.  Document review and analysis – These activities would be split between LPHS document review attorneys and paralegal, Hudson Jobe's paralegal, and Lain Faulkner, under Messrs. Dabdoub and Jobe's oversight;

2.  Discovery disputes – We anticipate having to compel several parties to produce additional documents. Those activities will be split between LPHS and Mr. Jobe, with an LPHS associate, Campbell Sode, assisting on drafting pleadings and legal research.

3.  Analysis and development of potential claims – These activities would be led by Mr. Dabdoub as to professional liability and lender liability claims, and Mr. Jobe on avoidance claims and Ponzi scheme issues, with Mr. Sode assisting both on legal research.

4.  Depositions – If any depositions occur during the Investigative Phase, LPHS and Mr. Jobe will endeavor to staff a deposition with only one attorney. Depending on the subject matter of the deposition, Mr. Dabdoub or Mr. Jobe would likely be the attorney to conduct or defend the deposition.

LPHS's engagement will not commence until receipt of a signed copy of this Engagement Letter. The Investigate Phase will be concluded December 1, 2024, at which time, Client and LPHS intend to discuss an alternative fee arrangement in connection with any services contemplated to be provided after December 1, 2024 and/or related to the filing of any lawsuits.

LPHS's rates are subject to periodic adjustment, typically in January of each year. We will not require a retainer.

**It is anticipated that a substantial amount of fees and expenses in this engagement will be individual tasks or expenses that benefit more than one of the debtor's bankruptcy estates. For those fees and expenses, LPHS will utilize a single billing invoice, and all three debtors' estates will be jointly and severally liable for those fees and expenses. For fees and expenses that are clearly relevant to only one of the debtor's estates, and only that specific debtor's estate will be responsible for this**

Mr. Kent Ries
July 15, 2024
Page 3 of 6

**PRIVILEGED AND CONFIDENTIAL ATTORNEY-CLIENT COMMUNICATION**

separate invoice. However, LPHS reserves the right to seek Bankruptcy Court approval of payment of separate fees and expenses from other debtor's estates in the event such fees and expenses have benefited other debtors' estates.

### III. Disclaimer of Any Result or Warranty.

We do not know and cannot determine in advance the ultimate cost of the Investigative Phase since we do not know at this time (i) all of the facts, circumstances and legal issues concerning the potential causes of action, (ii) the amount of factual investigations and legal research that may be required during the Investigative Phase, or (iii) the extent of discovery, court proceedings and other actions that may be taken by other parties in connection with the Investigative Phase.

A trial is an unpredictable event, the outcome of which is based upon facts we do not know at this time and on law that may change. *There can be no assurances, and we make no representations, guarantees or warranties as to the particular results from our services*, the response and timeliness of action by the court or any party involved in the Investigative Phase or the case, or the outcome of the Investigative Phase or the case. *Client may win or lose at trial, and any trial decision could be upheld, reversed or modified on appeal*.

### IV. Expenses.

Our internal charges typically include such items as messenger services, overnight courier services, charges for terminal time for computer research and complex document production, eDiscovery software for data analytics, and charges for photocopying or printing materials sent to the Client or third parties or required for our use. Third-party charges will be billed to Client at our cost.

During the course of our representation, it may be appropriate or necessary to engage third parties to provide services on Client's behalf. These services may include such things as consulting or testifying experts, investigators, providers of computerized litigation support, court reporters, providers of filing services and searches of governmental records and filings and local counsel. Legal fees and expenses are due 30 days after receipt of our invoice and approval by the Bankruptcy Court.

### V. Billings.

We bill monthly throughout the engagement for a particular matter. Our statements contain a concise summary of each matter for which legal services were rendered and a fee was charged. This statement also will include a breakdown of hours by attorney along with that attorney's billing rate. If any monthly statement approved by the Bankruptcy Court is not paid within 60 days after Court approval, we reserve the right to discontinue services on all pending matters for Client until all of your accounts with us have been brought

Mr. Kent Ries
July 15, 2024
Page 4 of 6

**PRIVILEGED AND CONFIDENTIAL ATTORNEY-CLIENT COMMUNICATION**

current. Any payments made on past due statements shall be applied first to the oldest outstanding statement. In addition, we are entitled to attorneys' fees and costs if collection activities are necessary.

### VI. Scope of Engagement.

We will provide services of a strictly legal nature, and in doing so we will comply with State Bar Rules of Professional Responsibility, as well as all other applicable Court rules. It is understood that Client is not relying on us for business, investment, or accounting decisions, or to investigate the character or credit of persons with whom Client may be dealing, or to advise Client about changes in the law that might affect Client unless otherwise specified in the letter. We will keep Client advised of developments as necessary to perform our services and will consult with Client as necessary to ensure the timely, effective, and efficient completion of our work.

### VII. Necessary Information.

It is anticipated that Client will furnish us promptly with all information that we deem to be required to perform the services described in our engagement letter and documents prepared by other legal counsel employed by Client in connection with prior or other matters. Client will make such business or technical decisions or determinations as are appropriate to carry out our engagement.

### VIII. Tax Implications - No Tax Advice.

Tax implications may arise from this engagement, including but not limited to the taxation of any monetary or other recovery or payment or other settlement terms including any award or payment of attorneys' fees. We do not provide tax advice. Client agrees and acknowledges that tax advice is not within the scope of my engagement and no discussions or communications we may have, even if they touch upon or relate to potential tax issues or matters, should not or will not be considered tax advice. The Client agrees and understands that he should seek the counsel of an accountant or tax attorney to advise on all tax issues, including, for example, the tax consequences to the Client or any other person or entity of any recovery or payment, or other settlement terms of the case or any of the Matters.

Without limiting the foregoing, Client agrees and acknowledges that I am not advising Client with respect to the tax treatment or characterization of the Client's expenditures or fee payments pursuant to this Agreement or the tax consequences of any settlement or judgment in this matter. In addition, in accordance with Internal Revenue Service Circular 230, I inform Client that any discussions of federal tax issues contained in any communications with Client during the course of this engagement are not intended or written to be used, and cannot be used, by any recipient for the purpose of (i) avoiding

Mr. Kent Ries
July 15, 2024
Page 5 of 6

**PRIVILEGED AND CONFIDENTIAL ATTORNEY-CLIENT COMMUNICATION**

penalties that may be imposed on the recipient under United States federal tax laws, or (ii) promoting, marketing or recommending to another party any tax-related matters.

### IX. Termination of Engagement.

Upon conclusion of the Investigative Phase (December 1, 2024), or upon earlier termination of our relationship, the attorney-client relationship will end unless Client and we have expressly agreed to a continuation with respect to pursuing the claims identified during the Investigative Phase. Client has the right at any time to terminate our services and representation upon written notice to the firm. We similarly reserve the right to withdraw from our representation. Without limitation, such withdrawal could occur if Client becomes delinquent in paying invoices approved by the Bankruptcy Court, if Client fails to cooperate or follow our advice on a material matter, or any fact or circumstance would, in our view, render our continuing representation unlawful or unethical. If we elect to withdraw, Client will take all steps necessary to free us of any obligation to perform further, including the execution of any documents necessary to complete our withdrawal. No termination of our engagement terminates or affects Client's obligation to pay for services rendered, costs or expenses paid or incurred on Client's behalf or any indemnification payable with respect to services rendered prior to the date of such termination.

### X. Governing Law.

**OUR AGREEMENT SHALL BE GOVERNED BY THE LAWS OF THE STATE OF TEXAS.**

We look forward to representing you in the Investigative Phase and beyond, and we are pleased that you have chosen us to represent you. To signify Client's agreement to the terms and conditions set forth herein, please execute this Engagement Letter in the signature space provided below.

Mr. Kent Ries
July 15, 2024
Page 6 of 6

| PRIVILEGED AND CONFIDENTIAL ATTORNEY-CLIENT COMMUNICATION |
|---|

Sincerely,

**LYNN PINKER HURST & SCHWEGMANN, LLP**

Date:   July 15, 2024            By: _____
                                                Alan Dabdoub

**AGREED** and **ACCEPTED**

this 15th day of July, 2024:

By:_____
Kent Ries, Chapter 7 Trustee (Client)
for the bankruptcy estates of McClain
Farms, Inc. (Case No. 23-20085-rlj7);
McClain Feed Yard, Inc. (Case No.
23-20084-rlj7); and 7M Cattle Feeders,
Inc. (Case No. 23-20086-rlj7)