UNDERWOOD LAW FIRM, P.C.
Thomas C. Riney, SBN: 16935100
W. Heath Hendricks, SBN: 240556451
500 South Taylor, Suite 1200, LB 233
Amarillo, Texas 79101
Telephone: (806) 376-5613
Facsimile: (806) 379-0316
Email: tom.riney@uwlaw.com
Email: heath.hendricks@uwlaw.com

        -and-

Michael R. Johnson (*Pro Hac Vice*)
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
Salt Lake City, Utah 84111
Telephone:  (801) 532-1500
Facsimile:  (801) 532-7543
Email:  mjohnson@rqn.com

*Attorneys for Creditor Rabo AgriFinance LLC*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | |
|---|---|
| IN RE:<br><br>McCLAIN FEED YARD, INC., McCLAIN FARMS, INC. and 7M CATTLE FEEDERS, INC.,<br><br>   Debtors.[1] | **CASE NO. 23-20084-7-rlj**<br><br>**(Jointly Administered Cases)**<br><br>**Chapter 7** |

---

[1] The Debtors in these jointly administered Chapter cases are: (a) McClain Feed Yard, Inc. (Case No. 23-20084), (b) McClain Farms, Inc. (Case No. 23-20885) and 7M Cattle Feeders, Inc. (Case No. 23-20886). All three cases are being jointly administered under the case number for McClain Feed Yard, Inc.

## RABO AGRIFINANCE LLC'S RESPONSE TO (A) FIRST INTERIM APPLICATION OF LYNN PINKER HURST & SCHWEGMANN, LLP, (B) FIRST INTERIM APPLICATION OF FEES AND EXPENSES OF JOBE LAW PLLC, (C) SECOND AND FINAL APPLICATION OF QUILLING, SELANDER, LOWNDS, WINSLETT & MOSER, P.C., AND (D) SECOND APPLICATION FOR ALLOWANCE OF FEES AND EXPENSES OF LAIN, FAULKNER & CO, P.C.

Rabo AgriFinance LLC ("**Rabo**"), a secured creditor of each of Debtors (collectively, the "**McClain Debtors**") in the above-entitled jointly administered cases, through counsel, hereby files this Response to (a) the *First Interim Application of Lynn Pinker Hurst & Schwegmann, LLC* (the "**Lynn Pinker Application**") [Dkt. 312], (b) the *First Interim Application for Allowance of Fees and Expenses of Jobe Law PLLC* (the "**Jobe Application**") [Dkt. 311], (c) the *Second and Final Application for Allowance of Fees and Expenses of Quilling, Selander, Lownds, Winslett & Moser, P.C.* (the "**Quilling Application**") [Dkt. 309], and (d) the *Second Interim Application of Lain, Faulkner & Co., P.C.* (the "**Lain Faulkner Application**") [Dkt. 310].

The Lynn Pinker Application, the Jobe Application, the Quilling Application and the Lain Faulkner Application are collectively referred to herein as the "**Pending Fee Applications**," and the professionals who have filed the Pending Fee Applications are collectively referred to herein as the "**Applicants**."

For its response to the Pending Fee Applications filed by the Applicants, Rabo respectfully states as follows:

1.     In the Pending Fee Applications, the Applicants are requesting aggregate compensation and reimbursement of expenses totaling $672,596.29.  This comes on the heels of

prior awards from the Court totaling $410,969.18 to the Quilling Selander and Lain Faulkner firms. Thus, if the Pending Fee Applications are allowed and paid in the amounts requested, the Court will have authorized and approved $1,083,565.47 in professional fees to the Trustee's various retained professionals.

2.      As the Court is no doubt aware, section 330(a)(1) of the Bankruptcy Code provides that the Court may award "reasonable compensation for actual, necessary services rendered by" Applicants. Section 330(a)(3)(C) specifies that, to determine whether the applicants' fees are "reasonable," the Court must consider whether the Applicants' services were "necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of," this case. Section 330(a)(4)(A)(ii) explicitly prohibits awarding fees for "services that were not (a) reasonably likely to benefit the estate; or (b) necessary to the administration of" this case. *See also In re Bird*, 577 B.R. 365, 388 (B.A.P. 10th Cir. 2017) (denying a Chapter 7 trustee and his counsel's fee applications as containing services that "were neither necessary nor beneficial to the estate.") "The burden is on the party requesting fees to establish that its request is reasonable." *In re Mkt. Ctr. E. Retail Prop., Inc.*, 730 F.3d 1239, 1246 (10th Cir. 2013).

3.      Rabo has grave concerns about the amount of estate professional fees incurred in this case to date given the relatively modest activity that creditors have seen from the Trustee and his professionals; i.e., the Applicants. Indeed, to date, much of the activity that has been undertaken to obtain discovery, assert claims, and narrow and refine issues has been led by the creditors, such as Rabo and others, and not by the Trustee.

3

4.      For example, Rabo prepared Rule 2004 motions and obtained Rule 2004 orders authorizing Rabo to serve numerous document subpoenas on various parties.  Rabo then served those documents subpoenas, and voluntarily turned over tens of thousands of pages of documents produced in response to the subpoenas to the Trustee and his professionals.

5.      Rabo also filed Rule 2004 motions and obtained Rule 2004 orders authorizing Rabo to conduct examinations of Meagan Goad, Jed Goad, Kinsey Moreland, Chelsea McClain and Crystal McClain, conducted those examinations in Kentucky in July of this year, and then provided copies of the examination transcripts to the Trustee and his professionals.  No one actively participated in these examinations on behalf of the Trustee.

6.      And Rabo, of course, is the party that filed and has been prosecuting the Dealer Trust adversary proceeding (Adv. No. 23-2005) in an attempt to get a handle on the over $120 million in alleged Dealer Trust claims.  Rabo has already successfully eliminated tens of millions of dollars in Dealer Trust claims by seeking and obtaining default judgments against numerous non-responding defendants.  Further, as the Court is aware, Rabo has moved for partial summary judgment asking the Court to disallow on a final basis all of the Dealer Trust claims that the USDA previously determined were presumptively invalid.  While that motion is currently under advisement, if the Court were to grant the motion that would leave less than $3 million in remaining Dealer Trust claims to resolve.

7.       Several months ago, Rabo's counsel sent a letter to the Trustee's counsel outlining a number of very colorable claims the Trustee had against various McClain insiders, including Chelsea McClain, Crystal McClain, Kristin McClain and Piper McClain.  A copy of

that letter, which contained detailed information regarding outlining the claims and the evidence supporting the insider claims, is attached hereto as Exhibit "A."

8.     To date, the Trustee has not pursued any of these insiders despite the fact that Rabo has provided the Trustee and his professionals with all of the facts necessary to do so, and more troublingly the Trustee has recently indicated that he may never pursue the claims.

9.     In short, before approving the Pending Fee Applications, the Court must convince itself that the fees requested by the Applicants are reasonable, considering the nature, extent and value of the services provided, and taking into account all other relevant factors, including those factors outlined in Section 330(a)(3)(A)-(F).

10.     Another concern Rabo has regarding these Pending Fee Applications is the administrative burn rate that is occurring in this case.  One factor courts consider in deciding whether to allow interim compensation is whether there is a "continuing need for funds to pay the necessary administrative expenses likely to be incurred in completing the administration of the case." *In re Com. Consortium of California*, 135 B.R. 120, 125 (Bankr. C.D. Cal. 1991); *In re Four Star Terminals, Inc.*, 42 B.R. 419, 440 (Bankr. D. Alaska 1984) ("Another factor to be considered in determining the amount of interim compensation to be paid is whether there will be sufficient assets to cover all expenses of administration.").

11.     Here, the Trustee and his professionals have suggested that there is substantial work yet to be done, and that these cases are only in their infancy.  Indeed, the Trustee has sought and obtained a stay of litigation involving numerous of the parties involved in these cases and, in doing so, has (a) taken the position that many of the claims being asserted by the parties

are claims belonging to the bankruptcy estate, and (b) repeatedly reminded the Court that his

deadline to assert avoidance and other claims on behalf of the estate does not run until April of

2025, or two years from the date of the Debtors' Chapter 7 filings.

12.     The Court should be legitimately concerned about whether there will be sufficient

funds in the estate to pay all allowed administrative claims in full when this case concludes.  The

only funds held by the Trustee that are arguably held by the Trustee free and clear are the

remainder of the $3 million in life insurance settlement proceeds that the Trustee obtained from

the settlement with Meagan Goad and Kinsey Moreland.  And even those funds are not

indisputably held free and clear.  The life insurance policies that generated the life insurance

proceeds were paid by the Debtors, and Rabo of course had a blanket lien on all assets of the

Debtors, including the Debtors' cash collateral that funded the premiums.

13.     But even assuming the life insurance settlement proceeds are held free and clear

by the estate, it is a virtual certainty given that the estate has already incurred almost $1.1 million

in administrative fees by the Applicants that the ultimate amount of potential administrative fees

that will be requested by the Applicants could easily meet or exceed the remaining life insurance

settlement proceeds.

14.     Moreover, in addition to its concerns about whether all of the services rendered by

the Applicants were reasonable given the current status of this case and whether there will be

sufficient funds in the estate at the end of the day to pay all allowed administrative claims in full,

Rabo also has concerns about the estate having to pay two separate law firms for potentially

duplicative services.

6

15.     "A debtor's estate should not bear the burden of a duplication of services, and such duplication should be avoided by counsel on their own initiative and, if nevertheless documented by the record, disallowed by the court as 'unnecessary . . .'" *In re Liberal Market, Inc.,* 24 B.R. 653, 664-65 (Bankr. S.D. Ohio 1982).  Indeed, Section 330(a)(4)(A)(i) of the Bankruptcy Code expressly states that "the court shall not allow compensation for unnecessary duplication of services."

16.     On June 30, 2023, the Trustee filed a motion seeking to employ the Quilling Selander firm as special counsel, with Mr. Jobe "as the primary counsel," and indicated that he chose that firm after having spent "considerable time investigating professionals that have prior experience in similar cases and have current capabilities to provide the Trustee with a litigation plan to identify and recover potential claims of the estate."  [Dkt. 69]  The Court granted the Trustee's motion on July 6, 2023.  [Dkt. 75]

17.     Thereafter, Mr. Jobe left the Quilling Selander firm to start his own firm. Because Mr. Jobe was apparently the "main contact" at that firm, the Trustee filed a motion on August 13, 2024 to employ Jobe Law PLLC as special counsel.  [Dkt. 277]  In filing this Motion seeking to employ Mr. Jobe, the Trustee again represented that he had "spent considerable time investigating professionals that have prior experience in similar cases and have current capabilities to provide the Trustee with a litigation plan to identify and recovery potential claims of the estate."  [*Id.*]  The Court granted the Trustee's motion on August 14, 2024.

18.     On August 13, 2024, the same date that he filed his motion to employ Mr. Jobe as special counsel, the Trustee also filed a separate motion to employ the Lynn Pinker firm as

special counsel.  [Dkt. 278]  In filing this motion, the Trustee again represented that that he had "spent considerable time investigating professionals that have prior experience in similar cases and have current capabilities to provide the Trustee with a litigation plan to identify and recovery potential claims of the estate."  [*Id.*]  The Trustee also acknowledged his acute awareness "of the potential for duplicative time spent in the transition from one firm to another," and also noted that Mr. Jobe would be "the primary counsel regarding the Ponzi scheme in this matter," while Lynn Pinker would be "the primary counsel regarding matters other than the Ponzi scheme in this matter."  [*Id.*]  The Court granted the Trustee's motion on August 14, 2024.

19.    As an initial matter, and particularly given the Trustee's concerns about unnecessary duplication in having multiple firms representing the estate which Rabo also shares, it is not at all clear why the Trustee needs two different law firms to serve as special counsel in this case, when originally one law firm—Quilling Selander—was engaged to handle everything. Is either the Jobe firm or the Lynn Pinker firm incapable of providing all of the legal services that the Quilling Selander could provide?  And, even if there was a reason to engage the Jobe firm to handle the Ponzi scheme aspects of the case, why didn't the work that the Lynn Pinker firm is apparently now doing stay with the Quilling Selander firm?

20.    Furthermore, having reviewed the billing invoices attached to the Jobe and Lynn Pinker Applications, it appears there has been duplication of services not only in what Jobe Law and Lynn Pinker has been doing, but also amongst the professionals at Lynn Pinker.  In fact, there are entries where two or three Lynn Pinker professionals seem to be billing for the same things, including corresponding with each other about the case.

21.     Attached as Exhibit "B" are excerpts from the invoices attached to the Jobe and

Lynn Pinker Applications, with the entries that raise at least concerns about duplication being

highlighted for ease of reference.  The Court should at least require those firms to justify these

entries as not being duplicative before approving their applications in full.  *See In re Sarkis Invs.*

*Co., LLC*, 2019 WL 9243005, at \*24 (Bankr. C.D. Cal. Sept. 5, 2019) ("The court finds that the

above billing entries were unnecessarily duplicative and that the estate should not have been

double billed for both professionals' time at these conferences because only one attorney was

needed to appear. Accordingly, the court disallows one of each of the two duplicative billing

entries for frequent conferences, usually for the smaller amount, and the similar entries as set

forth in Table 7, Table 8, and Table 9 in the attached Exhibit A.").

22.     A further potential concern Rabo has regarding the Applications is the possibility

that in the Quilling Selander Application, the Quilling Selander firm may be requesting approval

of its fees and expenses on a final basis.  The Quilling Selander Application expressly uses the

words "second and final application."  To the extent Quilling Selander is requesting interim

allowance of the last and final fee application it will be filing, Rabo has no objection to the Court

allowing all fees and expenses requested in the Quilling Selander Application on an interim

basis.  However, final allowance of any fees and expenses—including those requested in the

Quilling Selander Application—should wait until the end of the case to insure there are enough

funds to pay all allowed administrative claims in full, and any awards should only become

"final" upon approval of a final report at the conclusion of the case.  *See In re NETtel Corp.*,

2020 WL 2047965, \*19 (Bankr. D.D.C. 2020) (bankruptcy court has authority until approval of a

final report "to order disgorgement of payments under interim orders to assure compliance with §
726(b)").

23.    Based upon the foregoing, Rabo respectfully requests the following relief as it
relates to the Pending Fee Applications:[2]

A.    First, that the Court satisfy itself that all fees requested in all Pending Fee
Applications are compensable under Section 330 of the Bankruptcy Code, including by finding
that all requested fees are reasonable under the applicable legal standards and that they were
necessary to the administration of the estate, or beneficial at the time at which the service
was rendered toward the completion of this case.

B.    Second, that the Court satisfy itself that there has been no improper duplication of
services which would result in the estate being charged more than it should have been charged
for legal services, including duplication in services between the services rendered by the Jobe
firm and the services rendered by the Lynn Pinker firm, and also between the various
professionals of Lynn Pinker who have been working on this matter.

C.    Third, with respect to all compensation awarded under the Pending Fee
Applications, the Court should expressly direct that such compensation is interim only, that the
Court's award is subject to revision at any time prior to any awards becoming final, and that any

---

[2] While a relatively minor issue, Rabo notes that the Lynn Pinker Application also requests $630.00 in
compensation for services performed on July 12, 2024.  This is outside the 30-day window established by
Local Rule 2014-1 for retroactive approval of employment, as the motion to approve Lynn Pinker's
employment was not filed until August 13, 2024.

and all interim compensation awarded and paid in this case may be subject to disgorgement if the estate becomes administratively insolvent.

24.     Fourth, the Court should make clear in any order approving the Pending Fee Applications that any funds paid to the Applicants will come solely from the remaining amount of life insurance proceeds the Trustee recovered from the various McClain family members, and not from any other sources.

DATED this 6th day of December, 2024.

UNDERWOOD LAW FIRM, P.C.
Thomas C. Riney, SBN: 16935100
W. Heath Hendricks, SBN: 240556451
500 South Taylor, Suite 1200, LB 233
Amarillo, Texas 79101
Telephone: (806) 376-5613
Facsimile: (806) 379-0316
Email: tom.riney@uwlaw.com
Email: heath.hendricks@uwlaw.com

--and--

RAY QUINNEY & NEBEKER P.C.
Michael R. Johnson *(Pro Hac Vice)*
36 South State, Suite 1400
Salt Lake City, UT 84111
Telephone:  (801) 532-1500
Facsimile:  (801) 532-7543
Email:  mjohnson@rqn.com


*/s/ Michael R. Johnson*
Michael R. Johnson
*Attorneys for Rabo AgriFinance LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 6, 2024, the foregoing document was filed with the Clerk of the Court in each of the foregoing Chapter 7 cases using the CM/ECF system, which sent notice of electronic filing to all electronic filing users in each case.


*/s/ Michael R. Johnson*
Michael R. Johnson

EXHIBIT A

RAY QUINNEY & NEBEKER

September 27, 2024

ATTORNEYS AT LAW

Clark P. Giles

Herbert C. Livsey

D. Jay Curtis

James S. Jardine

Larry G. Moore

Bruce L. Olson

John A. Adams

Douglas M. Monson

Craig Carlile

Jeffrey W. Appel

David J. Castleton

Ellen J. D. Toscano

Kevin G. Glade

Lester K. Essig

Stephen C. Tingey

John R. Madsen

Scott A. Hagen

Rick L. Rose

Brent D. Wride

Steven W. Call

Sally B. McMinimee

Steven G. Jones

Mark A. Cotter

Greggory J. Savage

Kelly J. Applegate

Justin T. Toth

Liesel B. Stevens

Robert O. Rice

Arthur B. Berger

Rick Thaler

John W. Mackay

McKay M. Pearson

Mark W. Pugsley

Matthew N. Evans

Gary L. Longmore

John P. Wunderli

Michael H. Johnson

E. Blaine Rawson

Samuel C. Straight

Paul C. Burke

Elaina M. Maragakis

D. Zachary Wiseman

Michael D. Mayfield

Bryan K. Bassett

Kamie F. Brown

Gregg D. Stephenson

Kristine M. Larsen

Gregory S. Roberts

Christopher N. Nelson

SALT LAKE CITY OFFICE

PO Box 45385

Salt Lake City, Utah

84145-0385

36 South State Street

Suite 1400

Salt Lake City, Utah

84111

801 532-1500 TEL

801 532-7543 FAX

www.rqn.com

**VIA EMAIL AND REGULAR MAIL**

Kent Ries, Trustee
c/o Hudson Jobe, Esq.
**JOBE LAW PLLC**
6060 North Central Expressway, Suite 500
Dallas, Tx. 75206
Email:  hjobe@jobelawpllc.com

and c/o Alan Dabdoub, Esq.
**LYNNPINKERHURSTSCHWEGMAN**
2100 Ross Avenue, Suite 2700
Dallas, TX 75201
Email:  adabdoub@lynnllp.com

Re:    *In re McClain Feed Yard, Inc., In re McClain Farms, Inc. and In re 7M Cattle Feeders, Inc., Case No. 23-20084-rlj (Jointly Administered); Demand for Pursuit of Claims Against Crystal McClain, Chelsea McClain, Piper McClain and Kristin McClain*

Dear Kent:

As you know, the McClain bankruptcy cases have been pending since April 28, 2023; nearly a year and a half.  As you also know, Rabo has been active in the McClain bankruptcy cases from the very beginning and has expended a substantial amount of money and effort conducting Rule 2004 discovery (both document discovery and Rule 2004 examinations) that has provided critical information for you as the Trustee of the McClain bankruptcy estates.

Among the discovery that Rabo has obtained and shared with you are (a) the records Rabo obtained from various insurance companies who insured Brian McClain's life, (b) the records regarding Brian's divorce from his former wife Crystal McClain and the financial obligations Brian was required to assume arising from that divorce case, and (c) the transcripts of the Rule 2004 examinations that Rabo conducted in July in Kentucky of Crystal McClain,

A  PROFESSIONAL  CORPORATION

Chelsea McClain, Meagan Goad, Jed Goad, and Kinsey McClain.[1]  In fact, as a direct result of the information that Rabo uncovered and provided to you at its cost, you learned early on in the case that Meagan and Kinsey had each received $3,388,688.00 in life insurance proceeds after Brian passed away, for a total of $6,777,336.00 in life insurance proceeds.  And you also learned that the McClain entities, not Brian McClain personally, had funded all of the premiums for the life insurance policies that paid out those insurance settlements.  As a result thereof, you entered into and obtained court approval of a settlement with Meagan and Kinsey whereby each of them paid to you, for the benefit of the estate, $1,500,000.00, for a total settlement of $3,000,000.00.  As part of the motion you filed seeking approval of the settlement, you stated that, in addition to recovering a substantial portion of the overall policy proceeds from Meagan and Kinsey, Meagan and Kinsey had agreed to "aid the Trustee in his administration of the estate, including pursuit of claims against third-parties." [Dkt. 147, pg. 6] You also articulated all of the things that Meagan and Kinsey had agreed to do as part of the "cooperation obligation," and noted that "the cooperation obligation will aid in a more efficient investigation and higher recovery of claims against third-parties, which will benefit the estate." [*Id.*, pg. 8; Dkt. 162]  In short, there were two critical components to the settlement you reached with Meagan and Kinsey regarding the life insurance proceeds they received, both of which you believed were substantially beneficial to the estate.  The first was the $3,000,000.00 in total payments the estate would receive from the settlement.  The second was the "cooperation obligation" that Meagan and Kinsey agreed to as additional consideration for the settlement.

As you know both from the documents that Rabo has turned over to you as a result of its Rule 2004 discovery and as a result of the examinations that Rabo took in July, the bankruptcy estate also has the following compelling avoidance claims against the following McClain insiders:

- <u>Chelsea McClain</u>:  Chelsea McClain, Brian's widow, received $980,000.00 in life insurance proceeds when Brian died, which proceeds were paid from a life insurance policy at Prudential that the McClain Debtors entirely funded (Meagan and Kinsey also received proceeds from the Prudential policy).

---

[1] Rabo also of course paid to secure possession of <u>all</u> records of the McClain Debtors when Brian McClain committed suicide and cattle and other property was being removed, so that those records would not be lost, concealed or destroyed.  It then provided, at its cost, images of all those records and, when you asked for their return, Rabo paid to send them back to you.  Many of these records likely would not be unavailable had it not been for Rabo's efforts.

2

Case 23-20084-rlj7 Doc 314 Filed 12/06/24 Entered 12/06/24 11:47:57 Desc Main
Document Page 16 of 32

- <u>Kristin McClain</u>: Kristin McClain is one of Brian's daughters with his ex-wife Crystal. Kristin also received $3,388,688.00 in insurance proceeds (the same amount as Meagan and Kinsey) under the same seven insurance policies identified in your settlement agreement with Meagan and Kinsey.

- <u>Piper McClain</u>: Piper McClain is one of Brian's daughters with his ex-wife Crystal. Piper also received $3,388,688.00 in insurance proceeds (the same amount as Meagan and Kinsey) under the same seven insurance policies identified in your settlement agreement with Meagan and Kinsey.

- <u>Crystal McClain</u>: Crystal McClain is Bryan's ex-wife. Pursuant to the Marital Settlement Agreement, dated September 11, 2020, entered in their divorce case, Brian was ordered to make periodic cash payments to Crystal totaling $1,700,000.00 as a "buy out" of Crystal's interest in the McClain Debtors and other marital assets. He also was ordered to obtain a life insurance policy naming Crystal as beneficiary to guarantee the $1.7 million in payments in the event Brian should pass away. In 2021 and 2022, Brian caused McClain Farms to issue several checks to Crystal on both the McClain Farms CFSB account and the McClain Farms Mechanics Bank account totaling $1,150,000.00. Crystal admitted receiving these payments, drawn on the McClain Farms bank accounts, during her Rule 2004 examination. Crystal also admitted during her Rule 2004 examination that she also received $550,000.00 in life insurance proceeds, which proceeds were paid from the Cincinnati Life Policy that Brian obtained after the divorce (Meagan, Kinsey, Piper and Kristin also received proceeds under this policy).

As the foregoing illustrates, the bankruptcy estate clearly has compelling Chapter 5 avoidance claims against Chelsea, Kristin, Piper and Crystal having a total face value of no less than $9,457,376.00 ($980,000.00 + $3,388,688.00 + $3,388,688.00 + $1,700,000.00). For some reason, however, you have yet to pursue these very meritorious claims, despite acknowledging their validity in numerous prior discussions. The legal theories regarding the life insurance payments made to these McClain insiders would be the very same legal theories you used to obtain a $3,000,000.00 settlement with Meagan and Kinsey. You obtained a 44.265% recovery on the life insurance proceeds paid to Meagan and Kinsey and, given that you would not need a "cooperation obligation" from Chelsea, Kristin, Piper or Crystal, the settlement value of the life insurance claims against these McClain insiders would obviously exceed that percentage.

3

With respect to claims against Crystal related to the $1,150,000.00 in cash she received from McClain Farms, those payments are clearly avoidable under (among other legal theories) Section 548(a)(1)(B) of the Bankruptcy Code. McClain Farms received no value from Crystal in return for these transfers, let alone reasonably equivalent value as required by the Code. McClain Farms, a fraudulent enterprise that was engaged in both a Ponzi scheme and a check-kiting scheme, was clearly insolvent when the payments were made.

While Rabo acknowledges that a Chapter 7 trustee such as yourself has an outside date of two years from the Petition Date to assert avoidance claims under Section 546(a) of the Bankruptcy Code, the fact that you have not already asserted these very meritorious claims against Chelsea, Kristin, Piper and Crystal is extremely troubling. Unlike potential avoidance or other claims the estate may assert in this case against large corporate defendants such as Mechanics Bank and CFSB, which claims would be fully collectable regardless of when they are asserted, the fact that you have delayed asserting these claims against these individuals could substantially prejudice and harm the bankruptcy estate and the creditors you are supposed to be looking out for. It has been over a year since the life insurance payments were made, and it has been several years since Crystal received the direct payments from McClain Farms. Who knows what these insiders have done with the funds since they received them. They may have been dissipated. They may have been used to acquire assets that would now be exempt. Or they may have been transferred to third parties. In any event, it is clear that, because of the inexplicable delay in asserting these claims, it will now be more difficult to actually turn these claims into cash recoveries that could be used to compensate the victims of the McClain Debtors' fraud, including Rabo.

Further, these are not the only compelling claims the estate has against the McClain insiders. As you know, your settlement with Meagan and Kinsey and their husbands expressly limited the releases they received to releases of claims related to the insurance proceeds they received, and any claims against Meagan or Kinsey for receipt of annual salaries of $60,000.00 or less. All other claims were preserved.

We provided to you many months ago several excel spreadsheets listing the non-wage monetary transfers that the McClain Debtors made to various insiders, including Meagan, her husband Jed Goad, Jed's company JLE Trucking, and Kinsey. Those excel spreadsheets show as follows:

- Between January 2, 2018 and April 7, 2023, Kinsey received $31,898.94 in non-payroll transfers from the McClain Farms Mechanics Bank account, and $80,949.86 from the McClain Farms CFSB account, for total non-payroll transfers of $112,848.80;

4

- Between February 5, 2018 and April 19, 2023, Meagan received $200,000.12 from the McClain Farms Mechanics Bank account, $1,129,338.28 from the 7M Cattle Feeders Mechanics Bank account, $2,411,525.30 from the McClain Feedyard Mechanics Bank account, and $162,400.87 from the McClain Farms CFSB account, for total non-payroll transfers of $3,903,264.57;

- Between March 1, 2019 and March 31, 2023, Jed Goad received $88,368,76 from the McClain Farms Mechanics Bank account, $14,613.51 from the 7M Cattle Feeders Mechanics Bank account, and $156,057.02 from the McClain Farms CFSB account, for a total of $262,614.31; and

- Between February 21, 2018 and March 31, 2023, JLE Trucking received transfers $5,026,942,55 from the McClain Farms Mechanics Bank account and $3,270,659.10 from the McClain Farms CFSB account, for a total of $8,947,762.21.

During their Rule 2004 examinations, Meagan and Kinsey did not provide any reasonable justification or explanation for the non-payroll transfers they received. In fact, at least as it relates to Meagan, it became crystal clear during the examination that she was an active participant in the fraudulent McClain enterprise and that money was being transferred by the McClain Debtors to her, and from her back to the McClain Debtors, in order to prop up and perpetuate the fraud and the check-kiting scheme. As an example of that, Meagan signed on behalf of McClain Feedyard a wire transfer form on January 23, 2023 (just a few months before the bankruptcy filing) and thereby initiated a $448,981.43 wire from the McClain Feedyard account at Mechanics Bank to her personal account at First Kentucky Bank. During her examination, Meagan testified that she had no paperwork to support the transaction, and that "Brian had all the paperwork." She also testified that "I would write him a check. He would wire me the money back."

Because Meagan was an active participant in the McClain Debtors' fraudulent activities, the entirety of all transfers she received are recoverable, and she is not entitled to any "credit" for the money she sent back to the McClain Debtors as a person who acted in good faith. But even if she were entitled to credits, she received $3,903,264.57 from the McClain Debtors and she only returned $2951,666.09 back to the McClain Debtors, and was a "net winner" in the amount of $951,598.48.

As it relates to Jed Goad and his company JLE Trucking, some of the funds paid to him may have been for legitimate reasons, such as the transportation and hauling of cattle. However, Mr. Goad has only supplied two years of trucking records going back to 2021 and has provided nothing to support the payments that he and/or JLE received between 2018 and 2020. Further, Mr. Goad did not have a credible explanation for some of the large cash transfers that he personally received from the McClain Debtors.

Rabo is the largest creditor of the McClain Debtors' bankruptcy estates. Rabo has repeatedly asked you to pursue additional claims against the McClain insiders, including the claims highlighted in this letter. Rabo has also repeatedly stressed the need to timely pursue these claims so that the funds these McClain insiders received are not dissipated, lost, or converted into exempt assets. Thus far, Rabo's requests have fallen on deaf ears. Notably, your new counsel seems openly hostile to Rabo for inexplicable reasons and unwilling to work with us in good faith to resolve issues. He has also continued to exhibit disinterest in pursuing the obvious claims detailed in this letter. This unwarranted escalation and failure to pursue claims has brought my client's patience to an end.

As you likely are aware, both Judge Jernigan, in *In re Cooper*, 405 B.R. 801 (Bankr. N.D. Tex. 2009), and Judge Jones, in *In re Wilson*, 527 B.R. 253 (Bankr. N.D. Tex. 2015), held that, in Chapter 7 cases, a creditor or other third party generally may not be granted derivative standing to pursue avoidance actions on behalf of the bankruptcy estate. In both decisions, however, Judges Jernigan and Jones noted that, if a Trustee fails to exercise his or her fiduciary duty to pursue valuable and meritorious avoidance actions, then a creditor or other party in interest may file a motion asking the Bankruptcy Court to compel the trustee to act, or alternatively to ask the Bankruptcy Court to remove the trustee and appoint a new trustee to pursue the claims.

Rabo demands that you either file claims against the McClain insiders or settle and resolve the claims and file a Rule 9019 motion to approve by October 31, 2024. If you fail to do so, Rabo will have no choice but to bring this matter to the attention of Judge Jones.

6

Thank you.  Please let me know if you would like to discuss this matter further.

Sincerely,

RAY QUINNEY & NEBEKER P.C.

Michael R. Johnson

MRJ/mj

cc:    RAF Team (via email only; w/out encls.)
       Heath Hendricks, Esq.
       Matthew Cannon, Esq.

# EXHIBIT B

# INVOICE

**Jobe Law PLLC**
6060 N Central Expy
Ste 500
Dallas, TX 75206-5249

hjobe@jobelawpllc.com
+1 (214) 807-0563
www.jobelawpllc.com

**Bill to**
McClain Feedyard - Investigation of Claims

## Invoice details

Invoice no.: 1018
Invoice date: 11/15/2024
Due date: 12/15/2024

| Date | Description | Qty | Rate | Amount |
|------|-------------|-----|------|--------|
| 07/10/2024 | Review/revise LP engagement terms, follow up on same(.6). (HJ) | 0.6 | $400.00 | $240.00 |
| 07/15/2024 | Review documents and case issues in preparation for depositions of KY family members(1.6); Attend initial deposition(1.0); Review related documents to transfers and operations(.8); Attend second deposition of KY family members(1.0). (HJ) | 4.4 | $400.00 | $1,760.00 |
| 07/16/2024 | Review documents in preparation for Goad deposition and attend deposition(4.5); Review rabo discovery documents, respond to Rabo re same and objections thereto(1.2); Review and organize prior Rabo production(.9). (HJ) | 6.1 | $400.00 | $2,440.00 |
| 07/18/2024 | Call with LF re documents and financial analysis (1.0); Research and analysis of ▮▮▮▮▮▮▮▮(.8); Work on outline of outstanding documents(.7); Review updated DB records from LF(1.5). (HJ) | 4 | $400.00 | $1,600.00 |
| 07/19/2024 | Review and organize relevant file documents for transmission to LP for follow up on discovery matters and potential ▮▮▮▮▮▮ suits(2.2). (HJ) | 2.2 | $400.00 | $880.00 |
| 07/21/2024 | Review various issues and arguments concerning Rabo ▮▮▮▮▮▮ outline same for LP follow up(1.4). (HJ) | 1.4 | $400.00 | $560.00 |
| 07/23/2024 | Conference with litigation counsel on case background(.9); Lengthy review and outline of case background and documents for special counsel use of evaluating certain claims and parties(3.0). | 3.9 | $400.00 | $1,560.00 |

| 07/23/2024 | ...while reviewing documents related to the LLCs, backup documentation, outstanding documents needed and cash tracing(1.7); Follow up with LF regarding same(.3); Further review and analysis of Rabo production, sorting of documents, and various outstanding documents and issues(2.0). (HJ) | | $400.00 | $1,600.00 |
|---|---|---|---|---|
| 07/26/2024 | Review/revise Rabo Motion to Compel(.7). (HJ) | 0.7 | $400.00 | $280.00 |
| 07/30/2024 | Review Rabo discovery motion, prepare NOH and coordinate setting with parties(.7). (HJ) | 0.7 | $400.00 | $280.00 |
| 07/31/2024 | Additional review and analysis of Riley documents, outline search and tag terms, follow up with discovery review team on same(3.5). (HJ) | 3.5 | $400.00 | $1,400.00 |
| 08/01/2024 | Outline issues and instructions for Riley review/sort by invoice type, coordinate same with document review team(1.8). (HJ) | 1.8 | $400.00 | $720.00 |
| 08/02/2024 | Lengthy review and analysis of bank and accounting firm productions, outstanding bank and accounting firm discovery, and related case documents(3.0); Follow up with accountants and counsel on same(.2) (HJ) | 3.2 | $400.00 | $1,280.00 |
| 08/05/2024 | Coordinate amended setting on Rabo discovery motion, prepare amended NOH(.5); Continue working with parties on Rabo review and discover dispute issues(2.0). (HJ) | 2.5 | $400.00 | $1,000.00 |
| 08/07/2024 | Several correspondence and conferences with parties on Rabo and Carr Riggs discovery materials(1.5). (HJ) | 1.5 | $400.00 | $600.00 |
| 08/08/2024 | Review outline of Rabo production, review Rabo materials, and outline additional items to add for Rabo discovery(1.5); Continue review and analysis of Riley production and information relevant to purchases and sales(2.0); Update discovery index on same(.9); Several correspondence and conferences with parties on outstanding discovery issues(1.0). (HJ) | 5.4 | $400.00 | $2,160.00 |
| 08/09/2024 | Review documents in preparation for conference with discovery review team on outstanding discovery review(.5); Conference with parties on same(.7). (HJ) | 1.2 | $400.00 | $480.00 |
| 08/14/2024 | Review lengthy draft LP memo on possible claims and related issues(.5); Review prior briefing and prepare updated analysis of various issues in connection with ████████ claims(2.0); Conference and correspondence ████████ ████████ issues(.5); Conference with Trustee on various case issues (.5). (HJ) | 3.5 | $400.00 | $1,400.00 |
| 08/15/2024 | Review ████████ emails with counsel on same(.5). (HJ) | 0.5 | $400.00 | $200.00 |
| 08/16/2024 | Initial review of probate pleadings and analysis of potential claims/issues(1.5); Initial review of indexed | 2.5 | $400.00 | $1,000.00 |



# LYNN PINKER HURST & SCHWEGMANN, L.L.P.

2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Phone: 214.981.3800
www.lynnllp.com

Invoice # 20243162
Date: 08/20/2024
Due On: 09/19/2024

Kent Ries
Law Office of Kent Ries
P.O. Box 3100
Austin, TX 79116

## (5707-00001) Ries: In Re McClain Farms, Inc.; In Re McClain Feed Yard, Inc.; and In Re 7M Cattle Feeders, Inc.

## In Re McClain Farms, Inc.; In Re McClain Feed Yard, Inc.; and In Re 7M Cattle Feeders, Inc.

Client Reference Number:

### Services

| Date | TK | Description | Hours | Total |
|------|----|-------------|-------|-------|
| 07/12/2024 | AD | Teams meeting with Messrs. Ries, Jobe and Rae regarding ▮▮▮ ▮▮▮▮▮ | 1.40 | $630.00 |
| 07/15/2024 | AD | Telephone conference with Mr. McClain regarding case background. | 0.30 | $135.00 |
| 07/15/2024 | AD | Email to Messrs. Jobe and Faulkner regarding ▮▮▮▮▮ | 0.10 | $45.00 |
| 07/16/2024 | WG | File and document management (1.0); prepare index and electronic notebook for team discussion (1.3). | 2.30 | $460.00 |
| 07/16/2024 | AD | Telephone conference with Mr. Jobe regarding ▮▮▮▮ | 0.20 | $90.00 |
| 07/16/2024 | AD | Review email from Mr. Jobe regarding Rabo discovery. | 0.20 | $90.00 |
| 07/17/2024 | WG | Prepare notebook for Mr. Dabdoub containing key documents for team discussion regarding strategy (1.0); | 3.00 | $600.00 |

| | | | | |
|---|---|---|---|---|
| | | prepare notebook for Mr. Sode containing key documents for team discussion regarding strategy (1.0); prepare notebook for case file containing key documents for team discussion regarding strategy (1.0). | | |
| 07/18/2024 | PCS | Case team strategy meeting regarding motion to compel for service on Rabobank (0.7).<br><br>Case synopsis discussion with Ms. Gillaspie regarding key issues, potential defendants, and documents (0.5). | 1.20 | $420.00 |
| 07/18/2024 | AD | Telephone conference with Messrs. Rae and Jobe regarding cash tracing. | 1.10 | $495.00 |
| 07/18/2024 | AD | Analysis of ▇▇▇ documents. | 0.50 | $225.00 |
| 07/18/2024 | AD | Analysis of ▇▇▇▇▇ privilege issue. | 0.50 | $225.00 |
| 07/18/2024 | WG | Extract files received from Lain Faulkner and maintain in case file (0.6); meet and confer with Mr. Sode regarding case (0.3); review and maintain attorney notes regarding case development received from Mr. Dabdoub (0.2). | 1.10 | $220.00 |
| 07/19/2024 | WG | Review email from Hudson Jobe (0.2); prepare for meeting with Mr. Dabdoub to discuss document review and production (0.5); meeting regarding the above (0.3). | 1.00 | $200.00 |
| 07/19/2024 | AD | Analysis of background documents. | 1.00 | $450.00 |
| 07/19/2024 | AD | Telephone conference with Mr. Jobe regarding status. | 0.20 | $90.00 |
| 07/22/2024 | PCS | Analyze documents and other materials transmitted from bankruptcy counsel to establish key facts and issues in matter in connection with motion to compel discovery from Rabo and Focus (4.1).<br><br>Begin drafting and revising motion to compel discovery from Rabo and Focus, specifically factual background and beginning of legal argument (2.7). | 6.80 | $2,380.00 |
| 07/22/2024 | WG | Review email from Hudson Jobe regarding index and labeling documents, access and download all files in the various links, structure the documents (1.2); schedule call with Mr. Jobe to discuss index and documents (0.1); extensive analysis of recently received case files to determine document management and organization for the purpose of indexing and document preparation for upcoming productions, draft spreadsheet providing outline of folders, sub-folders and the contents for case development (5.9); prepare outline of questions for conference call with Mr. Jobe scheduled for tomorrow (0.5). | 7.70 | $1,540.00 |
| 07/22/2024 | AD | Analysis of ▇▇▇▇▇▇ issues. | 0.50 | $225.00 |
| 07/22/2024 | AD | Teams meeting with Messrs. Ries, Jobe and Rae regarding case status and next steps. | 1.00 | $450.00 |

| | | | | |
|---|---|---|---|---|
| 07/22/2024 | AD | Exchange emails with Mr. Jobe regarding ████████ | 0.20 | $90.00 |
| 07/23/2024 | PCS | Continue drafting and revising motion to compel, specifically legal arguments about privilege, undue burden, overbreadth, confidentiality, relevance, Bankruptcy Rule 2004, and generally applicable court rules (3.9).<br><br>Analyze legal authorities pertinent to foregoing objections for purpose of synthesizing briefing points (3.2).<br><br>Email correspondence with case team regarding motion to compel (0.2). | 7.30 | $2,555.00 |
| 07/23/2024 | WG | Prepare for meeting and revise outline of questions regarding indexing and document review, additional revisions to spreadsheet (1.1);<br>conference call with Mr. Hudson and Mr. Dabdoub (1.0). | 2.10 | $420.00 |
| 07/23/2024 | AD | Attention to Rabo documents. | 1.00 | $450.00 |
| 07/23/2024 | AD | Conference with Mr. Jobe and Ms. Gillaspie regarding indexing and document management. | 1.00 | $450.00 |
| 07/23/2024 | AD | Review email from Mr. Jobe regarding protective order. | 0.10 | $45.00 |
| 07/24/2024 | WG | Perform further analysis of files outlined on the spreadsheet per discussion with team, identify duplicates, revise to exclude electronic documents and determine file size of documents to be reviewed for database (2.0);<br>call with Lino Gonzalez at Pinnacle to confirm pricing for the calculated file size (0.2);<br>email to Hudson Jobe providing details of the document review database and the updated spreadsheet (0.1). | 2.30 | $460.00 |
| 07/24/2024 | PCS | Finalize first draft of motion to compel and supporting appendix and circulate case team for pre-circulation review (1.1). | 1.10 | $385.00 |
| 07/24/2024 | AD | Edit Motion to Compel Production of Documents from Rabo. | 3.50 | $1,575.00 |
| 07/26/2024 | WG | Review of Appendix in comparison with the brief to ensure ready for filing (0.2);<br>review rules to determine response deadline and analyze for future filings (0.4). | 0.60 | $120.00 |
| 07/26/2024 | AD | Telephone conference with Mr. Jobe regarding motion to compel Rabo to produce documents. | 0.20 | $90.00 |
| 07/26/2024 | AD | Final review for filing of motion to compel Rabo to produce documents. | 0.50 | $225.00 |
| 07/29/2024 | WG | Follow-up email to Hudson Jobe regarding the document review platform. | 0.10 | $20.00 |
| 07/30/2024 | WG | Access court portal and add Mr. Sode and myself on the service list (0.2);<br>call with Bankruptcy Division to ensure the above (0.2);<br>begin downloading, reviewing and maintaining files received from Hudson Jobe in the case file (1.0); | 1.60 | $320.00 |

| | | review setting of hearing on Trustee's Motion to Compel and pull Judge Jones' Hearing Dates and Calendar for inclusion on the entry, revise calendar accordingly (0.2). | | |
|---|---|---|---|---|
| 07/30/2024 | AD | Telephone conference with Mr. Jobe regarding hearing on motion to compel Rabo. | 0.10 | $45.00 |
| 07/30/2024 | AD | Review Notice of Hearing on motion to compel Rabo. | 0.10 | $45.00 |
| 07/31/2024 | WG | Attention to email regarding re-noticing of hearing on Trustee's Motion to Compel, note accordingly on calendar (0.1); continue extensive analysis of files received from Mr. Jobe, identify corrupt files and re-download, determine file size of documents associated with Riley Livestock (2.0); call with Mr. Jobe (0.2). | 2.50 | $500.00 |
| 07/31/2024 | AD | Telephone conference with Mr. Jobe regarding status. | 0.10 | $45.00 |
| | | **Services Subtotal** | | **$16,810.00** |

## Expenses

| Date | Description | Quantity | Price | Total |
|---|---|---|---|---|
| 07/31/0024 | Postage | 1.00 | $11.70 | $11.70 |
| 07/31/0024 | Westlaw research for Julu 2024. | 1.00 | $1.22 | $1.22 |
| | | | **Expenses Subtotal** | **$12.92** |

| Time Keeper | Position | Hours | Rate | Total |
|---|---|---|---|---|
| Alan Dabdoub | Partner | 13.8 | $450.00 | $6,210.00 |
| Campbell Sode | Associate | 16.4 | $350.00 | $5,740.00 |
| Whitney Gillaspie | Paralegal | 24.3 | $200.00 | $4,860.00 |
| | | | **Subtotal** | **$16,822.92** |
| | | | **Total** | **$16,822.92** |

# Detailed Statement of Account

## Other Invoices

| Invoice Number | Due On | Amount Due | Payments Received | Balance Due |
|---|---|---|---|---|
| 20243592 | 10/19/2024 | $69,984.40 | $0.00 | $69,984.40 |

| 20244063 | 11/14/2024 | $56,564.76 | $0.00 | $56,564.76 |

### Current Invoice

| Invoice Number | Due On | Amount Due | Payments Received | Balance Due |
|---|---|---|---|---|
| 20243162 | 09/19/2024 | $16,822.92 | $0.00 | $16,822.92 |
| | | | Outstanding Balance | $143,372.08 |
| | | | Total Amount Outstanding | $143,372.08 |

Please make all amounts payable to: LYNN PINKER HURST & SCHWEGMANN, L.L.P.
Tax ID 75-2507536

Please pay within 30 days.



# LYNN PINKER HURST & SCHWEGMANN, L.L.P.

2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Phone: 214.981.3800
www.lynnllp.com

Invoice # 20243592
Date: 09/19/2024
Due On: 10/19/2024

Kent Ries
Law Office of Kent Ries
P.O. Box 3100
Austin, TX 79116

## (5707-00001) Ries: In Re McClain Farms, Inc.; In Re McClain Feed Yard, Inc.; and In Re 7M Cattle Feeders, Inc.

## In Re McClain Farms, Inc.; In Re McClain Feed Yard, Inc.; and In Re 7M Cattle Feeders, Inc.

**Client Reference Number:**

### Services

| Date | TK | Description | Hours | Total |
|------|-----|-------------|-------|-------|
| 08/01/2024 | KER | Meet with Mses. Gillaspie, Lawrence, and Lopez to discuss search terms and case background for review of produced documents. | 0.50 | $150.00 |
| 08/01/2024 | WG | Prepare link containing zip files confirmed for review on DISCO (1.0);<br>confer with Lino Gonzales at Pinnacle confirming pricing of the above (0.2);<br>confer with Mr. Jobe regarding DISCO pricing (0.2);<br>call with Mr. Jobe regarding ███████████████ (0.5);<br>analyze documents pertaining to ████████████████████ (0.4);<br>meeting with Mr. Sode to discuss protocol and next steps in terms of document review (0.5);<br>meeting with review team to establish game plan for document review (0.9); | 3.90 | $780.00 |

| | | | | |
|---|---|---|---|---|
| | | review the Motion for Relief from Stay filed by Citizens Bank, add hearing details to the calendar, maintain filings in the case file (0.2). | | |
| 08/01/2024 | ADL | Meet with Mses. Gillaspie, Rastegar and Lopez regarding upcoming document review. | 0.50 | $150.00 |
| 08/01/2024 | PCS | Case team meeting with Ms. Gillaspie to strategize document review process for implementation by eDiscovery team. | 0.40 | $140.00 |
| 08/01/2024 | MAL | Attend team meeting to discuss document review. | 0.50 | $150.00 |
| 08/02/2024 | WG | Discuss database with Lino Gonzales at Pinnacle (0.3); quality check of link containing zip files confirmed for review on DISCO (0.5); email to Mr. Gonzales the above for ingest (0.1). | 0.90 | $180.00 |
| 08/02/2024 | PCS | Begin analyzing legal authorities relevant to ▮▮▮▮▮ claims to synthesize potential claims ▮▮▮▮▮▮ | 1.90 | $665.00 |
| 08/04/2024 | WG | Review motion and ensure deadlines calendared (0.4); perform quality check of link received from HJ containing various related bankruptcy cases and adversary proceedings, maintain in case file (0.8); analysis of documents and prepare outline, identify corrupted and missing files, perform transfer to case file ahead of revising Document Index (3.2). | 4.40 | $880.00 |
| 08/04/2024 | AD | Attention to status and next steps. | 0.20 | $90.00 |
| 08/05/2024 | WG | Review Trustee's Amended Notice of Hearing and revise the calendar accordingly, make note of dual hearings on both calendar entries (0.2); review and maintain attorney call notes regarding plan for assessing claims ▮▮▮▮▮▮ (0.1); complete extensive analysis of documents, identify corrupted and missing files, download files received from client and transfer to case file ahead of revising Document Index (3.0). | 3.30 | $660.00 |
| 08/05/2024 | PCS | Analyze legal authorities relevant to p▮▮▮▮▮ ▮▮▮▮▮▮ (5.1).<br><br>Begin drafting and writing case overview and potential claims memo for circulation to document review team (3.7) | 8.80 | $3,080.00 |
| 08/05/2024 | AD | Teams meeting with Messrs. Jobe and Rae regarding document review and analysis plan. | 0.50 | $225.00 |
| 08/05/2024 | AD | Exchange emails with Mr. Jobe regarding hearing date on motion to compel Rabo. | 0.20 | $90.00 |
| 08/06/2024 | PCS | Analyze legal authorities relevant to p▮▮▮▮▮ ▮▮▮▮▮▮ defendants (3.7).<br><br>Draft and revise comprehensive case overview and document | 8.40 | $2,940.00 |

| | | review memorandum to incorporate above claims (4.7). | | |
|---|---|---|---|---|
| 08/06/2024 | WG | Perform comparison of documents reviewed with Mr. Ries's list and confirm documents on database, search for loan ledgers (0.9); analyze additional documents received from the client for chart revisions (1.2); draft chart listing all parties and counsel of record (2.2). | 4.30 | $860.00 |
| 08/06/2024 | ADL | Review and respond to correspondence from Ms. Gillaspie regarding document review; confer with Mses. Gillaspie and Lopez regarding document review. | 0.30 | $90.00 |
| 08/06/2024 | AD | Review emails from Mr. Cass regarding documents. | 0.20 | $90.00 |
| 08/07/2024 | PCS | Draft and revise comprehensive case overview, potential claims, and document review memorandum by adding additional arguments and legal authorities throughout (1.9). Analyze legal authorities governing ▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (2.4). | 4.30 | $1,505.00 |
| 08/07/2024 | WG | Review documents marked relevant ▇▇▇▇▇▇▇▇▇▇▇ (2.8); email to Rick Cass and team with the above (0.2). | 3.00 | $600.00 |
| 08/07/2024 | ADL | Correspondence with Ms. Gillaspie regarding client research request; research database for requested loan documents. | 1.80 | $540.00 |
| 08/07/2024 | AD | Analysis of case memorandum. | 0.50 | $225.00 |
| 08/07/2024 | AD | Exchange emails with Mr. Jobe regarding status. | 0.20 | $90.00 |
| 08/08/2024 | WG | Call with Hudson Jobe confirming our team's review of Rabo's production and provide highlight excerpt of index (0.2); prepare Rabo's full production for ingest on to DISCO and confirm with review team (0.3); revise the Case Document Index to highlight documents currently under review (0.4); review and respond to the email from Rick Cass regarding Rabo documents, fo▇▇▇▇▇▇▇▇▇▇▇ Rick Cass for reference (0.2); organize and identify by bates ranges documents relevant to specified loan ledgers (0.9); prepare detailed email to Rick Cass providing the above (0.3); continue analyzing documents and revising the Master Index (4.4). | 6.70 | $1,340.00 |
| 08/08/2024 | ADL | Correspondence with Ms. Gillaspie regarding client research request; research loan documents in document database. | 0.80 | $240.00 |
| 08/09/2024 | PCS | Prepare for and participate in strategy and analysis conference call with Messrs. Dabdoub and Jobe (0.9). Analyze legal authorities relevant to application ▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (2.2). | 3.10 | $1,085.00 |

| 08/09/2024 | AD | Teams call with Messrs. Jobe and Sode regarding potential claims. | 0.50 | $225.00 |
|---|---|---|---|---|
| 08/11/2024 | WG | Continue revising Master Index of case documents. | 1.00 | $200.00 |
| 08/12/2024 | WG | Call with Rick Cass regarding case documents and document review (0.5); draft detailed chart outlining documents on DISCO and on the Master Index (1.5); determine file size of all CFSB and Mechanics Bank statements via file conversion (0.8); review and respond to email from Hudson Jobe regarding review of bank statements (0.2); perform comparison of documents on OneDrive with what has been downloaded to ensure all files successfully transferred, identify errors and prepare bank statements from CFSB and Mechanics Bank for ingest to DISCO (1.9); continue revising the Master Index (0.5). | 5.40 | $1,080.00 |
| 08/12/2024 | AD | Edit claims memorandum. | 0.50 | $225.00 |
| 08/13/2024 | WG | Perform quality check of bank statements from CFSB and Mechanics Bank, email to Pinnacle for ingest (0.5); email to Rick Cass regarding the ingest and forwarding DISCO search manual (0.2); complete list of parties and counsel with excerpts based on importance, circulate to team for reference (1.1). | 1.80 | $360.00 |
| 08/13/2024 | PCS | Case team meeting to identify key defendants for focus during document review process (0.2). Email correspondence with case team regarding document review issues and strategy (0.2). | 0.40 | $140.00 |
| 08/14/2024 | WG | Continue updates to the Master Index based on document review, begin extensive analysis of files received from Lain Faulkner to identify download errors in comparison with the links and files on OneDrive, determine empty folders and duplicates, revise the index accordingly (6.9); call with Rick Cass regarding DISCO database and document review (0.5); document discussions with Mr. Sode (0.4); meeting with team regarding status update of document review (0.5); review and respond to email from Mr. Jobe providing status update (0.1). | 8.40 | $1,680.00 |
| 08/14/2024 | PCS | Prepare for and participate in strategy meeting with case team regarding document review project management and next steps (1.4). Analyze substantive information about potential legal claims ███████████ (1.9). | 3.30 | $1,155.00 |
| 08/14/2024 | AD | Meeting with team regarding document review and tagging. | 0.50 | $225.00 |
| 08/14/2024 | ADL | Meet with Messrs. Dabdoub and Sode and Ms. Gillaspie regarding | 0.60 | $180.00 |