Kent Ries, Attorney at Law
PO Box 3100
Amarillo, Texas 79116
(806) 242-7437
(806) 242-7440-Fax

COUNSEL TO THE TRUSTEE

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **MCCLAIN FEED YARD, INC., et al.,1** | § | **CASE NO. 23-20084-RLJ-7** |
| | § | |
| **Debtors.** | § | **Jointly Administered** |

**NO HEARING WILL BE CONDUCTED HEREON UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT 205 SOUTHEAST 5TH AVENUE, ROOM 133, AMARILLO, TEXAS, 79101-1559 BEFORE CLOSE OF BUSINESS ON JANUARY 6, 2025, WHICH IS AT LEAST 21 DAYS FROM THE DATE OF SERVICE HEREOF.**

**ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK, AND A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY PRIOR TO THE DATE AND TIME SET FORTH HEREIN. IF A RESPONSE IS FILED A HEARING MAY BE HELD WITH NOTICE ONLY TO THE OBJECTING PARTY. IF NO HEARING ON SUCH NOTICE OR MOTION IS TIMELY REQUESTED, THE RELIEF REQUESTED SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT OR THE NOTICED ACTION MAY BE TAKEN.**

---

1 The Debtors in these Chapter 7 cases are: McClain Feed Yard, Inc. (Case No. 23-20084-RLJ), McClain Farms, Inc. (Case No. 23-20085-RLJ), and 7M Cattle Feeders, Inc. (Case No. 23-20086-RLJ).

**TRUSTEE'S APPLICATION TO RETAIN**
**CONTINGENCY LITIGATION COUNSEL UNDER 11 U.S.C. § 328(A)**

Kent Ries, Trustee ("Trustee") of the referenced Chapter 7 bankruptcy cases (the "Bankruptcy Cases"), files his Application to Retain Contingency Litigation Counsel under 11 U.S.C. § 328(a) as follows:

## I.      JURISDICTION

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      The statutory and legal predicates for the relief requested herein are § 328(a) of the Bankruptcy Code.

## II.      RELIEF REQUESTED

3.      The Bankruptcy Code provides that, subject to the Court's approval, the Trustee may "employ . . . a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

4.      By this Application, the Trustee seeks to retain two law firms as contingency litigation counsel: Jobe Law PLLC ("Jobe Law") and Lynn Pinker Hurst & Schwegmann LLP ("Lynn Pinker"), pursuant to the terms stated on the proposed engagement letter attached hereto and incorporated herein as Exhibit A in order to further investigate and prosecute the claims of the Debtors' estates as outlined below. Jobe Law and Lynn Pinker would share responsibility for the representation and would share the contingency. The representation would be pursuant to section 328(a) of the Bankruptcy Code.

### III.   FACTUAL BACKGROUND

5.      Each of the Debtors operated a cattle feedlot and/or growyard.  McClain Feed Yard, Inc. ("MFY") owned real property outside of Hereford, Texas; McClain Farms, Inc. ("MF") leased real property in Kentucky; and 7M Cattle Feeders, Inc. ("7M") owned real property outside of Friona, Texas (collectively, the "Debtors").

6.      The Debtors' business operations have significant overlap, including one major secured creditor (Rabo AgriFinance LLC) whose alleged claim exceeds $53,000,000.00 pursuant to its recent motion for relief from the automatic stay.  Rabo claims cross-collateralization and a blanket lien on substantially all of the Debtors' assets.  Further, many of the same vendors, customers and investors did business with all three Debtors.  Finally, the owner of all three Debtor entities was Brian McClain.

7.      All of the Debtors' business operations were shut down prior to their bankruptcy filings.  All cattle and other livestock were apparently sold by the Debtors or removed by their alleged owners pre-petition.

8.      As discussed in prior pleadings, based upon the Trustee's investigation thus far, the Debtors' prebankruptcy operations appear to have constituted a massive fraud involving two cattle operations in Texas (Hereford and Friona) and one in Benton, Kentucky.  The asserted unpaid claims exceed $175M so far, and the Debtors' records show several hundred million dollars flowing through the Debtors in the 3 years before bankruptcy. These cases will involve over 100 parties and their attorneys based upon the service list thus far.

9.      The Debtors' owner, Mr. McClain, committed suicide on April 18, 2023, less than 2 weeks after the appointment of a Chief Restructuring Officer that was investigating the Debtors' financial affairs.  The Trustee's investigation thus far, including with the assistance of the pre-

bankruptcy CRO, has been considerable and will be ongoing for some time due to, among other things, the Debtors' poor and unreliable records.

10.    It appears that the Debtors' cattle operations included at least some actual cattle transactions whereby, in some instances, the Debtors' purchased cattle ("Cattle Purchases"), and in other instances, took possession of third-parties' cattle for the Debtors to fatten/grow prior to sale ("Feed Yard Services"). In addition to Cattle Purchases and Feed Yard Services, it appears that Mr. McClain also raised money from many "investors" pursuant to "partnership agreements" whereby the "investors" would advance funds to one of the Debtors to "purchase" unspecified cattle from the Debtor (that were purportedly already under a contract for sale in the future at a higher weight and price), the Debtor would continue to hold and feed the cattle at its expenses, and the investor and applicable Debtor intended to split the later profit 1/3 to the Debtor and 2/3 to the investor (the "Partnership Agreements").

11.    Over 100 claimants have asserted claims exceeding $100 million with the United States Department of Agriculture ("USDA") under the Dealer Trust Statute for allegedly unpaid amounts for Cattle Purchases, cattle that were dropped off for Feed Yard Services, investments under the Partnership Agreement, and possibly other transactions not yet specified by the claimants. Additionally, upon belief many of these claimants and possibly other parties ostensibly "reclaimed" millions of dollars of cattle in the chaotic period following Mr. McClain's death.

12.    Accordingly, the Debtors' Chapter 7 cases are complicated and involve hundreds of millions of dollars of transactions and other transfers in connection with an alleged Ponzi-scheme that include over 100 claimants claiming in excess of $175M of losses in connection with, in many cases, apparent passive investments in the Debtors' intertwined cattle operations. The Trustee's investigation has been significant and remains ongoing.

13.     More specifically, the Trustee has previously sought and obtained voluminous discovery from the Debtors' agents/insiders; "investors"; banking institutions; and other parties that had various relationships with the Debtors.  The production has been significant, but many of the parties have not fully complied with discovery production, which will require additional discovery practice. As a result of the discovery, the Trustee has amassed a considerable amount of information regarding the Debtors and their various operations and transfers, but considerable additional discovery will be required from additional parties discovered through this process, as well as new discovery from prior producing parties and completing prior requests.

### IV.     PRIOR EMPLOYMENT AND CURRENT STATUS

14.     The Trustee had previously employed Hudson M. Jobe and the law firm of Quilling, Selander, Lownds, Winslett and Moser, PC ("QSLWM") as special counsel on an hourly basis to assist the Trustee in various estate administrative including investigating possible estate claims. In July 2024, following Mr. Jobe's departure from QSLWM and joining Jobe Law, the Trustee employed Jobe Law and Lynn Pinker on reduced-hourly rates for further investigation of estate claims through December 1, 2024 with the agreement and understanding that the Trustee and the law firms would discuss alternative fee arrangements for continued work including prosecution of claims.

15.     Based upon the investigation thus far, the Trustee believes that the Debtors' estates have colorable litigation claims that could provide a meaningful return to the ultimately allowed good-faith creditor and investor claims. More specifically, the Trustee's investigation has uncovered the following:

> a.     The Debtors' "operations" for several years consisted of classic markers of a Ponzi-scheme involving passive investments from many parties (over 100) whereby investors returns were satisfied not by actual profit-making activities and instead through the funds of other investors;

b.    Several purported investors and banks appear to be closer than arms-length and likely lack good faith as a result of their active participation in the scheme through, among other things, various irregular banking activities and insistence upon unrealistic returns and payment terms;

c.    The Debtors' financial statements and financial reporting were materially false and rise to the level of fraud;

d.    The Debtors engaged in a check-kiting scheme to float funds between different institutions;

e.    Several outside accountants were involved in the Debtors' false financial reporting;

f.    Several banks were also involved to different degrees with the Debtors' fraudulent enterprise and banking activities; and

g.    The Debtors' principal (Brian McClain) used various Debtors' funds for his benefit and for his family members that give rise to potentially avoidable transactions.

16.    Although additional discovery will be required and there are various unknowns and risks with respect to both liability and collection (discussed in more detail below), the Trustee believes that the Debtors' estates have colorable tort, avoidance, and similar claims that should be pursued at this time against: (a) outside accountants; (b) banking institutions; (c) certain "investors"; (d) insiders of the Debtors and/or family members of Brian McClain; and (d) other parties that received transfers from the Debtors and/or participated in the Ponzi-scheme.

17.    The risks of liability and collection are considerable:

a.    Parties will undoubtedly attempt to attack the Trustee's prime facie case on his claims, as well as raise various affirmative defenses such as unclean hands, *in pari delicto*, good faith, and value provided. These defenses are largely fact-intensive and the outcome is difficult to predict;

b.    Many of the potential target defendants assert claims against the Debtors' estates that will give rise to arguable offsets or credits;

c.    Many of the target defendants are individuals or entities with uncertain collectability; and

**Page 6**

        d.   Given that the Trustee was not a direct party to any of the pre-petition events, there is always a risk of unknown information that could undercut the Trustee's claims.

18.    There is also considerable risk for an attorney representing the Trustee in these claims on a normal hourly basis under section 327. The Trustee, with the assistance of special counsel and his forensic accounting firm, successfully pursued and settled a Chapter 5 avoidance claim for 3 million dollars related to the recovery of proceeds of life insurance where the premiums were allegedly paid by fraudulent transfers from the Debtors' funds. Approximately $1.1 million of this amount has been utilized by the Trustee to date for prior and pending fee applications, and the Trustee will need the use of the remaining funds to fund various litigation expenses (costs, experts), as well as other non-litigation costs of estate administration (including trustee fees, general legal counsel, accountants and other non-litigation professionals). The Trustee is holding other funds, but they may be encumbered by lien claims of Rabo and trust claims of USDA claimants. The litigation, including considerable additional discovery, trial, and appeals, could take years to resolve, and there is not a clear source of guaranteed unencumbered cash in this estate.

19.    Additionally, there is a high likelihood that pursuit of the Trustee's claims will involve non-cash remedies and resolution, such as potentially the reduction of asserted claims against the Debtors, subordination of claims, and/or substantive consolidation/alter-ego.

20.    For these reasons, the Trustee's law firms are concerned about pursuing the claims on a typical hourly section 327 basis. The Trustee, likewise, agrees that retention of counsel on a contingency fee basis is appropriate under these circumstances. Prior to retaining either QSLWM, the Jobe Firm, and Lynn Pinker, the Trustee considered and interviewed multiple law firms for the special counsel role. Based upon his review, the Trustee believed and continues to believe, that the Debtors' estates would be best served by the engagement of Jobe Law and Lynn Pinker given their qualifications, expertise, prior history in the case, and given that there will likely be

significant overlap between the factual and legal issues involved in each of the claims against various parties.

## V.     QUALIFICATIONS AND PROPOSED RETENTION TERMS

21.     The Trustee believes that both Jobe Law and Lynn Pinker are well qualified and have experience in pursing the claims of the Debtors' estate. Hudson M. Jobe with Jobe Law is board-certified in business bankruptcy law by the Texas Board of Legal Specialization and has considerable experience with bankruptcy cases, bankruptcy litigation, and specifically avoidance claims. Alan Dabdoub with Lynn Pinker is a highly regarded commercial litigator with experience in commercial litigation generally, and specifically, litigation involving accountants and banks.

22.     A complete copy of the proposed retention terms is attached as Exhibit A hereto and incorporated herein. In summary, the retention provides for:

    a.    <u>Contingent Fee</u> - a combined, sliding scale Contingent Fee based upon each Gross Recovery in connection with the Cases: 28% obtained by way of settlement prior to the filing of a lawsuit; 33% obtained following filing of a lawsuit, adversary proceeding, arbitration, or other proceeding; 35% upon the start of any trial on the merits; and 40% if an appeal is pursued. "Gross Recovery" means anything of value received or to be received by Client in the Cases directly or indirectly for the benefit of the Debtors' estates or creditors in the Cases (money, property, securities, etc.), without any setoff, and includes intangibles (such as claim disallowance, claim subordination, avoidance of lien, debt forgiveness or credits, or other benefit received to the Debtors' estates). Intangible items are valued at their fair market value as of the date they are conveyed. Gross Recovery also includes attorneys' fees and/or other legal expenses awarded and paid to the Client by the defendant(s) as well as any other payments, even if paid over time. Gross Recovery specifically includes any costs of court, sanctions, punitive damages, and/or interest. Payment of the Contingent Fee will occur after the funds are received by the Client and upon approval by the Bankruptcy Court.

    b.    <u>Gross Recovery</u> - includes non-cash payment benefits to the estates, such as reduction of claims, subordination of claims, avoidance of liens, and any benefits for remedies such as substantive consolidation or alter-ego. For example, should the Firms successfully resolve a suit for recovery of $100,000.00 cash from a creditor, and disallowance of that

same creditor's asserted $100,000.00 claim following the filing of a lawsuit but in advance of trial, the Firms would be entitled to a 33% fee of the cash payment ($33,000.00) and 33% of the benefit to the Debtors' estate for the disallowance of the $100,000.00 claim. If the Cases result in, for example, a 20% distribution to unsecured creditors whereby such claim would have received a $20,000.00 distribution, the Firms would be entitled to a $6,666.66 fee for the disallowance of the claim (33% of the 20% distribution). It is expressly agreed and understood that the non-cash benefits might not be ascertainable at the time of recovery on a particular matter, and in such event, the Firms will be entitled to immediate payment of the items capable of calculation at that time (such as cash payments) and may make subsequent application for the payment of any non-cash payment benefits to the estate at a later date.

c. <u>Division of Fee</u> - the Firms anticipate that there will be substantial overlap between the various claims pursued in the Cases. Accordingly, both Firms assume joint responsibility for the representation.  It is contemplated that Lynn Pinker will take a leading role in claims against accountants and banks, with Jobe Law providing a supporting role, and Jobe Law will take a leading role in the other avoidance and related claims against investors, insiders, and other parties, with Lynn Pinker providing a supporting role.  The Firms believe that a division of the Contingency Fee 60% to Lynn Pinker and 40% to Jobe Law represents a fair allocation of the proportionate value of professional services to be rendered by the Firms and have agreed to this allocation between the Firms.

d. <u>Expenses</u> - with respect to expenses, the Debtors' estates will be liable for all expenses incurred with respect to the Cases, including court-reporters, videographers, any other deposition costs, travel, photocopying, courier, document production, long-distance telephone, discovery consultants, accountants (such as Lain Faulkner & Co.  PC), other professionals in connection with the main  bankruptcy Cases,  and consulting and testifying experts ("Case Expenses").  Where possible, the Debtors' estates will assume and pay Case Expenses directly. With respect to all Case Expenses incurred by the Firms, the Client agrees that the Firms may apply for Bankruptcy Court approval of payment and/or reimbursement of Case Expenses on 10-days notice, no more frequently than monthly.  The Firms do not intend to bear the burden of financing Case Expenses and expect the Case Expenses to be satisfied routinely as incurred and submitted, subject to Bankruptcy Court approval on expedited notice.

23.    Jobe Law, Lynn Pinker, and the Trustee believe that the proposed terms are reasonable under the circumstances.

24.     With respect to the proposed fee of 30% - 40%, the parties believe that this similar to, or less than, fees approved in similar cases under section 327(a).  *See, e.g.*, *In re Hoactzin Partners, L.P.,* Case No. 19-33545-sgj7 (N.D. Bankr. Oct. 8, 2021)(Jernigan, J.)(employing Lynn Pinker on a flat 40% contingency fee under 327(a)). *See also*, *In the Matter of Texas Securities Inc.*, 218 F.3d 443 (5th Cir. 2000)(40% contingency fee); *In re Dykeswill, Ltd.*, 365 B.R. 683 (S.D. Tex. 2007)(50% fee).

25.     With respect to the proposed contingency fee based upon non-cash benefits, the parties believe that this "reverse contingency fee" component is both lawful and appropriate under the circumstances. *See Adam v. Weinman (In re Adam Aircraft Indus., Inc.*) 532 B.R. 814 (D. Colo. 2015)(discussing reverse contingency fee that included reduction of estate liability); *In re On-Site Fuel Serv.*, 627 B.R. 644 (Bankr. S.D. Miss. 2021)(same); *Duke v. Walker & Patterson, P.C.*, 608 B.R. 499 (S.D. Tex. 2019). *See also*, ABA Formal Op. 93-373 (1993); Hudson Jobe, Note, Contingent Fee Agreements: Drafting for Potential Counterclaims After *Levine v. Bayne, Snell & Krause, Ltd.*, 55 Baylor L. Rev. 297 (2003).

26.     Finally, the proposed division is appropriate given the Firms' joint assumption of responsibility for the matter. *See, e.g.*, *In re Terra Services, LLC,* Case No. 18-32724-hdh7 (N.D. Bankr. April 8, 2019)(Hale, J.)(approving 75%/25% division of contingency fee between two law firms under 327(a) retention). *See also*, Texas Disciplinary Rule of Professional Conduct 1.04(f).

## VI.     CONCLUSION

27.     For the foregoing reasons, the Trustee submits that Jobe Law and Lynn Pinker are qualified to represent the Debtors' estates with respect the subject litigation, their retention is in the best interests of the estate, and that the compensation of the firms, as specified in the engagement agreement attached as Exhibit A hereto, should be approved pursuant to the Proposed Order attached as Exhibit B.

Respectfully submitted,

By: *Kent Ries*
State Bar No. 1691450
Kent Ries, Attorney at Law
PO Box 3100
Amarillo, Texas 79116
(806) 242-7437
(806) 242-7440-Fax

COUNSEL FOR TRUSTEE

Hudson M. Jobe
Texas Bar No. 24041189
JOBE LAW PLLC
6060 North Central Expressway, Suite 500
Dallas, Texas 75206
(214) 807-0563
hjobe@jobelawpllc.com

SPECIAL COUNSEL TO THE TRUSTEE

Alan Dabdoub
State Bar No. 24056836
adabdoub@lynnllp.com
LYNN PINKER HURST & SCHWEGMANN LLP
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone:     214-981-3800
Facsimile:     214-981-3839

SPECIAL COUNSEL TO THE TRUSTEE

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 12th day of December 2024, a true and correct copy of the above

and foregoing Motion was sent via ECF or mailed by the 13th day of December 2024, in the United

States mail, postage prepaid, to the parties listed below and on the attached mailing matrix.

        /s/  Kent Ries
        Kent Ries