# LYNN PINKER HURST SCHWEGMANN

ALAN DABDOUB
*Partner*

D 214 981 3818
F 214 981 3839
adabdoub@lynnllp.com

Lynn Pinker Hurst & Schwegmann, LLP
2100 Ross Avenue
Suite 2700
Dallas, Texas 75201
**lynnllp.com**

December 11, 2024

**Via E-Mail:**  kent@kentries.com; hjobe@jobelawpllc.com
Kent Ries, Trustee
PO Box 3100
Amarillo, TX 79116-3100

Hudson Jobe
Jobe Law PLLC
6060 North Central Expressway, Suite 500
Dallas, Texas 75206

Re:   Engagement Letter:  *In Re McClain Feed Yard, Inc., et. al.*

Dear Kent:

## I.   Introduction.

This letter with memorialize the retention terms of Lynn Pinker Hurst & Schwegmann, LLP ("LPHS") and Jobe Law PLLC ("Jobe Law") (collectively referred to as the "Firms") to represent Kent Ries, Ch. 7 Trustee ("Client") in his capacity as Chapter 7 Trustee of the bankruptcy cases of McClain Feed Yard, Inc. ("MFY"), McClain Farms, Inc. ("MF"), and 7M Cattle Feeders, Inc. ("7M"), which are pending in the United States Bankruptcy Court for the Northern District of Texas, Amarillo Division under the jointly administered Case Number 23-20084 (collectively referred to as the "Cases").  MRY, MF, and 7M are collectively referred to herein as the "Debtors." We appreciate the opportunity to work with you on this matter.

## II.   Scope of Engagement.

The Client hereby engages the Firms to assume the following duties in the Cases:

(A)   Investigate and pursue potential claims that the Debtors' bankruptcy estates may have against: (a) outside accountants; (b) banking institutions; (c) "investors"; (d) insiders of the Debtors and/or family members of Brian McClain; and (d) other parties that received transfers from the Debtors and/or participated in the alleged Ponzi-scheme.

(B)   Investigate and pursue additional non-cash recovery claims or other remedies such as objections to claim, subordination, and/or substantive consolidation.

(C)   Consult with the Client as the Client desires;

Kent Ries, Trustee
Hudson Jobe
December 11, 2024
Page 2

    (D)    Prepare and review pleadings, and arrange for filing and support activities;

    (E)    Participate in discovery and provide research;

    (F)    Try the lawsuits if necessary, and handle any appeals;

    (G)    All matters which are necessary and proper to accomplish the above tasks; and

    (H)    Work collaboratively on all matters relating to the above.

We will provide services of a strictly legal nature. The Client should not rely upon us for business, investment, or accounting decisions, or to investigate the character or credit of persons with whom the Client may be dealing, or to advise the Client about changes in the law that might affect them in matters unrelated to the Case. We will keep the Client advised of developments as necessary. The Firms will advise the Client of any claims that the Firms are not willing to pursue, and the Client may retain alternative counsel to pursue any claims that the Firms decline to pursue by February 28, 2025.

## III.    Attorneys Responsible for the Case.

Alan Dabdoub of LPHS and Hudson Jobe of Jobe Law will serve as co-counsel and the attorney in charge of the cases and will use other attorneys and paralegals as necessary.

## IV.    Bankruptcy Approvals Required for Engagement and Payment.

The retention of LPHS and Jobe Law will be pursuant to 11 U.S.C. § 328(a) and subject to the approval of the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court"). The Firms will work cooperatively with the Client to submit this agreement (and any others) for approval by the Bankruptcy Court. This agreement is effective December 1, 2024. In the event this agreement is not approved by the Bankruptcy Court, the Firms may seek allowance and payment of their fees (at normal hourly rates) and expenses from December 1, 2024 to the date of denial.

## V.    Payment for Services Rendered by LPHS.

Client agrees to pay a combined, sliding scale Contingent Fee based upon each Gross Recovery in connection with the Cases: 28% obtained by way of settlement prior to the filing of a lawsuit; 33% obtained following filing of a lawsuit, adversary proceeding, arbitration, or other proceeding; 35% upon the start of any trial on the merits; and 40% if an appeal is pursued. "Gross Recovery" means anything of value received or to be received by Client in the Cases directly or indirectly for the benefit of the Debtors' estates or creditors in the Cases (money, property, securities, etc.), without any setoff, and includes

Kent Ries, Trustee
Hudson Jobe
December 11, 2024
Page 3

---

intangibles (such as claim disallowance, claim subordination, avoidance of lien, debt forgiveness or credits, or other benefit received to the Debtors' estates). Intangible items are valued at their fair market value as of the date they are conveyed. Gross Recovery also includes attorneys' fees and/or other legal expenses awarded and paid to the Client by the defendant(s) as well as any other payments, even if paid over time. Gross Recovery specifically includes any costs of court, sanctions, punitive damages, and/or interest. Payment of the Contingent Fee will occur after the funds are received by the Client and upon approval by the Bankruptcy Court.

It is expressly agreed and understood that Gross Recovery includes non-cash payment benefits to the estates, such as reduction of claims, subordination of claims, avoidance of liens, and any benefits for remedies such as substantive consolidation or alter-ego. For example, should the Firms successfully resolve a suit for recovery of $100,000.00 cash from a creditor, and disallowance of that same creditor's asserted $100,000.00 claim following the filing of a lawsuit but in advance of trial, the Firms would be entitled to a 33% fee of the cash payment ($33,000.00) and 33% of the benefit to the Debtors' estate for the disallowance of the $100,000.00 claim. If the Cases result in, for example, a 20% distribution to unsecured creditors whereby such claim would have received a $20,000.00 distribution, the Firms would be entitled to a $6,666.66 fee for the disallowance of the claim (33% of the 20% distribution). It is expressly agreed and understood that the non-cash benefits might not be ascertainable at the time of recovery on a particular matter, and in such event, the Firms will be entitled to immediate payment of the items capable of calculation at that time (such as cash payments) and may make subsequent application for the payment of any non-cash payment benefits to the estate at a later date.

With respect to expenses, the Client agrees that the Debtors' estates will be liable for all expenses incurred with respect to the Cases, including court-reporters, videographers, any other deposition costs, travel, photocopying, courier, document production, long-distance telephone, discovery consultants, accountants (such as Lain Faulkner & Co. PC), other professionals in connection with the main bankruptcy Cases, and consulting and testifying experts ("Case Expenses"). Where possible, the Debtors' estates will assume and pay Case Expenses directly. With respect to all Case Expenses incurred and/or paid by the Firms, the Client agrees that the Firms may apply for Bankruptcy Court approval of payment and/or reimbursement of Case Expenses on 10-days notice, no more frequently than monthly. The Firms do not intend to bear the burden

Kent Ries, Trustee
Hudson Jobe
December 11, 2024
Page 4

_____

of financing Case Expenses and expect the Case Expenses to be satisfied routinely as incurred and submitted, subject to Bankruptcy Court approval on expedited notice.

Client acknowledges that the Contingent Fee is not set by law, is negotiable and has been negotiated between the parties and that Client has had an opportunity to seek separate counsel prior to executing this agreement.

During the representation, it may be appropriate or necessary to engage third parties to provide services on Client's behalf.  These services, which constitute Case Expenses, may include such things as consulting or testifying experts, investigators, providers of computerized litigation support, court reporters, providers of filing services and searches of governmental records, local counsel, filings and mock trial experts.  Because of the legal "work product" protection afforded to services that an attorney requests from third parties, the Firms may assume responsibility for retaining the appropriate service providers but will consult with the Client about the retention of any expert witnesses.  The Firms will not retain any service provider, including but not limited to, consulting or testifying experts, investigators, damage appraisers, etc. without the prior written permission of the Client which may require approval of the Bankruptcy Court.

**VI.** **Division of Fee.**

Texas Disciplinary Rule of Professional Conduct 1.04(f) provides:

(f) A division or arrangement for division of a fee between lawyers who are not in the same firm may be made only if:

(1) the division is:

(i) in proportion to the professional services performed by each lawyer; or

(ii) made between lawyers who assume joint responsibility for the representation; and

(2) the client consents in writing to the terms of the arrangement prior to the time of the association or referral proposed, including

(i) the identity of all lawyers or law firms who will participate in the fee-sharing arrangement; and

(ii) whether fees will be divided based on the proportion of services performed or by lawyers agreeing to assume joint responsibility for the representation; and

Kent Ries, Trustee
Hudson Jobe
December 11, 2024
Page 5

---

>> (iii) the share of the fee that each lawyer or law firm will receive or, if the division is based on the proportion of services performed, the basis on which the division will be made; and

> (3) the aggregate fee does not violate paragraph (a),

The Firms anticipate that there will be substantial overlap between the various claims pursued in the Cases. Accordingly, both Firms assume joint responsibility for the representation. It is contemplated that LPHS will take a leading role in claims against accountants and banks, with Jobe Law providing a supporting role, and Jobe Law will take a leading role in the other avoidance and related claims against investors, insiders, and other parties, with LPHS providing a supporting role.  The Firms believe that a division of the Contingency Fee 60% to LPHS and 40% to Jobe Law represents a fair allocation of the proportionate value of professional services to be rendered by the Firms and have agreed to this allocation between the Firms.

## VII. <u>Disclaimer of Any Result or Warranty.</u>

A trial is an unpredictable event, the outcome of which is based upon facts we do not know at this time and on law that may change.  There can be no assurances, and we make no representations, guarantees or warranties that Client will obtain a particular result. **The Client may win or lose at trial, and any trial decision could be upheld, reversed or modified on appeal.  At various times, the Firms may provide Client with its analysis and expectations with respect to the outcome of the case.  The Client recognizes that such analysis and expectations do not and will not constitute a guarantee of any kind.**

## VIII. <u>Termination of Engagement.</u>

Client has the right at any time to terminate the Firms' services and representation upon written notice to us.  The Firms reserve the right to withdraw from this representation if, subject to applicable Bankruptcy Court rules, or any fact or circumstance would, in our view, render our continuing representation unlawful or unethical.  If we elect to withdraw, the Client will, if the Client agrees that the withdrawal is justified, take all steps necessary to free the Firms of any obligation to perform further, including the execution of any documents necessary to complete our withdrawal.  In the event either of the Firms, on the one hand, and the Client, on the other hand, disagree about whether the Firm is entitled to withdraw, the Firm shall be entitled to submit that issue to the court for resolution.  Termination of our agreement in no way affects the Client's obligation to pay for actual, necessary, reasonable and appropriate services and expenses due or incurred.

## IX. <u>Tax Implications - No Tax Advice.</u>

Kent Ries, Trustee
Hudson Jobe
December 11, 2024
Page 6

_____

Tax implications may arise from this engagement, including but not limited to the taxation of any monetary or other recovery or payment or other settlement terms including any award or payment of attorneys' fees.  The Firms do not provide tax advice.  The Client agrees and acknowledges that tax advice is not within the scope of the Firms' engagement and no discussions or communications we may have, even if they touch upon or relate to potential tax issues or matters, should or will be considered tax advice.  The Client agrees and understands that Client should seek the counsel of an accountant or tax attorney to advise on all tax issues, including, for example, the tax consequences to the Client or any other person or entity of any recovery or payment, or other settlement terms of the case or any of the Matters.

Without limiting the foregoing, the Client agrees and acknowledges that the Firms are not advising the Client with respect to the tax treatment or characterization of the Client's expenditures or fee payments pursuant to this Agreement or the tax consequences of any settlement or judgment in this matter.  In addition, in accordance with Internal Revenue Service Circular 230, the Firms hereby inform the Client that any discussions of federal tax issues contained in any communications with the Client during the course of this engagement are not intended or written to be used, and cannot be used, by any recipient for the purpose of (i) avoiding penalties that may be imposed on the recipient under United States federal tax laws, or (ii) promoting, marketing or recommending to another party any tax-related matters.

**X.**     **Governing Law.**

**WITH REGARD TO ANY ISSUE RAISED OR RELATED TO THIS AGREEMENT OR ANY ISSUE RAISED OR RESULTING FROM OUR RELATIONSHIP THAT MAY HAVE COME INTO EXISTENCE BEFORE OR CONTINUED FOLLOWING THIS AGREEMENT, ALL THOSE, AS SPECIFIED MORE PARTICULARLY BELOW, HEREBY AGREE WITH YOU THAT OUR RELATIONSHIPS AND AGREEMENTS SHALL BE GOVERNED BY THE LAWS OF THE STATE OF TEXAS AND ALL DISPUTES RELATED DIRECTLY OR INDIRECTLY TO ANY ASPECT OF OUR REPRESENTATION OR RELATIONSHIP OF ANY OF OUR PARTNERS, THEIR EMPLOYEES OR EMPLOYEES OF THE FIRM WITH CLIENT OR YOUR EMPLOYEES OR REPRESENTATIVES SHALL BE SUBJECT TO THE ORDER OF THE BANKRUPTCY COURT.**

**X.**     **Notice to Client.**

**THE STATE BAR OF TEXAS INVESTIGATES AND PROSECUTES PROFESSIONAL MISCONDUCT COMMITTED BY TEXAS ATTORNEYS. ALTHOUGH NOT EVERY COMPLAINT AGAINST OR DISPUTE WITH A**

Kent Ries, Trustee
Hudson Jobe
December 11, 2024
Page 7

**LAWYER INVOLVES PROFESSIONAL MISCONDUCT, THE STATE BAR'S OFFICE OR GENERAL COUNSEL WILL PROVIDE YOU WITH INFORMATION ABOUT HOW TO FILE A COMPLAINT. PLEASE CALL 1-800-932-1900 TOLL-FREE FOR MORE INFORMATION.**

     We look forward to representing you in this matter and we are pleased that you have chosen us. To signify Client's agreement to the terms and conditions set forth herein, please execute your signature below and return to my attention.

     Sincerely,

Alan Dabdoub

AD:kr

Agreed:

By: _____
    Kent Ries, Ch. 7 Trustee

Date: _____

By: _____
    Hudson M. Jobe

Date: _____