Jason Rae
LAIN, FAULKNER & CO., P.C.
400 N. St. Paul St., Suite 600
Dallas, TX 75201
214/720-1929 Fax: 214/720-1450
www.lainfaulkner.com
Accountants for the Chapter 7 Trustee

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# AMARILLO DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| MCCLAIN FEED YARD, INC., et al.,[1] | § § § § | CASE NO. 23-20084-SWE-7 |
| Debtors. | § | Jointly Administered |

## THIRD INTERIM APPLICATION FOR ALLOWANCE OF FEES AND EXPENSES OF LAIN, FAULKNER & CO., P.C.

## NOTICE

**NO HEARING WILL BE CONDUCTED HEREON UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT 205 SOUTHEAST 5TH AVENUE, ROOM 133, AMARILLO, TEXAS, 79101-1559 BEFORE CLOSE OF BUSINESS ON MAY 5, 2025, WHICH IS AT LEAST 21 DAYS FROM THE DATE OF SERVICE HEREOF.**

**ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK, AND A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY PRIOR TO THE DATE AND TIME SET FORTH HEREIN. IF A RESPONSE IS FILED A HEARING MAY BE HELD WITH NOTICE ONLY TO THE OBJECTING PARTY. IF NO HEARING ON SUCH NOTICE OR MOTION IS TIMELY REQUESTED, THE RELIEF REQUESTED SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT OR THE NOTICED ACTION MAY BE TAKEN.**

---

[1] The Debtors in these Chapter 7 cases are: McClain Feed Yard, Inc. (Case No. 23-20084-RLJ), McClain Farms, Inc. (Case No. 23-20085-RLJ), and 7M Cattle Feeders, Inc. (Case No. 23-20086-RLJ)

**TO THE HONORABLE ROBERT L. JONES, BANKRUPTCY JUDGE:**

Lain, Faulkner & Co., P.C. ("LainFaulkner"), accountants to Kent Ries, Trustee ("Trustee") of the referenced Chapter 7 bankruptcy cases the "Bankruptcy Cases"), files its Second Interim Application for Allowance of Fees and Expenses (the "Application"), and would respectfully show the Court as follows:

### I. SUMMARY

1. The Debtors' Chapter 7 cases are complicated and involve hundreds of millions of dollars of transactions and other transfers in connection with an alleged Ponzi-scheme that include over 100 claimants claiming in excess of $175M of losses in connection with, in many cases, apparent passive investments in the Debtors' intertwined cattle operations. The Trustee's investigation has been significant and is ongoing, and is expected to result in considerable litigation claims in an effort to provide a meaningful return to the ultimately allowed good-faith creditor and investor claims.

2. The Trustee, with the assistance of special counsel and his forensic accounting firm, successfully pursued and settled a Chapter 5 avoidance claim for $3,000,000.00 related to the recovery of proceeds of life insurance where the premiums were allegedly paid by fraudulent transfers from the Debtors' funds. The Truste, with the further assistance of special counsel, has engaged in a significant forensic accounting of the Debtors' prior transactions and filed two significant adversary proceedings to recovery money for innocent creditors.

3. Applicant's requests approval of fees of $163,236.50 and expenses of $37.95 for a total of $163,274.45 for the time period of October 1, 2024 through January 31, 2025. This amount includes 29.70 of non-billed time (total amount of $8,251.50).

## II. EMPLOYMENT AND PRIOR COMPENSATION

4.  The Debtors filed for relief under Chapter 7 of the United States Bankruptcy Code on April 28, 2023 (the "Petition Date").  Kent Ries was subsequently appointed and qualified to serve as the Trustee over the bankruptcy estate.

5.  On June 30, 2023, the Trustee filed an application for authority to employ Quilling, Selander, Lownds, Winslett & Moser, P.C. as special counsel in this case (Dkt. No. 69).  On July 7, 2023, this Court entered an order approving the Trustee's employment of QSLWM (Dkt. No. 75).  An expanded scope of QSLWM's engagement was thereafter confirmed pursuant to motion filed on September 11, 2023 (Dkt. No. 120) and approved by Court order on November 1, 2023 (Dkt. No. 144).

6.  On June 30, 2023, the Trustee filed an application for authority to employ LainFaulkner as forensic accountants in this case (Dkt. No. 68).  On July 7, 2023, this Court entered an order approving the Trustee's employment of LainFaulkner (Dkt. No. 74).

7.  On April 25, 2024, LainFaulkner filed its First Interim Application for Allowance of Compensation and Reimbursement of Expenses for Lain, Faulkner & Co., P.C., as Accountants for the Chapter 7 Trustee (Dkt. No. 228), requesting the interim allowance of fees totaling $160,319.00 and expenses totaling $650.18 for the period June 1, 2023 through March 31, 2024. This amount included $18,722.50 in voluntary reductions. On May 23, 2024, this Court entered its Order Granting First Interim Application for Allowance of Compensation and Reimbursement of Expenses for Lain, Faulkner & Co., P.C., as Accountants for Chapter 7 Trustee (Dkt. No. 252). The Trustee has paid Applicant the total amount of fees and expenses requested.

8.  On November 15, 2024, LainFaulkner filed its Second Interim Application for Allowance of Compensation and Reimbursement of Expenses for Lain, Faulkner & Co., P.C., as

Accountants for the Chapter 7 Trustee (Dkt. No. 210), requesting approval of fees of $280,831.00 and expenses of $3,653.78 for a total of $284,484.78. This amount included 280.40 of non-billed time (total amount of $70,619.50). On November 15, 2024, this Court entered its Order Granting Second Interim Application for Allowance of Compensation and Reimbursement of Expenses for Lain, Faulkner & Co., P.C., as Accountants for Chapter 7 Trustee (Dkt. No. 322). The Trustee has paid Applicant the total amount of fees and expenses requested.

9. No agreement exists between movant and any other person or entity for the sharing of compensation to be received for services rendered in connection with this case, except that such compensation will be shared among the employees of movant.

### III.  CASE BACKGROUND

10. Each of the Debtors operated a cattle feedlot and/or growyard. McClain Feed Yard, Inc. ("MFY") owned real property outside of Hereford, Texas; McClain Farms, Inc. ("MF") leased real property in Kentucky; and 7M Cattle Feeders, Inc. ("7M") owned real property outside of Friona, Texas (collectively, the "Debtors").

11. The Debtors' business operations have significant overlap, including one major secured creditor (Rabo AgriFinance LLC) whose alleged claim exceeds $53,000,000.00 pursuant to its recent motion for relief from the automatic stay. Rabo claims cross-collateralization and a blanket lien on substantially all of the Debtors' assets. Further, many of the same vendors, customers and investors did business with all three Debtors. Finally, the owner of all three Debtor entities was Brian McClain.

12. All of the Debtors' business operations were shut down prior to their bankruptcy filings. All cattle and other livestock were apparently sold by the Debtors or removed by their alleged owner's pre-petition.

13. As discussed in prior pleadings, based upon the Trustee's investigation thus far, the Debtors' prebankruptcy operations appear to have constituted a massive fraud involving two cattle operations in Texas (Hereford and Friona) and one in Benton, Kentucky. The asserted unpaid claims exceed $175M so far, and the Debtors' records show several hundred million dollars flowing through the Debtors in the 3 years before bankruptcy. These cases will involve over 100 parties and their attorneys based upon the service list thus far.

14. The Debtors' owner, Mr. McClain, committed suicide on April 18, 2023, less than 2 weeks after the appointment of a Chief Restructuring Officer that was investigating the Debtors' financial affairs. The Trustee's investigation thus far, including with the assistance of the pre-bankruptcy CRO, has been considerable and will be ongoing for some time due to, among other things, the Debtors' poor and unreliable records.

15. It appears that the Debtors' cattle operations included at least some actual cattle transactions whereby, in some instances, the Debtors' purchased cattle ("Cattle Purchases"), and in other instances, took possession of third-parties' cattle for the Debtors' to fatten/grow prior to sale ("Feed Yard Services"). In addition to Cattle Purchases and Feed Yard Services, it appears that Mr. McClain also raised money from many "investors" pursuant to "partnership agreements" whereby the "investors" would advance funds to one of the Debtors to "purchase" unspecified cattle from the Debtor (that were purportedly already under a contract for sale in the future at a higher weight and price), the Debtor would continue to hold and feed the cattle at its expenses, and the investor and applicable Debtor intended to split the later profit 1/3 to the Debtor and 2/3 to the investor (the "Partnership Agreements").

16. Over 100 claimants have asserted claims exceeding $100 million with the United States Department of Agriculture ("USDA") under the Dealer Trust Statute for allegedly unpaid

amounts for Cattle Purchases, cattle that were dropped off for Feed Yard Services, investments under the Partnership Agreement, and possibly other transactions not yet specified by the claimants. Additionally, upon belief many of these claimants and possibly other parties ostensibly "reclaimed" millions of dollars of cattle in the chaotic period following Mr. McClain's death.

### IV. CASE STATUS

17. The Trustee has spent considerable time and resources investigating the Debtors' pre-bankruptcy financial affairs, and the investigation is ongoing. Based upon his investigation thus far, the Trustee believes that the Debtors' estates have claims against investors, lenders, and other agricultural entities. The Trustee has filed two significant adversary proceedings following this investigation.

18. In addition to various other funds, the Trustee obtained $3,000,000.00 that constitute the proceeds of certain Chapter 5 avoidance claims investigated, pursued, and ultimately settled by the Trustee related to the alleged fraudulent transfers of Debtors' funds for the purposes of funding term life insurance for Mr. McClain. The Court has previously approved interim fee applications allowing the Trustee to pay fees and expenses from this sum: $250,000.00 to QSLWM (Dkt. No. 247) and $160,969.18 to LainFaulkner (Dkt. No. 252); $108,212.61 to QSLWM (Dkt. No. 320); $284,484.78 to LainFaulkner (Dkt. No. 310); $75,742.50 to Jobe Law (Dkt. No. 322); and $204,156.40 to Lynn Pinker (Dkt. No. 323). Thus, $1,916,434.53 of the settlement of Chapter 5 claims remains after payment of prior professionals.

19. As discussed in prior hearings, the Trustee's investigation of additional claims is ongoing. Since the prior interim fee applications, the Trustee has engaged in significant discovery efforts involving production of records from more than 100 parties, discovery disputes, various motion practice in pending adversary proceedings, contested discovery hearings, forensic analysis of hundreds of thousands of pages of financial records and other documents, and investigation of

litigation claims. The Trustee has filed claims against various third parties in an effort to provide a meaningful return to good faith investors and creditors in this case. Virtually all of the claims in this case are contested, and therefore it is not possible to provide an interim dividend to general unsecured creditors at this time.

## V. SUMMARY OF SERVICES RENDERED

20. The general categories of accounting and financial consulting services rendered by the Applicant are summarized as follows:

A. <u>Avoidance Actions – Individual File Review</u> – Applicant incurred time assessing information available to assist counsel in identifying and pursuit of various avoidance actions. In addition, Applicant incurred time with preparing summaries, analyzing potential defenses and conferring with counsel regarding these analyses. Applicant's efforts in these areas are ongoing at this time as information and evidence continues to develop. Total Fees Requested - $29,529.50.

B. <u>Claims – Maintenance/Analysis</u> – Applicant incurred time reviewing and updating claims schedule/analysis. Total Fees Requested - $560.00.

C. <u>Document Management</u> – Applicant incurred time related to continued efforts on obtaining document production from third parties pursuant to court order. These efforts are ongoing. Total Fees Requested - $350.00.

D. <u>Employment/Fee Application</u> – Applicant spent time preparing its second interim fee application. Total Fees Requested - $5,667.50.

E. <u>Financial Analysis</u> - Applicant incurred time assessing information available, gathering financial information, analyzing banking records, reviewing the Debtor's financial reports, and preparing data extracts and analysis. Further, Applicant incurred time obtaining, analyzing and creating a database of creditor related activity. Applicant also incurred time analyzing lender and third-party accountant information and conferring with counsel regarding that analysis. Applicant's efforts in these areas are ongoing at this time as information and evidence continues to develop. Total Fees Requested - $120,542.00.

F. <u>Status Conferences/Meetings</u> – Applicant met with Trustee and Trustee's professional regarding preliminary data analysis, planning, status updates and tax issues. Applicant also conferred with counsel throughout the planning process, with updates on analysis and progress and potential discovery matters. Total Fees Requested - $4,065.00.

G. <u>Tax Services</u> – Applicant's work in this area has been segregated into several project codes to better track the process and document the reasonableness of the related professional fees. Only one project code is utilized for this Third Interim fee application:

- *Other Tax Services*. Applicant participated in teleconference with Trustee and Jason Rae regarding tax matters and researched issues for follow-up conversations; prepared, processed and filed Forms 941 (Employment tax reports) and prepared, processed and filed Texas Franchise Tax Reports. Total Fees Requested - $2,522.50.

21. <u>Client Time Not Billed</u>. Applicant incurred 29.70 hours in the completion of certain of the tasks referred to above for which no compensation is sought. While Applicant believes this time is ultimately beneficial to the estate, at this time is not seeking reimbursement of these fees[2]. If billed at normal rates, the fees incurred would total $8,251.50. Total Fees Incurred - $8,251.50. Fees Requested - $0.00.

## VII. FIRST COLONIAL FACTORS

22. In support of this request for allowance of compensation and reimbursement of expenses, LainFaulkner respectfully directs this Court's attention to those factors generally considered by Bankruptcy Courts in awarding compensation to professionals for services performed in connection with the administration of a bankruptcy estate, as enumerated in 11 U.S.C. § 330 and developed by case law. Specifically, section 330 provides, *inter alia*, that the allowance of professional compensation should be based upon the time, nature, extent and value

---

[2] Given the stage of this case, and the amount of time necessary to reconstruct accurate records, Applicant is not seeking approval of this time although reserves the right to seek approval in a later fee application.

**THIRD INTERIM APPLICATION FOR ALLOWANCE OF FEES AND EXPENSES**     **PAGE 8**

of the services rendered as well as consideration of the cost of comparable services rendered in a non-bankruptcy context. The controlling authority in the Fifth Circuit is *In re First Colonial Corp. of America*, 544 F.2d 1291 (5th Cir. 1977). In *First Colonial*, the Court of Appeals for the Fifth Circuit identified twelve factors to guide this Court's decision. Those factors as applied to the services rendered in this case by LainFaulkner for the time period covered by this Application are addressed below.

    (a)  **The Time and Labor Required.** Since its appointment, Applicant has committed the necessary time and effort on behalf of the Trustee to assist him in fulfilling his fiduciary responsibilities in this proceeding. During the Application Period, a total of 585.90 professional and 6.30 staff hours were incurred by Applicant on behalf of the Trustee and the Estate.

    (b)  **The Novelty and Difficulty of the Questions.** The issues that Applicant encountered serving as Accountant for the Chapter 7 Trustee during this Application Period have been of a complex and specialized nature, requiring advanced skills and knowledge in bankruptcy accounting, tax reporting and financial analysis, in order to obtain results useful to the Trustee and beneficial to the Estate.

    (c)  **The Skill Requisite to Perform the Service.** Applicant's firm has members, including those who have performed services on behalf of the Trustee, who are specialized in various facets of financial analysis, bankruptcy accounting and tax reporting. Due to their expertise and skill in these specialized areas, Applicant believes far more time would have been expended by less experienced personnel, with considerably less desirable results. The array of accounting, financial analysis and specialized reporting considerations presented in this proceeding and the prompt and skillful action taken with

regard to such problems by Applicant required a very high degree of expertise and experience. Applicant's abilities in this area are well known and enable it to represent debtors and trustees effectively and efficiently in bankruptcy proceedings such as the instant one.

(d) **The Preclusion of Other Employment Due to Acceptance of the Case.** Applicant is unable to precisely estimate the extent to which it has been precluded from accepting other employment by reason of its employment as Accountant for the Chapter 7 Trustee. Applicant has, however, found it necessary to reschedule and, in some instances forego, work on other matters because of the concentrated efforts necessary to respond to the needs of the Trustee.

(e) **The Customary Fee.** The hourly rates sought herein are commensurate with the rates charged and approved in other bankruptcy proceedings pending in the Northern District of Texas. The hourly rates charged by the professionals and staff of LainFaulkner who worked on this case are as follows:

> (i) Jason Rae, CPA/Managing Director ($500.00 per hour), has over 27 years of experience in industry and public practice/23 years in bankruptcy and forensic accounting matters.

> (ii) Kelly McCullough, CPA/Director ($500.00 per hour), has more than 30 years of experience in public practice and industry, focusing on providing accounting and consulting services, forensic accounting, litigation services, preference and fraudulent transfer analysis, claims analysis and administration, asset liquidations.

> (iii) Dean Bielitz, CPA/Director ($440.00 per hour) has over 30 years of experience in the preparation of Corporate, Partnership, MLP, Individual, S-Corporate and Trust tax returns.

> (iv) Ben Beckelman, CPA/Manager ($325.00 per hour) has over 30 years of experience in providing accounting, consulting and tax services.

   (v) Misty Berumen, Accounting Professional ($285.00 per hour), has over 20 years of experience providing forensic analysis and business valuation services.

   (vi) Aniza Rowe, Accounting Professional ($280.00 per hour), has over 30 years of experience in public accounting, the past 23 years focused on bankruptcy. Ms. Rowe is also a Certified QuickBooks ProAdvisor.

   (vii) Rick Cass, Accounting Professional ($275.00 per hour), has over 23 years of experience in public accounting, the past 22 years focused on bankruptcy, litigation and forensic services.

   (viii) Laura Paz-Sanchez, Staff Accountant ($250.00 per hour) has over 10 years of experience in assisting with the preparation of all federal and state tax reporting.

   (ix) Karla Wortham, Accounting Professional ($250.00 per hour), has over 20 years of accounting experience focusing on bankruptcy, receiverships, litigation and forensic services.

   (x) Scott Reese, Accounting Professional ($235.00 per hour), has over 20 years of experience focusing on bankruptcy, reconstruction accounting and litigation support.

   (xi) Brenda Puente, Staff Accountant ($195.00 per hour) has over five years of accounting experience in bookkeeping, payroll and personal/corporate taxes.

   (xii) Janice Oden, Administrative Assistant ($135.00 per hour) has over 25 years of experience as an administrative assistant, supporting the firm's directors in all areas of bankruptcy and litigation.

  (f) **Whether the Fee is Fixed or Contingent.** LainFaulkner's fee is fixed insofar as monies exist in the estate from which to pay such fees. Payment of LainFaulkner's fees, however, is subject to Court approval and the requirements of the Bankruptcy Code and relevant case law.

  (g) **Time Limitations Imposed by the Client or Other Circumstances.** Applicant believes that its role in this case has, to date, been handled in an expeditious manner, given the factual circumstances involved and the complex issues confronted.

Applicant further believes that no undue delays have occurred and that it has proceeded expeditiously and efficiently to the benefit of the Trustee, the creditors and all other parties-in-interest.

(h) **The Amount Involved and the Results Obtained.** Applicant's work and effort in assisting the Trustee in this case has been both necessary and beneficial to the Estate and administration of the case. The Applicant's efforts and associated benefits to the Estate include the following:

- Continuing to develop a cash transaction database for three separate bankruptcy entities from six primary bank accounts encompassing disbursements in excess of 3.7 billion for both inter-company and third party transactions.

- Assisting Trustee in meeting his due diligence obligation regarding the analysis of potential recoveries.

(i) **The Experience, Reputation and Ability of the Accountants.** Applicant submits that its accountants and other staff personnel are respected for their ability in accounting and financial consulting services, particularly in regard to bankruptcy situations. Applicants have been retained by numerous debtors-in-possession, trustees, secured creditors and creditors committees in various Chapter 11 and Chapter 7 proceedings and have received favorable comments from the Courts and other parties-in-interest.

(j) **The Undesirability of the Case.** Applicant does not believe that this is or should be a significant factor in the consideration of this Application. Indeed, Applicant does not believe that this case was undesirable.

(k) **The Nature and Length of the Professional Relationship with the Client.** Prior to Applicant's engagement by the Trustee, Applicant had not performed

services for the Debtor or any related entities. Applicant has performed accounting services in numerous other bankruptcies, some of which also involved certain creditors and s involved in this case.

(l) **Award in Similar Cases.** LainFaulkner believes that the fees requested in this case are less than or equal to those which have been awarded in similar cases pending in this District.

## VIII. CONCLUSION

WHEREFORE, PREMISES CONSIDERED, LainFaulkner requests that this Court enter an order approving LainFaulkner's compensation of $163,274.45 for fees and expenses for the period of time from October 1, 2024 through January 31, 2025 and granting LainFaulkner such other and further relief, general or special, at law or in equity, to which it may be justly entitled.

Respectfully submitted,

By: */s/ Jason Rae*
Jason Rae
400 N. Saint Paul, Suite 600
Dallas, TX 75242
(214) 720-1929 Telephone
(214) 720-1450 Facsimile
www.lainfaulkner.com
ACCOUNTANTS FOR CHAPTER 7 TRUSTEE

## PROFESSIONAL CERTIFICATION

I hereby certify (a) that I am the professional with responsibility to verify compliance with the Guidelines for Compensation and Expense Reimbursement of Professionals as promulgated in the United States Bankruptcy Court for the Northern District of Texas ("Guidelines"); (b) I have read the Application; (c) to the best of my knowledge, information and belief, formed after reasonable inquiry, the compensation and expense reimbursement sought is in conformity with the Guidelines; and (d) the compensation and expense reimbursement requested are billed at rates, in accordance with practices, no less favorable than those customarily employed by LainFaulkner and generally accepted by LainFaulkner's clients.

*/s/ Jason Rae*
Jason Rae

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served concurrently with filing by ECF upon all persons who have filed ECF appearances in this case, including the Office of the United States Trustee.

*/s/ Jason Rae*
Jason Rae