

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

The following constitutes the ruling of the court and has the force and effect therein described.

Signed June 4, 2025

_____
**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| IN RE: | § § § § § | |
| **MCCLAIN FEED YARD, INC., et al.,**[1] | § § § § § | CASE NO. 23-20084-SWE-7 |
| **Debtors.** | § | Jointly Administered |

### ORDER GRANTING THE TRUSTEE'S
### MOTION FOR APPROVAL OF COMPROMISE AND SETTLEMENT WITH
### <u>CARR, RIGGS & INGRAM, L.L.C. AND CRI ADVISORS, LLC</u>

CAME ON FOR HEARING the *Trustee's Motion for Approval of Compromise and Settlement With Carr, Riggs & Ingram, L.L.C. and CRI Advisors, LLC* (the "<u>Motion</u>"), filed by Kent Ries, the duly-appointed Chapter 7 trustee (the "<u>Trustee</u>") for the estates (collectively, the

---

[1] The Debtors in these Chapter 7 cases are: McClain Feed Yard, Inc. (Case No. 23-20084-SWE), McClain Farms, Inc. (Case No. 23-20085-SWE), and 7M Cattle Feeders, Inc. (Case No. 23-20086-SWE).

1

"Estates") of McClain Feed Yard, Inc. (Case No. 23-20084-RLJ), McClain Farms, Inc. (Case No. 23-20085-RLJ), and 7M Cattle Feeders, Inc. (Case No. 23-20086-RLJ) (collectively, the "Debtors"), the debtors in the above styled and numbered Chapter 7 bankruptcy case (the "Bankruptcy Cases"), whereby the Trustee seeks approval of that certain settlement (the "Proposed Settlement") with Carr, Riggs & Ingram, L.L.C. ("CRI") pursuant to the *Settlement and Mutual Release Agreement* (the "Agreement") attached as Exhibit "A" to the Motion. Based on the evidence and the Court taking judicial notice where appropriate, the Court makes the following findings of fact and conclusions of law and enters the following Order.

1. The Debtors filed voluntary petitions for relief under Chapter 7 of the Bankruptcy Code on April 28, 2023 (the "Petition Date"), thereby initiating the Bankruptcy Cases and creating the Estates.

2. The Trustee is the duly appointed Chapter 7 trustee of the Estates with the authority, subject to the entry of this Order, to enter into the Proposed Settlement and the Agreement.

3. CRI provided services for the Debtors from 2019 to 2022. Debtors and CRI entered into a series of engagement letters.

4. The Trustee intended to assert the following claims against CRI: (i) knowing participating in breach of fiduciary duties; (ii) common law civil conspiracy; (iii) professional negligence; (iv) an insider preference under the Bankruptcy Code in the amount of $6,300.00 or to recharacterize such transfer as an equity distribution (the "Preference Claim"); and (v) fraudulent transfer claims (the "Fraudulent Transfer Claims") under state law and the Bankruptcy Code to avoid and recover the transfer of funds for the purported accounting services rendered.

5. CRI has denied all liability alleged by the Trustee. Generally, CRI argues that Alabama law controls pursuant to an alleged contractual choice of law provision:

a. in Alabama, the *Hinkle* rule—which states a "[a] person cannot maintain a cause of action if, in order to establish it, he must rely in whole or part on an illegal or immoral act or transaction to which he is a party"—further bars the Trustee's claims, irrespective of the degree in which Debtors were involved in the wrong doing. *See Hinkle v. Railway Express Agency*, 242 Ala. 374, 378, 6 So. 2d 417, 421 (1942);

b. under Alabama's contributory negligence law, if the Debtors proximately caused the injury to any extent, they would be barred from recovery; and

c. professional negligence is a high bar, with CRI's role limited in scope with few professional standards governing its role.

6. For the avoidance of doubt, the Proposed Settlement and the Agreement are not limited to these claims but instead encompass all claims and causes of action that the Estates may have against any of the CRI Parties (as defined in the Agreement), whether asserted or not, whether known or not, and whether suspect or not.

7. CRI's engagement letters required pre-suit mediation, which the Trustee alleges do not apply here. In order to avoid any arguments concerning the application of same, on October 18, 2024, the Trustee served a mediation demand letter on CRI. The parties mediated their disputes on March 10, 2025 before Christopher Nolland. After a full day of mediation, Mr. Nolland made a mediator's proposal to compromise and settle all Estate claims for $5,450,000.00 (the "Settlement Payment"), and other general terms as otherwise reduced to writing and memorialized in the Agreement.

8. By the Motion, the Trustee seeks approval of the Proposed Settlement, including the releases and other terms set forth therein, in exchange for the Settlement Payment and the other consideration under the Agreement.

9. Notice of the Motion and the hearing thereon were sufficient and appropriate and all creditors and parties-in-interest in the Bankruptcy Case have been afforded sufficient process and sufficient time to understand, weigh, and object to the Proposed Settlement and the Agreement.

3

10. The negotiations leading to the Proposed Settlement were extensive and at arms-length.

11. There were no undisclosed agreements, payments, or understandings related to the Proposed Settlement that are not disclosed in the Motion or in the Agreement. There is no collusion. The Proposed Settlement is not a *sub rosa* plan.

12. The Proposed Settlement and the Agreement are proposed in good faith.

13. The Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§157(a)- (b) and 1334. This is a core proceeding as defined under 28 U.S.C. § 157(b). Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

14. The Preference Claim is property of the Estates. *See* 11 U.S.C. §§ 541(a)(3) & 547. When the Preference Claim is settled, it is exhausted and no creditor has a hypothetical preference claim of its own because a preference claim does not exist outside of the Bankruptcy Code, except potentially as an insider fraudulent transfer preference which is a fraudulent transfer claim exhausted by a settlement as otherwise discussed immediately below.

15. The Fraudulent Transfer Claim is property of the Estates. *See* 11 U.S.C. § 541(a)(3), 544 & 548; *In the Matter of MortgageAmerica Corp.*, 714 F.2d 1266, 1275-76 (5th Cir. 1983). When the Fraudulent Transfer Claim is settled, it is exhausted for the benefit of creditors and no creditor may maintain a fraudulent transfer claim of its own. *See In the Matter of Moore*, 608 F.3d 253, 260-62 (5th Cir. 2010); see also *Moore v. Bay*, 284 U.S. 4, 5 (1931).

16. "If a cause of action alleges only indirect harm to a creditor (*i.e.*, an injury which derives from harm to the debtor), and the debtor could have raised a claim for its direct injury under the applicable law, then the cause of action belongs to the estate. Conversely, if the cause of action does not explicitly or implicitly allege harm to the debtor, then the cause of action could not

have been asserted by the debtor as of the commencement of the case, and thus is not property of the estate." *Highland Cap. Mgmt. LP v. Chesapeake Energy Corp. (In re Seven Seas Petroleum, Inc.)*, 522 F.3d 575, 584 (5th Cir. 2008) (quoting *Schertz-Cibolo-Universal City I.S.D. v. Wright (In re Educators Grp. Health Trust)*, 25 F.3d 1281, 1284 (5th Cir. 1994)). The knowing participating in breach of fiduciary duties, common law civil conspiracy, and professional negligence claims are all property of the Estates subject to the Trustee's exclusive control. *See id.*; *In the Matter of S.I. Acquisitions*, 817 F.2d 1142 (5th Cir. 1987) (finding that "the term 'all legal and equitable interests of the debtor in property' is all-encompassing and includes rights of action as bestowed by either federal or state law.").

17. As remedies under state law, they are also remedies that the Trustee, for the Estates, has under his "strong arm" powers of 11 U.S.C. § 544(a). When these claims are settled, they are exhausted for the benefit of all creditors and no creditor may maintain such claims of its own.

18. Accordingly, the Trustee has the sole and exclusive authority to pursue (on behalf of the Estates and all parties-in-interest including creditors) all of the Estate Released Claims (as that term is defined in the Agreement), as well as to settle and release the CRI Parties (as that term is defined in the Agreement) from the Estate Released Claims, on behalf of the Estates and all parties-in-interest including creditors.

19. Bankruptcy Rule 9019 governs the Trustee's proposed settlement of estate causes of action and the granting of an estate release. Under that Rule, the Court should approve a settlement only if it is "fair and equitable and in the best interests of the estate." *In re Foster Mortgage Corp.*, 68 F.3d 914, 917 (5th Cir. 1995). The factors to consider include "(1) the probability of success in the litigation, with due consideration for the uncertainty in fact and law, (2) the complexity and likely duration of the litigation and any attendant expense, inconvenience

and delay, and (3) all other factors bearing on the wisdom of the compromise." *Id*. Such other factors include the reasonable views of creditors, although such views are not binding, and "the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion." *Id*. at 918. The Court need not conduct a mini-trial on the underlying claims; rather, the Court "must apprise itself of the relevant facts and law so that it can make an informed and intelligent decision." *In re Age Ref. Inc.*, 801 F.3d 530, 541 (5th Cir. 2015) (internal quotation omitted).

20.     The Court has apprised itself of the relevant facts and can make an informed and intelligent decision regarding all aspects of the Proposed Settlement. Based on the same, the foregoing factors are met: the Proposed Settlement is fair and equitable and in the Estates' best interests. There is no question concerning the complexity, expense, burden, and delay of the Trustee's claims, especially the Fraudulent Transfer Claims and the professional negligence claim, both of which involve substantial, disputed questions of fact and tests based on factors. Years of delays would likely follow. CRI disputes many, if not most, of the operative facts and law, and there is substantial uncertainty as to how the trier of fact may find those facts. The claims are likely to come down to a "battle of the experts," which is very difficult to predict.

21.     There is also no question that the Proposed Settlement is the product of extensive, arms-length bargaining and the result of a mediator's proposal made by a seasoned mediator with over thirty years' experience. There is no fraud or collusion.

22.     The Trustee has properly employed his business judgment in entering into the Proposed Settlement and the Agreement. The Settlement Amount is well within the range of reason and provides a material benefit to the Estates and their creditors.

23. All of the relief requested in the Motion and provided in this Order is lawful and appropriate.

24. With the approval of the Proposed Settlement, the execution of the Agreement, and the closing of the Agreement, all claims and causes of action of the Debtor and the Estates, including without limitation the Preference Claim, the Fraudulent Transfer Claim, and the knowing participation in breach of fiduciary duties, common law civil conspiracy, and professional negligence claims, as against any of the Released Parties, will be settled in full and exhausted such that no creditor of the Debtors or the Estate would have any remaining claim, if such creditor had any such claim at all, that could be asserted.

ACCORDINGLY, based on the foregoing findings of fact and conclusions of law, and all preconditions to the entry of this Order being satisfied, it is hereby:

ORDERED that the Motion is GRANTED; it is further

ORDERED that the Proposed Settlement and the Agreement are APPROVED in their entirety; it is further

ORDERED that the Trustee is authorized and directed to enter into the Agreement and to otherwise effectuate all provisions of the Agreement, and that the Agreement shall control and shall bind the Trustee, the Debtors, and the Estates, including all parties-in-interest; it is further

ORDERED that, subject to the Conditions Precedent set forth in the Agreement (including the Settlement Payment), all releases in the Agreement shall be in full force and effect and shall control according to their terms; it is further

ORDERED that all creditors and other parties-in-interest in the Bankruptcy Case are prohibited from asserting any of the Estate Released Claims (as that term is defined in the

Agreement) against the CRI Parties (as that term is defined in the Agreement) in this or any other proceeding; it is further

ORDERED that the Court shall retain jurisdiction to the maximum extent possible to interpret and enforce this Order and the Agreement.

**SO ORDERED.**

# # # End of Order # # #

**Order submitted by:**

Alan Dabdoub
  State Bar No. 24056836
  adabdoub@lynnllp.com
P. Campbell Sode
State Bar No. 24134507
csode@lynnllp.com
**LYNN PINKER HURST & SCHWEGMANN LLP**
 2100 Ross Avenue, Suite 2700
 Dallas, Texas 75201
 Telephone:  214-981-3800
 Facsimile:  214-981-3839

Hudson M. Jobe
  State Bar No. 24041189
  hjobe@jobelawpllc.com
**JOBE LAW PLLC**
 6060 North Central Expressway, Suite 500
 Dallas, Texas 75206
 Telephone:  (214) 807-0563

***SPECIAL COUNSEL FOR THE TRUSTEE***