Aaron M. Kaufman (Texas Bar No. 24060067)
Skyler Y. Stucky (Texas Bar No. 24079411)
**GRAY REED**
1601 Elm Street, Suite 4600
Dallas, TX 75201
Telephone:  (214) 954-4135
Facsimile:  (214) 953-1332
Email:      akaufman@grayreed.com
            sstuckey@grayreed.com

*Counsel to Community Financial Services Bank*

Keith J. Larson (admitted *pro hac vice)*
**MORGAN POTTINGER MCGARVEY**
401 South Forth Street, Suite 1200
Louisville, KY 40202
Telephone:  (502) 560-6758
Facsimile:  (502) 585-3498
Email:      kjl@mpmfirm.com

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 7 |
| | § | |
| MCCLAIN FEED YARD, INC., *et al.*,[1] | § | Case No. 23-20084-SWE |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

**OBJECTION TO THE TRUSTEE'S AMENDED MOTION
TO COMPEL CFSB'S COMPLIANCE WITH RULE 2004 DOCUMENT SUBPOENA
[RE: DOCKET NO. 386]**

Community Financial Services Bank ("CFSB") files this objection (the "Objection") the

*Trustee's Amended Motion to Compel CFSB's Compliance with Rule 2004 Document Subpoena*

[Docket No. 386] (the "Motion to Compel"),[2] and would respectfully show the following:

**I.  Preliminary Statement**

1.      The Truste's Motion to Compel appears to CFSB to have been filed for an improper

purpose—*i.e.,* to color the Court's view of CFSB while the Court has taken CFSB's motion to

---

[1] The Debtors in these jointly administered chapter 7 cases, along with their case numbers, are: McClain Feed Yards, Inc. (Case No. 23-20084-SWE); McClain Farms, Inc. (Case No. 23-20085-SWE); and 7M Cattle Feeders, Inc. (Case No. 23-20086-SWE).

[2] The Trustee's initial motion was filed on October 20, 2025, at Docket No. 381, but it was amended on November 5, 2025, in response to CFSB's Bankruptcy Rule 9011 safe harbor letter served on October 27, 2025, pointing out several factual and legal misstatements and omissions in the initial motion.  The amended motion did *just* enough to avoid the need to seek sanctions for Bankruptcy Rule 9011 violations, but it still lacks factual and legal merit.

4924-7058-1884

dismiss the adversary proceeding under advisement.  The motion should be denied for this reason alone.

2.      But, even on the merits, there are none.  The motion can and should be denied.

3.      Rule 2004 is a powerful tool that allows the Trustee to conduct broad discovery in connection with a debtor's assets and liabilities.  In this case, the Trustee used this tool to his advantage for nearly two years before commencing multiple lawsuits against various investors and financial institutions.  CFSB cooperated with the Trustee and produced thousands of pages of financial records that the Trustee's counsel advised CFSB he was seeking.  This production followed several "meet and confers" among the parties, and at least one follow-up request by the Trustee for additional information from CFSB.  Critically, there were no pending follow-up requests or depositions scheduled at the time the Trustee commenced his lawsuit against CFSB on March 14, 2025.

4.      The broad scope of Rule 2004 is not limitless, and it does not override the protections of Part VII of the Bankruptcy Rules.  *See generally In re Enron Corp.*, 281 B.R. 836, 840–41 (Bankr. S.D.N.Y. 2002) ("Courts have imposed limits on the use of Rule 2004 examinations where the purpose of the examination is to abuse or harass, [] or under the well recognized rule that once an adversary proceeding or contested matter is commenced, discovery should be pursued under the Federal Rules of Civil Procedure and not by Rule 2004") (internal citations omitted).  Ten months after serving the Rule 2004 subpoena on CFSB (and others), the Trustee sued CFSB (and others).  Then, nearly eight *additional* months later, and *five days* after serving his initial set of 61 requests for production under Bankruptcy Rule 7034 (the "RFPs") in the adversary proceeding, the Trustee filed this Motion to Compel.  The Trustee cannot reasonably dispute that the information he seeks through Rule 2004 is wholly redundant of the 61 RFPs served in the adversary proceeding.  CFSB is actively producing documents responsive to these RFPs.

2

4924-7058-1884

At this advanced stage in the litigation and bankruptcy cases, Rule 2004 is not the proper tool for such discovery.

5.       The Trustee is not prejudiced by the denial of the Motion to Compel.  Indeed, the Trustee has already served 61 RFPs on CFSB (and even more on the other defendants in the Adversary Proceeding).   CFSB has already begun to respond to the Trustee's RFPs in the Adversary Proceeding.  The Motion to Compel was unnecessary, unwarranted, and, for the reasons discussed herein, it should be denied.

## II.  Jurisdiction and Venue

6.       The Court has jurisdiction over the Debtors' jointly administered chapter 7 cases (collectively, the "Bankruptcy Cases") pursuant to 28 U.S.C. § 1334.   Matters concerning prelitigation discovery are governed by Bankruptcy Rule 2004 and the Local Bankruptcy Rules of the United States Bankruptcy Court of the Northern District of Texas (the "Local Rules"). Rule 2004 examinations are core to the administration of the estate and, thus, are core proceedings pursuant to 28 U.S.C. § 157(b)(2).   Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.   The bases for the relief requested herein are 11 U.S.C. § 105(a) and Bankruptcy Rule 2004.

## III.  Factual Background

**A.      Case Filing and CFSB's Prior Cooperation with the Trustee**

7.       The Court may be familiar with the case background.  The following is relevant to the present Motion to Compel.  The Debtors commenced these bankruptcy cases on April 28, 2023 (the "Petition Date").   The Trustee was appointed on or shortly after the Petition Date and subsequently obtained an order jointly administering these Bankruptcy Cases.

8.       The Trustee initially retained Quilling Selander, as counsel, and LainFaulkner, as financial advisors, to assist in his preliminary investigations into the Debtors' financial history.

3

4924-7058-1884

While the Motion to Compel references a "heavily resisted" motion to obtain discovery from individual creditors and investors, this history is wholly irrelevant to CFSB.

9. As the Trustee acknowledges in his amended Motion to Compel, CFSB did not resist or oppose the Trustee Rule 2004 discovery efforts. On the contrary, before the Trustee serve any Rule 2004 subpoenas on CFSB, CFSB had already voluntarily produced over 1,540 pages of the Debtors' bank records to the Trustee. This fact is omitted from the initial Motion to Compel, along with several other key facts that would undermine the Trustee's false narrative that CFSB resisted discovery to capitalize on its motion to dismiss.

10. Below is a more complete history of the Trustee's Rule 2004 discovery efforts from CFSB, along with CFSB's responsiveness to such requests. The Trustee omits much of this history from the initial Motion to Compel, which CFSB believes was intentional and objectively unreasonable under the circumstances.[3]

   a. August 24, 2023: The Trustee first contacted counsel for CFSB to obtain online access to the Debtors' accounts with CFSB. **Exhibit A-1**.

   b. August 29, 2023: Counsel for CFSB responded to the Trustee explaining that online access was unavailable because the accounts were closed. Counsel added, "*CFSB, however, wants to cooperate with the Trustee's request*, so it can produce the statements for you and also put those statements into an Excel doc where they can be sorted, etc. Is that something you're interested in receiving?" *Id.* (emphasis added).

   c. October 19, 2023: CFSB uploaded PDF account statements and CSV files (where available) for the following Debtor bank accounts:

      - Account ending x3786 (closed 01/2023) – 1,456 pages

      - Account ending x8899 (closed 06/2017) – 1,589 pages

---

[3] As noted above, the initial Motion to Compel was so "over the top" with its overt misrepresentations and omissions of critical facts that CFSB felt the need to serve a Rule 11 safe harbor letter on October 27, 2025—one week after the motion was filed. In response to that safe harbor letter, the Trustee elected to amend the Motion to Compel rather than withdraw it. At this time, CFSB does not seek sanctions for such violations, as the Trustee appears to have amended the Motion to Compel *just enough* to avoid sanctions this time. But the Motion to Compel remains on the fringes of frivolity, as the discussion below makes clear.

4924-7058-1884

d.  January 12, 2024:   Despite receiving no further communications since October 2023, the Trustee sent an e-mail to counsel for CFSB suggesting that his patience with CFSB was "well overdue" as a result of the bank's inability to provide online access to the Debtors' closed bank accounts.  The undersigned counsel for CFSB responded the same day attempting to resolve the dispute and to inquire which documents the Trustee believes he had requested but not received from CFSB.  **Exhibit A-2**.

e.  February 9, 2024:  During a phone conference among CFSB and the Trustee on January 12, 2024, the Trustee requested evidence of the closing of Account x3786, along with certain account detail.  CFSB gathered and produced the requested information to the Trustee on February 9, 2024.  **Exhibit A-3**.

f.  *Three (3) months passed without further communications from the Trustee regarding need for supplemental production.*

g.  May 1, 2024:  The Trustee filed a motion for *ex parte* relief to serve Rule 2004 subpoenas on three categories of "examinees," including broker/buyers, banks, and accounting firms.  **Exhibit A-4** [Docket No. 237].  CFSB was not the sole (or even the primary) target of these subpoenas.

h.  May 7, 2024:  The Court granted the Trustee's *ex parte* motion.  **Exhibit A-5** [Docket No. 241].

i.  May 8–9 , 2024:  The Trustee's Counsel e-mailed the undersigned counsel for CFSB to request its acceptance of service.  Counsel for CFSB responded the same day:  "My client confirmed that they have already provided much (if not all) of what would be responsive to your subpoena.  I have authorization from my client to accept service on behalf of CFSB, but we will need to schedule a meet and confer in short order to assess what items remain outstanding.  We don't want to have to file a motion to quash, but we also don't want to duplicate our efforts."  Counsel exchanged e-mails to confirm that CFSB had already produced 1,544 pages of records, would accept service of the subpoena, and would schedule a meet and confer to discuss supplemental productions to comply with the subpoena.  **Exhibit A-6**.

j.  May 10, 2024:  Trustee's Counsel served the Bankruptcy Rule 2004 subpoena on counsel for CFSB.  **Exhibit A-7**.

k.  May 14, 2024:  The undersigned counsel for CFSB held a meet and confer with Greg Sudbury of Quilling Selander discuss the subpoena and the documents the Trustee asked CFSB to produce in response thereto.  *See* **Exhibit A-6**.

l.  May 22, 2024:  CFSB served its substantive objections to the Rule 2004 subpoena via e-mail to counsel for the Trustee.  **Exhibit A-8**.  The parties conferred again via phone regarding the planned production and the status of the Trustee's investigation.

5

4924-7058-1884

m. June 24, 2024:  Trustee's Counsel sent an e-mail asking LainFaulkner, the Trustee's financial advisors, to provide an upload link for CFSB to produce the agreed-upon documents by June 28, 2024.  Trustee's Counsel confirmed the parties' prior discussions:  "Per the conference, CFSB was going to obtain and provide information re: (1) beginning of banking relationship (start dates for all responsive accounts); (2) how data is stored ; and (3) suggestions re: what needs to be included in protective order for Debtor Affiliates.  Please advise of the name of account holder, account number, and beginning date of each Debtor and Debtor Affiliate Account or Loan.  Please also advise of what steps CFSB has taken with respect to notifying the Debtor Affiliates, and the remainder of the items CFSB was to advise on following the 5/14/24 conference. I will be in touch separately to address the objections in the 5/22/24 letter." **Exhibit A-9**.

n. June 26, 2024:  CFSB responded to the Trustee's prior questions from June 24, 2024, and confirmed that CFSB will upload its prior production (CFSB to Trustee 000001–001541 and CFSB to Trustee 001542–001544) using the LainFaulkner upload link provided on June 24, 2024, and that the supplemental production would begin on June 28, 2024, as agreed.  **Exhibit A-10**.

o. June 26, 2024:  Trustee's Counsel followed up to inquire about CFSB's ability to produce "remote detail" for the Debtor Accounts for the 4-year period from 2018 through the Petition Date.  CFSB's counsel immediately confirmed that such detail would be produced on June 28, 2024, as previously discussed. **Exhibit A-11**.

p. June 28, 2024: CFSB produced documents with the following Bates numbers: CFSB to Trustee 001545–007631 and reproduced the prior set of production CFSB to Trustee 000001–001544.

q. July 2, 2024:  CFSB produce additional documents with the following Bates numbers:  CFSB to Trustee 007632–008151.

r. *Eight (8) more months passed without further communication from the Trustee regarding any deficiencies in CFSB's responses to the Rule 2004 subpoena.*

s. March 7, 2025:  Trustee's Counsel requested 18 additional check or wire images within 10 days, or by March 17, 2025.  **Exhibit A-12**.

t. March 13, 2025:  CFSB produced the requested check images (front and back) with the following Bates numbers:  CFSB to Trustee 008152–008170. **Exhibit A-13**.

u. March 14, 2025: Trustee commenced lawsuit against CFSB and others. [Adv. Proc. No. 25-2005-swe, now consolidated into Adv. Proc. No. 24-2007].

v. March 17, 2025: Trustee's Counsel e-mailed to request CFSB's acceptance of service of the original complaint filed in the Adversary Proceeding (defined below).

4924-7058-1884

w.  March 20, 2025: CFSB agreed to accept service, and the Trustee agreed to extend CFSB's answer date of May 19, 2025.

x.  March 28, 2025:  Trustee's Counsel circulated a proposed scheduling order, and CFSB responded with proposed changes on April 1, 2025.  **Exhibit A-14**.

y.  April 29, 2025:  Approximately ***six weeks after commencing the Adversary Proceeding***, Trustee's counsel e-mailed CFSB's counsel to request additional documents pursuant to the previously served Rule 2004 subpoena.   The undersigned counsel immediately declined the request, citing the pending proceeding rule.  **Exhibit A-15**.

z.  May 2, 2025:  The undersigned counsel for CFSB sent case law to Trustee's Counsel outlining the contours of the "pending proceeding rule" and supporting its position that Bankruptcy Rule 2004 was no longer applicable.  *Id*.  The parties have held several meet and confer sessions by video conference over the past several months.  To date, no resolution has been reached.[4]

aa.  May 6, 2025:  Trustees' Counsel circulated a new proposed scheduling order, seeking to expedite the Initial Disclosure deadline from July 15, 2025 (as initially proposed by Trustee's Counsel on March 28, 2025), to *May 16, 2025—* only 10 days later, and before the stipulated answer deadline.  CFSB rejected the change and responded accordingly.  **Exhibit A-16**.

bb. Since May 6, 2025, the Trustee has amended his complaint against CFSB (twice), and CFSB has filed a motion to dismiss the Adversary Proceeding, which remains under advisement.  The Adversary Proceeding was consolidated, and a scheduling order was entered.  Most notably, the Trustee served his first set of RFPs on CFSB on October 15, 2025, and CFSB served its responses and objections on November 14, 2025.  On the same date, CFSB produced over 10,000 pages of documents as its initial production, and has proposed to continue rolling productions to the Trustee every 2-3 weeks thereafter.  In short, the Motion to Compel serves no purpose, as the Trustee is receiving the same documents through his Rule 7034 RFPs, which is precisely how the rules should operate in the face of a pending adversary proceeding.

---

[4] This was not the end of discussions among counsel regarding the Trustee's threatened motion to compel under Bankruptcy Rule 2004.  Trustee's Counsel sporadically raised the issue with CFSB over the subsequent several months.  Each time, CFSB reiterated its position that Bankruptcy Rule 2004 was the wrong method for compelling discovery from CFSB for the pending adversary proceeding.  The Motion to Compel includes the most recent exchange among counsel in October 2025 where CFSB offered to produce the requested documents within 21 days of entry of an agreed stipulation and protective order.  Trustee's counsel rejected this proposal, opting instead to serve RFPs under Bankruptcy Rule 7034 (which is the applicable rule) *and* to file the Motion to Compel under Bankruptcy Rule 2004 (which is not the applicable rule).

4924-7058-1884

**B.      The Motion to Compel**

11.      As noted above, the Trustee commenced an adversary complaint against CFSB and others on March 14, 2025.  *See* Adv. Proc. No. 25-2005, now consolidated with Adv. Proc. No. 24-2007 (the "Adversary Proceeding").  The Trustee has since amended his complaint twice,[5] and CFSB has moved to dismiss the Second Amended Complaint.  Following a hearing on CFSB's motion to dismiss, held on September 15, 2025, the Court took the matter under advisement.  The matter remained under advisement as of the filing of the Motion to Compel and this Objection.  For the reasons detailed herein, CFSB believes the Motion to Compel is without merit and filed for the primary (if not sole) purpose of attempting to color the Court's view as it rules on CFSB's motion to dismiss.

12.      CFSB raised the following concerns with the Trustee regarding his initial Motion to Compel:

   a. The initial Motion to Compel mischaracterized the Debtors' 2021 payoff of loans to CSFB as a "sale."  This mischaracterization was corrected in the amended Motion to Compel.

   b. Without any support, the initial Motion to Compel contends that CFSB acted nefariously by "fortuitously" selling its loans, because "[CFSB] most likely knew Brian McClain better than anyone."  This rhetoric was also toned down slightly in the amended Motion to Compel.

   c. The initial Motion to Compel omitted and misrepresented CFSB's prelitigation cooperation with the Trustee and his professionals from August 2023 through the commencement of the Adversary Proceeding.

   d. To date, the Trustee and Trustee's counsel have declined to indicate which documents the Trustee believes he is entitled to obtain under a Rule 2004 subpoena so that he may use them for purposes *other* than the Trustee's lawsuit against CFSB.

   e. The initial Motion to Compel failed to apprise this Court that, five days before the filing of the Motion to Compel, the Trustee served 61 RFPs to CFSB in the Adversary Proceeding.  The applicability of Bankruptcy Rule 7034 to the

---

[5] *See* Adv. Proc. No. 25-2005, Doc. No. 48 (the "Second Amended Complaint").

4924-7058-1884

Adversary Proceeding renders the need for further Rule 2004 discovery unnecessary. On information and belief, the sole purpose of the Motion to Compel was to harass CFSB and promote a new, false narrative to this Court regarding CFSB.

f. The initial Motion to Compel knowingly misstated the "pending proceeding rule" applicable to the Trustee's Rule 2004 discovery, and attempted to establish a factual record that the Trustee and Trustee's counsel knew was unsupported by any evidence. CFSB's counsel has spent several months professionally engaged with Trustee's counsel in an effort to persuade them that this Motion to Compel would amount to a frivolous effort. Even after filing the initial Motion to Compel and receiving a Rule 11 safe harbor letter, the Trustee simply amended his motion and, to date, has declined to withdraw it.

13. Following CFSB's service of a Rule 11 safe harbor letter on October 27, 2025, the Trustee amended his motion to tone down the rhetoric, qualify some statements, and do just enough to remove the risk of sanctions. But while CFSB is not presently seeking sanctions for the Trustee's initial Motion to Compel which violated Bankruptcy Rule 9011(b), the Motion to Compel remains wholly without merit and should be denied.

14. On November 14, 2025, CFSB served its responses and objections to the Trustee's first set of 61 RFPs, and produced an initial set of over 10,000 pages of documents, including a reproduction of the documents previously produced to the Trustee in response to the duplicative requests made under Rule 2004. In addition to the initial production, CFSB has attempted to confer with the Trustee in hopes of agreeing upon a reasonable schedule for CFSB to complete a rolling production process in response to the first set of RFPs.[6]

15. To date, the Trustee has refused to withdraw the Motion to Compel, despite being advised by CFSB (numerous times) that the overwhelming weight of authority renders Bankruptcy

---

[6] CFSB is still collecting documents and communications potentially responsive to the Trustee's RFPs. As of the filing of this Objection, CFSB has collected over 300,000 communications and documents that will require review for responsiveness, privilege, and confidentiality. This process will take several weeks, if not months. This level of data collection was not done previously in connection with the Rule 2004 for the reasons discussed more fully herein.

9

4924-7058-1884

Rule 2004 inapplicable to the Trustee's efforts to obtain discovery from CFSB, and further knowing that CFSB is actively producing documents in response to the Trustee's RFPs.

16.     In other words, even if Bankruptcy Rule 2004 applied to the current circumstances (which it does not), the need for such relief was rendered moot when the Trustee served its first set of Bankruptcy Rule 7034 Requests for Production.

### IV.  Arguments and Authorities

**A.     The Weight of Authority Holds that Bankruptcy Rule 2004 Is No Longer Proper.**

17.     Rule 2004 generally allows broad-based discovery, often considered a "fishing expedition" to obtain information related to a debtor's assets, liabilities, and financial condition. *See, e.g., In re Correra*, 589 B.R. 76, 109 (Bankr. N.D. Tex. 2018).  But this rule is not without its limits.

18.     "Courts have imposed limits on the use of Rule 2004 examinations where the purpose of the examination is to abuse or harass, or under the well recognized rule that once an adversary proceeding or contested matter is commenced, discovery should be pursued under the Federal Rules of Civil Procedure and not by Rule 2004." *In re Enron Corp.*, 281 B.R. 836, 840–41 (Bankr. S.D.N.Y. 2002) (citing *inter alia In re Mittco, Inc.*, 44 B.R. 35, 36 (Bankr. E.D. Wis. 1984); *In re Bennett Funding Gp., Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996); *accord 2435 Plainfield Ave., Inc. v. Township of Scotch Plains (In re 2435 Plainfield Ave., Inc.)*, 223 B.R. 440, 455–56 (Bankr. D.N.J.1998)).

19.     The overwhelming weight of authorities confirms that Rule 2004 is not appropriate in the context of a pending adversary proceeding. *See, e.g., In re Dinubilo*, 177 B.R. 932, 939–40 (E.D.Cal.1993).  In contrast to the Federal Rules of Civil Procedure, a party responding to a Rule 2004 subpoena "has no right to be represented by counsel except at the discretion of the court;

4924-7058-1884

there is only a limited right to object to immaterial or improper questions; there is no general right to cross-examine witnesses; and no right to have issues defined beforehand." *Id.*

20.     "Many courts have expressed distaste for efforts of parties to utilize [Rule] 2004 examinations to circumvent the restrictions of the [Federal Rules of Civil Procedure] in the context of adversary proceedings or contested matters." *In re Valley Forge Plaza Assocs.*, 109 B.R. 669, 675 (Bankr.E.D.Pa.1990) (citations omitted).

21.     "Based on Rule 2004's substantive differences, courts have expressed concern that Rule 2004 examinations not be used as a tactic to circumvent the safeguards of the Federal Rules of Civil Procedure." *See In re Enron Corp.*, 281 at 841 (citing *See 2435 Plainfield*, 223 B.R. at 456).

22.     In short, wide ranging Rule 2004 discovery was available to the Trustee before the litigation.  In theory, he can still use Rule 2004 discovery for purposes unrelated to the pending litigation.  But the overwhelming weight of authorities discussed above makes clear that Rule 2004 discovery is unavailable to improve the Trustee's position vis-à-vis CFSB in the pending Adversary Proceeding.  This point is made even clearer in light of the Trustee's service of 61 RFPs under Bankruptcy Rule 7034, to which CFSB is actively responding.  For these reasons, the Court can and should deny the Motion to Compel.

**B.     The Two Cases Cited in the Motion to Compel Do Not Warrant An Exception to the General Rule Articulated Above.**

23.     Unpersuaded by the great weigh of authority discussed above (all of which were provided to the Trustee several months ago), and with a complete disregard for the facts and circumstances of the present dispute (which only highlight the need for the protections afforded to CFSB under Part VII of the Federal Rules of Bankruptcy Procedure), the Trustee attempts to draw a distinction from the "pending proceeding rule" by suggesting that his prelitigation Rule 2004

11

4924-7058-1884

subpoena is somehow exempt from the general rule.  In support of this purported exemption, the Trustee relies on two cases from outside the Fifth Circuit with completely different facts.

24.     As the Court can see from the facts of those two cases, no such exemption exists, and the purported distinction alleged by the Trustee is one without any legal significance.  Neither of the two cases cited in the Motion to Compel is factually similar to the present set of facts, and neither holding would justify such an extreme remedy as to obligate CFSB to supplement its prelitigation responses to the Trustee's Rule 2004 subpoena *while simultaneously* obligating CFSB to respond to the Trustee's overlapping RFPs served in the pending Adversary Proceeding.

25.     *First*, the Motion to Compel cites *Camferdam* for the proposition that the "pending proceeding rule" is discretionary and that an exception may apply where a prior Rule 2004 subpoena was pending at the time the adversary proceeding commenced.  *See* Motion to Compel at p. 10 (citing *In re Camferdam*, 597 B.R. 170, 174 (Bankr. N.D. Fla. 2018)).  However, this was not the Court's core holding in *Camferdam*.  Rather, the Court held that the circumstances of that case—which are readily distinguishable from the present case—warranted a discretionary exception to the general rule that litigants cannot circumvent discovery rules using a prelitigation Rule 2004 subpoena.  *See id.*

26.     In *Camferdam*, Raymond James obtained a prepetition arbitration award against the debtor, who was a former investment advisor employed by Raymond James.  *Id.* at 171–72.  Like the Trustee did here, Raymond James had sought Rule 2004 discovery from the debtor before commencing an adversary proceeding against him.  *See id.* at 173.  Before the debtor finished producing documents responsive to Raymond James's request, Raymond James filed an adversary proceeding to object to the debtor's discharge.  *Id.* The ***next day*** after commencing its lawsuit, Raymond James filed a motion to compel the debtor's completion of his prelitigation responses to the Rule 2004 examination.  *Id.*  In allowing Raymond James to complete its discovery, the Court

4924-7058-1884

noted that such discovery ***was limited*** to obtaining the debtor's "book of business." *Id.* While the debtor argued that the document request was encompassed within the adversary proceeding, the Court found this to be only partially true. *Id.* at 174. The Court found that the primary purpose for obtaining this discovery was to assess the value of the debtor's non-exempt assets, which was fair game for Rule 2004 and ***not directly related to Raymond James's dischargeability action***. *Id.*

27. The present facts are readily distinguishable from the facts in *Camferdam*. Unlike the circumstances in *Camferdam*, CFSB responded to the Trustee's follow-up requests for documents under its Rule 2004 subpoena ***prior*** to the Trustee's filing of the Adversary Proceeding. Further, in the present case, the Trustee did not file his Motion to Compel *the next day* after filing the Adversary Proceeding, as Raymond James did in *Camferdam*. Rather, the Trustee waited over 15 months to file the Motion to Compel, which was also five (5) days after serving RFPs in the Adversary Proceeding.[7] Moreover, the Trustee does not and cannot genuinely dispute that the documents he seeks to compel from CFSB through this motion are entirely encompassed within the document he is seeking through the RFPs served in the pending Adversary Proceeding.

28. In other words, the limited circumstances that warranted a discretionary exception to the "pending proceeding rule" in *Camferdam*—a non-binding decision from Florida in 2018— are not present in this case. In *Camferdam*, Raymond James sought limited discovery under Rule 2004 and was diligent about notifying the debtor and the Court of the open Rule 2004 discovery issues immediately upon commencing its adversary proceeding against the debtor. In

---

[7] As noted above, CFSB produced most of its documents to the Trustee on June 28, 2024, following several meet and confers. The Trustee then followed up eight (8) months later on March 7, 2025, to request additional images. **Exhibit A-12**. CFSB produced such images six (6) days later on March 13, 2025. **Exhibit A-13**. The Trustee commenced the Adversary Proceeding the next day on March 14, 2025. The first time the Trustee even made CFSB aware of its potential outstanding obligations to respond to the Rule 2004 subpoena was April 29, 2025—nearly *six weeks* after commencing the Adversary Proceeding. **Exhibit A-15**. The Motion to Compel was then filed six (6) months later, on October 20, 2025.

4924-7058-1884

the present case, however, the Trustee's Rule 2004 discovery is nowhere near as limited, and the Trustee's eight month delay in filing this Motion to Compel has allowed the Adversary Proceeding to progress to the point that the Trustee's RFPs have now rendered the need for Rule 2004 relief completely unnecessary and improper. The Court can reject *Camferdam* as inapplicable.

29.  *Second*, the Motion to Compel cites the *Combs* decision for the general proposition that the "pending proceeding rule" cannot be used as "a sword." *See* Motion to Compel at p. 12 (citing *In re Combs*, 668 B.R. 896 (Bankr. M.D. Fla. 2025)). But the Trustee's reliance on *Combs* is materially misplaced.

30.  Unlike the present dispute where the Trustee is seeking discovery from a defendant in the Adversary Proceeding, the target for Rule 2004 discovery in the *Combs* case was not a party to the litigation—it was the debtor's wife. *Id.* at 907 ("The Court should not permit a person to avoid an examination set weeks prior to the commencement of an adversary proceeding to skip the examination and later object to attendance when such is compelled, using the pending proceeding rule as a sword.").

31.  Moreover, unlike the Trustee here, the movant in *Combs* was not seeking documents from the debtor's wife; it simply sought to take her deposition, which had been scheduled before the movant commenced its lawsuit against the debtor. *Id.* at 907–08. Thus, the *Combs* decision offers no guidance here and can be disregarded as wholly inapplicable.

32.  In sum, the Trustee's reliance on *Camferdam* and *Combs* for an exception to the prior proceeding rule is misplaced. The Trustee simply refuses to accept CFSB's well-intentioned (and accurate) explanation that Bankruptcy Rule 7034, not Bankruptcy Rule 2004, is the proper mechanism for the discovery he is seeking from CFSB.

14

33.     As noted above, the Trustee served his first set of Bankruptcy Rule 7034 RFPs on CFSB on October 15, 2025, five days before filing the initial Motion to Compel.[8]  The Trustee commenced its Adversary Proceeding against CFSB on March 14, 2025, more than seven months before serving RFPs or filing the Motion to Compel.  The ability to obtain these documents under Rule 7034 should have ended all further discussions regarding Rule 2004. Unfortunately, it did not, and now the Trustee has forced CFSB to incur substantial legal fees to file this Objection.

34.     In all, the Motion to Compel strikes CFSB as a transparent effort to promote a false narrative to the Court, with the effect of forcing CFSB to continue spending resources responding to the Trustee's meritless pleadings.  Those resources would have been better served expediting CFSB's document review and production.  This litigation tactic is neither proper nor productive, and CFSB hopes to avoid these needless disputes in the future.

35.     To be clear, CFSB has spent many hours over the past several months attempting to resolve this dispute without escalation.  To date, the Trustee has not articulated for CFSB (or this Court) what documents he can only obtain through his Rule 2004 subpoena and Motion to Compel that he cannot obtain through his RFPs and Bankruptcy Rule 7034.  The answer is simple—none.

36.     CFSB provided the Trustee and Trustee's counsel a reasonable opportunity to withdraw the Motion to Compel.  Although the Trustee amended his motion to tone down some of the improper rhetoric and to clear up some of the factual and legal inaccuracies contained in the

---

[8] CFSB is already in the process of compiling documents and responding to the Trustee's 61 RFPs.  CFSB served its responses and objections on November 14, 2025, along with its initial set of over 10,000 document productions.  CFSB is still in the process of collecting documents and communications to review and produce in response to these 61 RFPs.  Thus far, CFSB has collected approximately 300,000 documents and communications to be reviewed for potential production.  The process for reviewing these documents and communications will take weeks, if not months, of time, which is why CFSB has proposed to provide rolling sets of production on a regular interval.  To date, the Trustee has not accepted CFSB's proposals and appears to be laying a foundation to file another unnecessary and meritless motion to compel.  CFSB truly hopes to avoid future discovery disputes.

15

4924-7058-1884

initial motion, the amended Motion to Compel still lacks legal and factual merit, and CFSB

requests denial as such and such other relief as the Court finds warranted under the circumstances.

## V. **Prayer**

WHEREFORE, CFSB respectfully requests that the Court enter an Order denying the

Motion to Compel; and (ii) granting such other relief as may be warranted under the circumstances.

Respectfully submitted this 28th day of November, 2025.

**GRAY REED**
By:   */s/ Aaron M. Kaufman*
Aaron M. Kaufman
Texas Bar No. 24033684
Skyler Y. Stuckey
Texas Bar No. 24079411
1601 Elm Street, Suite 4600
Dallas, TX 75201
Telephone:     (214) 954-4135
Facsimile:     (214) 953-1332
Email:     akaufman@grayreed.com
sstuckey@grayreed.com

-and-

**MORGAN POTTINGER MCGARVEY**
Keith J. Larson (admitted *pro hac vice)*
401 South Forth Street, Suite 1200
Louisville, KY 40202
Telephone:     (502) 560-6758
Facsimile:     (502) 585-3498
Email:     kjl@mpmfirm.com

*Counsel to Community Financial Services Bank*

16

4924-7058-1884

## Certificate of Service

I certify that on November 28, 2025, I caused a copy of the foregoing document to be served via electronic mail on the counsel listed below, and via the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas.

**LYNN PINKER HURST & SCHWEGMANN LLP**
Alan Dabdoub (adabdoub@lynnllp.com)
Campbell Sode (csode@lynnllp.com)
Farsheed Fozouni (ffozouni@lynnllp.com)
Nathaniel Plemons (nplemons@lynnllp.com)
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: 214-981-3800
Facsimile: 214-981-3839

**JOBE LAW PLLC**
Hudson M. Jobe (hjobe@jobelawpllc.com)
6060 North Central Expressway, Suite 500
Dallas, Texas 75206
(214) 807-0563

*Counsel for the Trustee*

/s/ Aaron M. Kaufman
Aaron M. Kaufman

17

4924-7058-1884