HUDSON M. JOBE
JOBE LAW PLLC
6060 NORTH CENTRAL EXPRESSWAY,
SUITE 500
DALLAS, TEXAS 75206

ALAN DABDOUB
LYNN PINKER HURST & SCHWEGMANN LLP
2100 ROSS AVENUE, SUITE 2700
DALLAS, TEXAS 75201

SPECIAL COUNSEL TO THE TRUSTEE

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| | § | |
| | § | |
| **MCCLAIN FEED YARD, INC., et al.,**[1] | § | **CASE NO. 23-20084-swe-7** |
| | § | |
| | § | |
| | § | |
| | § | |
| **Debtors.** | § | **Jointly Administered** |

**NO HEARING WILL BE CONDUCTED HEREON UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT LUBBOCK CLERKS OFFICE AT 1205 TEXAS AVENUE, SUITE 306, LUBBOCK, TEXAS 79401-4002 BEFORE CLOSE OF BUSINESS ON MAY 11, 2026, WHICH IS AT LEAST 21 DAYS FROM THE DATE OF SERVICE HEREOF.**

**ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK, AND A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY PRIOR TO THE DATE AND TIME SET FORTH HEREIN. IF A RESPONSE IS FILED A HEARING MAY BE HELD WITH NOTICE ONLY TO THE OBJECTING PARTY. IF NO HEARING ON SUCH NOTICE OR MOTION IS TIMELY REQUESTED, THE RELIEF REQUESTED SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT OR THE NOTICED ACTION MAY BE TAKEN.**

---

[1] The Debtors in these Chapter 7 cases are: McClain Feed Yard, Inc. (Case No. 23-20084-swe), McClain Farms, Inc. (Case No. 23-20085-swe), and 7M Cattle Feeders, Inc. (Case No. 23-20086-swe).

**TRUSTEE'S MOTION FOR APPROVAL OF COMPROMISE AND SETTLEMENT WITH GENE BROOKSHIRE FAMILY LP**

COMES NOW Kent Ries, in his capacity as Chapter 7 Trustee of the bankruptcy estates of McClain Feed Yard, Inc.; McClain Farms, Inc.; and 7M Cattle Feeders, Inc. (the "Trustee") who files this Motion for Approval of Compromise and Settlement with Gene Brookshire Family LP ("Defendant") as follows:

**SUMMARY OF SETTLEMENT AND RELIEF REQUESTED**

1. The Trustee has alleged in Adversary No. 25-02003 (the "Adversary Proceeding") that, among other things, certain Payments from the Debtors to Defendant set forth on Exhibit 63 to the Amended Complaint (the "Payments") give rise to claims under 11 U.S.C. § 547(b), which would allow the Trustee to avoid and recover the Payments from Defendant pursuant to 11 U.S.C. §§ 547 and 550 and 551 ("Preferential Transfer"). Specifically, the Trustee alleges Preferential Transfer claims in the amount of $204,372.38 for the Payments received during the 90-day period before bankruptcy and $2,592,452.09 for the one-year period before bankruptcy. The claims for one-year payments are based upon the Trustee's claim that Defendant entered into a general partnership with one or more of the Debtors under applicable state law, and the Payments were received in connection with that general partnership. Defendant denies liability, including the Trustee's ability to establish insider status required for a one-year preference claim, and asserts various affirmative defenses, including subsequent new value and the ordinary course of business defense.

2. The parties have conferred and the currently undisputed record would support a subsequent new value defense reducing Defendant's one-year preference exposure to $682,244.48. Based largely on that defense and the underlying facts, as well as concerns regarding collectability, the parties have agreed to resolve these preference claims for the payment of $275,000.00 and a

release of 502(h) claims. This recovery would allow the Trustee to recover 100% on the 90-day preference claim and a meaningful percentage on the more contested one-year preference claim.

3. By this Motion, and pursuant to Bankruptcy Rule 9019, the Trustee requests that the Court approve that certain compromise and settlement between the Trustee and Defendant pursuant to the Settlement and Mutual Release Agreement (the "Agreement") attached as Exhibit A and the Proposed Order attached as Exhibit 1 thereto. The following is a summary of the key provisions of the Agreement[2] and the claims being settled:

- Defendant pays $275,000.00 to the Estate;

- the Trustee provides a limited release to Defendant for claims arising from the Payments for the Preferential Transfer ;

- Defendant releases and waives any right to assert a claim against the Debtors or the Estates related to the Settlement Payment, including, but not limited to, any claim under 11 U.S.C. § 502(h).

- The Trustee will dismiss Defendant from the Adversary Proceeding, with prejudice as to all claims arising from the Payments for Preferential Transfer released under the Agreement, and otherwise without prejudice.

4. Pursuant to the Agreement, the Trustee will recover 100% on the 90-day preference claim and a meaningful percentage on the more contested one-year preference claim. Given this recovery, combined with the waiver of 502(h) claim, the Trustee believes that this is a reasonable, certain and immediate resolution of the subject claims against Defendant and requests the Court to approve the proposed settlement.

---

[2] The following is intended as a summary only. Parties are cautioned to review the agreement in detail, because in the event of a conflict between this Motion and the Agreement, the Agreement shall control.

## PROCEDURAL BACKGROUND

5.      The Debtors filed voluntary petitions for relief under Chapter 7 of the Bankruptcy Code on April 28, 2023 (the "Petition Date"). The Trustee is the duly appointed Chapter 7 trustee in the Debtor's Bankruptcy Cases and of the Debtors' Estates.

6.      This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§157(a)- (b) and 1334. This is a core proceeding as defined under 28 U.S.C. § 157(b). Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

## FACTUAL BACKGROUND

7.      As detailed in prior filings, the Debtors' bankruptcy cases were filed by petitions signed by Glenn Karlburg, Chief Restructuring Officer.[3] Mr. Karlburg had only been retained on April 7, 2023, shortly before the Debtors' principal, Brian McClain, committed suicide on April 18, 2023.  Following his death but before the Petition Date, Mr. Karlburg apparently authorized all of the Debtors' physical and electronic records to be transferred to an outside financial consultant (Focus Management Group) working with the Debtors' secured lender (Rabo AgriFinance LLC) in Chicago.  Further, Mr. Karlburg was based out of Arizona and there were no other known day-to-day former employees of the Debtors with knowledge of the daily business operations and record keeping, other than Mr. McClain, then deceased, and his daughters. As a result, at the beginning of these bankruptcy cases, the Trustee did not have instant access to usable Debtor records and current arms-length employees with historical knowledge of the Debtors' business and its records.  As a result, the Trustee has had to obtain knowledge of the Debtors' transactions through pursuing turnover of records and conversations with parties and their counsel.

---

[3] *See e.g.,* ECF No. 1, Case No. 23-20084; ECF No. 1, Case No. 23-20085; ECF No. 1, Case No. 23-20086.

8.     The Trustee was able to obtain the Debtors' records from Focus during the summer of 2023. Those records were ultimately shown to be in generally poor condition, incomplete, unreliable, and insufficient to allow the Trustee to understand in detail the Debtors' pre-bankruptcy transactions and business dealings.   Further complicating the initial circumstances of the case, over 100 parties filed claims with the United States Department of Agriculture against the Debtors exceeding 120 million dollars under a very new statute – the USDA Dealer Trust Act.[4]

9.     In the fall of 2023, the Trustee began pursuing significant discovery to obtain further knowledge of the Debtors' pre-bankruptcy transactions, including from many of the Movants. This discovery has included production of records and information from the over 100 parties that filed USDA claims,[5] from documents produced to other parties in the bankruptcy cases,[6] life insurance companies,[7] other parties that filed Proofs of Claim,[8] and various banks, accountants, and buyers and brokers of cattle that were believed to have done business with the Debtors.[9] The Trustee received varying degrees of compliance with that discovery order, as well as varying degrees of compliance with informal discovery requests for identical information from other parties.

10.     Defendant has engaged with the Trustee regarding the Payments at issue and provided certain information and documents sufficient to enable the parties to evaluate the subject claims. This enabled the parties to meaningfully exchange information and respective analyses of the Trustee's avoidance claims and Defendant's claimed affirmative defenses.   The Trustee believes that the claims subject to the Agreement have been sufficiently investigated and

---

[4] *See* ECF No. 126, Case No. 23-20084. Many of these parties also filed claims in the Debtors' bankruptcy cases.
[5] *See* ECF No. 174, Case No. 23-20084.
[6] *See* ECF No. 176, Case No. 23-20084.
[7] *See* ECF No. 178, Case No. 23-20084.
[8] *See* ECF No. 179, Case No. 23-20084.
[9] *See* ECF No. 237, Case No. 23-0084.

prosecuted to allow the parties to resolve the subject claims pursuant to the limited scope releases in the Agreement.

## ARGUMENTS AND AUTHORITIES

11.     Bankruptcy Rule 9019 provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." FED. R. BANKR. P. 9019(a). Under that Rule, the Court should approve a settlement only if it is "fair and equitable and in the best interests of the estate." *In re Foster Mortgage Corp.*, 68 F.3d 914, 917 (5th Cir. 1995). The factors to consider include "(1) the probability of success in the litigation, with due consideration for the uncertainty in fact and law, (2) the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and (3) all other factors bearing on the wisdom of the compromise." Id. Such other factors include the reasonable views of creditors, although such views are not binding, and "the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion." Id. at 918. *See also Official Comm. Of Unsecured Creditors v. Cajun Elec. Power Coop. Inc.* (*In re Cajun Elec. Power Coop. Inc.*), 119 F.3d 349, 356 (5th Cir. 1997); *Rivercity v. Herpel* (*In re Jackson Brewing Co.*), 624 F.2d 559, 602 (5th Cir. 1960). The Court need not conduct a mini-trial on the underlying claims; rather, the Court "must apprise itself of the relevant facts and law so that it can make an informed and intelligent decision." *In re Age Ref. Inc.*, 801 F.3d 530, 541 (5th Cir. 2015) (internal quotation omitted). The settlement need not result in the best possible outcome for the Estate but must not "fall beneath the lowest point in the range of reasonableness." *Vaughn v. Drexel Burnham Lambert Group, Inc.* (I*n re Drexel Burnham Lambert Group, Inc.*), 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991). Finally, the Trustee is entitled to employ his reasonable business judgment in proposing a settlement, and that judgment is entitled to reasonable deference from the Court where, as here, the proposed settlement is not between insiders:

The Trustee's decision to settle must represent the interests of the bankruptcy estate and its creditors and is reviewed under the 'business judgment rule.' Under the business judgment rule, the challenging party must establish that the course of action chosen by the fiduciary was outside the parameters of what a rational and reasonably informed businessperson might select. The business judgment rule creates a presumption in favor of the fiduciary.

*In re Woodberry*, 629 B.R. 239, 243 (Bankr. E.D. Mich. 2021) (internal quotations omitted).

12.     Here, the Trustee believes that the Agreement is fair, equitable, and in the Estates' best interests, for at least the following reasons:

    a.     The Estate will recover a meaningful amount of the net avoidance action remaining after application of largely uncontested affirmative defenses;

    b.     The Estate will avoid out of pocket costs, including potential expert costs, on these subject claims; and

    c.     The settlements are key for the ultimate resolution of the Debtors' Bankruptcy Cases and distribution to creditors, which will be substantially delayed for trials on the subject claims.

13.     In the end, the Trustee faces two choices. One choice is to continue in litigation that could take years, involve risks on liability and collection, and appeals, and all of could result in less than recovered at this stage in the case. Or the Trustee can settle now for a fair and reasonable amount. The Trustee believes that the proposed Agreement is a fair compromise resulting from arms-length negotiation and informed investigation of the subject facts and legal issues, all of which strongly confirms the Trustee's business judgment in the proposed settlement.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, the Trustee respectfully requests that the Court enter an order substantially in the form attached hereto: (i) granting this Motion; (ii) approving the proposed settlement set forth in the Agreement, and authorizing and directing the Trustee to execute, deliver, and perform under the Agreement; and (iii) granting the Trustee such other and further relief to which he may be justly entitled.

Respectfully submitted,


*/s/ Hudson M. Jobe*
Hudson M. Jobe
Texas Bar No. 24041189
**JOBE LAW PLLC**
6060 North Central Expressway, Suite 500
Dallas, Texas 75206
(214) 807-0563
hjobe@jobelawpllc.com


**AND**

Alan Dabdoub
State Bar No. 24056836
adabdoub@lynnllp.com
**LYNN PINKER HURST & SCHWEGMANN LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone:    214-981-3800
Facsimile:    214-981-3839


**SPECIAL COUNSEL TO THE TRUSTEE**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that April 16, 2026, a true and correct copy of the foregoing was served via the Court's ECF system on the debtors, debtors' counsel, and the United States Trustee, via first-class mail, postage prepaid on the parties as indicated below, and via e-mail on the parties as indicated below.

Acey Livestock, LLC
c/o Joe Mattingly, Mattingly Law Offices
joe@mattinglylawoffices.com

Eric DeJarnett
c/o Flannery Nardone, Mullin Hoard & Brown LLP
fnardone@mhba.com

Heartland Co-op
c/o Brandy Sargent, Devon Poage, Erika Luzuriaga,
K&L Gates LLP
brandy.sargent@klgates.com;
Devon.Poage@klgates.com;
Erika.Luzuriaga@klgates.com

James McCuan
c/o Elizabeth and Brandon, Geary Beck LLP
elizabeth@gearybeck.com; brandon@gearybeck.com

Phillip E. Rapp
c/o Whitney A. Davis, Eggleston King Davis LLP
whit@ekdlaw.com

Purina Animal Nutrition
c/o Brandy Sargent, Devon Poage, Erika Luzuriaga,
K&L Gates LLP
brandy.sargent@klgates.com;
Devon.Poage@klgates.com;
Erika.Luzuriaga@klgates.com

Rick Rodgers
c/o Flannery Nardone, Steven Hoard, Mullin Hoard &
Brown LLP
fnardone@mhba.com; shoard@mhba.com

BJM Sales & Service
PO Box 1073
Hereford, TX 79045

Carol Bosshardt
3925 NW 151st Way
Newberry, FL 32669

Euler Hermes N.A. Insurance Co., as Agent for WHIT
800 Red Brook Blvd, #400C
Owings Mills, MD 21117

First Kentucky Bank, Inc.
605 Main Street
Benton, KY 42025

Joseph Donelson Jones II
39551 CR 439
Umatilla, FL 32784

Justin Stuever
P.O. Box 22
Morrison, OK 73061

Mark J. Reisz
514 Americas Way #13812
Box Elder, SD 57719

Republic Services #796
PO Box 9001099
Louisville, KY 40290

Sherman Trucking
5508 Oak Level Road
Benton, KY 42025

*/s/ Hudson M. Jobe*
Hudson M. Jobe